# EXHIBIT C

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| BYJU'S ALPHA, INC.,[1] | ) | Chapter 11 |
| Debtor. | ) | Case No. 24-10140 (BLS) |
| BYJU'S ALPHA, INC., Plaintiff, | ) | |
| GLAS TRUST COMPANY, LLC, Intervenor-Plaintiff, | ) | Adv. Pro. No. 25-50822 (BLS) |
| v. | ) | |
| OCI LIMITED and RUPIN BANKER | ) | **Hearing Date: TBD** **Obj. Deadline: TBD** |
| Defendants. | ) | |

**DEBTOR'S MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER APPROVING COMPROMISE AND AGREEMENT BETWEEN THE DEBTOR, GLAS TRUST COMPANY LLC, AND OCI LIMITED**

The Debtor submits this Motion for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), approving a settlement (the "Settlement") between the Debtor and Defendant OCI Limited ("OCI") in full and final satisfaction of the Debtor's claims against OCI (the "OCI Claims") as set forth in the adversary proceeding captioned, *BYJU's Alpha, Inc. v. OCI Ltd.*, Adv. No. 25-50822 (Bankr. D. Del.) (the "Adversary Proceeding"). A copy of the agreement, which sets forth the Settlement terms, is attached as Exhibit I to the Proposed Order.[2] In support of this Motion, the Debtor respectfully states as follows:

[1] The Debtor in this Chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: BYJU's Alpha, Inc. (4260). The location of the Debtor's service address for purposes of this Chapter 11 Case is: 1007 N. Market Street Ste. G20 452, Wilmington, Delaware 19801.

[2] The parties' agreement has been filed under seal in accordance with the *Debtor's Motion, Pursuant to Section 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018, for Entry of an Order Authorizing the Filing Under Seal of Certain Confidential Information Included in Debtor's Motion Pursuant to Bankruptcy Rule 9019 for*

## INTRODUCTION

1. The truth of what happened to the missing $533 million Alpha Funds has been an alarming mystery for a long time. But as part of its Settlement with the Debtor, OCI, a mediate transferee of the vast majority of that money, has agreed to come forward. The truth about what happened to the vast majority of the Alpha Funds is that they were, in effect, roundtripped right back to Byju Raveendran and his affiliates, which is both shocking given Raveendran's untruthful statements described below, and yet—given Raveendran's conduct before this Court to date—unsurprising at the same time.

2. For months, BYJU's enterprise, including directly via its eponymous founder, told shareholders,[3] lenders,[4] and the press[5] that the Alpha Funds remained in its possession. But then Raveendran changed the story completely. In an unsolicited, sworn declaration filed with the Court in fall of 2024, Raveendran repeatedly represented that the money actually had been sent to OCI for "legitimate commercial purposes," namely, to procure "services to T&L and its subsidiaries in relation to the procurement of IT equipment, such as electronic tablets, and advertising (including marketing *via* various media)." B. Raveendran Decl. ¶¶ 34, 38, 41.[6] Raveendran even went so far as to end his 10-page declaration by proclaiming his innocence, saying he hoped his explanation would "dispel[] any notion that I or any of the founding members

---

*Entry of an Order Approving Compromise and Agreement Between the Debtor, GLAS Trust Company LLC, and OCI Limited*, filed contemporaneously herewith.

3 Compl. ¶ 76, *BYJU's Alpha, Inc. v. Raveendran*, Adv. Pro. No. 25-50526 (Bankr. D. Del. Apr. 9, 2025) [D.I. 1] (quoting a BYJU's email to shareholders, which "categorically denie[d] media reports which insinuated that BYJU's was no longer a beneficiary owner of the [Alpha Funds]"—instead representing that "an offshore subsidiary remains the beneficiary of the money").

4 *Id.* ¶ 77 (memorializing Raveendran telling lenders, "[w]e have not touched that money," rather, "more than $500 million" still remains "in cash and cash equivalents").

5 *Id.* ¶¶ 80, 82 (quoting two BYJU's press statements asserting that the Alpha Funds were "currently in a 100% non US subsidiary of BYJU's" and "safely parked in one of our subsidiaries").

