**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BYJU'S ALPHA, INC.,[1]<br><br>Debtor. | Case No. 24-10140 (BLS)<br><br>Chapter 11 |
| BYJU'S ALPHA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>REVERE MASTER SPV LLC SERIES VII, REVERE MASTER SPV LLC, REVERE MANAGER LLC, REVERE SECURITIES LLC, KYLE M. WOOL, JEROME F. NILES, JOSHUA A. SHIPLEY, AND JOHN AND JANE DOES 1-10,<br><br>Defendants. | Adversary Proceeding<br><br>No. 26-50221 (BLS) |

# BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS ADVERSARY COMPLAINT


**GELLERT SEITZ BUSENKELL & BROWN LLC**
Michael Busenkell (DE 3933)
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Phone: (302) 425-5812
Mbusenkell@gsbblaw.com

*Attorneys for Defendants Revere Master SPV LLC Series VII, Revere Master SPV LLC, Revere Manager LLC, Revere Securities LLC, Kyle M. Wool, Jerome F. Niles, Joshua A. Shipley*

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Howard W. Schub
330 Madison Avenue, 27th Floor
New York, New York 10017
Phone: (212) 413-9060
Howard.Schub@nelsonmullins.com
Lee B. Hart
201 17th Street NW
Atlanta, GA 30363
Phone: (404) 322-6349
Lee.Hart@nelsonmullins.com


Dated: April 28, 2026
Wilmington, Delaware

[1] The Debtor in this Chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: BYJU's Alpha, Inc. (4260). The location of the Debtor's service address for purposes of this Chapter 11 Case is: 1007 N. Market Street Ste. G20 452, Wilmington, Delaware 19801.

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iv

PRELIMINARY STATEMENT ..... 1

FACTUAL BACKGROUND ..... 3

I. BYJU's Alpha, Inc. and the Term Loan Facility ..... 3

II. First Transfer (Transfer of the "Alpha Funds") ..... 5

A. Subsequent Transfers of the Alpha Funds to OCI ..... 5

B. Subsequent Transfers of the Alpha Funds from OCI to Revere and Others ..... 7

C. Subsequent Transfer of the Alpha Funds from Revere to BYJU's Global ..... 9

III. Second, Third, and Fourth Transfers ..... 10

IV. Camshaft Adversary Proceeding and Summary Judgment ..... 11

V. OCI Adversary Proceeding and 9019 Settlement ..... 12

VI. Raveendran Adversary Proceeding ..... 13

VII. Revere Adversary Proceeding ..... 15

LEGAL STANDARD ..... 15

ARGUMENT ..... 16

I. The Complaint Must Be Dismissed Because Revere Was a Mere Conduit. ..... 17

A. The Complaint Fails to Demonstrate that Revere is a "Transferee" under Section 550(a)(2) of the Bankruptcy Code. ..... 18

II. The Complaint Must Be Dismissed Because the Defendants Took the Subsequent Transfers for Value and in Good Faith. ..... 20

A. The Debtor, as Proponent of Recovery, Must Allege that the Defendants Did Not Take for Value and in Good Faith. ..... 21

B. The Debtor Fails to Plead that the Defendants Did Not Take the Transferred Property for Value. ..... 22

C. The Debtor Fails to Plead that the Defendants Received the Transferred Property in Bad Faith. ........ 23

i. The Complaint Fails to Allege Facts Showing that the Defendants Were on Inquiry Notice that the Debtor was Insolvent or that the OCI-to-Revere Transfers Were Made with a Fraudulent Purpose. ........ 24

ii. The Debtor's Voluntary Settlement and Release of Claims Against OCI and Chapman Further Defeats Its Bad Faith Theory Against the Defendants. ........ 28

III. The Complaint Should Be Dismissed with Prejudice. ........ 29

CONCLUSION ........ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benak ex rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P.*,
435 F.3d 396 (3d Cir. 2006)....................3

*In re Aloia*,
496 B.R. 366 (Bankr. E.D. Pa. 2013)....................3

*In re Anton Noll*,
277 B.R. 875 (1st Cir. BAP 2002)....................19

*Argus Mgmt. Grp. v. GAB Robins, Inc. (In re CVEO Corp.)*,
327 B.R. 210 (Bankr. D. Del. 2005)....................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................15, 16, 22

*Bailey v. Big Sky Motors, Ltd. (In re Ogden)*,
314 F.3d 1190 (10th Cir. 2002)....................19

*In re Bayou Group, LLC*,
439 B.R. 284 (S.D.N.Y. 2010)....................24, 25, 27

*Belford v. Breck (In re Med. Cost Mgmt., Inc.)*,
115 B.R. 406 (Bankr. D. Conn. 1990)....................22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................15, 16, 22

*Bonded Fin. Servs., Inc. v. European American Bank*,
838 F.2d 890 (7th Cir. 1988)....................18, 19, 24

*In re Bressman*,
327 F.3d 229 (3d Cir. 2003)....................21, 23, 27

*Buck v. Hampton Twp. Sch. Dist.*,
452 F.3d 256 (3d Cir. 2006)....................3

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)....................29

*In re Carrozzella & Richardson*,
286 B.R. 480 (D. Conn. 2002)....................24, 27

*Christy v. Alexander & Alexander of New York Inc. (In re Finley)*,
130 F.3d 52 (2d Cir.1997)....................19

*Coleman v. Home Savings Association (In re Coleman)*,
21 B.R. 832 (Bankr. S.D. Tex. 1982) ....................23

*Creel v. Rowan Univ.*,
2017 WL 2734709 (D.N.J. June 26, 2017) ....................16

*De Rochfort Co. Ltd. v. Sunshine State Bank (In re De Rochfort Co. Ltd.)*,
22 B.R. 826 (Bankr. S.D. Fla. 1982)....................22

*In re Domiano*,
422 B.R. 497 (Bankr. M.D. Pa. 2009) ....................16

*In re Enron Corp.*,
333 B.R. 205 (Bankr. S.D.N.Y. 2005)....................23

*In re Factory 2–U Stores, Inc.*,
2007 WL 2698207 (Bankr. D. Del. Sept. 11, 2007) ....................18

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d. Cir. 2009)....................15

*Friedman v. Vinas (In re Trauger)*,
109 B.R. 502 (Bankr. S.D. Fla. 1989)....................22

*G-I Holdings, Inc. v. Those Parties Listed on Ex. A (In re G-I Holdings, Inc.)*,
313 B.R. 612 (Bankr. D.N.J. 2004) ....................21

*Hayes v. Palm Seedlings Partners–A (In re Agric. Research & Tech. Grp.)*,
916 F.2d 528 (9th Cir. 1990) ....................24

*Holt v. Fed. Dep. Ins. Corp. (In re Instrument Sales & Serv., Inc.)*,
99 B.R. 742 (Bankr. W.D. Tex. 1987)....................22

*Leveto v. Lapina*,
258 F.3d 156 (3d Cir. 2001)....................20

*In re Lifecare Techs., Inc.*,
305 B.R. 88 (Bankr. M.D. Fla. 2003) ....................20

*Long v. Wolf*,
2019 WL 2774207 (E.D. Pa. July 1, 2019)....................3

*Lowry v. Sec. Pac. Bus. Credit, Inc. (In re Columbia Data Prods., Inc.)*,
892 F.2d 26 (4th Cir.1989) ....................19

*Lustig v. Hickey (In re Hickey)*,
168 B.R. 840 (Bankr. W.D.N.Y. 1994) ....................22

*Maritime Elec. Co., Inc. v. United Jersey Bank*,
959 F.2d 1194 (3d Cir. 1991)....................3

*In re Maxus Energy Corp.*,
641 B.R. 467 (Bankr. D. Del. 2022) ....................23, 24, 26, 27

*In re Mervyn's Holdings, LLC*,
426 B.R. 96 (Bankr. D. Del. 2010) ....................18

*In re Nordic Village*,
915 F.2d 1049 (6th Cir. 1990) (Kennedy, J., dissenting), *rev'd on other grounds*, 503 U.S. 30 (1992)....................21, 22

*Official Comm. of Unsecured Creditors v. Guardian Ins. 401 (In re Parcel Consultants, Inc.)*,
287 B.R. 41 (Bankr. D.N.J. 2002) ....................19

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1993)....................3, 16

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008)....................29

*U.S., ex rel. Pilecki-Simko v. Chubb Inst.*,
443 F. App'x 754 (3d Cir. 2011) ....................16

*Williams v. Mortillaro (In re Resource, Recycling & Remediation, Inc.)*,
314 B.R. 62 (Bankr. W.D. Pa. 2004) ....................22, 23

