# EXHIBIT 16

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BYJU'S ALPHA, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 24-10140 (BLS) |
| BYJU'S ALPHA, INC.,<br><br>Plaintiffs,<br>v.<br><br>BYJU RAVEENDRAN, DIVYA GOKULNATH, and ANITA KISHORE,<br><br>Defendants. | Adv. Pro. Case No. 25-50526 (BLS) |

**DECLARATION OF J. MICHAEL MCNUTT**

# TABLE OF CONTENTS


**I. INTRODUCTION ........ 4**

**II. TIMELINE OF THESE PROCEEDINGS ........ 4**

**III. EXHIBIT 1: THE EXCEL SPREADSHEET ........ 5**

**IV. EXHIBIT 2: DEBTOR'S BANK STATEMENTS ........ 8**

**V. EXHIBIT 3: CAMSHAFT DOCUMENTS ........ 9**

**VI. EXHIBITS 4 AND 5: HSBC TRANSACTION LEDGERS ........ 10**

**VII. PLAINTIFFS' DOCUMENTS SHOW THAT THE ALPHA FUNDS LARGELY WENT TO THINK & LEARN PRIVATE LIMITED ........ 13**

A. Debtor Transferred $533 Million to the Camshaft Fund ........ 15

B. Camshaft Transferred $505,907,436 to OCI ........ 16

*1. The First Transfer from Camshaft to OCI ........ 16*

*2. The Second Transfer from Camshaft to OCI ........ 18*

*3. Third Transfer from Camshaft to OCI ........ 19*

C. OCI Transferred Funds to Google, Sony, Banker and Revere ........ 19

D. Revere Transferred Funds to BIPL and BGPL ........ 21

E. BIPL Transferred Funds to TLPL and BHPL and Made Tax Payments ........ 23

F. BIPL Transferred Funds to BHPL ........ 23

G. BHPL Transferred Funds to TLPL to Purchase Shares ........ 24

**VIII. DEBTOR'S RECOVERY FROM OCI REDUCES THE DAMAGES TO WHICH DEBTOR IS ENTITLED ........ 26**

**IX. DEBTOR'S DAMAGES ARE REDUCED BY THE VALUE OF DEBTOR AT THE DATE GLAS TOOK ITS SHARES ........ 27**

**X. DEBTOR'S DAMAGES ARE REDUCED BY THE VALUE OF THE GUARANTORS THAT THE LENDERS HAVE TAKEN OVER PURSUANT TO CREDIT AGREEMENT GUARANTEES 29**

**XI. WORLD-WIDE FREEZING ORDER AGAINST BYJU RAVEENDRAN AND DIVYA GOKULNATH ........ 30**

**XII. DECISION FROM THE DUBAI COMMERCIAL COURT AGAINST BYJU RAVEENDRAN AND DIVYA GOKULNATH ........ 30**

**XIII. INSPILEARN LLC OWNERSHIP ........ 30**

I, **J. Michael McNutt**, hereby declare under penalty of perjury:

## I. INTRODUCTION

1. I am employed in the law firm Lazareff Le Bars based in Paris, France.[1]

2. I act as counsel for Defendants Byju Raveendran ("Defendant") and Divya Gokulnath in proceedings before a Singapore International Arbitration Centre-constituted international arbitration tribunal seated in Singapore, and assist in the courts of Dubai in the United Arab Emirates as well as in proceedings in the DIFC. I also assist Matthew Draper and Daniel Hagelberg, counsel of record in this proceeding, and act at their direction to assist with their representation of Defendant and Gokulnath here.

3. I also attend meetings of the Committee of Creditors ("CoC") of Think & Learn Private (India) Limited ("TLPL") on behalf of Riju Ravindran, a suspended TLPL director during the pendency of TLPL's ongoing bankruptcy procedure.

4. This Declaration is based upon my personal knowledge and upon my examination of the documents exhibited to this Declaration.

## II. TIMELINE OF THESE PROCEEDINGS

5. The Complaint in this Adversary Proceeding was filed, by Debtor Byju's Alpha, Inc. ("Debtor") on April 9, 2025. Adv. D.I. 1. On April 18, 2025, seven days after filing its

---

1 As an employee of a French law firm, I am bound to comply with the Paris Bar regulations as well as the French Legal Profession Law (31 December 1971 the Law 71/1130.

Complaint, Debtor filed an Emergency Motion for Limited Expedited Discovery against Defendant.[2] The Court granted that motion on May 9, 2025 (the "Discovery Order").[3]

6. Meanwhile, on April 21, 2025, GLAS Trust Company LLC ("GLAS") moved to intervene in these proceedings.[4] On May 7, 2025, the Court granted GLAS's motion.[5]

7. On June 17, 2025, Debtor and GLAS (collectively, "Plaintiffs") both moved the Court to hold Defendant in contempt for failing to comply with the Discovery Order.[6] The Court granted that order on July 7, 2025.[7]

8. On August 11, 2025, Debtor and GLAS both moved the Court seeking default judgment as to liability.[8] On November 11, 2025 (amended December 8, 2025), the Court granted that "extraordinary" relief.[9]

## III. EXHIBIT 1: THE EXCEL SPREADSHEET

---

[2] Adv. D.I. 7.

[3] Adv. D.I. 25.

[4] Adv. D.I. 10.

[5] Adv. D.I. 23.

[6] Adv. D.I. 45.

[7] Adv. D.I. 66.

[8] Adv. D.I. 97

[9] Adv. D.I. 167 at 19.

9. Debtor brought this action claiming that $533M of funds lent by Lenders ("the Lenders")[10] pursuant to the Credit Agreement[11] (the "Alpha Funds") were missing.[12] Debtor and GLAS have repeated that claim throughout this Adversary Proceeding.[13]

10. Attached to this Declaration at **Exhibit 1** is a true and correct copy of an excel spreadsheet that was created by my firm, at my direction, that summarizes transactions concerning the Alpha Funds. The information in **Exhibit 1** comes entirely from documents Plaintiffs have possessed since before – in some cases, long before – Debtor filed the Complaint in this proceeding.[14]

---

10 In accordance with the 24 November 2021 Credit Agreement, "Lenders" means the Persons listed in Schedule 2.1 and any other Person that shall have become a party hereto as an Additional Lender or pursuant to an Assignment and Assumption, other than any such Person that ceases to be a party hereto pursuant to an Assignment and Assumption.

11 Credit and Guaranty Agreement Dated as of November 24, 2021 among Think and Learn Private Limited as the Parent Guarantor, Byju's Alpha, Inc. as the Borrower the Guarantors Party hereto the Lenders Party hereto GLAS Trust Company LLC as Administrative Agent and as Collateral Agent Morgan Stanley Senior Funding Inc. and JP Morgan Chase Bank, N.A. as Joint Lead Arrangers and Joint Bookrunners. Filed as Exhibit 24 to Defendant's Memorandum of Law in Support of Motion to Dismiss at Adv. D.I. 78-24.

12 Adv. D.I. 1 ¶¶ 2, 44.

13 *E.g.* Adv. D.I. 7 at ¶ 1, 24 (Emergency Motion), Adv. D.I. 45 ¶ 1 (Contempt Motion); see also Sept. 29, 2025 Default Hearing Tr. 21:21-22:4 (Counsel for GLAS: "When the Debtor filed its complaint against Mr. Raveendran almost six months ago on April 7th, that was a significant milestone for GLAS and the lenders, because … we were hopeful … that discovery of Mr. Raveendran would finally, finally reveal the truth about the $533 million").

14 None of the information in Exhibit 1 comes from documents in Defendant's possession, custody, or control. Defendant lost access to all information concerning the Alpha Funds once TLPL went into bankruptcy. Adv. D.I. 60 and 61 (Declarations certifying the first answers to Interrogatories and Production of Documents wherein Defendant Objected on the grounds of no longer having access to his email or pertinent documents); Adv. D.I. 79 (Declaration in Support of Motion to Dismiss, Declares that he was suspended as a director in July 2024 at ¶ 10); Adv. D.I. 130 (Declaration certifying second production of discovery, reaffirming objections based on access made in the first production); *See also,* Adv. D.I. 80

11. As I explain herein, **Exhibit 1** summarizes information contained in:

(a) the bank and brokerage statements of Debtor ("Debtor's Bank Statements" which are attached to this Declaration at **Exhibit 2**);

(b) documents produced by the Camshaft Capital Fund, LP, in Adversary Proceeding Case No. 24-50013 (the "Camshaft Documents" and the "Camshaft Proceeding"), which are attached to this Declaration at **Exhibit 3.1** and **Exhibit 3.8**); and

(c) two excel spreadsheets produced by HSBC Bank NA ("HSBC") to Plaintiffs in response to subpoenas issued by Plaintiffs in the Camshaft Proceeding on **March 21, 2025** relating to the Byju Entities transactions (the "First HSBC Transaction Ledger" (which is attached to this Declaration at **Exhibit 4**), and **April 2, 2025** relating to OCI Limited ("OCI") transactions (the "Second HSBC Transaction Ledger" (which is attached to this Declaration at **Exhibit 5**)).

12. Also, with respect to the transactions undertaken by Byju's Entities, the finance department of TLPL executed such transactions in the ordinary course, and Defendant did not directly or indirectly involve himself in their execution or approval. TLPL is the only entity that possesses any documentary or other evidence relating to those transactions, and Debtor has long been on notice to seek that information from TLPL.[15]

(Declaration of Divya Gokulnath in support of the Motion to Dismiss, she has similarly been cut off from access to the documents of Think and Learn Private Limited).

15 *See* the Transcript of Riju Ravindran Deposition from March 12, 2024, in the Adv. Pro. No. 24-50013. Riju Ravindran in his deposition confirmed that all the transactions from Byju's Alpha were dealt directly by the finance department of TLPL. As stated: […] "*No, I have*

## IV. EXHIBIT 2: DEBTOR'S BANK STATEMENTS

13. Debtor's Bank Statements (**Exhibit 2**) show all transactions made by Debtor during 2022, in accounts held at JP Morgan and Silicon Valley Bank, including transactions made by Debtor to the Camshaft Capital Fund.

14. Plaintiffs obtained Debtor's Bank Statements after the issuance of the Delaware Chancery Court Decision confirming Timothy R. Pohl as Sole Director of Debtor on May 22, 2023.[16]

15. Debtor submitted Debtor's Bank Statements in the Camshaft Proceedings at least twice. First, on April 12, 2024 as Exhibits 8-11 to Plaintiffs' Motion to Direct the Examination of the US Loan Guarantors.[17] And second, on July 10, 2024, as Exhibits to Benjamin Finestone's Declaration in Opposition to Think and Learn Private Limited's Motion to Dismiss the 2d Amended Complaint (the "Finestone Declaration," which is attached to this Declaration as **Exhibit 2**):[18]

(i) At paragraph 8 of the Finestone Declaration, Mr. Finestone states: *"Attached hereto as Exhibit 5*[19] *are true and correct copies of the monthly bank statements*

---

*not taken care of that function. I think that is part of, the whole entity would have taken care of the finance of the Think & Learn parent company*." Page 25, Line 21/25.

16 230522 DE Chancery Court Status Quo Order granted. *GLAS Trust Company LLC v. Riju Ravindran* Del. Ch., C.A. № 2023-0488-MTZ, Zurn, V.C. (May 22, 2023) (Order) Trans. I.D. 70059341. (**Exhibit 6**)

17 *Motion for an Order Pursuant to Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004-1 Directing the Examination of the U.S. Loan Guarantors. In re Byju's Alpha* Case № 24-10140. D.I. 164 (Redacted) D.I. 163 (Sealed) Exhibits 8-11.

18 *Byju's Alpha, Inc. v. Camshaft Capital Fund, LP et al*. Adv. Pro. Case № 24-50013. Adv. D.I. 269 (sealed) and 284 (redacted) (Finestone Declaration).

19 *Id*. Adv. D.I. 284 at Ex. 5.

*for the Debtor's account with JPMorgan Chase Bank from January 1, 2022, through December 30, 2022*."

(ii) At paragraph 9 of the Finestone Declaration, Mr. Finestone states: *"Attached hereto as Exhibit 6*[20] *are true and correct copies of the monthly bank statements for the Debtor's account with Silicon Valley Bank from January 1, 2022, through December 31, 2022."*

16. Plaintiffs also previously submitted Debtor's Bank Statements in this proceeding as exhibits to the Declaration of Timothy Pohl dated August 11, 2025 (the "Pohl Declaration").[21] Plaintiffs *withdrew* the Pohl Declaration from the record in this case on September 8, 2025.[22]

## V. EXHIBIT 3: CAMSHAFT DOCUMENTS

17. Camshaft produced documents to Plaintiffs in the Camshaft Proceeding on or before June 10, 2024 (the Camshaft Documents).[23] The following Camshaft Documents set forth what Camshaft did with the Alpha Funds:

I. April 28, 2022 Subscription Agreement for Camshaft Capital Fund, LP ("Camshaft Fund"), for the investment of $318 million made by Debtor in the Camshaft Fund (CAMSHAFT-0000001-20) (**Exhibit 3.2**).

II. April 29, 2002 Camshaft Additional Subscription Request between Camshaft Fund and Camshaft CEO William Morton, reflecting a $9 million capital contribution

---

[20] *Id*. Adv. D.I. 284 at Ex. 6.

[21] *Id*. Adv. D.I. 97 (Plaintiffs Motion for Default Judgment), Exhibit B (Pohl Declaration).

[22] *Id*. Adv. D.I. 145, pp. 18-19 (Exhibit 3) (Email exchange on Sept. 8, 2025, between D. Hagelberg and K. Scherling)

[23] *Id*. Adv. D.I. 246 (**Exhibit 3.1**)

made by Debtor to the Camshaft Fund. (CAMSHAFT-0000001411-1412) (**Exhibit 3.3**);

III. April 30, 2022 Camshaft Fund management promissory note, between Camshaft Capital Management LLC and the Camshaft Fund, reflecting that the same $9 million is a loan to Camshaft Capital Management LLC, whose only employee is CEO William Morton (CAMSHAFT-1404-1410) (**Exhibit 3.4**);

IV. July 14, 2022 Camshaft Management promissory note, between Camshaft Capital Management LLC and the Camshaft Fund, for a $6 million loan made by Debtor to Camshaft Capital Management LLC (CAMSHAFT-001395-1401) (**Exhibit 3.5**);

V. July 16, 2022 Camshaft Additional Subscription Request between Camshaft Fund and Camshaft CEO William Morton, reflecting a $6 million capital contribution to the Camshaft Fund (CAMSHAFT-001402-3) (**Exhibit 3.6**);

VI. April 30, 2022 bank statement for an account held by Camshaft Fund at US Bank, showing *inter alia*, the movement of the Alpha Funds from Debtor to Camshaft Fund (CAMSHAFT-001427-1430) (**Exhibit 3.7**); and

VII. July 29, 2022 bank statement for an account held by Camshaft Fund at JP Morgan, showing transfers of Alpha Funds to OCI. (CAMSHAFT-001443-1446) (**Exhibit 3.8**).

## VI. EXHIBITS 4 AND 5: HSBC TRANSACTION LEDGERS

18. The First HSBC Transaction Ledger was created by HSBC on March 26, 2025,[24] according to its metadata.[25] **Ex. 7**. The Second HSBC Transaction Ledger was created on April 2, 2025,[26] according to its metadata. **Ex. 8**.[27] HSBC presumably provided to Plaintiffs the First and Second HSBC Transaction Ledgers shortly after the dates on which HSBC created them. Debtor filed the Complaint five days later, on April 7, 2025. Adv. D.I. 1. Defendant issued discovery requests in this proceeding asking Plaintiffs to identify the date(s) they received those documents.[28] Plaintiffs filed a motion to quash those discovery requests, but they have not denied that they received the HSBC documents in advance of filing the Complaint.[29]

19. HSBC Bank produced the First HSBC Transaction Ledger in response to a Notice of Subpoena and Subpoena that Debtor served on March 21, 2025 ("First Subpoena")[30]. Debtor served a Second Subpoena on April 2, 2025 ("Second Subpoena").[31]

---

24 250326 HSBC Bank First Transaction Ledger re Byju Entities (**Exhibit 4**)

25 250326 First HSBC Transaction Ledger Metadata Screenshot re Byju Entities (**Exhibit 7**)

26 250402 HSBC Bank Second Transaction Ledger re OCI Limited (**Exhibit 5**)

27 250402 Second HSBC Transaction Ledger Metadata Screenshot re OCI Limited (**Exhibit 8)**

28 Adv. D.I. 171-1 at 7, 8, 15-16, 24, 25, 42.

29 Defendant has repeatedly stated that Plaintiffs have long known where the Alpha Funds are. *See*, e.g., Defendant's Motion to Amend Briefing Schedule, Adv. D.I. 168 (Plaintiffs "already have in their possession … information elucidating 'the transfer of the Alpha Funds, including where the money is today,' including 'the location of the Alpha Funds'"). Plaintiffs no longer deny that they have known where the Alpha Funds are, but say instead that what they know is "irrelevant" because "GLAS's actions are not before the Court." Plaintiff's Opposition to Defendant's Motion to Amend Briefing Schedule, Adv. D.I. 170 p. 13, n.5.

30 *Byju's Alpha, Inc. v. Camshaft Capital Fund, LP et al*. Adv. Pro. Case № 24-50013. 250321 Byju Alpha Subpoena HSBC (**Exhibit 9**).

31 *Id*. 250402 Byju Alpha Second Subpoena HSBC Bank (**Exhibit 10**).

20. On June 30, 2025—the day of the contempt hearing in this case—Plaintiffs provided the First and the Second HSBC Transaction Ledgers to Mr. Van Tol.[32] Plaintiffs have never provided the HSBC Transaction Ledgers to Defendant.

21. Defendant has issued discovery requests in this proceeding asking Plaintiffs to identify the date(s) they received those documents.[33] Plaintiffs filed a motion to quash those discovery requests, but they have not denied that they received the HSBC documents in advance of filing the Complaint.[34]

22. Plaintiffs refuse to produce any damages-related discovery to Defendant in this case—including but not limited to **Exhibits 1-5** attached hereto.[35] Plaintiffs have moved to quash those discovery requests. Adv. Pro. D.I. 171. But Plaintiffs do not deny that they have possessed the HSBC Transaction Ledgers since before initiating this proceeding.[36]

---

32 250630 1611 QE email to PVT re HSBC Subpoena Answer (**Exhibit 11)**

33 Adv. D.I. 171-1 at 7, 8, 15-16, 24, 25, 42.

34 *See supra*, Defendant has repeatedly stated that Plaintiffs have long known where the Alpha Funds are. *See*, e.g., Defendant's Motion to Amend Briefing Schedule, Adv. D.I. 168 (Plaintiffs "already have in their possession … information elucidating 'the transfer of the Alpha Funds, including where the money is today,' including 'the location of the Alpha Funds'"). Plaintiffs no longer deny that they have known where the Alpha Funds are, but say instead that what they know is "irrelevant" because "GLAS's actions are not before the Court." Plaintiff's Opposition to Defendant's Motion to Amend Briefing Schedule, Adv. D.I. 170 p. 13, n.5.

35 *See e.g.*, Adv. D.I. 171-1 (Defendant's Discovery Requests), Adv. Pro. D.I. 171 (Plaintiffs' Motion to Quash those requests).

36 *See supra*, Defendant has repeatedly stated that Plaintiffs have long known where the Alpha Funds are. *See*, e.g., Defendant's Motion to Amend Briefing Schedule, Adv. D.I. 168 (Plaintiffs "already have in their possession … information elucidating 'the transfer of the Alpha Funds, including where the money is today,' including 'the location of the Alpha Funds'"). Plaintiffs no longer deny that they have known where the Alpha Funds are, but say instead that what they know is "irrelevant" because "GLAS's actions are not before the Court." Plaintiff's Opposition to Defendant's Motion to Amend Briefing Schedule, Adv. D.I. 170 p. 13, n.5.

## VII. PLAINTIFFS' DOCUMENTS SHOW THAT THE ALPHA FUNDS LARGELY WENT TO THINK & LEARN PRIVATE LIMITED

23. Collectively **Exhibits 1 through 5** attached hereto show that Between April 2022 and October 2022, the Alpha Funds passed from Debtor, to the Camshaft Fund, to OCI, to Revere Master SPV ("Revere"), to Byju Investment Pte. Ltd. ("BIPL"), to Byju Holding Pte. Ltd. ("BHPL"), to Debtor's parent, Byju Global Pte. Ltd. ("BGPL"), and ultimately to TPLP (the parent company of BIPL, BHPL, and BGPL). Between April 2022 and October 2022 TLPL indirectly owned Debtor. TLPL, Byju's Pte., Tangible Play Inc., Great Learning Education Pte., Whitehat Education Technology LLC and Epic! are guarantors of Debtor under the Credit Agreement.

24. Specifically:

(i) In 2022, after receiving $1,170 billion[37] from the Lenders under the Credit Agreement, Debtor made the following transfers:

(a) $442,283,948 was lent to TLPL Entities—*see* **Exhibit 1** at Spreadsheet "*Use of Proceeds*";

(b) $100,216,442 was used to repay the Credit Agreement interests, which were then transferred back to GLAS—*see* **Exhibit 1** at **Exhibit 1** at Spreadsheet "*Use of Proceeds*";

(c) $92,667,473 was used to pay fees and other expenses, including payments made to FIFA and Messi Management, as well as other

[37] Only $1,17 billion was credited in Byju's Debtor's Bank account considering the Term Loan Facility Fee paid by Byju's Alpha to Morgan Stanley Senior Funding, INC, and JP Morgan Chase Bank, N.A. See Adv. D.I 78-32.

disbursements related to Debtor's operation - *see* **Exhibit 1** at Spreadsheet "*Fees & Other Expenses*";

(d) $1,795,688 was spent by Debtor and Debtor has produced no evidence in this case explaining what that money was spent on; and

(e) $533,000,000, was invested by Debtor in the Camshaft Fund—which transaction will be further explained below.

25. None of the above is at issue in this case except for the final $533 million – *i.e.*, the Alpha Funds.

26. As I shall explain below, the vast majority of the Alpha Funds were invested back into TLPL in India via share purchases. The First HSBC Transaction Ledger – **Exhibit 4** - shows that on July 1 and 5, 2022, BIPL transferred a total of $240,000,000 of the Alpha Funds to TLPL, and on September 22 and October 28, 2022, BHPL transferred a total of $250,000,000 to TLPL. *See* **Exhibit 4** at Cells H34 and H35 (BIPL transfers) and *id.* at Cells H52, H53, and H64 (BHPL transfers). Thus, the document shows that $490,000,000 was sent to TLPL, of which $460,427,903 was from the Alpha Funds. TLPL indirectly owned all of Debtor at that time and was the guarantor of Debtor under the Credit Agreement.

27. Exhibit 1 shows, and as I explain herein, how the remaining Alpha Funds ($72,572,097) were spent or loaned.

28. In short Plaintiffs' own documents, **Exhibits 1 through 5** collectively, show where the Alpha Funds have gone, and when. Plaintiffs have possessed these documents before initiating this adversary proceeding against Defendant. These same Exhibits also show that Defendant did not receive any of the Alpha Funds.

### A. Debtor Transferred $533 Million to the Camshaft Fund

29. **Exhibit 2** shows that $318 million of the Alpha Funds was transferred from Debtor's JP Morgan bank account in three transfers:

(i) on April 27, 2022, $100 was transferred as a test; and

(ii) on April 28, 2022, there were two transfers, one for $100 and a second for $317,999,800.[38]

30. These transfers were made by Debtor in accordance with the Subscription Agreement with Camshaft, dated April 28, 2022.[39]

31. In addition, on July 13, 2022, Debtor transferred $215 million from Debtor's Silicon Valley bank account to the Camshaft Fund in two transfers:

(i) $15 million; and

(ii) $200 million.[40]

32. These transfers were made by Debtor in accordance with the Additional Subscription Agreement, dated July 12, 2022.[41]

33. Plaintiffs learned the reasons for those transactions in the Camshaft Proceedings on before June 10, 2024. The attorney declaration from Camshaft, Mr. Pieter Van Tol ("Mr. Van Tol").

---

38 *Byju's Alpha, Inc. v. Camshaft Capital Fund, LP et al*. Adv. Pro. Case № 24-50013 Adv. D.I. 277, Ex. 5 at 13.

39 *Id.* Ex. 8.

40 *Id.* Ex. 6 at 16, 18.

41 *Id.* Ex. 9.

34. Mr. Van Tol, dated June 10, 2024 (which is attached to this Declaration as **Exhibit 3.1**) states at paragraph 14 that:

> *On June 6, June 7 and June 10, 2024, the Camshaft Defendants produced documents that were discussed on the June 5 Zoom. Those documents are Bates numbered CAMSHAFT0001307-4330, and they relate to the following areas (among others):*
>
> *June 6 (Bates numbers CAMSHAFT0001307-1412)*
>
> *[…]*
>
> *April 2022 (U.S. Bank), May 2022 (U.S. Bank) and July 2022 (J.P. Morgan and Northern Trust) Camshaft Fund bank statements showing movements of money related to initial transfer of Alpha Funds.* [42]

**B. Camshaft Transferred $505,907,436 to OCI**

**1. The First Transfer from Camshaft to OCI**

35. On receipt of the $533 million from Debtor, Camshaft in turn then transferred $318 million to OCI to be fully repaid within three years (by April 26, 2025).[43]

---

42 **Exhibit 3.1**.

43 *Byju's Alpha, Inc. v. Camshaft Capital Fund, LP et al*. Adv. Pro. Case № 24-50013 Adv. D.I. 277, Ex. 11 (Adv. Pro. No. 24-50013 Bates No. APEXFUND00001395 – APEXFUND00001401).

36. Camshaft retained advance interest payments totaling $18 million (1.88679% per annum).[44] Debtor and the Camshaft Capital Fund LP agreed in a Side Letter (the "First Side Letter"), dated April 26, 2022.[45] that the prepaid interest would be allocated as follows:

(i) $9 million to Camshaft Capital Management LLC ("Camshaft GP") as the payment of management fee (as "General Partner"); and

(ii) $9 million to be reinvested in the Camshaft Fund until maturity or early repayment of the loan.[46]

37. A final $9 million was lent to Camshaft GP to be repaid on April 30, 2025.[47]

38. The Camshaft Side Letter states, *inter alia*, that:[48]

> […] *the initial $18 million in interest income (resulting from the interest prepayment on the Loan by OCI Limited) shall be allocated $9 million to you [Debtor] and $9 million to the General Partner [CCM]. The $9 million in income initially allocated to you shall remain invested in the*

---

44 *Id.* Adv. D.I. 277, Ex. 11 (Adv. Pro. No. 24-50013 Bates No. APEXFUND00001395 – APEXFUND00001401).

45 *Id.* Adv. D.I. 277, Ex. 12 (Adv. Pro. No. 24-50013 Bates No. APEXFUND00001352 - APEXFUND00001355). "Side-Pocket Investment and Management Fees"

46 *Id.* Adv. D.I. 277, Ex. 11 (Adv. Pro. No. 24-50013 Bates No. APEXFUND00001395 – APEXFUND00001401). Clause 3 (a).

47 220429 Camshaft Management Subscription Request re 9M Appendix B (Adv. Pro. No. 24-50013 Bates No. CAMSHAFT0001411 – CAMSHAFT0001412) (**Exhibit 3.3**) and 220430 Camshaft Management Promissory Note re 9M (Adv. Pro. No. 24-50013 Bates No. CAMSHAFT0001404 – CAMSHAFT0001410) (**Exhibit 3.4**);

48 *Byju's Alpha, Inc. v. Camshaft Capital Fund, LP et al*. Adv. Pro. Case № 24-50013 Adv. D.I. 277, Ex. 12 (Adv. Pro. No. 24-50013 Bates No. APEXFUND00001352 - APEXFUND00001355)

*Fund and not distributed to you until the maturity or earlier prepayment of the Loan.*

39. Camshaft then transferred the remaining $300 million to OCI, in accordance with the Subscription Agreement which transfer was finalized on May 10, 2022.[49]

**2. The Second Transfer from Camshaft to OCI**

40. On July 12, 2022, Camshaft and OCI amended the previous Loan Agreement by issuing a new Promissory Note in favor of Camshaft for $215 million, to be fully repaid within three years – by July 12, 2025.[50] As per the Second Side Letter, [51] Camshaft retained the interest payable by OCI (3.75% per annum), totaling $24,187,500 million. Camshaft's transfer to OCI was finalized on July 14, 2022.[52]

41. The Second Side Letter established that the allocation of the prepaid interest would be:

(i) $6,000,000 loaned to Camshaft GP (the "Camshaft GP Loan"), pursuant to a Promissory Note dated July 14, 2022[53];

(ii) $1,667,500 allocated to the Camshaft GP as a management fee; and

---

49 220430 Camshaft Fund USB Bank Statement re Apr 2022 (Adv. Pro. No. 24-50013 Bates No. CAMSHAFT0002764 – CAMSHAFT0002767) (**Exhibit 3.7**)

50 *Byju's Alpha, Inc. v. Camshaft Capital Fund, LP et al*. Adv. Pro. Case № 24-50013 Adv. D.I. 277, Ex. 14 (Bates No. CAMSHAFT0004216 – CAMSHAFT0004222).

51 *Id.* Adv. D.I. 277, Ex. 15. "Side-Pocket Investment and Management Fees"

52 220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022 (Adv. Pro. No. 24-50013 Bates No. CAMSHAFT0001443 – CAMSHAFT0001446) (**Exhibit 3.8**)

53 220714 Camshaft Management Promissory Note re 6M (Adv. Pro. No. 24-50013 Bates No. CAMSHAFT0001395 – CAMSHAFT0001401) (**Exhibit 3.5**)

(iii) $16,520,000 for reinvestment in the Camshaft Fund until the loan maturity or its repayment.[54]

### 3. Third Transfer from Camshaft to OCI

42. On July 15, 2022, Camshaft then lent OCI $16,520,000 (the "Camshaft-OCI Loan"), retaining $1,424,850 of that sum due to interest payable by OCI at a rate of 5.75% per year. The Camshaft-OCI Loan was to be repaid by OCI by July 15, 2025.[55] Camshaft's transfer to OCI was finalized on July 15, 2022.[56]

43. Therefore, in summary, of the $533 million in Alpha Funds that Camshaft had received from Debtor, Camshaft transferred a total of $505,907,650 to OCI, and retained $27,092,350.[57]

## C. OCI Transferred Funds to Google, Sony, Banker and Revere

44. OCI's subsequent transfers of the Alpha Funds are primarily reflected in the Second HSBC Transaction Ledgers – **Exhibit 5**. [58] The metadata of the Second HSBC Transaction Ledger indicates it was created on April 2, 2025[59], and appears to have been created in response to Debtor's Subpoena issued on March 21, 2025.

---

54 *Byju's Alpha, Inc. v. Camshaft Capital Fund, LP et al*. Adv. Pro. Case № 24-50013 Adv. D.I. 277, Ex. 15. See "Side-Pocket Investment and Management Fees".

55 *Id.* Adv. D.I. 277, Ex. 16 (Bates No. APEXFUND00002651 - APEXFUND00002657).

56 220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022 (Adv. Pro. No. 24-50013 Bates No. CAMSHAFT0001443 – CAMSHAFT0001446) (**Exhibit 3.8**).

57 **Exhibit 1**.

58 **Exhibit 3**.

59 250402 Second HSBC Transaction Ledger Metadata Screenshot re OCI Limited (**Exhibit 8**).

45. In *Byju's Alpha Inc., and Glas Trust Company LLC, v. OCI Limited*, Adversary Proceeding No. 25-50822 ("OCI Adversary Proceeding"), OCI CEO Oliver Chapman submitted a Declaration dated November 15, 2025 (the "Chapman Declaration," which is attached to this Declaration as **Exhibit 12**), that explained that the Alpha Funds received by OCI were spent as follows:

(i) $11,840,169.22 went to Google LLC;

(ii) $1,342,045.83 went to Culver Max Entertainment Pvt. Ltd. ("Sony India");

(iii) $13,100,200.80 at the direction of Rupin Banker or were for his benefit; and

(iv) $479,625,000 went to Revere.[60]

46. The Second HSBC Transaction Ledger confirms that between June 28, 2022 and July 15, 2022, OCI transferred:

(i) $2,283,268.39 to Google LLC[61]—on information and belief another $8,856,900.83 was paid to Google LLC from another OCI Internal Account (Reference: 4062 4700 022134), taking into account that on June 30, 2022, OCI transferred from its main bank account to another OCI Internal Account (Reference: 4062 4700 022134), the amount of $11,000,000.00 of the Alpha Funds received.[62]

---

60 *See*, *Byju's Alpha, Inc. v. OCI Limited et al*, Adv. Pro. Case No. 25-50822. Adv. D.I. 49 (sealed) and 50 (redacted), Exh. B ("Chapman Declaration") at ¶ 4.

61 **Exhibit 5** - Cells Reference "H294" + "H297"

62 *See* **Exhibit 5** - Cell Reference "H221". This amount ($2,143,099.17) is the remaining value after considering the Google payment (**Exhibit 5** - Cell Reference "H221" + "H204" + "H223" + "H227" + "H265" + "H297").

(ii) $1,342,045.83 to Sony India;[63]

(iii) The Chapman Declaration states that $13,100,220.80 was transferred to Rupin Banker, from the funds received from Camshaft. However, the Second HSBC Transaction Ledger only indicates that $4,113,122.67 remained ($1,970,023.50 in OCI Internal Account 2312 2846 604358 & $2,143,099.17 in OCI Internal Account 4062 4700 022134).[64] If the Chapman Declaration is correct that Rupin Banker received $13,100,220.80, then only $4,113,122.67 could have been from the Alpha Funds Camshaft transferred to OCI.

(iv) $479,625,100 to Revere[65]— OCI made the following transfers to Revere: (i) on June 28, 2025, the amount of $150,000,100[66]; (ii) on June 29, 2025, the amount of $103,750,000[67]; (iii) on July 7, 2025, the amount of $25,375,000[68]; and (iv) on July 15, 2025, the amount of $200,500,000.[69] This is confirmed by Chapman Declaration at ¶¶ 4 and 5.

**D. Revere Transferred Funds to BIPL and BGPL**

63 **Exhibit 5** - Cell Reference "H222"

64 **Exhibit 5** - Cell Reference "H223" + H227" + "H265" + "H297"

65 **Exhibit 5** – Cell Reference "H213" + "H214" + "H215" + H216" + "H218" + "H219" + H230" + "H231" + "H232"+ "H233"+ "H239". & *See*, *Byju's Alpha, Inc. v. OCI Limited et al*, Adv. Pro. Case No. 25-50822. Adv. D.I. 49 (sealed) and 50 (redacted), Exh. B ("Chapman Declaration") at ¶ 5.

66 **Exhibit 5** – Cell Reference "H213" + "H214" + "H215" + H216".

67 **Exhibit 5** – Cell Reference "H218" + "H219".

68 **Exhibit 5** – Cell Reference "H230".

69 **Exhibit 5** – Cell Reference "H231" + "H232"+ "H233"+ "H239".

47. Of the $479,625,100 received by Revere, the First HSBC Transaction Ledger shows that Revere transferred $275,000,080 to BIPL in four transfers:

(i) $95 (test wire);

(ii) $149,999,95 (on June 29, 2022);

(iii) $99,999,995 (on June 30, 2022); and

(iv) $24,999,995 (on July 8, 2022).[70]

48. BIPL is a Singaporean company solely owned by BGPL. The directors at the time of the transactions were Byju Raveendran and Sao Xio Ling.[71] The bylaws of BIPL provide that all board resolutions and decisions must be by majority and, since there are only two directors, both directors must agree to all board decisions.[72] Sao Xio Ling is an independent director, as required by Singapore corporate law.[73]

49. The First HSBC Transaction Ledger also shows that Revere transferred to BGPL $200,000,075 in two transfers:

(i) $95 (test wire); and

(ii) $199,999,980 (on July 19, 2022).[74]

---

70 **Exhibit 4** – Cell Reference "H31" + "H32" + "H37".

71 260121 Byju Investments Pte Ltd Directors Register (**Exhibit 14**)

72 220509 Byju Investments Pte Constitution (**Exhibit 20**)

73 260121 ACRA Singapore Website Screenshot re Directors Appointment (**Exhibit 23**)

74 **Exhibit 4** – Cell Reference "H39" + "H40".

50. BGPL is a Singaporean company owned by Byju Raveendran. The directors at the time of the transactions were Byju Raveendran and Sao Xio Ling.[75] The bylaws of BIPL provide that all board resolutions and decisions must be by majority and, since there are only two directors, both directors must agree to all board decisions.[76] Sao Xio Ling is an independent director, as required by Singapore corporate law.[77]

**E. BIPL Transferred Funds to TLPL and BHPL and Made Tax Payments**

51. The First HSBC Transaction Ledger also shows that from the funds received from Revere, to acquire shares in TLPL[78], BIPL transferred $240,000,000 to TLPL in two transfers:

(i) $125,000,000 (on July 1, 2022); and

(ii) $115,000,000 (on July 5, 2022).[79]

52. The First HSBC Transaction Ledger also shows that BIPL used the funds received to pay taxes in the total amount of $14,572,252.[80]

**F. BIPL Transferred Funds to BHPL**

---

75 260121 Byju Global Pte Directors Register (**Exhibit 15**)

76 220506 Byju Global Pte Constitution (**Exhibit 22**).

77 **Exhibit 23.**

78 The TLPL Board approved this purchase of TLPL stock, which increased the capitalization of TLPL without changing the ownership percentages of any shareholder, including of Byju Raveendran, Divya Gokulnath, and Riju Ravindran.

79 **Exhibit 4** – Cell Reference “H34" + “H35”.

80 **Exhibit 4** – Cell Reference “H43" + "H44" + "H54" +"H55" +"H56" +"H57".

53. On information and belief, the remaining $20,427,903 BIPL received from Revere, was transferred to BHPL (BIPL's parent company).[81]

**G. BHPL Transferred Funds to TLPL to Purchase Shares**

54. BHPL is a Singaporean company. The directors at the time of the transactions were Byju Raveendran and Sao Xio Ling.[82] The bylaws of BIPL provide that all board resolutions and decisions must be by majority and, since there are only two directors, both directors must agree to all board decisions.[83] Sao Xio Ling is an independent director, as required by Singapore corporate law.[84]

55. BHPL used the $20,427,903 from BIPL to acquire shares in TLPL. The First HSBC Transaction Ledger shows that BHPL transferred $250,000,000 on September 22, 2022 and October 28, 2022.[85] This $250,000,000 was expressly used to purchase shares in TLPL.[86] On information and belief, that $250,000,000 amount comprised the remaining $20,427,903 BIPL received from Revere. It also comprised $200,000,075 that Revere transferred to BGPL.[87]

---

81 The HSBC Transaction Ledger does not show internal transfers between the parent companies. It appears that the HSBC Transaction Ledger only list the transactions made by the parent companies to third parties and/or international transactions to related companies.

82 260121 Byju Holding I Pte Directors Register (**Exhibit 16**).

83 220831 Byju Holding I Pte Constitution (**Exhibit 21**).

84 **Exhibit 23.**

85 **Exhibit 4** – Cell Reference "H52" + "H53" + "H64." On December 28, 2022, BHPL transferred $50M to TLPL for the purchase of shares. On a FIFO basis, $20.4M was used from Revere-BIPL $400MM Facility Agreement dated 27 June 2022.

86 **Exhibit 4** - Cell Reference "Y34" + "Y35" + "Y52" + "AG53" + "Y64"

87 **Exhibit 4** - Cell Reference "H40".

56. The First HSBC Transaction Ledger reflects that BIPL and BHPL, together, transferred to TLPL for the purchase of shares the total amount of $490,000,000.[88] Of this amount, $460,427,903 were from the Alpha Funds. The difference - $29,572,097 – appears to have been paid from BHPL's funds.[89]

57. Please see below a screenshot of the First HSBC Transaction Ledger which shows that all the transfers made by BHPL and BIPL to TLPL were made for the "*purchase of shares of TLPL*."

| | F | H | U | W | Y | AE | AG |
|---|---|---|---|---|---|---|---|
| 1 | TRANSACTION_DATE | DB_AMOUNT | ORIGINATOR | BENEFICIARY | SENDER_BANK_CORRESP | BENEFICIARY_SEQB | SENDER_BANK_CORRESP_SEQB |
| 34 | 07/01/22 | $125,000,000.00 | SGACU 260288030178 BYJUS INVESTMENTS PTE. LTD. 30 CECIL STREET 19-08 PRUDENTIAL TOWER SINGAPORE 049712/SG | 073507519002 THINK AND LEARN PVT LTD-CAP IBC KNOWLEDGE PARK4/1 2ND FLOORTOW ER D BANNERGHATTA560029IN | PURCHASE OF SHARES PURCHASE OF SHARES OF THINK AND LEARN PVT LTD UNDER AUTOMATIC ROUTE | | null |
| 35 | 07/05/22 | $115,000,000.00 | SGACU 260288030178 BYJUS INVESTMENTS PTE. LTD. 30 CECIL STREET 19-08 PRUDENTIAL TOWER SINGAPORE 049712/SG | 073507519002 THINK AND LEARN PVT LTD-CAP IBC KNOWLEDGE PARK4/1 2ND FLOORTOW ER D BANNERGHATTA560029IN | PURCHASE OF SHARES PURCHASE OF SHARES OF THINK AND LEARN PVT LTD UNDER AUTOMATIC ROUTE | | null |
| 52 | 09/22/22 | $100,000,000.00 | SGACU 260071782178 BYJUS HOLDINGS 1 PTE. LTD. 30 CECIL STREET 19-08 PRUDENTIAL TOWER SINGAPORE 049712/SG | 002281300007968 THINK AND LEARN PVT LTD IBC KNOWLEDGE PARK4/1 2ND FLOORTOW ER D BANNERGHATTA560029IN | PURCHASE OF SHARES PURCHASE OF SHARES OF THINK AND LEARN PVT LTD UNDER AUTOMATIC ROUTE | | null |
| 53 | 09/22/22 | $100,000,000.00 | SGACU 260071782178 BYJUS HOLDINGS 1 PTE. LTD. 30 CECIL STREET 19-08 PRUDENTIAL TOWER SINGAPORE 049712/SG | YES BANK LIMITED DR. A. B.ROAD MOTI MAHAL BLDG MUMBAI | null | 002281300007968 THINK AND LEARN PVT LTD IBC KNOWLEDGE PARK4/1 2ND FLOORTOW ER D BANNERGHATTA560029IN | PURCHASE OF SHARES PURCHASE OF SHARES OF THINK AND LEARN PVT LTD UNDER AUTOMATIC ROUTE |
| 54 | 10/28/22 | $50,000,000.00 | SGACU 260071782178 BYJUS HOLDINGS 1 PTE. LTD. 30 CECIL STREET 19-08 PRUDENTIAL TOWER SINGAPORE 049712/SG | 073507519002 THINK AND LEARN PVT LTD IBC KNOWLEDGE PARK4/1 2ND FLOORTOW ER D BGHATTABANGALORE560029IN | PURCHASE OF SHARES PURCHASE OF SHARE OF THINK AND LEARN PVT LTD UNDER AUTOMATIC ROUTE | | null |

58. The TLPL Board approved this purchase of TLPL stock, which increased the capitalization of TLPL without changing the ownership percentages of any shareholder, including of Byju Raveendran, Divya Gokulnath, and Riju Ravindran.

---

88 **Exhibit 4** – Cell Reference "H34" + "H35" + "H52" + "H53" + "H64."

89 **Exhibit 4** - Cell Reference "H64." Considering that on December 28, 2022, BHPL transferred $50 million to TLPL for the purchase of shares, it is assumed that the excess funds used by BHPL to acquire shares in TLPL came from BHPL's existing funds.

## VIII. DEBTOR'S RECOVERY FROM OCI REDUCES THE DAMAGES TO WHICH DEBTOR IS ENTITLED

59. Debtor has already recovered damages that it seeks from Defendant from OCI in *Byju's Alpha Inc., and Glas Trust Company LLC, v. OCI Limited*, Adversary Proceeding No. 25-50822 (BLS) (the OCI Proceeding).

60. At a November 26, 2025, hearing in the OCI Proceeding, counsel for OCI stated that the proposed settlement agreement between Debtor, Glas Trust LLC and OCI included an assignment of an account receivable of OCI to Plaintiffs.[90] The assignment of an account receivable of OCI to Plaintiffs constitutes a recovery of damages awarded in Partial Summary Judgment dated 14 March 2025 in *Adv. Pro. No. 24-50013 (BLS) Adv. D.I. 388.*

61. Mr. Van Tol correctly pointed out at the time that:

> […] "*sitting here today, one of the things that I think is of interest to anyone who's involved in this case was the statement by Mr. Dinardo, counsel for OCI, who said that the settlement agreement involves a transfer of a receivable. It's not clear … what the benefit to the estate is*."

(emphasis added).[91]

62. Mr. Chapman states that OCI received $505,907,436 in Alpha Funds from Camshaft Capital Fund, LP in May and July 2022.[92] Those are the same Alpha Funds that Debtor seeks to recover in this proceeding:

---

90 *Case No. 24-10140,* Nov. 26, 2025, Hearing Transcript at 11:10-11(Dinardo).

91 *Case No. 24-10140, Nov. 26, 2025, Hearing Transcript at 28:12-18.*

92 *See*, *Byju's Alpha, Inc. v. OCI Limited et al*, Adv. Pro. Case No. 25-50822. Adv. D.I. 49 (sealed) and 50 (redacted), Exh. B ("Chapman Declaration") at ¶4.

> […] "*with respect to Count I (aiding and abetting), the Debtor alleges that Raveendran substantially assisted his brother's fiduciary breach in mid-2022, when Riju executed the first fraudulent transfer by causing the Debtor to transfer $533 million in cash to Camshaft Capital Fund, LP.*"[93]

63. Mr. Chapman testifies that of the $505,907,436 OCI received from Camshaft, OCI transferred $479,625,100 -- the "lion's share of the funds" -- to an SPV of Revere Securities LLP named Revere Master SPV LLC.[94] On information and belief, this $479,625,100 is the "receivable" to which counsel for OCI and Debtor referred during the November 26, 2025 hearing, and that was assigned to Debtor pursuant to their settlement agreement.[95]

64. That assignment was part of the "consideration" Debtor received for the Alpha Funds and must be a deducted from any quantum of damages Plaintiffs now seek from Defendant in this proceeding.

## IX. DEBTOR'S DAMAGES ARE REDUCED BY THE VALUE OF DEBTOR AT THE DATE GLAS TOOK ITS SHARES

65. On March 3, 2023, GLAS, acting on behalf of the Lenders, issued a Notice of Enforcement of Rights and Remedies under the Pledge Agreements and Security Agreements,[96] pursuant to which control of the shares of Debtor was taken. The valuation of those shares must be assessed as of that date. Any activities, transactions, or events involving Debtor occurring after

---

93 Plaintiffs' Opposition to Motion of Defendant to Amend the Briefing Schedule. Adv. D. I. 170 at 10 (citing its Default Motion at 20-21).

94 *See*, *Byju's Alpha, Inc. v. OCI Limited et al*, Adv. Pro. Case No. 25-50822. Adv. D.I. 49 (sealed) and 50 (redacted), Exh. B ("Chapman Declaration") at ¶5.

95 Mr. Chapman is the Chief Executive Officer of OCI and therefore is likely the signatory to the settlement agreement between Debtor, Glas Trust Company LLC and OCI.

96 See *Byju's Alpha, Inc. v. Camshaft Capital Fund, LP et al*. Adv. Pro. Case № 24-50013 Adv. D.I. 277, Exhibit 29.

March 3, 2023 are legally irrelevant to the determination of the shares' value at the time enforcement was effected.

66. The purpose of taking the shares would be to sell the shares / auction the assets and use the proceeds to pay the Lenders. To determine the value of the shares, the assets of Debtor, offset by any known liabilities must be calculated. That liabilities figure excludes the $1,200,000,000 secured term loan facility and accrued interest, as GLAS's enforcement action is specifically intended to liquidate the pledged shares/assets to satisfy that facility. Including the loan as a liability in this context would result in circular offsetting.

67. As of March 3, 2023, excluding the secured term loan facility and its related accrued interest, there are no known 3rd party debts or other liabilities. The assets held by Debtor on that day total $975,283,948. As determined from the Use of Proceeds analysis[97] this is further broken down as TPLP loans to and investments in subsidiaries and related parties valued at $442,283,948 plus the Camshaft LP interest, as valued by APEX Capital[98] at $533,000,000.

68. As the loans to and investment in subsidiaries and related parties are inter-company in nature, the $442,283,948 is considered to be 100% collectible as the subsidiaries and related parties are under the parent of TLPL and on a consolidated basis, which is used to determine solvency per the Credit Agreement[99], Debtor was clearly solvent and had the funds to offset all intercompany loans.

---

97 **Exhibit 1** at Spreadsheet "*Use of Proceeds*".

98 **Exhibit 1** at Spreadsheet "*Use of Proceeds*".

99 Adv D.I. 78, Exhibit 24.

69. Regarding the Camshaft LP interest, this was assumed by TLPL per the March 15, 2023, Offset Agreement with OCI,[100] which resulted in TLPL guaranteeing the $533,000,000 Camshaft LP Interest/Loan. As this is now guaranteed by TLPL and as TLPL was a solvent company, this amount is 100% collectible.

70. As the $975,283,948 proceeds results in a deficit of the amount owed by the Lenders, GLAS could insist the deficiency is paid by the guarantor.

## X. DEBTOR'S DAMAGES ARE REDUCED BY THE VALUE OF THE GUARANTORS THAT THE LENDERS HAVE TAKEN OVER PURSUANT TO CREDIT AGREEMENT GUARANTEES[101]

71. GLAS has invoked Credit Agreement guarantees to take the shares of the following affiliated entities which had provided guarantees to Debtor's performance under the Credit Agreement:

(a) Debtor, Bankruptcy Case No. 24-10140 (February 2, 2024);

(b) Epic! Creations Inc (Safa Formation Inc.), Bankruptcy Case No. 24-11161 (June 4, 2024);

(c) Tangible Play Inc, Bankruptcy Case No. 24-11163 (June 4, 2024);

(d) Neuron Fuel Inc ("Tynker"), Bankruptcy Case No. 24-11162 (June 5, 2024);

---

100 230315 OCI letter TLPL Alpha Camshaft re set off confirmation (**<u>Exhibit 13</u>**)

101 Plaintiffs are also seeking to recover the same $533 million in other proceedings against Defendant and Divya Gokulnath in Dubai (Case 749/2025 under the Dubai Commercial Courts and I.A. No 410 of 2025 in CP (IB) No. 149/BB/2023). Plaintiffs have also obtained, or are in the process of obtaining judgments against Riju Raveendran, and TLPL, for the same $533 million. *Byju's Alpha, Inc. v. Camshaft Capital Fund, LP et al.* Adv. Pro. No. 24-50013, D.I. 383.

(e) Great Learning Education PTE (Singapore), Kroll Receivership (October 11, 2024); and

(f) TLPL, India CIRP No. 149 BB 2023 (Sept. 23, 2023)

72. The value of each of those entities, when GLAS acquired them must be deducted from the $533 million alleged "Alpha Funds." This information, again, is within GLAS' knowledge and possession. Defendant has served discovery requests on GLAS, but GLAS has refused to hand over this information. GLAS knows—or can and must find out—the individual and cumulative value of the aforesaid companies, and those values are directly and materially relevant to Plaintiffs' claims for relief in this proceeding.

## XI. WORLD-WIDE FREEZING ORDER AGAINST BYJU RAVEENDRAN AND DIVYA GOKULNATH

73. Attached hereto as **Exhibit 17** is a true and correct copy of the World-Wide Freezing Order issued by the DIFC Courts on May 21, 2025 against Byju Raveendran and Divya Gokulnath.

## XII. DECISION FROM THE DUBAI COMMERCIAL COURT AGAINST BYJU RAVEENDRAN AND DIVYA GOKULNATH

74. Attached hereto as **Exhibit 18** is a true and correct copy of the Judgment issued under the Case 749/2025 under Dubai Commercial Courts against Byju Raveendran and Divya Gokulnath, followed by an unofficial translation to English.

## XIII. INSPILEARN LLC OWNERSHIP

75. Attached hereto as **Exhibit 19** a true and correct copy of the Amended & Restated Limited Liability Company Agreement of Inspilearn LLC, that is 100% owned by TLPL. Plaintiffs

have had this document since at least July 2024, when Plaintiffs submitted it together with Finestone Declaration in support of the Motion for Partial Summary Judgment[102].

## XIV. FINANCIAL STATEMENTS FROM 2022 FOR BYJU'S ALPHA AND T&L

76. Attached hereto as **Exhibit 24** is a true and correct copy of the Byju's Alpha Financial Statement for the year of 2022.

77. Attached hereto as **Exhibit 25** is a true and correct copy of the Think & Learn Financial Statement for the year of 2022.

## XV. THINK & LEARN BOARD OF DIRECTOR AND GENERAL ASSEMBLY MINUTES

78. Attached hereto as **Exhibit 26** is a true and correct copy of the Board Minute Meeting from Think & Learn.

79. Attached hereto as **Exhibit 27** is a true and correct copy of the Board Minute Meeting from Think & Learn.

80. Attached hereto as **Exhibit 28** is a true and correct copy of the Board Minute Meeting from Think & Learn.

81. Attached hereto as **Exhibit 29** is a true and correct copy of an Extraordinary General Meeting Minute from Think & Learn.

82. Attached hereto as **Exhibit 30** is a true and correct copy of the Board Minute Meeting from Think & Learn.

---

102 *See Byju's Alpha, Inc. v. Camshaft Capital Fund, LP et al*. Adv. Pro. Case № 24-50013 Adv. D.I. 277, Exhibit 38.

83. Attached hereto as **Exhibit 31** is a true and correct copy of an Extraordinary General Meeting Minute from Think & Learn..

84. Attached hereto as **Exhibit 32** is a true and correct copy of the Board Minute Meeting from Think & Learn.

85. Attached hereto as **Exhibit 33** is a true and correct copy of Annual General Meeting Minute from Think & Learn.

86. Attached hereto as **Exhibit 34** is a true and correct copy of the Board Minute Meeting from Think & Learn.

87. Attached hereto as **Exhibit 35** is a true and correct copy of an Extraordinary General Meeting Minute from Think & Learn.

88. Attached hereto as **Exhibit 36** is a true and correct copy of the Board Minute Meeting from Think & Learn.

89. Attached hereto as **Exhibit 37** is a true and correct copy of the Board Minute Meeting from Think & Learn.

90. Attached hereto as **Exhibit 38** is a true and correct copy of the Board Minute Meeting from Think & Learn.

91. Attached hereto as **Exhibit 39** is a true and correct copy of an Extraordinary General Meeting Minute from Think & Learn.

Pursuant to 28 USC §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 21, 2026

Paris, France

John McNutt

J. Michael McNutt

# Exhibit 1

**Byju's Alpha- Use of Credit Note Proceeds ($1.2BB)**

| **Category- Use of Credit Note Proceeds by Alpha** | **Alpha payments from Credit Note (both JPM &SVB accounts)- see Sources below** | **Ultimate Distribution of Camshaft LP interests subscription payment [a]** | **Credit Note Payments by Alpha & thru Camshaft LP interest - aggregated** |
|---|---|---|---|
| TLPL Related Party Loans/ Advances | $ 442 283 948 | $ 460 427 903 | $ 902 711 851 |
| Think & Learn | $ - | $ 460 427 903 | $ 460 427 903 |
| Tangible Play | $ 229 917 195 | $ - | $ 229 917 195 |
| Whitehat | $ 57 850 300 | $ - | $ 57 850 300 |
| Inspilearn | $ 41 500 000 | $ - | $ 41 500 000 |
| Byju's Beta | $ 42 001 000 | $ - | $ 42 001 000 |
| Byju's PTE / Great Learning PTE | $ 32 500 000 | $ - | $ 32 500 000 |
| Byju's SA de CV Mexico | $ 12 041 000 | $ - | $ 12 041 000 |
| Byju Tech Educational | $ 9 778 000 | $ - | $ 9 778 000 |
| Epic Creations | $ 2 772 308 | $ - | $ 2 772 308 |
| Byju's GeoGebra | $ 13 924 145 | $ - | $ 13 924 145 |
| Arrangement & Origination Fees [b] | $ 30 036 450 [1] | $ - | $ 30 036 450 |
| Principal & Interest (paid to GLAS for the Lenders | $ 100 216 442 | $ - | $ 100 216 442 |
| Fees & Other Expenses - subtotal [d] | $ 92 667 473 | $ - | $ 92 667 473 |
| December 2021 Disbursements [e] | $ 1 795 688 | | $ 1 795 688 |
| Retained Interest (Camshaft) [f] | $ - | $ 27 092 350 | $ 27 092 350 |
| OCI Payments (Google, Sony, Retained) [g] | $ - | $ 26 282 550 | $ 26 282 550 |
| Revere Master SPV [h] | $ - | $ 4 624 945 | $ 4 624 945 |
| Tax Payments [i] | | $ 14 572 252 | $ 14 572 252 |
| **Sub- Total excluding payment to Camshaft** | **$ 667 000 000** | **$ 533 000 000** | **$ 1 200 000 000** |
| Camshaft LP Interest - TLPL | $ 533 000 000 | $ (533 000 000) | $ - |
| **Total** | **$ 1 200 000 000** [2] | **$ -** | **$ 1 200 000 000** |

[a] Reference "Flow of Funds - Details" tab for detail.
[b] Arrangement Fee of 1% + Origination Fee/Funding Discount of 1.5%.
[c] includes $285,687.85 that is related to December 2021. As December monthly bank statements for both JPM & SVB were not available a reconciliation of actual expenses will be made after monthly statements provided.
[d] See tab 'Fees & Other Expenses" tab for details of the Alpha ~$105MM fees & expenses.
[e] December monthly bank statements for both JPM & SVB were not available. However, considering that Byju Alpha recieved $1,170MM net proceeds from the Credit Agreement and that the ending balance of all Byju's Alpha Bank Acounts on December 31, 2021 was $1,105,878,278, around $64.7M was spent until 31 December 2021. From the aforementioned amount, $63M was identified through the 2022 Byju Alpha Audited Financial Statements which: (i) $20MM was lent to Tangible Play; and (ii) $43MMM to Inspilearn. The remaining $1.7M of actual expenses to be reconciled after monthly statements provided.
[f] See tab "Flow of Funds - Details" for details of payments used with Camshaft LP funds of ~$27,09MM
[g] Payment made by OCI to Google, Sony and Retained amounts. See "OCI" tab for detail.
[h] Revere Master SPV- balance resulting from HSBC disclosure. See **Exh 8** "'250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx'
[i] Tax Payments made by BIPL with the Alpha Funds.

**Sources:**

[1] See **Exh. 045** "211124 JP Morgan letter Byju Alpha re Term Loan Facility Fee Exh 32 doc78-32.pdf"
[2] All the transactions related to $1,2MM derived from the documents produced by: (i) Byju's Alpha, as submitted by Plaintiff on 10 April 2024 as Exhibits 8 and 9 of the Motion for an Order under Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004-1, which directs the examination of the US Loan Guarantors (see **Exh 15** 240410 Byju Alpha MOT re US Loan Guarantors 2004 Examination doc163.pdf"). Also, submitted as Exhibits 5 & 6 of Benjamin Finestone Declaration on 07 July 2024 (see **Exh 16** "240708 Finestone Declaration re Byju Alpha Summary Judgment MOT doc277.pdf"); (ii) Camshaft, as provided by Pieter Van Tol - Defendants' Cousel - to Plaintiff's Counsel on 10 June 2024 (See **Exh 26** "240610 PVT Declaration doc246")' and (iii) HSBC, to which subpoenas were issued on 21 March 2025 (See **Exh 51** "250321 Byju Alpha Subpoena HSBC Bank" ) & 02 April 2025 (See **Exh 52** "250402 Byju Alpha Subpoena HSBC Bank" ) with a deadline for 21 April 2025 & 02 May 2025, respectively. Quinn Emanuel, however, provided the documents produced by HSBC to Piter Van Tol - Defendants' Counsel - only on 30 June 2025 (See **Exh 21** "250630 1611 QE email PVT re HSBC Subpoena Answer.pdf"). Also, the 2022 Byju's Alpha Audited Financial Statements (See **Exh 53** "221122 2022 Byju Alpha Financial Statement") complement the information provided and confirms the transactions listed during the period of January/2022 until March/2022.

**Flow of Funds - BYJUs Alpha's**
**$533M Camshaft Subscription Detail Flow to TLPL**

| | **Byjus Alpha** | **Camshaft Capital Fund LP (DE)** | **Camshaft Capital Management LLC (FL)** | **OCI Limited (UK)** | **Revere Master SPV LLC - Series VII (DE)** | **Byju's Investment Pte. Ltd. ("BIPL) (Singapore)** | **Byju's Global Pte. Ltd. ("BGPL) (Singapore)** | **Byju's Holdings 1 Pte. Ltd. ("BHPL) (Singapore)** | **Think & Learn Pte. Ltd. ("TLPL") (India)** | **Taxes** | **Total** |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | $ 1 200 000 000 | | | | | | | | | | $ 1 200 000 000 |
| TLPL Related Party Loans/ Advances & Other Expenses | $ (667 000 000) | | | | | | | | | | $ (667 000 000) |
| Subscriptions: Alpha- Camshaft Fund | $ (533 000 000) | $ 533 000 000 | | | | | | | | | $ - |
| Camshaft Management/ GP Fees | | $ (12 092 350) | $ 12 092 350 | | | | | | | | $ - |
| Promissory Notes: Camshaft Fund to Camshaft Management | | $ (15 000 000) | $ 15 000 000 | | | | | | | | $ - |
| Promissory Notes: Camshaft Fund- OCI (net, proceeds) | | $ (505 907 650) | | $ 505 907 650 | | | | | | | $ - |
| Investment by OCI- Revere Master SPV | | | | $ (479 625 100) | $ 479 625 100 | | | | | | $ - |
| Investment by Revere Master SPV in BIPL | | | | | $ (275 000 080) | $ 275 000 080 | | | | | $ - |
| BIPL Payment of Taxes | | | | | | $ (14 572 252) | | | | $ 14 572 252 | $ - |
| BIPL Investment in TLPL (1) | | | | | | $ (240 000 000) | | | $ 240 000 000 | | $ - |
| BIPL Transfer to BHPL | | | | | | $ (20 427 828) | | $ 20 427 828 | | | $ - |
| Investment by Revere Master SPV in BGPL | | | | | $ (200 000 075) | | $ 200 000 075 | | | | $ - |
| BGPL Transfer to BHPL | | | | | | | $ (200 000 075) | $ 200 000 075 | | | $ - |
| BHPL Investment in TLPL (1) | | | | | | | | $ (220 427 903) | $ 220 427 903 | | $ - |
| **Subtotal- Flow of Funds- Camshaft ($533M)** | **$ -** | **$ -** | **$ 27 092 350** | **$ 26 282 550** | **$ 4 624 945** | **$ -** | **$ -** | **$ -** | **$ 460 427 903** | **$ 14 572 252** | **$ 533 000 000** |
| **Camshaft & OCI use of Retained Funds:** | | | | | | | | | | | |
| *Finders fee (EF Hutton/Coastal Equities/ Harry Max)* | | | *$ (8 250 958)* | | | | | | | | *$ (8 250 958)* |
| *Google and Sony India- Culver Entertainment* | | | | *$ (13 182 215)* | | | | | | | *$ (13 182 215)* |
| *OCI Internal Transfers* | | | | *$ (4 113 123)* | | | | | | | *$ (4 113 123)* |
| *OCI 3rd Party Payments* | | | | *$ (8 987 212)* | | | | | | | *$ (8 987 212)* |
| *Deposits from 3rd Parties:* | | *$ 14 211 368* | *$ 2 070 312* | | | | | | | | *$ 16 281 680* |
| *Transfer from Camshaft Advisors (Funds from Loan)* | | *$ 15 000 000* | *$ (15 000 000)* | | | | | | | | *$ -* |
| *Deposits from other Camshaft Entities/ Accounts* | | *$ 34 354 128* | *$ 411 375* | | | | | | | | *$ 34 765 503* |
| *Transfers to 3rd Parties* | | *$ (37 852 900)* | *$ (2 358 568)* | | | | | | | | *$ (40 211 468)* |
| *Transfers to other Camshaft Entities/ Accounts* | | *$ (25 728 791)* | *$ (2 868 705)* | | | | | | | | *$ (28 597 496)* |
| *William Morton* | | *$ -* | *$ (715 475)* | | | | | | | | *$ (715 475)* |
| *Withdrawals* | | *$ -* | *$ (363 176)* | | | | | | | | *$ (363 176)* |
| *Other Misc.* | | *$ 16 195* | *$ (17 154)* | | | | | | | | *$ (959)* |
| **Total- Flow of Funds- Revere ($479M)** | **$ -** | **$ -** | **$ -** | **$ -** | **$ 4 624 945** | **$ -** | **$ -** | **$ -** | **$ 460 427 903** | **$ 14 572 252** | **$ 479 625 100** |

(1) The subpeonaed HSBC Bank Transaction Ledger shows a total of $490M TLPL stock purchased. $240M was purchased with two transaction by BIPL ($125M on 2022-Jul-01 and $115M on 2022-Jul-05), and an additional $250M was purchased with three transactions by BHPL (two on 2022-Sep-22 each for $100M and $50M on 2022-Oct-28). Of these $250M transactions from BHPL, $20.4M was from the funds received by Revere. As this exhausted the funds available, the remaing $29.6M from BHPL was from an additional resource. In summary, of the $490M shares of TLPL purchased $460.4M was purchased with the Revere funds and $29.6M with additional BHPL resources.

**Sources:**

See **Exh 1** "230531 Camshaft Advisors Interactive Brokers re Apr 2022 to May 2023.pdf"
See **Exh 2** "220630 Camshaft Fund USB Bank Statement re Jan to Jun 2022.pdf"
See **Exh 3** "220630 Camshaft Management USB Bank Statement re Jan 2022 to Jun 2022.pdf"
See **Exh 4** "230430 Camshaft Fund JP Morgan Bank Statement re Jul 2022 to Apr 2023.pdf"
See **Exh 5** "230531 Camshaft Fund Northern Trust Bank Statement re Jul 2022 to May 2023.pdf"
See **Exh 6** "230531 Camshaft Fund TCB Bank Statement re Jun 2022 to May 2023.pdf"
See **Exh 7** "230531 Camshaft Management JP Morgan Bank Statement re Jul 2022 to May 2023.pdf"
See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx"
See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx"
See **Exh 12** "251115 Oliver Chapman Declaration Exh B doc50-2.pdf"
For more detailed information, see "Tab "Flow of Funds - Details"

**Alpha Fund Flow**
**Camshaft - OCI - Revere - TLPL**

| Description | Date (Flow of Funds) | BYJUs Alpha (DE) (A) | Camshaft Capital Fund LP (DE) (B) | Camshaft Capital Management LLC (FL) | OCI Limited (UK) (C) | Revere Master SPV LLC - Series VII (DE) (D) | BYJUs Investment PTE LTD (BIPL) (Singapore) (E) | BYJUs Global PTE LTD (BGPL) (Singapore) (F) | BYJUs Holding PTE LTD (BHPL) (Singapore) (F) | Think & Learn Pte. Ltd. (TLPL) (India) (G) | Withholdings Tax Payments (H) | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Alpha Credit Agreement Funds (JPM)** [1] | Available at Closing | $ **1 200 000 000** | | | | | | | | | | $ 1 200 000 000 |
| Alpha payments/investment to/in 3rd parties or related entities (see Use of Proceeds worksheet) | Various | $ (667 000 000) | | | | | | | | | | $ (667 000 000) |
| Alpha - Camshaft Fund Subscription I (US Bank) [2] | 2022-04-28 | $ (318 000 000) | $ 318 000 000 [21] | | | | | | | | | $ - |
| Camshaft-OCI Promissory Note I $318MM - transfer is net of retained interest (full term) of $18MM - payable 26 APR 2025 [3] | 2022-05-10 | | $ (300 000 000) [22] | | $ 300 000 000 [43] | | | | | | | $ - |
| Camshaft Management Fee Allocation in accordance with Camshaft Fund & Byju Alpha Side Letter Agreement dated 26 April 2022 [4] | 2022-05-10 | | $ (9 000 000) [23] | $ 9 000 000 [32] | | | | | | | | $ - |
| Camshaft Management Promissory Note to Camshaft Fund dated 30 Apri 2022 (Loan Agreement 9M) - payable 30 APRIL 2025 [5] | 2022-05-11 | | $ (9 000 000) [24] | $ 9 000 000 [40] | | | | | | | | $ - |
| Revere Master SPV- investment by OCI (no document)-total $479MM [6] | 2022-06-28 | | | | $ (150 000 100) [44] | $ 150 000 100 | | | | | | $ - |
| Revere-BIPL $400MM Facility Agreement dated 27 June 2022 - test wire | 2022-06-28 | | . | | | $ (95) [60] | $ 95 | | | | | $ - |
| Revere Master SPV- investment by OCI (no document)-total $479MM [6] | 2022-06-29 | | | | $ (103 750 000) [45] | $ 103 750 000 | | | | | | $ - |
| Revere-BIPL $400MM Facility Agreement dated 27 June 2022 (no document) [7] | 2022-06-29 | | | | | $ (149 999 995) [61] | $ 149 999 995 | | | | | $ - |
| Revere-BIPL $400MM Facility Agreement dated 27 June 2022 (no document) [7] | 2022-06-30 | | | | | $ (99 999 995) [62] | $ 99 999 995 | | | | | $ - |
| Purchase of TLPL Shares-BIPL [8] | 2022-07-01 | | | | | | $ (125 000 000) [66] | | | $ 125 000 000 | | $ - |
| Purchase of TLPL Shares-BIPL [8] | 2022-07-05 | | | | | | $ (115 000 000) [67] | | | $ 115 000 000 | | $ - |
| Revere Master SPV- investment by OCI (no document)-total $479MM [6] | 2022-07-07 | | | | $ (25 375 000) [46] | $ 25 375 000 | | | | | | $ - |
| Revere-BIPL $400MM Facility Agreement dated 27 June 2022 (no document) [7] | 2022-07-08 | | | | | $ (24 999 995) [63] | $ 24 999 995 | | | | | $ - |
| Alpha- Camshaft Subscription Agreement II ("Additional Subscription Request") dated 12July 2022 [9] | 2022-07-13 | $ (215 000 000) | $ 215 000 000 [25] | | | | | | | | | $ - |
| Camshaft- OCI Promissory Note II $215MM -transfer net of retained interest (full term) of $24.2MM- payable 12 JULY 2025 [10] | 2022-07-14 | | $ (190 812 500) [26] | | $ 190 812 500 [47] | | | | | | | $ - |
| Camshaft Management Fee Allocation in accordance with Camshaft Fund & Byju Alpha Side Letter Agreement dated 12 July 2022 [11] | 2022-07-15 | | $ (1 667 500) [27] | $ 1 667 500 [33] | | | | | | | | $ - |
| Camshaft -OCI Promissory Note III $16.620MM -transfer is net of retained interest of $1.4MM- payable 15 JULY 2025 [12] | 2022-07-15 | | $ (15 095 150) [28] | | $ 15 095 150 [48] | | | | | | | $ - |
| Camshaft Management Fee Allocation in accordance with Camshaft-OCI Promissory Note III, Clause 4.A [12] | 2022-07-15 | | $ (1 424 850) [29] | $ 1 424 850 [34] | | | | | | | | $ - |
| Revere Master SPV- investment by OCI (no document)-total $479MM [6] | 2022-07-15 | | | | $ (200 500 000) [49] | $ 200 500 000 | | | | | | $ - |
| Revere-BIPL $475MM Facility Agreement dated 27 June 2022, amended (no document)- test wire | 2022-07-15 | | | | | $ (95) [64] | | $ 95 | | | | $ - |
| Revere-BIPL $475MM Facility Agreement dated 27 June 2022, amended (no document) [7] | 2022-07-19 | | | | | $ (199 999 980) [65] | | $ 199 999 980 | | | | $ - |
| Tax Payments (India)- BIPL | 2022-08-16 | | | | | | $ (2 917 838) [68] | | | | $ 2 917 838 | $ - |
| Tax Payments (India)- BIPL | 2022-09-22 | | | | | | $ (11 654 413) [69] | | | | $ 11 654 413 | $ - |
| Camshaft Fund Advisors ($8.5M transferred, which included $2.5M of comingled funds. This entry only shows $6M which also agrees with Camshaft Fund Byju Alpha Side Letter Agreement dated 12 July 2022 & Camshaft Management Promissory Note dated 14 July 2022 - payable 14 JULY 2025 [13] | 2022-09-30 | | $ (6 000 000) [30] | $ 6 000 000 [41] | | | | | | | | $ - |
| BIPL Transfer to BHPL | --- | | | | | | $ (20 427 828) [70] | | $ 20 427 828 | | | $ (20 427 828) |
| BGPL Transfer to BHPL | --- | | | | | | | $ (200 000 075) | $ 200 000 075 | | | $ (200 000 075) |
| BHPL-Purchase of TLPL Shares | 2022-09-22 | | | | | | | | $ (100 000 000) | $ 100 000 000 [71] | | $ 100 000 000 |
| BHPL-Purchase of TLPL Shares | 2022-09-22 | | | | | | | | $ (100 000 000) | $ 100 000 000 [72] | | $ 100 000 000 |
| BHPL-Purchase of TLPL Shares | 2022-10-28 | | | | | | | | $ (20 427 903) | $ 20 427 903 [73] | | $ 20 427 903 |
| **Total (ties to '$533MM Flow of Funds Summary" Tab):** | | **$ -** | **$ -** | **$ 27 092 350** | **$ 26 282 550** | **$ 4 624 945** | **$ -** | **$ -** | **$ -** | **$ 460 427 903** | **$ 14 572 252** | **$ 533 000 000** |
| **Camshaft & OCI use of Retained Funds:** | | | | | | | | | | | | |
| *Deposits from 3rd Parties:* | -- | | *$ 14 211 368* [31] | *$ 2 070 312* [35] | | | | | | | | $ 16 281 680 |
| *Transfer from Camshaft Advisors (Funds from Loan)* | -- | | *$ 15 000 000* [31] | *$ (15 000 000)* [42] | | | | | | | | $ - |
| *Deposits from other Camshaft Entities/ Accounts* | -- | | *$ 34 354 128* [31] | *$ 411 375* [35] | | | | | | | | $ 34 765 503 |
| *Transfers to 3rd Parties* | -- | | *$ (37 852 900)* [31] | *$ (2 358 568)* [35] | | | | | | | | $ (40 211 468) |
| *Transfers to other Camshaft Entities/ Accounts* | -- | | *$ (25 728 791)* [31] | *$ (2 868 705)* [35] | | | | | | | | $ (28 597 496) |
| *William Morton* | -- | | *$ -* | *$ (715 475)* [35] | | | | | | | | $ (715 475) |
| *Withdrawals* | -- | | *$ -* | *$ (363 176)* [35] | | | | | | | | $ (363 176) |
| *Other Misc.* | -- | | *$ 16 195* | *$ -* | | | | | | | | $ 16 195 |
| *EF Hutton & Camshaft Fund Finders Fee Agreement dated 26 April 2022* [14] | 2022-05-10 | | | *$ (5 865 333)* [36] | | | | | | | | $ (5 865 333) |
| *Coastal Equities & Camshaft Fund Finders Fee Agreement dated 20 May 2022* [15] | 2022-05-23 | | | *$ (1 155 000)* [37] | | | | | | | | $ (1 155 000) |
| *EF Hutton & Camshaft Fund Finders Fee Amended Agreement dated 13 July 2022* [16] | 2022-07-15 | | | *$ (647 000)* [38] | | | | | | | | $ (647 000) |
| *Harry Max & Camshaft Fund Finders Fee Amended Agreement dated 13 July 2022* [17] | 2022-07-15 | | | *$ (583 625)* [39] | | | | | | | | $ (583 625) |
| *OCI transfer to OCI Internal Account- Reference: 2312 2846 604358* [18] | 2022-05-31 | | | | *$ (122 875)* [50] | | | | | | | $ (122 875) |
| *OCI Procurement from 3rd parties for TLPL benefit (Sony India - Culver Max Entertainment PVT LTD)* [19] | 2022-06-30 | | | | *$ (1 342 046)* [51] | | | | | | | $ (1 342 046) |
| *OCI transfer to OCI Internal Account- Reference: 4062 4700 022134* | 2022-06-30 | | | | *$ (11 000 000)* [52] | | | | | | | $ (11 000 000) |
| *OCI transfer to OCI Internal Account- Reference: 2312 2846 604358* | 2022-06-30 | | | | *$ (250 025)* [53] | | | | | | | $ (250 025) |
| *OCI transfer to OCI Internal Account- Reference: 2312 2846 604358* | 2022-07-06 | | | | *$ (596 248)* [54] | | | | | | | $ (596 248) |
| *OCI transfer to OCI Internal Account- Reference: 2312 2846 604358* | 2022-09-20 | | | | *$ (570 901)* [55] | | | | | | | $ (570 901) |
| *OCI Procurement from 3rd parties for TLPL benefit (Google)* | 2022-11-25 | | | | *$ (1 097 539,96)* [56] | | | | | | | $ (1 097 540) |
| *OCI Procurement from 3rd parties for TLPL benefit (Google)* | 2022-11-29 | | | | *$ (1 885 728,43)* [57] | | | | | | | $ (1 885 728) |
| *OCI transfer to OCI Internal Account- Reference: 2312 2846 604358* | 2022-12-01 | | | | *$ (429 975)* [58] | | | | | | | $ (429 975) |
| *OCI Procurement from 3rd parties for TLPL benefit* [20] | -- | | | | *$ (8 987 212)* [59] | | | | | | | $ (8 987 212) |
| *Misc./ Other* | | | | *$ (17 154)* | | | | | | | | $ (17 154) |
| **Sub- Total** | | **$ -** | **$ -** [i] | **$ -** [ii] | **$ -** [iv] | **$ 4 624 945** [v] | **$ -** [vii] | **$ -** [vii] | **$ -** | **$ 460 427 903** [viii] | **$ 14 572 252** | **$ 479 625 100** |

**Sources' Production from each Entity Transactions**

**Introductory Note**: All the transactions listed were derived from the documents produced by: (i) Byju's Alpha, as submitted by Plaintiff on 10 April 2024 as Exhibits 8 and 9 of the Motion for an Order under Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004-1, which directs the examination of the US Loan Guarantors (see **Exh 15** "240410 Byju Alpha MOT re US Loan Guarantors 2004 Examination doc163.pdf"). Also, submitted as Exhibits 5 & 6 of Benjamin Finestone Declaration on 07 July 2024 (see **Exh 16** "240708 Finestone Declaration re Byju Alpha Summary Judgment MOT doc277.pdf"); (ii) Camshaft, as provided by Pieter Van Tol - Defendants' Cousel - to Plaintiff's Counsel on 10 June 2024 (See **Exh 26** "240610 PVT Declaration doc246")' and (iii) HSBC, to which subpoenas were issued on 21 March 2025 (See **Exh 51** "250321 Byju Alpha First Subpoena HSBC Bank.pdf" ) & 02 April 2025 (See **Exh 52** "250402 Byju Alpha Second Subpoena HSBC Bank.pdf") with a deadline for 21 April 2025 & 02 May 2025, respectively. Quinn Emanuel, however, provided the documents produced by HSBC to Piter Van Tol - Defendants' Counsel - only on 30 June 2025 (See **Exh 21** "250630 1611 QE email PVT re HSBC Subpoena Answer.pdf"). Also, the 2022 Byju's Alpha Audited Financial Statements (See **Exh 53** "221122 2022 Byju Alpha Financial Statement") complement the information provided and confirms the transactions listed during the period of January/2022 until March/2022.

(A) See **Exh 13** "221231 2022 Byju Alpha Bank Statements JPM doc277-5 sealed.xlsx" & **Exh 14** "221231 2022 Byju Alpha Bank Statements SVB doc277-6.xlsx". These bank statements were first submitted on 10 April 2024 by Byju's Alpha as Exhibits 8 and 9 of the Motion for an Order under Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004-1, which directs the examination of the US Loan Guarantors (see **Exh 15** 240410 Byju Alpha MOT re US Loan Guarantors 2004 Examination doc163.pdf"). Also, submitted as Exhibits 5 & 6 of Benjamin Finestone Declaration on 07 July 2024 (see **Exh 16** "240708 Finestone Declaration re Byju Alpha Summary Judgment MOT doc277.pdf") which exhibits were cited on the Memorandum Opinion issued by the DE Court on 27 February 2025 ((See footnote 6, **Exh 48** "250227 DE Court Memorandum Opinion & Order doc382.pdf"). The documents were also submitted in the Adversarial Proceedings No. 25-50526, on 11 August 2025, as Exhibits 2 of Tim Pohl Declaration in Support Byju's Alpha Motion of Default against Biju Raveendran (see **Exh 17** "250811 Tim Pohl Declaration re Byju Alpha & GLAS Default MOT doc97-2.pdf").

(B) See **Exh 18** "220531 Camshaft Fund USB Bank Statement re May 2022.pdf" & **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022.pdf", provided by Pieter Van Tol to Plaintiff's Counsel, on 10 July 2024 (See **Exh 26** 240610 PVT Declaration doc246).

(C) No bank statements from OCI Limited were provided. All the transactions listed below were obtained solely from the documents provided by HSBC in its response to the subpoenas issued on 21 March 2025 & 02 April 2025 (See **Exh 51** "250321 Byju Alpha Subpoena HSBC Bank" & **Exh 52** "250402 Byju Alpha Subpoena HSBC Bank" and received from Claimant's Counsel (Quinn Emanuel LLP) on 30 June 2025 (See **Exh 21**) (See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx")

(D) No bank statements from Revere Master SPV Ltd., Series VII, were provided. All the transactions listed below were obtained solely from the documents provided by HSBC in its response to the subpoenas issued on 21 March 2025 & 02 April 2025 (See **Exh 51 & 52**) and received from Claimant's Counsel (Quinn Emanuel LLP) on 30 June 2025 (See **Exh 21**) (See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx")

(E) No bank statements from Byju's Investments Pte. Ltd. (BIPL) were provided. All the transactions listed below were obtained solely from the documents provided by HSBC in its response to the subpoenas issued on 21 March 2025 & 02 April 2025 (See **Exh 51 & 52**) and received from Claimant's Counsel (Quinn Emanuel LLP) on 30 June 2025 (See **Exh 21**) (See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx")

(F) No bank statements from Byju's Global Pte. Ltd.(BGPL) were provided. All the transactions listed below were obtained solely from the documents provided by HSBC in its response to the subpoenas issued on 21 March 2025 & 02 April 2025 (See **Exh 51 & 52**) and received from Claimant's Counsel (Quinn Emanuel LLP) on 30 June 2025 (See **Exh 21**) (See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx")

(G) No bank statements from Think & Learn Pte. Ltd. were provided. All the transactions listed below were obtained solely from the documents provided by HSBC in its response to the subpoena issued on 21 March 2025 & 02 April 2025 (See **Exh 51 & 52**) and received from Claimant's Counsel (Quinn Emanuel LLP) on 30 June 2025 (See **Exh 21**) (See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx")

(H) All the transactions listed were obtained solely from the documents provided by HSBC in its response to the subpoena issued on 21 March 2025 & 02 April 2025 (See **Exh 51 & 52**) and received from Claimant's Counsel (Quinn Emanuel LLP) on 30 June 2025 (See **Exh 21**) (See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx")

*See Notes & Footnotes on Page 2*

**Remaining Funds**

(i) Camshaft Fund transferred to Third Parties or other Camshaft Entities all the funds received from Camshaft Advisors which $15,000,000.00 was related to the Loan Agreement established between Camshaft Fund & Camshaft Management (See **Exh 22** "220430 Camshaft Management Promissory Note re 9M.pdf" & **Exh 24** "220714 Camshaft Management Promissory Note re 6M.pdf"), as part of Side Pocket Investments set in Camshaft Fund & Byju's Alpha Side Letter Agreements (See **Exh 24** "220426 Camshaft Fund Byju Alpha Side Letter Agreement doc277-12 sealed" & **Exh 25** "2220712 Camshaft Fund Byju Alpha Side Letter Agreement doc277-15.pdf")

(ii) On April 2024, Camshaft Management had transferred most of the Funds received from Byju's Alpha as Management Fee.

(iii) Camshaft Advisors transferred back all the Funds received from Camshaft Fund in accordance with the Loan Agreement signed between Camshaft Fund & Camshaft Management.

(iv) OCI transferred all the Funds received from Camshaft Fund to Third Parties including Revere Master SPV. In Oliver Chapman Declaration dated 15 November 2025 (Paragraph 8) (See **Exh 12**), Oliver Chapman stated that $13,100,200 was transferred to Rupin Banker. However, from the funds received from Camshaft, only $4,113,122.67 remained without being attributed to a third-parties - $1,970,023.50 in OCI Internal Account 2312 2846 604358 & $2,143,099.17 in OCI Internal Account 4062 4700 022134. Therefore, it seems that if Rupin Banker have received $13,100,220.80, only $4,113,122.67 was from the Funds received by OCI from Camshaft, and this transferred was sent by OCI Internal Accounts which no Bank Statement was provided.

(v) Revere Master SPV- retained & not used (Origination Fees & Costs)

(vi) Funds remaining in BYJUs Investment PTE LTD after disbursement from the received funds ($275M). Apart from tax payments, all the funds were transferred to acquire shares in TLPL.

(vii) All Funds transferred to Byju Global (200M) were used to acquire shares in TLPL ($250M), through its parent company Byjus Holding Pte. Ltd.

(viii) BIPL and BHPL, together, transferred to TLPL for the purchase of shares the total amount of $490,000,000. However, only $460,427,903 came from the Alpha Funds. The exceeding amount - $29,572,097 - was paid by BHPL's own funds.

**Footnotes:**

[1] See **Exh 27** "211124 TLPL Byjus Alpha GLAS Credit Agreement Exh 1 doc163-3.pdf"
[2] See **Exh 28** "220428 Camshaft Fund Subscription Agreement doc277-8.pdf"
[3] See **Exh 29** "220426 OCI Limited Promissory Note Camshaft Fund re 318M Exh C doc241-3.pdf"
[4] See **Exh 23** "220426 Camshaft Fund Byju Alpha Side Letter Agreement doc277-12 sealed.pdf"
[5] See **Exh 22** "220430 Camshaft Management Promissory Note re 9M.pdf"
[6] No document was provided. It is assumed based on the documents provided by HSBC in its response to the subpoenas issued on 21 March & 02 April 2025 (See **Exh 51 & 52**) and received from Claimant's Counsel (Quinn Emanuel LLP) on 30 June 2025 (See Exh 21) (See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx")
[7] No document was provided.
[8] No document was provided.
[9] See **Exh 36** "220712 Camshaft Fund Additional Subscription Request re 215M doc277-9.pdf"
[10] See **Exh 37** "220712 OCI Camshaft Fund Promissory Note re 215M doc277-14 sealed.pdf".
[11] See **Exh 25** "2220712 Camshaft Fund Byju Alpha Side Letter Agreement doc277-15.pdf"
[12] See **Exh 46** "220715 OCI Camshaft Fund Promissory Note re 16.5M doc277-16 sealed.pdf"
[13] See **Exh 25** "2220712 Camshaft Fund Byju Alpha Side Letter Agreement doc277-15.pdf" & See **Exh 24** "220714 Camshaft Management Promissory Note re 6M"
[14] See **Exh 30** "220426 EF Hutton Camshaft Fund & Management Finders Agreement.pdf"
[15] See **Exh 31** "220520 Coastal Equities Camshaft Fund & Management Finder Agreement.pdf"
[16] See **Exh 38** "220713 Amended & Restated 220426 EF Hutton Camshaft Fund & Management Finders Agreement.pdf"
[17] See **Exh 39** "220713 Camshaft Management & Harrymax Amended & Restated Loan Agreement.pdf"
[18] See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx"
[19] See **Exh 12** "251115 Oliver Chapman Declaration Exh B doc50-2", Paragraph 5.
[20] See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx." The amount reflects the transactions from OCI to 3rd Parties after 10-May-2022 (date of Promissory Note I transfer) until the loan was set off by OCI on 15-March-2023.
[21] See **Exh 40** "220430 Camshaft Fund USB Bank Statement re Apr 2022.pdf"
[22] See **Exh 18** "220531 Camshaft Fund USB Bank Statement re May 2022.pdf"
[23] See **Exh 18** "220531 Camshaft Fund USB Bank Statement re May 2022.pdf"
[24] Note that total amount transfer was $ 9,200,000.00 which $ 9,000,000.00 is related to the amount lent by Camshaft Fund to Camshaft Management. The fund were allocated in Camshaft Advisors Interactive Brokers Bank Account. See **Exh 18** "See "220531 Camshaft Fund USB Bank Statement re May 2022.pdf" & See **Exh 41** "220531 Camshaft Fund Interactive Brokers Bank Statement re May 2022"
[25] See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022.pdf"
[26] See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022"
[27] See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022.pdf"
[28] See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022"
[29] See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022.pdf"
[30] See **Exh 4** "230430 Camshaft Fund JP Morgan Bank Statement re Jul 2022 to Apr 2023.pdf"
[31] See **Exh 2** "220630 Camshaft Fund USB Bank Statement re Jan to Jun 2022.pdf"; **Exh 4** "230430 Camshaft Fund JP Morgan Bank Statement re Jul 2022 to Apr 2023.pdf"; **Exh 5** "230531 Camshaft Fund Northern Trust Bank Statement re Jul 2022 to May 2023.pdf" & **Exh 6** "230531 Camshaft Fund TCB Bank Statement re Jun 2022 to May 2023.pdf"
[32] See **Exh 42** "220531 Camshaft Management USB Bank Statement re May 2022.pdf"
[33] See **Exh 43** "220729 Camshaft Management JP Morgan Bank Statement re Jul 2022.pdf"
[34] See **Exh 43** "220729 Camshaft Management JP Morgan Bank Statement re Jul 2022.pdf"
[35] See **Exh 3** "220630 Camshaft Management USB Bank Statement re Jan 2022 to Jun 2022.pdf"; & **Exh 7** "230531 Camshaft Management JP Morgan Bank Statement re Jul 2022 to May 2023.pdf"
[36] See **Exh 42** "220531 Camshaft Management USB Bank Statement re May 2022.pdf"
[37] See **Exh 42** "220531 Camshaft Management USB Bank Statement re May 2022.pdf"
[38] See **Exh 43** "220729 Camshaft Management JP Morgan Bank Statement re Jul 2022.pdf"
[39] See **Exh 43** "220729 Camshaft Management JP Morgan Bank Statement re Jul 2022.pdf"
[40] See **Exh 41** "220531 Camshaft Fund Interactive Brokers Bank Statement re May 2022.pdf"
[41] See **Exh 44** "220930 Camshaft Fund Interactive Brokers Bank Statement re Sep 2022.pdf"
[42] See **Exh 1** "230531 Camshaft Advisors Interactive Brokers re Apr 2022 to May 2023.pdf"
[43] See **Exh 18** "220531 Camshaft Fund USB Bank Statement re May 2022.pdf"
[44] See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H213" + "H214" + "H215" + H216"
[45] See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H218" + "H219"
[46] See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H230"
[47] See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022.pdf"
[48] See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022.pdf"
[49] See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H231" + "H232"+ "H233"+ "H239"
[50] See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H204"
[51] See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H222"
[52] See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H221". In Oliver Chapman Declaration dated 15 November 2025 (Paragraph 4) (See **Exh 12**), Oliver Chaman stated that $8,856,900.83 was paid to Google LLC. Considering that this transaction was not listed in the **Exh 9** ("250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx"), it is assumed that this amount was transferred from another OCI Internal Account (Reference: 4062 4700 022134), taking into account that on 30 June 2022 this account received $11,000,000.00 from the Alpha Funds (See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H221")
[53] See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H223"
[54] See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H227"
[55] See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H265"
[56] See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H291"
[57] See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H294"
[58] See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H297"
[59] See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx"
[60] See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H30"
[61] See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H31"
[62] See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H32"
[63] See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H37"
[64] See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H39"
[65] See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H40"
[66] See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H34"
[67] See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H35"
[68] See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H43" + "H44"
[69] See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H54" +"H55" +"H56" +"57"
[70] BIPL transferred this remaining amount to BHPL to acquire shares in TLPL (not shown in the subpoenaed HSCB Transaction Ledger)
[71] See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H52"
[72] See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H53"
[73] See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H64." On 28-Dec-2022 BHPL transferred $50M to TLPL for the purchase of shares. On a FIFO (First-In, First-Out) basis, $20.4M was used from Revere-BIPL $475MM Facility Agreement dated 27 June 2022, amended.

**Flow of Funds - $318MM + $215MM + $16.5MM**
**Camshaft to OCI**

| Date / (Flow of Funds) | Description | Camshaft Capital Fund LP (DE) | OCI Limited (UK) | Camshaft Capital Management LLC (FL) |
|---|---|---|---|---|
| 2022-04-28 | **Subscription I (dated 28 April 2022)** | $ 318 000 000 | | |
| 2022-05-10 | Promissory Note I (Camshaft- OCI) dated 26 April 2022 [1] | $ (318 000 000) [2] | $ 318 000 000 [3] | |
| 2022-05-10 | Retained/ Prepaid Interest of Promissory Note I dated 26 April 2022 | $ 18 000 000 | $ (18 000 000) | |
| 2022-05-10 | Payment to Camshaft Capital Management (GP) [4] | $ (9 000 000) | | $ 9 000 000 |
| 2022-05-10 | Loan to Camshaft Capital Management (GP) [5] | $ (9 000 000) | | $ 9 000 000 |
| | **Sub- Total (resulting from deployment of Subscription I Funds)** | **$ -** | **$ 300 000 000** | **$ 18 000 000** |
| 2022-07-13 | **Subscription II (dated 12 July 2022)** | $ 215 000 000 | | |
| 2022-07-14 | Promissory Note II (Camshaft- OCI) dated 12 July 2022 [6] | $ (215 000 000) [7] | $ 215 000 000 [8] | |
| 2022-07-14 | Retained/ Prepaid Interest of Promissory Note II dated 12 July 2022 | $ 24 187 500 | $ (24 187 500) | |
| 2022-07-14 | Payment to Camshaft Capital Management (GP) [9] | $ (1 667 500) | | $ 1 667 500 |
| 2022-07-14 | Loan to Camshaft Capital Management (GP) [10] | $ (6 000 000) | | $ 6 000 000 |
| | **Sub- Total (resulting from deployment of Subscription II Funds)** | **$ 16 520 000** | **$ 190 812 500** | **$ 7 667 500** |
| | **Sub-Total after Subscriptions and Promissory Notes Allocation** | **$ 16 520 000** | **$ 490 812 500** | **$ 25 667 500** |
| 2022-07-15 | Side Pocket Investment- Promissory Note III (Camshaft- OCI) dated 15 July 2022 [11] | $ (16 520 000) | $ 16 520 000 [12] | |
| 2022-07-15 | Retained/ Prepaid Interest of Promissory Note dated 15 July 2022 | $ 1 424 850 | $ (1 424 850) | |
| 2022-07-15 | Payment to Camshaft Capital Management (GP) [13] | $ (1 424 850) | | $ 1 424 850 |
| | **Total after Side Pocket Investment** | **$ -** | **$ 505 907 650** | **$ 27 092 350** |

**Sources:**

(1) See **Exh 29** "220426 OCI Camshaft Fund Promissory Note re 318M doc277-11 sealed.pdf"
(2) See **Exh 40** "220430 Camshaft Fund USB Bank Statement re Apr 2022.pdf"
(3) See **Exh 18** "220531 Camshaft Fund USB Bank Statement re May 2022.pdf"
(4) See **Exh 23** "220426 Camshaft Fund Byju Alpha Side Letter Agreement doc277-12" sealed.pdf
(5) See **Exh 22** "220430 Camshaft Management Promissory Note re 9M"
(6) See **Exh 37** "220712 OCI Camshaft Fund Promissory Note re 215M doc277-14 sealed.pdf"
(7) See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022.pdf". The net value ($190,812,300) of the Promissory Note II gross value ($215,000,000) less the interest retained by Camshaft Capital Fund ($24,187,500) was transferred to OCI.
(8) See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022"
(9) See **Exh 24** "220714 Camshaft Management Promissory Note re 6M"
(10) See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022.pdf" & See **Exh. 25** "2220712 Camshaft Fund Byju Alpha Side Letter Agreement doc277-15.pdf"
(11) See **Exh 46** "220715 OCI Camshaft Fund Promissory Note re 16.5M doc277-16 sealed.pdf." Promissory Note III used the retained interest from Promissory Notes I & II and did not require additional external funds.
(12) See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022". The net value ($15,095,150) of the Promissory Note III gross value ($16,520,000) less the interest retained by Camshaft Capital Fund ($1,424,850) was transferred to OCI.
(13) See **Exh 25** "2220712 Camshaft Fund Byju Alpha Side Letter Agreement doc277-15.pdf" & See **Exh. 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022.pdf"

**Promissory Notes Terms (Camshaft Capital Fund - OCI)**

| | Promissory Notes | | |
|---|---|---|---|
| **Principal** | $ 318 000 000 | $ 215 000 000 | $ 16 520 000 |
| | | | |
| **Lender** | Camshaft Capital Fund, LP | Camshaft Capital Fund, LP | Camshaft Capital Fund, LP |
| **Borrower (until offset 15 March 2023)** | OCI, Ltd | OCI, Ltd | OCI, Ltd |
| **Borrower (after offset 15 March 2023)** | TLPL | TLPL | TLPL |
| | | | |
| **Term (yrs)** | 3 | 3 | 3 |
| **Initiation Date** | 26/Apr/22 | 12/Jul/22 | 15/Jul/22 |
| **Maturity Date** | 26/Apr/25 | 12/Jul/25 | 15/Jul/25 |
| **Interest % per year** | 1,89% | 3,75% | 5,75% |
| **Interest $ per year** | $ 6 000 000 | $ 8 062 500 | $ 949 900 |
| **Years (Prepaid Interest)** | 3,0 | 3,0 | 1,5 |
| **Prepaid interest $- Total** | $ 18 000 000 | $ 24 187 500 | $ 1 424 850 |

;'p
**Alpha Fund Flow**
**Camshaft - OCI**

| Description | Date (Flow of Funds) | BYJUs Alpha (DE) | Camshaft Capital Fund LP (DE) [(A)] | Camshaft Capital Management LLC (FL) | OCI Limited (UK) [(B)] |
|---|---|---|---|---|---|
| **Alpha Credit Agreement Funds (JPM)** (1) | Available at Closing | **$ 1 200 000 000** | | | |
| Alpha payments/investment to/in 3rd parties or related entities (see Use of Proceeds worksheet) | Various | $ (667 000 000) | | | |
| Alpha - Camshaft Fund Subscription I (US Bank) (2) | 2022-04-28 | $ (318 000 000) | $ 318 000 000 (11) | | |
| Camshaft-OCI Promissory Note I $318MM - transfer is net of retained interest (full term) of $18MM - payable 26 APR 2025 (3) | 2022-05-10 | | $ (300 000 000) (12) | | $ 300 000 000 (26) |
| Camshaft Management Fee Allocation in accordance with Camshaft Fund & Byju Alpha Side Letter Agreement dated 26 April 2022 (4) | 2022-05-10 | | $ (9 000 000) (13) | $ 9 000 000 (21) | |
| Camshaft Management Promissory Note to Camshaft Fund dated 30 April 2022 (Loan Agreement 9M) (5) | 2022-05-11 | | $ (9 000 000) (14) | $ 9 000 000 (24) | |
| Alpha- Camshaft Subscription Agreement II ("Additional Subscription Request") dated 12July 2022 (6) | 2022-07-13 | $ (215 000 000) | $ 215 000 000 (15) | | |
| Camshaft- OCI Promissory Note II $215MM -transfer net of retained interest (full term) of $24.2MM- payable 12 JULY 2025 (7) | 2022-07-14 | | $ (190 812 500) (16) | | $ 190 812 500 (27) |
| Camshaft Management Fee Allocation in accordance with Camshaft Fund & Byju Alpha Side Letter Agreement dated 12 July 2022 (8) | 2022-07-15 | | $ (1 667 500) (17) | $ 1 667 500 (22) | |
| Camshaft -OCI Promissory Note III $16.620MM -transfer is net of retained interest of $1.4MM- payable 15 JULY 2025 (9) | 2022-07-15 | | $ (15 095 150) (18) | | $ 15 095 150 (28) |
| Camshaft Management Fee Allocation in accordance with Camshaft-OCI Promissory Note III, Clause 4.A (9) | 2022-07-15 | | $ (1 424 850) (19) | $ 1 424 850 (23) | |
| Camshaft Fund Advisors ($8.5M transferred, which included $2.5M of comingled funds. This entry only shows $6M which also agrees with Camshaft Fund Byju Alpha Side Letter Agreement dated 12 July 2022 & Camshaft Management Promissory Note dated 14 July 2022 (10) | 2022-09-30 | | $ (6 000 000) (20) | $ 6 000 000 (25) | |
| **Total (ties to '$533M Flow of Funds Summary" Tab):** | | **$ -** | **$ -** | **$ 27 092 350** | **$ 505 907 650** |

(A) See **Exh 18** "220531 Camshaft Fund USB Bank Statement re May 2022.pdf" & **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022.pdf", provided by Pieter Van Tol to Plaintiff's Counsel, on 10 July 2024 (See "**Exh 26** 240610 PVT Declaration doc246.pdf").

(B) No bank statements from OCI Limited were provided. All the transactions listed below were obtained solely from the documents provided by HSBC in its response to the subpoenas issued on 21 March 2025 & 02 April 2025 (See **Exh 51** "250321 Byju Alpha Subpoena HSBC Bank" & **Exh 52** "250402 Byju Alpha Subpoena HSBC Bank" and received from Claimant's Counsel (Quinn Emanuel LLP) on 30 June 2025 (See **Exh 21**) (See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx")

__**Sources:**__

Introductory Note: All the transactions listed were derived from the documents produced by Camshaft, as provided by PVT to Plaintiff's Counsel on 10 June 2024 (See **Exh 26** "240610 PVT Declaration doc246.pdf").

***Footnotes:***

1 See **Exh 27** "211124 TLPL Byjus Alpha GLAS Credit Agreement Exh 1 doc163-3.pdf"
2 See **Exh 28** "220428 Byju Alpha Camshaft Fund Subscription Agreement doc277-8 sealed.pdf"
3 See **Exh 29** "220426 OCI Camshaft Fund Promissory Note re 318M doc277-11 sealed.pdf"
4 See **Exh 23** "220426 Camshaft Fund Byju Alpha Side Letter Agreement doc277-12 sealed.pdf"
5 See **Exh 22** "220430 Camshaft Management Promissory Note re 9M.pdf"
6 See **Exh 36** "220712 Byju Alpha Camshaft Fund Additional Subscription Request re 215M BIF-9 sealed.pdf"
7 See **Exh 37** "220712 OCI Camshaft Fund Promissory Note re 215M doc277-14 sealed.pdf".
8 See **Exh 25** "220712 Camshaft Fund Byju Alpha Side Letter Agreement doc277-15.pdf"
9 See **Exh 46** "220715 OCI Camshaft Fund Promissory Note re 16.5M doc277-16 sealed.pdf"
10 See **Exh 25** "220712 Camshaft Fund Byju Alpha Side Letter Agreement doc277-15.pdf" & See **Exh 24** "220714 Camshaft Management Promissory Note re 6M"
11 See **Exh 40** "220430 Camshaft Fund USB Bank Statement re Apr 2022.pdf" (page 1 of 2)
12 See **Exh 18** "220531 Camshaft Fund USB Bank Statement re May 2022.pdf" (page 1 of 2)
13 See **Exh 18** "220531 Camshaft Fund USB Bank Statement re May 2022.pdf" (page 1 of 2)
14 Note that total amount transfer was $ 9,200,000.00 which $ 9,000,000.00 is related to the amount lent by Camshaft Fund to Camshaft Management. The fund were allocated in Camshaft Advisors Interactive Brokers Bank Account. See **Exh 18** "See "220531 Camshaft Fund USB Bank Statement re May 2022.pdf" (page 1 of 2) & **See Exh 41** "220531 Camshaft Fund Interactive Brokers Bank Statement re May 2022" (page 7 of 24)
15 See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022.pdf" (page 2 of 4)
16 See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022" (page 2 of 4) & **See Exh 10** "250721 JP Morgan Responsive Transactions Spreadsheets 1-7.xlsx" - Tab "Camshaft" Cell Reference "D12"
17 See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022.pdf" (page 2 of 4)
18 See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022" (page 2 of 4) & See **Exh 10** "250721 JP Morgan Responsive Transactions Spreadsheets 1-7.xlsx" - Tab "Camshaft" Cell Reference "D15"
19 See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022.pdf" (page 2 of 4)
20 See **Exh 4** "230430 Camshaft Fund JP Morgan Bank Statement re Jul 2022 to Apr 2023.pdf" (page 9 of 50)
21 See **Exh 42** "220531 Camshaft Management USB Bank Statement re May 2022.pdf" (page 1 of 2)
22 See **Exh 43** "220729 Camshaft Management JP Morgan Bank Statement re Jul 2022.pdf" (page 2 of 4)
23 See **Exh 43** "220729 Camshaft Management JP Morgan Bank Statement re Jul 2022.pdf" (page 2 of 4)
24 See **Exh 41** "220531 Camshaft Fund Interactive Brokers Bank Statement re May 2022.pdf" (page 7 of 24)
25 See **Exh 44** "220930 Camshaft Fund Interactive Brokers Bank Statement re Sep 2022.pdf" (page 6 of 26)
26 See **Exh 18** "220531 Camshaft Fund USB Bank Statement re May 2022.pdf" (page 1 of 2)
27 See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022.pdf" (page 2 of 4)
28 See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022.pdf" (page 2 of 4)

**OCI Fund Flow**

| **Description** | **Date (Flow of Funds)** | | **OCI [(A)]** | **Revere Master SPV [(D)]** |
|---|---|---|---|---|
| Camshaft-OCI Promissory Note I $318MM - transfer is net of retained interest (full term) of $18MM - payable 26 APR 2025 [(1)] | 2022-05-10 | | $ 300 000 000 [(7)] | |
| Revere Master SPV- investment by OCI (no document)-total $479MM [(2)] | 2022-06-28 | | $ (150 000 100) [(8)] | $ 150 000 100 |
| OCI Procurement from 3rd parties for TLPL benefit (Google) | 2022-06-28 | | $ (8 856 901) [(9)] | |
| Revere Master SPV- investment by OCI (no document)-total $479MM [(2)] | 2022-06-29 | | $ (103 750 000) [(10)] | $ 103 750 000 |
| OCI Procurement from 3rd parties for TLPL benefit (Sony India - Culver Max Entertainment PVT LTD) [(3)] | 2022-06-30 | | $ (1 342 046) [(11)] | |
| Revere Master SPV- investment by OCI (no document)-total $479MM [(2)] | 2022-07-07 | | $ (25 375 000) [(12)] | $ 25 375 000 |
| Camshaft- OCI Promissory Note II $215MM -transfer net of retained interest (full term) of $24.2MM- payable 12 JULY 2025 [(4)] | 2022-07-14 | | $ 190 812 500 [(13)] | |
| Camshaft -OCI Promissory Note III $16.620MM -transfer is net of retained interest of $1.4MM- payable 15 JULY 2025 [(5)] | 2022-07-15 | | $ 15 095 150 [(14)] | |
| Revere Master SPV- investment by OCI (no document)-total $479MM [(2)] | 2022-07-15 | | $ (200 500 000) [(15)] | $ 200 500 000 |
| OCI Procurement from 3rd parties for TLPL benefit (Google) | 2022-11-25 | | $ (1 097 539,96) [(16)] | |
| OCI Procurement from 3rd parties for TLPL benefit (Google) | 2022-11-29 | | $ (1 885 728,43) [(17)] | |
| OCI Procurement from 3rd parties for TLPL benefit [(6)] | -- | | $ (8 987 212) [(18)] | |
| **Total** | | | **$ 4 113 123** | **$ 479 625 100** |
| **OCI transferred the $4.1M of funds into Internal OCI accounts:** | | | | |
| OCI transfer to OCI Internal Account- Reference: 2312 2846 604358 | 2022-05-31 | | $ (122 875) [(19)] | |
| OCI transfer to OCI Internal Account- Reference: 4062 4700 022134 | 2022-06-30 | | $ (2 143 099) [(20)] | |
| OCI transfer to OCI Internal Account- Reference: 2312 2846 604358 | 2022-06-30 | | $ (250 025) [(21)] | |
| OCI transfer to OCI Internal Account- Reference: 2312 2846 604358 | 2022-07-06 | | $ (596 248) [(22)] | |
| OCI transfer to OCI Internal Account- Reference: 2312 2846 604358 | 2022-09-20 | | $ (570 901) [(23)] | |
| OCI transfer to OCI Internal Account- Reference: 2312 2846 604358 | 2022-12-01 | | $ (429 975) [(24)] | |

(A) No bank statements from OCI Limited were provided. All the transactions listed below were obtained solely from the documents provided by HSBC in its response to the subpoenas issued on 21 March 2025 & 02 April 2025 (**Exh 51 & 52**) and received from Claimant's Counsel (Quinn Emanuel LLP) on 30 June 2025 (See **Exh 21**) (See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx")

(B) No bank statements from Revere Master SPV Ltd., Series VII, were provided. All the transactions listed below were obtained solely from the documents provided by HSBC in its response to the subpoenas issued on 21 March 2025 & 02 April 2025 (**Exh 51 & 52**) and received from Claimant's Counsel (Quinn Emanuel LLP) on 30 June 2025 (See **Exh 21**) (See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx")

(C) OCI transferred all the Funds received from Camshaft Fund to Third Parties including Revere Master SPV. In Oliver Chapman Declaration dated 15 November 2025 (Paragraph 8) (See **Exh. 12**), Oliver Chapman stated that $13,100,200 was transferred to Rupin Banker. However, from the funds received from Camshaft, only $4,113,122.67 remained without being attributed to a third-parties - $1,970,023.50 in OCI Internal Account 2312 2846 604358 & $2,143,099.17 in OCI Internal Account 4062 4700 022134. Therefore, it seems that if Rupin Banker have received $13,100,220.80, only $4,113,122.67 was from the Funds received by OCI from Camshaft, and this transferred was sent by OCI Internal Accounts which no Bank Statement was provided.

**Sources:**

**Introductory Note**: All the transactions listed were derived from the documents produced by: (i) Byju's Alpha, as submitted by Plaintiff on 10 April 2024 as Exhibits 8 and 9 of the Motion for an Order under Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004-1, which directs the examination of the US Loan Guarantors (see **Exh 15** "240410 Byju Alpha MOT re US Loan Guarantors 2004 Examination doc163.pdf"). Also, submitted as Exhibits 5 & 6 of Benjamin Finestone Declaration on 07 July 2024 (see **Exh 16** "240708 Finestone Declaration re Byju Alpha Summary Judgment MOT doc277.pdf"); (ii) Camshaft, as provided by Pieter Van Tol - Defendants' Cousel - to Plaintiff's Counsel on 10 June 2024 (See **Exh 26** "240610 PVT Declaration doc246")' and (iii) HSBC, to which subpoenas were issued on 21 March 2025 (See **Exh 51** "250321 Byju Alpha First Subpoena HSBC Bank.pdf" ) & 02 April 2025 (See **Exh 52** "250402 Byju Alpha Second Subpoena HSBC Bank.pdf") with a deadline for 21 April 2025 & 02 May 2025, respectively. Quinn Emanuel, however, provided the documents produced by HSBC to Piter Van Tol - Defendants' Counsel - only on 30 June 2025 (See **Exh 21** "250630 1611 QE email PVT re HSBC Subpoena Answer.pdf").

1 See **Exh 29** "220426 OCI Camshaft Fund Promissory Note re 318M doc277-11 sealed.pdf"

2 No document was provided. It is assumed based on the documents provided by HSBC in its response to the subpoena issued on 02 April 2025 and received from Claimant's Counsel (Quinn Emanuel LLP) on 30 June 2025 (See **Exh 20**) (See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx")

3 See **Exh 12** "251115 Oliver Chapman Declaration Exh B doc50-2.pdf", Paragraph 5.

4 See **Exh 25** "2220712 Camshaft Fund Byju Alpha Side Letter Agreement doc277-15.pdf"

5 See **Exh 37** "220712 OCI Camshaft Fund Promissory Note re 215M doc277-14 sealed.pdf".

6 See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx." The amount reflects the transactions from OCI to 3rd Parties after 10-May-2022 (date of Promissory Note I transfer) until the loan was set off by OCI on 15-March-2023.

7 See **Exh 18** "220531 Camshaft Fund USB Bank Statement re May 2022.pdf"

8 See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H213" + "H214" + "H215" + H216"

9 See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H221". In Oliver Chapman Declaration dated 15 November 2025 (Paragraph 4) (See **Exh 12**), Oliver Chaman stated that $8,856,900.83 was paid to Google LLC. Considering that this transaction was no listed in the **Exh 9** ("250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx"), it is assumed that this amount was transferred from another OCI Internal Account (Reference: 4062 4700 022134), taking into account that on 30 June 2022 this account received $11,000,000.00 (See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H221")

10 See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H218" + "H219"

11 See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H222"

12 See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H230"

13 See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022.pdf"

14 See **Exh 19** "220729 Camshaft Fund JP Morgan Bank Statement re Jul 2022.pdf"

15 See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H231" + "H232"+ "H233"+ "H239"

16 See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H291"

17 See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H294"

18 See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx"

19 See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H204"

20 See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H221". In Oliver Chapman Declaration dated 15 November 2025 (Paragraph 4) (See **Exh 12**), Oliver Chaman stated that $8,856,900.83 was paid to Google LLC. Considering that this transaction was not listed in the **Exh 9** ("250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx"), it is assumed that this amount was transferred from another OCI Internal Account (Reference: 4062 4700 022134), taking into account that on 30 June 2022 this account have received $11,000,000.00 (See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H221"). This amount ($2,143,099.17) is the remaining value after considering the Google payment.

21 See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H223"

22 See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H227"

23 See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H265"

24 See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx" - Cell Reference "H297"

**Revere Fund Flow**
**Revere - TLPL**

| Description | Date (Flow of Funds) | Revere Master SPV [A] | BYJUs Investment PTE LTD (BIPL) (Singapore) [B] | BYJUs Global PTE LTD (BGPL) (Singapore) [C] | BYJUs Holding PTE LTD (BHPL) (Singapore) [D] | Think & Learn Pte. Ltd. (TLPL) (India) [E] | Withholdings Tax Payments [F] | Total |
|---|---|---|---|---|---|---|---|---|
| Revere Master SPV- investment by OCI (no document)-total $479MM [1] | 2022-06-28 | $ 150 000 100 | | | | | | $ 150 000 100 |
| Revere-BIPL $400MM Facility Agreement dated 27 June 2022 - test wire | 2022-06-28 | $ (95) [4] | $ 95 | | | | | $ - |
| Revere Master SPV- investment by OCI (no document)-total $479MM [1] | 2022-06-29 | $ 103 750 000 | | | | | | $ 103 750 000 |
| Revere-BIPL $400MM Facility Agreement dated 27 June 2022 (no document) [2] | 2022-06-29 | $ (149 999 995) [5] | $ 149 999 995 | | | | | $ - |
| Revere-BIPL $400MM Facility Agreement dated 27 June 2022 (no document) [2] | 2022-06-30 | $ (99 999 995) [6] | $ 99 999 995 | | | | | $ - |
| Purchase of TLPL Shares-BIPL [3] | 2022-07-01 | | $ (125 000 000) [10] | | | $ 125 000 000 | | $ - |
| Purchase of TLPL Shares-BIPL [3] | 2022-07-05 | | $ (115 000 000) [11] | | | $ 115 000 000 | | $ - |
| Revere Master SPV- investment by OCI (no document)-total $479MM [1] | 2022-07-07 | $ 25 375 000 | | | | | | $ 25 375 000 |
| Revere-BIPL $400MM Facility Agreement dated 27 June 2022 (no document) [2] | 2022-07-08 | $ (24 999 995) [7] | $ 24 999 995 | | | | | $ - |
| Revere Master SPV- investment by OCI (no document)-total $479MM [2] | 2022-07-15 | $ 200 500 000 | | | | | | $ 200 500 000 |
| Revere-BIPL $475MM Facility Agreement dated 27 June 2022, amended (no document)- test wire | 2022-07-15 | $ (95) [8] | | $ 95 | | | | $ - |
| Revere-BIPL $475MM Facility Agreement dated 27 June 2022, amended (no document) [1] | 2022-07-19 | $ (199 999 980) [9] | | $ 199 999 980 | | | | $ - |
| Tax Payments (India)- BIPL | 2022-08-16 | | $ (2 917 838) [12] | | | | $ 2 917 838 | $ - |
| Tax Payments (India)- BIPL | 2022-09-22 | | $ (11 654 413) [13] | | | | $ 11 654 413 | $ - |
| BIPL Transfer to BHPL | --- | | $ (20 427 828) [14] | | $ 20 427 828 | | | $ - |
| BGPL Transfer to BHPL | --- | | | $ (200 000 075) | $ 200 000 075 | | | $ - |
| BHPL-Purchase of TLPL Shares | 2022-09-22 | | | | $ (100 000 000) | $ 100 000 000 [15] | | $ - |
| BHPL-Purchase of TLPL Shares | 2022-09-22 | | | | $ (100 000 000) | $ 100 000 000 [16] | | $ - |
| BHPL-Purchase of TLPL Shares | 2022-10-28 | | | | $ (20 427 903) | $ 20 427 903 [17] | | $ - |
| **Total (Use of $479M Revere SPV Funds):** | | **$ 4 624 945** | **$ -** | **$ -** | **$ -** | **$ 460 427 903** | **$ 14 572 252** | **$ 479 625 100** |

(A) No bank statements from Revere Master SPV Ltd., Series VII, were provided. All the transactions listed below were obtained solely from the documents provided by HSBC in its response to the subpoenas issued on 21 March 2025 & 02 April 2025 (See **Exh 51 & 52**) and received from Claimant's Counsel (Quinn Emanuel LLP) on 30 June 2025 (See **Exh 21)** (See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx")

(B) No bank statements from Byju's Investments Pte. Ltd. (BIPL) were provided. All the transactions listed below were obtained solely from the documents provided by HSBC in its response to the subpoenas issued on 21 March 2025 & 02 April 2025 (See **Exh 51 & 52**) and received from Claimant's Counsel (Quinn Emanuel LLP) on 30 June 2025 (See **Exh 21**) (See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx")

(C) No bank statements from Byju's Global Pte. Ltd.(BGPL) were provided. All the transactions listed below were obtained solely from the documents provided by HSBC in its response to the subpoenas issued on 21 March 2025 & 02 April 2025 (See **Exh 51 & 52**) and received from Claimant's Counsel (Quinn Emanuel LLP) on 30 June 2025 (See **Exh 21**) (See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx")

(D) No bank statements from Think & Learn Pte. Ltd. were provided. All the transactions listed below were obtained solely from the documents provided by HSBC in its response to the subpoenas issued on 21 March 2025 & 02 April 2025 (See **Exh 51 & 52**) and received from Claimant's Counsel (Quinn Emanuel LLP) on 30 June 2025 (See **Exh 21**) (See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx")

(E) No bank statements from Tangible Play INC were provided. All the transactions listed below were obtained solely from the documents provided by HSBC in its response to the subpoenas issued on 21 March 2025 & 02 April 2025 (See **Exh 51 & 52**) and received from Claimant's Counsel (Quinn Emanuel LLP) on 30 June 2025 (See **Exh 21**) (See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx")

(F) All the transactions listed below were obtained solely from the documents provided by HSBC in its response to the subpoenas issued on 21 March 2025 & 02 April 2025 (See **Exh 51 & 52**) and received from Claimant's Counsel (Quinn Emanuel LLP) on 30 June 2025 (See **Exh 21**) (See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx")

(i) OCI transferred all the Funds received from Camshaft Fund to Third Parties including Revere Master SPV. In Oliver Chapman Declaration dated 15 November 2025 (Paragraph 8) (See **Exh. 12**), Oliver Chapman stated that $13,100,200 was transferred to Rupin Banker. However, from the funds received from Camshaft, only $4,113,122.67 remained without being attributed to a third-parties - $1,970,023.50 in OCI Internal Account 2312 2846 604358 & $2,143,099.17 in OCI Internal Account 4062 4700 022134. Therefore, it seems that if Rupin Banker have received $13,100,220.80, only $4,113,122.67 was from the Funds received by OCI from Camshaft, and this transferred was sent by OCI Internal Accounts which no Bank Statement was provided.
(ii) Revere Master SPV- retained & not used (Origination Fees & Costs)
(iii) Funds remaining in BYJUs Investment PTE LTD after disbursement from the received funds ($275M). Apart from the tax payments, all the funds were transferred to acquired shares in TLPL.
(vii) All Funds transferred to Byju Global (200M), were used to acquire shares in TLPL, through its parent company Byjus Holding Pte. Ltd. See footnotes 71, 72 & 73 from Tab "Flow of Funds-Details".
(viii) BIPL and BHPL transferred to TLPL for the purchase of shares the total amount of $490,000,000. However, only $460,427,903 came from the Alpha Funds. The exceeding amount - $29,572,097 - came from BHPL's own funds.

**Sources:**

**Introductory Note:** All the transactions listed were derived from the documents produced by Camshaft, as provided by PVT to Plaintiff's Counsel on 10 June 2024 (See Exh26 "240610 PVT Declaration doc246" . Also, it was analyzed the documents provided by HSBC. The Subpoenas to HSBC was issued on 21 March 2025 and 02 April 2025 with a deadline for 21 April 2025 and 02 May 2025, respectivelly. However, Quinn Emanuel provided the documents produced by HSBC to Riju Ravindran only on 30 June 2025. The documents provided by JP Morgan, Quinn Emanuel provided to Riju Ravindran Counsel only on 27 August 2025. See Exh20 "250630 1611 QE email PVT re HSBC Subpoena Answer.pdf").

1 See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx"
2 No document was provided. It is assumed based on the documents provided by HSBC in its response to the subpoenas issued on 21 March 2025 & 02 April 2025 (See **Exh 51 & 52**) which was received from Plaintiff's Counsel (Quinn Emanuel LLP) on 30 June 2025 (See **Exh 21**) (See **Exh 9** "250402 HSBC Bank Transactions Ledger re OCI Limited.xlsx")
3 In accordance with Scott Cramer Senecal 2nd Witness Statement submitted in the Arbitration Proceedings under the Rules of the Singapore Arbitration Center (SIAC) No. 093/2024, Revere Master SPV LLC, Series VII, signed a Facility Agreement up to USD 400 million with Byju's Investments Pte. Ltd. (BIPL) on 27 June 2022. See Exh34 "240322 Scott Crame Senecal 2nd Witness Statement.pdf" & Exh35 "220907 QIA letter Byju Pte re Confirmation Letter Cash Settled Option Transaction BR SA-2.pdf"
4 See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H30"
5 See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H31"
6 See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H32"
7 See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H37"
8 See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H39"
9 See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H40"
10 See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H34"
11 See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H35"
12 See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H43" + "H44"
13 See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H54" +"H55" +"H56" +"57"
14 BIPL transferred this remaining amount to BHPL to acquire shares in TLPL (not shown in the subpoenaed HSCB Transaction Ledger)
15 See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H52"
16 See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H53"
17 See **Exh 8** "250326 HSBC Bank Transactions Ledger re Byju Entities.xlsx" - Cell Reference "H64." On 28-Dec-2022 BHPL transferred $50M to TLPL for the purchase of shares On a FIFO basis, $20.4M was used from Revere-BIPL $400MM Facility Agreement dated 27 June 2022.

Fees & Other Expenses
**Byju Alpha- JPMorgan-Chase- 2022 Payments**

| Description | Value | Additional Information |
|---|---|---|
| **Marketing** | **$ 83 676 731,84** | |
| UBS Switzerland (FIFA) | $ 65 500 000,00 | FIFA |
| Messi Management | $ 4 200 000,00 | FIFA |
| FIFA Ticketing | $ 1 713 152,21 | FIFA |
| Commercial Bank (Doha) | $ 1 447 982,63 | FIFA |
| Cutting Edge Sport | $ 815 597,00 | FIFA |
| ICC Bus Corp | $ 10 000 000,00 | ICC Bus Corp (International Cricket) |
| **LEGAL** | **$ 6 520 271,42** | |
| Cooley | $ 2 470 124,00 | Legal |
| White & Case | $ 1 554 616,23 | Legal |
| Linklaters | $ 1 228 037,50 | Legal |
| Shearman & Sterling | $ 851 728,58 | Legal |
| Rothschild | $ 150 000,00 | Legal |
| Kruger Chilen Partners | $ 125 000,00 | Legal |
| Brandl Talos Rechtsanwalte | $ 95 977,86 | Legal |
| Allen And Gledhill Llp | $ 44 787,25 | Legal |
| **OTHER** | **$ 2 470 469,62** | |
| Emirates NBD Bank | $ 1 292 600,00 | 3rd Party Invoices(2)- Invoice references: #Ds/210/22 ($646k) & #Ds/274/22 ($646k) - Party not known |
| Coutts & Essex (UK) | $ 630 000,00 | Banking |
| Daniel Edelman | $ 360 400,00 | Public Relations |
| HDFC Bank Ltd (India) | $ 169 621,00 | 3rd Party Invoices (2)- invoice references: #M088202122 ($93k) & #2223B03208 ($77k) - Party not known |
| Misc (1) | $ 17 848,62 | Misc |
| **Total** | **$ 92 667 472,88** | |
| | | |

**Sources:**
See **Exh 13** "221231 2022 Byju Alpha Bank Statements JPM doc277-5.xlsx" & **Exh 14** "221231 2022 Byju Alpha Bank Statements SVB doc277-6.xlsx". These bank statements were first submitted on 10 April 2024 by Byju's Alpha as Exhibits 8 and 9 of the Motion for an Order under Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004-1, which directs the examination of the US Loan Guarantors (see **Exh 15** "240410 Byju Alpha MOT re US Loan Guarantors 2004 Examination doc163.pdf"). Also, submitted as Exhibits 5 & 6 of Benjamin Finestone Declaration on 07 July 2024 (see **Exh 16** "240708 Finestone Declaration re Byju Alpha Summary Judgment MOT doc277.pdf") which exhibits were cited on the Memorandum Opinion issued by the DE Court on 27 February 2025 (see footnote 6). The documents were also submitted in the Adversarial Proceedings No. 25-50526, on 11 August 2025, as Exhibits 2 of Tim Pohl Declaration in Support Byju's Alpha Motion of Default against Biju Raveendran (see **Exh 17** "250811 Tim Pohl Declaration re Byju Alpha & GLAS Default MOT doc97-2.pdf").

# Exhibit 2.1.

JPMorganChase

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

July 30, 2022 through August 31, 2022
Account Number: **000000778593837**

**CUSTOMER SERVICE INFORMATION**

**If you have any questions about your statement, please contact your Customer Service Professional.**

00025382 DDA 802 211 24422 NNNNNNNNNNN 1 000000000 61 0000
BYJU'S ALPHA, INC.
3160 DE LA CRUZ
BLVD STE 204
SANTA CLARA CA 95054

00253820201000000022

## CHECKING SUMMARY

Commercial Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$30,986,947.70** |
| Deposits and Additions | 5 | 35,831,197.20 |
| Electronic Withdrawals | 16 | - 62,125,881.88 |
| **Ending Balance** | **21** | **$4,692,263.02** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 08/01 | Cash Dividend From JPMorgan Usgvtmmktt 3164 3164 5022869 Trn: 0800068213Kg | $91,900.08 |
| 08/23 | JPMorgan Transaction-CR Usgvtmmktt 3164 3164 5022869 Trn: 0800012235Kg | 25,000,000.00 |
| 08/30 | Fedwire Credit Via: Silicon Valley Bank/121140399 B/O: Byju's Alpha, Inc Santa Clara, CA 95054 Ref: Chase Nyc/Ctr/Bnf=Byju's Alpha, Inc. Santa Clara CA 95054- US/Ac-00000 0007785 Rfb=O/B Sil Vly Bk S Imad: 0830L1B77D1C001548 Trn: 0063840242Ff | 1,000.00 |
| 08/31 | Fedwire Credit Via: Silicon Valley Bank/121140399 B/O: Byju's Alpha, Inc Santa Clara, CA 95054 Ref: Chase Nyc/Ctr/Bnf=Byju's Alpha, Inc. Santa Clara CA 95054- US/Ac-00000 0007785 Rfb=O/B Sil Vly Bk S Imad: 0831L1B77D1C003143 Trn: 0189400243Ff | 5,700,000.00 |
| 08/31 | JPMorgan Transaction-CR Usgvtmmktt 3164 3164 5022869 Trn: 0900012243Kg | 5,038,297.12 |
| **Total Deposits and Additions** | | **$35,831,197.20** |

JPMorganChase

July 30, 2022 through August 31, 2022
Account Number: **000000778593837**

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 08/02 | Book Transfer Debit A/C: The Commercial Bank (Q.S.C.) Doha Qatar Qa Ref: Invoice No -Mhqafwc22010821062022 Trn: 2061800214Jo | $1,222,350.00 |
| 08/03 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/08:01 Imad: 0803B1Qgc01C001489 Trn: 0510200215Jo | 3,000,000.00 |
| 08/04 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Epic Creations Inc Red Wood City, CA 94063 US Ref: Loan/Time/09:18 Imad: 0804B1Qgc07C005169 Trn: 2244700216Jo | 1,000.00 |
| 08/05 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Epic Creations Inc Red Wood City, CA 94063 US Ref: Loan/Time/08:01 Imad: 0805B1Qgc04C002365 Trn: 0697900217Jo | 1,999,000.00 |
| 08/08 | Foreign Exchange Debit A/C: Foreign Cur Bus Acct Bk 1 Columbus Newark DE 197132107 US Org: 00000000778593837 Byju's Alpha, Inc. Ben:/At542011100002943433 Brandl Talos Rechtsanwalte Gmbh Ref: Invoice 1027/2022/Ocmt/Eur22141,25/Exch/1.0401/Cntr/74731821/ Trn: 4582000220Re | 23,029.11 |
| 08/08 | Chips Debit Via: Hsbc Bank USA, N.A./0108 A/C: Banco Hsbc S.A. Sao Paulo Brazil Br Ben: Byjus Tecnologia Educacional Ltda Br Ref: Loan/Int/Banco Hsbc Sa Account000261 Currency Usdonward Credit Toaccou Nt No. 000124-4 Ssn: 0345097 Trn: 1738300220Jo | 300,000.00 |
| 08/08 | Chips Debit Via: Citibank N.A./0008 A/C: Banco Nacional DE Mexico S.A. 06089 Mexico, D.F. Ben: Byjus Sa DE Cv Mx Ref: Loan Ssn: 0345734 Trn: 1740000220Jo | 350,000.00 |
| 08/15 | Chips Debit Via: Standard Chartered Bank/0256 A/C: Standard Chartered Bank Dubai, United Arab Emirates Ben: Icc Business Corporation Fz LLC Dubai 500070 Ae Ref: Invoice No Inibc1560 Ssn: 0354036 Trn: 1695500227Jo | 5,000,000.00 |
| 08/19 | Foreign Exchange Debit A/C: Foreign Cur Bus Acct Bk 1 Columbus Newark DE 197132107 US Org: 00000000778593837 Byju's Alpha, Inc. Ben:/At552032032100274962 Geogebra Gmbh Ref: Test Transaction-Loan/Ocmt/Eur1000,00/Exch/1.0242/Cntr/87157191/ Trn: 8472400231Re | 1,024.20 |
| 08/22 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/08:02 Imad: 0822B1Qgc01C002863 Trn: 0885100234Jo | 406,614.00 |
| 08/23 | Book Transfer Debit A/C: Glas Trust Company LLC Jersey City NJ 07311- US Ref: Term Facility (24746) Interest Period : 24/May/2022 To 24/Aug/2022 Trn: 2747900235Jo | 21,400,556.57 |
| 08/31 | Book Transfer Debit A/C: UBS Switzerland Ag Zurich Switzerland 8001 - Ch Ref: Invoice No:50003626 Trn: 0568100243Jo | 22,000,000.00 |
| 08/31 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Epic Creations Inc Red Wood City, CA 94063 US Ref: Loan/Time/10:47 Imad: 0831B1Qgc03C011658 Trn: 3303100243Jo | 772,308.00 |
| 08/31 | Book Transfer Debit A/C: Whitehat Education Technology LLC Wilmington DE 19801- US Ref: Loan Trn: 3311300243Jo | 5,000,000.00 |
| 08/31 | Chips Debit Via: Hsbc Bank USA, N.A./0108 A/C: Banco Hsbc S.A. Sao Paulo Brazil Br Ben: Byjus Tecnologia Educacional Ltda Br Ref: Loan/Int/Banco Hsbc Sa Account000261 Currency Usdonward Credit Toaccou Nt No. 000124-4 Ssn: 0450710 Trn: 3311200243Jo | 300,000.00 |
| 08/31 | Chips Debit Via: Citibank N.A./0008 A/C: Banco Nacional DE Mexico S.A. 06089 Mexico, D.F. Ben: Byjus Sa DE Cv Mx Ref: Loan Ssn: 0451155 Trn: 3315300243Jo | 350,000.00 |
| **Total Electronic Withdrawals** | | **$62,125,881.88** |

Your service charges, fees and earnings credit have been calculated through account analysis.

JPMorganChase

July 30, 2022 through August 31, 2022
Account Number: **000000778593837**

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|
| 08/01 | $31,078,847.78 | 08/15 | 19,183,468.67 |
| 08/02 | 29,856,497.78 | 08/19 | 19,182,444.47 |
| 08/03 | 26,856,497.78 | 08/22 | 18,775,830.47 |
| 08/04 | 26,855,497.78 | 08/23 | 22,375,273.90 |
| 08/05 | 24,856,497.78 | 08/30 | 22,376,273.90 |
| 08/08 | 24,183,468.67 | 08/31 | 4,692,263.02 |

10253820202000000062

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

EQUAL HOUSING LENDER **JPMorgan Chase Bank, N.A. Member FDIC**

JPMorganChase

July 30, 2022 through August 31, 2022
Account Number: **000000778593837**

This Page Intentionally Left Blank

JPMorganChase

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

September 01, 2022 through September 30, 2022
Account Number: **000000778593837**

**CUSTOMER SERVICE INFORMATION**

**If you have any questions about your statement, please contact your Customer Service Professional.**

00025448 DDA 802 211 27422 NNNNNNNNNNN 1 000000000 61 0000
BYJU'S ALPHA, INC.
3160 DE LA CRUZ
BLVD STE 204
SANTA CLARA CA 95054

00254480201000000022

## CHECKING SUMMARY

Commercial Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$4,692,263.02** |
| Deposits and Additions | 1 | 22,660,000.00 |
| Electronic Withdrawals | 25 | - 24,730,573.62 |
| **Ending Balance** | **26** | **$2,621,689.40** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 09/13 | Book Transfer Credit B/O: Byju's Alpha, Inc. Santa Clara CA 95054- US Trn: 5204700256Jo | $22,660,000.00 |
| **Total Deposits and Additions** | | **$22,660,000.00** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 09/06 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/08:50 Imad: 0906B1Qgc04C008579 Trn: 1268700249Jo | $2,999,000.00 |
| 09/12 | Book Transfer Debit A/C: Emirates NBD Bank Pjsc Dubai U.A.E. 0000 - Ae Ref: Invoice No: Ds/210/22 Test Transaction Trn: 0794300255Jo | 1,000.00 |
| 09/12 | Foreign Exchange Debit A/C: Foreign Cur Bus Acct Bk 1 Columbus Newark DE 197132107 US Org: 00000000778593837 Byju's Alpha, Inc. Ben:/Qa36Qnba000000000013074853001 Fifa Ticketing LLC Ref: Invoice No: Fq-200376418Test Transaction/Ocmt/Qar1500,00/Exch/3.6025/C Ntr/35837543/ Trn: 9305700255Re | 416.38 |
| 09/12 | Book Transfer Debit A/C: Emirates NBD Bank Pjsc Dubai U.A.E. 0000 - Ae Ref: Invoice No: Ds/210/22 Trn: 1463800255Jo | 645,300.00 |
| 09/13 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/14:16 Imad: 0913B1Qgc08C016646 Trn: 4867600256Jo | 1,000,000.00 |

JPMorganChase

September 01, 2022 through September 30, 2022
Account Number: **000000778593837**

## ELECTRONIC WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 09/14 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/08:00 Imad: 0914B1Qgc02C002738 Trn: 0537600257Jo | 3,000,000.00 |
| 09/14 | Book Transfer Debit A/C: Whitehat Education Technology LLC Wilmington DE 19801- US Ref: Loan Trn: 0537300257Jo | 1,000,000.00 |
| 09/14 | Chips Debit Via: Citibank N.A./0008 A/C: Banco Nacional DE Mexico S.A. 06089 Mexico, D.F. Ben: Byjus Sa DE Cv Mx Ref: Loan Ssn: 0133244 Trn: 0537500257Jo | 500,000.00 |
| 09/14 | Chips Debit Via: Hsbc Bank USA, N.A./0108 A/C: Banco Hsbc S.A. Sao Paulo Brazil Br Ben: Byjus Tecnologia Educacional Ltda Br Ref: Loan/Int/Banco Hsbc Sa Account000261 Currency Usdonward Credit Toaccou Nt No. 000124-4 Ssn: 0133169 Trn: 0537200257Jo | 350,000.00 |
| 09/14 | Foreign Exchange Debit A/C: Foreign Cur Bus Acct Bk 1 Columbus Newark DE 197132107 US Org: 00000000778593837 Byju's Alpha, Inc. Ben:/Qa36Qnba000000000013074853001 Fifa Ticketing LLC Ref: Invoice No-Fq-200376418/Ocmt/Qar6185000,00/Exch/3.6663/Cntr/41380455/ Trn: 1804800257Re | 1,686,986.88 |
| 09/16 | Chips Debit Via: Citibank N.A./0008 A/C: Citibank, N.A. Singapore Ben: White & Case Pte. Ltd. Sg Ref: Invoice No:6300-22-00537 Invoice No:6300-22-00538 Ssn: 0255244 Trn: 1050000259Jo | 720,269.68 |
| 09/16 | Foreign Exchange Debit A/C: Foreign Cur Bus Acct Bk 1 Columbus Newark DE 197132107 US Org: 00000000778593837 Byju's Alpha, Inc. Ben:/14109861 T20 World Cup 2020 Ticketing Ref: Invoice No: Xfti000410Test Transfer/Ocmt/Aud1000,00/Exch/0.6826/Cntr/4 3699935/ Trn: 4149400259Re | 682.60 |
| 09/19 | Foreign Exchange Debit A/C: Foreign Cur Bus Acct Bk 1 Columbus Newark DE 197132107 US Org: 00000000778593837 Byju's Alpha, Inc. Ben:/At552032032100274962 Geogebra Gmbh Ref: Loan/Ocmt/Eur1199000,00/Exch/1.0009/Cntr/50179963/ Trn: 5662800262Re | 1,200,079.10 |
| 09/20 | Foreign Exchange Debit A/C: Foreign Cur Bus Acct Bk 1 Columbus Newark DE 197132107 US Org: 00000000778593837 Byju's Alpha, Inc. Ben:/14109861 T20 World Cup 2020 Ticketing Ref: Invoice No:Xfti000410/Ocmt/Aud36695,00/Exch/0.6831/Cntr/50201882/ Trn: 7211700263Re | 25,066.35 |
| 09/20 | Chips Debit Via: The Bank of New York Mellon/0001 A/C: Andorra Banc Agricol Reig Sa Engordany Andorra Ad700 Andorra Ben: Lionel Andres Messi Cuccittini 75001 Paris Fr Ref: Invoice No: 03-2022 Test Transfer Ssn: 0419310 Trn: 3792400263Jo | 1,000.00 |
| 09/23 | Book Transfer Debit A/C: Whitehat Education Technology LLC Wilmington DE 19801- US Ref: Loan Trn: 1116700266Jo | 3,000,000.00 |
| 09/28 | Book Transfer Debit A/C: Whitehat Education Technology LLC Wilmington DE 19801- US Ref: Loan Trn: 0508000271Jo | 1,000,000.00 |
| 09/28 | Chips Debit Via: The Bank of New York Mellon/0001 A/C: Andorra Banc Agricol Reig Sa Engordany Andorra Ad700 Andorra Ben: Lionel Andres Messi Cuccittini 75001 Paris Fr Ref: Invoice No: 03-2022 Ssn: 0157863 Trn: 0509700271Jo | 499,000.00 |
| 09/28 | Chips Debit Via: Hsbc Bank USA, N.A./0108 A/C: Banco Hsbc S.A. Sao Paulo Brazil Br Ben: Byjus Tecnologia Educacional Ltda Br Ref: Loan/Int/Banco Hsbc Sa Account000261 Currency Usdonward Credit Toaccou Nt No. 000124-4 Ssn: 0157815 Trn: 0508400271Jo | 350,000.00 |
| 09/28 | Chips Debit Via: Citibank N.A./0008 A/C: Banco Nacional DE Mexico S.A. 06089 Mexico, D.F. Ben: Byjus Sa DE Cv Mx Ref: Loan Ssn: 0157860 Trn: 0509100271Jo | 300,000.00 |
| 09/28 | Book Transfer Debit A/C: Glas Trust Company LLC Jersey City NJ 07311- US Ref: Term Facility (24746) Principal Amount Payment Trn: 1123500271Jo | 3,000,000.00 |
| 09/28 | Chips Debit Via: Citibank N.A./0008 A/C: Citibank, N.A. Singapore Ben: Linklaters Singapore Pte. Ltd. Sg Ref: Invoice No:Singapore/6162010544 Test Transfer Ssn: 0323959 Trn: 1124000271Jo | 1,000.00 |

JPMorganChase

September 01, 2022 through September 30, 2022
Account Number: **000000778593837**

## ELECTRONIC WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
| --- | --- | --- |
| 09/29 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/08:45 Imad: 0929B1Qgc01C003523 Trn: 1202300272Jo | 3,000,000.00 |
| 09/29 | Chips Debit Via: Citibank N.A./0008 A/C: Citibank, N.A. Singapore Ben: Linklaters Singapore Pte. Ltd. Sg Ref: Invoice No: Singapore/6162010544 Invoice No: Singapore/6162011023 Ssn: 0357124 Trn: 1204700272Jo | 354,000.00 |
| 09/29 | Book Transfer Debit A/C: The Commercial Bank (Q.S.C.) Doha Qatar Qa Ref: Invoice No:Mhqafwc22007226092022 Invoice No:Mhqafwc22007626092022 Invo Ice No:Mhqafwc22007826092022 Invoic E No:Mhqafwc22008026092022 Trn: 2754100272Jo | 96,772.63 |
| **Total Electronic Withdrawals** | | **$24,730,573.62** |

10254480202000000062

Your service charges, fees and earnings credit have been calculated through account analysis.

## DAILY ENDING BALANCE

| DATE | AMOUNT |
| --- | --- |
| 09/06 | $1,693,263.02 |
| 09/12 | 1,046,546.64 |
| 09/13 | 22,706,546.64 |
| 09/14 | 16,169,559.76 |
| 09/16 | 15,448,607.48 |
| 09/19 | 14,248,528.38 |
| 09/20 | 14,222,462.03 |
| 09/23 | 11,222,462.03 |
| 09/28 | 6,072,462.03 |
| 09/29 | 2,621,689.40 |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

EQUAL HOUSING LENDER **JPMorgan Chase Bank, N.A. Member FDIC**



**A1028**

JPMorganChase

September 01, 2022 through September 30, 2022
Account Number: **000000778593837**

This Page Intentionally Left Blank

JPMorganChase

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

October 01, 2022 through October 31, 2022
Account Number: **000000778593837**

**CUSTOMER SERVICE INFORMATION**

**If you have any questions about your statement, please contact your Customer Service Professional.**

00016537 DDA 802 211 30522 NNNNNNNNNNN 1 000000000 61 0000
BYJU'S ALPHA, INC.
3160 DE LA CRUZ
BLVD STE 204
SANTA CLARA CA 95054

00165370101000000021

## CHECKING SUMMARY

Commercial Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$2,621,689.40** |
| Deposits and Additions | 2 | 9,001,000.00 |
| Electronic Withdrawals | 4 | - 2,600,000.00 |
| Other Withdrawals, Fees & Charges | 1 | - 356.56 |
| **Ending Balance** | **7** | **$9,022,332.84** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/04 | Fedwire Credit Via: Silicon Valley Bank/121140399 B/O: Byju's Beta Inc Santa Clara, CA 95054 Ref: Chase Nyc/Ctr/Bnf=Byju's Alpha, Inc. Santa Clara CA 95054- US/Ac-00000 0007785 Rfb=O/B Sil Vly Bk S Obi=Re Turn of Loan Imad: 1004L1B77D1C004550 Trn: 0579300277Ff | $1,000.00 |
| 10/11 | Fedwire Credit Via: Silicon Valley Bank/121140399 B/O: Byju's Beta Inc Santa Clara, CA 95054 Ref: Chase Nyc/Ctr/Bnf=Byju's Alpha, Inc. Santa Clara CA 95054- US/Ac-00000 0007785 Rfb=O/B Sil Vly Bk S Imad: 1011L1B77D1C005537 Trn: 0546160284Ff | 9,000,000.00 |
| **Total Deposits and Additions** | | **$9,001,000.00** |

JPMorganChase

October 01, 2022 through October 31, 2022
Account Number: **000000778593837**

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/04 | Book Transfer Debit A/C: Whitehat Education Technology LLC Wilmington DE 19801- US Ref: Loan Trn: 5129600277Jo | $1,000,000.00 |
| 10/04 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/14:18 Imad: 1004B1Qgc04C008823 Trn: 5134800277Jo | 1,000,000.00 |
| 10/04 | Chips Debit Via: Hsbc Bank USA, N.A./0108 A/C: Banco Hsbc S.A. Sao Paulo Brazil Br Ben: Byjus Tecnologia Educacional Ltda Br Ref: Loan/Int/Banco Hsbc Sa Account000261 Currency Usdonward Credit Toaccou Nt No. 000124-4 Ssn: 0400253 Trn: 5134900277Jo | 300,000.00 |
| 10/04 | Chips Debit Via: Citibank N.A./0008 A/C: Banco Nacional DE Mexico S.A. 06089 Mexico, D.F. Ben: Byjus Sa DE Cv Mx Ref: Loan Ssn: 0400543 Trn: 5145200277Jo | 300,000.00 |
| **Total Electronic Withdrawals** | | **$2,600,000.00** |

## OTHER WITHDRAWALS, FEES & CHARGES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/17 | Account Analysis Settlement Charge | $356.56 |
| **Total Other Withdrawals, Fees & Charges** | | **$356.56** |

Your service charges, fees and earnings credit have been calculated through account analysis.

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 10/04 | $22,689.40 |
| 10/11 | 9,022,689.40 |
| 10/17 | 9,022,332.84 |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**

Call us at 1-866-564-2262 or write us at the address on the front of this statement immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

**For personal accounts only:** We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number;
- A description of the error or the transaction you are unsure about, and why you think it is an error or want more information; and
- The amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**For business accounts**, see your deposit account agreement or other applicable agreements that govern your account for details.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC FUNDS TRANSFERS**: Contact us immediately if your statement is incorrect or if you need more information about any non-electronic funds transfers on this statement. For more details, see your deposit account agreement or other applicable agreements that govern your account.

**JPMorgan Chase Bank, N.A. Member FDIC**

**JPMorganChase**

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

November 01, 2022 through November 30, 2022
Account Number: **000000778593837**

**CUSTOMER SERVICE INFORMATION**

**If you have any questions about your statement, please contact your Customer Service Professional.**

00025992 DDA 802 211 33522 NNNNNNNNNNN 1 000000000 61 0000
BYJU'S ALPHA, INC.
3160 DE LA CRUZ
BLVD STE 204
SANTA CLARA CA 95054

00259920201000000022

## CHECKING SUMMARY

Commercial Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$9,022,332.84** |
| Deposits and Additions | 4 | 49,259,478.12 |
| Electronic Withdrawals | 18 | - 52,438,555.10 |
| Other Withdrawals, Fees & Charges | 1 | - 220.71 |
| **Ending Balance** | **23** | **$5,843,035.15** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/23 | Fedwire Credit Via: Silicon Valley Bank/121140399 B/O: Whitehat Education Technology LLC Wilmington, DE 19801 Ref: Chase Nyc/Ctr/Bnf=Byju's Alpha, Inc. Santa Clara CA 95054- US/Ac-00000 0007785 Rfb=O/B Sil Vly Bk S Obi=Tr Ansfer Imad: 1123L1B77D1C004554 Trn: 0557390327Ff | $21,000,000.00 |
| 11/23 | Fedwire Credit Via: Silicon Valley Bank/121140399 B/O: Whitehat Education Technology LLC Wilmington, DE 19801 Ref: Chase Nyc/Ctr/Bnf=Byju's Alpha, Inc. Santa Clara CA 95054- US/Ac-00000 0007785 Rfb=O/B Sil Vly Bk S Obi=Tr Ansfer Imad: 1123L1B77D1C003809 Trn: 0409440327Ff | 1,000.00 |
| 11/25 | Fedwire Credit Via: Silicon Valley Bank/121140399 B/O: Byju's Alpha, Inc Santa Clara, CA 95054 Ref: Chase Nyc/Ctr/Bnf=Byju's Alpha, Inc. Santa Clara CA 95054- US/Ac-00000 0007785 Rfb=O/B Sil Vly Bk S Imad: 1125L1B77D1C001557 Trn: 0116480329Ff | 2,500,000.00 |
| 11/29 | Book Transfer Credit B/O: Byju's Alpha, Inc. Santa Clara CA 95054- US Trn: 3042900333Jo | 25,758,478.12 |
| **Total Deposits and Additions** | | **$49,259,478.12** |

JPMorganChase

November 01, 2022 through November 30, 2022
Account Number: **000000778593837**

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/04 | Fedwire Debit Via: F121000358/121000358 A/C: Byjus Alpha Inc US Ref: Test Transaction/Time/06:55 Imad: 1104B1Qgc08C004529 Trn: 1023600308Jo | $1,000.00 |
| 11/07 | Chips Debit Via: Citibank N.A./0008 A/C: Banco Nacional DE Mexico S.A. 06089 Mexico, D.F. Ben: Byjus Sa DE Cv Mx Ref: Loan Ssn: 0141977 Trn: 0750900311Jo | 226,000.00 |
| 11/07 | Chips Debit Via: Hsbc Bank USA, N.A./0108 A/C: Banco Hsbc S.A. Sao Paulo Brazil Br Ben: Byjus Tecnologia Educacional Ltda Br Ref: Loan/Int/Banco Hsbc Sa Account000261 Currency Usdonward Credit Toaccou Nt No. 000124-4 Ssn: 0142257 Trn: 0751000311Jo | 200,000.00 |
| 11/14 | Chips Debit Via: Hsbc Bank USA, N.A./0108 A/C: Banco Hsbc S.A. Sao Paulo Brazil Br Ben: Byjus Tecnologia Educacional Ltda Br Ref: Loan/Int/Banco Hsbc Sa Account000261 Currency Usdonward Credit Toaccou Nt No. 000124-4 Ssn: 0129218 Trn: 1480400315Jo | 500,000.00 |
| 11/14 | Chips Debit Via: Citibank N.A./0008 A/C: Banco Nacional DE Mexico S.A. 06089 Mexico, D.F. Ben: Byjus Sa DE Cv Mx Ref: Loan Ssn: 0129444 Trn: 1479800315Jo | 350,000.00 |
| 11/16 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Byju's Alpha, Inc US Ref: Within CO- Contra/Time/08:01 Imad: 1116B1Qgc06C002680 Trn: 1044400320Jo | 390,000.00 |
| 11/16 | Book Transfer Debit A/C: The Commercial Bank (Q.S.C.) Doha Qatar Qa Ref: Order Number: 112927 Account Number:104554 For Sports Partners Interna Tional L Trn: 1143000320Jo | 127,860.00 |
| 11/21 | Book Transfer Debit A/C: Hdfc Bank Ltd Kanjur Marg East Mumbai India IN Ref: Invoice No:Noi2223B03208 Test Transfer Trn: 1401400325Jo | 1,000.00 |
| 11/21 | Fedwire Debit Via: Citibank Nyc/021000089 A/C: Shearman And Sterling Llp US Ref: Invoice No: 7123079 Test Transfer/Time/06:57 Imad: 1121B1Qgc07C003783 Trn: 1402200325Jo | 1,000.00 |
| 11/21 | Book Transfer Debit A/C: Emirates NBD Bank Pjsc Dubai U.A.E. 0000 - Ae Ref: Invoice No: Ds/274/22 Trn: 1402500325Jo | 646,300.00 |
| 11/21 | Foreign Exchange Debit A/C: Foreign Cur Bus Acct Bk 1 Columbus Newark DE 197132107 US Org: 00000000778593837 Byju's Alpha, Inc. Ben:/501053334002 Allen And Gledhill Llp Ref: Invoice No: P518/22Test Transfer/Ocmt/Sgd1000,00/Exch/1.3546/Cntr/1002 2163/ Trn: 6949000325Re | 738.23 |
| 11/22 | Book Transfer Debit A/C: Hdfc Bank Ltd Kanjur Marg East Mumbai India IN Ref: Invoice No: Noi2223B03208 Trn: 2530400326Jo | 75,792.00 |
| 11/22 | Fedwire Debit Via: Citibank Nyc/021000089 A/C: Shearman And Sterling Llp US Ref: Invoice No: 7119951 Invoicee No:7123079/Time/09:55 Imad: 1122B1Qgc07C007494 Trn: 2532400326Jo | 850,728.58 |
| 11/22 | Foreign Exchange Debit A/C: Foreign Cur Bus Acct Bk 1 Columbus Newark DE 197132107 US Org: 00000000778593837 Byju's Alpha, Inc. Ben:/501053334002 Allen And Gledhill Llp Ref: Invoice No:P518/22/Ocmt/Sgd59704,04/Exch/1.3554/Cntr/81566911/ Trn: 8324600326Re | 44,049.02 |
| 11/25 | Chips Debit Via: Citibank N.A./0008 A/C: Citibank, N.A. Singapore Ben: White & Case Pte. Ltd. Sg Ref: Invoice No: 6300-22-00697 Ssn: 0070130 Trn: 0481200328Jo | 118,438.20 |
| 11/25 | Book Transfer Debit A/C: Glas Trust Company LLC Jersey City NJ 07311- US Ref: Term Facility (24746)-Interest Trn: 0687800329Jo | 27,639,426.85 |
| 11/25 | Book Transfer Debit A/C: D324331754 US Ref: Invoice No:Nuscgn132773/Time/07:06 Fedbk Trn: 0694600329Jo | 16,222.22 |
| 11/29 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Whitehat Education Technology LLC US Ref:/Time/12:32 Imad: 1129B1Qgc06C007363 Trn: 4498600333Jo | 21,250,000.00 |
| **Total Electronic Withdrawals** | | **$52,438,555.10** |

JPMorganChase

November 01, 2022 through November 30, 2022
Account Number: **000000778593837**

## OTHER WITHDRAWALS, FEES & CHARGES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 11/15 | Account Analysis Settlement Charge | $220.71 |
| **Total Other Withdrawals, Fees & Charges** | | **$220.71** |

Your service charges, fees and earnings credit have been calculated through account analysis.

10259920202000000062

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 11/04 | $9,021,332.84 |
| 11/07 | 8,595,332.84 |
| 11/14 | 7,745,332.84 |
| 11/15 | 7,745,112.13 |
| 11/16 | 7,227,252.13 |
| 11/21 | 6,578,213.90 |
| 11/22 | 5,607,644.30 |
| 11/23 | 26,608,644.30 |
| 11/25 | 1,334,557.03 |
| 11/29 | 5,843,035.15 |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**

Call us at 1-866-564-2262 or write us at the address on the front of this statement immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

**For personal accounts only:** We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number;
- A description of the error or the transaction you are unsure about, and why you think it is an error or want more information; and
- The amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**For business accounts**, see your deposit account agreement or other applicable agreements that govern your account for details.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC FUNDS TRANSFERS**: Contact us immediately if your statement is incorrect or if you need more information about any non-electronic funds transfers on this statement. For more details, see your deposit account agreement or other applicable agreements that govern your account.

**JPMorgan Chase Bank, N.A. Member FDIC**

JPMorganChase

November 01, 2022 through November 30, 2022
Account Number: **000000778593837**

This Page Intentionally Left Blank

JPMorganChase

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

April 01, 2022 through April 29, 2022
Account Number: **000000778593837**

**CUSTOMER SERVICE INFORMATION**

**If you have any questions about your statement, please contact your Customer Service Professional.**

00025764 DDA 802 211 12022 NNNNNNNNNNN 1 000000000 61 0000
BYJU'S ALPHA, INC.
3160 DE LA CRUZ
BLVD STE 204
SANTA CLARA CA 95054

00257640201000000022

## CHECKING SUMMARY

Commercial Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$104,699,487.26** |
| Deposits and Additions | 3 | 380,088,643.94 |
| Electronic Withdrawals | 15 | - 441,496,250.00 |
| **Ending Balance** | **18** | **$43,291,881.20** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 04/01 | Cash Dividend From JPMorgan Usgvtmmktt 3164 3164 5022869 Trn: 0800060091Kg | $88,643.94 |
| 04/22 | JPMorgan Transaction-CR Usgvtmmktt 3164 3164 5022869 Trn: 0800016112Kg | 60,000,000.00 |
| 04/27 | JPMorgan Transaction-CR Usgvtmmktt 3164 3164 5022869 Trn: 1300007117Kg | 320,000,000.00 |
| **Total Deposits and Additions** | | **$380,088,643.94** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 04/01 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Byju's Beta Inc CA US Ref: Advance/Time/11:00 Imad: 0401B1Qgc06C010668 Trn: 3056700091Jo | $10,000,000.00 |
| 04/05 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Byju's Beta Inc CA US Ref: Loan/Time/08:02 Imad: 0405B1Qgc07C002884 Trn: 1132800095Jo | 30,000,000.00 |
| 04/08 | Book Transfer Debit A/C: Whitehat Education Technology LLC Wilmington DE 19801- US Ref: Loan Trn: 2122100098Jo | 8,000,000.00 |
| 04/08 | Chips Debit Via: Citibank N.A./0008 A/C: Banco Nacional DE Mexico S.A. 06089 Mexico, D.F. Ben: Byjus Sa DE Cv Mx Ref: Loan Ssn: 0366316 Trn: 2122000098Jo | 1,000,000.00 |

JPMorganChase

April 01, 2022 through April 29, 2022
Account Number: **000000778593837**

## ELECTRONIC WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 04/12 | Book Transfer Debit A/C: UBS Switzerland Ag Zurich Switzerland 8001 - Ch Ref: Invoice No 50003333 Fifa Contract ID 40003348 Dated 28 Feb 2022 Trn: 2939100102Jo | 23,500,000.00 |
| 04/14 | Chips Debit Via: Standard Chartered Bank/0256 A/C: Standard Chartered Bank Dubai, United Arab Emirates Ben: Icc Business Corporation Fz LLC Dubai 500070 Ae Ref: Invoice No Inibc1482 Ssn: 0156697 Trn: 0561900104Jo | 1,000.00 |
| 04/14 | Chips Debit Via: Standard Chartered Bank/0256 A/C: Standard Chartered Bank Dubai, United Arab Emirates Ben: Icc Business Corporation Fz LLC Dubai 500070 Ae Ref: Invoice No Inibc1482 Ssn: 0352888 Trn: 3017200104Jo | 4,999,000.00 |
| 04/19 | Book Transfer Debit A/C: Glas Trust Company LLC Jersey City NJ 07311- US Ref: Reference # 1991351 Term Facility (24746) Trn: 1189400109Jo | 1,496,250.00 |
| 04/22 | Book Transfer Debit A/C: United Overseas Bank Ltd Singapore Singapore 06954-4 Sg Ref: Test Transaction Trn: 0599100112Jo | 1,000.00 |
| 04/25 | Book Transfer Debit A/C: United Overseas Bank Ltd Singapore Singapore 06954-4 Sg Ref: Loan Trn: 0805500115Jo | 30,499,000.00 |
| 04/26 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/08:00 Imad: 0426B1Qgc06C001511 Trn: 0461000116Jo | 9,000,000.00 |
| 04/27 | Fedwire Debit Via: Bk Comrce SD/122235821 A/C: Camshaft Capital Fund, Lp Middletown, DE 19709 US Imad: 0427B1Qgc03C001418 Trn: 0363700117Jo | 100.00 |
| 04/28 | Book Transfer Debit A/C: United Overseas Bank Ltd Singapore Singapore 06954-4 Sg Ref: Loan Trn: 3559300118Jo | 5,000,000.00 |
| 04/28 | Fedwire Debit Via: Bk Comrce SD/122235821 A/C: Apex Fund Camshaft Capital Lp Middletown, DE 19709 US Imad: 0428B1Qgc02C004804 Trn: 3704800118Jo | 100.00 |
| 04/28 | Fedwire Debit Via: Bk Comrce SD/122235821 A/C: Apex Fund Camshaft Capital Lp Middletown, DE 19709 US Imad: 0428B1Qgc03C007875 Trn: 5676600118Jo | 317,999,800.00 |
| **Total Electronic Withdrawals** | | **$441,496,250.00** |

Your service charges, fees and earnings credit have been calculated through account analysis.

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|
| 04/01 | $94,788,131.20 | 04/22 | 85,790,881.20 |
| 04/05 | 64,788,131.20 | 04/25 | 55,291,881.20 |
| 04/08 | 55,788,131.20 | 04/26 | 46,291,881.20 |
| 04/12 | 32,288,131.20 | 04/27 | 366,291,781.20 |
| 04/14 | 27,288,131.20 | 04/28 | 43,291,881.20 |
| 04/19 | 25,791,881.20 | | |

JPMorganChase

April 01, 2022 through April 29, 2022
Account Number: **000000778593837**

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

EQUAL HOUSING LENDER **JPMorgan Chase Bank, N.A. Member FDIC**

10257640202000000062

JPMorganChase

April 01, 2022 through April 29, 2022
Account Number: **000000778593837**

This Page Intentionally Left Blank

JPMorganChase

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

July 01, 2022 through July 29, 2022
Account Number: **000000778593837**

**CUSTOMER SERVICE INFORMATION**

**If you have any questions about your statement, please contact your Customer Service Professional.**

00026169 DDA 802 211 21122 NNNNNNNNNNN 1 000000000 61 0000
BYJU'S ALPHA, INC.
3160 DE LA CRUZ
BLVD STE 204
SANTA CLARA CA 95054

00261690201000000022

# CHECKING SUMMARY

Commercial Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$57,719,747.45** |
| Deposits and Additions | 3 | 220,242,700.25 |
| Electronic Withdrawals | 13 | - 246,975,500.00 |
| **Ending Balance** | **16** | **$30,986,947.70** |

# DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/01 | Cash Dividend From JPMorgan Usgvtmmktt 3164 3164 5022869 Trn: 0800066182Kg | $242,700.25 |
| 07/07 | JPMorgan Transaction-CR Usgvtmmktt 3164 3164 5022869 Trn: 0800014188Kg | 200,000,000.00 |
| 07/14 | JPMorgan Transaction-CR Usgvtmmktt 3164 3164 5022869 Trn: 0800012195Kg | 20,000,000.00 |
| **Total Deposits and Additions** | | **$220,242,700.25** |

JPMorganChase

July 01, 2022 through July 29, 2022
Account Number: **000000778593837**

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/01 | Book Transfer Debit A/C: Glas Trust Company LLC Jersey City NJ 07311- US Ref: Term Facility (24746) Loan ID 24747Principal Repayment of Loan Trn: 3952000182Jo | $3,000,000.00 |
| 07/06 | Book Transfer Debit A/C: The Commercial Bank (Q.S.C.) Doha Qatar Qa Ref: Invoice No -Mhqafwc22010821062022 Test Transaction Trn: 1087700187Jo | 1,000.00 |
| 07/07 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Byju's Alpha, Inc US Ref: Within CO- Contra/Time/12:53 Imad: 0707B1Qgc01C005567 Trn: 4702300188Jo | 200,000,000.00 |
| 07/13 | Chips Debit Via: Hsbc Bank USA, N.A./0108 A/C: Banco Hsbc S.A. Sao Paulo Brazil Br Ben: Byjus Tecnologia Educacional Ltda Br Ref: Loan/Int/Banco Hsbc Sa Account000261 Currency Usdonward Credit Toaccou Nt No. 000124-4 Ssn: 0176164 Trn: 0613500194Jo | 600,000.00 |
| 07/13 | Chips Debit Via: Citibank N.A./0008 A/C: Banco Nacional DE Mexico S.A. 06089 Mexico, D.F. Ben: Byjus Sa DE Cv Mx Ref: Loan Ssn: 0176622 Trn: 0613600194Jo | 700,000.00 |
| 07/13 | Book Transfer Debit A/C: Whitehat Education Technology LLC Wilmington DE 19801- US Ref: Loan Trn: 0613800194Jo | 6,400,000.00 |
| 07/13 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Byju's Alpha, Inc US Ref: Within CO- Contra/Time/14:48 Imad: 0713B1Qgc06C010419 Trn: 5220600194Jo | 20,000,000.00 |
| 07/15 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/08:00 Imad: 0715B1Qgc03C001754 Trn: 0623100196Jo | 4,847,000.00 |
| 07/22 | Book Transfer Debit A/C: Coutts And CO Essex United Kingdom Sso O-Ej Gb Ref: Invoice No: 0536 Trn: 1087000203Jo | 352,500.00 |
| 07/25 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/08:00 Imad: 0725B1Qgc02C001539 Trn: 0338600206Jo | 5,000,000.00 |
| 07/27 | Book Transfer Debit A/C: Whitehat Education Technology LLC Wilmington DE 19801- US Ref: Loan Trn: 0990300208Jo | 4,000,000.00 |
| 07/27 | Chips Debit Via: Hsbc Bank USA, N.A./0108 A/C: Banco Hsbc S.A. Sao Paulo Brazil Br Ben: Byjus Tecnologia Educacional Ltda Br Ref: Loan/Int/Banco Hsbc Sa Account000261 Currency Usdonward Credit Toaccou Nt No. 000124-4 Ssn: 0230543 Trn: 0990800208Jo | 375,000.00 |
| 07/28 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/13:43 Imad: 0728B1Qgc04C010604 Trn: 5740700209Jo | 1,700,000.00 |
| **Total Electronic Withdrawals** | | **$246,975,500.00** |

Your service charges, fees and earnings credit have been calculated through account analysis.

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 07/01 | $54,962,447.70 |
| 07/06 | 54,961,447.70 |
| 07/07 | 54,961,447.70 |
| 07/13 | 27,261,447.70 |
| 07/14 | 47,261,447.70 |
| 07/15 | 42,414,447.70 |
| 07/22 | 42,061,947.70 |
| 07/25 | 37,061,947.70 |
| 07/27 | 32,686,947.70 |
| 07/28 | 30,986,947.70 |

JPMorganChase

July 01, 2022 through July 29, 2022
Account Number: **000000778593837**

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

EQUAL HOUSING LENDER **JPMorgan Chase Bank, N.A. Member FDIC**

10261690202000000062



A1042

JPMorganChase

July 01, 2022 through July 29, 2022
Account Number: **000000778593837**

This Page Intentionally Left Blank

JPMorganChase

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

December 01, 2022 through December 30, 2022
Account Number: **000000778593837**

**CUSTOMER SERVICE INFORMATION**

**If you have any questions about your statement, please contact your Customer Service Professional.**

00026495 DDA 802 211 36522 NNNNNNNNNNN 1 000000000 61 0000
BYJU'S ALPHA, INC.
3160 DE LA CRUZ
BLVD STE 204
SANTA CLARA CA 95054

00264950201000000022

## CHECKING SUMMARY

Commercial Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$5,843,035.15** |
| Deposits and Additions | 3 | 4,500,995.31 |
| Electronic Withdrawals | 21 | - 9,377,746.79 |
| Other Withdrawals, Fees & Charges | 1 | - 321.55 |
| **Ending Balance** | **25** | **$965,962.12** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/05 | Book Transfer Credit B/O: Byju's Alpha, Inc. Santa Clara CA 95054- US Trn: 3876400339Jo | $995.31 |
| 12/20 | Fedwire Credit Via: Silicon Valley Bank/121140399 B/O: Inspilearn LLC Santa Clara, CA 95054 Ref: Chase Nyc/Ctr/Bnf=Byju's Alpha, Inc. Santa Clara CA 95054- US/Ac-00000 0007785 Rfb=O/B Sil Vly Bk S Imad: 1220L1B77D1C001867 Trn: 0094810354Ff | 1,500,000.00 |
| 12/28 | Fedwire Credit Via: Silicon Valley Bank/121140399 B/O: Byju's Beta Inc Santa Clara, CA 95054 Ref: Chase Nyc/Ctr/Bnf=Byju's Alpha, Inc. Santa Clara CA 95054- US/Ac-00000 0007785 Rfb=O/B Sil Vly Bk S Imad: 1228L1B77D1C005679 Trn: 0498010362Ff | 3,000,000.00 |
| **Total Deposits and Additions** | | **$4,500,995.31** |

JPMorganChase

December 01, 2022 through December 30, 2022
Account Number: **000000778593837**

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/05 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/10:28 Imad: 1205B1Qgc07C007295 Trn: 2923900339Jo | $30,000.00 |
| 12/05 | Chips Debit Via: Citibank N.A./0008 A/C: Banco Nacional DE Mexico S.A. 06089 Mexico, D.F. Ben: Byjus Sa DE Cv Mx Ref: Loan Ssn: 0459232 Trn: 4020500339Jo | 314,000.00 |
| 12/05 | Chips Debit Via: Hsbc Bank USA, N.A./0108 A/C: Banco Hsbc S.A. Sao Paulo Brazil Br Ben: Byjus Tecnologia Educacional Ltda Br Ref: Loan/Int/Banco Hsbc Sa Account000261 Currency Usdonward Credit Toaccou Nt No. 000124-4 Ssn: 0460038 Trn: 4037700339Jo | 514,000.00 |
| 12/08 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/10:13 Imad: 1208B1Qgc08C016422 Trn: 2912900342Jo | 65,227.00 |
| 12/08 | Book Transfer Debit A/C: Daniel J Edelman Inc Chicago IL 60606-7219 US Ref: Test Transfer Invoice No:100365407 Trn: 3303700342Jo | 1,000.00 |
| 12/09 | Fedwire Debit Via: TD Bank NA/031101266 A/C: Rothschild & CO US Inc US Ref: Test Transfer Invoice #11221Thi002 Imad: 1209B1Qgc06C006540 Trn: 1451800343Jo | 1,000.00 |
| 12/09 | Book Transfer Debit A/C: Daniel J Edelman Inc Chicago IL 60606-7219 US Ref: Invoice No:100365407 Invoice No: 100365408 Invoice No:V100365409 Trn: 1616100343Jo | 359,400.00 |
| 12/09 | Fedwire Debit Via: TD Bank NA/031101266 A/C: Rothschild & CO US Inc US Ref: Invoice #11221Thi002 Imad: 1209B1Qgc08C010951 Trn: 2725800343Jo | 149,000.00 |
| 12/15 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/14:09 Imad: 1215B1Qgc08C036066 Trn: 6436300349Jo | 385,272.00 |
| 12/16 | Chips Debit Via: Hsbc Bank USA, N.A./0108 A/C: Banco Hsbc S.A. Sao Paulo Brazil Br Ben: Byjus Tecnologia Educacional Ltda Br Ref: Loan/Int/Banco Hsbc Sa Account000261 Currency Usdonward Credit Toaccou Nt No. 000124-4 Ssn: 0458113 Trn: 4480000350Jo | 250,000.00 |
| 12/16 | Chips Debit Via: Citibank N.A./0008 A/C: Banco Nacional DE Mexico S.A. 06089 Mexico, D.F. Ben: Byjus Sa DE Cv Mx Ref: Loan Ssn: 0458137 Trn: 4480400350Jo | 750,000.00 |
| 12/21 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref:/Time/13:37 Imad: 1221B1Qgc02C006723 Trn: 5435200355Jo | 360,000.00 |
| 12/23 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/08:00 Imad: 1223B1Qgc01C001890 Trn: 0675500357Jo | 356,646.00 |
| 12/23 | Chips Debit Via: Citibank N.A./0008 A/C: Citibank, N.A. Singapore Ben: White & Case Pte. Ltd. Sg Ref: Invoice No: 6300-22-00786 Ssn: 0203964 Trn: 0675400357Jo | 127,374.30 |
| 12/23 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/08:00 Imad: 1223B1Qgc02C002094 Trn: 0675700357Jo | 847,336.00 |
| 12/23 | Chips Debit Via: Citibank N.A./0008 A/C: Banco Nacional DE Mexico S.A. 06089 Mexico, D.F. Ben: Byjus Sa DE Cv Mx Ref: Loan Ssn: 0204770 Trn: 0675800357Jo | 300,000.00 |
| 12/23 | Chips Debit Via: Hsbc Bank USA, N.A./0108 A/C: Banco Hsbc S.A. Sao Paulo Brazil Br Ben: Byjus Tecnologia Educacional Ltda Br Ref: Loan/Int/Banco Hsbc Sa Account000261 Currency Usdonward Credit Toaccou Nt No. 000124-4 Ssn: 0205063 Trn: 0675900357Jo | 138,000.00 |
| 12/27 | Chips Debit Via: Citibank N.A./0008 A/C: Citibank, N.A. Singapore Ben: White & Case Pte. Ltd. Sg Ref: Invoice No: 6300-22-00859 Ssn: 0074547 Trn: 0628800360Jo | 429,285.00 |

JPMorganChase

December 01, 2022 through December 30, 2022
Account Number: **000000778593837**

## ELECTRONIC WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/27 | Foreign Exchange Debit A/C: Foreign Cur Bus Acct Bk 1 Columbus Newark DE 197132107 US Org: 00000000778593837 Byju's Alpha, Inc. Ben:/12083345 Orient Capital Pty Limited-Operatin Ref: Invoice No: Dfe 10068544/Ocmt/Aud300,00/Exch/0.6883/Cntr/71913661/ Trn: 3303500361Re | 206.49 |
| 12/28 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref:/Time/12:17 Imad: 1228B1Qgc06C012322 Trn: 4216300362Jo | 1,000,000.00 |
| 12/29 | Book Transfer Debit A/C: Glas Trust Company LLC Jersey City NJ 07311- US Ref: Term Facility (24746) Principal Amount Payment Trn: 0309900363Jo | 3,000,000.00 |
| **Total Electronic Withdrawals** | | **$9,377,746.79** |

## OTHER WITHDRAWALS, FEES & CHARGES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 12/15 | Account Analysis Settlement Charge | $321.55 |
| **Total Other Withdrawals, Fees & Charges** | | **$321.55** |

Your service charges, fees and earnings credit have been calculated through account analysis.

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|
| 12/05 | $4,986,030.46 | 12/21 | 4,164,809.91 |
| 12/08 | 4,919,803.46 | 12/23 | 2,395,453.61 |
| 12/09 | 4,410,403.46 | 12/27 | 1,965,962.12 |
| 12/15 | 4,024,809.91 | 12/28 | 3,965,962.12 |
| 12/16 | 3,024,809.91 | 12/29 | 965,962.12 |
| 12/20 | 4,524,809.91 | | |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**

Call us at 1-866-564-2262 or write us at the address on the front of this statement immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

**For personal accounts only:** We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number;
- A description of the error or the transaction you are unsure about, and why you think it is an error or want more information; and
- The amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**For business accounts**, see your deposit account agreement or other applicable agreements that govern your account for details.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC FUNDS TRANSFERS**: Contact us immediately if your statement is incorrect or if you need more information about any non-electronic funds transfers on this statement. For more details, see your deposit account agreement or other applicable agreements that govern your account.

**JPMorgan Chase Bank, N.A. Member FDIC**

10264950202000000062

JPMorganChase

December 01, 2022 through December 30, 2022
Account Number: **000000778593837**

This Page Intentionally Left Blank

**JPMorganChase**

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

June 01, 2022 through June 30, 2022
Account Number: **000000778593837**

**CUSTOMER SERVICE INFORMATION**

**If you have any questions about your statement, please contact your Customer Service Professional.**

00025803 DDA 802 211 18222 NNNNNNNNNNN 1 000000000 61 0000
BYJU'S ALPHA, INC.
3160 DE LA CRUZ
BLVD STE 204
SANTA CLARA CA 95054

00258030201000000022

## CHECKING SUMMARY

Commercial Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$52,283,994.29** |
| Deposits and Additions | 2 | 50,210,012.53 |
| Electronic Withdrawals | 9 | - 44,774,249.05 |
| Other Withdrawals, Fees & Charges | 1 | - 10.32 |
| **Ending Balance** | **12** | **$57,719,747.45** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/01 | Cash Dividend From JPMorgan Usgvtmmktt 3164 3164 5022869 Trn: 0800060152Kg | $210,012.53 |
| 06/23 | JPMorgan Transaction-CR Usgvtmmktt 3164 3164 5022869 Trn: 0800003174Kg | 50,000,000.00 |
| **Total Deposits and Additions** | | **$50,210,012.53** |

JPMorganChase

June 01, 2022 through June 30, 2022
Account Number: **000000778593837**

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/01 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/08:01 Imad: 0601B1Qgc03C002707 Trn: 0518600152Jo | $2,900,000.00 |
| 06/08 | Chips Debit Via: Hsbc Bank USA, N.A./0108 A/C: Banco Hsbc S.A. Sao Paulo Brazil Br Ben: Byjus Tecnologia Educacional Ltda Br Ref: Loan/Int/Banco Hsbc Sa Account000261 Currency Usdonward Credit Toaccou Nt No. 000124-4 Ssn: 0314749 Trn: 2153200159Jo | 1,300,000.00 |
| 06/08 | Book Transfer Debit A/C: Whitehat Education Technology LLC Wilmington DE 19801- US Ref: Loan Trn: 2156100159Jo | 3,200,000.00 |
| 06/08 | Chips Debit Via: Citibank N.A./0008 A/C: Banco Nacional DE Mexico S.A. 06089 Mexico, D.F. Ben: Byjus Sa DE Cv Mx Ref: Loan Ssn: 0315349 Trn: 2156200159Jo | 1,500,000.00 |
| 06/08 | Fedwire Debit Via: F121000358/121000358 A/C: Kruger Chilen Partners LLC US Ref: Invoice No 450/Time/09:59 Imad: 0608B1Qgc07C005131 Trn: 2159600159Jo | 115,000.00 |
| 06/10 | Chips Debit Via: Citibank N.A./0008 A/C: Citibank, N.A. Singapore Ben: White & Case Pte. Ltd. Sg Ref: Invoice Number 6300-22-00267 Ssn: 0303354 Trn: 1032300161Jo | 159,249.05 |
| 06/14 | Chips Debit Via: The Bank of New York Mellon/0001 A/C: Andorra Banc Agricol Reig Sa Engordany Andorra Ad700 Andorra Ben: Leo Messi Management S L Espana Es Ref: Invoice 27/2022 Ssn: 0313821 Trn: 2244100165Jo | 1,850,000.00 |
| 06/21 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/08:01 Imad: 0621B1Qgc05C003800 Trn: 0292800172Jo | 8,000,000.00 |
| 06/21 | Book Transfer Debit A/C: Byju's Alpha, Inc. Santa Clara CA 95054- US Ref: ME Sblc Trn: 3591500172Jo | 25,750,000.00 |
| **Total Electronic Withdrawals** | | **$44,774,249.05** |

## OTHER WITHDRAWALS, FEES & CHARGES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/15 | Account Analysis Settlement Charge | $10.32 |
| **Total Other Withdrawals, Fees & Charges** | | **$10.32** |

Your service charges, fees and earnings credit have been calculated through account analysis.

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 06/01 | $49,594,006.82 |
| 06/08 | 43,479,006.82 |
| 06/10 | 43,319,757.77 |
| 06/14 | 41,469,757.77 |
| 06/15 | 41,469,747.45 |
| 06/21 | 7,719,747.45 |
| 06/23 | 57,719,747.45 |

JPMorganChase

June 01, 2022 through June 30, 2022
Account Number: **000000778593837**

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

10258030202000000062

EQUAL HOUSING LENDER **JPMorgan Chase Bank, N.A. Member FDIC**



A1050

JPMorganChase

June 01, 2022 through June 30, 2022
Account Number: **000000778593837**

This Page Intentionally Left Blank

JPMorganChase

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

April 30, 2022 through May 31, 2022
Account Number: **000000778593837**

**CUSTOMER SERVICE INFORMATION**

**If you have any questions about your statement, please contact your Customer Service Professional.**

00018145 DDA 802 211 15222 NNNNNNNNNNN 1 000000000 61 0000
BYJU'S ALPHA, INC.
3160 DE LA CRUZ
BLVD STE 204
SANTA CLARA CA 95054

00181450101000000021

## CHECKING SUMMARY

Commercial Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$43,291,881.20** |
| Deposits and Additions | 3 | 80,165,654.76 |
| Electronic Withdrawals | 11 | - 71,173,541.67 |
| **Ending Balance** | **14** | **$52,283,994.29** |

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/02 | Cash Dividend From JPMorgan Usgvtmmktt 3164 3164 5022869 Trn: 0800061122Kg | $165,654.76 |
| 05/25 | JPMorgan Transaction-CR Usgvtmmktt 3164 3164 5022869 Trn: 0800016145Kg | 30,000,000.00 |
| 05/27 | JPMorgan Transaction-CR Usgvtmmktt 3164 3164 5022869 Trn: 0800015147Kg | 50,000,000.00 |
| **Total Deposits and Additions** | | **$80,165,654.76** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/04 | Book Transfer Debit A/C: Whitehat Education Technology LLC Wilmington DE 19801- US Ref: Loan Trn: 0492500124Jo | $4,000,000.00 |
| 05/04 | Chips Debit Via: Citibank N.A./0008 A/C: Banco Nacional DE Mexico S.A. 06089 Mexico, D.F. Ben: Byjus Sa DE Cv Mx Ref: Loan Ssn: 0110350 Trn: 0492600124Jo | 1,000,000.00 |
| 05/09 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Byju's Alpha, Inc US Ref: Within CO- Contra Funds Intertransfer/Time/09:32 Imad: 0509B1Qgc06C005905 Trn: 1775000129Jo | 1,000,000.00 |
| 05/17 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/13:40 Imad: 0517B1Qgc08C019469 Trn: 3437200137Jo | 6,000,000.00 |

JPMorganChase

April 30, 2022 through May 31, 2022
Account Number: **000000778593837**

## ELECTRONIC WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/19 | Book Transfer Debit A/C: Whitehat Education Technology LLC Wilmington DE 19801- US Ref: Loan Trn: 3413900139Jo | 5,000,000.00 |
| 05/19 | Chips Debit Via: Citibank N.A./0008 A/C: Banco Nacional DE Mexico S.A. 06089 Mexico, D.F. Ben: Byjus Sa DE Cv Mx Ref: Loan Ssn: 0352313 Trn: 3414100139Jo | 1,000,000.00 |
| 05/19 | Chips Debit Via: Hsbc Bank USA, N.A./0108 A/C: Banco Hsbc S.A. Sao Paulo Brazil Br Ben: Byjus Tecnologia Educacional Ltda Br Ref: Loan/Int/Banco Hsbc Sa Account000261 Currency Usdonward Credit Toaccou Nt No. 000124-4 Ssn: 0352304 Trn: 3414000139Jo | 1,000,000.00 |
| 05/23 | Book Transfer Debit A/C: Glas Trust Company LLC Jersey City NJ 07311- US Ref: Interest On Term Facility (24746) Trn: 0580000143Jo | 18,513,541.67 |
| 05/27 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/08:00 Imad: 0527B1Qgc07C002842 Trn: 0283400147Jo | 11,000,000.00 |
| 05/27 | Book Transfer Debit A/C: Byju's Alpha, Inc. Santa Clara CA 95054- US Trn: 0281200147Jo | 1,000.00 |
| 05/27 | Book Transfer Debit A/C: Byju's Alpha, Inc. Santa Clara CA 95054- US Ref: Sblc For Fifa Trn: 2478400147Jo | 22,659,000.00 |
| **Total Electronic Withdrawals** | | **$71,173,541.67** |

Your service charges, fees and earnings credit have been calculated through account analysis.

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 05/02 | $43,457,535.96 |
| 05/04 | 38,457,535.96 |
| 05/09 | 37,457,535.96 |
| 05/17 | 31,457,535.96 |
| 05/19 | 24,457,535.96 |
| 05/23 | 5,943,994.29 |
| 05/25 | 35,943,994.29 |
| 05/27 | 52,283,994.29 |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

EQUAL HOUSING LENDER **JPMorgan Chase Bank, N.A. Member FDIC**

JPMorganChase

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

January 01, 2022 through January 31, 2022
Account Number: **000000778593837**

**CUSTOMER SERVICE INFORMATION**

**If you have any questions about your statement, please contact your Customer Service Professional.**

00018237 DDA 802 211 03322 NNNNNNNNNNN 1 000000000 61 0000
BYJU'S ALPHA, INC.
3160 DE LA CRUZ
BLVD STE 204
SANTA CLARA CA 95054

00182370101000000021

## Important Information

If your Account is eligible for "pass through" deposit insurance from the Federal Deposit Insurance Corporation (the "FDIC") as set forth in the Federal Deposit Insurance Act and 12 CFR § 330, pursuant to the Account Terms, you are deemed to acknowledge and agree that if the Bank becomes insolvent or enters into receivership (hereinafter a "Bank Receivership"), you will: (a) cooperate fully with the Bank and the FDIC in connection with determining the insured status of funds in each of your Account(s), and (b) provide the FDIC with the information that identifies each beneficial owner and its interest in the funds in each such Account within 24 hours of the Bank Receivership, unless it falls within one of the enumerated exceptions in 12 CFR 370.5(b). The information described in (b) must be sent to the Bank in the format specified by the FDIC. See www.fdic.gov/regulations/resources/recordkeeping/index.html for more information. Upon request, the Bank shall provide you an opportunity to validate your capability to deliver the information described in (b) in the format specified by the FDIC so that a timely calculation of deposit insurance coverage for the Account can be completed.

A hold will be placed on each of your Account(s) in the event a receiver of the Bank is appointed, so that the FDIC can conduct the deposit insurance determination. This hold will not be released until the FDIC obtains the necessary data and is able to calculate the deposit insurance coverage for each Account. Failure to provide the necessary data to the FDIC may result in: a delay in receipt of insured funds; and/or legal claims against you from the beneficial owners of the funds in the applicable Account. If such data is not provided to the FDIC in a timely manner, this may result in the applicable Account being frozen until the information is received, delaying receipt of any FDIC insurance proceeds.

## CHECKING SUMMARY

Commercial Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$65,777,728.00** |
| Deposits and Additions | 1 | 8,651.82 |
| Electronic Withdrawals | 3 | - 60,000,000.00 |
| **Ending Balance** | **4** | **$5,786,379.82** |



**A1054**

JPMorganChase

January 01, 2022 through January 31, 2022
Account Number: **000000778593837**

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 01/03 | Cash Dividend From JPMorgan Usgvtmmktt 3164 3164 5022869 Trn: 0800057003Kg | $8,651.82 |
| **Total Deposits and Additions** | | **$8,651.82** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 01/12 | Fedwire Debit Via: Citibank Nyc/021000089 A/C: Tangible Play Inc US Ref: Loan/Time/12:00 Imad: 0112B1Qgc05C007429 Trn: 3223600012Jo | $20,000,000.00 |
| 01/18 | Fedwire Debit Via: Citibank Nyc/021000089 A/C: Tangible Play Inc US Ref:/Time/21:02 Imad: 0118B1Qgc07C000549 Trn: 0595900017Jo | 30,000,000.00 |
| 01/25 | Fedwire Debit Via: Citibank Nyc/021000089 A/C: Tangible Play Inc US Ref:/Time/10:45 Imad: 0125B1Qgc07C010970 Trn: 2551000025Jo | 10,000,000.00 |
| **Total Electronic Withdrawals** | | **$60,000,000.00** |

Your service charges, fees and earnings credit have been calculated through account analysis.

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 01/03 | $65,786,379.82 |
| 01/12 | 45,786,379.82 |
| 01/18 | 15,786,379.82 |
| 01/25 | 5,786,379.82 |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

EQUAL HOUSING LENDER **JPMorgan Chase Bank, N.A. Member FDIC**

JPMorganChase

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

February 01, 2022 through February 28, 2022
Account Number: **000000778593837**

**CUSTOMER SERVICE INFORMATION**

**If you have any questions about your statement, please contact your Customer Service Professional.**

00025216 DDA 802 211 06022 NNNNNNNNNNN 1 000000000 61 0000
BYJU'S ALPHA, INC.
3160 DE LA CRUZ
BLVD STE 204
SANTA CLARA CA 95054

00252160201000000022

## Important Information

If your Account is eligible for “pass through” deposit insurance from the Federal Deposit Insurance Corporation (the “FDIC”) as set forth in the Federal Deposit Insurance Act and 12 CFR § 330, pursuant to the Account Terms, you are deemed to acknowledge and agree that if the Bank becomes insolvent or enters into receivership (hereinafter a “Bank Receivership”), you will: (a) cooperate fully with the Bank and the FDIC in connection with determining the insured status of funds in each of your Account(s), and (b) provide the FDIC with the information that identifies each beneficial owner and its interest in the funds in each such Account within 24 hours of the Bank Receivership, unless it falls within one of the enumerated exceptions in 12 CFR 370.5(b). The information described in (b) must be sent to the Bank in the format specified by the FDIC. See www.fdic.gov/regulations/resources/recordkeeping/index.html for more information. Upon request, the Bank shall provide you an opportunity to validate your capability to deliver the information described in (b) in the format specified by the FDIC so that a timely calculation of deposit insurance coverage for the Account can be completed.

A hold will be placed on each of your Account(s) in the event a receiver of the Bank is appointed, so that the FDIC can conduct the deposit insurance determination. This hold will not be released until the FDIC obtains the necessary data and is able to calculate the deposit insurance coverage for each Account. Failure to provide the necessary data to the FDIC may result in: a delay in receipt of insured funds; and/or legal claims against you from the beneficial owners of the funds in the applicable Account. If such data is not provided to the FDIC in a timely manner, this may result in the applicable Account being frozen until the information is received, delaying receipt of any FDIC insurance proceeds.

## CHECKING SUMMARY

Commercial Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$5,786,379.82** |
| Deposits and Additions | 3 | 150,022,297.77 |
| Electronic Withdrawals | 18 | - 65,710,928.17 |
| **Ending Balance** | **21** | **$90,097,749.42** |

JPMorganChase

February 01, 2022 through February 28, 2022
Account Number: **000000778593837**

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 02/01 | Cash Dividend From JPMorgan Usgvtmmktt 3164 3164 5022869 Trn: 0800059032Kg | $22,297.77 |
| 02/02 | JPMorgan Transaction-CR Usgvtmmktt 3164 3164 5022869 Trn: 0800007033Kg | 50,000,000.00 |
| 02/15 | JPMorgan Transaction-CR Usgvtmmktt 3164 3164 5022869 Trn: 0800004046Kg | 100,000,000.00 |
| **Total Deposits and Additions** | | **$150,022,297.77** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 02/02 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/12:12 Imad: 0202B1Qgc05C005894 Trn: 3162100033Jo | $10,000,000.00 |
| 02/09 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Whitehat Education Technology LLC US Ref: Penny Drop Transaction/Time/10:24 Imad: 0209B1Qgc04C006580 Trn: 2383400040Jo | 100.00 |
| 02/10 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Whitehat Education Technology LLC US Ref: Loan/Time/08:02 Imad: 0210B1Qgc06C003444 Trn: 0801100041Jo | 3,000,000.00 |
| 02/10 | Fedwire Debit Via: F121000358/121000358 A/C: Kruger Chilen Partners LLC US Ref: Invoice No 418/Time/07:29 Imad: 0210B1Qgc06C001840 Trn: 0801000041Jo | 10,000.00 |
| 02/10 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/08:02 Imad: 0210B1Qgc03C002728 Trn: 0801200041Jo | 13,000,000.00 |
| 02/16 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Byju's Beta Inc CA US Ref:/Time/08:02 Imad: 0216B1Qgc07C002691 Trn: 0834700047Jo | 1,000.00 |
| 02/16 | Chips Debit Via: Hsbc Bank USA, N.A./0108 A/C: Banco Hsbc S.A. Sao Paulo Brazil Br Ben: Byjus Tecnologia Educacional Ltda Br Ref: Loan/Int/Banco Hsbc Sa Account000261 Currency Usdonward Credit Toaccou Nt No. 000124-4 Ssn: 0394070 Trn: 3605200047Jo | 1,000.00 |
| 02/16 | Chips Debit Via: Citibank N.A./0008 A/C: Banco Nacional DE Mexico S.A. 06089 Mexico, D.F. Ben: Byjus Sa DE Cv Mx Ref: Loan Ssn: 0394075 Trn: 3605700047Jo | 1,000.00 |
| 02/16 | Book Transfer Debit A/C: Linklaters Llp New York NY 10104-0101 US Ref: New York/7002026575 Project Bright - Tlb Glas Agency/Bnf/DDA/904-75768 4 Linklaters Llp 1290 Avenue of The Americas New Y Ork, NY 10104 NY US Trn: 3605900047Jo | 60,037.50 |
| 02/17 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Byju's Beta Inc CA US Ref:/Time/08:02 Imad: 0217B1Qgc06C002660 Trn: 3537400047Jo | 9,000,000.00 |
| 02/18 | Chips Debit Via: Citibank N.A./0008 A/C: Banco Nacional DE Mexico S.A. 06089 Mexico, D.F. Ben: Byjus Sa DE Cv Mx Ref: Loan Ssn: 0178972 Trn: 0248400049Jo | 1,500,000.00 |
| 02/18 | Chips Debit Via: Hsbc Bank USA, N.A./0108 A/C: Banco Hsbc S.A. Sao Paulo Brazil Br Ben: Byjus Tecnologia Educacional Ltda Br Ref: Loan/Int/Banco Hsbc Sa Account000261 Currency Usdonward Credit Toaccou Nt No. 000124-4 Ssn: 0178975 Trn: 0248300049Jo | 1,500,000.00 |
| 02/22 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/10:34 Imad: 0222B1Qgc03C009412 Trn: 2328300053Jo | 6,000,000.00 |
| 02/24 | Book Transfer Debit A/C: Hdfc Bank Ltd Kanjur Marg East Mumbai India IN Ref: Invoice No.M088202122 Trn: 4148300055Jo | 1,000.00 |
| 02/24 | Book Transfer Debit A/C: Glas Trust Company LLC Jersey City NJ 07311- US Trn: 4149400055Jo | 666.67 |

JPMorganChase

February 01, 2022 through February 28, 2022
Account Number: **000000778593837**

## ELECTRONIC WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 02/24 | Book Transfer Debit A/C: Glas Trust Company LLC Jersey City NJ 07311- US Ref: Ref No 1847591 Dt 24 Feb 2022 Trn: 5498300055Jo | 19,166,000.00 |
| 02/25 | Fedwire Debit Via: Wells Fargo NA/121000248 A/C: Cooley Llp San Francisco, CA 94111-4004 US Ref: Invoice No-2430862/Time/09:26 Imad: 0225B1Qgc06C005890 Trn: 1964300056Jo | 124.00 |
| 02/28 | Fedwire Debit Via: Wells Fargo NA/121000248 A/C: Cooley Llp San Francisco, CA 94111-4004 US Ref: Client Number 339903/Time/08:10 Imad: 0228B1Qgc05C005705 Trn: 1308800059Jo | 2,470,000.00 |
| **Total Electronic Withdrawals** | | **$65,710,928.17** |

Your service charges, fees and earnings credit have been calculated through account analysis.

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|
| 02/01 | $5,808,677.59 | 02/17 | 120,735,540.09 |
| 02/02 | 45,808,677.59 | 02/18 | 117,735,540.09 |
| 02/09 | 45,808,577.59 | 02/22 | 111,735,540.09 |
| 02/10 | 29,798,577.59 | 02/24 | 92,567,873.42 |
| 02/15 | 129,798,577.59 | 02/25 | 92,567,749.42 |
| 02/16 | 129,735,540.09 | 02/28 | 90,097,749.42 |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

EQUAL HOUSING LENDER **JPMorgan Chase Bank, N.A. Member FDIC**

JPMorganChase

February 01, 2022 through February 28, 2022
Account Number: **000000778593837**

This Page Intentionally Left Blank

**JPMorganChase**

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

March 01, 2022 through March 31, 2022
Account Number: **000000778593837**

**CUSTOMER SERVICE INFORMATION**

**If you have any questions about your statement, please contact your Customer Service Professional.**

00024796 DDA 802 211 09122 NNNNNNNNNNN 1 000000000 61 0000
BYJU'S ALPHA, INC.
3160 DE LA CRUZ
BLVD STE 204
SANTA CLARA CA 95054

00247960201000000022

## Important Information

If your Account is eligible for "pass through" deposit insurance from the Federal Deposit Insurance Corporation (the "FDIC") as set forth in the Federal Deposit Insurance Act and 12 CFR § 330, pursuant to the Account Terms, you are deemed to acknowledge and agree that if the Bank becomes insolvent or enters into receivership (hereinafter a "Bank Receivership"), you will: (a) cooperate fully with the Bank and the FDIC in connection with determining the insured status of funds in each of your Account(s), and (b) provide the FDIC with the information that identifies each beneficial owner and its interest in the funds in each such Account within 24 hours of the Bank Receivership, unless it falls within one of the enumerated exceptions in 12 CFR 370.5(b). The information described in (b) must be sent to the Bank in the format specified by the FDIC. See www.fdic.gov/regulations/resources/recordkeeping/index.html for more information. Upon request, the Bank shall provide you an opportunity to validate your capability to deliver the information described in (b) in the format specified by the FDIC so that a timely calculation of deposit insurance coverage for the Account can be completed.

A hold will be placed on each of your Account(s) in the event a receiver of the Bank is appointed, so that the FDIC can conduct the deposit insurance determination. This hold will not be released until the FDIC obtains the necessary data and is able to calculate the deposit insurance coverage for each Account. Failure to provide the necessary data to the FDIC may result in: a delay in receipt of insured funds; and/or legal claims against you from the beneficial owners of the funds in the applicable Account. If such data is not provided to the FDIC in a timely manner, this may result in the applicable Account being frozen until the information is received, delaying receipt of any FDIC insurance proceeds.

## CHECKING SUMMARY

Commercial Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **$90,097,749.42** |
| Deposits and Additions | 2 | 100,018,181.00 |
| Electronic Withdrawals | 23 | - 85,416,443.16 |
| **Ending Balance** | **25** | **$104,699,487.26** |

JPMorganChase

March 01, 2022 through March 31, 2022
Account Number: **000000778593837**

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 03/01 | Cash Dividend From JPMorgan Usgvtmmktt 3164 3164 5022869 Trn: 0800060060Kg | $18,181.00 |
| 03/24 | JPMorgan Transaction-CR Usgvtmmktt 3164 3164 5022869 Trn: 1300017083Kg | 100,000,000.00 |
| **Total Deposits and Additions** | | **$100,018,181.00** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 03/03 | Book Transfer Debit A/C: Hdfc Bank Ltd Kanjur Marg East Mumbai India IN Ref: Invoice No:M088202122 Invoice No:M307202122 Trn: 0276800062Jo | $91,829.00 |
| 03/03 | Book Transfer Debit A/C: Whitehat Education Technology LLC Wilmington DE 19801- US Ref: Test Transaction Trn: 0276300062Jo | 100.00 |
| 03/03 | Book Transfer Debit A/C: Whitehat Education Technology LLC Wilmington DE 19801- US Ref: Loan Trn: 0858300062Jo | 3,000,000.00 |
| 03/04 | Book Transfer Debit A/C: Whitehat Education Technology LLC Wilmington DE 19801- US Ref: Loan Trn: 0936500063Jo | 5,000,000.00 |
| 03/04 | Book Transfer Debit A/C: Whitehat Education Technology LLC Wilmington DE 19801- US Ref: Loan Trn: 0936100063Jo | 1,000,000.00 |
| 03/08 | Book Transfer Debit A/C: UBS Switzerland Ag Zurich Switzerland 8001 - Ch Ref: Invoice No 50003332 Trn: 0242400067Jo | 20,000,000.00 |
| 03/08 | Book Transfer Debit A/C: Coutts And CO Essex United Kingdom Sso O-Ej Gb Ref: Invoice No 0509 Trn: 0242500067Jo | 500.00 |
| 03/16 | Book Transfer Debit A/C: Coutts And CO Essex United Kingdom Sso O-Ej Gb Ref: Invoice No:Inv-0509 Trn: 0222100075Jo | 277,000.00 |
| 03/21 | Chips Debit Via: Barclays Bank Plc/0257 A/C: Barclays Bank Uk Plc London United Kingdom Gb Ben: Stephen Kingsley Jull Uk Gb Ref: Share Purchase Consideration Ssn: 0352237 Trn: 0758600080Jo | 1,272,406.54 |
| 03/21 | Book Transfer Debit A/C: Allgemeine Sparkasse Linz Austria At Ref: Share Purchase Consideration Trn: 0758100080Jo | 10,179,252.33 |
| 03/21 | Book Transfer Debit A/C: CO-Operative Bank Plc London United Kingdom St13 -5Rg Gb Ref: Share Purchase Consideration Trn: 0758700080Jo | 1,272,406.54 |
| 03/22 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/08:01 Imad: 0322B1Qgc07C002811 Trn: 0699900081Jo | 8,000,000.00 |
| 03/22 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Tangible Play Inc US Ref: Loan/Time/08:01 Imad: 0322B1Qgc01C001912 Trn: 0700000081Jo | 22,000,000.00 |
| 03/22 | Chips Debit Via: The Bank of New York Mellon/0001 A/C: Andorra Banc Agricol Reig Sa Engordany Andorra Ad700 Andorra Ben: Leo Messi Management S L Espana Es Ref: Invoice No:11/2022 Test Transaction Ssn: 0404611 Trn: 2489600081Jo | 1,000.00 |
| 03/22 | Fedwire Debit Via: Sil Vly Bk Scla/121140399 A/C: Byju's Beta Inc CA US Ref:/Time/10:35 Imad: 0322B1Qgc06C006602 Trn: 2535600081Jo | 5,000,000.00 |
| 03/22 | Foreign Exchange Debit A/C: Foreign Cur Bus Acct Bk 1 Columbus Newark DE 197132107 US Org: 00000000778593837 Byju's Alpha, Inc. Ben:/At542011100002943433 Brandl Talos Rechtsanwalte Gmbh Ref: Invoice 102/2022 Test Transaction/Ocmt/Eur707,43/Exch/1.1199/Cntr/6608 5046/ Trn: 6819100081Re | 792.25 |
| 03/24 | Chips Debit Via: Hsbc Bank USA, N.A./0108 A/C: Banco Hsbc S.A. Sao Paulo Brazil Br Ben: Byjus Tecnologia Educacional Ltda Br Ref: Loan/Int/Banco Hsbc Sa Account000261 Currency Usdonward Credit Toaccou Nt No. 000124-4 Ssn: 0225192 Trn: 0837500083Jo | 400,000.00 |
| 03/24 | Chips Debit Via: Citibank N.A./0008 A/C: Banco Nacional DE Mexico S.A. 06089 Mexico, D.F. Ben: Byjus Sa DE Cv Mx Ref: Loan Ssn: 0225226 Trn: 0837400083Jo | 600,000.00 |

JPMorganChase

March 01, 2022 through March 31, 2022
Account Number: **000000778593837**

## ELECTRONIC WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 03/24 | Foreign Exchange Debit A/C: Foreign Cur Bus Acct Bk 1 Columbus Newark DE 197132107 US Org: 00000000778593837 Byju's Alpha, Inc. Ben:/At542011100002943433 Brandl Talos Rechtsanwalte Gmbh Ref: Invoice 102/2022- Balance Payment/Ocmt/Eur65000,00/Exch/1.1101/Cntr/68 142250/ Trn: 8449600083Re | 72,156.50 |
| 03/25 | Chips Debit Via: The Bank of New York Mellon/0001 A/C: Andorra Banc Agricol Reig Sa Engordany Andorra Ad700 Andorra Ben: Leo Messi Management S L Espana Es Ref: Invoice No 11/2022 Ssn: 0490095 Trn: 4784700084Jo | 1,849,000.00 |
| 03/30 | Chips Debit Via: Hsbc Bank USA, N.A./0108 A/C: Banco Hsbc S.A. Sao Paulo Brazil Br Ben: Byjus Tecnologia Educacional Ltda Br Ref: Loan/Int/Banco Hsbc Sa Account000261 Currency Usdonward Credit Toaccou Nt No. 000124-4 Ssn: 0493413 Trn: 6173600089Jo | 1,400,000.00 |
| 03/30 | Book Transfer Debit A/C: Glas Trust Company LLC Jersey City NJ 07311- US Ref: Loan ID 24747 Principal Repayment Trn: 6175000089Jo | 3,000,000.00 |
| 03/30 | Chips Debit Via: Citibank N.A./0008 A/C: Banco Nacional DE Mexico S.A. 06089 Mexico, D.F. Ben: Byjus Sa DE Cv Mx Ref: Loan Ssn: 0493445 Trn: 6173500089Jo | 1,000,000.00 |
| **Total Electronic Withdrawals** | | **$85,416,443.16** |

Your service charges, fees and earnings credit have been calculated through account analysis.

10247960202000000062

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 03/01 | $90,115,930.42 |
| 03/03 | 87,024,001.42 |
| 03/04 | 81,024,001.42 |
| 03/08 | 61,023,501.42 |
| 03/16 | 60,746,501.42 |
| 03/21 | 48,022,436.01 |
| 03/22 | 13,020,643.76 |
| 03/24 | 111,948,487.26 |
| 03/25 | 110,099,487.26 |
| 03/30 | 104,699,487.26 |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

EQUAL HOUSING LENDER **JPMorgan Chase Bank, N.A. Member FDIC**

JPMorganChase

March 01, 2022 through March 31, 2022
Account Number: **000000778593837**

This Page Intentionally Left Blank

# Exhibit 2.2.

svb

Silicon Valley Bank
3003 Tasman Drive
Santa Clara, CA 95054

# January 2022

*Reporting Activity 01/01 - 01/31* *Page 1 of 2*

ADDRESS SERVICE REQUESTED

>003553 6898349 0001 092196 10Z

BYJU'S ALPHA, INC
3160 DE LA CRUZ BLVD
SUITE 204
SANTA CLARA CA 95054

## Managing Your Accounts

| | |
|---|---|
| **Phone:** | (408) 654-4636 |
| **Toll-Free:** | (800) 774-7390 |
| **Email:** | clientsupport@svb.com |
| **Online:** | www.svb.com |

## Summary of Accounts

| Account Type | Account Number | Ending Balance |
|---|---|---|
| Analysis Checking | XXXXXX5876 | $288,000.00 |
| **Total Balance** | | **$288,000.00** |

# Analysis Checking - XXXXXX5876

### Account Summary

| Date | Description | |
|---|---|---|
| **01/01/2022** | **Beginning Balance** | **$30,101,000.00** |
| **01/31/2022** | **Ending Balance** | **$288,000.00** |
| | Total debits this period | $29,813,000.00 |
| | Total credits this period | $0.00 |
| | Service Charge | $0.00 |

### Account Activity

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 01/01/2022 | Beginning Balance | | | $30,101,000.00 |
| 01/18/2022 | WIRE OUT 220182180800 202201821808;BNF WHITEHAT EDUC ATION TECHNOLOGY LLC;OBI LOAN | -$4,000,000.00 | $0.00 | $26,101,000.00 |
| 01/18/2022 | WIRE OUT 220118L1B77D1C003580 202201812899;BNF TANGIBLE PLAY INC;OBI LOAN | -$25,000,000.00 | $0.00 | $1,101,000.00 |
| 01/25/2022 | WIRE OUT 220251128500 202202511285;BNF LINKLATERS SI NGAPORE PTE. LTD.;OBI SINGAPOR | -$100.00 | $0.00 | $1,100,900.00 |
| 01/26/2022 | WIRE OUT 220261470100 202202614701;BNF LINKLATERS SI NGAPORE PTE. LTD.;OBI SINGAPOR | -$812,900.00 | $0.00 | $288,000.00 |
| 01/31/2022 | Ending Balance | | | $288,000.00 |

03553 6898349 005491 010981 0001/0001

**CHECKS OUTSTANDING**

| DATE OR # | AMOUNT | | DATE OR # | AMOUNT | | DATE OR # | AMOUNT | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

BALANCE should agree with your checkbook balance after deducting charges and adding credits not shown in your checkbook but included on this statement as follows:
Interest-ADD Overdraft-DEDUCT Automatic Payment-DEDUCT Automatic Advance-ADD Service Charge-DEDUCT

**CHECKBOOK RECONCILIATION**

| | | |
|---|---|---|
| ENTER BALANCE THIS STATEMENT | $ | |
| ADD<br>RECENT DEPOSITS (NOT CREDITED ON THIS STATEMENT) | $ | |
| SUBTOTAL | $ | |
| SUBTRACT TOTAL ITEMS OUTSTANDING | $ | |
| **BALANCE** | $ | |

PLEASE REPORT ANY ERRORS OR OMISSIONS PROMPTLY TO US. ERRORS OR OMISSIONS THAT ARE REPORTED WITHIN THE FIRST 30 DAYS FROM THE DATE OF THE LAST STATEMENT CYCLE ARE USUALLY RESOLVED MUCH MORE QUICKLY THAN DATED REQUESTS. As a fraud prevention measure, you need to review your statements and report unauthorized use or errors to us, as explained in more detail below.

If your checkbook and statement do not balance have you:

- ☐ Accounted for bank charges?
- ☐ Verified additions and subtractions in your checkbook?
- ☐ Compared canceled checks to check stub?
- ☐ Compared deposit amounts on statement to your checkbook?

Any charges for imprinted checks include state sales tax computed at the current rate, when applicable. You can call (800) 774-7390 to request an item or substitute check, or a legible copy. We will without charge provide at least two items (or substitute checks or legible copies) upon request, with respect to each statement.

---

**IN CASE OF ERRORS OR QUESTIONS CONCERNING YOUR ELECTRONIC TRANSFERS**
**(For Consumer Clients)**

Telephone Silicon Valley Bank at (800) 774-7390 or write us at: Silicon Valley Bank, Attn: Client Services, 3003 Tasman Drive, Santa Clara, CA 95054, as soon as you can, if you think your statement or your receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe this is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

For questions about preauthorized transfers, please contact us at (800) 774-7390.

---

**IN CASE OF UNAUTHORIZED USE OF YOUR CHECKS OR ACCOUNTS**

You agree to review your statement and to report unauthorized use (checks or other charges that are forged, altered or other unauthorized use) or error immediately. Your deposit agreement sets specific times within which you must report unauthorized use or errors to us. In summary (and subject to special rules that may apply to consumers), if you fail to report unauthorized use or errors to us within 30 days after your statement is available, you may be liable for subsequent unauthorized use by the same wrongdoer. If you fail to report within 60 days, you may also be precluded from asserting the unauthorized use or other error against us. Your statement is deemed “available” when made available in paper or electronic form. Your deposit agreement or Related Agreements may set shorter reporting requirements, such as for ACH services.

---

**FAIR CREDIT REPORTING ACT**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

---

©2021 SVB Financial Group. All rights reserved. Silicon Valley Bank is a member of the FDIC and the Federal Reserve System. Silicon Valley Bank is the California bank subsidiary of SVB Financial Group (Nasdaq: SIVB). SVB, SVB FINANCIAL GROUP, SILICON VALLEY BANK, MAKE NEXT HAPPEN NOW and the chevron device are trademarks of SVB Financial Group, used under license. Rev. 01/06/2021

svb
Silicon Valley Bank
3003 Tasman Drive
Santa Clara, CA 95054

ADDRESS SERVICE REQUESTED

>063943 7903824 0001 092196 10Z
BYJU'S ALPHA, INC
3160 DE LA CRUZ BLVD
SUITE 204
SANTA CLARA CA 95054

# February 2022

*Reporting Activity 02/01 - 02/28* *Page 1 of 2*

## Managing Your Accounts

| | |
|---|---|
| **Phone:** | (408) 654-4636 |
| **Toll-Free:** | (800) 774-7390 |
| **Email:** | clientsupport@svb.com |
| **Online:** | www.svb.com |

## Summary of Accounts

| Account Type | Account Number | Ending Balance |
|---|---|---|
| Analysis Checking | XXXXXX5876 | $288,000.00 |
| **Total Balance** | | **$288,000.00** |

## Analysis Checking - XXXXXX5876

### Account Summary

| Date | Description | |
|---|---|---|
| **02/01/2022** | **Beginning Balance** | **$288,000.00** |
| **02/28/2022** | **Ending Balance** | **$288,000.00** |
| | Total debits this period | $0.00 |
| | Total credits this period | $0.00 |
| | Service Charge | $0.00 |

### Account Activity

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 02/01/2022 | Beginning Balance | | | $288,000.00 |
| | No activity this statement period | | | |
| 02/28/2022 | Ending Balance | | | $288,000.00 |

63943 7903824 162833 325665 0001/0001

Member FDIC
EQUAL HOUSING LENDER

ALL SVB AUDIT CONFIRMATION REQUESTS SHOULD BE SUBMITTED TO CAPITAL CONFIRMATION WWW.CONFIRMATION.COM

**CHECKS OUTSTANDING**

| DATE OR # | AMOUNT | | DATE OR # | AMOUNT | | DATE OR # | AMOUNT | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

BALANCE should agree with your checkbook balance after deducting charges and adding credits not shown in your checkbook but included on this statement as follows:
Interest-ADD Overdraft-DEDUCT Automatic Payment-DEDUCT Automatic Advance-ADD Service Charge-DEDUCT

**CHECKBOOK RECONCILIATION**

| | | |
|---|---|---|
| ENTER BALANCE THIS STATEMENT | $ | |
| ADD<br>RECENT DEPOSITS (NOT CREDITED ON THIS STATEMENT) | $ | |
| SUBTOTAL | $ | |
| SUBTRACT TOTAL ITEMS OUTSTANDING | $ | |
| **BALANCE** | $ | |

PLEASE REPORT ANY ERRORS OR OMISSIONS PROMPTLY TO US. ERRORS OR OMISSIONS THAT ARE REPORTED WITHIN THE FIRST 30 DAYS FROM THE DATE OF THE LAST STATEMENT CYCLE ARE USUALLY RESOLVED MUCH MORE QUICKLY THAN DATED REQUESTS. As a fraud prevention measure, you need to review your statements and report unauthorized use or errors to us, as explained in more detail below.

If your checkbook and statement do not balance have you:

- ☐ Accounted for bank charges?
- ☐ Verified additions and subtractions in your checkbook?
- ☐ Compared canceled checks to check stub?
- ☐ Compared deposit amounts on statement to your checkbook?

Any charges for imprinted checks include state sales tax computed at the current rate, when applicable. You can call (800) 774-7390 to request an item or substitute check, or a legible copy. We will without charge provide at least two items (or substitute checks or legible copies) upon request, with respect to each statement.

---

**IN CASE OF ERRORS OR QUESTIONS CONCERNING YOUR ELECTRONIC TRANSFERS**
**(For Consumer Clients)**

Telephone Silicon Valley Bank at (800) 774-7390 or write us at: Silicon Valley Bank, Attn: Client Services, 3003 Tasman Drive, Santa Clara, CA 95054, as soon as you can, if you think your statement or your receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe this is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

For questions about preauthorized transfers, please contact us at (800) 774-7390.

---

**IN CASE OF UNAUTHORIZED USE OF YOUR CHECKS OR ACCOUNTS**

You agree to review your statement and to report unauthorized use (checks or other charges that are forged, altered or other unauthorized use) or error immediately. Your deposit agreement sets specific times within which you must report unauthorized use or errors to us. In summary (and subject to special rules that may apply to consumers), if you fail to report unauthorized use or errors to us within 30 days after your statement is available, you may be liable for subsequent unauthorized use by the same wrongdoer. If you fail to report within 60 days, you may also be precluded from asserting the unauthorized use or other error against us. Your statement is deemed “available” when made available in paper or electronic form. Your deposit agreement or Related Agreements may set shorter reporting requirements, such as for ACH services.

---

**FAIR CREDIT REPORTING ACT**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

---

©2021 SVB Financial Group. All rights reserved. Silicon Valley Bank is a member of the FDIC and the Federal Reserve System. Silicon Valley Bank is the California bank subsidiary of SVB Financial Group (Nasdaq: SIVB). SVB, SVB FINANCIAL GROUP, SILICON VALLEY BANK, MAKE NEXT HAPPEN NOW and the chevron device are trademarks of SVB Financial Group, used under license. Rev. 01/06/2021

Silicon Valley Bank
3003 Tasman Drive
Santa Clara, CA 95054

# March 2022



ADDRESS SERVICE REQUESTED

>067732 8398255 0001 092196 10Z

BYJU'S ALPHA, INC
3160 DE LA CRUZ BLVD
SUITE 204
SANTA CLARA CA 95054

## Managing Your Accounts

| | |
|---|---|
| **Phone:** | (408) 654-4636 |
| **Toll-Free:** | (800) 774-7390 |
| **Email:** | clientsupport@svb.com |
| **Online:** | www.svb.com |

## Summary of Accounts

| Account Type | Account Number | Ending Balance |
|---|---|---|
| Analysis Checking | XXXXXX5876 | $288,000.00 |
| **Total Balance** | | **$288,000.00** |

## Analysis Checking - XXXXXX5876

### Account Summary

| Date | Description | |
|---|---|---|
| **03/01/2022** | **Beginning Balance** | **$288,000.00** |
| **03/31/2022** | **Ending Balance** | **$288,000.00** |
| | Total debits this period | $0.00 |
| | Total credits this period | $0.00 |
| | Service Charge | $0.00 |

### Account Activity

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 03/01/2022 | Beginning Balance | | | $288,000.00 |
| | No activity this statement period | | | |
| 03/31/2022 | Ending Balance | | | $288,000.00 |

67732 8398255 178039 356077 0001/0001

**CHECKS OUTSTANDING**

| DATE OR # | AMOUNT | | DATE OR # | AMOUNT | | DATE OR # | AMOUNT | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

BALANCE should agree with your checkbook balance after deducting charges and adding credits not shown in your checkbook but included on this statement as follows:
Interest-ADD Overdraft-DEDUCT Automatic Payment-DEDUCT Automatic Advance-ADD Service Charge-DEDUCT

**CHECKBOOK RECONCILIATION**

| | | |
|---|---|---|
| ENTER BALANCE THIS STATEMENT | $ | |
| ADD<br>RECENT DEPOSITS (NOT CREDITED ON THIS STATEMENT) | $ | |
| SUBTOTAL | $ | |
| SUBTRACT TOTAL ITEMS OUTSTANDING | $ | |
| **BALANCE** | $ | |

PLEASE REPORT ANY ERRORS OR OMISSIONS PROMPTLY TO US. ERRORS OR OMISSIONS THAT ARE REPORTED WITHIN THE FIRST 30 DAYS FROM THE DATE OF THE LAST STATEMENT CYCLE ARE USUALLY RESOLVED MUCH MORE QUICKLY THAN DATED REQUESTS. As a fraud prevention measure, you need to review your statements and report unauthorized use or errors to us, as explained in more detail below.

If your checkbook and statement do not balance have you:

- ☐ Accounted for bank charges?
- ☐ Verified additions and subtractions in your checkbook?
- ☐ Compared canceled checks to check stub?
- ☐ Compared deposit amounts on statement to your checkbook?

Any charges for imprinted checks include state sales tax computed at the current rate, when applicable. You can call (800) 774-7390 to request an item or substitute check, or a legible copy. We will without charge provide at least two items (or substitute checks or legible copies) upon request, with respect to each statement.

---

**IN CASE OF ERRORS OR QUESTIONS CONCERNING YOUR ELECTRONIC TRANSFERS**
**(For Consumer Clients)**

Telephone Silicon Valley Bank at (800) 774-7390 or write us at: Silicon Valley Bank, Attn: Client Services, 3003 Tasman Drive, Santa Clara, CA 95054, as soon as you can, if you think your statement or your receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe this is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

For questions about preauthorized transfers, please contact us at (800) 774-7390.

---

**IN CASE OF UNAUTHORIZED USE OF YOUR CHECKS OR ACCOUNTS**

You agree to review your statement and to report unauthorized use (checks or other charges that are forged, altered or other unauthorized use) or error immediately. Your deposit agreement sets specific times within which you must report unauthorized use or errors to us. In summary (and subject to special rules that may apply to consumers), if you fail to report unauthorized use or errors to us within 30 days after your statement is available, you may be liable for subsequent unauthorized use by the same wrongdoer. If you fail to report within 60 days, you may also be precluded from asserting the unauthorized use or other error against us. Your statement is deemed “available” when made available in paper or electronic form. Your deposit agreement or Related Agreements may set shorter reporting requirements, such as for ACH services.

---

**FAIR CREDIT REPORTING ACT**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

---

©2021 SVB Financial Group. All rights reserved. Silicon Valley Bank is a member of the FDIC and the Federal Reserve System. Silicon Valley Bank is the California bank subsidiary of SVB Financial Group (Nasdaq: SIVB). SVB, SVB FINANCIAL GROUP, SILICON VALLEY BANK, MAKE NEXT HAPPEN NOW and the chevron device are trademarks of SVB Financial Group, used under license. Rev. 01/06/2021

Silicon Valley Bank
3003 Tasman Drive
Santa Clara, CA 95054

ADDRESS SERVICE REQUESTED

>069750 8718249 0001 092196 10Z

BYJU'S ALPHA, INC
3160 DE LA CRUZ BLVD
SUITE 204
SANTA CLARA CA 95054

## April 2022

*Reporting Activity 04/01 - 04/30* *Page 1 of 2*

### Managing Your Accounts

**Phone:** (408) 654-4636
**Toll-Free:** (800) 774-7390
**Email:** clientsupport@svb.com
**Online:** www.svb.com

### Summary of Accounts

| Account Type | Account Number | Ending Balance |
|---|---|---|
| Analysis Checking | XXXXXX5876 | $288,000.00 |
| **Total Balance** | | **$288,000.00** |

## Analysis Checking - XXXXXX5876

### Account Summary

| Date | Description | |
|---|---|---|
| **04/01/2022** | **Beginning Balance** | **$288,000.00** |
| **04/30/2022** | **Ending Balance** | **$288,000.00** |
| | Total debits this period | $0.00 |
| | Total credits this period | $0.00 |
| | Service Charge | $0.00 |

### Account Activity

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 04/01/2022 | Beginning Balance | | | $288,000.00 |
| | No activity this statement period | | | |
| 04/30/2022 | Ending Balance | | | $288,000.00 |

69750 8718249 175974 351947 0001/0001

Member FDIC

ALL SVB AUDIT CONFIRMATION REQUESTS SHOULD BE SUBMITTED TO CAPITAL CONFIRMATION WWW.CONFIRMATION.COM

**CHECKS OUTSTANDING**

| DATE OR # | AMOUNT | | DATE OR # | AMOUNT | | DATE OR # | AMOUNT | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

BALANCE should agree with your checkbook balance after deducting charges and adding credits not shown in your checkbook but included on this statement as follows:
Interest-ADD Overdraft-DEDUCT Automatic Payment-DEDUCT Automatic Advance-ADD Service Charge-DEDUCT

**CHECKBOOK RECONCILIATION**

| | | |
|---|---|---|
| ENTER BALANCE THIS STATEMENT | $ | |
| ADD<br>RECENT DEPOSITS (NOT CREDITED ON THIS STATEMENT) | $ | |
| SUBTOTAL | $ | |
| SUBTRACT TOTAL ITEMS OUTSTANDING | $ | |
| **BALANCE** | $ | |

PLEASE REPORT ANY ERRORS OR OMISSIONS PROMPTLY TO US. ERRORS OR OMISSIONS THAT ARE REPORTED WITHIN THE FIRST 30 DAYS FROM THE DATE OF THE LAST STATEMENT CYCLE ARE USUALLY RESOLVED MUCH MORE QUICKLY THAN DATED REQUESTS. As a fraud prevention measure, you need to review your statements and report unauthorized use or errors to us, as explained in more detail below.

If your checkbook and statement do not balance have you:

☐ Accounted for bank charges? ☐ Verified additions and subtractions in your checkbook? ☐ Compared canceled checks to check stub? ☐ Compared deposit amounts on statement to your checkbook?

Any charges for imprinted checks include state sales tax computed at the current rate, when applicable. You can call (800) 774-7390 to request an item or substitute check, or a legible copy. We will without charge provide at least two items (or substitute checks or legible copies) upon request, with respect to each statement.

---

**IN CASE OF ERRORS OR QUESTIONS CONCERNING YOUR ELECTRONIC TRANSFERS**
**(For Consumer Clients)**

Telephone Silicon Valley Bank at (800) 774-7390 or write us at: Silicon Valley Bank, Attn: Client Services, 3003 Tasman Drive, Santa Clara, CA 95054, as soon as you can, if you think your statement or your receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe this is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

For questions about preauthorized transfers, please contact us at (800) 774-7390.

---

**IN CASE OF UNAUTHORIZED USE OF YOUR CHECKS OR ACCOUNTS**

You agree to review your statement and to report unauthorized use (checks or other charges that are forged, altered or other unauthorized use) or error immediately. Your deposit agreement sets specific times within which you must report unauthorized use or errors to us. In summary (and subject to special rules that may apply to consumers), if you fail to report unauthorized use or errors to us within 30 days after your statement is available, you may be liable for subsequent unauthorized use by the same wrongdoer. If you fail to report within 60 days, you may also be precluded from asserting the unauthorized use or other error against us. Your statement is deemed “available” when made available in paper or electronic form. Your deposit agreement or Related Agreements may set shorter reporting requirements, such as for ACH services.

---

**FAIR CREDIT REPORTING ACT**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

---

©2021 SVB Financial Group. All rights reserved. Silicon Valley Bank is a member of the FDIC and the Federal Reserve System. Silicon Valley Bank is the California bank subsidiary of SVB Financial Group (Nasdaq: SIVB). SVB, SVB FINANCIAL GROUP, SILICON VALLEY BANK, MAKE NEXT HAPPEN NOW and the chevron device are trademarks of SVB Financial Group, used under license. Rev. 01/06/2021

svb Silicon Valley Bank
3003 Tasman Drive
Santa Clara, CA 95054

ADDRESS SERVICE REQUESTED

>008036 2223189 0001 092196 10Z
BYJU'S ALPHA, INC
3160 DE LA CRUZ BLVD
SUITE 204
SANTA CLARA CA 95054

# May 2022

*Reporting Activity 05/01 - 05/31* 

## *Managing Your Accounts*

| | |
|---|---|
| **Phone:** | (408) 654-4636 |
| **Toll-Free:** | (800) 774-7390 |
| **Email:** | clientsupport@svb.com |
| **Online:** | www.svb.com |

## *Summary of Accounts*

| Account Type | Account Number | Ending Balance |
|---|---|---|
| Analysis Checking | XXXXXX5876 | $1,036,168.00 |
| **Total Balance** | | **$1,036,168.00** |

# Analysis Checking - XXXXXX5876

### Account Summary

| Date | Description | |
|---|---|---|
| **05/01/2022** | **Beginning Balance** | **$288,000.00** |
| **05/31/2022** | **Ending Balance** | **$1,036,168.00** |
| | Total debits this period | $251,832.00 |
| | Total credits this period | $1,000,000.00 |
| | Service Charge | $0.00 |

### Account Activity

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 05/01/2022 | Beginning Balance | | | $288,000.00 |
| 05/09/2022 | WIRE IN 220509B1QGC06C005905 202212911011;ORG BYJU'S ALPHA, INC.;OBI WITHIN CO- CONTRA FU | $0.00 | $1,000,000.00 | $1,288,000.00 |
| 05/09/2022 | WIRE OUT 221291105600 202212911056;BNF CUTTING EDGE SPORTS FZ-LLC;OBI TEST TRANSAC | -$100.00 | $0.00 | $1,287,900.00 |
| 05/19/2022 | JINO JOSEPH & AS SALE BYJUS ALPHA INC | -$1,000.00 | $0.00 | $1,286,900.00 |
| 05/25/2022 | WIRE OUT 221450910800 202214509108;BNF CUTTING EDGE SPORTS FZ-LLC;OBI ADVANCE FIFA | -$250,732.00 | $0.00 | $1,036,168.00 |
| 05/31/2022 | Ending Balance | | | $1,036,168.00 |

08036 2223189 013052 024103 0001/0001

EQUAL HOUSING LENDER Member FDIC

ALL SVB AUDIT CONFIRMATION REQUESTS SHOULD BE SUBMITTED TO CAPITAL CONFIRMATION WWW.CONFIRMATION.COM

**CHECKS OUTSTANDING**

| DATE OR # | AMOUNT | | DATE OR # | AMOUNT | | DATE OR # | AMOUNT | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

BALANCE should agree with your checkbook balance after deducting charges and adding credits not shown in your checkbook but included on this statement as follows:
Interest-ADD Overdraft-DEDUCT Automatic Payment-DEDUCT Automatic Advance-ADD Service Charge-DEDUCT

**CHECKBOOK RECONCILIATION**

| | | |
|---|---|---|
| ENTER BALANCE THIS STATEMENT | $ | |
| ADD<br>RECENT DEPOSITS (NOT CREDITED ON THIS STATEMENT) | $ | |
| SUBTOTAL | $ | |
| SUBTRACT TOTAL ITEMS OUTSTANDING | $ | |
| **BALANCE** | $ | |

PLEASE REPORT ANY ERRORS OR OMISSIONS PROMPTLY TO US. ERRORS OR OMISSIONS THAT ARE REPORTED WITHIN THE FIRST 30 DAYS FROM THE DATE OF THE LAST STATEMENT CYCLE ARE USUALLY RESOLVED MUCH MORE QUICKLY THAN DATED REQUESTS. As a fraud prevention measure, you need to review your statements and report unauthorized use or errors to us, as explained in more detail below.

If your checkbook and statement do not balance have you:

- ☐ Accounted for bank charges?
- ☐ Verified additions and subtractions in your checkbook?
- ☐ Compared canceled checks to check stub?
- ☐ Compared deposit amounts on statement to your checkbook?

Any charges for imprinted checks include state sales tax computed at the current rate, when applicable. You can call (800) 774-7390 to request an item or substitute check, or a legible copy. We will without charge provide at least two items (or substitute checks or legible copies) upon request, with respect to each statement.

---

**IN CASE OF ERRORS OR QUESTIONS CONCERNING YOUR ELECTRONIC TRANSFERS**
**(For Consumer Clients)**

Telephone Silicon Valley Bank at (800) 774-7390 or write us at: Silicon Valley Bank, Attn: Client Services, 3003 Tasman Drive, Santa Clara, CA 95054, as soon as you can, if you think your statement or your receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe this is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

For questions about preauthorized transfers, please contact us at (800) 774-7390.

---

**IN CASE OF UNAUTHORIZED USE OF YOUR CHECKS OR ACCOUNTS**

You agree to review your statement and to report unauthorized use (checks or other charges that are forged, altered or other unauthorized use) or error immediately. Your deposit agreement sets specific times within which you must report unauthorized use or errors to us. In summary (and subject to special rules that may apply to consumers), if you fail to report unauthorized use or errors to us within 30 days after your statement is available, you may be liable for subsequent unauthorized use by the same wrongdoer. If you fail to report within 60 days, you may also be precluded from asserting the unauthorized use or other error against us. Your statement is deemed “available” when made available in paper or electronic form. Your deposit agreement or Related Agreements may set shorter reporting requirements, such as for ACH services.

---

**FAIR CREDIT REPORTING ACT**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

---

©2021 SVB Financial Group. All rights reserved. Silicon Valley Bank is a member of the FDIC and the Federal Reserve System. Silicon Valley Bank is the California bank subsidiary of SVB Financial Group (Nasdaq: SIVB). SVB, SVB FINANCIAL GROUP, SILICON VALLEY BANK, MAKE NEXT HAPPEN NOW and the chevron device are trademarks of SVB Financial Group, used under license. Rev. 01/06/2021

Silicon Valley Bank

3003 Tasman Drive, Santa Clara, CA 95054

ADDRESS SERVICE REQUESTED

>009401 2576018 0001 092196 10Z

BYJU'S ALPHA, INC
3160 DE LA CRUZ BLVD
SUITE 204
SANTA CLARA CA 95054

# June 2022

*Reporting Activity 06/01 - 06/30*



## *Managing Your Accounts*

| | |
|---|---|
| **Phone:** | (408) 654-4636 |
| **Toll-Free:** | (800) 774-7390 |
| **Email:** | clientsupport@svb.com |
| **Online:** | www.svb.com |

## *Summary of Accounts*

| Account Type | Account Number | Ending Balance |
|---|---|---|
| Analysis Checking | XXXXXX5876 | $868,968.00 |
| **Total Balance** | | **$868,968.00** |

## Analysis Checking - XXXXXX5876

### Account Summary

| Date | Description | |
|---|---|---|
| **06/01/2022** | **Beginning Balance** | **$1,036,168.00** |
| **06/30/2022** | **Ending Balance** | **$868,968.00** |
| | Total debits this period | $167,200.00 |
| | Total credits this period | $0.00 |
| | Service Charge | $0.00 |

**Silicon Valley Bank has made important changes to our Deposit Agreement and Disclosure Statement ("Deposit Agreement") with you, which will be *effective August 1, 2022 ("Effective Date")*.** Please review the attached overview of changes and visit www.svb.com/pdf/business-dads for the revised Deposit Agreement. No action is required. Your continued use or maintenance of your account(s), product(s) and service(s) with us on and after the Effective Date will constitute your agreement to the terms and conditions of the revised Deposit Agreement.

### Account Activity

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 06/01/2022 | Beginning Balance | | | $1,036,168.00 |
| 06/29/2022 | WIRE OUT 221801345700 202218013457;BNF CUTTING EDGE SPORTS FZ-LLC;OBI FIFA WORLD C | -$167,200.00 | $0.00 | $868,968.00 |
| 06/30/2022 | Ending Balance | | | $868,968.00 |

09401 2576018 028977 057953 0001/0002

**CHECKS OUTSTANDING**

| DATE OR # | AMOUNT | | DATE OR # | AMOUNT | | DATE OR # | AMOUNT | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

BALANCE should agree with your checkbook balance after deducting charges and adding credits not shown in your checkbook but included on this statement as follows:
Interest-ADD Overdraft-DEDUCT Automatic Payment-DEDUCT Automatic Advance-ADD Service Charge-DEDUCT

**CHECKBOOK RECONCILIATION**

| | | |
|---|---|---|
| ENTER BALANCE THIS STATEMENT | $ | |
| ADD<br>RECENT DEPOSITS (NOT CREDITED ON THIS STATEMENT) | $ | |
| SUBTOTAL | $ | |
| SUBTRACT TOTAL ITEMS OUTSTANDING | $ | |
| **BALANCE** | $ | |

PLEASE REPORT ANY ERRORS OR OMISSIONS PROMPTLY TO US. ERRORS OR OMISSIONS THAT ARE REPORTED WITHIN THE FIRST 30 DAYS FROM THE DATE OF THE LAST STATEMENT CYCLE ARE USUALLY RESOLVED MUCH MORE QUICKLY THAN DATED REQUESTS. As a fraud prevention measure, you need to review your statements and report unauthorized use or errors to us, as explained in more detail below.

If your checkbook and statement do not balance have you:

- ☐ Accounted for bank charges?
- ☐ Verified additions and subtractions in your checkbook?
- ☐ Compared canceled checks to check stub?
- ☐ Compared deposit amounts on statement to your checkbook?

Any charges for imprinted checks include state sales tax computed at the current rate, when applicable. You can call (800) 774-7390 to request an item or substitute check, or a legible copy. We will without charge provide at least two items (or substitute checks or legible copies) upon request, with respect to each statement.

---

**IN CASE OF ERRORS OR QUESTIONS CONCERNING YOUR ELECTRONIC TRANSFERS**
**(For Consumer Clients)**

Telephone Silicon Valley Bank at (800) 774-7390 or write us at: Silicon Valley Bank, Attn: Client Services, 3003 Tasman Drive, Santa Clara, CA 95054, as soon as you can, if you think your statement or your receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe this is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

For questions about preauthorized transfers, please contact us at (800) 774-7390.

---

**IN CASE OF UNAUTHORIZED USE OF YOUR CHECKS OR ACCOUNTS**

You agree to review your statement and to report unauthorized use (checks or other charges that are forged, altered or other unauthorized use) or error immediately. Your deposit agreement sets specific times within which you must report unauthorized use or errors to us. In summary (and subject to special rules that may apply to consumers), if you fail to report unauthorized use or errors to us within 30 days after your statement is available, you may be liable for subsequent unauthorized use by the same wrongdoer. If you fail to report within 60 days, you may also be precluded from asserting the unauthorized use or other error against us. Your statement is deemed “available” when made available in paper or electronic form. Your deposit agreement or Related Agreements may set shorter reporting requirements, such as for ACH services.

---

**FAIR CREDIT REPORTING ACT**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

---

©2021 SVB Financial Group. All rights reserved. Silicon Valley Bank is a member of the FDIC and the Federal Reserve System. Silicon Valley Bank is the California bank subsidiary of SVB Financial Group (Nasdaq: SIVB). SVB, SVB FINANCIAL GROUP, SILICON VALLEY BANK, MAKE NEXT HAPPEN NOW and the chevron device are trademarks of SVB Financial Group, used under license. Rev. 01/06/2021

# Change in Terms Notice Regarding your Deposit Agreement and Disclosure Statement with Silicon Valley Bank

We have made important updates to your Deposit Agreement and Disclosure Statement, which will be effective August 1, 2022. Below is an overview of what's changing. To learn more please visit www.svb.com/pdf/business-dads to access the revised agreement.

Your continued use or maintenance of your account(s), product(s) and service(s) with us on and after the above effective date constitutes your agreement to the terms and conditions of the revised Deposit Agreement. If you have any questions regarding this notice or the information contained within the Deposit Agreement, please contact your Relationship Team.

## Overview of Changes

**DEPOSIT AGREEMENT AND DISCLOSURE STATEMENT – BUSINESS ACCOUNTS**

- We added terms for the Overdraft Program. **Section 4n**
- We added terms for the Zero Balance Account service. **Section 4o**
- We removed the products and services that we no longer offer:
  - Reverse Positive Pay Service (previously **Section 9c**)
  - ACH Authorization Rules and ACH Reverse Positive Pay (previously **Section 9e)**
  - Repetitive FX Wire requests (previously **Section 12s)**
  - IOLTAs (previously **Section 3e)**
- We added a new section for Real Time Payments (RTP) Receipt services. **Section 12**
- We updated the email address and mailing address for the Client Support team. **Section 13c&d**

09401 2576018 028978 057955 0002/0002

© 2022 SVB Financial Group. All rights reserved. Silicon Valley Bank is a member of the FDIC and the Federal Reserve System. Silicon Valley Bank is the California bank subsidiary of SVB Financial Group (Nasdaq: SIVB). SVB, SVB FINANCIAL GROUP, SILICON VALLEY BANK, MAKE NEXT HAPPEN NOW and the chevron device are trademarks of SVB Financial Group, used under license.

SVB Confidential

THIS PAGE LEFT INTENTIONALLY BLANK

svb Silicon Valley Bank

3003 Tasman Drive, Santa Clara, CA 95054

ADDRESS SERVICE REQUESTED

# July 2022

*Reporting Activity 07/01 - 07/31* *Page 1 of 4*

>010497 2906262 0001 092196 10Z

BYJU'S ALPHA, INC
3160 DE LA CRUZ BLVD
SUITE 204
SANTA CLARA CA 95054

## Managing Your Accounts

**Phone:** (408) 654-4636

**Toll-Free:** (800) 774-7390

**Email:** clientsupport@svb.com

**Online:** www.svb.com

## Summary of Accounts

| Account Type | Account Number | Ending Balance |
|---|---|---|
| Analysis Checking | XXXXXX5876 | $5,868,868.00 |
| **Total Balance** | | **$5,868,868.00** |

# Analysis Checking - XXXXXX5876

### Account Summary

| Date | Description | |
|---|---|---|
| **07/01/2022** | **Beginning Balance** | **$868,968.00** |
| **07/31/2022** | **Ending Balance** | **$5,868,868.00** |
| | Total debits this period | $215,000,100.00 |
| | Total credits this period | $220,000,000.00 |
| | Service Charge | $0.00 |

### Account Activity

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 07/01/2022 | Beginning Balance | | | $868,968.00 |
| 07/07/2022 | WIRE IN 220707B1QGC01C005567 202218818850;ORG BYJU'S ALPHA, INC.;OBI WITHIN CO- CONTRA;RE | $0.00 | $200,000,000.00 | $200,868,968.00 |
| 07/12/2022 | WIRE OUT 220712L1B77D1C004448 202219320367;BNF CAMSHAFT CAPI TAL FUND LP | -$100.00 | $0.00 | $200,868,868.00 |
| 07/13/2022 | WIRE IN 220713B1QGC06C010419 202219424261;ORG BYJU'S ALPHA, INC.;OBI WITHIN CO- CONTRA;RE | $0.00 | $20,000,000.00 | $220,868,868.00 |
| 07/13/2022 | WIRE OUT 220713L1B77D1C007662 202219425645;BNF CAMSHAFT CAPI TAL FUND LP | -$15,000,000.00 | $0.00 | $205,868,868.00 |

10497 2906262 017564 035127 0001/0002

**CHECKS OUTSTANDING**

| DATE OR # | AMOUNT | | DATE OR # | AMOUNT | | DATE OR # | AMOUNT | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

BALANCE should agree with your checkbook balance after deducting charges and adding credits not shown in your checkbook but included on this statement as follows:
Interest-ADD Overdraft-DEDUCT Automatic Payment-DEDUCT Automatic Advance-ADD Service Charge-DEDUCT

**CHECKBOOK RECONCILIATION**

| | | |
|---|---|---|
| ENTER BALANCE THIS STATEMENT | $ | |
| ADD RECENT DEPOSITS (NOT CREDITED ON THIS STATEMENT) | $ | |
| SUBTOTAL | $ | |
| SUBTRACT TOTAL ITEMS OUTSTANDING | $ | |
| **BALANCE** | $ | |

PLEASE REPORT ANY ERRORS OR OMISSIONS PROMPTLY TO US. ERRORS OR OMISSIONS THAT ARE REPORTED WITHIN THE FIRST 30 DAYS FROM THE DATE OF THE LAST STATEMENT CYCLE ARE USUALLY RESOLVED MUCH MORE QUICKLY THAN DATED REQUESTS. As a fraud prevention measure, you need to review your statements and report unauthorized use or errors to us, as explained in more detail below.

If your checkbook and statement do not balance have you:

- ☐ Accounted for bank charges?
- ☐ Verified additions and subtractions in your checkbook?
- ☐ Compared canceled checks to check stub?
- ☐ Compared deposit amounts on statement to your checkbook?

Any charges for imprinted checks include state sales tax computed at the current rate, when applicable. You can call (800) 774-7390 to request an item or substitute check, or a legible copy. We will without charge provide at least two items (or substitute checks or legible copies) upon request, with respect to each statement.

---

**IN CASE OF ERRORS OR QUESTIONS CONCERNING YOUR ELECTRONIC TRANSFERS**
**(For Consumer Clients)**

Telephone Silicon Valley Bank at (800) 774-7390 or write us at: Silicon Valley Bank, Attn: Client Services, 3003 Tasman Drive, Santa Clara, CA 95054, as soon as you can, if you think your statement or your receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe this is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

For questions about preauthorized transfers, please contact us at (800) 774-7390.

---

**IN CASE OF UNAUTHORIZED USE OF YOUR CHECKS OR ACCOUNTS**

You agree to review your statement and to report unauthorized use (checks or other charges that are forged, altered or other unauthorized use) or error immediately. Your deposit agreement sets specific times within which you must report unauthorized use or errors to us. In summary (and subject to special rules that may apply to consumers), if you fail to report unauthorized use or errors to us within 30 days after your statement is available, you may be liable for subsequent unauthorized use by the same wrongdoer. If you fail to report within 60 days, you may also be precluded from asserting the unauthorized use or other error against us. Your statement is deemed “available” when made available in paper or electronic form. Your deposit agreement or Related Agreements may set shorter reporting requirements, such as for ACH services.

---

**FAIR CREDIT REPORTING ACT**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

---

©2021 SVB Financial Group. All rights reserved. Silicon Valley Bank is a member of the FDIC and the Federal Reserve System. Silicon Valley Bank is the California bank subsidiary of SVB Financial Group (Nasdaq: SIVB). SVB, SVB FINANCIAL GROUP, SILICON VALLEY BANK, MAKE NEXT HAPPEN NOW and the chevron device are trademarks of SVB Financial Group, used under license. Rev. 01/06/2021

svb Silicon Valley Bank



## Analysis Checking - XXXXXX5876 (continued)

**Account Activity** (continued)

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 07/13/2022 | WIRE OUT 220713L1B77D1C007334 202219424271;BNF CAMSHAFT CAPI TAL FUND LP | -$200,000,000.00 | $0.00 | $5,868,868.00 |
| 07/31/2022 | Ending Balance | | | $5,868,868.00 |

10497 2906262 017565 035129 0002/0002

THIS PAGE LEFT INTENTIONALLY BLANK

Silicon Valley Bank

3003 Tasman Drive, Santa Clara, CA 95054

ADDRESS SERVICE REQUESTED

>011583 4357737 0001 092196 10Z

BYJU'S ALPHA, INC
3160 DE LA CRUZ BLVD
SUITE 204
SANTA CLARA CA 95054

# August 2022

*Reporting Activity 08/01 - 08/31* 

## *Managing Your Accounts*

| | |
|---|---|
| **Phone:** | (408) 654-4636 |
| **Toll-Free:** | (800) 774-7390 |
| **Email:** | clientsupport@svb.com |
| **Online:** | www.svb.com |

## *Summary of Accounts*

| Account Type | Account Number | Ending Balance |
|---|---|---|
| Analysis Checking | XXXXXX5876 | $167,868.00 |
| **Total Balance** | | **$167,868.00** |

## Analysis Checking - XXXXXX5876

### Account Summary

| Date | Description | |
|---|---|---|
| **08/01/2022** | **Beginning Balance** | **$5,868,868.00** |
| **08/31/2022** | **Ending Balance** | **$167,868.00** |
| | Total debits this period | $5,701,000.00 |
| | Total credits this period | $0.00 |
| | Service Charge | $0.00 |

### Account Activity

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 08/01/2022 | Beginning Balance | | | $5,868,868.00 |
| 08/30/2022 | WIRE OUT 220830L1B77D1C001548 202224206831;BNF BYJU'S ALPHA INC | -$1,000.00 | $0.00 | $5,867,868.00 |
| 08/31/2022 | WIRE OUT 220831L1B77D1C003143 202224310878;BNF BYJU'S ALPHA INC | -$5,700,000.00 | $0.00 | $167,868.00 |
| 08/31/2022 | Ending Balance | | | $167,868.00 |

11583 4357737 020755 041509 0001/0001

**CHECKS OUTSTANDING**

| DATE OR # | AMOUNT | | DATE OR # | AMOUNT | | DATE OR # | AMOUNT | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

BALANCE should agree with your checkbook balance after deducting charges and adding credits not shown in your checkbook but included on this statement as follows:
Interest-ADD Overdraft-DEDUCT Automatic Payment-DEDUCT Automatic Advance-ADD Service Charge-DEDUCT

**CHECKBOOK RECONCILIATION**

| | | |
|---|---|---|
| ENTER BALANCE THIS STATEMENT | $ | |
| ADD RECENT DEPOSITS (NOT CREDITED ON THIS STATEMENT) | $ | |
| SUBTOTAL | $ | |
| SUBTRACT TOTAL ITEMS OUTSTANDING | $ | |
| **BALANCE** | $ | |

PLEASE REPORT ANY ERRORS OR OMISSIONS PROMPTLY TO US. ERRORS OR OMISSIONS THAT ARE REPORTED WITHIN THE FIRST 30 DAYS FROM THE DATE OF THE LAST STATEMENT CYCLE ARE USUALLY RESOLVED MUCH MORE QUICKLY THAN DATED REQUESTS. As a fraud prevention measure, you need to review your statements and report unauthorized use or errors to us, as explained in more detail below.

If your checkbook and statement do not balance have you:

- ☐ Accounted for bank charges?
- ☐ Verified additions and subtractions in your checkbook?
- ☐ Compared canceled checks to check stub?
- ☐ Compared deposit amounts on statement to your checkbook?

Any charges for imprinted checks include state sales tax computed at the current rate, when applicable. You can call (800) 774-7390 to request an item or substitute check, or a legible copy. We will without charge provide at least two items (or substitute checks or legible copies) upon request, with respect to each statement.

---

**IN CASE OF ERRORS OR QUESTIONS CONCERNING YOUR ELECTRONIC TRANSFERS**
**(For Consumer Clients)**

Telephone Silicon Valley Bank at (800) 774-7390 or write us at: Silicon Valley Bank, Attn: Client Services, 3003 Tasman Drive, Santa Clara, CA 95054, as soon as you can, if you think your statement or your receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe this is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

For questions about preauthorized transfers, please contact us at (800) 774-7390.

---

**IN CASE OF UNAUTHORIZED USE OF YOUR CHECKS OR ACCOUNTS**

You agree to review your statement and to report unauthorized use (checks or other charges that are forged, altered or other unauthorized use) or error immediately. Your deposit agreement sets specific times within which you must report unauthorized use or errors to us. In summary (and subject to special rules that may apply to consumers), if you fail to report unauthorized use or errors to us within 30 days after your statement is available, you may be liable for subsequent unauthorized use by the same wrongdoer. If you fail to report within 60 days, you may also be precluded from asserting the unauthorized use or other error against us. Your statement is deemed “available” when made available in paper or electronic form. Your deposit agreement or Related Agreements may set shorter reporting requirements, such as for ACH services.

---

**FAIR CREDIT REPORTING ACT**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

---

©2021 SVB Financial Group. All rights reserved. Silicon Valley Bank is a member of the FDIC and the Federal Reserve System. Silicon Valley Bank is the California bank subsidiary of SVB Financial Group (Nasdaq: SIVB). SVB, SVB FINANCIAL GROUP, SILICON VALLEY BANK, MAKE NEXT HAPPEN NOW and the chevron device are trademarks of SVB Financial Group, used under license. Rev. 01/06/2021

svb Silicon Valley Bank

3003 Tasman Drive, Santa Clara, CA 95054

ADDRESS SERVICE REQUESTED

>078246 4789611 0001 092196 10Z

BYJU'S ALPHA, INC
3160 DE LA CRUZ BLVD
SUITE 204
SANTA CLARA CA 95054

# September 2022

*Reporting Activity 09/01 - 09/30* *Page 1 of 2*

## *Managing Your Accounts*

| | |
|---|---|
| **Phone:** | (408) 654-4636 |
| **Toll-Free:** | (800) 774-7390 |
| **Email:** | clientsupport@svb.com |
| **Online:** | www.svb.com |

## *Summary of Accounts*

| Account Type | Account Number | Ending Balance |
|---|---|---|
| Analysis Checking | XXXXXX5876 | $167,868.00 |
| **Total Balance** | | **$167,868.00** |

## Analysis Checking - XXXXXX5876

### Account Summary

| Date | Description | |
|---|---|---|
| **09/01/2022** | **Beginning Balance** | **$167,868.00** |
| **09/30/2022** | **Ending Balance** | **$167,868.00** |
| | Total debits this period | $0.00 |
| | Total credits this period | $0.00 |
| | Service Charge | $0.00 |

### Account Activity

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 09/01/2022 | Beginning Balance | | | $167,868.00 |
| | No activity this statement period | | | |
| 09/30/2022 | Ending Balance | | | $167,868.00 |

78246 4789611 189178 378355 0001/0001

**CHECKS OUTSTANDING**

| DATE OR # | AMOUNT | | DATE OR # | AMOUNT | | DATE OR # | AMOUNT | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

BALANCE should agree with your checkbook balance after deducting charges and adding credits not shown in your checkbook but included on this statement as follows:
Interest-ADD Overdraft-DEDUCT Automatic Payment-DEDUCT Automatic Advance-ADD Service Charge-DEDUCT

**CHECKBOOK RECONCILIATION**

| | | |
|---|---|---|
| ENTER BALANCE THIS STATEMENT | $ | |
| ADD<br>RECENT DEPOSITS (NOT CREDITED ON THIS STATEMENT) | $ | |
| SUBTOTAL | $ | |
| SUBTRACT TOTAL ITEMS OUTSTANDING | $ | |
| **BALANCE** | $ | |

PLEASE REPORT ANY ERRORS OR OMISSIONS PROMPTLY TO US. ERRORS OR OMISSIONS THAT ARE REPORTED WITHIN THE FIRST 30 DAYS FROM THE DATE OF THE LAST STATEMENT CYCLE ARE USUALLY RESOLVED MUCH MORE QUICKLY THAN DATED REQUESTS. As a fraud prevention measure, you need to review your statements and report unauthorized use or errors to us, as explained in more detail below.

If your checkbook and statement do not balance have you:

- ☐ Accounted for bank charges?
- ☐ Verified additions and subtractions in your checkbook?
- ☐ Compared canceled checks to check stub?
- ☐ Compared deposit amounts on statement to your checkbook?

Any charges for imprinted checks include state sales tax computed at the current rate, when applicable. You can call (800) 774-7390 to request an item or substitute check, or a legible copy. We will without charge provide at least two items (or substitute checks or legible copies) upon request, with respect to each statement.

---

**IN CASE OF ERRORS OR QUESTIONS CONCERNING YOUR ELECTRONIC TRANSFERS**
**(For Consumer Clients)**

Telephone Silicon Valley Bank at (800) 774-7390 or write us at: Silicon Valley Bank, Attn: Client Services, 3003 Tasman Drive, Santa Clara, CA 95054, as soon as you can, if you think your statement or your receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe this is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

For questions about preauthorized transfers, please contact us at (800) 774-7390.

---

**IN CASE OF UNAUTHORIZED USE OF YOUR CHECKS OR ACCOUNTS**

You agree to review your statement and to report unauthorized use (checks or other charges that are forged, altered or other unauthorized use) or error immediately. Your deposit agreement sets specific times within which you must report unauthorized use or errors to us. In summary (and subject to special rules that may apply to consumers), if you fail to report unauthorized use or errors to us within 30 days after your statement is available, you may be liable for subsequent unauthorized use by the same wrongdoer. If you fail to report within 60 days, you may also be precluded from asserting the unauthorized use or other error against us. Your statement is deemed “available” when made available in paper or electronic form. Your deposit agreement or Related Agreements may set shorter reporting requirements, such as for ACH services.

---

**FAIR CREDIT REPORTING ACT**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

---

©2021 SVB Financial Group. All rights reserved. Silicon Valley Bank is a member of the FDIC and the Federal Reserve System. Silicon Valley Bank is the California bank subsidiary of SVB Financial Group (Nasdaq: SIVB). SVB, SVB FINANCIAL GROUP, SILICON VALLEY BANK, MAKE NEXT HAPPEN NOW and the chevron device are trademarks of SVB Financial Group, used under license. Rev. 01/06/2021

Silicon Valley Bank

3003 Tasman Drive, Santa Clara, CA 95054

ADDRESS SERVICE REQUESTED

>079553 5204375 0001 092196 10Z

BYJU'S ALPHA, INC
3160 DE LA CRUZ BLVD
SUITE 204
SANTA CLARA CA 95054

# October 2022

*Reporting Activity 10/01 - 10/31*



## Managing Your Accounts

| | |
|---|---|
| **Phone:** | (408) 654-4636 |
| **Toll-Free:** | (800) 774-7390 |
| **Email:** | clientsupport@svb.com |
| **Online:** | www.svb.com |

## Summary of Accounts

| Account Type | Account Number | Ending Balance |
|---|---|---|
| Analysis Checking | XXXXXX5876 | $167,868.00 |
| **Total Balance** | | **$167,868.00** |

## Analysis Checking - XXXXXX5876

### Account Summary

| Date | Description | |
|---|---|---|
| **10/01/2022** | **Beginning Balance** | **$167,868.00** |
| **10/31/2022** | **Ending Balance** | **$167,868.00** |
| | Total debits this period | $0.00 |
| | Total credits this period | $0.00 |
| | Service Charge | $0.00 |

### Account Activity

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 10/01/2022 | Beginning Balance | | | $167,868.00 |
| | No activity this statement period | | | |
| 10/31/2022 | Ending Balance | | | $167,868.00 |

79553 5204375 191832 383663 0001/0001

Member FDIC

EQUAL HOUSING LENDER

ALL SVB AUDIT CONFIRMATION REQUESTS SHOULD BE SUBMITTED TO CAPITAL CONFIRMATION WWW.CONFIRMATION.COM

**CHECKS OUTSTANDING**

| DATE OR # | AMOUNT | | DATE OR # | AMOUNT | | DATE OR # | AMOUNT | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

BALANCE should agree with your checkbook balance after deducting charges and adding credits not shown in your checkbook but included on this statement as follows:
Interest-ADD Overdraft-DEDUCT Automatic Payment-DEDUCT Automatic Advance-ADD Service Charge-DEDUCT

**CHECKBOOK RECONCILIATION**

| | | |
|---|---|---|
| ENTER BALANCE THIS STATEMENT | $ | |
| ADD<br>RECENT DEPOSITS (NOT CREDITED ON THIS STATEMENT) | $ | |
| SUBTOTAL | $ | |
| SUBTRACT TOTAL ITEMS OUTSTANDING | $ | |
| **BALANCE** | $ | |

PLEASE REPORT ANY ERRORS OR OMISSIONS PROMPTLY TO US. ERRORS OR OMISSIONS THAT ARE REPORTED WITHIN THE FIRST 30 DAYS FROM THE DATE OF THE LAST STATEMENT CYCLE ARE USUALLY RESOLVED MUCH MORE QUICKLY THAN DATED REQUESTS. As a fraud prevention measure, you need to review your statements and report unauthorized use or errors to us, as explained in more detail below.

If your checkbook and statement do not balance have you:

- ☐ Accounted for bank charges?
- ☐ Verified additions and subtractions in your checkbook?
- ☐ Compared canceled checks to check stub?
- ☐ Compared deposit amounts on statement to your checkbook?

Any charges for imprinted checks include state sales tax computed at the current rate, when applicable. You can call (800) 774-7390 to request an item or substitute check, or a legible copy. We will without charge provide at least two items (or substitute checks or legible copies) upon request, with respect to each statement.

---

**IN CASE OF ERRORS OR QUESTIONS CONCERNING YOUR ELECTRONIC TRANSFERS**
**(For Consumer Clients)**

Telephone Silicon Valley Bank at (800) 774-7390 or write us at: Silicon Valley Bank, Attn: Client Services, 3003 Tasman Drive, Santa Clara, CA 95054, as soon as you can, if you think your statement or your receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe this is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

For questions about preauthorized transfers, please contact us at (800) 774-7390.

---

**IN CASE OF UNAUTHORIZED USE OF YOUR CHECKS OR ACCOUNTS**

You agree to review your statement and to report unauthorized use (checks or other charges that are forged, altered or other unauthorized use) or error immediately. Your deposit agreement sets specific times within which you must report unauthorized use or errors to us. In summary (and subject to special rules that may apply to consumers), if you fail to report unauthorized use or errors to us within 30 days after your statement is available, you may be liable for subsequent unauthorized use by the same wrongdoer. If you fail to report within 60 days, you may also be precluded from asserting the unauthorized use or other error against us. Your statement is deemed “available” when made available in paper or electronic form. Your deposit agreement or Related Agreements may set shorter reporting requirements, such as for ACH services.

---

**FAIR CREDIT REPORTING ACT**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

---

©2021 SVB Financial Group. All rights reserved. Silicon Valley Bank is a member of the FDIC and the Federal Reserve System. Silicon Valley Bank is the California bank subsidiary of SVB Financial Group (Nasdaq: SIVB). SVB, SVB FINANCIAL GROUP, SILICON VALLEY BANK, MAKE NEXT HAPPEN NOW and the chevron device are trademarks of SVB Financial Group, used under license. Rev. 01/06/2021

Silicon Valley Bank

3003 Tasman Drive, Santa Clara, CA 95054

ADDRESS SERVICE REQUESTED

>015110 5672186 0001 092196 10Z

BYJU'S ALPHA, INC
3160 DE LA CRUZ BLVD
SUITE 204
SANTA CLARA CA 95054

# November 2022

*Reporting Activity 11/01 - 11/30* 

## Managing Your Accounts

**Phone:** (408) 654-4636

**Toll-Free:** (800) 774-7390

**Email:** clientsupport@svb.com

**Online:** www.svb.com

## Summary of Accounts

| Account Type | Account Number | Ending Balance |
|---|---|---|
| Analysis Checking | XXXXXX5876 | $659,403.00 |
| **Total Balance** | | **$659,403.00** |

# Analysis Checking - XXXXXX5876

### Account Summary

| Date | Description | |
|---|---|---|
| **11/01/2022** | **Beginning Balance** | **$167,868.00** |
| **11/30/2022** | **Ending Balance** | **$659,403.00** |
| | Total debits this period | $2,898,465.00 |
| | Total credits this period | $3,390,000.00 |
| | Service Charge | $0.00 |

### Account Activity

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 11/01/2022 | Beginning Balance | | | $167,868.00 |
| 11/09/2022 | FRANCHISE TAX BO PAYMENTS 93872864 PM BYJU'S A | -$900.00 | $0.00 | $166,968.00 |
| 11/16/2022 | WIRE IN 221116B1QGC06C002680 202232009353;ORG BYJU'S ALPHA, INC.;OBI WITHIN CO- CONTRA;RE | $0.00 | $390,000.00 | $556,968.00 |
| 11/16/2022 | WIRE OUT 223201609200 202232016092;BNF CUTTING EDGE SPORTS FZ-LLC;OBI INVOICE NO.F | -$397,565.00 | $0.00 | $159,403.00 |
| 11/23/2022 | WIRE IN 221123G1B76E2C000147 202232709354;ORG BYJU S PTE. L TD.;OBI ADVANCE/LOAN;REF 0016O | $0.00 | $3,000,000.00 | $3,159,403.00 |

15110 5672186 027747 055493 0001/0002

**CHECKS OUTSTANDING**

| DATE OR # | AMOUNT | | DATE OR # | AMOUNT | | DATE OR # | AMOUNT | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

BALANCE should agree with your checkbook balance after deducting charges and adding credits not shown in your checkbook but included on this statement as follows:
Interest-ADD Overdraft-DEDUCT Automatic Payment-DEDUCT Automatic Advance-ADD Service Charge-DEDUCT

**CHECKBOOK RECONCILIATION**

| | | |
|---|---|---|
| ENTER BALANCE THIS STATEMENT | $ | |
| ADD<br>RECENT DEPOSITS (NOT CREDITED ON THIS STATEMENT) | $ | |
| SUBTOTAL | $ | |
| SUBTRACT TOTAL ITEMS OUTSTANDING | $ | |
| **BALANCE** | $ | |

PLEASE REPORT ANY ERRORS OR OMISSIONS PROMPTLY TO US. ERRORS OR OMISSIONS THAT ARE REPORTED WITHIN THE FIRST 30 DAYS FROM THE DATE OF THE LAST STATEMENT CYCLE ARE USUALLY RESOLVED MUCH MORE QUICKLY THAN DATED REQUESTS. As a fraud prevention measure, you need to review your statements and report unauthorized use or errors to us, as explained in more detail below.

If your checkbook and statement do not balance have you:

- ☐ Accounted for bank charges?
- ☐ Verified additions and subtractions in your checkbook?
- ☐ Compared canceled checks to check stub?
- ☐ Compared deposit amounts on statement to your checkbook?

Any charges for imprinted checks include state sales tax computed at the current rate, when applicable. You can call (800) 774-7390 to request an item or substitute check, or a legible copy. We will without charge provide at least two items (or substitute checks or legible copies) upon request, with respect to each statement.

---

**IN CASE OF ERRORS OR QUESTIONS CONCERNING YOUR ELECTRONIC TRANSFERS**
**(For Consumer Clients)**

Telephone Silicon Valley Bank at (800) 774-7390 or write us at: Silicon Valley Bank, Attn: Client Services, 3003 Tasman Drive, Santa Clara, CA 95054, as soon as you can, if you think your statement or your receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe this is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

For questions about preauthorized transfers, please contact us at (800) 774-7390.

---

**IN CASE OF UNAUTHORIZED USE OF YOUR CHECKS OR ACCOUNTS**

You agree to review your statement and to report unauthorized use (checks or other charges that are forged, altered or other unauthorized use) or error immediately. Your deposit agreement sets specific times within which you must report unauthorized use or errors to us. In summary (and subject to special rules that may apply to consumers), if you fail to report unauthorized use or errors to us within 30 days after your statement is available, you may be liable for subsequent unauthorized use by the same wrongdoer. If you fail to report within 60 days, you may also be precluded from asserting the unauthorized use or other error against us. Your statement is deemed “available” when made available in paper or electronic form. Your deposit agreement or Related Agreements may set shorter reporting requirements, such as for ACH services.

---

**FAIR CREDIT REPORTING ACT**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

---

©2021 SVB Financial Group. All rights reserved. Silicon Valley Bank is a member of the FDIC and the Federal Reserve System. Silicon Valley Bank is the California bank subsidiary of SVB Financial Group (Nasdaq: SIVB). SVB, SVB FINANCIAL GROUP, SILICON VALLEY BANK, MAKE NEXT HAPPEN NOW and the chevron device are trademarks of SVB Financial Group, used under license. Rev. 01/06/2021

Silicon Valley Bank



## Analysis Checking - XXXXXX5876 (continued)

### Account Activity (continued)

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 11/25/2022 | WIRE OUT 221125L1B77D1C001557 202232910696;BNF BYJU'S ALPHA INC | -$2,500,000.00 | $0.00 | $659,403.00 |
| 11/30/2022 | Ending Balance | | | $659,403.00 |

15110 5672186 027748 055495 0002/0002

THIS PAGE LEFT INTENTIONALLY BLANK

Silicon Valley Bank

3003 Tasman Drive, Santa Clara, CA 95054

ADDRESS SERVICE REQUESTED

>017067 7165072 0001 092196 10Z

BYJU'S ALPHA, INC
3160 DE LA CRUZ BLVD
SUITE 204
SANTA CLARA CA 95054

## December 2022

*Reporting Activity 12/01 - 12/31* *Page 1 of 2*

### Managing Your Accounts

**Phone:** (408) 654-4636
**Toll-Free:** (800) 774-7390
**Email:** clientsupport@svb.com
**Online:** www.svb.com

### Summary of Accounts

| Account Type | Account Number | Ending Balance |
|---|---|---|
| Analysis Checking | XXXXXX5876 | $631,443.00 |
| **Total Balance** | | **$631,443.00** |

## Analysis Checking - XXXXXX5876

### Account Summary

| Date | Description | |
|---|---|---|
| **12/01/2022** | **Beginning Balance** | **$659,403.00** |
| **12/31/2022** | **Ending Balance** | **$631,443.00** |
| | Total debits this period | $27,960.00 |
| | Total credits this period | $0.00 |
| | Service Charge | $0.00 |

### Account Activity

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 12/01/2022 | Beginning Balance | | | $659,403.00 |
| 12/01/2022 | JINO JOSEPH & AS SALE BYJU S ALPHA INC | -$210.00 | $0.00 | $659,193.00 |
| 12/16/2022 | JINO JOSEPH & AS SALE BYJU S ALPHA INC | -$7,700.00 | $0.00 | $651,493.00 |
| 12/19/2022 | WIRE OUT 223530487800 202235304878;BNF TANGIBLE PLAY INC | -$20,000.00 | $0.00 | $631,493.00 |
| 12/27/2022 | ANALYSIS SERVICE CHARGE | -$50.00 | $0.00 | $631,443.00 |
| 12/31/2022 | Ending Balance | | | $631,443.00 |

17067 7165072 031720 063439 0001/0001

| CHECKS OUTSTANDING | | | | | | | | | CHECKBOOK RECONCILIATION | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DATE OR # | AMOUNT | | DATE OR # | AMOUNT | | DATE OR # | AMOUNT | | | | |
| | | | | | | | | | ENTER BALANCE THIS STATEMENT | $ | |
| | | | | | | | | | ADD<br>RECENT DEPOSITS (NOT CREDITED ON THIS STATEMENT) | $ | |
| | | | | | | | | | SUBTOTAL | $ | |
| | | | | | | | | | SUBTRACT TOTAL ITEMS OUTSTANDING | $ | |
| BALANCE should agree with your checkbook balance after deducting charges and adding credits not shown in your checkbook but included on this statement as follows:<br>Interest-ADD Overdraft-DEDUCT Automatic Payment-DEDUCT Automatic Advance-ADD Service Charge-DEDUCT | | | | | | | | | **BALANCE** | $ | |

PLEASE REPORT ANY ERRORS OR OMISSIONS PROMPTLY TO US. ERRORS OR OMISSIONS THAT ARE REPORTED WITHIN THE FIRST 30 DAYS FROM THE DATE OF THE LAST STATEMENT CYCLE ARE USUALLY RESOLVED MUCH MORE QUICKLY THAN DATED REQUESTS. As a fraud prevention measure, you need to review your statements and report unauthorized use or errors to us, as explained in more detail below.

If your checkbook and statement do not balance have you:

☐ Accounted for bank charges? ☐ Verified additions and subtractions in your checkbook? ☐ Compared canceled checks to check stub? ☐ Compared deposit amounts on statement to your checkbook?

Any charges for imprinted checks include state sales tax computed at the current rate, when applicable. You can call (800) 774-7390 to request an item or substitute check, or a legible copy. We will without charge provide at least two items (or substitute checks or legible copies) upon request, with respect to each statement.

---

**IN CASE OF ERRORS OR QUESTIONS CONCERNING YOUR ELECTRONIC TRANSFERS**
**(For Consumer Clients)**

Telephone Silicon Valley Bank at (800) 774-7390 or write us at: Silicon Valley Bank, Attn: Client Services, 3003 Tasman Drive, Santa Clara, CA 95054, as soon as you can, if you think your statement or your receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe this is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

For questions about preauthorized transfers, please contact us at (800) 774-7390.

---

**IN CASE OF UNAUTHORIZED USE OF YOUR CHECKS OR ACCOUNTS**

You agree to review your statement and to report unauthorized use (checks or other charges that are forged, altered or other unauthorized use) or error immediately. Your deposit agreement sets specific times within which you must report unauthorized use or errors to us. In summary (and subject to special rules that may apply to consumers), if you fail to report unauthorized use or errors to us within 30 days after your statement is available, you may be liable for subsequent unauthorized use by the same wrongdoer. If you fail to report within 60 days, you may also be precluded from asserting the unauthorized use or other error against us. Your statement is deemed “available” when made available in paper or electronic form. Your deposit agreement or Related Agreements may set shorter reporting requirements, such as for ACH services.

---

**FAIR CREDIT REPORTING ACT**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

---

©2021 SVB Financial Group. All rights reserved. Silicon Valley Bank is a member of the FDIC and the Federal Reserve System. Silicon Valley Bank is the California bank subsidiary of SVB Financial Group (Nasdaq: SIVB). SVB, SVB FINANCIAL GROUP, SILICON VALLEY BANK, MAKE NEXT HAPPEN NOW and the chevron device are trademarks of SVB Financial Group, used under license. Rev. 01/06/2021

# Exhibit 3.1.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>BYJU's ALPHA, INC.,[1]<br>Debtor. | Chapter 11<br><br>Case No. 24-10140 (JTD) |
| BYJU'S ALPHA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CAMSHAFT CAPITAL FUND, LP, CAMSHAFT CAPITAL ADVISORS, LLC, CAMSHAFT CAPITAL MANAGEMENT, LLC, RIJU RAVINDRAN, INSPILEARN LLC, and THINK AND LEARN PRIVATE LIMITED,<br><br>Defendants. | Adv. Pro. Case No. 24-50013 (JTD)<br><br>**Related Adv. D.I.: 186, 242** |

**DECLARATION OF PIETER VAN TOL**

Pieter Van Tol, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am a partner with the firm of Hogan Lovells US LLP, and this firm is counsel for Defendants Camshaft Capital Fund, LP ("Camshaft Fund"), Camshaft Capital Advisors, LLC ("Camshaft Advisors"), and Camshaft Capital Management, LLC ("Camshaft Management") (collectively, the "Camshaft Defendants") in the above proceeding. I submit this declaration in further opposition to the motion (the "Motion") by Plaintiff BYJU's Alpha, Inc. ("Debtor") and

[1] The Debtor in this Chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: BYJU's Alpha, Inc. (4260). The location of the Debtor's service address for purposes of this Chapter 11 case is: 1007 N. Market St. Ste. G20 452, Wilmington, Delaware 19801.

Intervenor-Plaintiff GLAS Trust Company LLC ("GLAS") (collectively, the "Movants") for sanctions in the form of a default judgment and attorneys' fees and costs.

2. On May 28, 2024, I submitted a declaration in opposition to the Motion (the "May 28 Declaration"). (*See* Adv. D.I. 208). Among other things, the May 28 Declaration attached copies of the Camshaft Defendants' written responses and objections to the Debtor's first and second set of discovery requests (the "First Discovery Requests" and "Second Discovery Requests," respectively), which were served on May 24, 2024 and May 28, 2024. (*See id.* and Exs. O, P, Q, R, and S thereto). On June 2, 2024, I also submitted a declaration in support of the motion to vacate the Contempt Order issued on March 14, 2024 (the "June 2 Declaration"). (*See* Adv. D.I. 231.) The June 2 Declaration attached a copy of the Camshaft Defendants' responses and objections to the Debtor's second set of interrogatories and described the Camshaft Defendants' document productions since May 24, 2024 in response to the first and second requests for production of documents (the "First Document Requests" and "Second Document Requests," respectively). (*See id.*, ¶¶ 4-11.) Given that the relevant information is spread over several documents and needs to be updated to cover the activity since June 2, 2024, I have provided a description of the current state of discovery below.

**I. Parties' Meet and Confer Call on June 5, 2024 and Discussions on Search Parameters**

3. In the June 2 Declaration, I stated as follows:

> Camshaft believes that the production on May 28, 2024, completes its responses to the First Document Requests, which the Debtor has described as "limited" in nature. If the Debtor and/or GLAS have a different view, Camshaft will discuss the issues in good faith because its goal is to comply fully with the First Document Requests.

(*Id.*, ¶ 7.) I made a similar statement with regard to the first set of interrogatories. (*Id.*, ¶ 8.)

4. Such a dialogue began with an email exchange on June 3 and June 4, 2024 between counsel for the Camshaft Defendants and counsel for the Movants. Attached hereto as **Exhibit V** is a true and correct copy of the parties' email exchange.

5. In the June 3-4 email exchange, counsel for the Camshaft Defendants responded to questions about the production in response to the First Document Requests and the Second Document Requests. (*Id.*)[2] I explained that, in the interest of time and given that the First Document Requests did not seek ESI, the Camshaft Defendants had produced documents in PDF format, but we would be following-up with the production of native files. (*Id.*) I also provided the very broad search terms that the Camshaft Defendants would be using to pull the electronic documents (which would then be reviewed using further search terms agreed-upon by the parties). (*Id.*) Finally, I suggested a meet and confer Zoom call on June 5, 2024 (the "June 5 Zoom") so the parties could discuss the various discovery issues and next steps. (*Id.*)

6. In advance of the June 5 Zoom, I participated in a June 4, 2024 Zoom call with one of my litigation support colleagues and William Morton, who is the custodian of the electronic files for the Camshaft Defendants. We watched Mr. Morton run the searches that are described in the June 3-4 email exchange. Those searches, as well as an additional search on another email account, yielded close to 20,000 documents. Those documents were shortly thereafter exported to our document vendor, Epiq, for further review by my firm.

7. Before the June 5 Zoom, I sent counsel for the Movants additional information on the discovery efforts. Annexed hereto as **Exhibit W** is a true and correct copy of a continuation of Ex. V with a June 5, 2024 email at 7:23 am. I also provided evidence of the search terms that

---

[2] The parties discussed both sets of document requests because there is considerable overlap between the two.

Mr. Morton had applied on June 4 to pull the approximately 20,000 documents. Annexed hereto as **Exhibit X** is a true and correct copy of the attachment to the June 5, 2024 email in Ex. W.

8. During the June 5 Zoom, counsel for the parties and Mr. Morton had an extended discussion on discovery issues. Annexed hereto as **Exhibit Y** is a true and correct copy of the transcript for the June 5 Zoom. Counsel for the Movants identified documents that they believed had not been produced. They are as follows:

(a) Documents relating to finders' fees (*id.*, 7-9)

(b) Certain 2022 promissory notes (*id.*, 11-13)

(c) Documents relating to investments following March 2023 transaction (*id.*, 17)

(e) Documents related to March 2023 transfer (*id.*, 25-26)

(f) Financial statements for Camshaft (*id.*, 31-33)

(g) Bank statements showing flow of funds and finders' fees (*id.*, 33)

(h) Documents relating to Camshaft's fees (*id.*, 35-36)

(i) Tax and regulatory filings (*id.*, 37)

(j) Subscription and other agreements relating to February 1, 2024 transfer (*id.*, 42)

9. As an initial matter, the Movants are not correct that all of the above documents are missing from the Camshaft Defendants pre-June 5, 2024 production (or the Apex production). One striking example is item (e) above. During the June 5 Zoom, the Debtor's counsel claimed that they did not have certain Inspilearn-related attachments for a March 31, 2023 email produced at CAMSHAFT0001006-07. (*See id.*, 25:22-26:3.) The Debtor is mistaken.

10. A screenshot of the first page of the March 31, 2023 email is below and it shows eight attachments:




*First*, a similar email dated April 1, 2023 and all eight of the attachments were produced by Apex more than a month ago and they are Bates numbered APEXFUND_00002072-2162. A true and correct copy of the April 1, 2023 email from the Apex production is annexed hereto as **Exhibit Z**. Apex produced native files, with attachments (which are called a "family"), and the documents that the Debtor claims are missing are within the family for the April 1, 2023 email. The Debtor's counsel may have been confused earlier because some of the PDF descriptions in the April 1, 2023 email have original dates of November 21, 2022 (which is consistent with the Camshaft Defendants' statements that discussions regarding the March 2023 transaction began in November 2022). But the attachments themselves quickly dispel any such confusion because the attachments with November 2022 dates in the PDF descriptions are effective March 31, 2023.

*Second*, even though the eight attachments were produced in the Apex production, the Camshaft Defendants produced them again as part of their May 28, 2024 production. They are at the following Bates numbers:

CAMSHAFT0000754-59; CAMSHAFT0000760-65; CAMSHAFT0000768-73; CAMSHAFT0000774-79; CAMSHAFT0000785-90; CAMSHAFT0000791-95; CAMSHAFT0000796-800; CAMSHAFT0000835-883

On June 8, 2024, I sent an email to Movants' counsel informing them that they were mistaken and that the documents have already been produced (twice). A true and correct copy of my June 8, 2024 email is annexed hereto as **Exhibit AA**.

11. There are other examples where the documents listed in Paragraph 8 above were produced by Apex and/or the Camshaft Defendants in their pre-June 5, 2024 productions. Thus, the Camshaft Defendants do not agree that there were deficiencies in the documents produced in response to the First Document Requests (especially given the limited nature of those requests). However, the Camshaft Defendants agreed in good faith to look into the various questions that the Movants raised during the June 5 Zoom, which relate to both the First Document Requests and the Second Document Requests. The Camshaft Defendants' follow-up productions in connection with those questions are discussed below in Section II.

12. On June 5, 2024, after the June 5 Zoom call, we provided proposed search terms to counsel for the Movants (as they had requested). On June 6, 2024, the Debtor's counsel sent us alternative search terms. Annexed hereto as **Exhibit BB** is a true and correct copy of the parties' June 5-6 email exchange. Those terms are acceptable to the Camshaft Defendants; we have run them against the universe of approximately 20,000 documents, and they yielded 11,389 hits. We will be reviewing those documents for responsive native files to be produced.

13. In the June 6 email, the Debtor's counsel posed additional questions on the universe of documents that the Camshaft Defendants had pulled for review. I responded to those queries on June 7, 2024. Annexed hereto as **Exhibit CC** is a true and correct copy of the parties' June 6-7 email exchange.

## II. Follow-Up Productions by Camshaft Defendants

14. On June 6, June 7 and June 10, 2024, the Camshaft Defendants produced documents that were discussed on the June 5 Zoom. Those documents are Bates numbered CAMSHAFT0001307-4330, and they relate to the following areas (among others):

*June 6 (Bates numbers CAMSHAFT0001307-1412)*

- All four finder agreements encompassing both OCI loans
- Camshaft Management promissory notes and subscriptions for 9MM and 6MM, with the side letters
- 2022 Camshaft Fund tax return
- April 2022 (U.S. Bank), May 2022 (U.S. Bank) and July 2022 (J.P. Morgan and Northern Trust) Camshaft Fund bank statements showing movements of money related to initial transfer of Alpha Funds
- May 2022 and July 2022 Camshaft Management bank statements showing finders fees

(Ex. Z (June 6, 2024 email at 10:40 am).)

*June 7 (Bates numbers CAMSHAFT0001413-2873)*

- Camshaft Fund 2022 and 2023 brokerage statements
- Camshaft Advisors 2022 and 2023 brokerage statements
- Bank statements for the Camshaft Defendants for 2022 and 2023

*June 10 (Bates numbers CAMSHAFT0002874-4330)*

- Camshaft Fund 2020 and 2022 regulatory filings

- Apex statements for BYJU's Alpha/Inspilearn and other T&L entities (not related to Alpha Funds or Camshaft LP interest) for 2022 and 2023
- Governance, institutional policies, and related documents for Camshaft Management and Camshaft Advisors
- BYJU's/OCI side pocket related transactions, AML/KYC, and accounting documents
- Camshaft Fund 2023 brokerage statements
- Bank statements for the Camshaft Defendants for 2023 and 2024
- Camshaft Advisors 2023 brokerage statements
- All Apex NAVs from inception (October 2020) through last finalized (September 2023)

15. The documents produced on June 10, 2024 include information on the amount of investments by non-Camshaft, non-BYJU's investors (which was not in previous productions).

16. Again, the Camshaft Defendants do not believe that the May 24 and May 28 productions in response to the First Document Requests were deficient, but they made the follow-up productions described above in good faith and to remove any questions. Also, many of the above documents relate to the Second Document Requests (or there is overlap).

17. The only documents that the Movants identified that the Camshaft Defendants have not yet produced are the subscription agreement and other related documents for the February 1, 2024 transfer. As noted in the accompanying Declaration of William Morton, dated June 10, 2024, the Camshaft Defendants do not have those documents in their possession, custody or control and Mr. Morton does not know if they were in fact executed.

## III. Summary of Document Productions by the Camshaft Defendants Since May 24, 2024

18. For the Court's convenience, I have summarized below the Camshaft Defendants' production since May 24, 2024:

| Date | Bates Numbers | Responsive to Which Document Requests? | Comments |
|---|---|---|---|
| 5/24/24 | CAMSHAFT0000124-269 | First Document Requests | |
| 5/28/24 | CAMSHAFT0000270-651 | First Document Requests | |
| 5/28/24 | CAMSHAFT0000652-1306 | Second Document Requests | |
| 6/6/24 | CAMSHAFT0001307-1412 | Both Document Requests | *See* Paragraph 14 above |
| 6/7/24 | CAMSHAFT0001413-2873 | Both Document Requests | *See* Paragraph 14 above |
| 6/10/24 | CAMSHAFT0002874-4330 | Both Document Requests | *See* Paragraph 14 above |

19. As noted above, the Camshaft Defendants are reviewing another approximately 11,400 documents in native form and will be producing them as soon as possible.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 10, 2024
New York, New York

*/s/ Pieter Van Tol*
Pieter Van Tol



\\4144-4635-7328 v2

# Exhibit 3.2.

# Subscription Agreement

*for*

## Camshaft Capital Fund, LP
## A Delaware Limited Partnership

**Camshaft Capital Fund, LP**
175 SW 7th Street
Miami, FL 33130

Ladies and Gentlemen:

The undersigned (the "**Purchaser**" or the "**Subscriber**" as the context requires) understands that Camshaft Capital Fund, LP, a limited partnership organized under the laws of the state of Delaware Fund Administrated by Apex Fund Services (Canada) Ltd, (the "Partnership"), is offering for purchase to the undersigned certain Limited Partnership Interests of the Partnership (the "**Securities**") in this private placement offering with a minimum amount of $500,000.00 (the "**Offering**"). ***The Partnership reserves the right to increase or decrease the total amount sought under this offering or to terminate this Offering at any time and without notice.*** The undersigned further understands that this offering is being made without registration of the Securities under the Securities Act of 1933, as amended (the "**Securities Act**"), or any securities law of any state of the United States or of any other jurisdiction and is being offered pursuant to an exemption thereof. The Partnership also reserves the right to hold one or more subsequent offerings following this Offering.

1. Subscription; Investor Suitability Questionnaire. Subject to the terms and conditions hereof and under this Offering the undersigned hereby irrevocably subscribes to and for the specific Securities set forth on the Signature Page hereto for the aggregate purchase price set forth on the Signature Page hereto, which is payable as described in **Section** 4 hereof (the "**Subscription**"). The undersigned acknowledges that the Securities will be subject to restrictions on transfer as set forth in this subscription agreement (the "**Subscription Agreement**"), the Partnership's Limited Partnership Agreement, as the same may be amended from time to time (the "**Partnership Agreement**") , and under applicable law. Further, the undersigned hereby agrees and acknowledges that it must complete the attached "**Investor Suitability Questionnaire**" in order for Partnership to accept the subscription hereunder.

2. Acceptance of Subscription and Issuance of Securities. It is understood and agreed that the Partnership shall have the sole right, at its complete discretion, to accept or reject this subscription, in whole or in part, for any reason and that the same shall be deemed to be acceptable by the Partnership ***only if***: 1) it is signed by the undersigned (or a duly authorized representative of the undersigned) and delivered to the Partnership at or before the Closing (defined below); 2) the same is counter-signatured by the General Partner; and 3) the undersigned pays the subscription price

indicated. Upon satisfaction of the foregoing conditions, the undersigned shall become a Limited Partner of the Partnership and agrees to be bound by all of the terms and conditions of the Partnership Agreement.

3. The Closing. Beginning as of the Effective Date herein and continuing perpetually, the Partnership may accept subscriptions hereunder. The closing of the purchase and sale of the Securities (each a "**Closing**") under this Offering shall take place remotely, coordinated by the General Partner on the date upon which a Subscription is accepted by Partnership (the "**Closing Date**") pursuant to the terms of Section 2 above, or at such other time and place as the Partnership may designate by notice to the undersigned. Subsequent Closings shall continue to occur throughout the life of the Partnership. In accordance with Section 4 below, on or before the Closing the undersigned shall deliver its requisite subscriber funds to the Partnership to be held in an account controlled by the Partnership and the General Partner.

4. Payment for Securities. Payment for the Securities shall be received by the Partnership from the undersigned by wire transfer of immediately available funds or other means approved by the Partnership in the amount as set forth on the Signature Page hereto simultaneously with the delivery of this Agreement to the Partnership by the Subscriber. The Partnership may, but is not obligated to, deliver certificates representing the Securities to the undersigned at the Closing bearing an appropriate legend referring to the fact that the Securities were sold in reliance upon an exemption from registration under the Securities Act. In lieu of certificates, this completed Subscription Agreement shall be sufficient evidence of the undersigned's admission to the Partnership. Receipt of the payment for the Securities must be received by the Partnership on or before the Closing.

5. Representations and Warranties of the Partnership. As of each Closing Date hereunder, the Partnership represents and warrants that:

(a) The Partnership is duly formed and validly existing under the laws of Delaware, with full power and authority to conduct its business as it is currently being conducted and to own its assets.

(b) The Securities have been duly authorized and, when issued, delivered, and paid for in the manner set forth in this Subscription Agreement, will be validly issued, fully paid, and nonassessable.

6. Representations and Warranties of the Undersigned. The undersigned hereby represents and warrants to and covenants with the Partnership that:

(a) **General**.

(i) The undersigned has all requisite authority (and in the case of an individual, the capacity) to purchase the Securities, enter into this Subscription Agreement, and to perform all the obligations required to be performed by the undersigned hereunder, and such

purchase will not contravene any law, rule, or regulation binding on the undersigned or any investment guideline or restriction applicable to the undersigned.

(ii) The undersigned is not acquiring the Securities as a nominee or agent or otherwise for any other person.

(iii) The undersigned will comply with all applicable laws and regulations in effect in any jurisdiction in which the undersigned purchases or sells Securities and obtain any consent, approval or permission required for such purchases or sales under the laws and regulations of any jurisdiction to which the undersigned is subject or in which the undersigned makes such purchases or sales, and the Partnership shall have no responsibility therefor.

(b) **Information Concerning the Partnership**.

(i) The undersigned acknowledges and verifies that it has received an Offering Memorandum in connection with these securities and that it understands the disclosures contained therein, that it has had full opportunity to request any additional information regarding the Partnership, its business, and its projected plans that it so reasonably requests, that the undersigned is familiar with the principals of the issuer, and acknowledges that it has consulted with his or her own advisors and consultants prior to entering into this Subscription Agreement. The Offering Memorandum, together with this Agreement, constitute the "**Offering Documents**". THE UNDERSIGNED REPRESENTS THAT IT HAS SOUGHT THE ADVICE OF ITS OWN INDEPENDENT LEGAL COUNSEL IN CONNECTION WITH THIS AGREEMENT AND THE SECURITIES HEREUNDER.

(ii) The undersigned understands that the Partnership is not currently required to register and will not register as an Investment Partnership under the Investment Partnership Act of 1940 by way of exemption from definition provided under Section 3(c)1 and/or 3(c)5 of the Investment Partnership Act.

(iii) The undersigned understands and accepts that the purchase of the Securities involves various risks, including the risks that there may be no open market for the Securities, or that Subscribers entire investment may be lost. The undersigned represents that it is able to bear any loss associated with an investment in the Securities.

(iv) The undersigned confirms that it is not relying on any communication (written or oral) of the Partnership or any of its affiliates, as investment advice or as a recommendation to purchase the Securities. It is understood that information and explanations related to the terms and conditions of the Securities provided in the Offering Documents or otherwise by the Partnership or any of its affiliates shall not be considered investment advice or a recommendation to purchase the Securities, and that neither the Partnership nor any of its affiliates is acting or has acted as an advisor to the undersigned in deciding to invest in the Securities. The undersigned acknowledges that neither the Partnership nor any of its affiliates has made any representation regarding the proper characterization of the Securities for purposes of determining

the undersigned's authority to invest in the Securities. The undersigned is entering into this Agreement of its own volition, and after its own proper due diligence.

(v) The undersigned is familiar with the business and financial conditions, projections, and operations of the Partnership. The undersigned has had access to such information concerning the Partnership and the Securities as it deems necessary to enable it to make an informed investment decision concerning the purchase of the Securities.

(vi) The undersigned understands that, unless the undersigned notifies the Partnership in writing to the contrary at or before the Closing, each of the undersigned's representations and warranties contained in this Subscription Agreement will be deemed to have been reaffirmed and confirmed as of the Closing, taking into account all information received by the undersigned.

(vii) The undersigned acknowledges that the Partnership has the right in its sole and absolute discretion to abandon this private placement or to alter the terms of offering at any time prior to the completion of the offering. If the Partnership should abandon this private placement, this Subscription Agreement shall thereafter have no force or effect and the Partnership shall return the previously paid subscription price of the Securities, without interest thereon, to the undersigned.

(viii) The undersigned understands that no federal or state agency has passed upon the merits or risks of an investment in the Securities or made any finding or determination concerning the fairness or advisability of this investment.

(c) **Non-reliance**.

(i) The undersigned represents that it is **not** relying on (and will not at any time rely on) any communication (written or oral) of the Partnership, as investment advice or as a recommendation to purchase the Securities, it being understood that information and explanations related to the terms and conditions of the Securities, the Offering Documents, and the other transaction documents that may have been provided to the undersigned shall **not** be considered investment advice or a recommendation to purchase the Securities and is provided "as is" without any warranties. The undersigned is providing this investment after conducting its own due diligence.

(ii) The undersigned confirms that the Partnership has **not** (A) given any guarantee or representation as to the potential success, return, effect or benefit (either legal, regulatory, tax, financial, accounting or otherwise) of an investment in the Securities or (B) made any representation to the undersigned regarding the legality of an investment in the Securities under applicable legal investment or similar laws or regulations. In deciding to purchase the Securities, the undersigned is not relying on the advice or recommendations of the Partnership and the undersigned has made its own independent decision that the investment in the Securities is suitable and appropriate for the undersigned.

(d) **Status of Undersigned**.

(i) The undersigned has such knowledge, skill and experience in business, financial and investment matters that the undersigned is capable of evaluating the merits and risks of an investment in the Securities. With the assistance of the undersigned's own professional advisors, to the extent that the undersigned has deemed appropriate, the undersigned has made its own legal, tax, accounting, and financial evaluation of the merits and risks of an investment in the Securities and the consequences of this Subscription Agreement. The undersigned has considered the suitability of the Securities as an investment in light of its own circumstances and financial condition and the undersigned is able to bear the risks associated with an investment in the Securities and its authority to invest in the Securities.

(ii) The undersigned is an "**accredited investor**" as that term is defined under the Securities Act. The undersigned agrees to furnish any additional information requested by the Partnership or any of its affiliates to assure compliance with applicable U.S. federal and state securities laws in connection with the purchase and sale of the Securities. Any information that has been furnished or that will be furnished by the undersigned to evidence its status as an accredited investor is accurate and complete, and does not contain any misrepresentation or material omission.

(e) **Restrictions on Transfer or Sale of Securities**. As applies to the undersigned Subscriber:

(i) The undersigned is acquiring the Securities solely for the undersigned's own beneficial account, for investment purposes, and not with a view to, or for resale in connection with, any distribution of the Securities. The undersigned understands that the Securities have not been registered under the Securities Act or any State Securities Laws by reason of specific exemptions under the provisions thereof which depend in part upon the investment intent of the undersigned and of the other representations made by the undersigned in this Subscription Agreement. The undersigned understands that the Partnership is relying upon the representations and agreements contained in this Subscription Agreement (and any supplemental information) for the purpose of determining whether this transaction meets the requirements for such exemptions.

(ii) The undersigned understands that the Securities are "restricted securities" under applicable federal securities laws and that the Securities Act and the rules of the U.S. Securities and Exchange Commission (the "**Commission**") provide in substance that the undersigned may dispose of the Securities ***only*** pursuant to an effective registration statement under the Securities Act or an exemption therefrom (and in any case not before one (1) year from the date of subscription hereof), and the undersigned understands that the Partnership, at this time, has no obligation or intention to register any of the Securities, or to take action so as to permit sales pursuant to the Securities Act (including Rule 144 thereunder). Accordingly, the undersigned understands that under the Commission's rules, the undersigned may dispose of the Securities principally only in "private placements" which are exempt from registration under the Securities Act, in which event the transferee will acquire "restricted securities" subject to the same limitations

as in the hands of the undersigned. Consequently, the undersigned understands that the undersigned must bear the economic risks of the investment in the Securities for an indefinite period of time.

(iii) The undersigned agrees: (A) that the undersigned will not sell, assign, pledge, give, transfer, or otherwise dispose of the Securities or any interest therein, or make any offer or attempt to do any of the foregoing, except pursuant to a registration of the Securities under the Securities Act and all applicable State Securities Laws, or in a transaction which is exempt from the registration provisions of the Securities Act and all applicable State Securities Laws; (B) that the certificates representing the Securities will bear a legend making reference to the foregoing restrictions; and (C) that the Partnership and its affiliates shall not be required to give effect to any purported transfer of such Securities except upon compliance with the foregoing restrictions.

(f) **Further Rights of Redemption and Repurchase of Securities.** The undersigned understands and agrees that the Securities sold hereunder may also be subject to certain rights or redemption or repurchase as maybe provided for in the Partnership Agreement of the Partnership, and the undersigned understands that it must agree to such terms in subscribing to the Partnership hereunder.

7. Conditions to Obligations of the Undersigned and the Partnership. The obligations of the undersigned to purchase and pay for the Securities as specified on the Signature Page hereto and of the Partnership to sell the Securities are subject to the satisfaction at or prior to the Closing of the following conditions precedent: the representations and warranties of the Partnership contained in **Section** 5 hereof and of the undersigned contained in **Section** 6 hereof shall be true and correct as of the Closing in all respects with the same effect as though such representations and warranties had been made as of the Closing.

8. Electronic Delivery of Disclosures and Schedule K-1.

(a) The undersigned understands that the Fund and the General Partner expect to deliver tax return information, including Schedule K-1s (each, a "**K-1**") to the undersigned by either electronic mail, or some other form of electronic delivery. Pursuant to IRS Rev. Proc. 2012-17 (Feb. 13, 2012), the Undersigned hereby expressly understands, consents to, and acknowledges such electronic delivery of tax returns and related information. Federal law prohibits the Fund, the General Partner, or their affiliates and designees from disclosing, without consent, undersigned's tax return information to third parties or use of that information for purposes other than the preparation of the Subscriber's tax return. As part of subscription to this offering, the Fund, the General Partner, or their designees may disclose undersigned's income tax return information to certain other affiliated entities or third-party service providers including, but not limited to the Accountant for tax return preparation and data aggregation purposes. The Fund, the General Partner, and their designees covenant they will keep and maintain undersigned's information in strict confidence, using such degree of care as is appropriate to avoid unauthorized access, use or disclosure, and will not use such information in violation of law. In executing this Agreement, the undersigned authorizes the Fund, the General Partner, and/or the Accountant to disclose tax return information to certain Accountant entities, their respective successors, affiliates and, or such other

third-party service providers as the undersigned may request or as may be required by the Fund or the General Partner for purposes of completing tax return preparation and K-1 delivery pursuant to this agreement.

(b) The Subscriber's consent to electronic delivery will apply to all future K–1s unless such consent is withdrawn by the Subscriber.

**(c)** If for any reason the Subscriber would like a paper copy of the K-1 after the Subscriber has consented to electronic delivery, the Subscriber may submit a request via email to the Accountant and the General Partner or send a written request to the same. Requesting a paper copy of the Subscriber's K-1 will not be treated as a withdrawal of consent

(d) If the Subscriber in the future determines that it no longer consents to electronic delivery, the Subscriber will need to notify the Fund and the Accountant so that it can arrange for a paper K-1 to be delivered to the address that the Fund then currently has on file. The Subscriber may submit notice via email to the Accountant or send a written request to the same. The Subscriber's consent is considered withdrawn on the date the Fund receives the written request to withdraw consent. The Fund will confirm the withdrawal and its effective date in writing. A withdrawal of consent does not apply to a K-1 that was emailed to the Subscriber before the effective date of the withdrawal of consent.

(e) The Fund (or the General Partner) will cease providing statements to the Subscriber electronically if the Subscriber provides notice to withdraw consent, if the Subscriber ceases to be a Member of the Fund, or if regulations change to prohibit the form of delivery.

(f) If the Subscriber needs to update the Subscriber's contact information that is on file, please email the update to the General Partner. The Subscriber will be notified if there are any changes to the contact information of the Fund.

(g) The Subscriber's K-1 may be required to be printed and attached to a federal, state, or local income tax return.

9. Obligations Irrevocable. The obligations of the undersigned shall be irrevocable.

10. Legend. The certificates representing the Securities sold pursuant to this Subscription Agreement will be imprinted with a legend in substantially the following form:

"THE SECURITIES EVIDENCED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION. THE SECURITIES MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED EXCEPT (1) PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT OR (2) PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT, IN EACH CASE IN ACCORDANCE WITH ALL APPLICABLE STATE SECURITIES LAWS AND THE SECURITIES LAWS OF OTHER

JURISDICTIONS, AND IN THE CASE OF A TRANSACTION EXEMPT FROM REGISTRATION, UNLESS THE COMPANY HAS RECEIVED AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO IT THAT SUCH TRANSACTION DOES NOT REQUIRE REGISTRATION UNDER THE SECURITIES ACT AND SUCH OTHER APPLICABLE LAWS."

11. Waiver, Amendment. Neither this Subscription Agreement nor any provisions hereof shall be modified, changed, discharged or terminated except by an instrument in writing, signed by the party against whom any waiver, change, discharge or termination is sought.

12. Assignability. Neither this Subscription Agreement nor any right, remedy, obligation or liability arising hereunder or by reason hereof shall be assignable by either the Partnership or the undersigned without the prior written consent of the other party.

13. Waiver of Jury Trial; Dispute Resolution.

(a) THE UNDERSIGNED IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY LEGAL PROCEEDING ARISING OUT OF THE TRANSACTIONS CONTEMPLATED BY THIS SUBSCRIPTION AGREEMENT.

(b) Any dispute, claim, or controversy arising out of or relating to this Agreement, including the negotiation, breach, validity or performance of the Agreement, the rights and obligations contemplated by the Agreement, any claims of fraud or fraud in the inducement, and any claims related to the scope or applicability of this agreement to arbitrate, shall be resolved at the request of any party to this Agreement through a two-step dispute resolution process administered by JAMS, first as mediation, then followed if necessary, by final and binding arbitration administered by a single arbitrator (the "**Arbitrator**")

14. Submission to Jurisdiction. With respect to any suit, action or proceeding relating to any offers, purchases or sales of the Securities by the undersigned ("**Proceedings**"), the undersigned irrevocably submits to the jurisdiction of the federal or state courts located in Miami County, Florida, which submission shall be exclusive unless none of such courts has lawful jurisdiction over such Proceedings.

15. Governing Law. This Subscription Agreement shall be governed by and construed in accordance with the laws of the State of Delaware.

16. Section and Other Headings. The section and other headings contained in this Subscription Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Subscription Agreement.

17. Counterparts; Electronic Signature. This Subscription Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email, or other means of Electronic Transmission

shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement. This Agreement, and all other matters before the Limited Partners, the General Partner, or the Partnership, may be executed by electronic signature methods, including DocuSign and related methods and each Limited Partner hereby accepts such method of execution as legally binding.

18. Notices. All notices and other communications provided for herein shall be in writing and shall be deemed to have been duly given if delivered personally or sent by registered or certified mail, return receipt requested, postage prepaid to the following addresses (or such other address as either party shall have specified by notice in writing to the other):

| | |
|---|---|
| **If to the Partnership:** | **Camshaft Capital Fund, LP**<br>175 SW 7th St.<br>Miami, FL 33130<br>Attention: Camshaft Capital |
| **With a copy to:** | **Apex Fund Services**<br>535 Anton Blvd. Suite 830<br>Costa Mesa, CA 92626<br>Attention: Gregory Bartz |
| **If to the Purchaser:** | **Subscriber's Address set forth on Signature Page hereto** |

19. Binding Effect. The provisions of this Subscription Agreement shall be binding upon and accrue to the benefit of the parties hereto and their respective heirs, legal representatives, successors and assigns.

20. Survival. All representations, warranties and covenants contained in this Subscription Agreement shall survive (i) the acceptance of the subscription by the Partnership and the Closing, (ii) changes in the transactions, documents and instruments described in the Offering Documents which are not material or which are to the benefit of the undersigned and (iii) the death or disability of the undersigned.

21. Notification of Changes. The undersigned hereby covenants and agrees to notify the Partnership upon the occurrence of any event prior to the closing of the purchase of the Securities pursuant to this Subscription Agreement which would cause any representation, warranty, or covenant of the undersigned contained in this Subscription Agreement to be false or incorrect.

22. Severability. If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

*This space intentionally left blank. Signature page and ISQ follow.*

**IN WITNESS WHEREOF**, the undersigned has executed this Subscription Agreement as of the Date written below:

_Byjus Alpha, Inc.
**(Legal Name of Limited Partner)**

**Type of Investor:** __Individual __IRA __Trust X Entity __ Other

By: DocuSigned by: [signature] C54896B5666C4E2...

**Total Capital Contribution:** 318,000,000

Riju Ravindran Director

**Printed Name and Authority (if entity) of Signatory**

4/28/2022

**Date Signed**

**Spousal Signature (*if required*)**

**By**: ______________________________

______________________________

**Printed Name of Spouse**

______________

**Date Signed**

The offer to purchase Securities as set forth above is **confirmed and accepted by the Partnership:**

**By: Camshaft Capital Management, LLC,**
General Partner of Camshaft Capital Fund, LP

**By**: DocuSigned by: William Morton 100E0A38ED8D4CB...

William Morton, its Authorized Representative

**DATE ACCEPTED:** 4/28/2022

# INVESTOR SUITABILITY QUESTIONNAIRE
# IN CONNECTION WITH THE
# SUBSCRIPTION AGREEMENT OF
# CAMSHAFT CAPITAL FUND, LP

This Questionnaire is being distributed to certain individuals and entities, by way of direct distribution, which may be offered the opportunity to subscribe to Limited Partnership Interests or the equivalent thereof (the "***Securities***") of **CAMSHAFT CAPITAL FUND, LP.**, a Delaware limited partnership (the "***Partnership***"). The purpose of this Questionnaire is to assure the Partnership that all such individuals and entities being offered the Securities will meet the standards required by the Securities Act of 1933, as amended (the "***Act***"), and applicable U.S. state securities laws.

All answers will be kept confidential. However, by signing this Questionnaire, the undersigned agrees that this information may be provided by the Partnership to its legal and financial advisors, and the Partnership and such advisors may rely on the information set forth in this Questionnaire for purposes of complying with all applicable securities laws and may present this Questionnaire to such parties as it reasonably deems appropriate if called upon to establish its compliance with such securities laws. **The undersigned represents that the information contained herein is complete and accurate to the best knowledge of the undersigned and will notify the Partnership of any material change in any of such information prior to the undersigned's investment in the Partnership. VERIFICATION DOCUMENTATION MUST BE SUBMITTED SIMULTANEOUSLY WITH THIS DOCUMENT.**

**Instructions:** Please complete this questionnaire as thoroughly as possible. **All questions must be answered.**

- If the appropriate answer is "none" or "not applicable," so state.
- If you have any questions, please contact the Administrator (Apex) of the Fund directly.
- ALL SUBSCRIBERS MUST PROVIDE A COMPLETED W9 (W8 if INT) AND A COPY OF A VALID GOVERNMENTAL PHOTO ID/PASSPORT.

| | |
|---|---|
| Jurisdiction of Entity or homestead domicile of individual (U.S. State if U.S.): | Byjus Alpha, Inc. |
| Email for notice purposes: | anita@byjus.com |
| Address for notice purposes: | 3160 DE LA CRUZ BLVD STE 204, SANTA CLARA CA 95054 |
| SSN or EIN/US Taxpayer No. | 4819131 |
| Do you consent to electronic notice for all disclosures, tax returns, reports, and all other communications from the Partnership? | Yes ☒ No ☐ |
| Citizenship of the principals of the investor: | |

***Financial Status Questionnaire begins on the following page.***

**FOR INDIVIDUAL INVESTORS***

**Investors must qualify as Accredited*

**Accredited Investor Certification.** The undersigned makes one of the following representations regarding its income or net worth and certain related matters ***and has checked the applicable representation*:**

[__] The undersigned's income[1] during each of the last two years exceeded $200,000 or, if the undersigned is married, the joint income of the undersigned and the undersigned's spouse during each of the last two years exceed $300,000, and the undersigned reasonably expects the undersigned's income, from all sources during this year, will exceed $200,000 or, if the undersigned is married, the joint income of undersigned and the undersigned's spouse from all sources during this year will exceed $300,000.

***OR***

[__] The undersigned's net worth,[2] including the net worth of the undersigned's spouse (or spousal equivalent), is in excess of $1,000,000 (excluding the value of the undersigned's primary residence).

***OR***

[__] The undersigned is an individual who holds, in good standing, a FINRA Series 7, 65, or 82 License

***OR***

[__] The undersigned is a "knowledgeable employee" of the Partnership as that term is defined in Rule 3c-5(a)(4) of the Investment Partnership Act.

***OR***

[__] The undersigned cannot make any of the representations set forth above.

**FOR ENTITY INVESTORS***

**Investors must qualify as Accredited*

**Accredited Investor Certification.** The undersigned makes one of the following representations regarding its entity and certain related matters ***and has checked the applicable representation*:**

[X] The undersigned is an entity, including an LLC, in which **all** of the equity owners (in the case of a revocable living trust, its grantor(s)) qualify as accredited investors.

[__] The undersigned is a "family office" as defined by the "family office rule" set forth in Rule 202(a)(11)(g)-1 of the Investment Advisors Act ***and*** a) has at least $5 million in assets under management; b) is not formed for the specific purpose of acquiring the securities offered; and c) its prospective investment is directed by a person capable of evaluating the risks and merits of the investment.

[__] The undersigned is a trust with total assets in excess of $5,000,000 whose purchase is directed by a person with such knowledge and experience in financial and business matters that such person is capable of evaluating the merits and risks of the prospective investment.

[__] The undersigned is a bank, insurance company, investment company registered under the United States Investment Partnership Act of 1940, as amended (the "Companies Act"), a broker or dealer registered pursuant to Section 15 of the United States Securities Exchange Act of 1934, as amended, a business development company, a Small Business Investment Partnership licensed by the United States Small Business Administration, a plan with total assets in excess of $5,000,000 established and maintained by a state for the benefit of its employees, or a private business development company as defined in Section 202(a)(22) of the United States Investment Advisers Act of 1940, as amended.

[__] The undersigned is an employee benefit plan and *either* all investment decisions are made by a bank, savings and loan association, insurance company, or registered investment advisor, *or* the undersigned has total assets in excess of $5,000,000 *or*, if such plan is a self-directed plan, investment decisions are made solely by persons who are accredited investors.

[__] The undersigned is a corporation, limited liability company, partnership, business trust, not formed for the purpose of acquiring the Securities, or an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code"), in each case with total assets in excess of $5,000,000.

***OR***

[__] The undersigned cannot make any of the representations set forth above.

## ERISA REPRESENTATIONS

**1.** Subscriber is not acting on behalf of an entity which is deemed to hold the assets of an "Employee Benefit Plan"[1] (which is subject to the fiduciary rules of ERISA) or a "Plan"[2] (e.g., an entity of which 25% or more of any class of equity securities is held by Employee Benefit Plans or Plans, or an insurance company separate account holding "plan assets," etc.) (each, a "Benefit Plan Investor").

**2.** Subscriber is not a life insurance company using the assets of its general account.

[1] Any plan, fund or program established or maintained by an employer or employee organization for the purpose of providing pension, welfare or similar benefits (*i.e.*, deferred compensation arrangements) to employees, which is subject to the fiduciary rules of the U.S. Employee Retirement Income Security Act of 1974, as amended ("***ERISA***").

[2] An individual retirement account ("***IRA***"), a Keogh plan or any other plan subject to Section 4975 of the Internal Revenue Code of 1986, as amended (the "***Code***").

## USA PATRIOT ACT COMPLIANCE

1. Bank from which the Subscriber's payment to the Partnership is being wired (the "***Wiring Bank***"):

JPMorgan Chase Bank N.A.

Name of Bank

270 Park Avenue, 43rd floor New York, NY 10017

Address of Bank

021000021

ABA Number

(Swift Number for INT)

778593837

Account Number

Byju's Alpha, Inc.

Name Under Which Account Is Held

2. Is the Wiring Bank located in the United States or another "FATF Country"[3]?

☒ Yes
☐ No

3. If the Subscriber answered "Yes," is the Subscriber a customer of the Wiring Bank?

☒ Yes
☐ No

If the Subscriber answered "No" to questions 2 or 3 above, the Subscriber may be required, if the Subscriber is an individual, to produce a copy of a passport or identification card, together with any evidence of the Subscriber's address, such as a utility bill or bank statement, and date of birth. If the Subscriber is an entity, the Subscriber may be required to produce a certified copy of the Subscriber's certificate of incorporation, articles of association (or the equivalent) or certificate of formation or limited partnership (or the equivalent), and the names, occupations, dates of birth and residential and business addresses of all directors.

[3] The current list of countries that are members of the Financial Action Task Force on Money Laundering (each an "***FATF Country***") are: Argentina, Australia, Austria, Belgium, Brazil, Canada, China, Denmark, Finland, France, Germany, Greece, Hong Kong, Iceland, India, Ireland, Italy, Japan, Korea, Luxembourg, Malaysia, Mexico, Kingdom of the Netherlands, New Zealand, Norway, Portugal, Russian Federation, Singapore, South Africa, Spain, Sweden, Switzerland, Turkey, United Kingdom, and the United States. The list of FATF Countries may be expanded to include future FATF members and FATF compliant countries, as appropriate.

# PRIVACY NOTICE

The General Partner is committed to protecting your privacy and maintaining the confidentiality and security of your personal information, and in connection therewith, this Privacy Policy is observed by the General Partner. This Privacy Policy explains the manner in which the General Partner collects, utilizes and maintains nonpublic personal information about its investors ("***Investors***"), as required under Federal Law. In addition to the General Partner, the information collected may also be shared with, and utilized by, the Accountant, who is Sterling Mayfair. More information about the Administrator is available upon request to the General Partner.

**Collection of Investor Information**

The General Partner and the Administrator may collect personal information about its Investors from the following sources:

1. Subscription forms, investor questionnaires, account forms, and other information provided by the Investor in writing, in person, by telephone, electronically or by any other means. This information includes name, address, employment information, and financial and investment qualifications;

2. Transactions within the Fund, including account balances, investments, distributions and fees;

3. Other interactions with the General Partner's affiliates (for example, discussions with our staff and affiliated broker-dealer); and

4. Verification services and consumer reporting agencies, including an Investor's creditworthiness or credit history.

**Disclosure of Nonpublic Personal Information**

The General Partner and the Administrator may share nonpublic personal information about investors or potential investors in the Fund with affiliates, as permitted by law. The General Partner does not disclose nonpublic personal information about investors or potential investors in the Fund to nonaffiliated third parties, except as permitted by law (for example, to service providers who provide services to the Investor or the Investor's account).

The General Partner and the Administrator may share nonpublic personal information, without an Investor's consent, with affiliated and nonaffiliated parties in the following situations, among others:

1. To respond to a subpoena or court order, judicial process or regulatory inquiry;

2. In connection with a proposed or actual sale, merger, or transfer of all or a portion of its business;

3. To protect or defend against fraud, unauthorized transactions (such as money laundering), lawsuits, claims or other liabilities;

4. To service providers of the General Partner in connection with the administration and operations of the General Partner, the Fund and other General Partner products and services, which may include brokers, attorneys, accountants, auditors, administrators or other professionals;

5. To assist the General Partner in offering General Partner-affiliated products and services to its Investors;

6. To process or complete transactions requested by an Investor; and

7. For any proper purpose as contemplated by or permitted under the applicable Fund offering, governing or organizing documents.

**Former Customers and Investors**

The same Privacy Policy applies to former Investors.

**Protection of Investor Information**

The General Partner, and to the extent provided by its own internal policies, the Administrator, maintains physical, electronic and procedural safeguards that comply with federal standards to protect customer information. The General Partner restricts access to the personal and account information of Investors to those employees who need to know that information in the course of their job responsibilities.

**Further Information**

The General Partner and the Administrator reserves the right to change this Privacy Policy at any time. The examples contained within this Privacy Policy are illustrations and are not intended to be exclusive. This Privacy Policy complies with Federal Law regarding privacy. You may have additional rights under other foreign or domestic laws that may apply to you. All questions should be directed to the General Partner Email.

**Banking Disclosure**

The General Partner and/or the Administrator shall cause the Partnership to open and maintain a bank account(s) at an FDIC insured banking institution in the United States. However, all Members acknowledge, understand, and agree that the General Partner cannot and will not guarantee the safe deposit and keeping of all funds outside of reasonable due care, which generally entails ensuring correct receipts and deposits into the account(s) of the Partnership. The General Partner, the Sponsor, and the Partnership are not responsible for the actions (or omissions) or events that occur with the banking institutions in which the Partnership's funds are deposited.

***Signature Page Follows.***

The undersigned, in executing this Investor Suitability Questionnaire, hereby affirms and certifies each of the representations and warranties provided for above, as well as understands and agrees to all notices and disclaimers provided herein. Investors may be required to make certain representations and to satisfy that they are an accredited investor as described herein and may be required to make certain additional representations at the request of Partnership. The suitability standards referred to above are minimum requirements; the satisfaction of such standards does not mean that an investment in the company is a suitable investment for an investor. The Partnership, in its sole and absolute discretion, has the authority to accept or reject an investor hereunder. In addition, we may revoke the offer made and refuse to sell any securities to a prospective investor for any other reason whatsoever.

The undersigned has executed this **Investor Suitability Questionnaire** in connection with the Subscription Agreement of Camshaft Capital Fund, LP, as of the date written below.

Byjus Alpha , Inc

Name of Investor

DocuSigned by:

C54896B5666C4E2...

(Signature)

Riju Ravindran

Name of Signing Party (Please Print)

Director

Title of Signing Party (Please Print)

4/28/2022

Date Signed

[1] For purposes of this Questionnaire, "***income***" means adjusted gross income, as reported for federal income tax purposes, increased by the following amounts: (a) the amount of any tax exempt interest income received, (b) the amount of losses claimed as a limited partner in a limited partnership, (c) any deduction claimed for depletion, (d) amounts contributed to an IRA or Keogh

retirement plan, (e) alimony paid, and (f) any amounts by which income from long-term capital gains has been reduced in arriving at adjusted gross income pursuant to the provisions of Section 1202 of the Internal Revenue Code.

[2] For purposes of this Questionnaire, "***net worth***" means the excess of total assets, excluding your primary residence, at fair market value over total liabilities, including your mortgage or any other liability secured by your primary residence only if and to the extent that it exceeds the value of your primary residence. Net worth should include the value of any other shares of stock or options held by you and your spouse and any personal property owned by you or your spouse (*e.g.* furniture, jewelry, other valuables, etc.).

# Exhibit 3.3.

## APPENDIX B – ADDITIONAL SUBSCRIPTION REQUEST

Camshaft Capital Fund, LP
c/o Camshaft Capital Management, LLC
Attn: William Morton
936 SW 1st Ave #1086
Miami, Florida 33130

**Re: Camshaft Capital Fund, LP, Request for Additional Subscription**

William Morton, Investment Manager:

Reference is made to the Amended and Restated Limited Partnership Agreement dated as of July 01, 2021 (as the same may be amended, supplemented or revised from time to time, the "***Partnership Agreement***") of Camshaft Capital Fund, LP, a Delaware limited partnership (the "***Partnership***"). All capitalized terms used but not defined herein shall have the meanings given to them in the Partnership Agreement.

The undersigned is a Partner in the Partnership and, pursuant to *Section 2.03* of the Partnership Agreement, hereby requests to make an additional capital contribution to the Partnership. The undersigned acknowledges that (i) the minimum additional capital contribution is $100,000, unless otherwise agreed by the General Partner, and (ii) subscription amounts will be credited to the Partnership on the first business day of the next calendar month, except as provided by the General Partner.

The undersigned submits the following subscription amount:

$ 9,000,000.00

Payment is tendered in accordance with the following wire instructions:

| | |
|---|---|
| Beneficiary Bank: | U.S. Bank |
| Beneficiary Name: | Camshaft Capital Fund, LP |
| ABA Number: | 122235821 |
| Account Number: | 157523686176 |
| Beneficiary Address: | 651 N. Broad St.<br>STE 206<br>Middletown, DE 19709 |

Furthermore, the undersigned reaffirms as of the date hereof all of the representations, warranties and acknowledgements previously made in the Subscription Agreement executed by the undersigned.

X Camshaft Capital Management LLC

Print full legal name of Limited Partner

X ______________________

Signature

X 4/29/22

Date

X William Morton

Print name of Authorized Signatory

X President

Title of Authorized Signatory

# Exhibit 3.4.

# PROMISSORY NOTE

$9,000,000.00 April 30, 2022

FOR VALUE RECEIVED, **Camshaft Capital Management LLC** (the "**Borrower**") hereby unconditionally promises to pay to the order of Camshaft Capital Fund, LP, a Delaware limited partnership (the "**Noteholder**"), on April 30, 2025, the principal amount of $9,000,000.00 (Nine Million Dollars) (the "**Loan**"), together with all accrued interest thereon, as provided in this Promissory Note (this "**Note**").

1. Payment Dates.

(a) Payments of Interest. Borrower shall make interest payments on the Loan as follows:

(i) On May 31st and every month following, on the last day of the month, the borrower shall pay the interest on the Loan of $30,000.00. Prepaid interest shall not be refunded in any circumstance, including in the event of any prepayment by the Borrower under Section 1(b) of this Note.

(b) Prepayment of Principal. The Borrower may, upon six months' prior written notice, prepay the Loan in whole or in part at any time after October 30, 2024 if a Prepayment Event (as defined below) has occurred before such date or occurs on or after such date. As used in this Note, a Prepayment Event means any of the following:

(i) filing by **Byjus Alpha Inc.** ("**Byju**") or any affiliate with the Securities and Exchange Commission or any comparable foreign regulatory agency for an initial public offering of securities;

(ii) execution and delivery by Byju of an agreement for the sale of Byju, including, without limitation, any transaction or series of related transactions by which a material interest in Byju or a material amount of its assets is transferred by means of a sale or exchange of capital stock or assets, a merger or consolidation, business combination or special purpose acquisition or other transaction; or

(iii) the adoption of any law, rule or regulation in any jurisdiction making the Loan invalid or illegal or imposing on Byju or the Borrower obligations or requirements materially impacting the business of either Byju or the Borrower related to maintaining the Loan.

(c) Business Day. In the event that any date set forth herein shall fall on a day that is not a Business Day (defined below), the date shall be deemed to be extended to the next following Business Day.

2. Unsecured. The Borrower's performance of its obligations hereunder is unsecured.

3. Interest Rate.

(a) Interest Rate. Principal amounts outstanding under this Note shall bear interest at a rate per annum (the "**Interest Rate**") equal to 4.00%.

(b) Default Interest. If any amount payable hereunder is not paid when due, whether at stated maturity, by acceleration, or otherwise, such overdue amount shall bear interest at the Interest Rate plus two percentage points (2%).

(c) Computation of Interest. All computations of interest hereunder shall be made on the basis of a year of 365/366 days, as the case may be, and the actual number of days elapsed. Interest shall begin to accrue on the Loan on the date of this Note. On any portion of the Loan that is repaid, interest shall not accrue on and after the date on which such payment is made.

(d) Interest Rate Limitation. All agreements between the Borrower and Noteholder, now existing or hereafter arising, are hereby expressly limited so that in no event whatsoever shall the amount paid or agreed to be paid to Noteholder hereof for the use, forbearance or detention of money to be loaned hereunder or otherwise, or for the performance or payment of any covenant or obligation contained herein, exceed the maximum amount permissible under applicable law. If from any circumstance whatsoever fulfillment of any provision hereof exceeds the limit of validity prescribed by law, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any such circumstance Noteholder hereof shall ever receive as interest under this Note or otherwise an amount that would exceed the highest lawful rate, such amount that would be excessive interest shall be applied to the reduction of the principal amount owing hereunder (without charge for prepayment) and not to the payment of interest, or such excess shall be refunded to Borrower.

4. Payment Mechanics.

(a) Manner of Payment. All payments of principal and interest shall be made in US dollars on the due date, by 5:00 PM Eastern Time on the date on which such payment is due. The next monthly payment of $30,000.00 is due June 30th, 2022.

(b) Application of Payments. All payments shall be applied, *first*, to fees or charges outstanding under this Note, *second*, to accrued interest, and, *third*, to principal outstanding under this Note.

(c) Business Day. Whenever any payment hereunder is due on a day that is not a Business Day, such payment shall be made on the next succeeding Business Day, and interest shall be calculated to include such extension. "**Business Day**" means a day other than Saturday, Sunday, or other day on which commercial banks in Miami, FL are authorized or required by law to close.

(d) Representations and Warranties. The Borrower represents and warrants to the Noteholder as follows:

(e) Compliance with Law. The Borrower is in compliance with all laws, statutes, ordinances, rules, and regulations applicable to or binding on the Borrower except where the failure to be in compliance would not have a material adverse effect on the Borrower.

(f) Power and Authority. The Borrower has the requisite capacity, power and authority to execute, deliver, and perform its obligations under the this Note.

(g) Authorization; Execution and Delivery. The Borrower has duly executed and delivered this Note.

(h) No Approvals. No consent or authorization of, filing with, notice to, or other act by, or in respect of, any Governmental Authority or any other Person is required in order for the Borrower to execute, deliver, or perform any of its obligations under this Note except where the failure to obtain such consent or authorization or to make such filing will not have a material adverse effect on the Borrower.

(i) No Violations. The execution and delivery of this Note and the consummation by the Borrower of the transactions contemplated hereby and thereby do not and will not (a) violate any Law applicable to the Borrower or by which any of Borrower's properties or assets may be bound; or (b) constitute a default under any material agreement or contract by which the Borrower may be bound.

(j) Enforceability. This Note is a valid, legal, and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms.

(k) No Litigation. No action, suit, litigation, investigation, or proceeding of, or before, any arbitrator or Governmental Authority is pending or, to the Borrower's knowledge, threatened by or against the Borrower or any of Borrower's property or assets (a) with respect to this Note or any of the transactions contemplated hereby or (b) that could be expected to materially adversely affect the Borrower's financial condition or the ability of the Borrower to perform its obligations under this Note.

(l) PATRIOT Act; Anti-Money Laundering. The Borrower is, in compliance in all material respects with the PATRIOT Act, and any other applicable terrorism and money laundering laws, rules, regulations, and orders.

(m) Anti-Corruption Laws and Sanctions.

(i) "**Sanctioned Country**" means, at any time, a country or territory which is itself the subject or target of any comprehensive or country-wide Sanctions.

(ii) "**Sanctioned Person**" means, at any time, (a) any person listed in any Sanctions-related list of designated persons maintained by a Sanctions Authority; (b) any person operating, organized, or resident in a Sanctioned Country, (c) any person owned or controlled by any such person or persons described in the foregoing clauses (a) or (b), or (d) any person that is the subject or target of any Sanctions.

(iii) "**Sanctions**" mean all economic or financial sanctions or trade embargoes imposed, administered, or enforced from time to time by a Sanctions Authority.

(iv) "**Sanctions Authority**" means OFAC, the U.S. Department of State, the United Nations Security Council, the European Union, Canada, or other relevant sanctions authority.

(v) The Borrower is in compliance with all laws, rules, and regulations of any jurisdiction applicable to the Borrower from time to time concerning or relating to bribery or corruption, including the United States Foreign Corrupt Practices Act of 1977 ("**Anti-Corruption Laws**").

(vi) The Borrower is not and no agent of the Borrower that will act in any capacity in connection with or benefit from the Loan, is a Sanctioned Person.

(vii) No use of proceeds of the Loan or other transaction contemplated by this Note will violate any Anti-Corruption Law or applicable Sanctions.

5. Events of Default. The occurrence and continuance of any of the following shall constitute an "**Event of Default**" hereunder:

(a) Failure to Pay. The Borrower fails to pay (i) any principal amount of the Loan when due; (ii) any interest on the Loan within five (5) days after the date such amount is due; or (iii) any other amount due hereunder within ten (10) days after such amount is due.

(b) Breach of Representations and Warranties. Any representation or warranty made by the Borrower to the Noteholder herein contains an untrue or misleading statement of a material fact as of the date made.

(c) Cross-Defaults. The Borrower fails to pay when due any of its material debt (other than debt arising under this Note), or any interest or premium thereon, when due and such failure continues after the applicable grace period, if any, specified in the agreement or instrument relating to such debt.

(d) Bankruptcy; Insolvency.

(i) The Borrower institutes a voluntary case seeking relief under any law relating to bankruptcy, insolvency, reorganization, or other relief for debtors.

(ii) An involuntary case is commenced under any law relating to bankruptcy or insolvency and is not stayed or dismissed within ninety (90) days.

(iii) The Borrower makes a general assignment for the benefit of creditors.

(iv) The Borrower is unable, or admits in writing its inability, to pay Borrower's debts as they become due.

(v) A case is commenced against the Borrower or Borrower's assets seeking attachment, execution, or similar process against all or a substantial part of Borrower's assets and is not stayed or dismissed within ninety (90) days.

(e) Failure to Give Notice. The Borrower fails to give the notice of Event of Default specified in Section 6.

6. Notice of Event of Default. As soon as possible after it becomes aware that an Event of Default has occurred, and in any event within two (2) Business Days, the Borrower shall notify the Noteholder in writing of the nature and extent of such Event of Default and the action, if any, it has taken or proposes to take with respect to such Event of Default.

7. Remedies. Upon the occurrence and during the continuance of an Event of Default, the Noteholder may, at its option, by written notice to the Borrower declare the outstanding principal amount of the Loan, accrued and unpaid interest thereon, and all other amounts payable hereunder immediately due and payable; *provided*, *however*, if an Event of Default described in

Sections 5(d)(iii) or 5(d)(iv) shall occur, the outstanding principal amount, accrued and unpaid interest, and all other amounts payable hereunder shall become immediately due and payable without notice, declaration, or other act on the part of the Noteholder.

8. Reinstatement. If any payment received by Noteholder hereunder is determined to have been a voidable preference or fraudulent conveyance under any bankruptcy, insolvency or other debtor relief law, then the obligation to make such payment shall survive any cancellation, satisfaction and/or return of the payment and/or this Note, and shall not be discharged or satisfied with any prior payment or cancellation of this Note, but shall remain a valid and binding obligation enforceable, and such payment shall be immediately due and payable upon demand.

9. Expenses. If not defaulting, the Borrower shall pay no fees on this Note, other than interest.

10. Attorneys' Fees. If any party defaults under the terms of this Note, and another party employs an attorney to enforce this Note, whether or not legal proceedings are commenced, then such other party shall be entitled to recover from the defaulting party all reasonable attorneys' fees and other costs and expenses incurred in connection with such enforcement. If any party commences or is made a party to a lawsuit, arbitration or other proceeding to enforce or interpret this Note, the prevailing party in such proceeding shall be entitled to recover from the other party all reasonable attorneys' fees and other costs (whether otherwise taxable or recoverable) incurred in connection with such proceeding, including without limitation any appeal or enforcement of any judgment or decision rendered in such proceeding.

11. Full Payment. All amounts payable under this Note shall be paid in full without setoff, deduction or counterclaim. All amounts payable under this Note shall be free and clear of and without any deduction or withholding for or on account of any taxes, levies, penalties, duties, charges, fees, restrictions or conditions of any nature now or hereafter imposed by any federal, state, country or local government or any political subdivision or taxing authority thereof or therein. Borrower shall indemnify Noteholder against any such taxes, levies, imposts, duties, charges and fees (other than taxes on the income of Noteholder imposed by any taxing authority) which may be assessed against Noteholder or claimed or demanded from Noteholder in respect of any amount payable by Borrower hereunder, and against any costs, charges, expenses or liability arising out of or in respect of such assessment, claim or demand, to the fullest extent permitted by law.

12. Notices. All notices and other communications relating to this Note shall be in writing and shall be deemed given upon the first to occur of (x) deposit with the United States Postal Service or overnight courier service, properly addressed and postage prepaid; (y) transmittal by facsimile or e-mail properly addressed (with written acknowledgment from the intended recipient such as "return receipt requested" function, return e-mail, or other written acknowledgment); or (z) actual receipt by an employee or agent of the other party. Notices hereunder shall be sent to the following addresses, or to such other address as such party shall specify in writing:

(a) If to the Borrower:

OCI Limited
33 Cannon St
London EC4M 5SB
United Kingdom
Attn: Oliver Chapman, CEO
E-mail: oc@oci-group.co.uk

If to the Noteholder:

Camshaft Capital Fund, LP
950 Brickell Bay Dr. #5107
Miami, FL 33131
E-mail: William Morton william@camshaftcapital.com

13. Governing Law. This Note and any claim, controversy, dispute, or cause of action (whether in contract, tort, or otherwise) based on, arising out of, or relating to this Note and the transactions contemplated hereby shall be governed by and construed in accordance with the laws of the State of Florida.

14. Disputes.

(a) Submission to Jurisdiction.

(i) The Borrower irrevocably and unconditionally (A) agrees that any action, suit, or proceeding arising from or relating to this Note may be brought in the courts of the State of Florida sitting in Miami County, and in the United States District Court for the Southern District of Florida, and (B) submits to the exclusive jurisdiction of such courts in any such action, suit, or proceeding. Final judgment against the Borrower in any such action, suit, or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(ii) Nothing in this Section 14(a) shall affect the right of the Noteholder to bring any action, suit, or proceeding relating to this Note against the Borrower or its properties in the courts of any other jurisdiction.

(iii) Nothing in this Section 14(a) shall affect the right of the Noteholder to serve process upon the Borrower in any manner authorized by the laws of any such jurisdiction.

(b) Venue. The Borrower irrevocably and unconditionally waives, to the fullest extent permitted by law, (i) any objection that it may now or hereafter have to the laying of venue in any action, suit, or proceeding relating to this Note in any court referred to in Section 14(a), and (ii) the defense of inconvenient forum to the maintenance of such action, suit, or proceeding in any such court.

(c) Waiver of Jury Trial. THE BORROWER HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY, WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY.

15. Successors and Assigns. Upon notice to the Borrower, this Note may be assigned or transferred by the Noteholder to any individual, corporation, company, limited liability company, trust, joint venture, association, partnership, unincorporated organization, governmental authority, or other entity.

16. Integration. This Note constitutes the entire contract between the Borrower and the Noteholder with respect to the subject matter hereof and supersedes all previous agreements and understandings, oral or written, with respect thereto.

17. Amendments and Waivers. No term of this Note may be waived, modified, or amended, except by an instrument in writing signed by the Borrower and the Noteholder. Any waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given.

18. No Waiver; Cumulative Remedies. No failure by the Noteholder to exercise and no delay in exercising any right, remedy, or power hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, or power hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, or power. The rights, remedies, and powers herein provided are cumulative and not exclusive of any other rights, remedies, or powers provided by law.

19. Severability. If any term or provision of this Note is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Note or render such term or provision invalid or unenforceable in any other jurisdiction.

20. Counterparts. This Note and any amendments, waivers, consents, or supplements hereto may be executed in counterparts, each of which shall constitute an original, but all of which taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page to this Note by facsimile or in electronic ("pdf" or "tif") format shall be as effective as delivery of a manually executed counterpart of this Note.

21. Electronic Execution. The words "execution," "signed," "signature," and words of similar import in this Note shall be deemed to include electronic and digital signatures and the keeping of records in electronic form, each of which shall be of the same effect, validity, and enforceability as manually executed signatures and paper-based recordkeeping systems, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 U.S.C. § 7001 *et seq.*), the Electronic Signatures and Records Act of 1999 (N.Y. State Tech. Law §§ 301-309), and any other similar state laws based on the Uniform Electronic Transactions Act.

IN WITNESS WHEREOF, the Borrower has executed this Note as of the date set forth on the first page.

Camshaft Capital Management LLC

By: ______________________

Name: William Morton

Title: President

Case 26-50521-BLS Doc 8-6 Filed 04/20/26 Page 13 of 198

# Exhibit 3.5.

# PROMISSORY NOTE

$6,000,000.00 July 14, 2022

FOR VALUE RECEIVED, **Camshaft Capital Management LLC** (the "**Borrower**") hereby unconditionally promises to pay to the order of Camshaft Capital Fund, LP, a Delaware limited partnership (the "**Noteholder**"), on July 14, 2025, the principal amount of $6,000,000.00 (Six Million Dollars) (the "**Loan**"), together with all accrued interest thereon, as provided in this Promissory Note (this "**Note**").

1. <u>Payment Dates</u>.

(a) <u>Payments of Interest</u>. Borrower shall make interest payments on the Loan as follows:

(i) On July 31st and every month following, on the last day of the month, the borrower shall pay the interest on the Loan of $30,000.00. For the first and last month where the period is not full in length, the interest is prorated. Prepaid interest shall not be refunded in any circumstance, including in the event of any prepayment by the Borrower under Section 1(b) of this Note.

(b) <u>Prepayment of Principal</u>. The Borrower may, upon six months' prior written notice, prepay the Loan in whole or in part at any time after January 14, 2024 if a Prepayment Event (as defined below) has occurred before such date or occurs on or after such date. As used in this Note, a Prepayment Event means any of the following:

(i) filing by **Byjus Alpha Inc.** ("**Byju**") or any affiliate with the Securities and Exchange Commission or any comparable foreign regulatory agency for an initial public offering of securities;

(ii) execution and delivery by Byju of an agreement for the sale of Byju, including, without limitation, any transaction or series of related transactions by which a material interest in Byju or a material amount of its assets is transferred by means of a sale or exchange of capital stock or assets, a merger or consolidation, business combination or special purpose acquisition or other transaction; or

(iii) the adoption of any law, rule or regulation in any jurisdiction making the Loan invalid or illegal or imposing on Byju or the Borrower obligations or requirements materially impacting the business of either Byju or the Borrower related to maintaining the Loan.

(c) <u>Business Day</u>. In the event that any date set forth herein shall fall on a day that is not a Business Day (defined below), the date shall be deemed to be extended to the next following Business Day.

2. <u>Unsecured</u>. The Borrower's performance of its obligations hereunder is unsecured.

3. <u>Interest Rate</u>.

(a) Interest Rate. Principal amounts outstanding under this Note shall bear interest at a rate per annum (the "**Interest Rate**") equal to 6.00%.

(b) Default Interest. If any amount payable hereunder is not paid when due, whether at stated maturity, by acceleration, or otherwise, such overdue amount shall bear interest at the Interest Rate plus two percentage points (2%).

(c) Computation of Interest. All computations of interest hereunder shall be made on the basis of a year of 365/366 days, as the case may be, and the actual number of days elapsed. Interest shall begin to accrue on the Loan on the date of this Note. On any portion of the Loan that is repaid, interest shall not accrue on and after the date on which such payment is made.

(d) Interest Rate Limitation. All agreements between the Borrower and Noteholder, now existing or hereafter arising, are hereby expressly limited so that in no event whatsoever shall the amount paid or agreed to be paid to Noteholder hereof for the use, forbearance or detention of money to be loaned hereunder or otherwise, or for the performance or payment of any covenant or obligation contained herein, exceed the maximum amount permissible under applicable law. If from any circumstance whatsoever fulfillment of any provision hereof exceeds the limit of validity prescribed by law, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any such circumstance Noteholder hereof shall ever receive as interest under this Note or otherwise an amount that would exceed the highest lawful rate, such amount that would be excessive interest shall be applied to the reduction of the principal amount owing hereunder (without charge for prepayment) and not to the payment of interest, or such excess shall be refunded to Borrower.

4. Payment Mechanics.

(a) Manner of Payment. All payments of principal and interest shall be made in US dollars on the due date, by 5:00 PM Eastern Time on the date on which such payment is due. The next monthly payment is due July 31st, 2022.

(b) Application of Payments. All payments shall be applied, *first*, to fees or charges outstanding under this Note, *second*, to accrued interest, and, *third*, to principal outstanding under this Note.

(c) Business Day. Whenever any payment hereunder is due on a day that is not a Business Day, such payment shall be made on the next succeeding Business Day, and interest shall be calculated to include such extension. "**Business Day**" means a day other than Saturday, Sunday, or other day on which commercial banks in Miami, FL are authorized or required by law to close.

(d) Representations and Warranties. The Borrower represents and warrants to the Noteholder as follows:

(e) Compliance with Law. The Borrower is in compliance with all laws, statutes, ordinances, rules, and regulations applicable to or binding on the Borrower except where the failure to be in compliance would not have a material adverse effect on the Borrower.

(f) Power and Authority. The Borrower has the requisite capacity, power and authority to execute, deliver, and perform its obligations under the this Note.

(g) Authorization; Execution and Delivery. The Borrower has duly executed and delivered this Note.

(h) No Approvals. No consent or authorization of, filing with, notice to, or other act by, or in respect of, any Governmental Authority or any other Person is required in order for the Borrower to execute, deliver, or perform any of its obligations under this Note except where the failure to obtain such consent or authorization or to make such filing will not have a material adverse effect on the Borrower.

(i) No Violations. The execution and delivery of this Note and the consummation by the Borrower of the transactions contemplated hereby and thereby do not and will not (a) violate any Law applicable to the Borrower or by which any of Borrower's properties or assets may be bound; or (b) constitute a default under any material agreement or contract by which the Borrower may be bound.

(j) Enforceability. This Note is a valid, legal, and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms.

(k) No Litigation. No action, suit, litigation, investigation, or proceeding of, or before, any arbitrator or Governmental Authority is pending or, to the Borrower's knowledge, threatened by or against the Borrower or any of Borrower's property or assets (a) with respect to this Note or any of the transactions contemplated hereby or (b) that could be expected to materially adversely affect the Borrower's financial condition or the ability of the Borrower to perform its obligations under this Note.

(l) PATRIOT Act; Anti-Money Laundering. The Borrower is, in compliance in all material respects with the PATRIOT Act, and any other applicable terrorism and money laundering laws, rules, regulations, and orders.

(m) Anti-Corruption Laws and Sanctions.

(i) "**Sanctioned Country**" means, at any time, a country or territory which is itself the subject or target of any comprehensive or country-wide Sanctions.

(ii) "**Sanctioned Person**" means, at any time, (a) any person listed in any Sanctions-related list of designated persons maintained by a Sanctions Authority; (b) any person operating, organized, or resident in a Sanctioned Country, (c) any person owned or controlled by any such person or persons described in the foregoing clauses (a) or (b), or (d) any person that is the subject or target of any Sanctions.

(iii) "**Sanctions**" mean all economic or financial sanctions or trade embargoes imposed, administered, or enforced from time to time by a Sanctions Authority.

(iv) "**Sanctions Authority**" means OFAC, the U.S. Department of State, the United Nations Security Council, the European Union, Canada, or other relevant sanctions authority.

(v) The Borrower is in compliance with all laws, rules, and regulations of any jurisdiction applicable to the Borrower from time to time concerning or relating to bribery or corruption, including the United States Foreign Corrupt Practices Act of 1977 ("**Anti-Corruption Laws**").

(vi) The Borrower is not and no agent of the Borrower that will act in any capacity in connection with or benefit from the Loan, is a Sanctioned Person.

(vii) No use of proceeds of the Loan or other transaction contemplated by this Note will violate any Anti-Corruption Law or applicable Sanctions.

5. Events of Default. The occurrence and continuance of any of the following shall constitute an "**Event of Default**" hereunder:

(a) Failure to Pay. The Borrower fails to pay (i) any principal amount of the Loan when due; (ii) any interest on the Loan within five (5) days after the date such amount is due; or (iii) any other amount due hereunder within ten (10) days after such amount is due.

(b) Breach of Representations and Warranties. Any representation or warranty made by the Borrower to the Noteholder herein contains an untrue or misleading statement of a material fact as of the date made.

(c) Cross-Defaults. The Borrower fails to pay when due any of its material debt (other than debt arising under this Note), or any interest or premium thereon, when due and such failure continues after the applicable grace period, if any, specified in the agreement or instrument relating to such debt.

(d) Bankruptcy; Insolvency.

(i) The Borrower institutes a voluntary case seeking relief under any law relating to bankruptcy, insolvency, reorganization, or other relief for debtors.

(ii) An involuntary case is commenced under any law relating to bankruptcy or insolvency and is not stayed or dismissed within ninety (90) days.

(iii) The Borrower makes a general assignment for the benefit of creditors.

(iv) The Borrower is unable, or admits in writing its inability, to pay Borrower's debts as they become due.

(v) A case is commenced against the Borrower or Borrower's assets seeking attachment, execution, or similar process against all or a substantial part of Borrower's assets and is not stayed or dismissed within ninety (90) days.

(e) Failure to Give Notice. The Borrower fails to give the notice of Event of Default specified in Section 6.

6. Notice of Event of Default. As soon as possible after it becomes aware that an Event of Default has occurred, and in any event within two (2) Business Days, the Borrower shall notify the Noteholder in writing of the nature and extent of such Event of Default and the action, if any, it has taken or proposes to take with respect to such Event of Default.

7. Remedies. Upon the occurrence and during the continuance of an Event of Default, the Noteholder may, at its option, by written notice to the Borrower declare the outstanding principal amount of the Loan, accrued and unpaid interest thereon, and all other amounts payable hereunder immediately due and payable; *provided*, *however*, if an Event of Default described in

Sections 5(d)(iii) or 5(d)(iv) shall occur, the outstanding principal amount, accrued and unpaid interest, and all other amounts payable hereunder shall become immediately due and payable without notice, declaration, or other act on the part of the Noteholder.

8. Reinstatement. If any payment received by Noteholder hereunder is determined to have been a voidable preference or fraudulent conveyance under any bankruptcy, insolvency or other debtor relief law, then the obligation to make such payment shall survive any cancellation, satisfaction and/or return of the payment and/or this Note, and shall not be discharged or satisfied with any prior payment or cancellation of this Note, but shall remain a valid and binding obligation enforceable, and such payment shall be immediately due and payable upon demand.

9. Expenses. If not defaulting, the Borrower shall pay no fees on this Note, other than interest.

10. Attorneys' Fees. If any party defaults under the terms of this Note, and another party employs an attorney to enforce this Note, whether or not legal proceedings are commenced, then such other party shall be entitled to recover from the defaulting party all reasonable attorneys' fees and other costs and expenses incurred in connection with such enforcement. If any party commences or is made a party to a lawsuit, arbitration or other proceeding to enforce or interpret this Note, the prevailing party in such proceeding shall be entitled to recover from the other party all reasonable attorneys' fees and other costs (whether otherwise taxable or recoverable) incurred in connection with such proceeding, including without limitation any appeal or enforcement of any judgment or decision rendered in such proceeding.

11. Full Payment. All amounts payable under this Note shall be paid in full without setoff, deduction or counterclaim. All amounts payable under this Note shall be free and clear of and without any deduction or withholding for or on account of any taxes, levies, penalties, duties, charges, fees, restrictions or conditions of any nature now or hereafter imposed by any federal, state, country or local government or any political subdivision or taxing authority thereof or therein. Borrower shall indemnify Noteholder against any such taxes, levies, imposts, duties, charges and fees (other than taxes on the income of Noteholder imposed by any taxing authority) which may be assessed against Noteholder or claimed or demanded from Noteholder in respect of any amount payable by Borrower hereunder, and against any costs, charges, expenses or liability arising out of or in respect of such assessment, claim or demand, to the fullest extent permitted by law.

12. Notices. All notices and other communications relating to this Note shall be in writing and shall be deemed given upon the first to occur of (x) deposit with the United States Postal Service or overnight courier service, properly addressed and postage prepaid; (y) transmittal by facsimile or e-mail properly addressed (with written acknowledgment from the intended recipient such as "return receipt requested" function, return e-mail, or other written acknowledgment); or (z) actual receipt by an employee or agent of the other party. Notices hereunder shall be sent to the following addresses, or to such other address as such party shall specify in writing:

(a) If to the Borrower:

Camshaft Capital Management LLC
936 Sw 1st Ave #1086
Miami, FL 33130
Attn: William Morton, President
E-mail: william@camshaftcapital.com

If to the Noteholder:

Camshaft Capital Fund, LP
950 Brickell Bay Dr. #5107
Miami, FL 33131
E-mail: William Morton william@camshaftcapital.com

13. Governing Law. This Note and any claim, controversy, dispute, or cause of action (whether in contract, tort, or otherwise) based on, arising out of, or relating to this Note and the transactions contemplated hereby shall be governed by and construed in accordance with the laws of the State of Florida.

14. Disputes.

(a) Submission to Jurisdiction.

(i) The Borrower irrevocably and unconditionally (A) agrees that any action, suit, or proceeding arising from or relating to this Note may be brought in the courts of the State of Florida sitting in Miami County, and in the United States District Court for the Southern District of Florida, and (B) submits to the exclusive jurisdiction of such courts in any such action, suit, or proceeding. Final judgment against the Borrower in any such action, suit, or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(ii) Nothing in this Section 14(a) shall affect the right of the Noteholder to bring any action, suit, or proceeding relating to this Note against the Borrower or its properties in the courts of any other jurisdiction.

(iii) Nothing in this Section 14(a) shall affect the right of the Noteholder to serve process upon the Borrower in any manner authorized by the laws of any such jurisdiction.

(b) Venue. The Borrower irrevocably and unconditionally waives, to the fullest extent permitted by law, (i) any objection that it may now or hereafter have to the laying of venue in any action, suit, or proceeding relating to this Note in any court referred to in Section 14(a), and (ii) the defense of inconvenient forum to the maintenance of such action, suit, or proceeding in any such court.

(c) Waiver of Jury Trial. THE BORROWER HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY, WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY.

15. Successors and Assigns. Upon notice to the Borrower, this Note may be assigned or transferred by the Noteholder to any individual, corporation, company, limited liability company, trust, joint venture, association, partnership, unincorporated organization, governmental authority, or other entity.

16. Integration. This Note constitutes the entire contract between the Borrower and the Noteholder with respect to the subject matter hereof and supersedes all previous agreements and understandings, oral or written, with respect thereto.

17. Amendments and Waivers. No term of this Note may be waived, modified, or amended, except by an instrument in writing signed by the Borrower and the Noteholder. Any waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given.

18. No Waiver; Cumulative Remedies. No failure by the Noteholder to exercise and no delay in exercising any right, remedy, or power hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, or power hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, or power. The rights, remedies, and powers herein provided are cumulative and not exclusive of any other rights, remedies, or powers provided by law.

19. Severability. If any term or provision of this Note is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Note or render such term or provision invalid or unenforceable in any other jurisdiction.

20. Counterparts. This Note and any amendments, waivers, consents, or supplements hereto may be executed in counterparts, each of which shall constitute an original, but all of which taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page to this Note by facsimile or in electronic ("pdf" or "tif") format shall be as effective as delivery of a manually executed counterpart of this Note.

21. Electronic Execution. The words "execution," "signed," "signature," and words of similar import in this Note shall be deemed to include electronic and digital signatures and the keeping of records in electronic form, each of which shall be of the same effect, validity, and enforceability as manually executed signatures and paper-based recordkeeping systems, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 U.S.C. § 7001 *et seq.*), the Electronic Signatures and Records Act of 1999 (N.Y. State Tech. Law §§ 301-309), and any other similar state laws based on the Uniform Electronic Transactions Act.

IN WITNESS WHEREOF, the Borrower has executed this Note as of the date set forth on the first page.

Camshaft Capital Management LLC

By: [signature]

Name: William Morton

Title: President

# Exhibit 3.6.

## APPENDIX B – ADDITIONAL SUBSCRIPTION REQUEST

Camshaft Capital Fund, LP
c/o Camshaft Capital Management, LLC
Attn: William Morton
936 SW 1st Ave #1086
Miami, Florida 33130

**Re: Camshaft Capital Fund, LP, Request for Additional Subscription**

William Morton, Investment Manager:

Reference is made to the Amended and Restated Limited Partnership Agreement dated as of July 01, 2021 (as the same may be amended, supplemented or revised from time to time, the "***Partnership Agreement***") of Camshaft Capital Fund, LP, a Delaware limited partnership (the "***Partnership***"). All capitalized terms used but not defined herein shall have the meanings given to them in the Partnership Agreement.

The undersigned is a Partner in the Partnership and, pursuant to *Section 2.03* of the Partnership Agreement, hereby requests to make an additional capital contribution to the Partnership. The undersigned acknowledges that (i) the minimum additional capital contribution is $100,000, unless otherwise agreed by the General Partner, and (ii) subscription amounts will be credited to the Partnership on the first business day of the next calendar month, except as provided by the General Partner.

The undersigned submits the following subscription amount:

$ 6,000,000.00

Payment is tendered in accordance with the following wire instructions:

| | |
|---|---|
| Beneficiary Bank: | Northern Trust |
| Beneficiary Name: | Camshaft Capital Fund, LP |
| ABA Number: | 026001122 |
| Account Number: | 269100200010 |
| Beneficiary Address: | 950 Brickell Bay Dr.<br>#5107<br>Miami, FL 33131 |

Furthermore, the undersigned reaffirms as of the date hereof all of the representations, warranties and acknowledgements previously made in the Subscription Agreement executed by the undersigned.

x Camshaft Capital Management LLC

Print full legal name of Limited Partner

x [signature]

Signature

x 07/16/22

Date

x William Morton

Print name of Authorized Signatory

x President

Title of Authorized Signatory

# Exhibit 3.7.

**usbank**

P.O. Box 1800
Saint Paul, Minnesota 55101-0800

3030 IMG S Y ST01

**Private Wealth Management**
**Business Statement**

Account Number:
1 575 2368 6176
Statement Period:
Apr 1, 2022
through
Apr 30, 2022

ADDFTTFFFFAFFTTDDFADFDAFFFFATFTFTAAFAAFTTTDATDDFDTDFTADATFDTDDFFT



000295320 01 SP 000638174565081 E
CAMSHAFT CAPITAL FUND LP
950 BRICKELL BAY DR APT 5107
MIAMI FL 33131-3964

Contact a Private Wealth Management Client Services Representative at 888.265.7962, 24 hours a day, 7 days a week for questions about your account(s). Visit privatewealth.usbank.com to view your statement online.

## INFORMATION YOU SHOULD KNOW

Effective May 26, 2022 the "Your Deposit Account Agreement" disclosure will include update(s) and may affect your rights.

Primary update:

- Updates to Unauthorized Transactions and Lost or Stolen Cards section

Beginning May 26, 2022, a copy of the "Your Deposit Account Agreement" disclosure will be available at your local U.S. Bank branch, online at **usbank.com**, or by calling 800-673-3555.

If you have any questions, you can call us at 800-673-3555. Our business bankers are here to help 8 a.m. to 8 p.m. CT Monday through Friday and 8 a.m. to 6:30 p.m. CT on Saturday. We accept relay calls. Our bankers are also available to help at your local branch via appointment.

## U.S. BANK SILVER - BUSINESS CHECKING

***Member FDIC***

U.S. Bank National Association

**Account Number 1-575-2368-6176**

### Account Summary

| | # Items | | |
|---|---|---|---|
| Beginning Balance on Apr 1 | | $ | 852,654.01 |
| Other Deposits | 11 | | 322,979,854.84 |
| Other Withdrawals | 8 | | 5,192,576.00- |
| **Ending Balance on Apr 30, 2022** | | **$** | **318,639,932.85** |

Number of Days in Statement Period 30

### Other Deposits

| *Date* | *Description of Transaction* | | *Ref Number* | | *Amount* |
|---|---|---|---|---|---|
| Apr 4 | Mobile Banking Transfer | From Account 157504967702 | | $ | 240,000.00 |
| Apr 11 | Reversed Charge | Miscellaneous | | | 96.00 |
| Apr 11 | Reversed Charge | Miscellaneous | | | 98.00 |
| Apr 11 | Reversed Charge | Miscellaneous | | | 272.00 |
| Apr 19 | Wire Credit REF005820<br>ORG=BRAZITALIA LIFESTYLE | TD BANK NA GLASTON 220419052333<br>LLC 2412 SW 16TH AVE | | | 50,000.00 |
| Apr 20 | Wire Credit REF000441<br>ORG=STONEX FINANCIAL INC | CADENCE BANK NA OF 220420039032<br>2 PERIMETER PARK SOUTH | | | 2,139,388.84 |
| Apr 25 | Wire Credit REF018528<br>ORG=JUAN C GARCIA PO BOX | JPMCHASE NYC 220425045548<br>2647 | | | 550,000.00 |
| Apr 27 | Wire Credit REF001418<br>ORG=BYJU'S ALPHA, INC. | JPMCHASE NYC 220427003827<br>3160 DE LA CRUZ | | | 100.00 |
| Apr 28 | Wire Credit REF004804<br>ORG=BYJU'S ALPHA, INC. | JPMCHASE NYC 220428015904<br>3160 DE LA CRUZ | | | 100.00 |
| Apr 28 | Wire Credit REF007875<br>ORG=BYJU'S ALPHA, INC. | JPMCHASE NYC 220428031079<br>3160 DE LA CRUZ | | | 317,999,800.00 |
| Apr 29 | Wire Credit REF009948<br>ORG=STONEX FINANCIAL INC | BMO HARRIS BANK NA 220429173827<br>CUSTOMERS SEGREGATED F | | | 2,000,000.00 |
| | | | **Total Other Deposits** | **$** | **322,979,854.84** |

usbank

## BALANCE YOUR ACCOUNT

To keep track of all your transactions, you should balance your account every month. Please examine this statement immediately. We will assume that the balance and transactions shown are correct unless you notify us of an error.

Outstanding Deposits

| DATE | AMOUNT |
|---|---|
| | |
| | |
| | |
| TOTAL | $ |

Outstanding Withdrawals

| DATE | AMOUNT |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| TOTAL | $ |

1. List any deposits that do not appear on your statement in the Outstanding Deposits section at the left. Record the total.
2. Check off in your checkbook register all checks, withdrawals (including Debit Card and ATM) and automatic payments that appear on your statement. Withdrawals that are NOT checked off should be recorded in the Outstanding Withdrawals section at the left. Record the total.
3. Enter the ending balance shown on this statement. $______________
4. Enter the total deposits recorded in the Outstanding Deposits section. $______________
5. Total lines 3 and 4. $______________
6. Enter the total withdrawals recorded in the Outstanding Withdrawals section. $______________
7. Subtract line 6 from line 5. This is your balance. $______________
8. Enter in your register and subtract from your register balance any checks, withdrawals or other debits (including fees, if any) that appear on your statement but have not been recorded in your register.
9. Enter in your register and add to your register balance any deposits or other credits (including interest, if any) that appear in your statement but have not been recorded in your register.
10. The balance in your register should be the same as the balance shown in #7. If it does not match, review and check all figures used, and check the addition and subtraction in your register. If necessary, review and balance your statement from the previous month.

## IMPORTANT DISCLOSURES TO OUR CONSUMER CUSTOMERS

**In Case of Errors or Questions About Your Checking, Savings, ATM, Debit Card, ACH, Bill Pay and Other Electronic Transfers**

If you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt, we must hear from you no later than 60 days* after we sent you the FIRST statement on which the error or problem appeared. Telephone us at the number listed on the front of this statement or write to us at U.S. Bank, EP-MN-WS5D, 60 Livingston Ave., St. Paul, MN 55107.

- Tell us your name and account number.
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. If we need more time, we may take up to 45 days to investigate your complaint. For errors involving new accounts, point-of-sale, or foreign-initiated transactions, we may take up to 90 days to investigate your complaint. If we decide to do this, we will credit your account within 10 business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your account.

*Please note: Paper draft and paper check claims must be disputed within 30 days per Your Deposit Account Agreement.

## IMPORTANT DISCLOSURES TO OUR BUSINESS CUSTOMERS

Errors related to any transaction on a business account will be governed by any agreement between us and/or all applicable rules and regulations governing such transactions, including the rules of the National Automated Clearing House Association (NACHA Rules) as may be amended from time to time. If you think this statement is wrong, please telephone us at the number listed on the front of this statement immediately.

## CONSUMER BILLING RIGHTS SUMMARY REGARDING YOUR RESERVE LINE

***What To Do If You Think You Find A Mistake on Your Statement***

If you think there is an error on your statement, write to us at:
U.S. Bank, P.O. Box 3528, Oshkosh, WI 54903-3528.
In your letter, give us the following information:

- ***Account information:*** Your name and account number.
- ***Dollar Amount:*** The dollar amount of the suspected error.
- ***Description of problem:*** If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.
You must notify us of any potential errors *in writing*. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.
While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**Reserve Line Balance Computation Method:** To determine your **Balance Subject to Interest Rate**, use the dates and balances provided in the Reserve Line Balance Summary section. The date next to the first Balance Subject to Interest is day one for that balance and is applicable up to (but not including) the date of the next balance (if there is one). We multiply the Balance Subject to Interest by the number of days it is applicable and add them up to get the same number of days in the billing cycle. We then divide the result by the number of billing days in the cycle. This is your **Balance Subject to Interest Rate**. Any unpaid interest charges and unpaid fees are not included in the Balance Subject to Interest. The ***INTEREST CHARGE*** begins from the date of each advance.

## REPORTS TO AND FROM CREDIT BUREAUS FOR RESERVE LINES

We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

## CONSUMER REPORT DISPUTES

We may report information about account activity on consumer and small business deposit accounts and consumer reserve lines to Consumer Reporting Agencies (CRA). As a result, this may prevent you from obtaining services at other financial institutions. If you believe we have inaccurately reported information to a CRA, you may submit a dispute by calling 844.624.8230 or by writing to: U.S. Bank Attn: Consumer Bureau Dispute Handling (CBDH), P.O. Box 3447, Oshkosh, WI 54903-3447. In order for us to assist you with your dispute, you must provide: your name, address and phone number; the account number; the specific information you are disputing; the explanation of why it is incorrect; and any supporting documentation (e.g., affidavit of identity theft), if applicable.

EQUAL HOUSING LENDER

Member FDIC

usbank

CAMSHAFT CAPITAL FUND LP
950 BRICKELL BAY DR APT 5107
MIAMI FL 33131-3964

**Private Wealth Management**
**Business Statement**

Account Number:
1 575 2368 6176
Statement Period:
Apr 1, 2022
through
Apr 30, 2022



## U.S. BANK SILVER - BUSINESS CHECKING (CONTINUED)

U.S. Bank National Association

**Account Number 1-575-2368-6176**

### Other Withdrawals

| Date | Description of Transaction | | Ref Number | Amount |
|---|---|---|---|---|
| Apr 1 | Transfer | To Account 157523709440 | 0100000779 | $ 2,080.00- |
| Apr 1 | Wire Debit REF005247 BNF=INTL FCSTONE | BMO HARRIS BANK NA 220401061842 FINANCIAL INC CUSTOMER SEG ACC | | 600,000.00- |
| Apr 7 | Wire Debit REF000442 BNF=HAOCHENG WANG | WELLS SF 220407007094 | | 10,000.00- |
| Apr 8 | Wire Debit REF002908 BNF=AGAINST ALL ODDS | HUNT COL 220408029269 RESEARCH LLC | | 157,300.00- |
| Apr 14 | Analysis Service Charge | | 1400000000 | 196.00- |
| Apr 22 | Wire Debit REF004840 BNF=INTERACTIVE BROKERS | CITIBANK OF NEW YO 220422043999 LLC | | 2,400,000.00- |
| Apr 26 | Wire Debit REF002212 BNF=APEX FUND AND | CIBC BANK USA CHIC 220426023330 CUSTODY SERVICES LLC | | 23,000.00- |
| Apr 29 | Wire Debit REF007979 BNF=INTERACTIVE BROKERS | CITIBANK OF NEW YO 220429235684 LLC ONE PICKWICK PLAZA | | 2,000,000.00- |
| | | **Total Other Withdrawals** | | **$ 5,192,576.00-** |

### Balance Summary

| Date | Ending Balance | Date | Ending Balance | Date | Ending Balance |
|---|---|---|---|---|---|
| Apr 1 | 250,574.01 | Apr 14 | 323,544.01 | Apr 26 | 639,932.85 |
| Apr 4 | 490,574.01 | Apr 19 | 373,544.01 | Apr 27 | 640,032.85 |
| Apr 7 | 480,574.01 | Apr 20 | 2,512,932.85 | Apr 28 | 318,639,932.85 |
| Apr 8 | 323,274.01 | Apr 22 | 112,932.85 | Apr 29 | 318,639,932.85 |
| Apr 11 | 323,740.01 | Apr 25 | 662,932.85 | | |

Balances only appear for days reflecting change.

## ANALYSIS SERVICE CHARGE DETAIL

Account Analysis Activity for: March 2022

| | | |
|---|---|---|
| Account Number: | 1-575-2368-6176 | $ 196.00 |
| Analysis Service Charge assessed to | 1-575-2368-6176 | $ 196.00 |

1 Financial institutions are required by the State of Iowa to charge sales taxes on certain service charges related to checking accounts. Any assessed tax has been itemized on your statement.

**Service Activity Detail for Account Number 1-575-2368-6176**

| Service | Volume | Avg Unit Price | Total Charge |
|---|---|---|---|
| **Depository Services** | | | |
| Combined Transactions/Items | 13 | | No Charge |
| Subtotal: Depository Services | | | 0.00 |
| **Wire Transfers** | | | |
| Incoming Fedwire | 3 | 14.00000 | 42.00 |
| Bank- Fedwire Non-Repetitive | 2 | 40.00000 | 80.00 |
| Incoming Fedwire Ctp | 1 | 14.00000 | 14.00 |
| Wire Advice Mail | 6 | 10.00000 | 60.00 |
| Subtotal: Wire Transfers | | | 196.00 |
| **ACH Services** | | | |
| ACH Received Addenda Item | 2 | | No Charge |
| Subtotal: ACH Services | | | 0.00 |
| Fee Based Service Charges for Account Number 1-575-2368-6176 | | | $ 196.00 |

usbank

This page intentionally left blank

# Exhibit 3.8.

JPMorgan Chase Bank, N.A.
P O Box 6076
Newark, DE 19714 - 6076

Primary Account: 000000741806894
For the Period 7/7/22 to 7/29/22

## J.P. Morgan Team

| | |
|---|---|
| Craig Williams | (800) 634-3763 |
| Addie P Pongpinsiri | |
| For assistance after business hours, 7 days a week. | (800) 576-6209 |
| Deaf and Hard of Hearing | (800) 242-7383 |
| Online access: **www.jpmorganonline.com** | |

00000292 DPI 021 162 21122 NNNNNNNNNNN P 1 000000000 D1 0000
CAMSHAFT CAPITAL FUND, LP
950 BRICKELL BAY DR NO. 5107
MIAMI FL 33131

# Commercial Checking

| Checking Account Summary | Instances | Amount |
|---|---|---|
| **Beginning Balance** | | **0.00** |
| Deposits & Credits | 3 | 217,250,936.00 |
| Payments & Transfers | 11 | (210,073,374.30) |
| **Ending Balance** | **14** | **$7,177,561.70** |

J.P.Morgan

J.P. Morgan

000000741806894
CAMSHAFT CAPITAL FUND, LP

Primary Account: 000000741806894
For the Period 7/7/22 to 7/29/22

## Deposits & Credits

| Date | Description | Amount |
|---|---|---|
| 07/11 | Fedwire Credit Via: Texas Capital Bank/111017979 B/O: Camshaft Capital Fund Lp Miami, FL 33131- Ref: Chase Nyc/Ctr/Bnf=Camshaft Capital Fund, Lp Miami FL 33131- US/Ac-0000 00007418 Rfb=O/B Texas Capita Imad: 0711K1B7041C000782 Trn: 0285940192Ff | 2,250,000.00 |
| 07/14 | Fedwire Credit Via: Northern Trust International/026001122 B/O: Camshaft Capital Fund Lp USA Ref: Chase Nyc/Ctr/Bnf=Camshaft Capital Fund, Lp Miami FL 33131- US/Ac-0000 00007418 Rfb=O/B Northern Int Obi=A Ba # - 021000021 Bbi=/Chgs/USD0,00/ Imad 0714G1B76F2C001326 Trn: 0517340195Ff | 215,000,000.00 |
| 07/14 | Remote Online Deposit | 936.00 |
| **Total Deposits & Credits** | | **$217,250,936.00** |

## Payments & Transfers

| Date | Description | Amount |
|---|---|---|
| 07/11 | 07/11 Fedwire Debit Via: Texas Capital Dal/111017979 A/C: Iq Eq US Outsourced Services Ref: Invoice 1042749/Time/12:24 Imad 0711B1Qgc08C018482 Trn: 1120100192Es | 18,500.00 |
| 07/11 | 07/11 Fedwire Debit Via: Fst Rep Bk Sf/321081669 A/C: Hyde And Union Content LLC Ref: Invoice 002 Imad: 0711B1Qgc06C009042 Trn: 1119800192Es | 3,500.00 |
| 07/11 | 07/11 Fedwire Debit Via: Texas Capital Dal/111017979 A/C: Iq Eq US Outsourced Services Ref: Invoice 1044449/Time/12:24 Imad 0711B1Qgc06C009050 Trn: 1119900192Es | 377.50 |
| 07/11 | 07/11 Chips Debit Via: Northern Trust International/0112 A/C: Camshaft Capital Fund Lp Ssn: 0406698 Trn: 1120000192Es | 1,000,000.00 |
| 07/12 | 07/12 Chips Debit Via: Barclays Bank Plc/0257 A/C: Barclays Bank Plc London Ec3 Nhj, England Ben: Oci Limited Gb Ref: Wire Test Ssn: 0401441 Trn: 1198600193Es | 100.00 |
| 07/14 | 07/14 Chips Debit Via: Barclays Bank Plc/0257 A/C: Barclays Bank Plc London Ec3 Nhj, England Ben: Oci Limited Gb Ssn: 0471883 Trn: 1258000195Es | 190,812,300.00 |
| 07/15 | 07/15 Online Transfer To Chk ...6811 Transaction#: 14815002685 | 1,667,500.00 |
| 07/15 | 07/15 Chips Debit Via: Barclays Bank Plc/0257 A/C: Barclays Bank Plc London Ec3 Nhj, England Ben: Oci Limited Gb Ssn: 0468371 Trn: 1240200196Es | 15,095,150.00 |
| 07/15 | 07/15 Online Transfer To Chk ...6811 Transaction#: 14818291501 | 1,424,850.00 |

000000741806894
CAMSHAFT CAPITAL FUND, LP

Primary Account: 000000741806894
For the Period 7/7/22 to 7/29/22

## Payments & Transfers CONTINUED

| Date | Description | Amount |
|---|---|---|
| 07/20 | 07/20 Online Domestic Wire Transfer Via: Bmo Harris Bank NA/071000288 A/C: Winston Strawn Llp Chicago IL 60694 US Ref Invoice 2872434/Bnf/Winston & Strawn Llp/Time/07:00 Imad: 0720B1Qgc08C003823 Trn: 3113832201Es | 46,621.80 |
| 07/29 | 07/29 Online Domestic Wire Transfer Via: Fst Rep Bk Sf/321081669 A/C: Hyde Union Content LLC 6689 Portland OR 97205 US Ref Camshaft Invoice 3/Bnf/Hyde & Union Content, LLC-6689 Imad: 0729B1Qgc07C025568 Trn: 3484972210Es | 4,475.00 |
| Total Payments & Transfers | | ($210,073,374.30) |

## Daily Ending Balance

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 07/11 | 1,227,622.50 | 07/14 | 25,416,158.50 | 07/20 | 7,182,036.70 |
| 07/12 | 1,227,522.50 | 07/15 | 7,228,658.50 | 07/29 | 7,177,561.70 |

*Your service charges, fees and earnings credit have been calculated through account analysis.*

J.P. Morgan

Primary Account: 000000741806894
For the Period 7/7/22 to 7/29/22

# Important Information About Your Statement

## In Case of Errors or Questions About Your Electronic Funds Transfers

Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-consumers, use your J.P. Morgan Team contact information) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation

## In Case of Errors or Questions About Non-Electronic Transactions:

Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

Bank products and services are offered by JPMorgan Chase Bank, N.A. and its affiliates. Securities are offered by J.P. Morgan Securities LLC, member FINRA and SIPC

Investment Products: Not FDIC insured • No bank guarantee • May lose value

J.P.Morgan

# Exhibit 4

**Exhibit Under Seal**

# Exhibit 5

**Exhibit Under Seal**

# Exhibit 6

GRANTED WITH MODIFICATIONS

EFiled: May 22 2023 01:32PM EDT
Transaction ID 70059341
Case No. 2023-0488-MTZ

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

GLAS TRUST COMPANY LLC, in its capacity as Administrative Agent and Collateral Agent, and TIMOTHY R. POHL,

Plaintiffs,

v.

RIJU RAVINDRAN, BYJU'S ALPHA, INC., and TANGIBLE PLAY, INC.,

Defendants.

C.A. No. 2023-____-___

**[PROPOSED] *STATUS QUO* ORDER**

WHEREAS, plaintiffs GLAS Trust Company LLC, in its capacity as Administrative Agent and Collateral Agent ("GLAS") and Timothy R. Pohl ("Mr. Pohl" and, together with GLAS, "Plaintiffs") filed a Verified Complaint Pursuant to 8 *Del. C.* § 225 (the "Complaint") against defendants Riju Ravindran, BYJU's Alpha, Inc. and Tangible Play, Inc. (collectively "Defendants" and with Plaintiffs, the "Parties," and each, a "Party"), a Motion for *Status Quo* Order, a Motion for Expedited Proceedings, and a Brief in Support of Their Motion for Expedited Proceedings and for *Status Quo* Order; and

WHEREAS, the Court of Chancery has considered Plaintiffs' Motion for *Status Quo* Order (the "Motion");

**IT IS HEREBY ORDERED** this ____ day of _________, 2023, as follows:

1. Plaintiffs' Motion is GRANTED.

2. Pending further Order of this Court, the Board of Directors (the "Board") of BYJU's Alpha, Inc. ("BYJU's Alpha" or the "Company") shall continue to consist of Timothy R. Pohl as sole director.

3. Pending further Order of this Court, Mr. Pohl shall continue to serve as the Chief Executive Officer and Secretary of the Company, the sole officer of the Company.

4. Pending further Order of this Court, Mr. Pohl, the sole director and officer of the Company, shall be provided immediately, and in no event later than within two (2) business days, access to and exclusive control over all the accounts (including all deposit, securities, and commodities accounts, and other bank accounts and similar assets), servers, systems, documents, and information of the Company—including any passwords, account numbers, credentials, permissions, or similar information necessary to facilitate such access and exclusive control—as necessary to perform his roles as sole director and officer of the Company in the ordinary course of business, and no Party shall take any steps to deny or restrict such access and control.

5. Except upon further Order of the Court or agreement between Plaintiffs, on the one hand, and Defendants, on the other hand, neither (i) the Parties; nor (ii) any of their respective directors, officers, employees, or agents shall cause the

Company to take any action outside the ordinary course of business, including, but not limited to:

(a) taking any further action that could result in a change to the size or composition of the Board;

(b) hiring and/or appointing any new officer of the Company;

(c) issuing, selling, distributing, authorizing, establishing, creating, changing, or disposing of any securities of, or interest in securities of, the Company (including without limitation, any common stock, preferred stock, options, warrants or purchase rights);

(d) authorizing or entering into any contract or arrangement or otherwise binding the Company, directly or indirectly, to sell, transfer, contribute, or otherwise dispose of, pledge, materially encumber or otherwise materially restrict or limit any interest in the Company, or any asset (whether tangible or intangible) in which the Company has an interest (including cash, cash equivalents, and securities), except in the ordinary course of business;

(e) modifying, amending, or abandoning any contract or arrangement to which the Company is currently a party, except in the ordinary course of business;

(f) authorizing, issuing, incurring, or assuming new debt or changing the terms of the Company's debt, except in the ordinary course of business;

(g) undertaking, authorizing, approving or directing any action in furtherance of amending, altering, modifying, repealing, or adopting any provision of the Bylaws or the Certificate of Incorporation of the Company;

(h) filing a bankruptcy petition or acquiring or selling any business or operation of the Company, whether by merger, purchase of assets or equity interest, or otherwise;

(i) entering into any legally binding commitment with respect to, or agreeing to do, any of the foregoing, except to the extent required by an existing contract or applicable law; or

(j) [intentionally omitted]

6. For purposes of the preceding paragraph, the following actions shall be deemed to be actions taken in the ordinary course of business:

(a) payment of regularly scheduled payments of interest and amortization under the Credit Agreement as they become due and payable;

(b) payment of payroll, including standard employee benefits;

(c) payment of recurring costs related to operating infrastructure including rent, information systems and technology, and utilities;

(d) payment of fees and expenses to professional advisors, including without limitation, financial advisor, attorneys' and accountant fees, except no

Company funds may be used to advance any Party's fees or expenses (including but not limited to attorneys' fees) in this action;

(e) maintenance and update of Company systems; and

(f) service to existing clients, and solicitation and onboarding of new clients.

7. The Parties shall not knowingly tamper with, destroy, relocate, or discard any documents or electronic data in their or the Company's possession, custody, or control relating in any way to the matters alleged in the Complaint.

8. During the pendency of this action, none of the Parties, nor their respective affiliates, directors, agents, employees, attorneys or any other person acting in concert with them, shall take, or cause to be taken, any action in contravention of this Order.

9. The restrictions imposed by this Order may be waived on a case-by-case basis by written agreement of the Parties or modified by the Court for good cause shown.

______________________________

Vice Chancellor Morgan T. Zurn

This document constitutes a ruling of the court and should be treated as such.

**Court:** DE Court of Chancery Civil Action

**Judge:** Morgan Zurn

**File & Serve Transaction ID:** 70055710

**Current Date:** May 22, 2023

**Case Number:** 2023-0488-MTZ

**Case Name:** CONF/ORD - GLAS Trust Company LLC in its capacity as Administrative Agent and Collateral Agent and Timothy R. Pohl v. Riju Ravindran, et al.

**Court Authorizer:** Morgan Zurn

---

**Court Authorizer Comments:**

This order shall be interim if the parties continue to disagree about the provision previously supplied as Section 5(j); the standards for amending a status quo order shall not govern further discussions of that provision. Otherwise, this status quo order shall govern subject to those standards pending the final adjudication of this action.

**/s/ Judge Morgan Zurn**

# Exhibit 7

**Exhibit Under Seal**

# Exhibit 8

**Exhibit Under Seal**

# Exhibit 9

# UNITED STATES BANKRUPTCY COURT

FOR THE District of DELAWARE

In re BYJU'S ALPHA, INC.
Debtor

(Complete if issued in an adversary proceeding)

BYJU'S ALPHA, INC.,
Plaintiff
v.
CAMSHAFT CAPITAL FUND, LP, et al.
Defendant

Case No. 24-10140 (JTD)

Chapter 11

Adv. Proc. No. 24-50013 (JTD)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: HSBC Bank USA, N.A.
*(Name of person to whom the subpoena is directed)*

■ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE | DATE AND TIME |
| --- | --- |
| Quinn Emanuel Urquhart & Sullivan, LLP 295 Fifth Avenue, New York, NY 10016 | 4/21/2025 5:30 p.m. |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
| --- | --- |
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 3/21/2025

CLERK OF COURT

OR

_________________________
*Signature of Clerk or Deputy Clerk*

/s/ Jianjian Ye
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* BYJU'S ALPHA, INC. , who issues or requests this subpoena, are:
Jianjian Ye, 295 Fifth Ave., New York, NY 10016, jianjianye@quinnemanuel.com, 212-849-7573, Jordan Nakdimon 212-849-7368

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: ______________________________________________
on *(date)* __________ .

☐ I served the subpoena by delivering a copy to the named person as follows: ____________________________________
____________________________________________________________________________________________________
__________________________________ on (*date*) ___________________ ; or

☐ I returned the subpoena unexecuted because: ____________________________________________________________
____________________________________________________________________________________________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _______________________ .

My fees are $ _________ for travel and $_________ for services, for a total of $_________ .

I declare under penalty of perjury that this information is true and correct.

Date: _______________

________________________________________________
*Server's signature*

________________________________________________
*Printed name and title*

________________________________________________
*Server's address*

Additional information concerning attempted service, etc.:

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## SCHEDULE A

## DEFINITIONS

As used herein, the following terms have the meanings indicated below:

1. "**Action**" means the above-captioned adversary proceeding.

2. "**Communication**" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

3. "**SWIFT**" means the Society for World Interbank Financial Telecommunication.

4. "**MT**" ("message text") means the traditional message type for use on the SWIFT network.

5. "**MX**" means the XML message type for use on the SWIFT network.

6. "**Electronically Stored Information**" ("ESI") means, without limitation, the following:

a. information that is generated, received, processed, and recorded, and/or maintained by or in computers, databases, systems, network drives, shared spaces, external and removable media, and other electronic devices and sources, including, without limitation, voicemail, email, Instant Messaging systems, and transaction processing, and ledger systems;

b. internal or external websites and other shared spaces;

c. output resulting from the use of any software program, database, or other system, including, without limitation, word processing Documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, SWIFT portal, SWIFT database, AOL Instant MessengerTM (or similar programs) or bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment;

d. activity listings of electronic mail receipts and/or transmittals; and any and all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, flash memory, thumb drives, memory sticks, and related media used to move and store data, such as, but not limited to, a personal digital assistant, e.g., Palm Pilot, Blackberry, or similar device, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all Documents requested herein; and

e. archived data, legacy data, and back-up tapes.

7. "**Document**" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure ("**FRCP**") 34(a)(1)(A), made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7034. A draft or non-identical copy is a separate document within the meaning of this term per FRCP 34(a)(1)(A) made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7034.

8. When referring to documents, "**to identify**" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

9. The words "**include**" and "**including**" mean "including but not limited to." The use of the term "include" in any request shall not be used to limit the generality or scope of any request. Nor shall the generality of any request be limited by the fact that another request touches on the same topic with a greater or lesser degree of specificity.

10. The words "**relating to**" means regarding, relating to, involving, concerning, referring to, describing, evidencing, constituting, relevant to, or in connection with, either directly or indirectly.

11. "**Byju's Alpha**" means the entity named as Plaintiff in the Action and in whose favor a judgment was entered against Defendants on March 14, 2025, including any agents, predecessors, successors, parents, subsidiaries, departments, divisions, joint ventures, partnerships, and other branches or affiliates, together with all officers, directors, employees, subsidiaries, affiliates, agents, or other person acting (or purporting to act) on behalf of the foregoing.

12. "**You**" and "**Your**" means the recipient of this subpoena and its officers, directors, employees, subsidiaries, affiliates, agents, or other persons acting (or purporting to act) on its behalf.

13. "**Person**" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

14. "**Concerning**" means relating to, referring to, describing, evidencing or constituting.

15. The terms defined above and the individual requests for production and inspection are to be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the FRCP or any applicable laws.

16. All words not defined in these Definitions shall be construed using their plain and ordinary meaning. If more than one meaning can be ascribed to a word, the meaning (or combination of meanings) that would make a Document be covered by the requests for production should be used, unless You provide written notice of the specific ambiguity and state the definition of the word used to exclude the Document from the scope of the request.

17. These Definitions are provided only for purposes of discovery, in conformance with FRCP 34(a) and Federal Rules of Bankruptcy Procedure 7034, and are not intended to be used for any purpose other than discovery. Byju's Alpha reserves the right to modify these Definitions or utilize different Definitions for any other purpose.

## RULES OF CONSTRUCTION

The following rules of construction apply to this discovery request:

1. The terms "**all**," "**any**," and "**each**" shall each be construed as encompassing any and all.

2. The connectives "**and**" and "**or**" shall be construed either disjunctively or

conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3. The use of the singular form of any word includes the plural and vice versa.

**INSTRUCTIONS**

1. You are requested to produce all non-privileged Documents and other things described below that are within Your possession, custody or control, or in the possession, custody or control of Your attorneys, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships, parents, or subsidiaries, and persons under their control.

2. A Document or other thing is deemed to be in Your actual or constructive possession, custody or control if it is in Your physical custody or if it is in the physical custody of any other Person and You (a) have a right, by control, contract, statute, order or otherwise, to use inspect, examine or copy such Documents on any terms; (b) have an understanding, express or implied, that You may use, inspect, examine or copy such Documents upon any terms; or (c) have, as a practical matter, been able to use, inspect, examine or copy such Document when You sought to do so. Such other Persons include record retention vendors, and technology, data, or other 3rd party IT, cloud or other service providers.

3. Unless otherwise indicated, these requests seek Documents and Communications concerning the time period from April 1, 2021 through present. If any Document, Communication, or other information is dated outside of the Relevant Time Period but is necessary for a complete understanding of a Document or Communication covered by the requests, such Document outside of the Relevant Time Period shall be produced. If any Document or Communication is undated and the date of its preparation cannot be determined, the Document or Communication shall be produced if otherwise responsive to the requests.

4. Each Document or other thing requested shall be produced in its entirety along

with all non-identical versions thereof and without abbreviation or redaction. Further, all attachments, enclosures, cover letters, memoranda, and appendices shall also be produced. If a Document or other thing responsive to any request cannot be produced in full, it shall be produced to the extent possible, with an explanation stating why production of the remainder is not possible. Any alteration of a responsive Document or other thing, including notes, underlining, stamps, drafts, revisions, modifications, and other versions, is a separate Document or other thing and is to be produced as a separate Document or other thing. For all Documents and other things, any family relationship should be captured and reflected in the production. Further, if any portion of any Document is responsive to any request in this subpoena, the entire Document is to be produced. A Document with handwritten, typewritten or other recorded notes, editing marks, etc., is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

5. Documents and other things not otherwise responsive to a request shall be produced if such materials mention, discuss, refer to, or explain the materials called for by a request, or if such materials are attached to materials called for by a request (*e.g.*, routing slips, transmittal emails, transmittal memoranda, letters, cover letters, comments, evaluations, or similar materials).

6. Each request shall be answered on the basis of Your entire knowledge, from all sources, after a reasonable and good faith inquiry has been made and a search has been conducted.

7. All Documents produced pursuant to this subpoena are to be produced as they are kept in the usual course. All responsive ESI that is maintained in the usual course in electronic format shall be produced in its native format along with the software necessary to interpret such files if such software is not readily available, with the metadata normally contained within such Documents, and the necessary load files. If such metadata is not available, each Document shall

be accompanied by a listing of all file properties concerning such Document, including, but not limited to, all information concerning the date(s) the Document was last accessed, created, modified, or distributed, and the author(s) and recipient(s) of the Document. If production in native format is impossible or impracticable, ESI may be produced in non-proprietary format, such as such as .xls, .csv, .jpg, .tif, or .pdf, or other agreed upon format, at the highest resolution available along with the metadata normally contained within such Documents.

8. Documents in large or complex formats, such as large Excel-format spreadsheets or accounting databases, for which non-proprietary format imaging would alter the presentation of the data, should be produced in their native format.

9. For each data file provided, You should separately provide a control file reflecting the search protocol utilized to obtain such data file.

10. ESI should not be produced in a form that removes or significantly degrades the ability to search the ESI by electronic means where the ESI is ordinarily maintained in a way that makes it searchable by electronic means.

11. File folders with tabs or labels or directories of files identifying documents shall be produced intact with such documents.

12. Documents attached to each other shall not be separated. All documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all addenda, appendices, attachments and enclosures.

13. If there are no Documents or other things responsive to any particular request, Your response shall state so in writing.

14. In the event that any Document or other thing called for by these requests is withheld on the basis of a claim or privilege or immunity:

a. The person asserting the privilege shall identify the nature of the privilege

(including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

b. The following information shall be provided in the objection unless divulgence of such information would cause disclosure of the allegedly privileged information: (i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other;

15. Any purportedly privileged Document or other thing containing non-privileged material must be produced, redacting only the portion purportedly privileged.

16. If You have any good faith objections to any request or any part thereof, the specific nature of the objection and whether it applies to the entire request or to a part of the request shall be stated in accordance with FRCP 34, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7034. If there is an objection to any part of a request, then the part objected to should be identified and Documents and other things responsive to the remaining unobjectionable part should be timely produced. Further, if You object to part of a request, You must state the basis of Your objections in accordance with FRCP 34.

17. In the event that any Document or other thing responsive to these requests has been lost, discarded, or destroyed, that Document or other thing is to be identified by stating as completely as possible: (a) the authors or creators of the material, (b) all persons who received copies of the material, including any indicated and blind copy recipients, (c) the present custodian of the material, (d) the date of the material, (e) the material's date of destruction or discard, manner of destruction or discard, and the reason for destruction or discard, and (f) the persons

authorizing and carrying out such destruction or discard.

18. Each production shall be submitted with a transmittal letter or email that includes the case caption, production volume name, encryption method/software used if applicable, and passwords for any password protected files if applicable.

19. Upon request, counsel for Byju's Alpha will provide to You an electronic copy of this subpoena in Microsoft Word document file format to facilitate Your answering the request below.

**REQUEST FOR PRODUCTION**

1. All Documents concerning SWIFT messages received or transmitted during the Relevant Time Period through Your SWIFT portal or stored in Your SWIFT database and satisfying the following SWIFT message search criteria:

SWIFT Message Search Criteria:

1) Transaction date = April 1, 2021 through the date of the search;

2) SWIFT Message Standard:

a. MT Message Type = 101, 102, 102+, 103, 103+, 104, 110, 111, 121, 195, 196, 198, 199, 200, 201, 202, 202 COV, 203, 205, 207, 210, 295, 296, 298, 299, 304, 307, 320, 321, 400, 410, 416, 420, 495, 496, 498, 499, 500, 502, 509, 515, 600, 601, 604, 605, 606, 607, 608, 609, 620, 700, 701, 707, 710, 756, 760, 767, 795, 796, 798, 799; 900, 910, 940, 941, 942, 950, or 986; and/or

b. MX Equivalent Type = pain.001, pacs.008, pacs.009cov, pacs.003, pain.008, camt.026, camt.027, camt.033, camt.034, camt.028, camt.031, camt.029, pacs.009, camt.050, camt.057, tsrv.001, tsrv.005, camt.054, camt.053, or camt.052;

3) Where numerical values are present, MT Message Field 32*n* or 33*n* (where *n* is an optional letter), or MX Equivalent Type Element <IntrBkSttlmAmt>, <IntrBkSttlmDt>, or <InstdAmt>, or any currency amount field = greater than or equal to **1,000**; and

4) MT Message Field 50*n*, 59*n*, 70*n*, 72, 82*n*, 87*n*, or 95*n* (where *n* is an optional letter), or MX Equivalent Type Element <InstdAmt>, <Dbtr>, <Cdtr>, <RmtInf>, <Ustrd>, <Strd>, <ChrgsInf>, <PrvsInstgAgt1>, <PrvsInstgAgt2>, <PrvsInstgAgt3>, <RltdRmtInf>, or any beneficiary, originator, or instruction field, contain any of the SWIFT Search Terms listed in **Table A**, including the variations of the SWIFT Search Terms separated by semicolons in **Table A**, regardless of whether the relevant field contains other text.

# TABLE A
## SWIFT SEARCH TERMS TO BE SEARCHED

| Term | Variations |
|---|---|
| Aakash Edutech Pvt Ltd | "Aakash Edutech";<br>"Aakash" and "EDU" |
| Accuvise Administrators Limited | "Accuvise" |
| Ackees Mobile Tech Pvt Ltd | "Ackees Mobile Tech" |
| Adar Poonawalla | |
| AE550200000023491640100 | |
| Airretailer Technology LLC | |
| Aiyo International Limited | "Aiyo International" |
| Ajin Purushothaman | "Ajin Purushothaman" |
| Alexandra Tanya Morton | "Alexandra Morton"; "Alexandra T. Morton" |
| Ananya Srivastava | "Ananya Shree" |
| Andrew Simon | "Andrew Simon" AND "DC Legal" |
| Andrew Wagner | |
| Anisree Vellapalath | |
| Anita Kishore | |
| anita.k27@gmail.com | |
| anita@thinkandlearn.in | |
| anitak27@gmail.com | |
| Anticee Solutions Ltd | "Anticee Solutions" |
| Anubhav Sinha | |
| Apex Fund | "Apex Fund" AND "Godolphin" |
| Arun Kant | "Arun Kant" |
| Astra Management Services | "Astra Management" |
| Aswani Nambarambath | |
| Aswani Valsaraj | |
| Banker Corporation | |
| Beeaar Investco Pte Ltd | "Beeaar" |
| Benchmark Investments LLC | "Benchmark Investments" |
| Bisy Philip Rajendran | |
| Black Hills Solutions | |
| Blaise Pascal Barrelet | "Blaise Barrelet" |
| Bluebell Capital Investments Ltd | "Bluebell Capital Investments" |
| Brett Borgensen | "Brett Borgensen" |
| Brikram Trading | |
| Burton Varley Ltd | "Burton Varley" |
| Byju Raveendran | "Byju R*"; "Byju Raveendran";<br>"Byju Ravindran" |

**TABLE A**
**SWIFT SEARCH TERMS TO BE SEARCHED**

| | |
|---|---|
| BYJU's Alpha, Inc | "Byjus Alpha"; "Byju's Alpha"; "Byju Alpha"; "Byjus"; "Byju's" |
| Byju's Global Pte Ltd | "Byju's Global"; "Byjus Global" |
| Byju's Holdings 1 Pte Ltd | "Byju's Holdings"; "Byjus Holdings" |
| Byju's Holdings 2 Pte Ltd | "Byju's Holdings"; "Byjus Holdings" |
| Byju's Investments Pte Ltd | "Byju's Investments" |
| Byju's Pte Ltd | "Byju's Private"; "Byju's Pte" |
| BYJU's UK Ltd | "Byju's UK" |
| byjuraveendran@gmail.com | |
| byjuraveendran@icloud.com | |
| Byjus Investments Pvt Ltd | "Byjus Investments" |
| Byju's K3 Education Pvt Ltd | "Byju's K3"; "Byjus K3" |
| Byjus Learning Company FZCO | "Byjus Learning Company"; "Byju's Learning Company" |
| BYJU's S.A. de C.V. | "BYJU's S.A."; "BYJUs S.A." |
| BYJU's Tecnologia Educacional LTDA | "BYJU's Tecnologia Educational"; "BYJUs Technologia Educational" |
| Camelback Financial Corp. | |
| cameron.morton96@gmail.com | |
| cameronmorton96@gmail.com | |

**TABLE A**
**SWIFT SEARCH TERMS TO BE SEARCHED**

| | |
|---|---|
| Camshaft Capital Advisors LLC | "Camshaft" |
| Camshaft Capital Credit LP | "Camshaft" |
| Camshaft Capital Fund LP | "Camshaft" |
| Camshaft Capital Fund, LP | "Camshaft" |
| Camshaft Capital Management, LLC | "Camshaft Capital" |
| Camshaft Capital Advisors, LLC | "Camshaft" |
| Camshaft Consulting LLC | "Camshaft Consulting" |
| Camshaft CRE 1 LLC | "Camshaft CRE" |
| Camshaft Credit LP | "Camshaft Credit" |
| Camshaft Credit LP SPV 1 | "Camshaft" |
| Camshaft Credit Management LLC | "Camshaft" |
| Camshaft Fund, LP | "Camshaft Fund" |
| Camshaft LLC | “Camshaft” |
| Camshaft LP -- Activist I | “Camshaft” |
| Camshaft LP Short Term Liquid Assets 1 | "Camshaft LP" |
| Camshaft LP SPV 1 | "Camshaft" |
| Camshaft Management , LLC | "Camshaft Management" |

**TABLE A**
**SWIFT SEARCH TERMS TO BE SEARCHED**

| | |
|---|---|
| Camshaft Management LLC | "Camshaft" |
| Cema Language Solutions Corp | "Cema Language Solutions" |
| Charlotte Mason | "Charlotte Mason" w/10 ("OCI" OR "Aiyo") |
| Chris Rigby | "Chris Rigby" AND "Stenn" |
| cman9625@yahoo.com | |
| Cutting Edge Sports FZ-LLC | "Cutting Edge Sports" |
| Davin Goldsztajn | |
| DC Legal FZ LLC | "DC Legal |
| Deeptha AR | "Deeptha Akhila Raghavan"; "Deeptha Ravindran" |
| Delta Management Services | "Delta Management" |
| Dheeraj Guliani | |
| Digital Aristotle Pvt Ltd | "Digital Aristotle" |
| Divya Gokulnath | "Divya G*"; "Divya Gokulnath" |
| divya@byjus.com | |
| divya@thinkandlaern.in | |
| divya@thinkandlearn.in | |
| Donald J. Morton | "Donald Morton" |
| Dynaveo Ltd | "Dynaveo" |
| E44840008 | |
| E44951003 | |
| EF Hutton | "EF Hutton" |
| Enso Group | |
| E-Outlets Limited | "E-Outlets" |
| Epic! Creations Inc | "Epic! Creations"; "Epic Creations" |
| Epsilon, Villa B12, Yemlur village, Varthur hobli, Bangalore, Kartnataka, India, 560037 | Epsilon w/10 (Bengaluru OR Bangalore) |
| Epsilon, Villa B13, Yemlur village, Varthur hobli, Bangalore, Kartnataka, India, 560037 | Epsilon w/10 (Bengaluru OR Bangalore) |
| EST Capital AG | "EST Capital" |
| Ethos Fashion Sro | "Ethos Fashion Sro" |

**TABLE A**
**SWIFT SEARCH TERMS TO BE SEARCHED**

| | |
|---|---|
| Future Ideas Trading LLC | "Future Ideas Trading" |
| GeoGebra GmbH | "GeoGebra" |
| GL Pte Singapore | |
| Global Lingo (S) Pte Ltd | "Global Lingo" |
| Godolphin Fund | "Godolphin Fund" |
| Gokulnath Kuppuswamy Naidu | "Gokulnath Naidu"; "Gokulnath Kuppuswamy" |
| Golden Mile 3, Palm Jumeriah, Dubai | |
| Gorillahouse Tech Ltd | "Gorillahouse" |
| Great Lakes E-Learning Services Pvt Limited | "Great Lakes Learning"; "Great Lakes E-Learning" |
| Great Learning Education Services Pvt Ltd | “Great Learning Education Services” |
| Greengage Investments Ltd | "Greengage Investments" |
| H Motion Ltd | "H Motion" |
| Harrymax Consultants LLC | "Harrymax Consultants" |
| Haygot Services Pvt Ltd | "Haygot" |
| HDFC Bank Limited | |
| HSBC Singapore | |
| Hydra Enforcement, LP | “Hydra Enforcement” |
| Hydra Global LLC | “Hydra Global” |
| ICC Business Corporation FZ LLC | "ICC Business Corporation" |
| ICICI Bank Limited | |
| IIFL Finance Limited | |
| Incred Financial Services | "Incred Financial" |
| Infiken Internet Labs Pvt Ltd | “Infiken” |
| Innovagro Foods LLP | "Innovagro" |
| Inspilearn Education Pvt Ltd | “Inspilearn” |
| Inspilearn LLC | "Inspilearn" |
| Intap Labs Pvt Ltd | “Intap Labs” |
| Itria Venture S | Itria Venture |
| Jamey Jacob | "Jamey Jacob"; "J Jacob" |
| Jason Perz | "Jason Perz"; "J Perz" |
| Jed Trail, Sevierville, TN 37862 | |
| Jino Joseph | "Jino Joseph"; "Jion Joseph"; "J Joseph"; (in conjunction with "Byju's") |

**TABLE A**
**SWIFT SEARCH TERMS TO BE SEARCHED**

| | |
|---|---|
| Jon Naseath | Jonathan Naseath |
| Kamran Asghar | "K Asghar" |
| kiran.a@sureshandco.com | |
| Kishore Srinivasan | "Srinivasan Kishore" |
| Kranti Growth Catalysts | "Kranti Growth" |
| Krypton Fund Services | |
| Kunnaruvath Raveendran | "Kunnaruvath Ravindran" |
| Kush Banker | "Kush Rupin Banker" |
| L 33 Lailak 2 Street | ("Emirates Hills" OR "Dubai") AND "L33" AND "LAILAK" |
| Leonie Hill Capital Private Limited | "Leonie Hill Capital" |
| Libra Trading | |
| Madison Properties | |
| Madoc Plantation | |
| Magnela Properties | |
| Malav Banker | |
| Maplewood Trading | |
| Marinemast | |
| Marquise International | |
| Mavrus Properties | |
| Meenakshi Banker | "Banker Meenakshi Rupin"; "Minakshi Banker" |
| melonie19@gmail.com | |
| melonie19@okdhfcbank | |
| Memphis Global | |
| Merill Tradecom | |
| Michael Lipman | "Michael Lipman"; "M Lipman"; "Mike Lipman" (in conjunction with "Camshaft") |
| Miramac Properties | |
| Mohammad Iqbal Puri | |
| Monique Morley | |
| Montiago General Trading LLC | |
| More Ideas Books Trading LLC | "More Ideas" |
| More Ideas General Trading LLC | "More Ideas"; "BYJUs" AND "MIGT" |
| Morris Properties | |
| Nerissa Infra Projects | |
| Neuron Fuel Inc | "Neuron Fuel" |

**TABLE A**
**SWIFT SEARCH TERMS TO BE SEARCHED**

| | |
|---|---|
| No. 206; Green Glen Layout;Bellandur; Bangalore - Ground Floor, Bengaluru, Karnataka, India, 560103 | “Green Glen Layout”<br>“no. 206” W/10 (Bengaluru OR Bangalore) |
| No. 43, Yoganarasimha 14th Main, 15th Cross, HSR Layout, Sector 4, Bengaluru, Karnataka, India, 560102 | “Yoganarasimha 14th Main”<br><br>(“No 43” w/10 (Bengaluru OR Bangalore)) |
| Northwest Education Pte Ltd | "Northwest Education" |
| OCI Group Ltd | "OCI Group" |
| OCI Limited | "OCI Ltd" |
| OCI Logistics Ltd | "OCI Logistics" |
| OCI Office Ltd | "OCI Office" |
| OCI RESI Ltd | "OCI RESI" |
| Oliver Chapman | ("O Chapman" w/10 "OCI"); "Oliver Philip Chapman" |
| Om Pandey | "Om P Pandey"; "Om Pandey" |
| Orin OCI RB Ltd | "Orin OCI RB" |
| Padam Singhania | |
| Pankaj Srivastava | "Pankaj Srivastava" |
| PP Holdings | |
| Praseeth Pareparambil Sankaramveettil | "Praseeth Sankaramveettil"; "Praseeth Pareparambil Sankaramveettil" |
| Preethi Srivastava | |
| Purplemint Fintech | |
| R Motion Ltd | "R Motion" |
| Rahul Rajendran Vellapalath | |
| Rainbow Ridge Way, Sevierville, TN 37862 | |
| Rajendran Vellapalath | |
| rajendran@keralapravasiassociation.com | |
| raju.1971@hotmail.com | |
| Ranjan Pai | |
| Ready Merchantlinks Private Limited | "Ready Merchantlinks"; "Ready Merchantlinks Pvt Ltd"; "Ready Merchantlinks Private Ltd"; "Ready Merchantlinks Pvt Limited" |

**TABLE A**
**SWIFT SEARCH TERMS TO BE SEARCHED**

| | |
|---|---|
| ReadyFunds | |
| Red Vinyard Endeavors LLC | Red Vinyard |
| Riju Ravindran | “Riju R*”; "Riju Raveendran"; “Riju Ravindran”; Riju (W/10) Ravindran |
| rijuravindran@gmail.com | |
| Rise International | |
| Rizwana Shaheen Ameer Meea | ("Rizwana Meea" OR "Rizwana Ameer Meea") AND Godolphin |
| Robert Forte | |
| Roisin Chapman | "Roisin Chapman"; "R Chapman" w/10 "OCI") |
| Rose Lake | |
| Royal Fort Infracom General Trading | "Royal Fort Infracom" |
| Rupin Banker | ("R Banker" w/10 "OCI"); "Rupin Hemant Banker"; "Rupin Banker Hemant" ("Rupin Bankar"w/10 "OCI"); ("R Bankar" w/10 "OCI") ("Rupin Hemant Bankar" W/10 "OCI") |
| Sairaj Unnikrishnan | |
| Sandeep Krishnan Narayanaswamy | "Sandeep Krishnan"; "Sandeep Krishna" |
| Sandeep Vellapalath | |
| sandykris@gmail.com | |
| sandykris_82@yahoo.com | |
| Sean Teeling | "Sean Teeling"; "S Teeling" |
| Secure Capital | |
| Serena Vista LLC | "Serena Vista" |
| Serum Institute | |
| Shaji Puthalath | "Shaji Divakar" |
| Shaman Commodities | |
| Shantanu Prakash | |
| Sharath Kumar | |
| Shenka Ltd | "Shenka" |
| Shobhana Valli Mundani | "Shobhana Raveendran"; "Shobhana Ravindran" |

**TABLE A**
**SWIFT SEARCH TERMS TO BE SEARCHED**

| | |
|---|---|
| Sindhu Ratna Kul Bhaskar | "Sindhu Bhaskar"; "Dr Sindhu Bhaskar" |
| Skyconsult General Trading LLC | "Skyconsult General Trading" |
| Skywest Trading | |
| Snake River Trust | |
| Sola Fide | |
| Span Thoughtworks Pvt Ltd | "Span Thoughtworks" |
| Specadel Technologies Pvt Ltd | "Specadel" |
| Sreejith Narayanan Kunniyur | |
| Sriharu Marri Sreepathy | "Sriharu Marri Sreepathi" |
| Srisolve IBS Enterprises Private Limited | "Srisolve"; "Innovmania Enterprises" |
| Stallions Investment Management | |
| Stenn Assets UK Limited | "Stenn Assets" |
| Tangible Play Inc | "Tangible Play" |
| Think and Learn | T&L; "Think & Learn"; "Think and Learn" |
| Toppr Technologies Pvt Ltd | "Toppr Technologies" |
| U8240608 | |
| U9415436 | |
| UAB Capitulus | |
| Venice Land | |
| Vinay Raveendra | |
| Vinay Ravindra | "Vinay Ravindra"; "Vinay Raveendra"; "Vinay Ravindranath" |
| Vinay Ravindranath | |
| Voizzit | |
| Weblength Infonet Pvt Ltd | "Weblength Infonet" |
| Whitehat Education Technology Private Limited | "Whitehat Education Technology" |
| William Cameron Morton | "William Cameron Morton"; "William C Morton"; "William Morton"; "Will Morton"; |

**TABLE A**
**SWIFT SEARCH TERMS TO BE SEARCHED**

| | |
|---|---|
| | "W Cameron Morton"; "Cameron Morton" |
| William Hailer | "Will Hailer"; "W Hailer" |
| william@camshaftadvisors.com | |
| william@hydra-enforcement.com | |
| Wirturbo | "Wirturbo" AND "Andrew Simon"; "Wirturbo" AND "DC Legal" |
| Wondersearch Ltd | "Wondersearch" |
| Yuv Banker | "Yuv Rupin Banker" |
| YWE Business Solutions | |
| (305) 619-1383 | |
| (406) 552-3828 | |
| +91 9741029559 | |
| +91 97693 61921 | |
| +91 99014 67788 | |
| +971 502 717 805 | |
| +971 56 395 2280 | |
| +971 56 3952 280 | |
| 000201618599 | |
| 004701081930 | |
| 00531000135994 | |
| 035701509176 | |
| 035701510898 | |
| 035701510900 | |
| 0959085023401 | |
| 101201502312 | |
| 1015497457901 | |
| 1025855157002 | |
| 1109 Windmill Properties LLC | “1109 Windmill Properties” |
| 1200 Brickell Avenue, Suite 310 | "1200 Brickell Avenue" w/7 Miami |
| 1211099286 | |
| 1304****7695 | 1304 w/1 76958 |
| 1-575-0496-7702 | "157504967702" |
| 1-575-2368-6176 | "157523686176" |
| 15752370944 | |
| 1-575-2370-9440 | "157523709440" |

**TABLE A**
**SWIFT SEARCH TERMS TO BE SEARCHED**

| | |
|---|---|
| 1-575-2370-9457 | "157523709457" |
| 15752370957 | |
| 16850 Collins Avenue,#112408, Sunny Isles Beach, Florida 33160 | "16850 Collins Avenue" w/7 Florida |
| 175 SW 7th Street, Miami, FL 33130 | "175 SW 7th Street" W/5 Miami |
| 18555 Collins Ave Ste 5405, Sunny Isles Beach, FL 33160 | |
| 260288030179 | |
| 260288030180 | |
| 269100-20010 | "26910020010" |
| 26912820083147407006 | |
| 285 NW 42nd Avenue | |
| 29330337 | |
| 3251 3412 6959 | |
| 32848409 | |
| 3301019993 | |
| 3303534635 | |
| 3303535876 | |
| 3499923869778960 | |
| 3499926431790960 | |
| 3499927924582530 | |
| 36280504 | |
| 4/1, 2nd Floor, Tower D, IBC Knowledge Park, Bannerghatta Main Road, Bangalore, Karnataka, India, 560 029 | ("IBC Knowledge Park" and Byju or Byju's) |
| 414740020282 | |
| 42181841029913640007 | |
| 447043111567 | |
| 50100110273397 | |
| 50100110273638 | |
| 50100168803838 | |
| 50100270296161 | |
| 5022869 | |
| 5152201433706 | |
| 5188112317576905000 | |
| 600304003452 | |
| 619090183 | |

**TABLE A**
**SWIFT SEARCH TERMS TO BE SEARCHED**

| | |
|---|---|
| 6683805700264559000 | |
| 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 | |
| 6813646268179415000 | |
| 741806159 | |
| 741806811 | |
| 741806894 | |
| 777 Brickell Ave, Floor 5, Miami, FL 33131 | "777 Brickell" w/7 Miami |
| 7777051000013969 | |
| 778593837 | |
| 805-3297616498 | |
| 805-5170928917 | |
| 80783 | "80783" (w/5 Gokulnath) |
| 80795 | "80795" (w/5 Raveendran) |
| 80796 | "80796" (w/5 "Ravindran)" |
| 853-30818 | |
| 853-30819 | |
| 87-2924260 | |
| 8990-1821 | "8990-1821" |
| 9049602879517622000 | |
| 914028111 | |
| 936 SW 1st Avenue, #1086, Miami, FL 33130 | "936 SW 1st Avenue" W/5 Miami |
| 950 Brickell Bay Drive, #5107, Miami, FL 33130 | "950 Brickell Bay Drive" w/7 Miami |

# Exhibit 10

# UNITED STATES BANKRUPTCY COURT

FOR THE District of DELAWARE

In re BYJU'S ALPHA, INC.
Debtor

Case No. 24-10140 (BLS)

Chapter 11

*(Complete if issued in an adversary proceeding)*

BYJU'S ALPHA, INC.,
Plaintiff
v.
CAMSHAFT CAPITAL FUND, LP, et al.
Defendant

Adv. Proc. No. 24-50013 (BLS)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: HSBC Bank USA, N.A.
*(Name of person to whom the subpoena is directed)*

■ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart & Sullivan, LLP 295 Fifth Avenue, New York, NY 10016 | 5/2/2025 5:30 p.m. |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 4/2/2025

CLERK OF COURT

OR

________________________
*Signature of Clerk or Deputy Clerk*

/s/ *Kate Scherling*
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* BYJU'S ALPHA, INC. , who issues or requests this subpoena, are:

Kate Scherling, 295 Fifth Ave., New York, NY 10016, katescherling@quinnemanuel.com, 212-849-7178, Jordan Nakdimon 212-849-7368

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: ____________________________________________
on *(date)* __________ .

☐ I served the subpoena by delivering a copy to the named person as follows: ___________________________________
______________________________________________________________________________________________
________________________________ on (*date*) __________________ ; or

☐ I returned the subpoena unexecuted because: _________________________________________________________
______________________________________________________________________________________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ ______________________ .

My fees are $ _________ for travel and $_________ for services, for a total of $_________ .

I declare under penalty of perjury that this information is true and correct.

Date: _______________

______________________________________________
*Server's signature*

______________________________________________
*Printed name and title*

______________________________________________
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## ATTACHMENT A

## DEFINITIONS

As used herein, the following terms have the meanings indicated below:

1. "**Action**" means the above-captioned case.

2. **"Account"** means any instrument of any nature whereby You accepted and held financial assets on behalf of a depositor or for the benefit of another.

3. "**Communication**" or "**Communications**" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

4. "**Concerning**" means relating to, referring to, describing, evidencing, or constituting.

5. "**Document**" or "**Documents**" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), as made applicable herein by Federal Rules of Bankruptcy Procedure 7034, 7069, and 9016. A draft or non-identical copy is a separate document within the meaning of this term.

6. "**Electronically Stored Information**" ("**ESI**") means, without limitation, the following:

   a. information that is generated, received, processed, and recorded, and/or maintained by or in computers, databases, systems, network drives, shared spaces, external and removable media, and other electronic devices and sources, including, without limitation, voicemail, email, Instant Messaging systems, and transaction processing, and ledger systems;

   b. internal or external websites and other shared spaces;

   c. output resulting from the use of any software program, database, or other system, including, without limitation, word processing Documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, SWIFT portal, SWIFT database, AOL Instant MessengerTM (or similar programs), or bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and

all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment;

d. activity listings of electronic mail receipts and/or transmittals; and any and all items stored on clouds, hosting services, computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, flash memory, thumb drives, memory sticks, online platforms, and related media used to move and store data, such as, but not limited to, a personal digital assistant, *e.g.*, iPhone, or similar device, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all Documents requested herein; and

e. archived data, legacy data, and back-up tapes.

7. The words "**include**" and "**including**" mean "including but not limited to." The use of the term "include" in any request shall not be used to limit the generality or scope of any request. Nor shall the generality of any request be limited by the fact that another request touches on the same topic with a greater or lesser degree of specificity.

8. "**Judgment Creditor**" means the entity named as Debtor-Plaintiff in the Action.

9. "**Judgment Debtors**" means Camshaft Capital Fund LP, Camshaft Capital Management LLC, and Camshaft Capital Advisors LLC, Riju Ravindran, Inspilearn LLC, and Think and Learn Private Limited, including their agents or other persons acting (or purporting to act) on their behalf, any entity in which they are a partner, and any organization or entity that a Judgment Debtor manages or controls, or an affiliate thereof, and any of their predecessors, successors, parents, subsidiaries, departments, divisions, joint ventures, partnerships, branches, or affiliates.

10. "**Byju**" means the individual known as Byju Raveendran, Byju Ravindran, or any other name or alias.

11. "**Morton**" means the individual known as William Cameron Morton, William C. Morton, William Morton, Will Morton, W, Cameron Morton, Cameron Morton or any other name or alias, last known to reside at 950 Brickell Bay Drive, Apartment 5107. Miami, FL 33131.

12. “**Person**” or “**Persons**” means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

13. **Relevant Time Period**” means the time period between April 1, 2021, and the date that you respond to these Requests.

14. “**You**” and “**Your**” means HSBC Bank USA, N.A., and your officers, directors, employees, subsidiaries, affiliates, agents, or other persons acting (or purporting to act) on your behalf.

15. The terms defined above and each individual request for production are to be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, or any other applicable laws.

16. All words not defined in these Definitions shall be construed using their plain and ordinary meaning. If more than one meaning can be ascribed to a word, the meaning (or combination of meanings) that would make a Document be covered by the request for production should be used, unless You provide written notice of the specific ambiguity and state the definition of the word used to exclude the Document from the scope of the request.

## RULES OF CONSTRUCTION

The following rules of construction apply to these discovery requests:

1. The terms “**all**,” “**any**,” and “**each**” shall each be construed as encompassing any and all.

2. The connectives “**and**” and “**or**” shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3. The use of the singular form of any word includes the plural and vice versa.

**INSTRUCTIONS**

1. You are requested to produce all non-privileged Documents and other things described below that are within Your possession, custody or control, or in the possession, custody or control of Your attorneys, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships, parents, or subsidiaries, and persons under their control.

2. A Document or other thing is deemed to be in Your actual or constructive possession, custody, or control if it is in Your physical custody or if it is in the physical custody of any other Person and You (a) have a right, by control, contract, statute, order, or otherwise, to use inspect, examine or copy such Documents on any terms; (b) have an understanding, express or implied, that You may use, inspect, examine, or copy such Documents upon any terms; (c) have, as a practical matter, been able to use, inspect, examine, or copy such Document when You sought to do so. Such other Persons include record retention vendors, and technology, data, or other third-party IT, cloud, hosting, or other service providers.

3. Each Document or other thing requested shall be produced in its entirety along with all non-identical versions thereof and without abbreviation or redaction. Further, all attachments, enclosures, cover letters, memoranda, and appendices shall also be produced. If a Document or other thing responsive to any request cannot be produced in full, it shall be produced to the extent possible, with an explanation stating why production of the remainder is not possible. Any alteration of a responsive Document or other thing, including notes, underlining, stamps, drafts, revisions, modifications, and other versions, is a separate Document or other thing and is to be produced as a separate Document or other thing. For all Documents and other things, any family relationship should be captured and reflected in the production. Further, if any portion of any Document is responsive to any request in this subpoena, the entire Document is to be produced. A Document with handwritten, typewritten, or other recorded notes, editing marks,

deletions, modifications, additions, or annotations, is not and shall not be deemed to be identical to one without such recorded notes, editing marks, deletions, modifications, additions, or annotations.

4. Documents and other things not otherwise responsive to a request shall be produced if such materials mention, discuss, refer to, or explain the materials called for by a request, or if such materials are attached to materials called for by a request (*e.g.*, routing slips, transmittal emails, transmittal memoranda, letters, cover letters, comments, evaluations, or similar materials).

5. Each request shall be answered on the basis of Your entire knowledge, from all sources, after a reasonable and good faith inquiry has been made and a search has been conducted.

6. All Documents produced pursuant to this subpoena are to be produced as they are kept in the usual course. All responsive ESI that is maintained in the usual course in electronic format shall be produced in its native format along with the software necessary to interpret such files if such software is not readily available, with the metadata normally contained within such Documents, and the necessary load files. If such metadata is not available, each Document shall be accompanied by a listing of all file properties concerning such Document, including, but not limited to, all information concerning the date(s) the Document was last accessed, created, modified, or distributed, and the author(s) and recipient(s) of the Document. If production in native format is impossible or impracticable, ESI may be produced in non-proprietary format, such as .xls, .csv, .jpg, .tif, or .pdf, or other agreed upon format, at the highest resolution available along with the metadata normally contained within such Documents.

7. Documents in large or complex formats, such as large Excel-format spreadsheets or accounting databases, for which non-proprietary format imaging would alter the presentation of the data, should be produced in their native format.

8. For each data file provided, You should separately provide a control file reflecting the search protocol utilized to obtain such data file.

9. ESI should not be produced in a form that removes or significantly degrades or alters the ability to search the ESI by electronic means where the ESI is ordinarily maintained in a way that makes it searchable by electronic means.

10. File folders with tabs or labels or directories of files identifying documents shall be produced intact with such documents.

11. Documents attached to each other shall not be separated. All documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all addenda, appendices, attachments, exhibits, and enclosures.

12. If there are no Documents or other things responsive to the request, Your response shall state so in writing.

13. In the event that any Document or other thing called for by the request is withheld on the basis of a claim or privilege or immunity:

a. The person asserting the privilege shall identify the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

b. The following information shall be provided in the objection unless divulgence of such information would cause disclosure of the purportedly privileged information: (i) the type of document, *e.g.*, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other;

14. Any purportedly privileged Document or other thing containing non-privileged material must be produced, redacting only the portion purportedly privileged.

15. If You have any good faith objections to any request or any part thereof, the specific nature of the objection and whether it applies to the entire request or to a part of the request shall be stated in accordance with Federal Rule of Civil Procedure 45, as made applicable by Federal Rules of Bankruptcy Procedure 7069 and 9016. If there is an objection to any part of the request, then the part objected to should be identified and Documents and other things responsive to the remaining unobjectionable part should be timely produced. Further, if You object to part of the request, You must state the basis of Your objections in accordance with Federal Rule of Civil Procedure 45.

16. In the event that any Document or other thing responsive to a request has been lost, discarded, or destroyed, that Document or other thing is to be identified by stating as completely as possible: (a) the authors or creators of the material, (b) all persons who received copies of the material, including any indicated and blind copy recipients, (c) the present custodian of the material, (d) the date of the material, (e) the material's date of destruction or discard, manner of destruction or discard, and the reason for destruction or discard, and (f) the persons authorizing and carrying out such destruction or discard.

17. Each production shall be submitted with a transmittal letter or email that includes the case caption, production volume name, encryption method/software used if applicable, and passwords for any password protected files if applicable.

18. All Documents produced pursuant to this subpoena may be used in the Action, or any related actions regarding the enforcement of the judgment entered in the Action.

19. In the event that any Document responsive to these requests is deemed confidential, it may be produced subject to the terms of the Stipulated Confidentiality Agreement

and Protective Order entered in the Action, Case 24-50013, Doc 134.

20. Upon request, counsel for Judgment Creditor will provide to You an electronic copy of this subpoena in Microsoft Word document file format to facilitate Your answering the request below.

## REQUESTS FOR PRODUCTION

1. Any Communications between You and any of the Judgment Debtors, Byju, or Morton during the Relevant Time Period.

2. All Documents Concerning all Accounts at Your institution including but not limited to those accounts listed on Appendix 1 that are held by or for the benefit of any of the Judgment Debtors, Byju, or Morton. For each such Account, provide the following:

    a) All Account-opening Documents and all signature cards associated with the Account;

    b) All Documents generated in the course of compliance with "know your customer" ("KYC") obligations; and

    c) All transaction history and monthly account statements for all Accounts identified.

3. Documents sufficient to show the current balance of all active Accounts.

4. All Account-closure Documents for all closed accounts, including but not limited to:

    a) All Documents evidencing the date the Account closure was initiated;

    b) All Documents evidencing the identity of all Persons responsible for initiating and carrying out the Account closure;

    c) All Documents evidencing the balance of the Account at the time of the closure; and

    d) All Documents related to the transfer of the Account's balance at the time of the closure.

5. All Currency Transactions Reports (CTR Form 4789) and Reports of International Transportation of Currency or Monetary Instruments (Form 4790) filed by You with the

Department of Treasury, Internal Revenue Service, or the United States Customs Service, relating to any transactions conducted by or on behalf of any of the Judgment Debtors, Byju, or Morton.

6. Any Documents concerning the assets, liabilities, or expenses of any of the Judgment Debtors, Byju, or Morton.

7. Any Documents indicating the use of aliases, nominees, trustees, or any other Persons holding any assets on behalf of or for the benefit or use of any of the Judgment Debtors, Byju, or Morton.

8. Documents sufficient to identify any purchases of cryptocurrency or transfers of assets to a cryptocurrency exchange by any of the Judgment Debtors, Byju, or Morton.

## APPENDIX 1

| Account Number |
|---|
| [redacted]8111 |
| [redacted]0100 (HSBC Bank – Middle East) |
| [redacted]0179 |
| [redacted]0180 |

# Exhibit 11

**Subject:** HSBC Production
**Date:** Monday, 30 June 2025 at 16:11:03 Western European Summer Time
**From:** Mac McCall <macmccall@quinnemanuel.com>
**To:** Pieter Van Tol <pvantol@vantol-law.com>, klein <klein@kleinllc.com>
**CC:** James Barlow <jamesbarlow@quinnemanuel.com>, Debra O'Gorman <debraogorman@quinnemanuel.com>

Pieter,

We have received a production from HSBC. Please note that it has been designated AEO.

https://qe.sharefile.com/d-sf1abea7fa7d04cb4953be9dc119a1289

Thanks,
Mac

Mac McCall
*Associate*
**Quinn Emanuel Urquhart & Sullivan, LLP**

295 Fifth Avenue
New York, NY 10016
212-849-7320 Direct
212-849-7000 Main Office Number
macmccall@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

# Exhibit 12

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BYJU'S ALPHA, INC., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 24-10140 (BLS) |
| | ) | |
| | ) | |
| | ) | |
| BYJU'S ALPHA, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| GLAS TRUST COMPANY, LLC, | ) | |
| | ) | |
| Intervenor-Plaintiff, | ) | Adv. Pro. No. 25-50822 (BLS) |
| | ) | |
| v. | ) | |
| | ) | |
| OCI LIMITED and RUPIN BANKER | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DECLARATION OF OLIVER PHILIP CHAPMAN**

Oliver Philip Chapman, pursuant to 28 U.S.C. § 1746, declares:

1. I am the chief executive officer of OCI Limited ("OCI"), a defendant in this proceeding. The statements set forth in this declaration are based on my personal knowledge or upon a review of OCI business records.

2. In 2022, OCI participated in transactions involving the Debtor, Byju Raveendran, Think & Learn Pvt. Ltd ("T&L"), and others. I was told at the time that the transactions would involve Think & Learn providing funds to OCI which OCI would use for the procurement of goods and services for T&L's benefit. On OCI's part, these transactions were entirely directed and arranged by Rupin

Banker. Moreover, I knew that Rupin Banker and Byju Raveendran were in regular direct contact over the period of these transactions. To the best of my understanding, all of Rupin Banker's dealings relating to the Alpha Funds (defined below) were at Byju Raveendran's direction or otherwise within Byju Raveendran's knowledge.

3. On or about the dates listed immediately below, OCI received the following funds, which derived from the Debtor (the "Alpha Funds"), from Camshaft Capital Fund, LP or its affiliate through Apex Fund Services or one of its affiliates:

   a. 10th May 2022 (received 12th May) $300,000,000
   b. 12th July 2022 (received 14th July) $190,812,292.89
   c. 15th July 2022 $15,095,142.91

**Total: $505,907,436**

4. Of these funds $13,182,215 were transferred to companies that appear to be involved in Think & Learn's procurement activities, including:

   a. Google LLC
      i. 28th June 2022 $8,856,900.83
      ii. 25th June 2022 $1,097,539.96
      iii. 29th Nov 2022 $1,885,728.43
   b. Sony India *(CULVER MAX ENTERTAINMENT PVT LTD)*
      i. 30th June 2022 $1,342,045.83.

**Total: $13,182,215**

5. The lion's share of the funds were, however, transferred from OCI's accounts to a single entity, REVERE MASTER SPV LLC in four transactions:

   i. 28th June 2022 $150,000,000
   (in three $50m tranches)

   ii. 29th June 2022 $103,750,000
   (in two tranches of $50,000,000 and $53,750,000)

   iii. 7th July 2022 $25,375,000

iv. 15th July 2022 $150,000,000
(in three $50m tranches)

v. 18th July 2022 $50,500,000

**Total: $479,625,000**

6. REVERE MASTER SPV LLC is a special purpose vehicle of Revere Securities LLP, a provider of investment banking and wealth management.

7. Furthermore, related documents in OCI's possession have been reviewed that demonstrate the intention of those controlling these funds was that almost all were to be transferred on from that recipient to a Singapore corporation, Byju's Global Pte Ltd (Byju's Global).

8. The $13,100,220.80 remaining was transferred at the direction of Rupin Banker to him, for his benefit, or at his direction for the benefit of third parties.

9. Accordingly, OCI did ***not*** use the vast majority of the Alpha Funds to provide outsourced procurement services to T&L (or its subsidiaries), as alleged by Byju Raveendran, in relation to the procurement of IT equipment, such as electronic tablets, and media/advertising. Rather, after receiving the Alpha Funds, at the direction of Byju Raveendran and Rupin Banker, OCI was caused to turn around and transfer the funds out as described above.

I declare under penalty of perjury under the laws of the United States of America that foregoing is true and correct.

Executed on 15th November 2025.

By……………………..

Name: Oliver Chapman

12013-00001/17503282.2

# Exhibit 13

Date: March 15, 2023

To,

(i) **Think & Learn Private Limited and its group companies;**
2nd Floor Tower D 4/1,
Bannerghatta Main Road,
Bengaluru, KA 560029 India

(ii) **BYJU'S Alpha Inc.;**
16192, Costal Highway, Lewes,
Country of Sussex, Delaware 19958
United States of America

(iii) **Camshaft Capital Fund, LP.**
175 SW 7th Street
Miami, FL 33130
United States of America

**Subject: Outstanding Payments and Notice of Setoff**

OCI Limited writes to bring to the attention of Think & Learn Private Limited, BYJU'S Alpha Inc., and Camshaft Capital Fund, LP, the matter of the outstanding balance under the agreement dated 16 November 2021 between OCI Limited and Think & Learn Private Limited, along with any related documents (the "**Agreement**"). This communication seeks to address these matters and inform the parties of the necessary steps being taken under the terms of the Agreement, specifically concerning the right of setoff.

**1. Outstanding Amount Due**

As of March 15,2023, the total outstanding amount owed by Think & Learn Private Limited and its affiliates, detailed in Annexure I ("**Outstanding Amounts**"), remains unpaid. These amounts are due under the terms of the Agreement and related transactions.

**2. Promissory Notes**

Under promissory notes issued by OCI Limited and detailed in Annexure II ("**Loans**"), loans were availed from Camshaft Capital Fund, LP ("**Funder**"). The Agreement specifies that Think & Learn Private Limited and/or its group companies bear sole responsibility for any losses, liabilities, or other financial obligations arising from these Loans, particularly in cases of non-payment or other defaults by OCI Limited.

**3. Notice of Setoff**

Pursuant to the terms of the Agreement, we hereby notify that the Outstanding Amounts are set off against the funds currently held or controlled by the Funder.

| | |
|---|---|
| **Funder:** | **Camshaft Capital LLC** |
| **Outstanding Amount:** | **USD 560,551,754** |
| **Loan Amount Available for Setoff:** | **USD 549,520,000** |
| **Remaining Outstanding Amount (After Setoff):** | **USD 11,031,754** |

This measure is a result of the non-clearance of the Outstanding Amounts by Think & Learn Private Limited and/or its group companies.

**4. Remaining Outstanding Amounts**

After applying the setoff as detailed above, a balance of USD 11,031,754 remains outstanding ("**Remaining Outstanding Amount**") as of the date of this communication.

Notwithstanding any other provision in this or any other document or communication, OCI Limited expressly reserves all rights and remedies available under applicable law or in equity with respect to any outstanding amounts owed by Think & Learn Private Limited and/or its group companies. This reservation includes any actions taken now or in the future related to the collection, negotiation, or settlement of the remaining outstanding amounts. This clause shall not constitute a waiver of any rights or remedies OCI Limited may have, and OCI Limited retains the full scope of options to pursue or enforce these rights at its discretion.

**5. Acknowledgment Required**

Please acknowledge the receipt of this letter:

**Think & Learn Private Limited on behalf of itself and its group companies;**

**BYJU'S Alpha Inc.; and**

**Camshaft Capital Fund, LP**

Should any further clarification be needed on this matter, representatives from Think & Learn Private Limited, BYJU'S Alpha Inc., or Camshaft Capital Fund, LP, are encouraged to contact OCI Limited's accounts department directly at hello@oci-group.co.uk.

We appreciate your prompt attention to this matter.

Sincerely,

OCI Limited

Acknowledgment: By acknowledging receipt of this letter, the recipients herein named expressly agree and confirm that they have undertaken all necessary actions as outlined and required by the terms of this communication. Each recipient affirms that the actions taken are compliant with their respective obligations under this letter and the Agreement. Further, the recipients acknowledge that this letter forms part of the ongoing obligations. The acknowledgment of this letter shall be considered binding upon the recipients and shall constitute an affirmation of their intent to abide by the directives and requests stated herein.

| | | |
|---|---|---|
| **(i)** | **Think & Learn Private Limited (for itself and on behalf of its group companies)** | Name: Riju Ravindran<br>Title: Director |
| **(ii)** | **BYJU'S Alpha Inc.** | Name: Riju Ravindran<br>Title: Director |
| **(iii)** | **Camshaft Capital Fund, LP** | Name: William Morton<br>Title: Managing Member |

# Exhibit 14

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Register of Directors of BYJU'S INVESTMENTS PTE. LTD. (202216074E)

Date: 21 Jan 2026

| | | |
|---|---|---|
| Name of Company | : | BYJU'S INVESTMENTS PTE. LTD. |
| UEN | : | 202216074E |
| Company Type | : | PRIVATE COMPANY LIMITED BY SHARES |

## Particulars of Directors

| | | |
|---|---|---|
| Present Full Name | : | LIM THONG SOON, BENEDICT [DB] |
| Address | : | 152 ANG MO KIO AVENUE 5, #02-3016, YIO CHU KANG GROVE, SINGAPORE 560152 |
| Identification Number | : | S9509344B |
| Identification Type | : | NRIC (CITIZEN) |
| Nationality/Citizenship | : | SINGAPORE CITIZEN |

| Position | Date of Appointment | Date of Cessation |
|---|---|---|
| DIRECTOR | 18 JUL 2024 | |

DB - This individual has been debarred/prohibited from being appointed as a director of any new company from 20 Jan 2026.

**Verify instantly if this document is issued by ACRA**

Authentication no.: M26150561H

https://www.bizfile.gov.sg/verify/202216074E/M26150561H



A1224

ACCOUNTING AND CORPORATE REGULATORY AUTHORITY (ACRA)

bizfile

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Register of Directors of BYJU'S INVESTMENTS PTE. LTD. (202216074E)

Date: 21 Jan 2026

| | | |
|---|---|---|
| Present Full Name | : | TEH SHENG JIE |
| Address | : | 13 SELETAR ROAD, #02-56, THE GREENWICH, SINGAPORE 807017 |
| Identification Number | : | S8626382C |
| Identification Type | : | NRIC (CITIZEN) |
| Nationality/Citizenship | : | SINGAPORE CITIZEN |

| Position | Date of Appointment | Date of Cessation |
|---|---|---|
| DIRECTOR | 01 APR 2024 | 30 JUN 2024 |

| | | |
|---|---|---|
| Present Full Name | : | DAWSON, MICHAEL SEBESTIAN |
| Address | : | 36 ROBINSON ROAD, #20-01, CITY HOUSE, SINGAPORE 068877 |
| Identification Number | : | S7606948D |
| Identification Type | : | NRIC (CITIZEN) |
| Nationality/Citizenship | : | SINGAPORE CITIZEN |

| Position | Date of Appointment | Date of Cessation |
|---|---|---|
| DIRECTOR | 17 NOV 2023 | 01 APR 2024 |

**Verify instantly if this document is issued by ACRA**

Authentication no.: M26150561H

https://www.bizfile.gov.sg/verify/202216074E/M26150561H



A1225

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Register of Directors of BYJU'S INVESTMENTS PTE. LTD. (202216074E)

Date: 21 Jan 2026

| | | |
|---|---|---|
| Present Full Name | : | YAP KUM LOON |
| Address | : | *Address is not available for this individual* |
| Identification Number | : | S6982940F |
| Identification Type | : | NRIC (CITIZEN) |
| Nationality/Citizenship | : | SINGAPORE CITIZEN |

| Position | Date of Appointment | Date of Cessation |
|---|---|---|
| DIRECTOR | 07 JUN 2023 | 17 NOV 2023 |

| | | |
|---|---|---|
| Present Full Name | : | BYJU RAVEENDRAN |
| Address | : | 43, 14TH MAIN, 15TH CROSS, 4TH SECTOR, H S R LAYOUT, BENGALURU, KAR, 560102 INDIA |
| Identification Number | : | Z5660940 |
| Identification Type | : | PASSPORT / OTHERS |
| Nationality/Citizenship | : | INDIAN |

| Position | Date of Appointment | Date of Cessation |
|---|---|---|
| DIRECTOR | 10 MAY 2022 | |

**Verify instantly if this document is issued by ACRA**

Authentication no.: M26150561H

https://www.bizfile.gov.sg/verify/202216074E/M26150561H



A1226

ACCOUNTING AND CORPORATE REGULATORY AUTHORITY (ACRA)

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Register of Directors of BYJU'S INVESTMENTS PTE. LTD. (202216074E)

Date: 21 Jan 2026

| | | |
|---|---|---|
| Present Full Name | : | SOH XIAO LING |
| Address | : | *Address is not available for this individual* |
| Identification Number | : | S8524219I |
| Identification Type | : | NRIC (CITIZEN) |
| Nationality/Citizenship | : | SINGAPORE CITIZEN |

| Position | Date of Appointment | Date of Cessation |
|---|---|---|
| DIRECTOR | 10 MAY 2022 | 07 JUN 2023 |

## Notes

1. All the information provided above are extracted from lodgements filed with ACRA and/or from other government sources.

FOR REGISTRAR OF COMPANIES & BUSINESS NAMES
ACCOUNTING AND CORPORATE REGULATORY AUTHORITY
SINGAPORE

RECEIPT NO. : ACRA260121004803

DATE : 21 JAN 2026

**Verify instantly if this document is issued by ACRA**

Authentication no.: M26150561H

https://www.bizfile.gov.sg/verify/202216074E/M26150561H



A1227

# Exhibit 15

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Register of Directors of BYJU'S GLOBAL PTE. LTD. (202215613H)

Date: 21 Jan 2026

| | | |
|---|---|---|
| Name of Company | : | BYJU'S GLOBAL PTE. LTD. |
| UEN | : | 202215613H |
| Company Type | : | EXEMPT PRIVATE COMPANY LIMITED BY SHARES |

## Particulars of Directors

| | | |
|---|---|---|
| Present Full Name | : | LIM THONG SOON, BENEDICT [DB] |
| Address | : | 152 ANG MO KIO AVENUE 5, #02-3016, YIO CHU KANG GROVE, SINGAPORE 560152 |
| Identification Number | : | S9509344B |
| Identification Type | : | NRIC (CITIZEN) |
| Nationality/Citizenship | : | SINGAPORE CITIZEN |

| Position | Date of Appointment | Date of Cessation |
|---|---|---|
| DIRECTOR | 01 JUL 2024 | |

DB - This individual has been debarred/prohibited from being appointed as a director of any new company from 20 Jan 2026.

**Verify instantly if this document is issued by ACRA**

Authentication no.: B26429471F

https://www.bizfile.gov.sg/verify/202215613H/B26429471F



A1229

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Register of Directors of BYJU'S GLOBAL PTE. LTD. (202215613H)

Date: 21 Jan 2026

| | | |
|---|---|---|
| Present Full Name | : | TEH SHENG JIE |
| Address | : | 13 SELETAR ROAD, #02-56, THE GREENWICH, SINGAPORE 807017 |
| Identification Number | : | S8626382C |
| Identification Type | : | NRIC (CITIZEN) |
| Nationality/Citizenship | : | SINGAPORE CITIZEN |

| Position | Date of Appointment | Date of Cessation |
|---|---|---|
| DIRECTOR | 01 APR 2024 | 30 JUN 2024 |

| | | |
|---|---|---|
| Present Full Name | : | DAWSON, MICHAEL SEBESTIAN |
| Address | : | 36 ROBINSON ROAD, #20-01, CITY HOUSE, SINGAPORE 068877 |
| Identification Number | : | S7606948D |
| Identification Type | : | NRIC (CITIZEN) |
| Nationality/Citizenship | : | SINGAPORE CITIZEN |

| Position | Date of Appointment | Date of Cessation |
|---|---|---|
| DIRECTOR | 17 NOV 2023 | 01 APR 2024 |



**Verify instantly if this document is issued by ACRA**

Authentication no.: B26429471F

https://www.bizfile.gov.sg/verify/202215613H/B26429471F

A1230

ACCOUNTING AND CORPORATE REGULATORY AUTHORITY (ACRA)

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Register of Directors of BYJU'S GLOBAL PTE. LTD. (202215613H)

Date: 21 Jan 2026

| | | |
|---|---|---|
| Present Full Name | : | YAP KUM LOON |
| Address | : | *Address is not available for this individual* |
| Identification Number | : | S6982940F |
| Identification Type | : | NRIC (CITIZEN) |
| Nationality/Citizenship | : | SINGAPORE CITIZEN |

| Position | Date of Appointment | Date of Cessation |
|---|---|---|
| DIRECTOR | 07 JUN 2023 | 17 NOV 2023 |

| | | |
|---|---|---|
| Present Full Name | : | BYJU RAVEENDRAN |
| Address | : | 43, 14TH MAIN, 15TH CROSS, 4TH SECTOR, H S R LAYOUT, BENGALURU, KAR, 560102 INDIA |
| Identification Number | : | Z5660940 |
| Identification Type | : | PASSPORT / OTHERS |
| Nationality/Citizenship | : | INDIAN |

| Position | Date of Appointment | Date of Cessation |
|---|---|---|
| DIRECTOR | 06 MAY 2022 | |

**Verify instantly if this document is issued by ACRA**

Authentication no.: B26429471F

https://www.bizfile.gov.sg/verify/202215613H/B26429471F



A1231

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Register of Directors of BYJU'S GLOBAL PTE. LTD. (202215613H)

Date: 21 Jan 2026

| | | |
|---|---|---|
| Present Full Name | : | SOH XIAO LING |
| Address | : | *Address is not available for this individual* |
| Identification Number | : | S8524219I |
| Identification Type | : | NRIC (CITIZEN) |
| Nationality/Citizenship | : | SINGAPORE CITIZEN |

| Position | Date of Appointment | Date of Cessation |
|---|---|---|
| DIRECTOR | 06 MAY 2022 | 07 JUN 2023 |

## Notes

1 All the information provided above are extracted from lodgements filed with ACRA and/or from other government sources.

FOR REGISTRAR OF COMPANIES & BUSINESS NAMES
ACCOUNTING AND CORPORATE REGULATORY AUTHORITY
SINGAPORE

RECEIPT NO. : ACRA260121004803

DATE : 21 JAN 2026

**Verify instantly if this document is issued by ACRA**

Authentication no.: B26429471F

https://www.bizfile.gov.sg/verify/202215613H/B26429471F



A1232

# Exhibit 16

ACCOUNTING AND CORPORATE REGULATORY AUTHORITY (ACRA)

bizfile

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Register of Directors of BYJU'S HOLDINGS 1 PTE. LTD. (202230727N)

Date: 21 Jan 2026

| | | |
|---|---|---|
| Name of Company | : | BYJU'S HOLDINGS 1 PTE. LTD. |
| UEN | : | 202230727N |
| Company Type | : | EXEMPT PRIVATE COMPANY LIMITED BY SHARES |

## Particulars of Directors

| | | |
|---|---|---|
| Present Full Name | : | LIM THONG SOON, BENEDICT [DB] |
| Address | : | 152 ANG MO KIO AVENUE 5, #02-3016, YIO CHU KANG GROVE, SINGAPORE 560152 |
| Identification Number | : | S9509344B |
| Identification Type | : | NRIC (CITIZEN) |
| Nationality/Citizenship | : | SINGAPORE CITIZEN |

| Position | Date of Appointment | Date of Cessation |
|---|---|---|
| DIRECTOR | 01 JUL 2024 | 15 JUN 2025 |

DB - This individual has been debarred/prohibited from being appointed as a director of any new company from 20 Jan 2026.



**Verify instantly if this document is issued by ACRA**

Authentication no.: Y26008592C

https://www.bizfile.gov.sg/verify/202230727N/Y26008592C

A1234

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Register of Directors of BYJU'S HOLDINGS 1 PTE. LTD. (202230727N)

Date: 21 Jan 2026

| | | |
|---|---|---|
| Present Full Name | : | TEH SHENG JIE |
| Address | : | 13 SELETAR ROAD, #02-56, THE GREENWICH, SINGAPORE 807017 |
| Identification Number | : | S8626382C |
| Identification Type | : | NRIC (CITIZEN) |
| Nationality/Citizenship | : | SINGAPORE CITIZEN |

| Position | Date of Appointment | Date of Cessation |
|---|---|---|
| DIRECTOR | 01 APR 2024 | 30 JUN 2024 |

| | | |
|---|---|---|
| Present Full Name | : | DAWSON, MICHAEL SEBESTIAN |
| Address | : | 36 ROBINSON ROAD, #20-01, CITY HOUSE, SINGAPORE 068877 |
| Identification Number | : | S7606948D |
| Identification Type | : | NRIC (CITIZEN) |
| Nationality/Citizenship | : | SINGAPORE CITIZEN |

| Position | Date of Appointment | Date of Cessation |
|---|---|---|
| DIRECTOR | 17 NOV 2023 | 01 APR 2024 |

**Verify instantly if this document is issued by ACRA**

Authentication no.: Y26008592C

https://www.bizfile.gov.sg/verify/202230727N/Y26008592C

ACCOUNTING AND CORPORATE REGULATORY AUTHORITY (ACRA)

bizfile

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Register of Directors of BYJU'S HOLDINGS 1 PTE. LTD. (202230727N)

Date: 21 Jan 2026

| | | |
|---|---|---|
| Present Full Name | : | YAP KUM LOON |
| Address | : | *Address is not available for this individual* |
| Identification Number | : | S6982940F |
| Identification Type | : | NRIC (CITIZEN) |
| Nationality/Citizenship | : | SINGAPORE CITIZEN |

| Position | Date of Appointment | Date of Cessation |
|---|---|---|
| DIRECTOR | 07 JUN 2023 | 17 NOV 2023 |

| | | |
|---|---|---|
| Present Full Name | : | BYJU RAVEENDRAN |
| Address | : | 43, 14TH MAIN, 15TH CROSS, 4TH SECTOR, H S R LAYOUT, BENGALURU, KAR, 560102 INDIA |
| Identification Number | : | Z5660940 |
| Identification Type | : | PASSPORT / OTHERS |
| Nationality/Citizenship | : | INDIAN |

| Position | Date of Appointment | Date of Cessation |
|---|---|---|
| DIRECTOR | 31 AUG 2022 | 15 JUN 2025 |

**Verify instantly if this document is issued by ACRA**

Authentication no.: Y26008592C

https://www.bizfile.gov.sg/verify/202230727N/Y26008592C



A1236

Whilst every endeavor is made to ensure that information provided is updated and correct, ACRA disclaims any liability for any damage or loss that may be caused as a result of any error of omission.

# Register of Directors of BYJU'S HOLDINGS 1 PTE. LTD. (202230727N)

Date: 21 Jan 2026

| | | |
|---|---|---|
| Present Full Name | : | SOH XIAO LING |
| Address | : | *Address is not available for this individual* |
| Identification Number | : | S8524219I |
| Identification Type | : | NRIC (CITIZEN) |
| Nationality/Citizenship | : | SINGAPORE CITIZEN |

| Position | Date of Appointment | Date of Cessation |
|---|---|---|
| DIRECTOR | 31 AUG 2022 | 07 JUN 2023 |

## Notes

1 All the information provided above are extracted from lodgements filed with ACRA and/or from other government sources.

FOR REGISTRAR OF COMPANIES & BUSINESS NAMES
ACCOUNTING AND CORPORATE REGULATORY AUTHORITY
SINGAPORE

RECEIPT NO. : ACRA260121004803

DATE : 21 JAN 2026

**Verify instantly if this document is issued by ACRA**

Authentication no.: Y26008592C

https://www.bizfile.gov.sg/verify/202230727N/Y26008592C

# Exhibit 17

ORDR-8502100525-0971

**Claim No: CFI 050/2025**

**THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS**

**IN THE COURT OF FIRST INSTANCE**

**BEFORE H.E. JUSTICE RENE LE MIERE**

BETWEEN

**BYJU'S ALPHA, INC.**

Claimant/Applicant

and

**(1) BYJU RAVEENDRAN**

**(2) DIVYA GOKULNATH**

Defendants/Respondents

---

## ORDER OF H.E. JUSTICE RENE LE MIERE KC

---

**PENAL NOTICE**

**IF YOU, BYJU RAVEENDRAN AND DIVYA GOKULNATH, DISOBEY THIS ORDER YOU MAY BE HELD TO BE IN CONTEMPT OF COURT AND MAY BE REFERRED TO THE ATTORNEY GENERAL OF DUBAI, FINED OR HAVE YOUR ASSETS SEIZED.**

**ANY OTHER PERSON WHO KNOWS OF THIS ORDER AND DOES ANYTHING WHICH HELPS OR PERMITS THE RESPONDENTS TO BREACH THE TERMS OF THIS ORDER MAY ALSO BE HELD TO BE IN CONTEMPT OF COURT AND MAY BE REFERRED TO THE ATTORNEY GENERAL OF DUBAI, FINED OR, HAVE THEIR ASSETS SEIZED.**

**THIS ORDER**

1. This is an Order made against Byju Raveendran and Divya Gokulnath (the "Respondents") on 20 May 2025 by H.E. Justice Rene Le Miere KC on the application of the Applicant, Byju's Alpha, Inc. The Judge has read the Affidavits listed in Schedule A and accepted the undertakings set out in Schedule B at the end of this Order. Unless otherwise stated, references in this Order to "the Respondent" mean each of the Respondents.

2. This Order was made at a hearing without notice to the Respondent on 20 May 2025. The Respondent has a right to apply to the Court to vary or discharge the Order — see paragraph 13 below.

3. There will be a further hearing in respect of this Order on **25 June 2025** (the "Return Date").

**FREEZING ORDER**

4. Until the Return Date or further order of the Court, the Respondent must not:

    (1) remove from the DIFC any of his or her assets which are in the DIFC up to the value of USD 540,647,109.20; or

    (2) in any way dispose of, deal with or diminish the value of any of his or her assets in the UAE up to the value of USD 540,647,109.20; or

    (3) in any way dispose of, deal with or diminish the value of any of his assets outside the UAE up to the value of USD 540,647,109.20.

5. Paragraph 4 applies to all the Respondent's assets whether or not they are in his or her own name and whether they are solely or jointly owned. For the purpose of this order the Respondent's assets include any asset which he or she has the power, directly or indirectly, to dispose of or deal with as if it were his or her own. The Respondent is to be regarded as having such power if a third party holds or controls the asset in accordance with the Respondent's direct or indirect instructions.

6. The prohibition in paragraph 4 includes in particular the assets referred to in Schedule C to this Order.

7. Subject to paragraph 4, if the total value free of charges or other securities ('unencumbered value') of the Respondent's assets in the DIFC exceeds USD 540,647,109.20, the Respondent

may remove any of those assets from the DIFC or may dispose of or deal with them so long as the total unencumbered value of his or her assets still in the DIFC remains above USD 540,647,109.20.

8. If the total unencumbered value of the Respondent's assets in the DIFC does not exceed USD 540,647,109.20, the Respondent must not remove any of those assets from the DIFC or must not dispose of or deal with any of them. If the Respondent has other assets outside the DIFC, he or she may dispose of or deal with those assets outside the DIFC so long as the total unencumbered value of his or her assets whether in or outside the DIFC remains above USD 540,647,109.20.

**INFORMATION ABOUT ASSETS**

9.

(1) Unless paragraph (2) applies, the Respondent must within 4 days of service of this Order and to the best of his or her ability inform the Applicant's legal representatives of all his or her assets worldwide exceeding USD 10,000 in value whether in his or her own name or not and whether solely or jointly owned, giving: (i) the value; (ii) the location; (iii) ownership particulars (including the identity of any legal or beneficial owner or co-owner); and (iv) any other relevant details of all such assets.

(2) If the provision of any of this information is likely to incriminate the Respondent, he or she may be entitled to refuse to provide it, but is recommended to take legal advice before refusing to provide the information. Wrongful refusal to provide the information is contempt of court and may render the Respondent liable to be referred to the Attorney General of Dubai, fined or have his or her assets seized.

10. Within 7 days of service of this Order, the Respondent must, subject to paragraph 9(2) above, swear and serve on the Applicant's legal representatives an affidavit setting out the information referred to in paragraph 9(1) of this Order.

**EXCEPTIONS TO THIS ORDER**

11.

(1) This Order does not prohibit the Respondent from spending USD 2,500 a week towards his or her ordinary living expenses.

(2) This Order does not prohibit the Respondent from spending a reasonable sum on legal advice and representation. But before spending any money the Respondent must tell the Applicant's legal representatives where the money is to come from. If legal advice and representation for the Respondent is funded by a third party, the Respondent must provide full details of the source of funding upon receipt of any such funds or payment towards the Respondent's legal costs.

(3) The Respondent may agree with the Applicant's legal representatives that the above spending limits should be increased or that this Order should be varied in any other respect, but any agreement must be in writing.

(4) This Order does not prohibit the Respondent from dealing with or disposing of any of his or her assets in the ordinary and proper course of business.

(5) The Order will cease to have effect if the Respondent:

(a) provides security by paying the sum of USD 540,647,109.20 into Court, to be held to the order of the Court; or

(b) makes provision for security in that sum by another method agreed with the Applicant's legal representatives.

**COSTS**

12. The costs of this Application are reserved to the Judge hearing the application on the Return Date.

**VARIATION OR DISCHARGE OF THIS ORDER**

13. Anyone served with or notified of this Order may apply to the Court at any time to vary or discharge this Order (or so much of it as affects that person), but they must first inform the Applicant's legal representatives. If any evidence is to be relied upon in support of the application, the substance of it must be communicated in writing to the Applicant's legal representatives in advance.

**INTERPRETATION OF THIS ORDER**

14. A Respondent who is an individual who is ordered not to do something must not do it him or herself or in any other way. He or she must not do it through others acting on his or her behalf or on his or her instructions or with his or her encouragement.

**PARTIES OTHER THAN THE APPLICANT AND RESPONDENT**

Effect of this Order

15. It is a contempt of court for any person notified of this Order knowingly to assist in or permit a breach of this Order. Any person doing so may be referred to the Attorney General of Dubai, fined or have their assets seized.

Set off by banks

16. This injunction does not prevent any bank from exercising any right of set off it may have in respect of any facility which it gave to the Respondent before it was notified of this Order.

Withdrawals by the Respondent

17. No bank need enquire as to the application or proposed application of any money withdrawn by the Respondent if the withdrawal appears to be permitted by this Order.

Third parties outside Dubai

18. Except as provided in paragraph 19 below, the terms of this Order do not affect or concern any person other than the Respondent outside Dubai until and to the extent that this Order has been declared enforceable or is enforced by the courts of the place where that person is situated.

19. The terms of this Order will affect the following persons outside Dubai:

(1) the Respondent or his or her officer or agent appointed by power of attorney;

(2) any person who:

(a) is subject to the jurisdiction of this Court;

(b) has been given written notice of this Order at his or her residence or place of business within Dubai; and

(c) is able to prevent acts or omissions outside Dubai which constitute or assist in a breach of the terms of this Order.

20. In respect of assets located outside Dubai, nothing in this Order shall prevent any third party from complying with:

(1) What it reasonably believes to be its obligations, contractual or otherwise, under the laws and obligations of the jurisdiction in which those assets are situated or under the proper law of any contract between itself and the Respondent; and

(2) Any orders of the courts of that jurisdiction, provided that reasonable notice of any application for such an order is given to the Applicant's legal representatives.

**SERVICE OF THIS ORDER AND OTHER DOCUMENTS**

21. The Applicant has permission to serve this Order and the other documents identified in paragraph 2 of Schedule B on the Respondent by:

(1) Personal service; and/or

(2) Delivery by courier or by hand to L33 Lailak 2 Street, Emirates Hills, Dubai, UAE; and/or

(3) Electronic means, via email at the following email addresses:

For the First Respondent: byjuraveendran@gmail.com

For the Second Respondent: melonie19@gmail.com

22. The Order will be considered to have been served:

(1) In the case of personal service: on the day of service, if served by 4pm on a business day; or on the next business day, if served after 4pm on a business day or at any time on a day which is not a business day.

(2) In the case of delivery to the address at paragraph 21(2) above: on the day of delivery, if it is delivered to that address before 4pm on a business day; or on the next business day, if it is delivered after 4pm on a business day or at any time on a day which is not a business day.

(3) In the case of service by email to one of the addresses in paragraph 21(3) above: on the day of transmission, if the email is sent to that address by 4pm on a business day; or on the next business day, if the email is sent after 4pm on a business day or at any time on a day which is not a business day.

23. The Applicant shall not be obliged to serve translations of the claim form or any other documents in these proceedings.

**USE OF DOCUMENTS AND INFORMATION IN RELATED PROCEEDINGS**

24. Permission is granted to the parties to these proceedings to use documents and information from these proceedings in:

(1) the related proceedings by the Applicant against Riju Ravindran and others in Claim No. CFI-051-2025; and

(2) for the purposes of commencing or pursuing civil proceedings for the enforcement of this Order or in support of these proceedings in the UAE Courts.

**ENFORCEMENT OF THIS ORDER**

25. This Order is an Enforcement Order, and the Applicant is granted liberty to enforce this Order before the Dubai Courts. The Registrar of the DIFC Court is directed to issue the appropriate letter to the Chief Justice of the Dubai Courts requesting enforcement of this Order after the filing of the necessary application and ratification pursuant thereto.

**NAME AND ADDRESS OF APPLICANT'S LEGAL REPRESENTATIVES**

The Applicant's legal representatives are:
Quinn Emanuel Urquhart & Sullivan UK LLP
90 High Holborn, London WC1V 6LJ, United Kingdom
Ref: 12013-00001
Fax: +44 20 7653 2100
Phone number: +44 20 7653 2210 / +1 801-515-7333 / +44 20 7653 2038 / +44 20 7653 2345

Email: nickmarsh@quinnemanuel.com; dennishranitzky@quinnemanuel.com; joannestrain@quinnemanuel.com; meganhiluta@quinnemanuel.com; sonalpandya@quinnemanuel.com

**COMMUNICATIONS WITH THE COURT**

All communications to the Court about this Order should be sent electronically to registry@difccourts.ae quoting case number CFI-050-2025.

DIFC COURTS
Level 3, Precinct Building 5 (South)
The Gate District
Dubai International Financial Centre
PO Box 211724
Dubai
UAE

Tel +971 4 427 3333
www.difccourts.ae

Issued by:
**Hayley Norton**
Assistant Registrar
Date of issue: 21 May 2025
At: 12pm

**SCHEDULE A**

**AFFIDAVITS**

The Applicant relied on the following affidavits and its respective exhibit–

| Deponent | No. | Date Sworn/Affirmed | Filed on behalf of | Exhibit |
|---|---|---|---|---|
| Nicholas Dean Marsh | First | 14 May 2025 | The Applicant, BYJU'S ALPHA, INC. | NDM1 |
| Nicholas Dean Marsh | Second | Unsworn final draft dated 20 May 2025 | The Applicant, BYJU'S ALPHA, INC. | NDM2 |

**SCHEDULE B**

**UNDERTAKINGS GIVEN TO THE COURT BY THE APPLICANT**

(1) If the Court later finds that this order has caused loss to the Respondent, and decides that the Respondent should be compensated for that loss, the Applicant will comply with any order the Court may make.

(2) The Applicant will, within 3 weeks of this Order, serve upon the Respondent the following documents:

(a) this Order;

(b) copies of the affidavit and exhibits containing the evidence relied upon by the Applicant, and any other documents provided to the Court on the making of the application;

(c) the claim form; and

(d) an application notice for continuation of the Order (which the Applicant will issue as soon as reasonably practicable).

(3) Anyone notified of this Order will be given a copy of it by the Applicant's legal representatives.

(4) The Applicant will pay the reasonable costs of anyone other than the Respondent which have been incurred as a result of this Order including the costs of finding out whether that person holds any of the Respondent's assets and if the Court later finds that this Order has caused such person loss, and decides that such person should be compensated for that loss, the Applicant will comply with any order the Court may make.

(5) If this Order ceases to have effect (for example, if the Respondent provides security as provided for above), the Applicant will immediately take all reasonable steps to inform in writing anyone to whom he has given notice of this Order, or who he has reasonable grounds for supposing may act upon this Order, that it has ceased to have effect.

(6) The Applicant will not without the permission of the Court use any information obtained as a result of this Order for the purpose of any civil or criminal proceedings, either in the DIFC or in any other jurisdiction, other than for:

(a) this claim;

(b) the related proceedings by the Applicant against Riju Ravindran in Claim No. CFI-051-2025; and

(c) commencing or pursuing civil proceedings for the enforcement of this Order or in support of these proceedings in the UAE Courts.

(7) The Applicant will not without the permission of the Court seek to enforce this Order in any country outside the UAE.

## SCHEDULE C

## THE RESPONDENT'S ASSETS

**Byju Raveendran**:

(1) Half of a building in India.

(2) Half of a commercial building in India called 'Green Glen Layout', purchased in January 2011.

(3) As of 28 November 2024, an unspecified stake in Byjus Learning Company FZCO, an entity registered in the United Arab Emirates.

(4) Two bank accounts in the UAE: Emirates NBD Bank Account No. 1015497457901 and LIV (Emirates NBD) Bank Account No. 0959085023401.

(5) Shareholdings in a number of other companies based in Singapore and India.

**Divya Gokulnath**:

(1) A villa in the Epsilon development, Bangalore, India, purchased in October 2018.

(2) Half of a commercial building in India called 'Green Glen Layout', purchased in January 2011.

(3) Shares in a company based in India.

# Exhibit 18

حكومة دبي
GOVERNMENT OF DUBAI

# الأحكام الذكية

محاكم دبي
DUBAI COURTS

749/2025/20

SVM-74938/2025

**بسم الله الرحمن الرحيم**

**باسم صاحب السمو الشيخ محمد بن راشد آل مكتوم حاكم دبي**

**محاكم دبي الابتدائية**

**بالجلسة العلنية المنعقدة يوم الاربعاء الموافق ٣١ ديسمبر ٢٠٢٥ بمقر محاكم دبي الابتدائية بدبي**

| | | |
|---|---|---|
| **برئاسة القاضي** | **حسن محمد شوقي عبدالحميد جبريل** | **رئيس الدائرة** |
| **وعضوية القاضي** | **إبراهيم علي محمد حسين أيوب** | **عضو الدائرة** |
| **و القاضي** | **ايمان احمد حسن محمد المرزوقي** | **عضو الدائرة** |

**في الدعوى رقم ٧٤٩ لسنة ٢٠٢٥ تجاري كلي**

مدعى: شركة بايجوس ألفا،إنك

مدعى عليه: ديفيا جوكولنات جوكولنات

مدعى عليه: بيجو رافيندران رافيندران كوناروفات

الخصم المدخل: شركة ثينك أند ليرن برايفتليمتد

الخصم المدخل: شركة كامشافت كابيتال فند إل بي

**اصدرت الحكم التالي**

بعد سماع المرافعة الشفهية؛ ومطالعة ملف الدعوى؛ والمداولة قانونا :

حيث تخلص وقائع الدعوى في أن المدعية أقامت دعواها بموجب صحيفة قيدت لدى مكتب إدارة الدعوى وذلك بتاريخ ٣١-٧-٢٠٢٥ وأعلنت قانونا للمدعى عليهما وطلبت في ختامها إلزام المدعى عليهما بمسئوليتهما الشخصية بسداد المديونية المترصدة لصالح المدعية، بمبلغ وقدره ٥٤٠,٦٤٧,١٠٩.٢٠ دولارا أمريكيا (ما يعادل ١,٩٨٥,٨٣٤,٦٧٧.٣٩ درهما إماراتيا (مليار وتسعمائة وخمسة وثمانين مليوناً وثمانمائة وأربعة وثلاثين ألفاً وستمائة وسبعة وسبعين درهماً وتسعة وثلاثين فلساً) لما وقع منهما من غش وخطأ جسيم ومخالفة للقانون ولنظام الشركة . إلزام المدعى عليهما بالرسوم والمصروفات ومقابل أتعاب المحاماة .

وذلك على سند من القول إنه بتاريخ ٢٤/١١/٢٠٢١، قام المدعى عليه الأول وشقيقه المدعو/ ريجو رافندران بصفتهما الممثلين القانونين للشركة المدعية وقتذاك، في إبرام عقد تمويل مع عدة جهات تمويلية مختلفة "الدائنين" تحصّلت المدعية عن طريقها على مبلغ تمويلي قدره ١,٢ مليار دولار أمريكي مقابل تعهدات وضمانات يتم الحصول عليها من شركة T&L والشركات التابعة لها . كما قام المدعى عليهما وشقيق المدعى عليه الأول بالاستيلاء على أموال الشركة المدعية من خلال الشركة ملكهما ( شركة T&L) عن طريق شراء حصة عديمة القيمة بشركة تسمى صندوق كامشافت كابيتال)، لصالح الشركة المملوكة للمدعى عليهما شركة T&L . حيث قام كل من المدعى عليه الأول وشقيقه، أثناء مباشرة شقيق المدعى عليه الأول لمهام وظيفته كمدير الشركة المدعية، بتحويل مبلغ وقدره ٥٣٣ مليون دولار أمريكي من حسابات الشركة المدعية إلى شركة تُدعى "كامشافت كابيتال فند " (Camshaft Capital Fund) ، وذلك مقابل حصة زُعم أن الشركة المدعية تملكها في تلك الشركة. وقد تبيّن لاحقًا أن المدعى عليه الأول وشقيقه، بالاشتراك مع المدعى عليها الثانية، قاموا بنقل تلك الحصة إلى شركة "إنسبايليرن" ذ.م.م، وهي شركة تابعة للشركة الأم T&L المملوكة للمدعى عليهما، وكان شقيق المدعى عليه الأول يشغل منصب مديرها سابقًا وأثناء التحويل. وبعد ذلك، تمكن المدعى عليهم من تهريب الأموال المحوّلة من "كامشافت كابيتال" إلى خارج الولايات المتحدة الأمريكية، ونجحوا في إخفاء الجهة التي تم تهريب الأموال إليها . وفي منتصف مارس ٢٠٢٣، تمكن المدعى عليهما وشقيق

* هذا المستند موقع و معتمد إلكترونياً ويمكنكم التحقق من صحته بالدخول على موقع محاكم دبي (خدماتنا الالكترونية العامة - الاستفسارات)

محاكم دبي
DUBAI COURTS

# الأحكام الذكية

حكومة دبي
GOVERNMENT OF DUBAI

749/2025/20

SVM-74938/2025

المدعى عليه الاول من خداع الشركة المدعية والدائنين بغرض إخفاء عملية الاستيلاء التي قاموا بها، وذلك من خلال تقديم بيانات مالية مضللة صادرة عن شركة T&L حيث قاموا بتزويد الدائنين بتقارير ربع سنوية غير مدققة للفترة المنتهية في ٣١ ديسمبر ٢٠٢٢، تُظهر على نحو غير صحيح أن الشركة المدعية تمتلك أرصدة نقدية لدى البنوك تتجاوز ٥٠٠ مليون دولار أمريكي . وبتاريخ ٠٣/٠٣/٢٠٢٣ تم عزل شقيق المدعى عليه الأول من إدارة الشركة وتعيين مدير أخر بدلاً عنه نظرا لما ارتكبه من أعمال غش ومخالفات مالية جسيمة . وبتاريخ ٠٣/٠٣/٢٠٢٣ قام الدائنون بالسيطرة على المدعية التي توجهت إلى محكمة الإفلاس بولاية ديلاوير الأمريكية للحصول على الحماية المقررة بموجب قانون الإفلاس الأمريكي . وبتاريخ ٠٢/٠٢/٢٠٢٤ توجهت المدعية بمباشرة إجراءات الافلاس أمام المحاكم الأمريكية، وقامت بقيد دعوى ضد صندوق كامشافت المشار اليه اعلاه وقامت لاحقاً بضم شقيق المدعى عليه الأول وشركة T&L المملوكة والمدارة من المدعى عليهما وكذا شركة انسبايلرن سعياً لتقرير مسئوليتهم وإبطال التحويلات المذكورة وتمهيداً لاسترداد المبالغ التي قاموا بالاستيلاء عليها . وبتاريخ ٢٧/٠٢/٢٠٢٥ أصدرت محكمة الإفلاس لدى مقاطعة ديلاوير الأمريكية حكماً في مواجهة شقيق المدعى عليه الأول و شركة T&L المملوكة والمدارة من المدعى عليهما متبوعاً بقرارها بتاريخ ١٤/٠٣/٢٠٢٥، والذي قرر أن تحويل أموال المدعية إلى كامشافت فند و كذا تحويل حصة كامشافت إلى إنسبايلرن هما تحويلات احتيالية فعلية ، وأن شركة T&L و شقيق المدعى عليه الأول مسئولين عن تلك المخالفات كلاً حسب دوره وبالتالي ملزمين بسداد المبالغ المستولى عليها ، وأنهم مسئولين عن الاحتيال و الاستيلاء على أموال المدعية و نقلها وقضى - من بين مسائل أخرى – بإلزام شقيق المدعى عليه الأول بسداد مبلغ ٥٤٠،٦٤٧،١٠٩.٢٠ دولار أمريكي، بالإضافة إلى الفائدة الرسوم و المصاريف . وحيث ثبت تهريب الأموال من الشركة المدعية مما أدى الى الإضرار بدائنيها، وذلك من خلال ما أثبتته الاجراءات التي اتخذتها المحاكم الأمريكية بشأن دعوى الافلاس؛ الأمر الذي حدا بالمدعية إلى إقامة دعواها الماثلة ابتغاء الحكم لها بالطلبات.

وقدمت سندا لدعواها حافظة مستندات حوت بين طياتها على صور ضوئية من كلا: صورة مترجمة من الحكم الصادر عن محكمة الإفلاس، صورة من قرار محكمة مركز دبي المالي العالمي وملف التنفيذ والمحكمة طالعتها والمت بها.

وحيث تداولت الدعوى بالجلسات على النحو المبين بمحاضرها أمام المحكمة ومكتب إدارة الدعوى

حضرت المدعية بوكيل وقدم مذكرة ولائحة إدخال خصم جديد التمس في ختامها قبول طلب الإدخال شكلاً، والتصريح بسداد رسم الادخال المقرر ومتابعة الاعلان. وقدم حافظة مستندات طويت على صورة من عقد تأسيس الخصم المدخل ثينك أند ليرن وشهادة تأسيس الخصم المدخل الثاني.

إلزام الخصمين المدخلين شركة ثينك اند ليرن /T&L) / Think and Learn) وشركة كامشافت كابيتال فند (Camshaft Capital Fund) بتقديم ما تحت يدهما من مستندات تخص الدعوى.

وبجلسة ٢٩/٩/٢٠٢٥ قرر القاضي المشرف بندب لجنة ثلاثية مشكلة من خبراء تخصص محاسبي (تخصص في أعمال الشركات التجارية) أصحاب الدور بالجدول وتكون مهمتها الاطلاع على ملف الدعوى والمستندات المقدمة فيها وما عسى أن يقدمه الخصوم؛ لتنفيذ المأمورية الواردة بالمنطوق والتي تحيل إليها المحكمة تجنبا للتكرار.

وقبل إيداع التقرير وبجلسة ١٥/١٠/٢٠٢٥ قدم وكيل المدعية طلب عارض التمس في ختامه منع المدعى عليهما/ المطلوب ضدهما من السفر وحجز جواز سفرهما وإيداعهما خزينة المحكمة لحين سداد المديونية المترصدة لصالح الطالبة (المدعية)، بمبلغ وقدره ٥٤٠،٦٤٧،١٠٩.٢٠ دولارا أمريكيا (ما يعادل ١،٩٨٥،٨٣٤،٦٧٧.٣٩ درهما إماراتيا (مليار وتسعمائة وخمسة وثمانين مليوناً وثمانمائة وأربعة وثلاثين ألفاً وستمائة وسبعة وسبعين درهماً وتسعة وثلاثين فلساً). إلزام المدعى عليهما / المطلوب ضدهما بالرسوم والمصروفات ومقابل أتعاب المحاماة.

ونفاذا للقضاء الصادر بندب الخبرة أودعت اللجنة التقرير بنتيجة مفادها أنه ثبت للخبرة أن المدعو ريجو رافندران، وهو مدير الشركة الخصم المدخل الأولى وشقيق المدعى عليه الثاني، قام بتحويل مبلغ ٥٣٣،٠٠٠،١٠٠.٠٠ دولار أمريكي من المدعية إلى حساب كامشافت فند إل بي بتعليمات من الشركة ثينك آند ليرن التي يمثلها المدعى عليهما والمدعو المذكور، وفقًا لإفادته أمام محكمة الإفلاس الأمريكية، وحيث إن ريجو رافندران ليس طرفًا في الدعوى الماثلة، ولم تطالب المدعية بمبالغ ضده في هذه الدعوى، فإن هذا الشق قانوني ويخرج عن اختصاص

* هذا المستند موقع و معتمد إلكترونياً ويمكنكم التحقق من صحته بالدخول على موقع محاكم دبي (خدماتنا الالكترونية العامة - الاستفسارات)



A1253

محاكم دبي
DUBAI COURTS

# الأحكام الذكية

حكومة دبي
GOVERNMENT OF DUBAI

749/2025/20

SVM-74938/2025

الخبرة المحاسبية، وتترك الخبرة لعدالة المحكمة الموقرة أمر البت فيه . كما ثبت للخبرة من الحكم الصادر عن محكمة الإفلاس الأمريكية لمنطقة ديلاوير في القضيتين رقمي ٢٤-١٠١٤٠ و٢٤-٥٠٠١٣ بتاريخ ١٤/٠٣/٢٠٢٥ أن المبالغ المطالب بها في الدعوى الماثلة سبق أن كانت محل مطالبة في الدعوى المشار إليها، حيث قضت المحكمة باعتبار تحويل أموال المدعية إلى صندوق كامشافت كابيتال عملية احتيالية، وألزمت كلًّا من كامشافت كابيتال، وإنسبيليرن، وثينك آند ليرن (T&L) ، وريجو رافندران برد المبالغ مع الفوائد والتكاليف . تطالب المدعية في الدعوى الماثلة بإلزام المدعى عليهما شخصيًا بسداد مبلغ ٥٤٠,٦٤٧,١٠٩.٢٠ دولار أمريكي بدعوى ارتكابهما أعمال غش وخطأ جسيم ومخالفة لنظام الشركة، وقد تبين للخبرة أن المبلغ الذي تم تحويله فعليا من المدعية يبلغ ٥٣٣,٠٠٠,١٠٠.٠٠ دولار أمريكي فقط، في حين يمثل الفرق بين هذا المبلغ والمبلغ المطالب به تعويضا قضت به محكمة الإفلاس الأمريكية لصالح المدعية، وتترك الخبرة لعدالة المحكمة الموقرة أمر البت في مدى استحقاقه .

وبجلسة ٢٦/١١/٢٠٢٥ قدم وكيل المدعية مذكرة التمس في ختامها أولا: إلزام المدعى عليهما بمسئوليتهما الشخصية بسداد المديونية المترصدة لصالح المدعية، بمبلغ وقدره ٥٤٠,٦٤٧,١٠٩.٢٠ دولارا أمريكيا (ما يعادل ١,٩٨٥,٨٣٤,٦٧٧.٣٩ درهما إماراتيا (مليار وتسعمائة وخمسة وثمانين مليوناً وثمانمائة وأربعة وثلاثين ألفاً وستمائة وسبعة وسبعين درهماً وتسعة وثلاثين فلساً) لما وقع منهما من غش وخطأ جسيم ومخالفة للقانون ولنظام الشركة . ثانيا: إلزام الخصمين المدخلين شركة/ ثينك اند ليرن ( T&L ) وشركة كامشافت كابيتال فند ( Camshaft Capital Fund ) بتقديم ما تحت يدهما من مستندات تخص الدعوى. ثالثا: إلزام المدعى عليهما بالرسوم والمصروفات ومقابل أتعاب المحاماة. وقدم حافظة مستندات طالعتها المحكمة والمت بها، وبجلسة المرافعة الختامية قررت المحكمة حجز الدعوى للحكم لجلسة اليوم.

وحيث إن المدعى عليهما والخصمين المدخلين لم يحضروا رغم إعلانهم قانونا فمن ثم فإن الحكم يكون بمثابة حضوريا في حقهم، عملا بنص المادة ٥٤ من المرسوم بقانون رقم ٤٢ لسنة ٢٠٢٢ بإصدار قانون الإجراءات المدنية .

وحيث إنه وعن شكل الادخال المبدى من المدعية وكان من المقرر أن مفاد نص المادة ٩٦ من قانون الإجراءات المدنية - وعلى ما جرى به قضاء هذه المحكمة - أنه يشترط لقبول طلب المدعى عليه إدخال الغير خصماً جديداً في الدعوى أن يكون هذا الغير ممن. كان يجوز اختصامه إلى جانب أطرافها وليس من كان يجوز أو يجب اختصامه بديلاً عن أحد أطرافها وأن تتوافر فيه الشروط العامة لقبول الدعوى وأن تكون هناك مصلحه في اختصامه بتوافر منفعة جديه ومشروعة تعود من اختصامه له كأن يختصمه للحكم عليه بذات الطلبات الأصلية إذا ادعى بأن له حقاً في الرجوع بالحق المدعى به على من يطلب إدخاله، وأن يكون هناك ارتباط بين موضوع الطلب في الدعوى الأصلية وموضوع الطلب الموجه إلى هذا الغير بقيام صله وثيقة بين الطلبين تجعل من مصلحة العدالة نظرهما معاً ، واختصام الغير وإن كان بناء على طلب الخصم إلا أنه يخضع لسلطة محكمة الموضوع التي يتعين عليها النظر في توافر شروط الإدخال فإن تبين عدم توافرها أو أحداها قضت بعدم قبول الإدخال . ( حكم محكمة التمييز - دبي بتاريخ ٢٤-١١-٢٠٢٠ في الطعن رقم ٢٠٢٠ / ٢٣١ طعن عقاري)

وهديا لما سبق وكانت المدعية وقد اتبعت الإجراءات المنصوص عليها في المادة ٩٦ من قانون الإجراءات المدنية الأمر الذي تقضي معه المحكمة بقبول الادخال شكلا على نحو ما سيرد بالمنطوق.

وحيث إنه وعن موضوع الادخال وعن طلب الزام الخصمين المدخلين بتقديم ما تحت يدهما من مستندات " وكان المقرر في قضاء هذه المحكمة أن الفصل في طلب إلزام الخصم بتقديم مستند تحت يده باعتباره متعلقا بأوجه الإثبات متروك لقاضي الموضوع فله أن يرفضه إذا تبين له ان الطلب لم يبين أوصاف المحرر ومضمونه بقدر ما يمكن من التفصيل والدلائل والظروف التي تؤيد أن المحرر تحت يد الخصم، وله أن يكون عقيدته من الأدلة التي يطمئن إليها كما أن تقدير الدلائل والمبررات التي تجيز للخصم أن يطلب إلزام خصمه بتقديم أية ورقة منتجة في الدعوى تكون تحت يده هو موضوعي يتعلق بتقديم الأدلة ولا رقابة لمحكمة النقض عليه فيه".

وهديا لما تقدم وكانت المدعية وقد أقامت طلبها بإلزام الخصمين المدخلين بتقديم ما تحت يدهما من مستندات ولم تقم ببيان تفصيلي لأوصاف المحرر ومضمونه مما تقضي معه المحكمة برفض الطلب إيرادا بالأسباب دون المنطوق.

وحيث إنه وعن موضوع الدعوى وطلبات المدعية الختامية المقدمة بمذكرتها الختامية بجلسة ٢٦/١١/٢٠٢٥ فلما كان من المقرر بنص

حكومة دبي
GOVERNMENT OF DUBAI

# الأحكام الذكية

محاكم دبي
DUBAI COURTS

749/2025/20

SVM-74938/2025

المادة ٢١ من المرسوم بقانون اتحادي رقم ٣٢ لسنة ٢٠٢١ على أنه " - تكتسب الشركة اعتباراً من تاريخ قيدها بالسجل التجاري لدى السلطة المختصة شخصية اعتبارية وفقاً لأحكام هذا القانون والقرارات الصادرة بموجبه . ٢- يكون للشركة خلال فترة التأسيس شخصية اعتبارية بالقدر اللازم لتأسيسها، وتلتزم الشركة بتصرفات المؤسسين فيما يتعلق بإجراءات ومتطلبات التأسيس في تلك الفترة بشرط تمام تأسيسها....." كما أنه من المقرر بنص المادة ٨٤ من ذات القانون أنه"١- يسأل كل مدير في الشركة ذات المسؤولية المحدودة تجاه الشركة والشركاء والغير عن أية أعمال غش يقوم بها كما يلتزم بتعويض الشركة عن أية خسائر أو مصاريف تتكبدها بسبب يرجع إلى سوء استخدام الصلاحية أو مخالفة أحكام أي قانون نافذ أو عقد تأسيس الشركة أو عقد تعيينه أو خطأ جسيم من جانب المدير ويبطل أي نص في عقد التأسيس أو في عقد تعيين المدير يتعارض مع أحكام هذا البند . ٢- مع مراعاة أحكام الشركة ذات المسؤولية المحدودة وفقا لهذا المرسوم بقانون، تسري على مديري الشركات ذات المسؤولية المحدودة الأحكام الخاصة بأعضاء مجلس الإدارة في شركات المساهمة الواردة في هذا المرسوم بقانون . " (الطعن رقم ٦٠٢ لسنة ٢٠٢١ ق - جلسة ٢٠ / ٦ / ٢٠٢١)

كما أنه من المقرر أن مدير الشركة ذات المسؤولية المحدودة هو الذي يتولى إدارتها، وأنه إذا أبرم تصرفًا مع الغير باسمها ولحسابها وفي حدود نشاطها فإنها تلتزم وحدها بآثار هذا التصرف، وأن مدير الشركة المحدودة المسؤولية لا يُسأل في ماله الخاص إلا في حالة ثبوت الغش أو الاحتيال الظاهر بجلاء أو مخالفة القانون أو لنظام الشركة وإدارته لها، وإن الغش والاحتيال الظاهر بجلاء لا يفترض بل لابد من الادعاء به وإقامة الدليل عليه. (الطعنان رقما ٣٩٥، ٤١٩ لسنة ٢٠٢٥ - جلسة ١١/٩/٢٠٢٥ – طعن مدني)

كما أنه " " إن كان الأصل أن الشريك في الشركة ذات المسئولية المحدودة لا يسأل عن ديونها إلا بقدر حصته في رأسمالها إلا أنه استثناء من هذا الأصل لا يعتد بمبدأ تحديد مسئولية الشريك في الشركة ذات المسئولية المحدودة بقدر حصته في رأسمالها متى كان الشريك قد استغل مبدأ استقلالية ذمة الشركة المحدودة عن ذمة الشركاء فيها كوسيلة أو ستار لما يقوم به من تصرفات مخالفة لعقد الشركة من شأنها الإضرار بشركائه أو بالدائنين طالما كانت تلك الأفعال أو التصرفات تنطوي على الغش والاحتيال أو الخطأ الجسيم، ففي هذه الحالة لا يعتد بمبدأ مسئولية الشريك في حدود حصته في رأس المال وإنما يكون مسئولا بصفته الشخصية عن تلك التصرفات بحيث يمتد أثرها إلى أمواله الخاصة، واستخلاص غشه واحتياله أو خطئه الجسيم هو من مسائل الواقع التي تستقل بها محكمة الموضوع متى أقامت قضاءها على أسباب سائغة مستمدة مما له أصل ثابت في الأوراق . "

كما أنه من المقرر أن " استخلاص مسئولية المدير والشريك من مسائل الواقع التي تستقل بتقديرها محكمة الموضوع متى أقامت قضاءها على أسباب سائغة مستمدة مما له أصل ثابت في الأوراق . "

(١٣٢٥ لسنة ٢٠٢٢ – جلسة ٢٠/١٢/٢٠٢٢ – طعن تجاري)

فإنه من المقرر في قضاء التمييز أن المسئولية سواء كانت عقدية أم تقصيرية لا تتحقق إلا بتوافر أركانها الثلاثة من خطأ وضرر وعلاقة سببيه تربط بينها بحيث إذا انتفى ركن منها انتفت المسئولية، وأن ثبوت أو نفى توافر الخطأ والضرر وعلاقة السببية بينهما هو من مسائل الواقع التي تستقل محكمة الموضوع بتقديرها من واقع الأدلة المطروحة عليها في الدعوى بما في ذلك تقرير الخبير المنتدب والقرائن الموضوعية التي تستخلصها من الوقائع الملابسة ولا رقابة عليها في ذلك من محكمة التمييز طالما استندت في قضائها إلى أسباب سائغة مستمدة مما له أصل ثابت في الأوراق ومؤدياً إلى النتيجة التي خلص اليه . وأن المسئولية سواء كانت عقدية ام تقصيرية لا تتحقق إلا بتوافر أركانها الثلاثة من خطأ وضرر وعلاقة سببيه تربط بينها بحيث إذا انتفى ركن منها انتفت المسئولية ، وأن ثبوت أو نفى توافر الخطأ والضرر وعلاقة السببية بينهما هو من مسائل الواقع التي تستقل محكمة الموضوع بتقديرها من واقع الأدلة المطروحة عليها في الدعوى بما في ذلك تقرير الخبير المنتدب والقرائن الموضوعية التي تستخلصها من الوقائع الملابسة ولا رقابة عليها في ذلك من محكمة التمييز طالما استندت في قضائها إلى أسباب سائغة مستمدة مما له أصل ثابت في الأوراق ومؤدياً إلى النتيجة التي خلص اليها الحكم (حكم محكمة التمييز - دبي بتاريخ ١٧-٠٦-٢٠٢٠ في الطعن رقم ٣٣٨ لسنة ٢٠٢٠ طعن تجاري).

ومن المقرر بقضاء محكمة التمييز أن تقدير الأدلة المطروحة عليها ومنها تقرير الخبير الذي ندبته والأخذ بما تطمئن إليه وطرح ما عداه وأنه متى رأت الأخذ بتقرير الخبير محمولا على أسبابه وأحالت إليه فإنه يعتبر جزء من أسبابها ولها أن تقيم قضائها على النتيجة التي

* هذا المستند موقع و معتمد إلكترونياً ويمكنكم التحقق من صحته بالدخول على موقع محاكم دبي (خدماتنا الالكترونية العامة - الاستفسارات)

حكومة دبي
GOVERNMENT OF DUBAI

الأحكام الذكية

محاكم دبي
DUBAI COURTS

749/2025/20

SVM-74938/2025

خلص إليها الخبير بغير حاجة للرد صراحة على الطعون الموجهة إليه طالما أن الخبير قد تكفل بالرد عليها في تقريره (الطعن رقم ١٦ لسنة ٢٠٠٥ – جلسة ٤/٦/٢٠٠٦ – س ١٧ ع ١ ص ١٠٣٣)

وهديا لما تقدم وكان الثابت من مطالعة المحكمة لأوراق ومستندات الدعوى وتقرير لجنة الخبراء والتي ندبتها المحكمة وتطمئن لما ورد بالتقرير وتأخذ بما انتهى اليه من نتيجة صحيحة لها أصلها الثابت بمحاضر الأعمال ولسلامة الأسس والأبحاث التي أقيم عليها؛ ومتضمنا الرد المسقط لأوجه النعي عليه وتعتبره المحكمة جزء مكملا لأسباب قضائها في أن المدعى عليهما وهم الممثلين لشركة ثينك اند ليرن بالإضافة الى المدعو/ ريجو رافندران قد اخلوا بالتزاماتهم تجاه المدعية بان قاموا بتحويل مبلغ ٥٣٣,٠٠٠,١٠٠.٠٠ دولار امريكي من المدعية الى حساب كامشافت فند ال بي عن طريق المدعو/ ريجو رافنيدران (غير مختصم) وبتعليمات من الشركة الخصم المدخل ثينك اند ليرن التي يمثلها المدعى عليهما بالإضافة للمدعو/ ريجو رافنيدران وفقا لإفادته امام محكمة الإفلاس الامريكية. كما قام المدعى عليه الثاني بنقل مبلغ ٥٣٣,٠٠٠,٠٠٠.٠٠ دولار امريكي الى شركة إنسبيليرن بتاريخ ٣١/٠٣/٢٠٢٣ رغم عدم وجود صلاحيات له بذلك حيث إنه لم يكن مديرا للمدعية في ذلك التوقيت؛ مما يستقر معه في عقيدة المحكمة أن المدعى عليهما قد أرتكبا خطأ في مواجهة الشركة المدعية تمثل في الاحتيال والغش وتحويل مبلغ من حساب الشركة لشركة أخرى دون سند قانوني صحيح وأن ذلك الخطأ قد رتب ضرر تمثل في حرمان الشركة المدعية من المبلغ المحول فعليا من حساب الشركة المدعية والوارد بتقرير الخبرة مما تقضي معه المحكمة بإلزامهما بمبلغ ٥٣٣,٠٠٠,١٠٠.٠٠ دولار امريكي أو ما يعادله بالدرهم الاماراتي على نحو ما سيرد بالمنطوق.

وحيث إنه عن مصاريف الدعوى شاملة أتعاب المحاماة فالمحكمة تلزم بها المدعى عليهما عملا بنص المادة ١٣٣ / ١؛ ٢ من المرسوم بقانون رقم ٤٢ لسنة ٢٠٢٢ بإصدار قانون الإجراءات المدنية.

**فلهذة الأسباب**

حكمت المحكمة بمثابة حضوري:

أولا: بقبول الادخال شكلا.

ثانيا: بإلزام المدعى عليهما بأن يؤديا للمدعية مبلغ وقدره ٥٣٣,٠٠٠,١٠٠.٠٠ دولار امريكي (خمسمائة وثلاثة وثلاثون مليون ومائة دولار أمريكي) أو ما يعادله بالدرهم الاماراتي والزمتهما المصاريف ومبلغ ألف درهم مقابل أتعاب المحاماة ورفضت ما عدا ذلك من طلبات.

**التوقيع**

**القاضي / حسن محمد شوقي عبدالحميد جبريل**

CSC20-CY2025-CSN749-DJI2925

**التوقيع**

**القاضي / إبراهيم علي محمد حسين أيوب**

CSC20-CY2025-CSN749-DJI3182

**التوقيع**

**القاضي / ايمان احمد حسن محمد المرزوقي**

CSC20-CY2025-CSN749-DJI3101

* هذا المستند موقع و معتمد إلكترونياً ويمكنكم التحقق من صحته بالدخول على موقع محاكم دبي (خدماتنا الالكترونية العامة - الاستفسارات)

749/2025/20

SVM-74938/2025

الهيئة المبينة بصدر هذا الحكم هي التي سمعت المرافعة وحجزت الدعوى للحكم وأصدرت الحكم ووقعت عليه، أما الهيئة التي نطقت به فهي المشكلة وفق محضر جلسة النطق به.

* هذا المستند موقع و معتمد إلكترونياً ويمكنكم التحقق من صحته بالدخول على موقع محاكم دبي (خدماتنا الالكترونية العامة - الاستفسارات)

**In the name of Allah, the Most Gracious, the Most Merciful,**

**In the name of His Highness Sheikh Mohammed bin Rashid Al Maktoum, Ruler of Dubai, Dubai Court of First Instance**

**At the public hearing held on Wednesday, 31 December 2025, at the Dubai Court of First Instance in Dubai**

| | | |
|---|---|---|
| **Presided over by Judge** | **Hassan Mohammed Shufi Abdulhamid Jibril** | **Head of Department** |
| **Membership of the judge** | **Ibrahim Ali Mohammed Hussein Ayoub,** | **Member of the Chamber** |
| **the judge** | **Iman Ahmed Hassan Mohammed Al-Marzouq** | **Member of the Chamber** |

**In Case No. 749 of 2025 Commercial**

Plaintiff: Byjus Alpha, Inc.

Defendant: Divya Gokulnath

Defendant: Byju Ravindran

Intervener: Think and Learn Private Limited

Intervener: Camshaft Capital Fund LP

**The following ruling was issued:**

After hearing the oral arguments, reviewing the case file, and deliberating legally: Whereas the facts of the case conclude that the plaintiff filed its claim in a document registered with the case management office on 31 July 2025, served it legally on the defendants, and requested that the defendants be held personally liable for the payment of the outstanding debt owed to the plaintiff, in the amount of US$540,647,109.20 (equivalent to AED 1,985,834, 677,039 UAE dirhams (one billion, nine hundred and eighty-five million, eight hundred and thirty-four thousand, six hundred and seventy-seven dirhams and thirty-nine fils) for their fraud, gross negligence, and violation of the law and company regulations. The defendants shall be ordered to pay the fees, expenses, and attorney's fees, based on the fact that on 24 November 2021, the first defendant and his brother, Riju Ravindran, in their capacity as legal representatives of the plaintiff company at the time, entered into a financing agreement with several different financing entities (the "creditors") through which the plaintiff obtained financing in the amount of US$1.2 billion in exchange for commitments and guarantees obtained from T&L and its subsidiaries. The defendants and the brother of the first defendant also seized the plaintiff company's funds through their company (T&L) by purchasing a worthless share in a company called Camshaft Capital Fund, for the benefit of the company owned by the defendants, T&L. While the first defendant's



* This document is electronically signed and certified. You can verify its authenticity by visiting the Dubai Courts website (Our e-Services - Inquiries).

حكومة دبي
GOVERNMENT OF DUBAI

محاكم دبي
DUBAI COURTS

brother was performing his duties as manager of the plaintiff company, the first defendant and his brother transferred US$533 million from the plaintiff company's accounts to a company called Camshaft Capital Fund in exchange for a share that the plaintiff company allegedly owned in that company. It was later revealed that the first defendant and his brother, in collusion with the second defendant, transferred that share to Inspilearn LLC, a subsidiary of the parent company T&L owned by the two defendants, of which the first defendant's brother was the former and current director at the time of the transfer. The defendants then managed to smuggle the funds transferred from Camshaft Capital out of the United States and successfully concealed the destination of the smuggled funds.

In mid-March 2023, the defendants and the brother of the first defendant deceived the plaintiff company and creditors in order to conceal their misappropriation, by submitting misleading financial statements issued by T&L, in which they provided creditors with unaudited quarterly reports for the period ending 31 December 2022, falsely showing that the plaintiff company had cash balances in banks exceeding US$500 million. On 3 March 2023, the first defendant's brother was removed from the company's management and another manager was appointed in his place due to his commission of fraud and serious financial violations. On 3 March 2023, creditors took control of the plaintiff, which filed for protection under US bankruptcy law with the Delaware Bankruptcy Court. On 2 February 2024, the plaintiff filed for bankruptcy proceedings in US courts and filed a lawsuit against the Camshaft Fund mentioned above. She later joined the first defendant's brother and the company T&L, owned and managed by the defendants, as well as the company Inspilearn, in order to determine their liability, invalidate the aforementioned transfers, and pave the way for the recovery of the amounts they had seized. On 27 February 2025, the Bankruptcy Court for the District of Delaware issued a ruling against the first defendant's brother and T&L, owned and managed by the defendants, followed by its decision on 14 March 2025, which determined that the transfer of the plaintiff's funds to Camshaft Fund and the transfer of Camshaft Fund's share to Inspilearn were invalid. On 14 March 2025, which determined that the transfer of the plaintiff's funds to Camshaft Fund and the transfer of Camshaft's share to Inspilearn were fraudulent transfers, and that T&L and the first defendant's brother were responsible for those violations, each according to their role, and were therefore obliged to repay the amounts seized. and that they were responsible for fraudulently misappropriating and transferring the plaintiff's funds. The court ruled, among other things, that the first defendant's brother was liable to repay the sum of US$540,647,109.20, plus interest, fees, and expenses. It was proven that funds were embezzled from the plaintiff company, causing damage to its creditors, as evidenced by the proceedings taken by the US courts in the bankruptcy case, which prompted the plaintiff to file the present case in order to obtain a ruling in its Favor.

It submitted a file of documents in support of its claim, which included photocopies of both: a translated copy of the judgment issued by the bankruptcy court, a copy of the decision of the Dubai International Financial Centre court, and the enforcement file, which the court reviewed and accepted. The case was heard in court sessions as recorded in the minutes before the court and the case management office. The plaintiff was represented by an attorney who submitted a memorandum and a list of new defendants, requesting at the end of the memorandum that the application for admission be accepted in form and that the admission fee be paid and the announcement be followed up.

A document folder was submitted containing a copy of the memorandum of association of the new defendant, Think and Learn (Think and Learn/ (T&L), and the certificate of incorporation of the second



* This document is electronically signed and certified. You can verify its authenticity by visiting the Dubai Courts website (Our e-Services - Inquiries).

new defendant, Camshaft Capital Fund (Camshaft Capital Fund) The two defendants, Think and Learn and Camshaft Capital Fund, were required to submit all documents in their possession relating to the case.

At the hearing on 29 September 2025, the presiding judge decided to appoint a three-member committee of experts specializing in accounting (specializing in commercial companies) to review the case file, the documents submitted therein, and any documents that may be submitted by the parties, in order to carry out the task specified in the operative part of the judgment and referred to it by the court to avoid duplication.

Before the report was filed, at the hearing on 15 October 2025, the plaintiff's representative submitted a petition requesting, in conclusion, that the defendants/respondents be prohibited from traveling, that their passports be confiscated, and that they be remanded to the court treasury until the debt owed to the plaintiff (the claimant) is paid, in the amount of US$540,647.109.20 (equivalent to AED 1,985,834.677039 (one billion, nine hundred and eighty-five million, eight hundred and thirty-four thousand, six hundred and seventy-seven dirhams and thirty-nine fils). The defendants/respondents shall be liable for the fees, expenses, and attorney's fees.

Pursuant to the court order appointing an expert, the committee submitted its report, which concluded that the expert had established that Riju Ravindran, the director of the opposing company and brother of the second defendant, had transferred the sum of 533,000 100,000 US dollars from the plaintiff to the account of Camshaft Fund LLP on the instructions of Think & Learn, represented by the defendants and the aforementioned individual, according to his statement before the US Bankruptcy Court. Since Riju Ravindran is not a party to the present case, and the plaintiff has not claimed any amounts against him in this case, this part is legal and falls outside the jurisdiction of Accounting expertise, leaving the decision to the discretion of the honourable court. As proven by the ruling issued by the US Bankruptcy Court for the District of Delaware in cases No. 24-10140 and 50013-24 dated 14 March 2025, that the amounts claimed in the present case had already been claimed in the aforementioned case, where the court ruled that the transfer of the plaintiff's funds to the Camshaft Capital fund was fraudulent, and ordered Camshaft Capital, Inspilearn, Think & Leiden (T&L), and Riju Ravindran to repay the amounts with interest and costs. The plaintiff in the present case is seeking to hold the defendants personally liable for the payment of US$540,647.109.20 on the grounds that they committed fraud and gross negligence in violation of company regulations. The expert report shows that the amount actually transferred by the plaintiff is only US$533,000.100.00, while the difference between this amount and the amount claimed represents compensation awarded by the US Bankruptcy Court in Favor of the plaintiff. The expert opinion leaves it to the discretion of the honourable court to decide on the extent of its entitlement.

At the hearing on 26 November 2025, the plaintiff's attorney submitted a memorandum, at the end of which he requested, first: that the defendants be held personally liable for the payment of the debt owed to the plaintiff, in the amount of US$540,647,10920 (equivalent to AED 1,985,834,677.39 (one billion, nine hundred and eighty-five million, eight hundred and thirty-four thousand, six hundred and seventy-seven dirhams and thirty-nine fils) for their fraud, gross negligence, and violation of the law and company regulations. Second: Obligate the defendants, Think & Learn (T&L) and Camshaft Capital Fund to submit all documents in their possession relating to the case. Third: The defendants shall be



* This document is electronically signed and certified. You can verify its authenticity by visiting the Dubai Courts website (Our e-Services - Inquiries).

liable for the fees, expenses, and legal representation costs. A file of documents was submitted to the court, which reviewed it, and at the final hearing, the court decided to reserve judgment for today's session.

Whereas the defendants and the opposing parties did not appear despite being legally summoned, the judgment shall therefore be deemed to have been rendered in their presence, pursuant to Article 54 of Decree-Law No. 42 of 2022 promulgating the Code of Civil Procedure. Whereas, with regard to the form of the joinder requested by the plaintiff, it was decided that the text of Article 96 of the Code of Civil Procedure - and in accordance with the ruling of this court - requires that, in order for the defendant's request to join a third party as a new party to the lawsuit to be accepted, that third party must be someone who It was permissible to sue him alongside the parties, and not someone who could or should be sued in place of one of the parties, and that he must meet the general conditions for the acceptance of the case, and that there must be an interest in suing him, with the availability of a serious and legitimate benefit to be gained from suing him, such as suing him to rule on the same original claims if he claims to have a right to the claiming the alleged right against the person requesting his introduction, and there must be a connection between the subject matter of the claim in the original lawsuit and the subject matter of the claim directed at this third party, with a close connection between the two claims that makes it in the interest of justice to consider them together. and the third party is sued, even if it is at the request of the opponent, it is subject to the authority of the court of first instance, which must consider whether the conditions for joinder are met. If it finds that they are not met, or that one of them is not met, it shall rule that the joinder is not admissible. (Judgment of the Court of Cassation - Dubai, dated 24 November 2020, in Appeal No. 231/2020, Real Estate Appeal) In light of the foregoing, the plaintiff has followed the procedures stipulated in Article 96 of the Code of Civil Procedure, whereby the court shall rule on the admissibility of the joinder in the manner set forth in the operative part.

Whereas, regarding the subject matter of the submission and the request to compel the opposing parties to submit the documents in their possession *"It has been established in the jurisprudence of this court that the decision on the request to compel the opposing party to submit a document in its possession, considering that it relates to evidence, is left to the judge hearing the case, who may reject it if he finds that the request does not describe the document and its content in as much detail as possible, and does not provide evidence and circumstances supporting that the document is in the possession of the opposing party. He may base his opinion on evidence that he finds convincing, and the assessment of the evidence and justifications that allow the defendant to request that his opponent be compelled to produce any document relevant to the case that is in his possession is a matter of evidence and is not subject to review by the Court of Cassation.*"

In light of the foregoing, the plaintiff filed its request to compel the defendants to produce the documents in their possession and did not provide a detailed description of the editor and its content, whereby the court ruled to reject the request without stating the reasons. Whereas, with regard to the subject matter of the case and the plaintiff's final requests submitted in its closing brief at the hearing on 26 November 2025, since it was decided by the text of Article 21 of Federal Decree-Law No. 32 of 2021 states that *"- From the date of its registration in the commercial register with the competent authority, the company shall acquire legal personality in accordance with the provisions of this law and the decisions issued pursuant thereto. 2. During the period of incorporation, the company shall have legal personality to*



* This document is electronically signed and certified. You can verify its authenticity by visiting the Dubai Courts website (Our e-Services - Inquiries).

*the extent necessary for its incorporation, and the company shall be bound by the actions of the founders with regard to the procedures and requirements for incorporation during that period, provided that its incorporation is completed..."* It is also stipulated in Article 84 of the same law that "*1 - Every director of a limited liability company shall be liable to the company, the partners, and third parties for any fraudulent acts he commits, and shall be obliged to compensate the company for any losses or expenses incurred by it due to abuse of authority, violation of the provisions of any applicable law or the company's articles of association or his contract of appointment, or gross negligence on the part of the director, and any provision in the contract of incorporation or in the director's contract of appointment that conflicts with the provisions of this clause shall be null and void. 2. Subject to the provisions of the limited liability company in accordance with this decree-law, the provisions relating to members of the board of directors of joint stock companies contained in this decree-law shall apply to directors of limited liability companies.* (Appeal No. 602 of 2021 - Session 20 June 2021)

It is also established that the manager of a limited liability company is responsible for its management, and that if he acts with third parties on its behalf and for its account and within the limits of its activities, it alone shall be liable for the consequences of such action, The manager of a limited liability company shall not be held liable with his own money except in cases of proven fraud or obvious deception or violation of the law or the company's regulations and its management. Obvious fraud and deception shall not be presumed but must be alleged and proven. (Appeals Nos. 419 and 395 of 2025 - Session of 11 September 2025 - Civil Appeal)

Furthermore, *"If the principle is that a partner in a limited liability company is only liable for its debts to the extent of his share in its capital, an exception to this principle is that the principle of limiting the liability of a partner in a limited liability company to the extent of his share in its capital does not apply when the partner has exploited the principle of the independence of the limited company's liability from that of its partners as a means or cover for actions that violate the company's contract and harm its partners or creditors, as long as those actions or conduct involve fraud, deception, or gross negligence. in which case the principle of the partner's liability within the limits of his share in the capital shall not apply, but rather he shall be personally liable for those acts, the effect of which shall extend to his own funds, The determination of fraud, deception, or gross negligence is a matter of fact that is decided by the court of first instance when it bases its judgment on reasonable grounds derived from evidence that is firmly established in the case file."*

It is also established that *"the determination of the liability of the director and partner is a matter of fact to be decided by the court of first instance when it bases its judgment on valid reasons derived from established facts in the case file."* (1325 of 2022 - Session of 20 December 2022 - Najari Appeal)

It is established in case law that liability, whether contractual or tortious, can only be established if three elements are present: fault, damage, and a causal link between them, such that if one of these elements is absent, liability is negated. The establishment or denial of fault, damage, and the causal relationship between them is a matter of fact that the court of first instance is independent in assessing based on the evidence presented to it in the case, including the report of the appointed expert and the objective evidence it derives from the surrounding facts, and the Court of Cassation has no oversight in this matter as long as it bases its judgment on valid reasons derived from the established facts in the case file and leading to the conclusion it reached. Liability, whether contractual or tortious, is only established when



* This document is electronically signed and certified. You can verify its authenticity by visiting the Dubai Courts website (Our e-Services - Inquiries).

all three elements of fault, damage, and a causal link between them are present, such that if one of these elements is absent, liability is negated. The establishment or denial of the existence of fault, damage, and the causal relationship between them is a matter of fact that the court of first instance is independent in assessing based on the evidence presented to it in the case, including the report of the appointed expert and the objective evidence it derives from the surrounding facts, and the Court of Cassation has no oversight in this matter as long as it bases its judgment on reasonable grounds derived from established facts in the case file and leading to the conclusion reached in the judgment (Judgment of the Court of Cassation - Dubai dated 17 June 2020 in Appeal No. 338 of 2020, Commercial Appeal).

It is estimated by the Court of Cassation that the assessment of the evidence presented to it, including the report of the expert it appointed, and the acceptance of what it finds satisfactory and the rejection of what it does not, is that when it sees fit to accept the expert's report based on its reasons and refers to it, it is considered part of its reasons and it has the right to base its judgment on the result that the expert concluded that there was no need to respond explicitly to the appeals directed at him, as long as the expert had responded to them in his report (Appeal No. 16 of 2005 - Session of 4 June 2006 - S14 17 p. 1033).

In light of the foregoing, and based on the court's review of the case files and documents and the report of the committee of experts appointed by the court, the court is satisfied with the report and accepts its conclusions, which are based on the minutes of the proceedings and the soundness of the grounds and research on which they are based. including the response to the objections raised against it, and the court considers it an integral part of the reasons for its judgment that the defendants, who are representatives of Think and Learn, in addition to the defendant Riju Ravindran, have breached their obligations towards the plaintiff by transferring the amount of US$533,000 US$100,000 from the plaintiff to the account of Camshaft Fund LLP. through Riju Ravindran (not a party to the proceedings) and on the instructions of the opposing company Think and Learn, represented by the defendants and Riju Ravindran, according to his statement before the US Bankruptcy Court. Riju Ravindran, according to his testimony before the US Bankruptcy Court. The second defendant also transferred US$533,000,000 to Inspilearn Company on 31 March 2023, despite not having the authority to do so, as he was not the plaintiff's representative at that time. The court therefore finds that the defendants committed a wrongful act against the plaintiff company, consisting of fraud and deception and the transfer of funds from the company's account to another company without legal justification, and that this wrongful act caused damage to the plaintiff company by depriving it of the funds actually transferred from its account, as stated in the expert report. The court therefore orders them to pay the amount of US$533,000.100.00 or its equivalent in UAE dirhams, as stated in the operative part of the judgment. As for the costs of the lawsuit, including attorney's fees, the court orders the defendants to pay them in accordance with Article 2:1/133 of Decree-Law No. 42 of 2022 promulgating the Code of Civil Procedure.

**For these reasons**

The court ruled: First: to accept the submission in form. Second: to oblige the defendants to pay the plaintiff the sum of US$533,000.100.00 (five hundred and thirty-three million and one hundred thousand US dollars) or its equivalent in UAE dirhams, and to pay the expenses and the amount of one thousand dirhams for attorney's fees, and rejected all other claims.

* This document is electronically signed and certified. You can verify its authenticity by visiting the Dubai Courts website (Our e-Services - Inquiries).

حكومـــة دبـــي
GOVERNMENT OF DUBAI

محاكـم دبـــي
DUBAI COURTS

التوقيع
القاضي / حسن محمد شوقي عبدالحميد جبريل

CSC20-CY2025-CSN749-DJI2925

التوقيع
القاضي / إبراهيم علي محمد حسين أيوب

CSC20-CY2025-CSN749-DJI3182

التوقيع
القاضي / ايمان احمد حسن محمد المرزوقي

CSC20-CY2025-CSN749-DJI3101



* This document is electronically signed and certified. You can verify its authenticity by visiting the Dubai Courts website (Our e-Services - Inquiries).

# Exhibit 19

# AMENDED & RESTATED

# LIMITED LIABILITY COMPANY OPERATING AGREEMENT

# OF INSPILEARN LLC

This Amended & Restated Limited Liability Company Operating Agreement (the "***Agreement***"), dated as of the November 18, 2021, is made by Think & Learn Private Limited (the "***Founding Member***").

**WITNESSETH:**

WHEREAS, Inspilearn LLC (the "***Company***") was formed as a limited liability company under the laws of the State of Delaware by filing a Certificate of Formation with the Delaware Secretary of State on July 9, 2021 (the "***Certificate of Formation***") in accordance with the Delaware Limited Liability Company Act, as amended from time-to-time (the "***Act***");

WHEREAS, the Founding Member entered into entered into a limited liability company operating agreement dated as of July 15, 2021 (the "***Prior Agreement***"); and

WHEREAS, the Founding Member wishes to amend and restate the Prior Agreement as set forth herein and enter into this Agreement to govern its rights, powers, duties and obligations as a member of the Company shall be governed by the terms and provisions of this Agreement.

NOW, THEREFORE, the Member states as follows:

## ARTICLE I.

Formation, Name and
Principal Place of Business

1. Formation and Name. The Founding Member hereby organizes the Company, to be known as Inspilearn LLC pursuant to the Act. Except as otherwise expressly provided in the Company's Certificate of Formation or this Agreement, the rights and obligations of the Founding Member and any subsequent members of the Company with respect to the Company will be governed by the Act.

2. Principal Place of Business. The principal place of business for the transaction of the business of the Company shall be 3160 De La Cruz Blvd, Ste 204, Santa Clara, CA 95054 USA. The Founding Member may from time to time change the principal place of business and establish additional offices.

3. Registered Office; Registered Agent. The Company shall maintain a registered office in the State of Delaware and a registered agent for service of process in the State of Delaware as required by the Act.

## ARTICLE II.

Purpose and Powers of the Company

1. Purpose of the Company. The authorized purpose of the Company is to carry on any lawful business, purpose or activity which a limited liability company may carry on under the Act.

2. Powers of the Company. The Company will have the power, in fulfilling the purpose set forth above, to conduct any business or take any action which is lawful, and which is not prohibited by the Act.

## ARTICLE III.

### Term of the Company

1. Term. The term of the Company commenced with the filing of the Certificate of Formation with the Secretary of State of the State of Delaware in accordance with the Act and shall be of unlimited duration unless earlier terminated as provided in Section 1 of Article IX below.

## ARTICLE IV.

### Capital Contributions, Capital Accounts and Voting Rights of the Members

1. Initial Capital Contribution. As its initial capital contribution to the Company the Founding Member is contributing, simultaneously with the execution of this Agreement, the cash and other property reflected in Exhibit A hereto (the "***Initial Capital Contribution***").

2. Additional Contributions. The Founding Member will have no obligation to contribute additional capital or make any loan to the Company. However, the Founding Member may, from time to time and at its option, make voluntary additional capital contributions to the Company.

3. Capital Accounts. A capital account will be maintained on the books of the Company for the Founding Member and any subsequent members of the Company. The capital account of the Founding Member will be (a) credited with the amount of (i) the Initial Capital Contribution to the Company, (ii) voluntary additional capital contributions made by the Founding Member, if any, and (iii) the share of the net income of the Company allocated to the Founding Member's capital account pursuant to this Agreement and (b) decreased by the amount of (i) all distributions to the Founding Member and (ii) the share of the net losses of the Company allocated to the Founding Member's capital account.

4. Ownership and Issuance of Units. Upon the receipt of the Initial Capital Contribution from the Founding Member, the Company shall issue common and ordinary units to the Founding Member. The Manager may from time to time authorize and issue additional common and ordinary units at the then fair market value and amend Exhibit A as appropriate in connection therewith.

5. Percentage Interest. The percentage interest of the members of the Company in the Company (the "***Percentage Interest***") as of the date hereof is set forth on Exhibit A.

6. Limited Liability. Except to the extent required under the Act, no member of the Company (regardless of whether such member is serving as Manager (as hereinafter defined)) shall be personally liable for any debt, obligation or liability of the Company, regardless of whether the debt, obligation or liability arises in contract, tort or otherwise, solely by reason of being a member of the Company.

7. Members' Voting Rights. Except as expressly provided in this Agreement, the Founding Member shall have all of the voting rights provided in the Act, and any member added subsequently through

the execution of a joinder agreement to this Agreement shall have no voting rights except and solely to the extent expressly mandated by the Act. As provided in Article VI below, the Manager shall have the right to manage and control the Company and shall have no obligation to obtain the vote or approval of members of the Company with respect to any matter or action except as specifically provided to the contrary herein. Accordingly, except as specifically provided to the contrary herein, the voting rights of the members of the Company shall only be exercisable by the holders thereof if and when an action or matter is submitted by the Manager, in their sole and absolute discretion or as required herein to obtain the approval of the members of the Company for certain matters, to the Founding Member their consent or approval.

## ARTICLE V.

Profits, Losses and Distributions

1. Allocations. A member of the Company will be allocated the net income and net losses of the Company in accordance with its Percentage Interest. Net income or net losses will be allocated to such member's capital account as soon as practicable after the close of each fiscal year of the Company and at such other times as are considered necessary by the Manager.

2. Distributions. To the extent that net cash flow of the Company is available therefor, and in the good faith determination of the Manager, the Company shall make periodic distributions of such net cash flow to the members of the Company.

## ARTICLE VI.

Management

1. Manager. Riju Ravindran is hereby designated to serve as manager of the Company (the "***Manager***") commencing on the date hereof. The Manager may, but need not, be a member of the Company.

2. Powers of the Manager; Attorneys-in-Fact. Except for instances in which the vote, consent or approval of the Founding Member is expressly required by the Act or this Agreement, the Manager will have full, complete and exclusive authority, power and discretion to manage and control the business, property and affairs of the Company, to make all decisions regarding those matters and to perform any and all other acts and activities customary or incident to the management of the Company's business, properties and affairs. Notwithstanding the foregoing, the Manager may not, without the consent of the Founding Member (i) do any act in contravention of this Agreement, (ii) do any act which would make it impossible to carry on the ordinary business of the Company, (iii) confess a judgment against the Company, or (iv) possess property of the Company or assign the rights of the Company in specific property for other than a Company-related purpose.

3. Removal. The Manager may be removed at any time, with or without cause, by the written consent of the Founding Member. Upon the removal of the Manager, the Founding Member shall appoint a successor Manager who will succeed to all of the rights and obligations of the Manager hereunder.

4. Indemnification.

(a) The Company shall indemnify, defend and hold harmless the Manager and the Founding Member from and against any and all loss, liability, damage, cost or expense, including reasonable attorneys' fees, suffered or incurred in defense of any demands, claims or lawsuits against the Manager or the Founding Member in or as a result of or relating to his or its capacity, actions or omissions

as the Manager or the Founding Member of the Company, or concerning the Company or any activities undertaken on behalf of the Company, provided that the acts or omissions of the Manager or the Founding Member are not found by a court of competent jurisdiction upon entry of a final judgment to have been the result of fraud, gross negligence or willful misconduct or to have violated such lesser standard of conduct or public policy as under applicable law prevents indemnification hereunder.

(b) Each of the Manager and the Founding Member shall be entitled to receive, upon request thereof, to the extent cash or cash equivalents are available to the Company, advances to cover the costs of defending any claim or action against him or it; provided, however, that such advances shall be repaid to the Company, with interest, if he or it is found by a court of competent jurisdiction upon entry of a final judgment to have violated the standards for indemnification set forth in Section 4(a) above.

## ARTICLE VII.

### Books and Records

1. Maintenance of Books and Records. The Manager shall maintain full and accurate books of account and records of the Company at the principal place of business of the Company. The Manager shall enter in such books all transactions of or relating to the Company or its business.

2. Member's Access to Information. The Company shall provide to any member of the Company or their duly authorized representative information relating to the Company in accordance with Section 305 of the Act.

3. Annual Statements. As soon as practicable after the end of each fiscal year of the Company, the Manager shall prepare a statement of financial condition as of the last day of the Company's fiscal year, and a statement of income and expenses for the fiscal year then ended, together with supporting schedules. Each of said annual statements shall be prepared on an income tax basis and delivered to the Founding Member forthwith upon its preparation.

## ARTICLE VIII.

### Admission of New Members

1. Admission of New or Substitute Members. No person may become a member of the Company unless and until he, she or it has been approved in writing by the Manager and has executed and delivered to the Company a joinder agreement to this Agreement, binding such person to the terms and conditions herein. Upon such admission, a new Exhibit A shall be prepared by the Manager and circulated to the members of the Company.

## ARTICLE IX.

### Dissolution

1. Dissolution. The Company will be dissolved, and its affairs wound up upon the first to occur of the following events:

(a) the written consent of the Founding Member;

(b) the entry of a decree of judicial dissolution under Section 802 of the Act; and

DocuSign Envelope ID: E9E9DFF5-4A38-4242-B0B8-3B6B09704E55

(c) the death, insanity, bankruptcy, withdrawal or resignation of the Founding Member or the occurrence of any other event which terminates the membership of the Founding Member in the Company.

2. Liquidation. Upon the dissolution of the Company, the Company will cease to engage in any further business, except to the extent necessary to perform existing obligations, and the Manager or his successor shall wind up its affairs and liquidate or distribute its assets. Except as provided under Section 803 of the Act, the Manager or his successor shall appoint a liquidator (who may, but need not, be the Manager or his successor) who shall have sole authority and control over the winding up of the Company's business and affairs and shall diligently pursue the winding up of the Company.

3. Application of Proceeds. Subject to Section 804 of the Act, upon dissolution, the proceeds of any liquidation shall be applied as follows: (i) first, to pay all expenses of liquidation and winding up; (ii) second, to pay all debts, obligations and liabilities of the Company in the order of priority provided by law, other than liabilities owing to the Founding Member or its successor in respect of distributions pursuant to Section 601 or 604 of the Act; (iii) third, to pay all debts of the Company owing to the Manager or its successor in respect of distributions pursuant to Section 601 or 604 of the Act; and (iv) fourth, to the Founding Member or its successor.

4. Filing. Upon dissolution and completion of the winding up of the Company and distribution of its assets, the Manager or his successor shall cause to be executed and filed with the Secretary of State of the State of Delaware a Certificate of Cancellation of the Company in accordance with Section 203 of the Act.

## ARTICLE X.

Miscellaneous Provisions

1. Entire Agreement. This Agreement contains the entire agreement of the Founding Member with respect to the subject matter hereof, supersedes all prior agreements relating to the subject matter hereof and may not be changed, altered, or amended, except in a written instrument signed by the Founding Member. This Agreement will be governed by, and construed and enforced in accordance with, the laws of the State of Delaware without regard to its principles of conflicts of laws. This Agreement will be binding upon and will inure to the benefit of the Founding Member and its successors and assigns.

2. Severability. If any provision of this Agreement, or the application thereof to any person or circumstance, is held invalid, the remainder of this Agreement and the application of its provisions to other persons and circumstances will not be affected thereby.

3. Captions. The captions of the respective Articles and Sections of this Agreement are inserted for convenience of reference only and will not affect the meaning of the provisions of this Agreement.

4. Application of the Act. Any matter not specifically covered by a provision of this Agreement shall be governed by the applicable provisions of the Act.

IN WITNESS WHEREOF, the Founding Member has executed and delivered this Agreement as of the date first above written.

Think & Learn Private Limited

DocuSigned by:

By: ______________________
C54896B5666C4E2...

Riju Ravindran
Director

255881094 v6

DocuSign Envelope ID: E9E9DFF5-4A38-4242-B0B8-3B6B09704E55

# EXHIBIT A

| | |
|---|---|
| Member of the Company | Think & Learn Private Limited |
| Initial Capital Contribution | USD 3,175 |
| Percentage Interest | 100% |
| Common and ordinary units of the Company owned by the member of the Company | 1 |

# Exhibit 20

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

# CONSTITUTION FOR A PRIVATE COMPANY LIMITED BY SHARES

CONSTITUTION OF
BYJU'S INVESTMENTS PTE. LTD.

1. The name of the company is BYJU'S INVESTMENTS PTE. LTD.

2. The registered office of the company is situated in the Republic of Singapore.

3. The liability of the members is limited.

4. The share capital of the company in the original or any increased capital may be divided into several classes, and there may be attached thereto respectively any preferential, deferred or other special rights, privileges, conditions or restrictions as to dividends, capital, voting or otherwise.



Authentication no.: T26139511F