6 Declaration of Byju Raveendran ¶¶ 80, 82, *BYJU's Alpha, Inc. v. Camshaft Cap. Fund, LP*, Adv. Pro. No. 24-50013 (Bankr. D. Del. Oct. 9, 2024) [D.I. 371-1] (the "B. Raveendran Decl."). Even if true (which it is not), Raveendran's version of the story would still comprise a massive fraudulent transfer in respect of the Debtor.

of BYJU'S siphoned these funds for personal gain." *Id.* ¶ 41. Raveendran's sworn testimony has now been proven to be untrue.

3. **<u>Exhibit B</u>** to this Motion is the sworn declaration of OCI's founder Oliver Chapman, which itemizes down to the cent what happened to the Alpha Funds once OCI received the money. *Significantly, the Debtor has come to understand that a single former OCI representative, Defendant Rupin Banker, in conjunction with Raveendran, among others (not Chapman), abused OCI to facilitate a fraud on the Debtor and its creditors.*

4. The Alpha Funds were not used for "legitimate commercial purposes," as Raveendran swore to the world under penalty of perjury. Nor was the money used by OCI to procure goods and services, such as tablets and advertising, for T&L. The truth is far more sinister, as Chapman has laid bare, based on his own personal knowledge coupled with his review of documents in OCI's possession. In 2022, while the Debtor was in default on its obligations under the Credit Agreement, $533 million was clandestinely removed, with the intention that the vast majority of that money be moved (via a series of opaque transfers) to a corporate vehicle in Singapore—BYJU's Global Pte Ltd.—that Raveendran individually owned. Chapman's credible declaration, in other words, demonstrates that Raveendran's plot was to siphon hundreds of millions of dollars of corporate assets for personal use. This is what Raveendran, his brother Riju, and their cohorts seemingly have been covering up for the past 3+ years, and also apparently why they have been willing to flout one Court order after another rather than tell the truth.

5. OCI, in contrast, chose a different path. The information and other consideration being provided by OCI and Chapman under the Settlement provides important value to the Debtor and its estate, including in unravelling the truth behind what happened to the Alpha Funds and holding wrongdoers accountable, all without further delay and expense. To that point, the Debtor

has determined to discontinue further proceedings against OCI and that it has no basis to pursue a claim against Chapman. Claims against OCI and Chapman will be released.

6. As has been shown, the consideration being provided by OCI easily satisfies the standard under Federal Rule of Bankruptcy Procedure 9019. The Settlement is in the best interests of the Debtor, its estate, and its creditors, and it should be approved.

## JURISDICTION AND VENUE

7. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "Amended Standing Order"). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtor consents to a final order with respect to this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

8. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of the above-captioned chapter 11 case and this Motion is proper pursuant to 28 U.S.C. §§ 1408-09.

9. The statutory bases for the relief requested herein are section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

### I. General Background

10. On February 1, 2024 (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code (this "Chapter 11 Case") in the Court. The Debtor is authorized to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108

of the Bankruptcy Code. No official committee has been appointed in this Chapter 11 Case, and no request has been made for the appointment of a trustee or an examiner. Additional information regarding the Debtor, its capital structure, and the circumstances leading to the filing of this Chapter 11 Case is set forth in the *Declaration of Timothy R. Pohl, Director, CEO, and Secretary of BYJU's Alpha, Inc., in Support of the Debtor's Chapter 11 Petition* [D.I. 3].

11. On October 29, 2025, the Court entered its Order [D.I. 517] confirming the *Amended Combined Disclosure Statement and Chapter 11 Plan of BYJU's Alpha, Inc.* [D.I. 475] (the "Plan"). The Plan has not yet gone effective.

## II. The Adversary Proceeding

12. On May 5, 2025, the Debtor initiated the instant Adversary Proceeding against OCI and Banker. As set forth in greater detail in the Complaint [Adv. D.I. 1], the Debtor seeks to recover from OCI under section 550 of the Bankruptcy Code. The Debtor also brought claims against both OCI and Banker for aiding and abetting each of Camshaft Capital Management, Think & Learn Private Ltd., and Riju Ravindran's breaches of their fiduciary duties.