**Rules**

Fed. R. Bankr. P. 7012(b) ....................1, 15

Fed. R. Bankr. P. 9019....................9

Fed. R. Civ. P. 11 ....................3, 30

Fed. R. Civ. P. 11(b)(2)-(3)....................30

Fed. R. Civ. P. 12(b)(6)....................1, 15, 30

Fed. R. Evid. 201 ....................3

**Statutes**

11 U.S.C. § 544(b) ....................12

11 U.S.C. § 544(b)(1) ....................12

11 U.S.C. § 548(a)(1)(A) ....................12

11 U.S.C. § 550....................2, 17, 18, 19, 21, 22, 30

11 U.S.C. § 550(a) ....................2, 12, 17

11 U.S.C. § 550(a)(2)....................2, 15, 16, 17, 18, 20

11 U.S.C. § 550(b) ....................2, 22, 23

11 U.S.C. § 550(b)(1) ....................20, 22, 29

**Other Authorities**

Amended Opinion Granting Plaintiffs' Motion for Default Against Byju Raveendran, *BYJU's Alpha Inc. v. Byju Raveendran, et al.*, Adv. Pro. No. 25-50526 (BLS) (Bankr. D. Del. Dec. 8, 2025) [Adv. D.I. 167] ....................13

Judgment Order, *BYJU'S Alpha Inc. v. Camshaft Capital Fund LP, et al.*, Adv. Pro. No. 24-50013 (BLS) (Bankr. D. Del. Mar. 14, 2025) [Adv. D.I. 388] ....................12

Memorandum Opinion, *BYJU's Alpha Inc. v. Camshaft Capital Fund LP, et al.*, Adv. Pro. No. 24-50013 (JTD) (Bankr. D. Del. Feb. 27, 2025) [Adv. D.I. 383] ......3, 4, 12, 27

Opinion Granting Plaintiffs' Motion for Default Against Byju Raveendran, *BYJU's Alpha Inc. v. Byju Raveendran, et al.*, Adv. Pro. No. 25-50526 (BLS) (Bankr. D. Del. Nov. 20, 2025) [Adv. D.I. 143]....................13

Defendants Revere Master SPV LLC Series VII, Revere Master SPV LLC, Revere Manager LLC, Revere Securities LLC, Kyle M. Wool, Jerome F. Niles, Joshua A. Shipley (collectively, the "Defendants") file this brief ("Brief") in support of their motion to dismiss (the "Motion to Dismiss") the adversary complaint [Adv. D.I. 1] (the "Complaint") filed by BYJU's Alpha, Inc. (the "Debtor") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"), as made applicable under Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Motion to Dismiss and Brief are further supported by the materials in Defendants' appendix filed contemporaneously herewith ("Appendix").

## PRELIMINARY STATEMENT[2]

This action is one of several brought by the Debtor to recover $533 million (the "Alpha Funds") that was allegedly stolen from it. However, unlike prior actions that were brought before the Debtor knew who allegedly stole the Alpha Funds or how, the Debtor now claims to know precisely who took the money and exactly how it was taken "down to the cent." According to the Debtor, the Alpha Funds were transferred from the Debtor, through Camshaft (a Miami hedge fund) and OCI (a London procurement and supply chain company), to defendant Revere (a New York-based investment banking, advisory and wealth management firm), then onward to BYJU's Global (a Singapore entity owned by Byju Raveendran) and BYJU's Investments (a Singapore entity owned by BYJU's Global), and ultimately roundtripped back to the Debtor's parent company, T&L. As the Debtor previously admitted when dismissing its action against OCI:

> **The truth about what happened to the vast majority of the Alpha Funds is that they were, in effect, roundtripped right back to Bjyu Raveendran and his affiliates.**

[2] Capitalized terms used but not defined in the Preliminary Statement shall have the meanings ascribed to them elsewhere in this Brief.

Despite dismissing its claims against OCI, the entity that allegedly transferred the Alpha Funds to Revere, the Debtor has filed a wholly meritless action against Revere and the other Defendants. The Debtor's Complaint against the Defendants contains only one cause of action—a claim to recover a transfer from an alleged subsequent transferee under section 550 of the Bankruptcy Code. That claim is fatally flawed for two reasons.

First, Revere is not a "transferee" within the meaning of section 550(a)(2) of the Bankruptcy Code. Under settled law, a recipient of a fraudulent transfer who simply passes along the funds without exercising any dominion or control over them is a mere conduit that is not liable as a transferee under section 550(a). That is exactly the case here. According to the Complaint, Revere transferred all the funds it received from OCI onwards to BYJU's Global and BYJU's Investments other than an agreed management fee.

Second, section 550(b) of the Bankruptcy Code independently bars recovery from Revere because it is a subsequent transferee who took for value, in good faith and without knowledge of the voidability of the transfer. The Complaint pays lip service to the 550(b) safe harbor by making conclusory allegations that Defendants must have known of the fraud based on purported "red flags" associated with the earlier transfers from the Debtor to Camshaft. But the Debtor does not allege that the Defendants knew anything about those original transfers or had any reason to suspect the later transaction Revere entered into with OCI was part of a fraudulent scheme. The failure of the Complaint to allege any facts that the Defendants were on inquiry notice is no accident. The Debtor has admitted that it has no basis to assert any claims against Oliver Chapman, founder and CEO of OCI—the very entity that transferred the Alpha Funds to Revere. This flies in the face of the Complaint's claim that no one involved in any of the transfers—including Chapman or Revere—could have acted in good faith. The Complaint does not, because it cannot,

explain this factual flaw which eviscerates the claim against the Defendants. Having admitted that neither Chapman nor OCI are culpable, the Debtor's conclusory and misleading contention that a claim exists against the Defendants has no merit.

The Debtor cannot cure the fatal defects of the Complaint with an amended pleading. The Debtor conducted a lengthy investigation into the transactions involving Camshaft, OCI, Inspilearn, T&L, BYJU's Global, BYJU's Investments, and others. That investigation revealed that Revere merely acted as an innocent conduit for the Alpha Funds to be roundtripped back to Raveendran, which the Debtor is pursuing from Raveendran and his affiliates. To cure the defects identified above, the Debtor would have to allege, with factual support, and consistent with its obligations under Rule 11, that Revere was not a conduit and that Revere was on inquiry notice of the fraud. However, the Debtor cannot make such allegations given its knowledge of Revere's role as a conduit and its arms' length transaction with OCI. Because the Debtor cannot plausibly allege any viable claim against the Defendants, the Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND[3]

### I. BYJU's Alpha, Inc. and the Term Loan Facility

The Debtor, a Delaware corporation, was created as part of an "edtech" conglomerate. App'x A0012, Declaration of Timothy R. Pohl, *In re BYJU's Alpha, Inc.*, Case No. 24-10140

[3] When deciding on a motion to dismiss, courts generally consider "only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). The Complaint attached the following as exhibits: (1) the MSJ Opinion, the Judgment Order, the 9019 Motion, and the Chapman 9019 Declaration (each, as defined below).

In addition to the Complaint and the exhibits attached thereto, the Court should take judicial notice of and consider the pleadings, orders, and decisions filed in the Debtor's bankruptcy case and news articles referenced in this Brief under Federal Rule of Evidence 201. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (when ruling on a motion to dismiss, courts may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, [and] orders"); *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1200 n. 3 (3d Cir. 1991) (taking judicial notice of docket entries in bankruptcy case); *Benak ex rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P.*, 435 F.3d 396, 401 (3d Cir. 2006) (affirming district court's decision to take judicial notice of newspaper articles on motion to dismiss); *In re Aloia*,

(Bankr. D. Del. [D.I. 7] (the "First Day Declaration") at ¶ 2. Its former ultimate parent company, Think & Learn Private Ltd. ("T&L"), incorporated in India, was among the most successful start-ups worldwide and, in March 2022, was reported to have a valuation of approximately $22 billion, following an $800 million funding round. App'x A0012-A0013, First Day Declaration at ¶¶ 2, 13; App'x A0001-A0010, Anuj Suvarna, *Byju Raveendran Infuses 50% of $800 Mn in Latest Funding Round; Valuation up at $22 Bn*, VCCIRCLE (Mar. 11, 2022), https://www.vccircle.com/byju-raveendran-infuses-50-of-800-mn-in-latest-funding-round-valuationup-at-22-bn ("VCCIRCLE Article"). T&L has raised billions in funding from institutional investors, including Blackstone-affiliated funds and UBS Group, and T&L's own founder and Chief Executive Officer, Byju Raveendran ("Raveendran"). *Id.* T&L and its affiliates conducted business under the trade name "BYJU's," and Raveendran built the enterprise to provide educational software and learning access on a global scale. App'x A0012-A0013, First Day Decl. at ¶ 2.

The Debtor's role in this enterprise was to raise funds as a borrower and give T&L access to Western capital markets. App'x A0013, *id.* at 3; Compl. at ¶ 17. Specifically, the Debtor was formed to borrow $1.2 billion under a term loan facility (the "Term Loan") from a consortium of lenders (the "Lenders"), with GLAS Trust Company LLC ("GLAS") acting as administrative and collateral agent. Compl. at ¶ 31; App'x A0013-A0014, First Day Declaration at ¶ 3; App'x A0013, Memorandum Opinion, *BYJU's Alpha Inc. v. Camshaft Capital Fund LP, et al.*, Adv. Pro. No. 24-50013 (JTD) (Bankr. D. Del. Feb. 27, 2025) [Adv. D.I. 383] (the "MSJ Opinion") at 2.