13. GLAS Trust Company LLC (solely in its capacity as Administrative Agent and as Collateral Agent) ("GLAS") filed a motion to intervene as a plaintiff on May 27, 2025, which was granted on July 8, 2025. Adv. D.I. 7, 22

14. OCI filed a motion to dismiss the Complaint on July 14, 2025. Adv. D.I. 23. That motion is fully briefed and is pending decision. *See* Adv. D.I. 24, 28, 34.

## III. The Settlement

15. The parties have been engaged in discussions and/or settlement communications. After review and analysis of the positions and/or defenses set forth by OCI, and after good-faith, arm's-length negotiations, the Debtor and OCI have agreed to the terms of the Settlement, which

are set forth in the agreement attached as Exhibit I. For the avoidance of doubt, all claims asserted in the Adversary Proceeding against Banker shall remain pending.

## RELIEF REQUESTED

16. By this Motion, the Debtor seeks entry of the Proposed Order approving the Settlement pursuant to Bankruptcy Rule 9019(a).

## BASIS FOR RELIEF REQUESTED

17. Pursuant to section 105(a) of the Bankruptcy Code, a "[c]ourt may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 further provides that after notice and a hearing, the Court may approve a proposed settlement or compromise. The decision whether to accept or reject a compromise lies within the sound discretion of the Court. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986); *In re Resorts Int'l, Inc.*, 145 B.R. 412, 451 (Bankr. D.N.J. 1990). Approval of a settlement is appropriate if it is "fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

18. When analyzing settlements, courts in the Third Circuit generally consider the following factors (the "Martin Factors"):

(i) the probability of success in litigation;
(ii) the likely difficulties in collection;
(iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
(iv) the paramount interest of the creditors.

*See Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.)*, 283 F.3d 159 (3d Cir. 2002); *In re Martin*, 91 F.3d 389, 392 (3d Cir. 1996).

19. In addition to these four requirements, the Court must also consider "all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (citing *Protective Comm. for Indep.*

*Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)). The "ultimate inquiry" under Rule 9019 is "whether the compromise is fair, reasonable, and in the interest of the estate." *Marvel Entm't*, 222 B.R. at 249 (quoting *In re Louise's, Inc.*, 211 B.R. at 801). Importantly, it is well-established that a settlement proponent need not convince the Court that a settlement is the best possible compromise, but only that the settlement falls "within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008); *see also In re W.R. Grace & Co.*, 475 B.R. 34, 77–78 (Bankr. D. Del. 2012) ("In analyzing the compromise or settlement agreement under the Martin factors, courts should not have a 'mini trial' on the merits, but rather should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.").

20. In the Debtor's business judgment, the Settlement represents a fair compromise considering the circumstances, and it is reasonable and in the best interests of the Debtor, its estate, creditors, and other parties involved in this Chapter 11 Case. The Settlement results from good-faith, arm's-length negotiations between the parties, leading to an agreement that falls within the range of reasonable litigation outcomes. The Settlement offers a fair and practical resolution to the presented issues, which, if brought to litigation, would reduce the Debtor's limited resources and diminish creditor recoveries. The Settlement meets the relevant Martin Factors and, therefore, should be approved.

21. First, if the settling parties were unable to reach a consensual resolution, the Debtor would have to litigate the OCI Claims. The Debtor believes that the OCI Claims have merit and that they would be successful in the Adversary Proceeding. However, OCI denies the allegations made in the Complaint, and there are risks and costs associated with pursuing these claims, with no guarantee that the Court would rule in favor of the Debtor (notwithstanding the Debtor's

confidence in the OCI Claims). Moreover, even if the Debtor were successful in the litigation, the collectability of any judgment it might obtain against OCI is questionable. For these reasons and more, the Debtor believes that its business judgment is sound and that the proposed Settlement offers a reasonable and fair resolution of the OCI Claims.

22. Second, resolving the OCI Claims without the Settlement could require costly and time-consuming litigation, possibly requiring lengthy evidentiary proceedings before this Court. In contrast, the Settlement allows the Debtor to avoid the time and expenses associated with litigating the Adversary Proceeding, ultimately diminishing the assets of the Debtor's estate. Therefore, the Debtor believes that the Settlement provides a certain and timely resolution of the OCI Claims, which is in the best interest of all parties involved.