---

496 B.R. 366, 370, n. 2 (Bankr. E.D. Pa. 2013) (taking judicial notice of docket entries and documents attached to those entries); *Long v. Wolf*, 2019 WL 2774207, at *1 (E.D. Pa. July 1, 2019) ("The Court may consider the filings in the bankruptcy suit in resolving the motion to dismiss, as they are matters of public record."). Copies of these documents are contained in the Appendix for convenience.

Within months of issuance, in or around March to April 2022, the Debtor and its affiliates repeatedly defaulted on their loan covenants. App'x A0013, First Day Decl. ¶ 4; App'x A0600-A0601, MSJ Op. at 2–3. Within weeks of those defaults, the Debtor began moving its funds through what the Court has recognized as a series of four transfers (collectively, the "Transfers")—all without the knowledge of, and while actively concealing those transfers from, the Lenders and GLAS. App'x A0601-A0602, MSJ Op. at 3-4.

## II. First Transfer (Transfer of the "Alpha Funds")

The first of these Transfers (the "First Transfer") occurred between April 2022 and July 2022, when the Debtor made a series of wire transfers to Camshaft Capital Fund, LP (the "Camshaft Fund")[4], a small hedge fund located in Miami, Florida, totaling $533 million (*i.e.*, the "Alpha Funds"). *Id.* In exchange for the Alpha Funds, the Debtor received a limited partnership interest in the Camshaft Fund (the "LP Interest"). *Id.* The First Transfer left the Debtor with approximately $131,542,108.16 in its bank and brokerage accounts. App'x A0602, *id.* at 4.

### A. Subsequent Transfers of the Alpha Funds to OCI

Around the same time as the First Transfer, T&L hired OCI Limited ("OCI"), a London procurement and supply chain company, to "manage an extensive procurement program" under which OCI would "acquire goods and services for the benefit of T&L" at a discount. App'x A0879, Declaration of Oliver Philip Chapman, *BYJU's Alpha Inc. v. OCI Limited and Rupin Banker*, Adv. Pro. No. 25-50822 (BLS) (Bankr. D. Del.) [Adv. D.I. 25] (the "Chapman MTD Declaration") at ¶¶ 15-16.

---

[4] Camshaft Fund acted through its Florida-incorporated and Florida-based sole general partner, Camshaft Capital Management, LLC ("Camshaft Management," and together with Camshaft Fund's Florida-incorporated and Florida-based investment adviser, Camshaft Capital Advisors, LLC, "Camshaft")). App'x A0721, Debtor's Adversary Complaint, *BYJU's Alpha Inc. v. OCI Limited and Rupin Banker*, Adv. Pro. No. 25-50822 (BLS) (Bankr. D. Del.) [Adv. D.I. 1] (the "OCI Adversary Complaint") at 23, n. 35.

In connection with this arrangement, on or around April 4, 2022, OCI and the Debtor entered into a contract (the "OCI-BYJU's Alpha Contract") pursuant to which OCI agreed to intermediate the purchase of goods and services for the Debtor in exchange for advance payments totaling $350 million, to be funded by the Debtor or its designated "Supply Chain Financier Camshaft Capital LP." App'x A0879, A0882-A0894, *id.* at ¶ 17, Ex. 1.

Under this structure, once Camshaft received the Alpha Funds from the Debtor in exchange for the LP Interest, Camshaft would then disburse those funds to OCI in the form of "loans" pursuant to at least three promissory notes (collectively, the "Promissory Notes"). App'x A0881-A0894, *id*. at ¶ 17. Specifically, the arrangement among the Debtor, Camshaft, and OCI operated as follows: (i) the Debtor invested $318 million into Camshaft Fund in exchange for the LP Interest; and (ii) upon receipt of the $318 million investment, Camshaft Fund loaned the same amount of money to OCI pursuant to a promissory note. App'x A0724, OCI Adv. Compl. at ¶ 65.

To effectuate this arrangement, on April 28, 2022, the Debtor, Camshaft, and OCI executed the following four related agreements: (i) a Subscription Agreement between Debtor and Camshaft Management (the "First Subscription Agreement"); (ii) a Side Letter between Debtor and Camshaft (the "First Side Letter"); (iii) a Camshaft LP Agreement executed by Debtor (the "Camshaft LP Agreement"); and (iv) a Promissory Note executed by OCI (the "First Promissory Note"). Compl. at ¶ 35.

Following execution of these transaction documents, the Debtor transferred $318 million to Camshaft Fund via three wire transfers. *Id.* Thereafter, on May 10, 2022, Camshaft transferred $300 million of those funds to OCI and retained the remaining $18 million as prepaid interest, which was split between the Debtor and Camshaft. *Id.* at ¶¶ 2, 35-36.

On July 12, 2022, the Debtor, Camshaft, and OCI executed three additional agreements to transfer another $215 million under this arrangement: (i) a Subscription Agreement executed by Debtor ("Second Subscription Agreement"); (ii) a Side Letter between Debtor and Camshaft ("Second Side Letter"); and (iii) a Promissory Note executed by OCI ("Second Promissory Note"). Compl. at ¶ 37. On July 12-13, 2022, the Debtor wired another $215 million to Camshaft, of which approximately $190.8 million was transferred to OCI pursuant to the Second Promissory Note. Compl. at ¶ 37.

On July 15, 2022, Camshaft loaned an additional $16.52 million to OCI pursuant to a third Promissory Note (the "Third Promissory Note"), with approximately $15.1 million wired to OCI's account. *Id.* at ¶ 38. In total, Camshaft received at least approximately $10,667,500 from prepaid interest. Compl. at ¶ 39.

The OCI-BYJU's Alpha Contract and each of the Promissory Notes were executed by Oliver Chapman ("Chapman"), founder and Chief Executive Officer of OCI, on behalf of OCI. Compl. at ¶ 38; App'x A0881-A0903, Chapman MTD Decl., Exs. 1-2; App'x A0723, A0728-A0729, OCI Adv. Compl. at ¶¶ 64, 79, 83. Despite executing these transaction documents on OCI's behalf, Chapman later claimed that for OCI's part, Rupin Banker ("Banker"), a structuring advisor and member of OCI's senior leadership, "entirely directed and arranged" the transactions involving the transfer of the Alpha Funds at Raveendran's direction or with Raveendran's knowledge. App'x A0925-A0926, Declaration of Oliver Philip Chapman, *BYJU's Alpha Inc. v. OCI Limited and Rupin Banker*, Adv. Pro. No. 25-50822 (BLS) (Bankr. D. Del.) [Adv. D.I. 50] (the "Chapman 9019 Declaration"), at ¶ 2.

### B. Subsequent Transfers of the Alpha Funds from OCI to Revere and Others

Although Chapman claimed that, at the time of the transactions, he believed the Debtor-Camshaft-OCI arrangement was intended to procure goods and services for T&L's benefit,

he later admitted that, upon his review of OCI's business records, of the $505,907,436 OCI "borrowed" from Camshaft, only $13,182,215 was actually sent "to companies that appear to be involved in Think & Learn's procurement activities"—specifically, $11,840,169.22 to Google (via three transfers) and $1,342,045.83 to Sony India. App'x A0926, *id.* ¶ 4.

According to Chapman, the "lion's share" of the Alpha Funds was instead transferred to defendant Revere Master SPV LLC Series VII ("Revere Master"), a venture capital fund affiliated with defendant Revere Securities LLC, a New York-based investment banking, advisory and wealth management firm ("Revere Securities"; and together with defendants Revere Master SPV LLC and Revere Manager LLC, collectively, "Revere"). App'x A0926-A0927, *id.* at ¶ 5. According to the Debtor and Chapman, OCI transferred $479,625,000 of the Alpha Funds to Revere Master in the following five transactions:

| | |
|---|---|
| June 28, 2022 | $150,000,000 (via three tranches of $50,000,000) |
| June 29, 2022 | $103,750,000 (via two tranches of $50,000,000 and $53,750,000) |
| July 7, 2022 | $25,375,000 |
| July 15, 2022 | $150,000,000 (via three tranches of $50,000,000) |
| July 18, 2022 | $50,500,000 |

Compl. at ¶ 48; App'x at A0926, Chapman 9019 Decl. at ¶ 5.

Chapman further stated that based on his review of documents in OCI's possession, "the intention of those controlling these funds [*i.e.*, Banker and Raveendran] was that almost all were to be transferred on from [Revere Master] to a Singapore corporation, Byju's Global Pte Ltd (Byju's Global)." App'x A0927, *id.* at ¶ 7.

Despite Chapman later "itemizing down to the cent what happened to the Alpha Funds once OCI received the money" (Compl. at ¶ 42), neither the Complaint nor the Chapman 9019

Declaration attempts to explain the nature or purpose of the OCI-to-Revere or the OCI-to-BYJU's Global transactions—a conspicuous omission that leaves the Revere transfers deliberately opaque.

### C. Subsequent Transfer of the Alpha Funds from Revere to BYJU's Global

According to the Debtor, upon receiving the $479,625,000 from OCI, Revere retained $4,626,765 as a "fee" and transferred the remaining funds onward, "ultimately facilitating the roundtripping of the Alpha Funds to Raveendran personally through BYJU's Global Pte Ltd. ("BYJU's Global"), the Singapore entity that Raveendran individually owned." Compl. at ¶ 49.