23. Finally, the paramount interest of creditors (and other parties in interest in this Chapter 11 Case) will undoubtedly be best served by approving the Settlement. Continued litigation with OCI regarding the OCI Claims will only increase the administrative costs of the Chapter 11 Case and, as noted, diminish recoveries for stakeholders. Additionally, considering the risk of an unfavorable outcome, reaching a final resolution of the OCI Claims, as outlined in the Settlement, is in the best interests of creditors. Therefore, in light of the delays and risks associated with litigation, the Debtor's decision to enter into the Settlement should be approved.

24. For the foregoing reasons, the Debtor respectfully submits that the terms of the Settlement satisfy the criteria for approval under Bankruptcy Rule 9019.

**NOTICE**

25. The Debtor will provide notice of this motion to: (a) Office of the United States Trustee for the District of Delaware; (b) counsel to GLAS; (c) counsel to OCI; (d) counsel to Banker; and (e) all parties that have filed a notice of appearance and request for service of papers

pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

WHEREFORE, the Debtor respectfully requests entry of the Proposed Order approving the Settlement and such other and further relief as the Court may deem just and proper.

Dated: November 15, 2025
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Kenneth J. Enos*
Robert S. Brady (Del. No. 2847)
Kenneth J. Enos (Del. No. 4544)
Jared W. Kochenash (Del. No. 6557)
Timothy R. Powell (Del. No. 6894)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
rbrady@ycst.com
kenos@ycst.com
jkochenash@ycst.com
tpowell@ycst.com

-and-

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Benjamin Finestone (admitted pro hac vice)
Kate Scherling (admitted pro hac vice)
Jordan M. Nakdimon (admitted pro hac vice)
295 Fifth Avenue
New York, New York 10016
Tel.: (212) 849 7000
benjaminfinestone@quinnemanuel.com
katescherling@quinnemanuel.com
jordannakdimon@quinnemanuel.com

Counsel for Debtor, BYJU's Alpha, Inc.

# Exhibit A

## Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | |
| BYJU'S ALPHA, INC.,[1] | Chapter 11 |
| Debtor. | Case No. 24-10140 (BLS) |
| BYJU'S ALPHA, INC., Plaintiff, | |
| GLAS TRUST COMPANY LLC, Intervenor-Plaintiff, | Adv. Pro. No. 25-50822 (BLS) |
| v. | |
| OCI LIMITED and RUPIN BANKER Defendants. | |

**ORDER APPROVING COMPROMISE AND AGREEMENT AMONG THE DEBTOR, GLAS TRUST COMPANY LLC, AND OCI LIMITED**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an order (this "Order"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure approving a settlement (the "Settlement") among the Debtor, GLAS Trust Company LLC (solely in its capacity as Administrative Agent and as Collateral Agent under a Credit and Guaranty Agreement dated as of November 24, 2021 with the Debor and others) ("GLAS"), and OCI Limited ("OCI") in full and final satisfaction of the Debtor's and GLAS's claims against OCI (but, for the avoidance of doubt, not Rupin Banker) as set forth in the adversary proceeding titled *BYJU's Alpha, Inc. v. OCI Ltd. & Rupin Banker*, Adv.

[1] The Debtor in this Chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: BYJU's Alpha, Inc. (4260). The location of the Debtor's service address for purposes of this Chapter 11 Case is: 1007 N. Market Street Ste. G20 452, Wilmington, Delaware 19801.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

No. 25-50822 (Bankr. D. Del.) (the "Adversary Proceeding"); and the Court finding that the Settlement is fair and reasonable; and the Court finding the Settlement satisfies the standards for approval of a compromise under Rule 9019 of the Federal Rules of Bankruptcy Procedure and applicable decisional case law; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required; and it appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion and provided for herein is in the best interest of the Debtor, its estate, and its creditors; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED** as set forth herein.

2. The Settlement, the terms of which are set forth in the agreement attached hereto as Exhibit I, is hereby **APPROVED** in full and final settlement of the claims asserted against OCI in the Adversary Proceeding.

3. As set forth in this Court's *Findings of Fact, Conclusions of Law, and Order Confirming the Amended Combined Disclosure Statement and Chapter 11 Plan of BYJU's Alpha, Inc.* [D.I. 517], this Court shall have exclusive jurisdiction with respect to any claim, cause of action, proceeding, or motion against OCI or Oliver Chapman arising out of, or relating to, the subject matter of the Adversary Proceeding or the Settlement.