Specifically, the Complaint alleges that:

> Between June 28 and July 8, 2022, Revere transferred a total of $270,000,035 to BYJU's Investments Pte Ltd., a Singapore entity owned by BYJU's Global. An additional $200,000,075 was transferred directly to BYJU's Global between July 15 and 19, 2022. BYJU's Global proceeded to loan $150,000,000 to BYJU's Holdings 1 Pte Ltd., another Singapore entity owned by Raveendran, in September 2022.
>
> Ultimately, all three entities funneled the funds back to T&L between July and October, 2022. BYJU's Investments Pte Ltd. transferred $240,000,000 to T&L between July 1 and 5, 2022, while BYJU's Holdings 1 Pte Ltd. transferred the $150,000,000 it received from BYJU's Global to T&L between September 22 and October 28, 2022.

*Id.* at ¶¶ 50-51.

Thus, there is no dispute, and in fact the Debtor repeatedly states in its Complaint and other pleadings in its bankruptcy case, that the purpose of the First Transfer and the subsequent Camshaft-OCI-Revere transfers was to ultimately re-route the Alpha Funds back to Raveendran for his own personal use. *Id.* at ¶¶ 1, 3, 44, 47, 49; App'x A0912-A0914, Debtor's 9019 Motion Pursuant to Bankruptcy Rule 9019 for Entry of an Order Approving Compromise and Agreement Between the Debtor, GLAS Trust Company LLC, and OCI Limited, *BYJU's Alpha Inc. v. OCI Limited and Rupin Banker*, Adv. Pro. No. 25-50822 (BLS) (Bankr. D. Del.) [Adv. D.I. 50]

(the "9019 Motion") ("The truth about what happened to the vast majority of the Alpha Funds is that they were, in effect, roundtripped right back to Byju Raveendran and his affiliates).

### III. Second, Third, and Fourth Transfers

After the Debtor defaulted under the Term Loan, the parties attempted to reach a negotiated solution and entered into myriad forbearance agreements and amendments. App'x A0600-A0603, MSJ Op. at 2-5; App'x A0025-A0027 First Day Decl. at ¶¶ 42-46. Following expiration of the final forbearance period, on March 3, 2023, the Lenders elected to exercise remedies, with GLAS removing Riju Raveendran, the Debtor's sole director and office and Raveendran's brother ("Riju") and appointing Timothy R. Pohl ("Pohl") as the Debtor's sole officer and director. App'x A0603, MSJ Op. at 5.

Despite this change in control, and without GLAS or the Lender's consent or knowledge, on March 31, 2023, at the direction of T&L, Riju transferred the Debtor's LP Interest to a subsidiary of T&L, Inspilearn LLC ("Inspilearn") (such transfer, the "Second Transfer"). *Id.* The Debtor received no consideration for this transfer, which was valued at that time at $540,647,109.29. App'x A0604, *id*. at 6. Following the Second Transfer, the Debtor was left with $439,905.47 in its bank accounts. *Id*.

On May 3, 2023, GLAS and Pohl filed suit in Delaware state court, seeking, among other things, a declaration that Pohl had been validly appointed as the Debtor's director and officer. *Id*. In a hearing before that court, Riju's counsel acknowledged that the Debtor transferred the Alpha Funds because "BYJU's felt the need to protect the cash." *Id*. Five days later, Raveendran told the Lenders' senior financial advisor on a call that the Debtor didn't have the Alpha Funds, and that "the money is someplace the Lenders will never find it." App'x A0605, *id.* at 7.

After reviewing the Debtor's bank records, Pohl finally discovered that the Debtor transferred the Alpha Funds to Camshaft in August 2023. *Id.*; App'x A0015, First Day Decl. at ¶ 9. Soon

thereafter, on September 5, 2023, GLAS sued Camshaft in Florida state court to avoid the transfer of the Alpha Funds, among other relief. App'x A0605, MSJ Op. at 7.

Over the next few months, more difficulties involving the BYJU's empire became public, including an audited financial report that cast doubt "on the [BYJU's Group's] ability to continue as a going concern. App'x A0016-A0017, First Day Decl. at ¶ ¶ 13-14. Against this backdrop, on February 1, 2024, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). That same day, Camshaft and Raveendran facilitated a further transfer of the LP Interest from Inspilearn to a "non-U.S. trust" of Inspilearn (the "Third Transfer"). App'x A0605, MSJ Op. at 7.

On March 5, 2024, Riju submitted a declaration stating that the Alpha Funds had been transferred again to a "non-U.S. based subsidiary of BYJU's" (the "Fourth Transfer"). *Id.*

## IV. Camshaft Adversary Proceeding and Summary Judgment

On February 2, 2024, the Debtor commenced an adversary proceeding against Camshaft, seeking to avoid and recover the transfer of the Alpha Funds. App'x A0048-A0160, Complaint [Redacted], *BYJU's Alpha, Inc. v. Camshaft Capital Fund, LP, et al.*, Adv. Pro. No. 24-50013 (BLS) (Bankr. D. Del.) [Adv. D.I. 5] (as amended, the "Camshaft Adversary Complaint"). The Debtor later amended the Camshaft Adversary Complaint to assert claims against Camshaft, Inspilearn and Riju after discovering details surrounding the Second, Third, and Fourth Transfers. App'x A0161-A0586, Second Amended Complaint, *BYJU's Alpha, Inc. v. Camshaft Capital Fund, LP, et al.*, Adv. Pro. No. 24-50013 (BLS) (Bankr. D. Del.) [Adv. D.I. 153].

On July 8, 2024, the Debtor moved for partial summary judgment on its claims for actual and constructive transfer against Inspilearn and T&L, breach of fiduciary duty against Riju, a declaratory judgment that all subsequent transfers or dispositions of the Alpha Funds were void, and conversion against Riju and T&L. App'x A0587-A0597, Motion for Partial Summary

Judgment, *BYJU's Alpha, Inc. v. Camshaft Capital Fund, LP, et al.*, Adv. Pro. No. 24-50013 (BLS) (Bankr. D. Del.) [Adv. D.I. 275] (the "Motion for Summary Judgment").

On February 27, 2025, the Court issued its MSJ Opinion, granting the Debtor's Motion for Summary Judgment. App'x A0598-A0641, MSJ Op.[5] Notably, the MSJ Opinion did not address—or make any findings as to—the conduct or culpability of any transferees subsequent to Camshaft, including OCI or Revere, such as whether those entities took their portion of the Alpha Funds in good faith or functioned as mere conduits to route the funds back to Raveendran.

**V. OCI Adversary Proceeding and 9019 Settlement**

On May 5, 2025, the Debtor commenced an adversary proceeding against OCI and Banker, asserting claims under sections 544(b)(1) and 550(a)(2) of the Bankruptcy Code to recover the Alpha Funds, as well as claims for aiding and abetting breaches of fiduciary duty by Riju, T&L, and Camshaft Management. App'x A0698-A0874, OCI Adv. Compl.

On July 14, 2025, OCI moved to dismiss the OCI Adversary Complaint, or in the alternative, to stay the action in favor of arbitration pursuant to the BYJU's Alpha-OCI Contract. App'x A0904-A0909, Defendant OCI Limited's Motion to Dismiss or in the Alternative, to Stay this Case in Favor of Arbitration, *BYJU's Alpha Inc. v. OCI Limited and Rupin Banker*, Adv. Pro. No. 25-50822 (BLS) (Bankr. D. Del.) [Adv. D.I. 23] (the "OCI Motion to Dismiss").

---

[5] On March 14, 2025, the Court entered a Judgment Order, adjudging, among other things: (i) the transfer of the Alpha Funds to Camshaft Fund was an actual fraudulent transfer and avoided under sections 544(b) and 548(a)(1)(A) of the Bankruptcy Code; (ii) Camshaft Fund is liable to the Debtor and GLAS in the amount of $533,000,000.00, plus interest and costs; (iii) the Debtor's transfer of the LP Interest to Inspilearn, for the benefit of T&L, was an actual fraudulent transfer and is avoided under sections 544(b) and 548(a)(1)(A) of the Bankruptcy Code; and (iv) Inspilearn and T&L are jointly and severally liable to the Debtor and GLAS in the amount of $540,647,109.20, plus interest and costs. App'x A0910-A0928, Judgment Order, *BYJU'S Alpha Inc. v. Camshaft Capital Fund LP, et al.*, Adv. Pro. No. 24-50013 (BLS) (Bankr. D. Del. Mar. 14, 2025) [Adv. D.I. 388] (the "Judgment Order").

Although the OCI Motion to Dismiss was fully briefed and pending decision, on November 15, 2025, the Debtor and GLAS decided to enter into a settlement with OCI and release their claims against OCI and Chapman. App'x A0910-A0927, OCI Motion. Banker was not a party to, and was not released under, the settlement.

In its 9019 Motion, the Debtor represented that it had decided to settle with OCI because OCI and Chapman provided valuable information tracing the disposition of the Alpha Funds "down to the cent" following OCI's receipt thereof. *Id*. The Debtor also justified the release of Chapman and OCI by representing that it "has come to understand that a single former OCI representative, Defendant Rupin Banker, in conjunction with Raveendran, among others (not Chapman), abused OCI to facilitate a fraud on the Debtor and its creditors." App'x A0913-A0914, *id.* at ¶¶ 3–5.