4. Without affecting the finality of this Order, this Court shall retain continuing jurisdiction (a) with respect to any and all matters arising from or related to the implementation of this Order and (b) to construe, enforce, and administer this Order.

# Exhibit I

## Agreement

**[Filed Under Seal]**

# <u>Exhibit B</u>

## Chapman Declaration

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BYJU'S ALPHA, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 24-10140 (BLS) |
| BYJU'S ALPHA, INC.,<br>Plaintiff,<br><br>GLAS TRUST COMPANY, LLC,<br><br>Intervenor-Plaintiff,<br><br>v.<br><br>OCI LIMITED and RUPIN BANKER<br><br>Defendants. | Adv. Pro. No. 25-50822 (BLS) |

**DECLARATION OF OLIVER PHILIP CHAPMAN**

Oliver Philip Chapman, pursuant to 28 U.S.C. § 1746, declares:

1. I am the chief executive officer of OCI Limited ("OCI"), a defendant in this proceeding. The statements set forth in this declaration are based on my personal knowledge or upon a review of OCI business records.

2. In 2022, OCI participated in transactions involving the Debtor, Byju Raveendran, Think & Learn Pvt. Ltd ("T&L"), and others. I was told at the time that the transactions would involve Think & Learn providing funds to OCI which OCI would use for the procurement of goods and services for T&L's benefit. On OCI's part, these transactions were entirely directed and arranged by Rupin

Banker. Moreover, I knew that Rupin Banker and Byju Raveendran were in regular direct contact over the period of these transactions. To the best of my understanding, all of Rupin Banker's dealings relating to the Alpha Funds (defined below) were at Byju Raveendran's direction or otherwise within Byju Raveendran's knowledge.

3. On or about the dates listed immediately below, OCI received the following funds, which derived from the Debtor (the "Alpha Funds"), from Camshaft Capital Fund, LP or its affiliate through Apex Fund Services or one of its affiliates:

a. 10th May 2022 (received 12th May) $300,000,000

b. 12th July 2022 (received 14th July) $190,812,292.89

c. 15th July 2022 $15,095,142.91

**Total: $505,907,436**

4. Of these funds $13,182,215 were transferred to companies that appear to be involved in Think & Learn's procurement activities, including:

a. Google LLC

i. 28th June 2022 $8,856,900.83

ii. 25th June 2022 $1,097,539.96

iii. 29th Nov 2022 $1,885,728.43

b. Sony India *(CULVER MAX ENTERTAINMENT PVT LTD)*

i. 30th June 2022 $1,342,045.83.

**Total: $13,182,215**

5. The lion's share of the funds were, however, transferred from OCI's accounts to a single entity, REVERE MASTER SPV LLC in four transactions:

i. 28th June 2022 $150,000,000
(in three $50m tranches)

ii. 29th June 2022 $103,750,000
(in two tranches of $50,000,000 and $53,750,000)

iii. 7th July 2022 $25,375,000

iv. 15th July 2022 $150,000,000
(in three $50m tranches)

v. 18th July 2022 $50,500,000

**Total: $479,625,000**

6. REVERE MASTER SPV LLC is a special purpose vehicle of Revere Securities LLP, a provider of investment banking and wealth management.

7. Furthermore, related documents in OCI's possession have been reviewed that demonstrate the intention of those controlling these funds was that almost all were to be transferred on from that recipient to a Singapore corporation, Byju's Global Pte Ltd (Byju's Global).

8. The $13,100,220.80 remaining was transferred at the direction of Rupin Banker to him, for his benefit, or at his direction for the benefit of third parties.

9. Accordingly, OCI did ***not*** use the vast majority of the Alpha Funds to provide outsourced procurement services to T&L (or its subsidiaries), as alleged by Byju Raveendran, in relation to the procurement of IT equipment, such as electronic tablets, and media/advertising. Rather, after receiving the Alpha Funds, at the direction of Byju Raveendran and Rupin Banker, OCI was caused to turn around and transfer the funds out as described above.

I declare under penalty of perjury under the laws of the United States of America that foregoing is true and correct.

Executed on 15th November 2025.

By……………………..

Name: Oliver Chapman