In support of the settlement, Chapman submitted a sworn declaration tracing the movement of the Alpha Funds, including the transfers from OCI to Revere. App'x A0913, *id.* at ¶ 2.[6]

## VI. Raveendran Adversary Proceeding

On April 9, 2025, the Debtor and GLAS commenced an adversary proceeding against Raveendran and others, asserting claims for breach of fiduciary duties, aiding and abetting breach of fiduciary duties, accounting, conversion, and civil conspiracy. App'x A0647-A0697, Complaint, *BYJU's Alpha Inc. v. Byju Raveendran, et al.*, Adv. Pro. No. 25-50526 (BLS) (Bankr. D. Del.) [Adv. D.I. 1]. On November 20, 2025, the Court granted default judgment against Raveendran, and issued an amended opinion on December 8, 2025 [Adv. D.I. 143, 167]. App'x A0928-A0951, Opinion, *BYJU's Alpha Inc. v. Byju Raveendran, et al.*, Adv. Pro. No. 25-50526

[6] On December 1, 2025, the Court approved the settlement among the Debtor, GLAS, and OCI. App'x A0952-A0955, Order Approving Compromise and Agreement Among the Debtor, GLAS Trust Company LLC, and OCI Limited, *BYJU's Alpha Inc. v. OCI Limited and Rupin Banker*, Adv. Pro. No. 25-50822 (BLS) (Bankr. D. Del.) [Adv. D.I. 63].

(BLS) (Bankr. D. Del. Nov. 20, 2025) [Adv. D.I. 143]; App'x A0956-A0976, Amended Opinion, *BYJU's Alpha Inc. v. Byju Raveendran, et al.*, Adv. Pro. No. 25-50526 (BLS) (Bankr. D. Del. Dec. 8, 2025) [Adv. D.I. 167] (collectively, the "Default Judgment").

Following the Default Judgment, on April 2, 2026, Raveendran's attorney, J. Michael McNutt ("McNutt") filed a redacted copy of his declaration in support of Raveendran's brief on the assessment of damages. App'x A0977-A3096, Declaration of J. Michael McNutt, *BYJU's Alpha Inc. v. Byju Raveendran, et al.*, Adv. Pro. No. 25-50526 (BLS) (Bankr. D. Del.) [Adv. D.I. 205] (collectively, the "McNutt Declaration"). Attached as Exhibit 1 to the McNutt Declaration is a spreadsheet summarizing the transactions concerning the Alpha Funds, which he claims was based entirely from documents the Debtor and GLAS have possessed since before the Raveendran Adversary Complaint was filed (the "Spreadsheet"). App'x A0983, McNutt Decl. at ¶ 10.

The Spreadsheet references: (1) a $479 million investment from OCI to Revere Master; and (2) a $475 million Facility Agreement, as amended, dated June 27, 2022, between Revere and BYJU's Investments. *See, e.g.,* App'x A1014, A1019, Spreadsheet at 3, 8. Footnotes to the Spreadsheet state the foregoing information came from the following documents: (1) documents provided by HSBC Bank NA in its response to the subpoenas issued on March 21 and April 2, 2025 and received from Debtor's counsel (Quinn Emanuel LLP) on June 30, 2025; (2) a witness statement submitted by Scott Cramer on behalf of Qatar Investment Authority ("QIA") in a Singapore arbitration proceeding; and (3) a Cash-Settled Option Transaction letter sent by QIA to BYJU's Investments dated September 7, 2022. App'x A1019, Spreadsheet, at 8.[7] The witness statement by Scott Cramer states that in 2022, BYJU's Investments, as borrower, entered into a

[7] These documents were attached to the Spreadsheet as Exhibits 9 (HSBC Bank Transaction Ledger re OCI Limited), Exhibit 51 and 52 (subpoenas issued by Debtor to HSBC Bank), Exhibit 21 (HSBC Bank's response to Debtor's subpoenas), Exhibit 34 (Cramer witness statement), and Exhibit 35 (QIA letter). *See* App'x A2969-A3008, A2418-A2419, A2742-A2762, A2763-A2808.

facility with Revere Master, as lender, "the sole purpose of which was to fund the purchase of T&L shares." App'x A2748-A2749, Spreadsheet, Ex. 34 at ¶ 12.

### VII. Revere Adversary Proceeding

On March 13, 2026, the Debtor commenced this adversary proceeding against the Defendants. Unlike the Camshaft and OCI adversary complaints, this Complaint does not assert any claims for aiding or abetting breaches of fiduciary duty. Instead, it asserts a single cause of action seeking to recover the entire $480 million that Revere allegedly received from OCI in an arm's-length downstream transaction and subsequently transferred onward to BYJU's Investments and BYJU's Global—only $4,626,765.00 of which the Complaint alleges Revere actually retained as a bargained for and contractually entitled fee pursuant to the parties' agreements—pursuant to section 550(a)(2) of the Bankruptcy Code.

## LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6)—made applicable to these proceedings by Bankruptcy Rule 7012(b)—a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint satisfies the plausibility test only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While the "plausibility standard is not akin to a 'probability requirement,'" it does "ask[ ] for more than a sheer possibility that [the] defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 545.

The Third Circuit has adopted a two-part analysis to determine whether allegations in a complaint satisfy Rule 12(b)(6). *See Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d. Cir. 2009).

First, the factual and legal elements of the claim are separated, and the court must accept only the well-pleaded facts as true and may disregard any legal conclusions. *Id*. at 210-11. Second, the court must determine whether the alleged facts demonstrate that the plaintiff has a "plausible" claim for relief. *Id*. at 211. "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement on its facts." *Id*. (citations omitted). If the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint is legally insufficient. *Id*.[8]

Courts routinely dismiss complaints after determining that they merely contain "threadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).[9]

**ARGUMENT**

The Complaint should be dismissed because it fails to plead a viable claim for recovery against the Defendants under section 550(a)(2) of the Bankruptcy Code for two independent reasons.

First, the Debtor does not plausibly allege that Revere was a "transferee" within the meaning of section 550(a)(2), rather than a mere conduit. By the Debtor's own repeated admissions, Revere was a downstream intermediary that simply passed the Alpha Funds along—

[8] When deciding on a motion to dismiss, courts generally consider "only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." *Pension Ben. Guar. Corp.*, 998 F.2d at 1196 (citations omitted). The Court may also take judicial notice of adjudicative facts. Fed. R. Civ. P. 201.

[9] *See, e.g., U.S., ex rel. Pilecki-Simko v. Chubb Inst.,* 443 F. App'x 754, 761 (3d Cir. 2011) (affirming dismissal of a False Claims Act action because complaint merely contained conclusory allegations that defendant knew its certifications of compliance were false without sufficient factual support); *In re Domiano*, 422 B.R. 497 (Bankr. M.D. Pa. 2009) (dismissing negligence and breach of fiduciary duty claims because the complaint offered only threadbare recitals of each element without any factual substance); *Creel v. Rowan Univ.*, 2017 WL 2734709, at *3 (D.N.J. June 26, 2017) (dismissing claims because the allegations were "classic 'threadbare recitals of the elements' of attempted causes of action 'supported by mere conclusory statements'").

"roundtripping" them back to Raveendran and his affiliates—without exercising dominion or control over those funds. Those admissions are fatal to any attempt to characterize Revere as anything other than a conduit, and the Complaint contains no well-pleaded facts to the contrary.

Second, the Complaint fails to allege facts sufficient to overcome section 550(b)'s safe harbor for subsequent transferees who took for value, in good faith, and without knowledge of voidability. Although the Debtor now claims to know what happened to the Alpha Funds "down to the cent," the Complaint conspicuously omits facts explaining how or why Revere received the funds from OCI and transferred them onward. The Debtor cannot plausibly allege Revere's bad faith while withholding those critical details—particularly where the Debtor has acknowledged that it released Chapman and OCI, the immediate transferor of the funds to Revere, because they were found not to be culpable participants in the alleged scheme.

Taken together, the Complaint and the Debtor's own admissions show that Revere was a downstream conduit with no basis to suspect fraud. Because the Debtor knows it cannot plausibly allege dominion and control or inquiry notice based on its own investigation and without contradicting its prior representations, the Complaint should be dismissed with prejudice.

## I. The Complaint Must Be Dismissed Because Revere Was a Mere Conduit.

Section 550 of the Bankruptcy Code limits the universe of parties from whom an avoided transfer may be recovered. Specifically, to the extent a transfer is avoided under certain provisions of the Bankruptcy Code (such as section 548), a trustee or debtor-in-possession may recover the transferred property or its value only from: "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a).

The Debtor does not assert that Revere was an initial transferee, but a mediate transferee within the meaning of section 550(a)(2) because it allegedly "received a portion of the Alpha

Funds—approximately $480 million—from the initial transferee or a subsequent transferee thereof." Compl. at ¶ 57.

### A. The Complaint Fails to Demonstrate that Revere is a "Transferee" under Section 550(a)(2) of the Bankruptcy Code.

This Court has held that "[a] valid avoidance claim against a subsequent transferee [under section 550(a)(2)], requires ***the plaintiff*** to plead and prove that (1) the initial transaction was avoidable and (2) the initial transfer was later made to-or for the benefit of-the subsequent or mediate transferee." *In re Mervyn's Holdings, LLC*, 426 B.R. 96, 102 (Bankr. D. Del. 2010) (emphasis added). Therefore, the Debtor has the burden of proving that the initial transfer of the Alpha Funds was avoidable and was later made to or for the benefit of Revere as a mediate transferee.

While the term "transferee" is neither defined in the Bankruptcy Code nor discussed in the legislative history of section 550, this Court has adopted the Seventh Circuit's holding in *Bonded Financial* that a party must have "dominion and control" over the transferred funds or property to be considered a "transferee" under section 550 of the Bankruptcy Code. *See In re Mervyn's Holdin*gs, 426 B.R. at 103 (citing *In re Factory 2–U Stores, Inc.*, 2007 WL 2698207, *3 (Bankr. D. Del. Sept. 11, 2007) (citing *Bonded Fin. Servs., Inc. v. European American Bank*, 838 F.2d 890, 893 (7th Cir. 1988))). This test has created the "mere conduit" defense for parties that receive funds solely to pass them along to another without discretion over their ultimate disposition. *Argus Mgmt. Grp. v. GAB Robins, Inc. (In re CVEO Corp.)*, 327 B.R. 210, 216 (Bankr. D. Del. 2005).

This mere conduit defense requires a "transferee" to have "'dominion over the money or other asset [and] the right to put the money to one's own purposes.'" *In re Factory 2–U Stores, Inc.*, 2007 WL 2698207 at *3 (quoting *Bonded Fin. Servs.*, 838 F.2d at 894). In other words, a "transferee must have the legal right to use the funds to whatever purpose he or she wishes, be it

to invest in 'lottery tickets or uranium stocks.'" *Id*. (quoting *Bonded Fin. Servs.*, 838 F.2d at 894) (quoting *In re Anton Noll*, 277 B.R. 875, 879 (1st Cir. BAP 2002)).

Courts routinely dismiss claims under section 550 of the Bankruptcy Code when the subsequent transferee did not have dominion or control over the transferred property.[10]

Here, the Complaint's own allegations establish that Revere only acted as a mere conduit. The Debtor repeatedly concedes that Revere transferred the "vast majority" of the $480 million it allegedly received from OCI onward to BYJU's Investments and BYJU's Global as part of a "roundtripping" scheme designed to return the funds to Raveendran and his affiliates. *See* Compl. ¶¶ 2–4, 44, 47–48. Indeed, the Debtor affirmatively alleges that Revere was simply "another entity in a deliberately constructed daisy chain designed to move the Alpha Funds beyond the reach of the Debtor and its creditors." *Id*. ¶ 4.

Critically, however, the Complaint omits any factual allegations showing that Revere had dominion or control over where the funds ultimately ended up. With the exception of a $4,626,765.00 "fee" Revere allegedly retained, the Complaint does not allege that Revere had discretion to deploy the funds for its own purposes, to redirect them elsewhere, or to determine whether—or to whom—the funds would be transferred next. Nor does the Debtor plead the existence of any agreement granting Revere such authority. This omission is particularly striking given the Debtor's repeated assertion that it knows what happened to the Alpha Funds "down to the cent." *Id*. at ¶¶ 3, 8, 42, 46, 60. Having conceded that the funds were transferred onward to

[10] *See, e.g., Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1196–1202 (10th Cir. 2002) (holding that escrow agent which could not disburse funds without express directions was mere conduit for escrow funds); *Christy v. Alexander & Alexander of New York Inc. (In re Finley)*, 130 F.3d 52, 57 (2d Cir.1997) (concluding that insurance broker which received premiums and remitted them to insurance company was a mere conduit); *Lowry v. Sec. Pac. Bus. Credit, Inc. (In re Columbia Data Prods., Inc.)*, 892 F.2d 26, 28 (4th Cir.1989) (holding that creditors' committee which received funds from debtor and distributed them to creditors was mere conduit); *Official Comm. of Unsecured Creditors v. Guardian Ins. 401 (In re Parcel Consultants, Inc.)*, 287 B.R. 41, 46 (Bankr. D.N.J. 2002) (finding insurance company which administered 401k plan for debtor was mere conduit for plan funds).

BYJU's Investments and BYJU's Global to effectuate their roundtrip back to T&L, but having failed to allege any facts showing Revere controlled that outcome, the Complaint pleads precisely the opposite of dominion and control.

Moreover, courts have held that a mediate transferee's retention of a fee from transferred funds does not, without more, establish dominion or control sufficient to defeat mere-conduit status. *See, In re Lifecare Techs., Inc.*, 305 B.R. 88, 92 (Bankr. M.D. Fla. 2003) (holding creditor's attorney who retained a fee from funds received from debtor did not exercise dominion or control where funds were disbursed to his clients and not for his own benefit). Therefore, the Complaint's allegation that Revere retained a fee, without more, does not defeat its status as a mere conduit.

In short, by the Debtor's own admissions, Revere functioned as an arm's-length, downstream intermediary that passed $480 million of the Alpha Funds along without authority over their ultimate disposition. Despite allegedly retaining a $4.6 million fee, the allegations establish, on the face of the Complaint, that Revere was a mere conduit—and not a transferee—under section 550(a)(2), requiring dismissal as a matter of law. Even if the Court determines that the Debtor does not bear the burden of proving that Revere had dominion and control over the funds, but rather that the mere conduit defense is an affirmative defense, dismissal at this stage is still appropriate because, as discussed above, the defense "appears on the face of the complaint." *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001).

## II. The Complaint Must Be Dismissed Because the Defendants Took the Subsequent Transfers for Value and in Good Faith.

Section 550(b)(1) of the Bankruptcy Code independently bars recovery from an immediate or mediate transferee "that takes for value, . . . in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b)(1). Despite attempting to allege that the Defendants are not protected by this safe harbor, the Debtor fails to plead any non-conclusory facts

showing that Revere did not take the funds for value and in bad faith. Indeed, the filings in this bankruptcy case (of which the Court should take judicial notice of) infer the opposite conclusion, that Revere could not have been on inquiry notice of the Debtor's insolvency or the alleged fraudulent scheme to roundtrip the funds back to Raveendran.

### A. The Debtor, as Proponent of Recovery, Must Allege that the Defendants Did Not Take for Value and in Good Faith.

A bankruptcy trustee or debtor-in-possession seeking to recover an avoided transfer from a subsequent transferee under section 550 of the Bankruptcy Code bears the burden of pleading and proving that the subsequent transferee did not accept the debtor's property in good faith. As the Third Circuit has recognized, "the Code treats initial transferees in a different manner than subsequent transferees," and "a substantial argument can be made in favor of placing the burden of proof on the trustee with respect to subsequent transferees." *In re Bressman*, 327 F.3d 229, 236 n.2 (3d Cir. 2003); *accord In re Nordic Village*, 915 F.2d 1049, 1063-1064 (6th Cir. 1990) (Kennedy, J., dissenting), *rev'd on other grounds*, 503 U.S. 30 (1992).

Placing the burden of proving lack of good faith on the trustee is practical and equitable because subsequent transferees, such as the Defendants, are not in privity with the debtor and are "much more likely to be innocent third parties" and often have "little ability to protect themselves by making cursory checks on their transferor." *Nordic Village*, 915 F.2d at 1063 (Kennedy, J., dissenting); *accord Bressman*, 327 F.3d at 236 n.2 (citation omitted).

While the Third Circuit has reserved this question on burden of proof "for another day" (*Bressman*, 327 F.3d at 236 n.2), this Court should follow the numerous decisions that have held that the plaintiff has the ultimate burden of proving lack of good faith.[11]

[11] *See, e.g., G-I Holdings, Inc. v. Those Parties Listed on Ex. A (In re G-I Holdings, Inc.)*, 313 B.R. 612, 645 (Bankr. D.N.J. 2004) ("In order to recover from ... [the] mediate or immediate transferees, the [plaintiff] has the burden of proving that [the mediate or immediate transferees], or both, did not take the transfer for value and in good

Indeed, the Debtor has accepted this burden by affirmatively arguing that the Defendants "are not entitled to the protections of section 550(b) of the Bankruptcy Code . . .." *See* Compl. at ¶ 60. The Court should therefore decide whether the Debtor has sufficiently pled the Defendants did not take the transferred funds for value and in good faith when ruling on the Motion to Dismiss.

**B. The Debtor Fails to Plead that the Defendants Did Not Take the Transferred Property for Value.**

The Complaint fails to plausibly allege that OCI did not receive value in exchange for its transfers to the Defendants. *See Williams v. Mortillaro (In re Resource, Recycling & Remediation, Inc.)*, 314 B.R. 62, 70 (Bankr. W.D. Pa. 2004) ("The term 'for value' as used in [section 550(b)] does not require that any value be given by a subsequent transferee to *the debtor*. A subsequent transferee need only provide value to its *transferor* . . ..").

Instead, the Debtor alleges in conclusory fashion, unsupported by well-pleaded factual allegations, that the Defendants did not take the funds "for value". Compl. ¶ 60. Threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not survive a 12(b)(6) motion. *Iqbal*, 556 U.S. at 663; *see also Twombly*, 550 U.S. at 556. Moreover, there is no requirement that the value of the property received from OCI, as the earlier transferee,

faith, and that they had knowledge of the voidability of the transfer."); *Lustig v. Hickey (In re Hickey)*, 168 B.R. 840, 850 (Bankr. W.D.N.Y. 1994) ("The trustee has the burden of proving that the defendant should not have the benefit of the shelter provided by Section 550(b)(1) . . .."); *Belford v. Breck (In re Med. Cost Mgmt., Inc.)*, 115 B.R. 406, 409 (Bankr. D. Conn. 1990) ("[T]he plaintiff has the burden of proving that [the subsequent transferee] did not take the transfer for value and in good faith, and that he had knowledge of the voidability of the transfer."); *Friedman v. Vinas (In re Trauger)*, 109 B.R. 502, 504 (Bankr. S.D. Fla. 1989) ("[T]he Court finds that the Trustee has not proved that [the subsequent transferee] had knowledge of the voidability of the transfer and, moreover, that he gave equivalent value in exchange."); *Holt v. Fed. Dep. Ins. Corp. (In re Instrument Sales & Serv., Inc.)*, 99 B.R. 742, 746 (Bankr. W.D. Tex. 1987) ("[T]he case law clearly establishes, when § 550 is asserted, that the trustee bears the burden of at least asserting that the transferee is not a transferee protected by § 550."); *De Rochfort Co. Ltd. v. Sunshine State Bank (In re De Rochfort Co. Ltd.)*, 22 B.R. 826, 827 (Bankr. S.D. Fla. 1982) ("It was the debtor's burden to negative that the transfer to [the subsequent transferee] was for value, in good faith and without knowledge of voidability."); *see also Nordic Village*, 915 F.2d at 1063-64 (Kennedy, J., dissenting) ("Absent an express rule placing the burden of proof on subsequent transferees . . . the burden should rest on the party seeking to recover the property, at least as to the issues of the subsequent transferee's good faith and knowledge.").

must be *reasonably equivalent value* to the value of the property given to the Defendants, as subsequent transferees. *See In re Resource, Recycling & Remediation, Inc.*, 314 B.R. at 70 (citing *Coleman v. Home Savings Association (In re Coleman)*, 21 B.R. 832, 836 (Bankr. S.D. Tex. 1982). As long as OCI received "consideration sufficient to support a simple contract," it received "value" for purposes of section 550(b). *In re Enron Corp.*, 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005). The Defendants assert OCI did receive such consideration as the transfer was part of an investment transaction between OCI and Revere, which the McNutt Declaration claims that Debtor has knowledge and documentation for. *See* App'x A1014, A1019, Spreadsheet at 3, 8.

**C. The Debtor Fails to Plead that the Defendants Received the Transferred Property in Bad Faith.**

The Complaint further fails to plausibly allege that the Defendants received the transferred funds from OCI in bad faith. To recover the $480 million that the Debtor alleges the Defendants received from OCI, the Debtor must allege facts showing that Revere, as the transferee, either had actual knowledge that the transfers were recoverable or was aware of facts and circumstances sufficient to place an ordinarily prudent person on inquiry notice, such that a reasonably diligent inquiry would have revealed the transfers' recoverability. *See In re Maxus Energy Corp.*, 641 B.R. 467, 511 (Bankr. D. Del. 2022); *see also In re Bressman*, 327 F.3d at 236 ("[A] transferee has knowledge if he knew facts that would lead a reasonable person to believe that the property transferred was recoverable.").

Once a transferee has been put on inquiry notice of either the transferor's potential insolvency or of the possibly fraudulent purpose of the transfer, the transferee must conduct a diligent investigation. *In re Maxus Energy Corp.*, 641 B.R. at 511 (citations omitted). However, inquiry notice "is not the same as a duty to investigate . . .." *Bressman*, 327 F.3d at 237 (quoting

*Bonded Fin. Serv.*, 838 F.2d at 898). "A transferee that lacks the information necessary to support an inference of knowledge need not start investigating on his own." *Id*.

If a complaint fails to plead facts sufficient to show that the transferee was placed on inquiry notice, then, as a matter of law, the transferee will be deemed to have received the challenged transfer in good faith. Even if the transferee is on inquiry notice, the transfer will nevertheless be deemed to be in good faith if the transferee "conducted a diligent investigation of the facts that put it on inquiry notice," or if a diligent inquiry would not have "discovered the fraudulent purpose of the transfer." *In re Bayou Group, LLC*, 439 B.R. 284, 290 (S.D.N.Y. 2010) (quoting *Hayes v. Palm Seedlings Partners–A (In re Agric. Research & Tech. Grp.)*, 916 F.2d 528, 536 (9th Cir. 1990)).

Courts recognize that fraudulent conduct in a debtor's business does not automatically render every payment subject to avoidance. *See In re Carrozzella & Richardson*, 286 B.R. 480, 489 (D. Conn. 2002). The good faith analysis must center on facts "specific to the transfer at issue," rather than on "the transferor's activities in general." *Bayou Group*, 439 B.R. at 311.

Here, the Complaint fails to plausibly allege that the Defendants took the challenged transfers with actual knowledge of their voidability or with knowledge of facts sufficient to place them on inquiry notice. Instead, the Debtor relies on conclusory assertions, impermissible hindsight, and allegations directed at other actors involved in other transactions, none of which suffice to establish that the Defendants took the transfers in bad faith.

***i. The Complaint Fails to Allege Facts Showing that the Defendants Were on Inquiry Notice that the Debtor was Insolvent or that the OCI-to-Revere Transfers Were Made with a Fraudulent Purpose.***

The Complaint fails to plead sufficient facts showing that the Defendants were on inquiry notice that the transfers made from OCI to Revere were made with a fraudulent purpose. *See In re Maxus Energy Corp.*, 641 B.R. at 511; *Bayou Group*, 439 B.R. at 311.

Although the Debtor claims it obtained information from OCI that "unravel[] the truth behind what happened to the Alpha Funds," (App'x A0913-A0914, 9019 Motion at ¶ 5) the Complaint conspicuously omits any facts explaining the nature or purpose of the transactions between OCI and Revere, or between Revere and BYJU's Investments and BYJU's Global.

That omission is particularly telling given that, in a separate adversary proceeding, Raveendran's attorney attested that the Debtor and GLAS possess documentation showing that OCI transferred approximately $479 million of the Alpha Funds to Revere as an investment in Revere Master. *See* App'x A0983, McNutt Decl. at ¶ 10; App'x A1014, A1019, Spreadsheet at 3, 8. The Spreadsheet attached to the McNutt Declaration showing the flow of the Alpha Funds, which, again, Raveendran's attorney claims is based on documentation possessed by the Debtor and GLAS, further states that Revere Master subsequently loaned the funds it received from OCI's investment to BYJU's Global and BYJU's Investments pursuant to a facility agreement dated June 27, 2022, and that such facility's "sole purpose" was to fund the purchase of shares in T&L. *See* App'x A1013; A2741-A2808, Spreadsheet, at 8, Exs. 34–35; App'x A0983, McNutt Decl. at ¶ 10.

For purposes of this Motion to Dismiss, however, the details of the transactions between OCI, Revere, and BYJU's Investments and BYJU's Global must be gleaned from the Debtor's other filings in this bankruptcy case (of which the Court may take judicial notice). Those filings reflect, among other things, that:

1. At the relevant time in 2022, T&L (the ultimate parent company of the Debtor and an affiliate of BYJU's Global) was widely viewed as one of the most successful start-ups worldwide and valued at over $22 billion (App'x A0012-A0013, First Day Decl. ¶ 2; App'x A0001-A0010, VCCIRCLE Article);
2. In April 2022, OCI entered into a contract with the Debtor (the OCI-BYJU'S Alpha Contract) to procure goods and services for the Debtor at a discount in exchange for advance payments either funded by the Debtor or its designated supply chain financier, Camshaft (App'x A0879, A0881-A0894, Chapman MTD Decl. ¶ 17 & Ex. 1);

3. In connection with the OCI-BYJU'S Alpha Contract, Camshaft loaned $533 million (the Alpha Funds) to OCI for the procurement pursuant to various Promissory Notes under which OCI was obligated to repay the funds over three years (App'x A0723-A0729, OCI Adv. Compl. ¶¶ 64-83, 99);
4. OCI never disclosed the existence of the Promissory Notes in its publicly-filed and audited financial statements for 2022, 2023, or 2024, and instead recorded the $533 million it received from Camshaft as revenue (App'x A0734, OCI Adv. Compl. ¶ 99);
5. Indeed, the Debtor expressly admitted that "no one reviewing OCI's audited financial statements would ever have known that OCI had borrowed the Alpha Funds" (App'x A0734, *id.* ¶ 100);
6. OCI then transferred approximately $480 million of the Alpha Funds to Revere, which is recognized as a provider of investment banking and wealth management services, in a series of transactions in June and July 2022 (Compl. ¶¶ 6, 48; App'x A0927, Chapman 9019 Decl. ¶ 6);
7. Revere retained a modest service fee from the funds it received from OCI and transferred the vast majority of those funds onward—approximately $200,000,075 to BYJU's Global (an entity owned by Raveendran) and approximately $270,000,035 to BYJU's Investments (a subsidiary of BYJU's Global) between June and July 2022 (Compl. ¶ 50);
8. BYJU's Global subsequently loaned $150,000,000 to BYJU's Holdings 1 Pte Ltd. ("BYJU's Holdings 1"), another entity owned by Raveendran, in September 2022 (*id.*);
9. BYJU's Investments and BYJU's Holdings 1 then transferred the funds to T&L between July and October 2022 (*id.* ¶ 51);
10. Pohl, the Debtor's sole director and officer after Riju was ousted, did not discover the initial transfer of the Alpha Funds to Camshaft until August 2023 and the Debtor did not commence this bankruptcy case until February 1, 2024 (App'x A0015, First Day Decl. ¶ 9).

None of these facts, if accepted as true, establish that there were "red flags" associated with the OCI-to-Revere transactions (or the Revere-to-BYJU's transactions) that would have placed a reasonably prudent person in the Defendants' position on inquiry notice. *See In re Maxus Energy Corp.*, 641 B.R. at 511.

Instead, every purported "red flag" cited in the Complaint relates to the initial transfers from the Debtor to Camshaft, or to Camshaft's relationship with OCI. The Complaint repeatedly quotes this Court's MSJ Opinion out of context to suggest that the OCI-to-Revere transfers

"exhibited numerous red flags" that should have alerted downstream transferees to fraud. *See* Compl. ¶ 60(b) (quoting MSJ Op. at 24). But the MSJ Opinion addressed only whether *Camshaft* took the transfers it received from the Debtor in good faith, based on Camshaft-specific facts such as the size of the transactions relative to its assets, its fee structure, and its lack of downside exposure. *See* App'x A0622, MSJ Op. at 24. None of those findings concern Revere, and none speak to what Revere knew—or reasonably should have known—when it received funds from OCI and transferred them onward to the BYJU's Singapore entities.

The Complaint thus rests on the flawed assumption that alleged red flags surrounding the Debtor-to-Camshaft transfer automatically taint every downstream transfer of the same funds. Courts squarely reject that approach when assessing inquiry notice. *See Carrozzella*, 286 B.R. at 489; *Bayou Group*, 439 B.R. at 311.

Here, the Complaint does not allege facts showing that Revere knew of (i) the Debtor's insolvency, (ii) any fraudulent intent by the Debtor, Camshaft, or OCI, (iii) the terms or circumstances of the Debtor-to-Camshaft or Camshaft-to-OCI transactions, or (iv) any voidability risk associated with the OCI-to-Revere transfers themselves. Absent such allegations, Revere cannot be deemed to have been on inquiry notice as a matter of law. *See Bressman*, 327 F.3d at 237; *In re Maxus Energy Corp.*, 641 B.R. at 511.

Lastly, the Debtor's assertion that OCI is a "sham" enterprise based on its own post-hoc investigation is also insufficient to establish that the Defendants were on inquiry notice. Indeed, the Debtor has acknowledged that OCI held itself out as a legitimate business and actively marketed its international presence as a key strategic business advantage. App'x A0621, *id.* at ¶ 23. While the Complaint now asserts that an investigation into OCI and Banker would have revealed OCI as a sham and Banker as a fraudster, it fails to plead that the Defendants had any

information at the time the transfers took place to support an inference of knowledge that would require them to conduct their own investigation into OCI or Banker.

#### *ii.* ***The Debtor's Voluntary Settlement and Release of Claims Against OCI and Chapman Further Defeats Its Bad Faith Theory Against the Defendants.***

The Debtor's settlement with OCI and its release of all claims against OCI and Chapman (OCI's CEO and founder) independently defeats its attempt to plead that Revere acted in bad faith when it took the funds from OCI.

In seeking court approval of its settlement with OCI and release of OCI and Chapman, the Debtor expressly represented that a single former representative of OCI, Banker, orchestrated the fraud "in conjunction with Raveendran, among others" but expressly excluding Chapman. App'x A0913, 9019 Motion at ¶ 3. The Debtor further represented that following its own investigation, it had "no basis to pursue a claim against Chapman." App'x A0913-A0914, *id*. at ¶ 5.

These representations are fatal to the Debtor's claim that Revere was on inquiry notice of OCI's fraudulent intent. If the Debtor takes the position that OCI's own CEO was not involved or even aware of the alleged fraud, the Complaint cannot plausibly allege that Revere—an arm's-length downstream transferee—was on inquiry notice merely by receiving funds from OCI.

The sworn Chapman 9019 Declaration also undercuts the Complaint's bad faith accusations. In his declaration, despite signing the OCI-BYJU'S Alpha Contract and the Promissory Notes on behalf of OCI, Chapman swore that the fraudulent scheme was "entirely directed and arranged by Rupin Banker." App'x A0925-A0926, Chapman 9019 Decl. at ¶ 2. Notably absent from the Chapman Declaration are any allegations that: (i) the Defendants coordinated the OCI-to-Revere transfers with Banker; (ii) Revere had any communications with Banker concerning the alleged fraudulent scheme; or (iii) Revere knew that the funds it received

from OCI traced back to the Debtor or Camshaft, or that the transfers were made for a fraudulent purpose.

Moreover, the Debtor cannot simultaneously (i) concede in its 9019 Motion that it has no viable claim against OCI or Chapman because the alleged fraud was committed by Banker, a rogue advisor, and (ii) plausibly allege that the Defendants were on inquiry notice of that same fraud merely by transacting with OCI (and not specifically with Banker). If OCI and Chapman were not alleged to have knowingly participated in the fraud, it necessarily follows that Revere's receipt of funds from OCI does not, without more, trigger inquiry notice. Accordingly, the Debtor fails to plead that the Defendants took the funds in bad faith, barring recovery from the Defendants as subsequent transferee under section 550(b)(1) of the Bankruptcy Code.

**III. The Complaint Should Be Dismissed with Prejudice.**

The Complaint should be dismissed with prejudice because amendment would be futile and inequitable. The Third Circuit has established that dismissal with prejudice may be granted on a motion to dismiss when amendment would be justified on grounds of bad faith, undue delay, prejudice, or futility. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Amendment would be futile where "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* (citations omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (reiterating Third Circuit's holding that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must prohibit a curative amendment if such amendment would be "inequitable or futile") (citations omitted). In assessing "futility," courts apply "the same legal standard it employs when deciding a motion for dismissal pursuant to [Rule] 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d. at 1435.

Further, under Rule 11, the Debtor's claims must be "warranted by existing law" and its "factual contentions [must] have evidentiary support or ... [be] likely [to] have evidentiary support after" discovery. Fed. R. Civ. P. 11(b)(2)-(3).

Here, the Debtor cannot amend the Complaint to overcome the 12(b)(6) dismissal standard while also complying with Rule 11 because the Debtor, from its own investigation and information received during its bankruptcy case, including from OCI (the immediate transferor of the funds to Revere) and Chapman (OCI's CEO), knows that Revere was a mere conduit without inquiry notice of the alleged fraudulent scheme orchestrated. Because amendment would be futile and inequitable, the Complaint should be dismissed with prejudice.

## **CONCLUSION**

The Complaint must be dismissed with prejudice under Rule 12(b)(6) because it fails to state any claim upon which relief may be granted. The Debtor does not (and cannot) plausibly allege that Revere is a transferee subject to liability under section 550 of the Bankruptcy Code, rather than a mere conduit, or that the Defendants took the funds in bad faith. To the contrary, the allegations in the Complaint and the Debtor's own prior filings in this bankruptcy case demonstrate that Revere was an arm's-length downstream transferee who neither had dominion nor control over the funds nor knowledge of facts or circumstances to put it on inquiry notice of the transfers' voidability. The Debtor cannot fix these fatal flaws while also complying with its obligations under Rule 11 because it would have to allege facts—contrary to the documentation and information it received from its investigations—that Revere was not a mere conduit and took the transferred property in bad faith. Accordingly, the Court should dismiss the Complaint with prejudice.

**GELLERT SEITZ BUSENKELL & BROWN LLC**

*/s/ Michael Busenkell*
Michael Busenkell (DE 3933)
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Phone: (302) 425-5812
Mbusenkell@gsbblaw.com

-and-

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

Howard W. Schub
330 Madison Avenue, 27th Floor
New York, New York 10017
Phone: (212) 413-9060
Howard.Schub@nelsonmullins.com
Lee B. Hart
201 17th Street NW
Atlanta, GA 30363
Phone: (404) 322-6349
Lee.hart@nelsonmullins.com

*Attorneys for Defendants Revere Master SPV LLC Series VII, Revere Master SPV LLC, Revere Manager LLC, Revere Securities LLC, Kyle M. Wool, Jerome F. Niles, Joshua A. Shipley*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 28, 2026, a true and correct copy of the foregoing *Brief in Support of Defendants' Motion to Dismiss Adversary Complaint* was served via CM/ECF on all parties registered to receive electronic notices.

*/s/ Michael Busenkell*