DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

I/We, the persons(s) whose name(s), address(es) and occupation(s) is/are set out in this Constitution, desire to form a company in pursuance of this Constitution and I/we agree to take the number of shares in the capital of the company set out against my/our respective name(s).

| Name(s), address(es) and description of subscriber(s) | Number of shares taken by each subscriber | Class of shares taken by each subscriber |
|---|---|---|
| BYJU RAVEENDRAN<br>*SIGNING ON BEHALF OF*<br>BYJU'S GLOBAL PTE. LTD.<br>30 CECIL STREET,<br>#19-08 PRUDENTIAL TOWER,<br>SINGAPORE 049712<br><br>DIRECTOR | DocuSigned by:<br>X<br><br>F7F0B417823E40F...<br>1000<br>(One Thousand) | Ordinary |
| Total Number Of Shares Taken | 1000<br>(One Thousand) | |

Dated this:- 9 MAY 2022

Witness to the above signature(s):-



ALEX TEO WEE JIN X

30 CECIL STREET,
#19-08 PRUDENTIAL TOWER
SINGAPORE 049712



Authentication no.: T26139511F

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

## Interpretation

5. (1) In this Constitution:

"Act" means the Companies Act (Cap. 50) of Singapore, or any other statutory modification, amendment or re-enactment thereof for the time being in force or any and every other act for the time being in force concerning companies and affecting the company and any reference to any provision of the Act is that provision as so modified, amended or re-enacted or contained in any such subsequent Companies Act;

"board of directors" means the board of directors of the company;

"directors" means the directors of the company;

"electronic register of members" means the electronic register of members kept and maintained by the Registrar for private companies under section 196A of the Act;

"general meeting" means a general meeting of the company;

"in writing" means written or produced by any substitute for writing or partly one and partly another and shall include (except where otherwise expressly specified in this Constitution or the context otherwise requires, and subject to any limitations, conditions or restrictions contained in the Act and every other act for the time being in force concerning companies and affecting the company) any representation or reproduction of words, symbols or other information which may be displayed in a visible form, whether in a physical document or in an electronic communication or form or otherwise howsoever;

"member" means a member of the company, excluding the company in relation to shares held by it as treasury shares;

"Registrar" has the same meaning as in section 4(1) of the Act;

"secretary" means a secretary of the company appointed under section 171 of the Act; and

"treasury shares" has the same meaning as in section 4(1) of the Act.

(2) In this Constitution:

(a) references to "holders" of shares or a class of shares shall, except where otherwise expressly provided in this Constitution, exclude the company in relation to shares held by it as treasury shares, and "holding" and "held" shall be construed accordingly;



Authentication no.: T26139511F

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

(b) expressions referring to writing include, unless the contrary intention appears, references to printing, lithography, photography and other modes of representing or reproducing words in a visible form;

(c) words or expressions contained in this Constitution must be interpreted in accordance with the provisions of the Interpretation Act (Cap. 1), and of the Act in force as at the date at which this Constitution becomes binding on the company; and

(d) the expression "electronic communication" shall have the meaning ascribed to it in the Act.

**Private Company**

6. The company is a private company and, accordingly:

(a) the right to transfer shares in the company shall be restricted in the manner hereinafter appearing; and

(b) the number of its members (counting joint holders of shares as one person and not counting any person in the employment of the company or any of its subsidiaries or any person who while previously in the employment of the company or any of its subsidiaries was and thereafter has continued to be a member of the company) shall be limited to 50.

**Share Capital And Variation Of Rights**

***Issue Of Shares***

7. (1) Without prejudice to any special rights previously conferred on the holders of any existing shares or class of shares but subject to the Act, shares in the company may be issued by the directors.

(2) Shares referred to in paragraph (1) may be issued with preferred, deferred, or other special rights or restrictions, whether in regard to dividend, voting, return of capital, or otherwise, as the directors, subject to any ordinary resolution of the company, determine.

(3) The company may issue shares for which no consideration is payable to the company.

***Preference Shares***

8. Subject to the Act, any preference shares may, with the sanction of an ordinary resolution, be issued on the terms that they are, or at the option of the company are liable, to be redeemed.



Authentication no.: T26139511F

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

***Variation Of Rights Attached To Shares***

9. (1) If at any time the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of the shares of that class) may, whether or not the company is being wound up, be varied with:

(a) the consent in writing of the holders of 75% of the issued shares of that class; or

(b) the sanction of a special resolution passed at a separate general meeting of the holders of the shares of that class.

(2) The provisions of this Constitution relating to general meetings apply with the necessary modifications to every separate general meeting of the holders of the shares of the class referred to in paragraph (1), except that:

(a) the necessary quorum is at least 2 persons holding or representing by proxy one-third of the issued shares of that class; and

(b) any holder of shares of that class present in person or by proxy may demand a poll.

(3) Section 184 of the Act applies with the necessary modifications to every special resolution passed at a separate general meeting of the holders of the shares of the class under paragraph (1).

***Deemed Variation Of Rights***

10. The rights conferred upon the holders of the shares of any class issued with preferred or other rights are, unless otherwise expressly provided by the terms of issue of the shares of that class, treated as being varied by the creation or issue of further shares which rank equally with the shares of that class.

***Payment Of Commission On Shares***

11. The company may on any issue of shares pay any brokerage that is permitted by law.

***Shares Held In Trust And Joint Holders***

12. (1) Except as required by law, no person is to be recognised by the company as holding any share upon any trust.

(2) Except as required by law or by this Constitution, the company is not bound by or compelled in any way to recognise:

(a) any equitable, contingent, future or partial interest in any share or unit of a share; or



Authentication no.: T26139511F

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

(b) any other rights in respect of any share or unit of share, other than the registered holder's absolute right to the entirety of the share or unit of share.

(3) Paragraph (2) applies even when the company has notice of any interest or right referred to in paragraph (2)(a) or (b).

(4) If 2 or more persons are registered as joint holders of any share, any 1 of such persons may give effectual receipts for any dividend payable in respect of such share and the joint holders of a share shall, subject to the provisions of the Act, be severally as well as jointly liable for the payment of all instalments and calls and interest due in respect of such shares.

***Issue Of Share Certificate***

13. (1) Every person whose name is entered as a member in the electronic register of members is entitled without payment to receive a certificate in accordance with the Act.

(2) In respect of a share or shares held jointly by several persons, the company is not bound to issue more than 1 certificate, and delivery of a certificate for a share to 1 of several joint holders is sufficient delivery to all such holders.

(3) If any certificate be lost or destroyed or stolen, then upon proof thereof to the satisfaction of the directors and on such indemnity as the directors deem adequate being given, and on the payment of an administrative fee as the directors may determine, a new certificate shall be given to the person entitled to such lost or destroyed or stolen certificate.

## Lien

***Lien On Partly Paid Shares***

14. (1) The company has a first and paramount lien on:

(a) every share (that is not a fully paid share) for all money (whether presently payable or not) called or payable at a fixed time in respect of that share; and

(b) all shares (other than fully paid shares) registered in the name of a single person for all money presently payable by the person or the person's estate to the company.

(2) The company's lien, if any, on a share extends to all dividends payable on the share.

(3) The directors may at any time declare any share to be wholly or partly exempt from paragraph (1) or (2), or both.

Case 25-50201-BLS Doc 257 Filed 04/02/26 Page 6 of 198

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

*Sale Of Shares On Which Lien Exists*

15. (1) Subject to paragraph (2), the company may sell, in any manner as the directors think fit, any shares on which the company has a lien.

(2) No sale may be made under paragraph (1) unless:

(a) a sum in respect of which the lien exists is presently payable;

(b) a notice in writing, stating and demanding payment of the amount in respect of which the lien exists as is presently payable, has been given by the company to the registered holder for the time being of the share, or the person entitled to the share by reason of the death or bankruptcy of the registered holder of the share; and

(c) a period of 14 days has expired after the giving of the notice in sub-paragraph (b).

*Purchase Of Shares On Which Lien Exists*

16. (1) To give effect to any sale of shares under regulation 15, the directors may authorise any person to transfer the shares sold to the purchaser of the shares.

(2) Subject to regulations 26, 27and 28, the company must lodge a notice of transfer of shares in relation to the shares sold to the purchaser with the Registrar.

(3) The purchaser of any shares referred to in paragraph (1) is not bound to see to the application of the purchase money, and the purchaser's title to the shares is not affected by any irregularity or invalidity in the proceedings with respect to the sale of the shares.

*Proceeds Of Sale Of Shares On Which Lien Exists*

17. (1) The proceeds of any sale of shares under regulation 15 received by the company must be applied in payment of any part of the amount in respect of which the lien exists as is presently payable.

(2) Any remaining proceeds from the sale of shares must (subject to any lien for sums not presently payable as existed upon the shares before the sale but which have become presently payable) be paid to the person entitled to the shares at the date of the sale.

## Calls On Shares

*Calls On Shares*

18. (1) The directors may from time to time make calls upon the members in respect of any money unpaid on their shares, other than in accordance with the conditions of the allotment of the shares, if both of the following conditions are met:

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

(a) no call is payable at less than 1 month after the date fixed for the payment of the last preceding call; and

(b) at least 14 days' notice specifying the time or times and the place of payment is given by the company to the members.

(2) Each member must pay to the company at the time or times and place specified in the notice referred to in paragraph (1)(b) the amount called on the member's shares.

(3) The directors may revoke or postpone a call.

*When Is A Call Made*

19. (1) A call is treated as having been made at the time when the resolution of the directors authorising the call was passed.

(2) A call may be required to be paid by instalments.

*Joint Liability For Payment Of Calls*

20. The joint holders of a share are jointly and severally liable to pay all calls in respect of the share.

*Interest On Unpaid Calls*

21. (1) If a sum called in respect of a share is not paid before or on the day appointed for payment of the sum, the person from whom the sum is due must pay interest on the sum for the period beginning on the day appointed for payment of the sum to the time of actual payment of the sum at such rate not exceeding 8% per annum as the directors may determine.

(2) The directors may waive, wholly or in part, the payment of the interest referred to in paragraph (1).

*Deemed Call*

22. (1) Any sum which, by the terms of issue of a share, becomes payable on allotment or at any fixed date is to be treated as a call duly made and payable on the date on which, by the terms of issue of the share, the sum becomes payable.

(2) In the case of non-payment of any sum referred to in paragraph (1), all the provisions of this Constitution as to payment of interest and expenses and forfeiture apply as if the sum had become payable by virtue of a call duly made and notified.

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

*Differentiation On Calls*

23. The directors may, on the issue of shares, differentiate between the holders as to the amount of calls to be paid and the times of payment.

*Advance Payment Of Call*

24. (1) The directors may, if they think fit, receive in advance from any member (if the member is willing) all or any part of the money uncalled and unpaid upon any shares held by the member.

(2) Upon the company receiving the money referred to in paragraph (1), the directors may (until the amount would, but for the advance, become payable) pay interest to the member at such rate not exceeding (unless the company in general meeting otherwise directs) 8% per annum as may be agreed upon between the directors and the member.

**Transfer Of Shares**

*Transfer Of Shares*

25. (1) Subject to this Constitution, any member may transfer all or any of the member's shares by instrument in writing in any usual or common form or in any other form which the directors may approve.

(2) The instrument of transfer must be executed by or on behalf of the transferor and the transferor remains the holder of the shares transferred until the name of the transferee is entered in the electronic register of members.

*Instrument Of Transfer*

26. (1) To enable the company to lodge a notice of transfer of shares with the Registrar under section 128(1)(a) of the Act, the following items in relation to the transfer of shares must be delivered by the transferor to the registered office of the company:

(a) the instrument of transfer;

(b) a fee not exceeding $1 as the directors from time to time may require;

(c) the certificate of the shares to which the instrument of transfer relates; and

(d) any other evidence as the directors may reasonably require to show the right of the transferor to make the transfer.

(2) Upon receipt of the items referred to in paragraph (1), the company must, subject to regulation 27, lodge with the Registrar a notice of transfer of shares in accordance with section 128 of the Act and retain the instrument of transfer referred to in regulation 25.

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

***Refusal To Register Transfer***

27. The directors may decline to lodge a notice of transfer of shares with the Registrar if:

(a) the shares are not fully paid shares;

(b) the directors do not approve of the transferee; or

(c) the company has a lien on the shares.

***Suspension Of Share Transfer***

28. The lodging of any notice of transfer of shares with the Registrar for the purpose of updating the electronic register of members may be suspended at any time and for any period as the directors may from time to time determine, but not for more than a total of 30 days in any year.

**Transmission Of Shares**

***Transmission Of Shares***

29. (1) Where a sole holder of shares of the company dies, the company may recognise only the legal personal representatives of the deceased as having any title to the deceased's interest in the shares.

(2) Where a joint holder of shares of the company dies, the company may recognise only the survivor or survivors of the deceased as having any title to the deceased's interest in the shares.

(3) Nothing in paragraph (2) releases the estate of the deceased from any liability in respect of any share which had been jointly held by the deceased with other persons.

***Registration Of Shares***

30. (1) Any person becoming entitled to a share in consequence of the death or bankruptcy of a member may, upon such evidence being produced as may from time to time properly be required by the directors, elect to:

(a) be registered as holder of the share in the electronic register of members; or

(b) nominate another person to be registered as the transferee of the share in the electronic register of members.



Authentication no.: T26139511F

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

(2) Despite paragraph (1), the directors have the same right to decline or suspend the lodging of a notice of transfer of shares with the Registrar for the purpose of updating the electronic register of members under regulations 27 and 28 as they would have had in the case of a transfer of the share by the member referred to in paragraph (1) before the death or bankruptcy of that member.

*Procedure For Registering Transmission Shares*

31. (1) If a person becoming entitled to a share in consequence of the death or bankruptcy of a member elects to be registered as the holder of the share in the electronic register of members, that person must deliver or send to the company a notice in writing signed by the person stating that the person elects to be registered in the electronic register of members as the holder of the share.

(2) If a person becoming entitled to a share in consequence of the death or bankruptcy of a member elects to nominate another person to be registered as the transferee of the share in the electronic register of members, the person must execute a transfer of the share to that other person.

(3) All the limitations, restrictions, and provisions of this Constitution relating to the right to transfer and the lodging of a notice of transfer by the company in relation to any transfer of shares are applicable to any notice referred to in paragraph (1) or transfer referred to in paragraph (2), as if the death or bankruptcy of the member concerned had not occurred and the notice or transfer were a transfer signed by that member.

*Rights Of Legal Representative To Be Secured As Registered Holder*

32. (1) Where the registered holder of any share dies or becomes bankrupt, the personal representative of the registered holder or the assignee of the registered holder's estate, as the case may be, is, upon the production of such evidence as may from time to time be properly required by the directors, entitled to the same dividends and other advantages, and to the same rights (whether in relation to meetings of the company, or to voting, or otherwise), that the registered holder would have been entitled to if the registered holder had not died or become bankrupt.

(2) Where 2 or more persons are jointly entitled to any share in consequence of the death of the registered holder, they are, for the purposes of this Constitution, treated as joint holders of the share.

**Forfeiture Of Shares**

*Payment Of Call*

33. If a member fails to pay any call or instalment of a call on the day appointed for payment of the call or instalment of the call, the directors may, as long as any part of the call or instalment remains unpaid, serve a notice on that member requiring payment of the unpaid part of the call or instalment, together with any interest which may have accrued.



Authentication no.: T26139511F

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

*Notice Requiring Payment Of Call*

34. The notice under regulation 33must:

(a) name a day (not earlier than 14 days after the date of service of the notice) on or before which the payment required by the notice is to be made; and

(b) state that, in the event of non-payment at or before the time appointed, the shares in respect of which the call was made is liable to be forfeited.

*Forfeiture Of Shares*

35. (1) If the requirements of a notice referred to in regulation 34are not complied with, any share in respect of which the notice was given may, at any time after the notice is given but before the payment required by the notice has been made, be forfeited by a resolution of the directors passed for the purpose of forfeiting the share.

(2) Forfeiture under paragraph (1) includes all dividends declared in respect of the forfeited shares and not paid before the forfeiture.

*Sale Of Forfeited Shares*

36. A forfeited share may be sold or otherwise disposed of on any terms and in any manner as the directors think fit, and, at any time before a sale or disposition the forfeiture may be cancelled on any terms as the directors think fit.

*Liability In Respect Of Forfeited Shares*

37. (1) A person whose shares have been forfeited ceases to be a member in respect of the forfeited shares.

(2) Despite paragraph (1), the person referred to in that paragraph remains liable to pay to the company all money which, at the date of forfeiture, was payable by the person to the company in respect of the shares (together with interest at the rate of 8% per annum beginning on the date of forfeiture on the money for the time being unpaid if the directors think fit to enforce payment of such interest).

*Statutory Declaration On Forfeited Shares*

38. A statutory declaration in writing that the declarant is a director or the secretary of the company, and that a share in the company has been forfeited on a date stated in the declaration, is conclusive evidence of the facts stated in the declaration as against all persons claiming to be entitled to the share.

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

*Re-Issue Of Forfeited Shares*

39. (1) The company may receive the consideration, if any, given for a forfeited share on any sale or disposition of the forfeited share and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of (called in this regulation the transferee).

(2) Upon the company executing a transfer of the share in favour of the transferee, the company must lodge a notice of transfer of share with the Registrar under section 128 of the Act for the purpose of updating the electronic register of members to reflect the transferee as the registered owner of the forfeited share.

(3) The transferee is not bound to see to the application of the purchase money, if any, and the transferee's title to the share is not affected by any irregularity or invalidity in the proceedings with respect to the forfeiture, sale, or disposal of the share.

*Applicability Of Provisions On Forfeiture*

40. The provisions of this Constitution as to forfeiture apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time as if the sum had been payable by virtue of a call duly made and notified.

## Conversion Of Shares Into Stock

*Conversion Of Shares Into Stock*

41. The company may by ordinary resolution passed at a general meeting convert any paid-up shares into stock and reconvert any stock into paid-up shares.

*Transfer Of Stock*

42. (1) Subject to paragraph (2), the holders of stock may transfer the stock or any part of the stock in the same manner, and subject to the same regulations, by which the shares from which the stock arose might, prior to conversion, have been transferred.

(2) The directors may from time to time fix the minimum amount of stock transferable and restrict or forbid the transfer of fractions of that minimum.

*Rights And Privileges Of Stock Holders*

43. (1) Subject to paragraph (2), the holders of stock have, according to the amount of the stock held by the holders, the same rights, privileges and advantages in relation to dividends, voting at meetings of the company and other matters as if they held the shares from which the stock arose.

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

(2) No privilege or advantage (except participation in the dividends and profits of the company and in the assets on winding up) is to be conferred by any aliquot part of stock on the holder of such stock which would not, if existing in shares, have conferred that privilege or advantage on the holder of such stock.

*Applicability Of Provisions On Paid-Up Shares*

44. Provisions of this Constitution applicable to paid-up shares apply to stock, and references to "share" and "shareholder" in this Constitution are to be read as if they were references to "stock" and "stockholder", respectively.

**Alteration Of Capital**

*Alteration Of Capital*

45. The company may from time to time by ordinary resolution do any of the following:

(a) increase the share capital by such sum to be divided into shares of such amount as the resolution shall prescribe;

(b) consolidate and divide all or any of its share capital;

(c) subdivide its shares or any of them such that in the subdivision the proportion between the amount paid and the amount, if any, unpaid on each reduced share is the same as it was in the case of the share from which the reduced share is derived; or

(d) cancel the number of shares which at the date of the passing of the resolution have not been taken or agreed to be taken by any person or which have been forfeited, and diminish the amount of its share capital by the number of the shares so cancelled.

*Pre-Emptive Rights*

46. (1) Subject to any direction to the contrary that may be given by the company in a general meeting, all new shares must, before issue, be offered to all persons who, as at the date of the offer, are entitled to receive notices of general meetings from the company, in proportion, or as nearly as the circumstances admit, to the amount of the existing shares to which they are entitled.

(2) The offer must be made by notice specifying the number of shares offered, and limiting a time within which the offer, if not accepted, is treated to be declined.

(3) After the expiration of the time referred to in paragraph (2), or upon the person to whom the offer is made declining the shares offered, the directors may dispose of those shares in any manner as they think is the most beneficial to the company.

(4) The directors may dispose of any new shares which (by reason of the ratio which the new shares bear to shares held by persons entitled to an offer of new shares) cannot, in the opinion of the directors, be conveniently offered under this regulation.

*Reduction Of Share Capital*

47. (1) The company may, by special resolution and with any consent required by law, reduce its share capital or any reserve in any manner.

(2) Subject to the Act, the company may purchase or otherwise acquire any of its issued shares on such terms and in such manner as the company may from time to time think fit and in the manner prescribed by the Act. If required by the Act, any share which is so purchased or acquired by the company, unless held as treasury shares in accordance with the Act, shall be deemed to be cancelled immediately on the purchase or acquisition by the company. On the cancellation of any share as aforesaid, the rights and privileges attached to that share shall expire. In any other instance, the company may hold or deal with any such share (including treasury shares) which is so purchased or acquired by it in accordance with the Act.

*Treasury Shares*

48. (1) Shares that the company purchases or otherwise acquires may be held as treasury shares in accordance with the provisions of this Constitution and the Act.

(2) Where the shares purchased or otherwise acquired are held as treasury shares by the company, the company shall be entered in the electronic register of members as the member holding the treasury shares.

(3) The company shall not exercise any right in respect of the treasury shares other than as provided by the Act. Subject thereto, the company may hold or deal with its treasury shares in the manner authorised by, or prescribed pursuant to, the Act.

**General Meeting**

*Convening Of General Meeting*

49. (1) An annual general meeting of the company must be held in accordance with the provisions of the Act.

(2) All general meetings other than the annual general meetings are called extraordinary general meetings.

*Requisitions For Extraordinary General Meeting*

50. (1) An extraordinary general meeting may be requisitioned by:

(a) any director, whenever the director thinks fit; or

(b) any requisitionist as provided for by the Act.

(2) Upon a requisition being made under paragraph (1), an extraordinary general meeting must be convened.

*Notice Calling General Meeting*

51. (1) Subject to the provisions of the Act relating to special resolutions and any agreement amongst persons who are entitled to receive notices of general meetings from a company, at least 14 days' notice (exclusive of the day on which the notice is served or treated to be served, but inclusive of the day for which notice is given) of any general meeting must be given to persons entitled to receive notices of general meetings from the company.

(2) A notice of a general meeting must specify the following:

(a) the place at which the general meeting is held;

(b) the date and time of the general meeting; and

(c) in case of special business to be transacted at the general meeting, the general nature of that business.

*Special Business*

52. (1) All business that is transacted at an extraordinary general meeting is special business.

(2) All business that is transacted at an annual general meeting is special business, except:

(a) the declaration of a dividend;

(b) the consideration of the financial statements, the reports of the auditors and the statements of the directors;

(c) the fixing of the remuneration of the directors; and

(d) the appointment and fixing of the remuneration of the auditors.

**Proceedings At General Meetings**

*Quorum*

53. (1) No business is to be transacted at any general meeting unless a quorum of members is present at the time when the meeting proceeds to business.

(2) Save as herein otherwise provided and subject to the provisions in the Act on wholly owned subsidiaries, two members present in person shall form a quorum. In the event the company has only 1 member, the company may pass a resolution by the member recording the resolution and signing the record.

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

(3) In this regulation, "member" includes a person attending as a proxy or as representing a corporation or a limited liability partnership which is a member.

***Adjourned General Meeting***

54. (1) The chairman may, with the consent of a general meeting at which a quorum is present, and must if so directed by a general meeting, adjourn the general meeting from time to time and from place to place.

(2) No business is to be transacted at any adjourned meeting other than the business left unfinished at the general meeting from which the adjournment took place (called in this regulation the original general meeting).

(3) There is no need to give any notice of an adjourned meeting or of the business to be transacted at an adjourned meeting unless the adjourned meeting is to be held more than 30 days after the date of the original general meeting.

***Insufficient Quorum***

55. (1) If within half an hour after the time appointed for a general meeting a quorum is not present, the meeting:

(a) in the case where the meeting is convened upon the requisition of members, is dissolved; or

(b) in any other case, is adjourned to the same day in the next week at the same time and place, or to another day and at another time and place as the directors may determine.

(2) If within half an hour after the time appointed for an adjourned meeting a quorum is not present, the member or members present in person or by proxy, attorney or representative shall form a quorum.

***Chairman***

56. The chairman of a general meeting is:

(a) where the board of directors has appointed a chairman amongst the directors, the chairman;

(b) where:

(i) the chairman of the board of directors is unwilling to act as the chairman of the general meeting;

(ii) the chairman is not present within 15 minutes after the time appointed for the holding of the general meeting; or



Authentication no.: T26139511F

(iii) the board of directors has not appointed a chairman amongst the directors,

the member elected by the members present for the purpose of being the chairman of the general meeting; or

(c) where such general meeting is an adjourned meeting with only 1 member present in person, that member.

In this regulation, "member" includes a person attending as a proxy or as representing a corporation or a limited liability partnership which is a member.

***Voting On Resolutions***

57. (1) At any general meeting, a resolution put to the vote of the meeting must be decided on a show of hands unless a poll is (before or on the declaration of the result of the show of hands) demanded:

(a) by the chairman;

(b) by at least 2 members present in person or by proxy;

(c) by any member or members present in person or by proxy and representing not less than 5% of the total voting rights of all the members having the right to vote at the meeting; or

(d) by a member or members holding shares in the company conferring a right to vote at the meeting being shares on which an aggregate sum has been paid up equal to not less than 5% of the total sum paid up on all the shares conferring that right.

(2) Unless a poll is demanded, a declaration by the chairman that a resolution has on a show of hands been carried or carried unanimously, or by a particular majority, or lost, and an entry to that effect in the book containing the minutes of the proceedings of the company is conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against the resolution.

(3) The demand for a poll may be withdrawn.

***Members' Resolutions in Writing***

58. (1) Subject to paragraph (2), a resolution in writing signed by members of the company entitled to vote or being a corporation by its duly authorised representative shall have the same effect and validity as a special resolution (if approved by members representing at least 75% of the total voting rights) and as an ordinary resolution (if approved by members representing a simple majority of the total voting rights) of the company passed at a general meeting duly convened, held and constituted, and may consist of several documents in the like form, each signed by 1 or more of such members. The expressions "in writing" and "signed" include approval by electronic means by any such member.

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

(2) A resolution referred to in paragraph (1) may not be passed in respect of matters requiring special notice under the Act.

(3) In this regulation, “member” includes a person who has been appointed by a member of the company as its proxy or attorney or as representing a corporation or a limited liability partnership which is a member.

*Demand For Poll*

59. (1) Subject to paragraph (2), if a poll is demanded it must be taken in such manner and either at once or after an interval or adjournment or otherwise as the chairman directs.

(2) A poll demanded on the election of a chairman or on a question of adjournment must be taken immediately.

(3) The result of the poll is a resolution of the meeting at which the poll was demanded.

*Casting Vote For Chairman*

60. In the case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting at which the show of hands takes place or at which the poll is demanded is entitled to a second or casting vote.

*Entitlement To Vote*

61. (1) Subject to any rights or restrictions for the time being attached to any class or classes of shares, at meetings of members or classes of members, each member entitled to vote may vote in person or by proxy or by attorney.

(2) On a show of hands every member or representative of a member who is present in person has 1 vote.

(3) On a poll every member present in person or by proxy or by attorney or other duly authorised representative has 1 vote for each share the member holds.

*Vote By Joint Holders*

62. (1) In the case of joint holders, the vote of the senior who tenders a vote, whether in person or by proxy, is accepted to the exclusion of the votes of the other joint holders.

(2) For the purposes of paragraph (1), seniority is to be determined by the order in which the names stand in the electronic register of members.

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

***Vote By Member Of Unsound Mind***

63. A member who is mentally disordered or whose person or estate is liable to be dealt with in any way under the law relating to mental capacity may vote, whether on a show of hands or on a poll, by a person who properly has the management of the estate of that member, and any such person may vote by proxy or attorney.

***No Vote Unless Calls Are Paid***

64. No member is entitled to vote at any general meeting unless all calls or other sums presently payable by the member in respect of shares in the company have been paid.

***Disqualification Of Voter***

65. (1) No objection may be raised as to the qualification of any voter except at the meeting or adjourned meeting at which the vote objected to is given or tendered.

(2) Any objection made in due time must be referred to the chairman of the meeting, whose decision is final and conclusive.

(3) Every vote not disallowed at the meeting is valid for all purposes.

***Proxy To Be In Writing***

66. (1) The instrument appointing a proxy must be in writing, in the common or usual form and:

(a) where the appointer is a corporation or a limited liability partnership, either under common seal (if any) or under the hand of an officer or attorney duly authorised; or

(b) in any other case, under the hand of the appointer or of the attorney of the appointer duly authorised in writing.

(2) A proxy may but need not be a member of the company.

(3) The instrument appointing a proxy is treated as conferring authority to demand or join in demanding a poll.

***Form Of Proxy***

67. Where an opportunity of voting for or against a resolution is to be conferred on members, the instrument appointing a proxy may be in the following form or such other form as the board of directors may approve:



Authentication no.: T26139511F

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

"I/We*, [name(s)], of [address(es)], being a member/members* of the above named company, appoint [name] of [address], or failing him/her*, [name] of [address], as my/our* proxy to vote for me/us* on my/our* behalf at the [annual or extraordinary, as the case may be] general meeting of the company, to be held on [date], and at any adjournment of the meeting.

Signed on [date].

This form is to be used in favour of/against* the resolution.

* Delete whichever is not applicable. [Unless otherwise instructed, the proxy may vote as he or she thinks fit.]".

***Deposit Of Proxy Form***

68. (1) The following documents must be deposited at the registered office of the company, or at such other place in Singapore as is specified in the notice convening the meeting by the time specified in paragraph (2) for the purpose of appointing a proxy:

(a) the instrument appointing a proxy; and

(b) the power of attorney or other authority, if any, under which the instrument appointing the proxy is signed, or a notarially certified copy of that power of attorney or authority.

(2) For the purposes of paragraph (1), the time is:

(a) in the case of a poll, not less than 24 hours before the time appointed for the taking of the poll; or

(b) in any other case, not less than 48 hours before the time for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote.

(3) An instrument of proxy is not valid if paragraph (1) is not complied with.

***Irregularity Of Proxy***

69. (1) Subject to paragraph (2), a vote given in accordance with the terms of an instrument of proxy or attorney is valid despite:

(a) the previous death or mental disorder of the principal;

(b) the revocation of the instrument or of the authority under which the instrument was executed; or

(c) the transfer of the share in respect of which the instrument is given.

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

(2) Paragraph (1) does not apply if an intimation in writing of such death, mental disorder, revocation, or transfer has been received by the company at its registered office before the commencement of the meeting or adjourned meeting at which the instrument is used.

## Directors: Appointment, etc.

***Number Of Directors***

70. The number of directors all of whom shall be natural persons shall not be less than 1.

***Change In Number Of Directors***

71. The company may from time to time by ordinary resolution passed at a general meeting increase or reduce the number of directors.

***Appointment Of New Directors***

72. Any person may be appointed to be a director, either to fill a casual vacancy or as an addition to the existing directors by way of:

(a) appointment by the board of directors; or

(b) an ordinary resolution passed at a general meeting,

subject to the condition that the total number of directors must not at any time exceed the number fixed in accordance with this Constitution.

***Removal Of Directors***

73. The company may by ordinary resolution remove any director before the expiration of his or her period of office, and may by an ordinary resolution appoint another person in place of the removed director.

***Remuneration Of Directors***

74. (1) The remuneration of the directors is, from time to time, to be determined by the company in a general meeting.

(2) The remuneration of the directors is treated as accruing from day to day.

(3) The directors may also be paid all travelling, hotel, and other expenses properly incurred by them in attending and returning from meetings of the directors or any committee of the directors or general meetings of the company or in connection with the business of the company.



Authentication no.: T26139511F

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

***Qualification Shares***

75. Shareholding qualification for directors is not required.

***Vacation Of Office By Directors***

76. The office of director becomes vacant if the director:

(a) ceases to be a director by virtue of the Act;

(b) becomes bankrupt or makes any arrangement or composition with his or her creditors generally;

(c) becomes prohibited from being a director by reason of any order made under the Act;

(d) becomes disqualified from being a director by virtue of his or her disqualification or removal or the revocation of his or her appointment as a director, as the case may be, under the provisions of the Act or any other written law in Singapore;

(e) being a director of a Registered Fund Management Company as defined in the Securities and Futures (Licensing and Conduct of Business) Regulations (Cap. 289, Rg 10), he or she has been removed by the Registered Fund Management Company as director in accordance with those Regulations;

(f) becomes mentally disordered and incapable of managing himself or herself or his or her affairs or a person whose person or estate is liable to be dealt with in any way under the law relating to mental capacity;

(g) subject to section 145 of the Act, resigns his or her office by notice in writing to the company;

(h) for more than 6 months is absent without permission of the directors from meetings of the directors held during that period;

(i) is removed by the company in a general meeting pursuant to this Constitution; or

(j) is requested in writing to resign by all other company directors.

**Powers And Duties of Directors**

***Management Of Business By Directors***

77. (1) The business of a company is managed by or under the direction or supervision of the directors.

(2) The directors may exercise all the powers of a company except any power that the Act or this Constitution requires the company to exercise in a general meeting.



Authentication no.: T26139511F

*Borrowing Powers*

78. Without limiting the generality of regulation 77, the directors may exercise all the powers of the company to do all or any of the following for any debt, liability, or obligation of the company or of any third party:

(a) borrow money;

(b) mortgage or charge its undertaking, property, and uncalled capital, or any part of the undertaking, property and uncalled capital; or

(c) issue debentures and other securities whether outright or as security.

*Appointment Of Power Of Attorney*

79. (1) The directors may from time to time by power of attorney appoint any corporation, firm, limited liability partnership or person or body of persons, whether nominated directly or indirectly by the directors, to be the attorney or attorneys of the company for the purposes and with the powers, authorities, and discretions (not exceeding those vested in or exercisable by the directors under this Constitution) and for a period and subject to any conditions as the directors may think fit.

(2) Any powers of attorney granted under paragraph (1) may contain provisions for the protection and convenience of persons dealing with the attorney as the directors think fit and may also authorise the attorney to delegate all or any of the powers, authorities, and discretions vested in the attorney.

*Signing Authority*

80. All cheques, promissory notes, drafts, bills of exchange, and other negotiable instruments, and all receipts for money paid to the company, must be signed, drawn, accepted, endorsed, or otherwise executed, as the case may be, as the directors from time to time determine.

*Minutes Of Meetings*

81. (1) The directors must cause minutes to be made of all of the following matters:

(a) all appointments of officers to be engaged in the management of the company's affairs;

(b) names of directors present at all meetings of the company and of the directors; and

(c) all proceedings at all meetings of the company and of the directors.

(2) The minutes referred to in paragraph (1) must be signed by the chairman of the meeting at which the proceedings were held or by the chairman of the next succeeding meeting.

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

(3) Where the company has only 1 member or only 1 director, a minute signed by the sole member or sole director stating that any act, matter or thing or any ordinary or special resolution has been performed or duly passed by a meeting of the company or a director's meeting, as the case may be, the act, matter or thing or any ordinary or special resolution shall for all purposes, be deemed to have been performed or passed by a meeting of the company or a director's meeting.

## Proceedings Of Directors

### *Directors' Meeting*

82. (1) The directors may meet together for the despatch of business, adjourn and otherwise regulate their meetings as they think fit.

(2) A director may at any time summon a meeting of the directors.

(3) The secretary must, on the requisition of a director, summon a meeting of the directors.

### *Directors' Meeting By Video Conferencing*

83. (1) Any director or member of a committee of the directors may participate in a meeting of the directors or such committee by means of telephone and or video conferencing call or similar communications equipment whereby all persons participating in the meeting can hear each other and participation in the meeting in this manner shall be deemed to constitute in person at such meeting.

(2) A meeting referred to in paragraph (1) will be deemed to take place where the largest groups of directors present for the purposes of the meeting is assembled or, if there is no such group, where the chairman is present.

### *Casting Vote Of Chairman*

84. (1) Subject to this Constitution, questions arising at any meeting of directors must be decided by a majority of votes and a determination by a majority of directors is for all purposes treated as a determination of the directors.

(2) In case of an equality of votes, the chairman of the meeting has a second or casting vote.

### *Disclosure Of Directors' Interests*

85. A director may vote in respect of any transaction or proposed transaction with the company in which the director is interested, or in respect of any matter arising from such transaction or proposed transaction, provided that such interest is or has been disclosed to the company in accordance with section 156(1) of the Act.



Authentication no.: T26139511F

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

*Quorum For Directors' Meeting*

86. The quorum necessary for the transaction of the business of the directors may be fixed by the directors, and unless so fixed is 2. In the event the company has only 1 director, then a director's resolution in writing signed by the sole director will suffice.

*Continuing Directors To Increase Numbers Of Directors*

87. (1) Subject to paragraph (2), the directors may act despite any vacancy in their body.

(2) If and so long as the number of directors is reduced below the number fixed by this Constitution as the necessary quorum of directors, the continuing directors or director may not act except for the purpose of increasing the number of directors to that number or for the purpose of summoning a general meeting of the company.

*Election Of Chairman*

88. (1) The directors may elect a chairman of their meetings and determine the period for which the chairman is to hold office.

(2) If no chairman is elected, or if at any meeting, the chairman is not present within 10 minutes after the time appointed for holding the meeting, the directors present may choose 1 of their number to be chairman of the meeting.

*Delegation Of Powers To Committee*

89. (1) The directors may delegate any of their powers to committees consisting of any member or members of their body as the directors think fit.

(2) Any committee formed under paragraph (1) must in the exercise of the delegated powers conform to any regulation that may be imposed on it by the directors.

*Election Of Committee Chairman*

90. (1) A committee may elect a chairman of its meetings.

(2) If no chairman is elected, or if at any meeting the chairman is not present within 10 minutes after the time appointed for holding the meeting, the members present may choose 1 of their number to be chairman of the meeting.

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

*Decisions By Committee*

91. (1) A committee may meet and adjourn as it thinks proper.

(2) Questions arising at any meeting must be determined by a majority of votes of the members present, and in the case of an equality of votes the chairman has a second or casting vote.

*Irregularities In Appointment Of Committee Members*

92. All acts done by any meeting of the directors or of a committee of directors or by any person acting as a director is as valid as if every such person had been duly appointed and was qualified to be a director, even if it is afterwards discovered that:

(a) there was some defect in the appointment of any director or person acting as a director; or

(b) the directors or person acting as a director or any of them were disqualified.

*Resolutions In Writing*

93. (1) A resolution in writing, signed by a simple majority of the directors for the time being entitled to receive notice of a meeting of the directors, is as valid and effectual as if it had been passed at a meeting of the directors duly convened and held.

(2) Any resolution in writing under paragraph (1) may consist of several documents in like form, each signed by 1 or more directors.

(3) In this regulation, the expressions "in writing" and "signed" include approval by any such director by telefax or any form of electronic communication approved by the directors for such purpose from time to time incorporating, if the directors deem necessary, the use of security and/or identification procedures and devices approved by the directors.

94. Where the company has only 1 director, the director may pass a resolution by recording it and signing the record.

**Managing Directors**

*Appointment Of Managing Director*

95. The directors may from time to time appoint 1 or more of their body to the office of managing director for such period and on such terms as they think fit and, subject to the terms of any agreement entered into in any particular case, may revoke any such appointment.

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

***Remuneration Of Managing Director***

96. A managing director may, subject to the terms of any agreement entered into in any particular case, receive remuneration by 1 or more of the following ways as the directors may determine:

(a) salary;

(b) commission;

(c) participation in profits.

***Delegation Of Powers***

97. The directors may entrust to and confer upon a managing director any of the powers exercisable by them upon such terms and conditions and with such restrictions as they think fit, and either collaterally with or to the exclusion of their own powers, and may from time to time revoke, withdraw, alter, or vary all or any of those powers.

## Alternate Directors And Substitute Directors

98. (1) Any director (called in this regulation the appointer) may, with the approval of the board of directors, appoint any person, whether a member of the company or not, to be an alternate or substitute director in the appointer's place for any period as the appointer thinks fit.

(2) Any person holding office as an alternate or substitute director is entitled to notice of meetings of the directors and to attend and vote at meetings of the directors, and to exercise all the powers of the appointer in the appointer's place.

(3) An alternate or substitute director:

(a) is not required to hold any shares to qualify him or her for appointment; and

(b) must vacate office if the appointer vacates office as a director or removes the appointee from office.

(4) Any appointment or removal under this regulation must be effected by notice in writing under the hand of the director making the appointment or removal.

## Associate Directors

99. (1) The directors may from time to time appoint any person to be an associate director and may from time to time cancel any such appointment.

(2) The directors may fix, determine and vary the powers, duties and remuneration of any person appointed as an associate director.



Authentication no.: T26139511F

(3) A person appointed as an associate director:

(a) is not required to hold any shares to qualify him or her for appointment; and

(b) does not have any right to attend or vote at any meeting of the directors except by the invitation and with the consent of the directors.

**Secretary**

100. (1) The secretary must be appointed by the directors in accordance with the Act for any term, at any remuneration, and upon any conditions as the directors think fit.

(2) Any secretary appointed under paragraph (1) may be removed by the directors.

**Authentication**

101. Any director or the secretary or any other person appointed by the directors for the purpose shall have power to authenticate any documents affecting the Constitution of the company and any resolutions passed by the company or the directors or any committee, and any books, records, documents, accounts and financial statements relating to the business of the company, and to certify copies thereof or extracts therefrom as true copies or extracts; and where any books, records, documents, accounts or financial statements are elsewhere than at the office of the company, the local manager or other officer of the company having the custody thereof shall be deemed to be a person appointed by the directors as aforesaid. A document purporting to be a copy of a resolution, or an extract from the minutes of a meeting, of the company or of the directors or any committee which is certified as aforesaid shall be conclusive evidence in favour of all persons dealing with the company upon the faith thereof that such resolutions has been duly passed, or the case may be, that any minute so extracted is a true and accurate record of proceedings at a duly constituted meeting. Any authentication or certification made pursuant to this regulation may be made by any electronic means approved by the directors for such purpose from time to time incorporating, if the directors deem necessary, the use of security and/or identification procedures and devices approved by the directors.

**Financial Statements**

102. (1) The directors must:

(a) cause proper accounting and other records to be kept;

(b) distribute copies of financial statements and other documents as required by the Act; and

(c) determine whether, to what extent, at what times and places, and under what conditions or regulations the accounting and other records of the company are open to the inspection of members who are not directors.

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

(2) No member (who is not a director) has any right of inspecting any account or book or paper of the company except as conferred by statute or authorised by the directors or by the company in general meeting.

## Dividends And Reserves

***Declaration Of Dividends***

103. The company in a general meeting may declare dividends, but any dividend declared must not exceed the amount recommended by the directors.

***Interim Dividends***

104. The directors may from time to time pay to the members such interim dividends as appear to the directors to be justified by the profits of the company.

***Dividends From Profits Only***

105. No dividend is to:

(a) be paid otherwise than out of profits; or

(b) bear interest against the company.

***Creation Of Reserves***

106. (1) The directors may, before recommending any dividend:

(a) set aside out of the profits of the company sums as they think proper as reserves; or

(b) carry forward any profits which they may think prudent not to divide, without placing the profits to the reserves.

(2) The reserves set aside under paragraph (1)(a):

(a) are, at the discretion of the directors, to be applied for any purpose to which the profits of the company may be properly applied; and

(b) may, pending any application under sub-paragraph (a) and at the discretion of the directors, be employed in the business of the company or be invested in any investments (other than shares in the company) as the directors may from time to time think fit.

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

*Entitlement Of Dividends*

107. (1) Subject to the rights of persons, if any, entitled to shares with special rights as to dividend, all dividends must be declared and paid by reference to the amounts paid or credited as paid on the shares in respect of which the dividend is paid.

(2) For the purposes of paragraph (1), no amount paid or credited as paid on a share in advance of calls is to be treated for the purposes of this regulation as paid on the share.

(3) All dividends must be apportioned and paid proportionately to the amounts paid or credited as paid on the shares during any portion or portions of the period in respect of which the dividend is paid.

(4) If any share is issued on terms providing that it ranks for dividend as from a particular date that share ranks for dividend accordingly.

*Calls To Be Deducted From Dividends*

108. The directors may deduct from any dividend payable to any member all sums of money, if any, presently payable by the member to the company on account of calls or otherwise in relation to the shares of the company.

*Dividend And Bonus From Assets*

109. (1) Any general meeting declaring a dividend or bonus may by resolution direct payment of the dividend or bonus wholly or partly by the distribution of specific assets, including:

(a) paid-up shares of any other company;

(b) debentures or debenture stock of any other company; or

(c) any combination of any specific assets, and the directors must give effect to the resolution.

(2) Where any difficulty arises with regard to a distribution directed under paragraph (1), the directors may do all or any of the following:

(a) settle the distribution as they think expedient;

(b) fix the value for distribution of the specific assets or any part of the specific assets;

(c) determine that cash payments be made to any members on the basis of the value fixed by the directors, in order to adjust the rights of all parties;

(d) vest any specific assets in trustees as may seem expedient to the directors.



Authentication no.: T26139511F

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

***Payment Of Dividend In Cash***

110. (1) Any dividend, interest, or other money payable in cash in respect of shares may be paid by cheque or warrant sent through the post directed:

(a) in the case of joint holders:

(i) to the registered address of the joint holder who is first named on the electronic register of members; or

(ii) to a person or to an address as the joint holders may in writing direct; or

(b) in any other case:

(i) to the registered address of the holder; or

(ii) to a person or to an address as the holder may in writing direct.

(2) Every cheque or warrant made under paragraph (1) must be made payable to the order of the person to whom it is sent.

(3) Any 1 of 2 or more joint holders may give effectual receipts for any dividends, bonuses, or other money payable in respect of the shares held by them as joint holders.

**Capitalisation Of Profits**

***Capitalisation Of Profits***

111. (1) The company in general meeting may, upon the recommendation of the directors, resolve to capitalise any part of the amount for the time being standing to the credit of any of the company's reserve accounts or to the credit of the profit and loss account or otherwise available for distribution.

(2) The amount capitalised under paragraph (1) is set free for distribution amongst the members who would have been entitled to the amount had it been distributed by way of dividend and in the same proportions subject to the following conditions:

(a) the capitalised amount must not be paid in cash; and

(b) the capitalised amount must be applied in or towards either or both of the following:

(i) paying up any amounts for the time being unpaid on any shares held by the members respectively;



Authentication no.: T26139511F

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

(ii) paying up in full unissued shares or debentures of the company to be allotted, distributed and credited as fully paid up to and amongst such members in the same proportions.

*Appropriation Of Capitalised Profits*

112. (1) Whenever a resolution under regulation 111(1) has been passed, the directors must:

(a) make all appropriations and applications of the undivided profits resolved to be capitalised by the resolution;

(b) make all allotments and issues of fully-paid shares or debentures, if any; and

(c) do all acts and things required to give effect to the resolution.

(2) The directors have full power to:

(a) make provision by the issue of fractional certificates or by payment in cash or otherwise as they think fit for the case of shares or debentures becoming distributable in fractions; and

(b) authorise any person to enter on behalf of all the members entitled to the distribution into an agreement with the company providing:

(i) for the allotment to the members respectively, credited as fully paid up, of any further shares or debentures to which they may be entitled upon the capitalisation; or

(ii) for the payment up by the company on the members' behalf of the amounts or any part of the amounts remaining unpaid on their existing shares by the application of their respective proportions of the profits resolved to be capitalised,

and any agreement made under such authority is effective and binding on all members entitled to the distribution.

**Notices**

*Service By Post*

113. (1) A notice may be given by the company to any member either personally or by sending it by post to the member:

(a) at the member's registered address; or



Authentication no.: T26139511F

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

(b) if the member has no registered address in Singapore, to the address, if any, in Singapore supplied by the member to the company for the giving of notices to the member.

(2) Where a notice is sent by post, service of the notice is treated as effected by properly addressing, prepaying, and posting a letter containing the notice.

(3) Where a notice is sent by post, service of the notice is treated as effected:

(a) in the case of a notice of a meeting, on the day after the date of its posting; and

(b) in any other case, at the time at which the letter would be delivered in the ordinary course of post.

***Service By Electronic Means***

114. (1) A notice may also be sent or supplied by the company by electronic means to a member who has agreed generally or specifically that the notice may be given by electronic means and who has not revoked that agreement.

(2) Where the notice is given by electronic means, service of the notice is treated as effected properly by sending or supplying it to an address specified for the purpose by the member generally or specifically.

***Notice To Joint Holders***

115. A notice may be given by the company to the joint holders of a share by giving the notice to the joint holder first named in the electronic register of members in respect of the share.

***Notice To Persons In Event Of Deceased Or Bankrupt Member***

116. (1) A notice may be given by the company to the persons entitled to a share in consequence of the death or bankruptcy of a member by sending it through the post in a prepaid letter addressed to the persons by:

(a) name;

(b) the title of representatives of the deceased, or assignee of the bankrupt; or

(c) any like description.

(2) The notice referred to in paragraph (1) may be given:

(a) at the address, if any, in Singapore supplied for the purpose by the persons claiming to be so entitled; or



Authentication no.: T26139511F

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

(b) if no address in Singapore has been supplied, by giving the notice in any manner in which notice might have been given if the death or bankruptcy had not occurred.

*Notice Of General Meeting*

117. (1) Notice of every general meeting must be given in any manner authorised in regulations 113 to 116 to:

(a) every member;

(b) every person entitled to a share in consequence of the death or bankruptcy of a member who, but for his or her death or bankruptcy, would be entitled to receive notice of the meeting; and

(c) the auditor for the time being of the company.

(2) No other person is entitled to receive notices of general meetings.

**Winding Up**

118. (1) If the company is wound up, the liquidator may, with the sanction of a special resolution of the company:

(a) divide amongst the members in kind the whole or any part of the assets of the company, whether they consist of property of the same kind or not;

(b) set a value as the liquidator considers fair upon the property referred to in sub-paragraph (a);

(c) determine how the division of property is to be carried out as between the members or different classes of members; and

(d) vest the whole or any part of the assets of the company in trustees upon such trusts for the benefit of the contributories as the liquidator thinks fit.

(2) No member is compelled to accept any shares or other securities on which there is any liability.

**Indemnity**

*Indemnity For Officers*

119. Every officer of the company is to be indemnified out of the assets of the company against any liability (other than any liability referred to in section 172B (1)(a) or (b) of the Act) incurred by the officer to a person other than the company attaching to the officer in connection with any negligence, default, breach of duty or breach of trust.



Authentication no.: T26139511F

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

***Indemnity For Auditors***

120. Every auditor is to be indemnified out of the assets of the company against any liability incurred by the auditor in defending any proceedings, whether civil or criminal, in which judgment is given in the auditor's favour or in which the auditor is acquitted or in connection with any application under the Act in which relief is granted to the auditor by the Court in respect of any negligence, default, breach of duty or breach of trust.



Authentication no.: T26139511F

16b882d10d7a643f43243ea1b1461f25254b99e5e54cbad8dec7ef95359caf21

DocuSign Envelope ID: 424F1564-205E-4A67-B5F4-50EDF7B0C976

# Exhibit 21

# CONSTITUTION FOR A PRIVATE COMPANY LIMITED BY SHARES

CONSTITUTION OF
BYJU'S HOLDINGS 1 PTE. LTD

1. The name of the company is BYJU'S HOLDINGS 1 PTE. LTD

2. The registered office of the company is situated in the Republic of Singapore.

3. The liability of the members is limited.

4. The share capital of the company in the original or any increased capital may be divided into several classes, and there may be attached thereto respectively any preferential, deferred or other special rights, privileges, conditions or restrictions as to dividends, capital, voting or otherwise.



Authentication no.: U26914802C

I/We, the persons(s) whose name(s), address(es) and occupation(s) is/are set out in this Constitution, desire to form a company in pursuance of this Constitution and I/we agree to take the number of shares in the capital of the company set out against my/our respective name(s).

| Name(s), address(es) and description of subscriber(s) | Number of shares taken by each subscriber | Class of shares taken by each subscriber |
|---|---|---|
| BYJU RAVEENDRAN<br>CORRESPONDENCE ADDRESS:<br>43, 14TH MAIN,<br>15TH CROSS, 4TH SECTOR,<br>H S R LAYOUT,<br>BENGALURU, KAR,<br>560102 INDIA<br><br>DIRECTOR | X<br>[signature]<br>1000<br>(One Thousand) | Ordinary |
| Total Number Of Shares Taken | 1000<br>(One Thousand) | |

Dated this:- 31 August 2022

Witness to the above signature(s):-

[signature] X

ALEX TEO WEE JIN

30 CECIL STREET,
#19-08 PRUDENTIAL TOWER
SINGAPORE 049712



Authentication no.: U26914802C

## Interpretation

5. (1) In this Constitution:

"Act" means the Companies Act (Cap. 50) of Singapore, or any other statutory modification, amendment or re-enactment thereof for the time being in force or any and every other act for the time being in force concerning companies and affecting the company and any reference to any provision of the Act is that provision as so modified, amended or re-enacted or contained in any such subsequent Companies Act;

"board of directors" means the board of directors of the company;

"directors" means the directors of the company;

"electronic register of members" means the electronic register of members kept and maintained by the Registrar for private companies under section 196A of the Act;

"general meeting" means a general meeting of the company;

"in writing" means written or produced by any substitute for writing or partly one and partly another and shall include (except where otherwise expressly specified in this Constitution or the context otherwise requires, and subject to any limitations, conditions or restrictions contained in the Act and every other act for the time being in force concerning companies and affecting the company) any representation or reproduction of words, symbols or other information which may be displayed in a visible form, whether in a physical document or in an electronic communication or form or otherwise howsoever;

"member" means a member of the company, excluding the company in relation to shares held by it as treasury shares;

"Registrar" has the same meaning as in section 4(1) of the Act;

"secretary" means a secretary of the company appointed under section 171 of the Act; and

"treasury shares" has the same meaning as in section 4(1) of the Act.

(2) In this Constitution:

(a) references to "holders" of shares or a class of shares shall, except where otherwise expressly provided in this Constitution, exclude the company in relation to shares held by it as treasury shares, and "holding" and "held" shall be construed accordingly;

(b) expressions referring to writing include, unless the contrary intention appears, references to printing, lithography, photography and other modes of representing or reproducing words in a visible form;

(c) words or expressions contained in this Constitution must be interpreted in accordance with the provisions of the Interpretation Act (Cap. 1), and of the Act in force as at the date at which this Constitution becomes binding on the company; and

(d) the expression "electronic communication" shall have the meaning ascribed to it in the Act.

**Private Company**

6. The company is a private company and, accordingly:

(a) the right to transfer shares in the company shall be restricted in the manner hereinafter appearing; and

(b) the number of its members (counting joint holders of shares as one person and not counting any person in the employment of the company or any of its subsidiaries or any person who while previously in the employment of the company or any of its subsidiaries was and thereafter has continued to be a member of the company) shall be limited to 50.

**Share Capital And Variation Of Rights**

***Issue Of Shares***

7. (1) Without prejudice to any special rights previously conferred on the holders of any existing shares or class of shares but subject to the Act, shares in the company may be issued by the directors.

(2) Shares referred to in paragraph (1) may be issued with preferred, deferred, or other special rights or restrictions, whether in regard to dividend, voting, return of capital, or otherwise, as the directors, subject to any ordinary resolution of the company, determine.

(3) The company may issue shares for which no consideration is payable to the company.

***Preference Shares***

8. Subject to the Act, any preference shares may, with the sanction of an ordinary resolution, be issued on the terms that they are, or at the option of the company are liable, to be redeemed.

***Variation Of Rights Attached To Shares***

9. (1) If at any time the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of the shares of that class) may, whether or not the company is being wound up, be varied with:

(a) the consent in writing of the holders of 75% of the issued shares of that class; or

(b) the sanction of a special resolution passed at a separate general meeting of the holders of the shares of that class.

(2) The provisions of this Constitution relating to general meetings apply with the necessary modifications to every separate general meeting of the holders of the shares of the class referred to in paragraph (1), except that:

(a) the necessary quorum is at least 2 persons holding or representing by proxy one-third of the issued shares of that class; and

(b) any holder of shares of that class present in person or by proxy may demand a poll.

(3) Section 184 of the Act applies with the necessary modifications to every special resolution passed at a separate general meeting of the holders of the shares of the class under paragraph (1).

***Deemed Variation Of Rights***

10. The rights conferred upon the holders of the shares of any class issued with preferred or other rights are, unless otherwise expressly provided by the terms of issue of the shares of that class, treated as being varied by the creation or issue of further shares which rank equally with the shares of that class.

***Payment Of Commission On Shares***

11. The company may on any issue of shares pay any brokerage that is permitted by law.

***Shares Held In Trust And Joint Holders***

12. (1) Except as required by law, no person is to be recognised by the company as holding any share upon any trust.

(2) Except as required by law or by this Constitution, the company is not bound by or compelled in any way to recognise:

(a) any equitable, contingent, future or partial interest in any share or unit of a share; or

(b) any other rights in respect of any share or unit of share, other than the registered holder's absolute right to the entirety of the share or unit of share.

(3) Paragraph (2) applies even when the company has notice of any interest or right referred to in paragraph (2)(a) or (b).

(4) If 2 or more persons are registered as joint holders of any share, any 1 of such persons may give effectual receipts for any dividend payable in respect of such share and the joint holders of a share shall, subject to the provisions of the Act, be severally as well as jointly liable for the payment of all instalments and calls and interest due in respect of such shares.

***Issue Of Share Certificate***

13. (1) Every person whose name is entered as a member in the electronic register of members is entitled without payment to receive a certificate in accordance with the Act.

(2) In respect of a share or shares held jointly by several persons, the company is not bound to issue more than 1 certificate, and delivery of a certificate for a share to 1 of several joint holders is sufficient delivery to all such holders.

(3) If any certificate be lost or destroyed or stolen, then upon proof thereof to the satisfaction of the directors and on such indemnity as the directors deem adequate being given, and on the payment of an administrative fee as the directors may determine, a new certificate shall be given to the person entitled to such lost or destroyed or stolen certificate.

**Lien**

***Lien On Partly Paid Shares***

14. (1) The company has a first and paramount lien on:

(a) every share (that is not a fully paid share) for all money (whether presently payable or not) called or payable at a fixed time in respect of that share; and

(b) all shares (other than fully paid shares) registered in the name of a single person for all money presently payable by the person or the person's estate to the company.

(2) The company's lien, if any, on a share extends to all dividends payable on the share.

(3) The directors may at any time declare any share to be wholly or partly exempt from paragraph (1) or (2), or both.

*Sale Of Shares On Which Lien Exists*

15. (1) Subject to paragraph (2), the company may sell, in any manner as the directors think fit, any shares on which the company has a lien.

(2) No sale may be made under paragraph (1) unless:

(a) a sum in respect of which the lien exists is presently payable;

(b) a notice in writing, stating and demanding payment of the amount in respect of which the lien exists as is presently payable, has been given by the company to the registered holder for the time being of the share, or the person entitled to the share by reason of the death or bankruptcy of the registered holder of the share; and

(c) a period of 14 days has expired after the giving of the notice in sub-paragraph (b).

*Purchase Of Shares On Which Lien Exists*

16. (1) To give effect to any sale of shares under regulation 15, the directors may authorise any person to transfer the shares sold to the purchaser of the shares.

(2) Subject to regulations 26, 27and 28, the company must lodge a notice of transfer of shares in relation to the shares sold to the purchaser with the Registrar.

(3) The purchaser of any shares referred to in paragraph (1) is not bound to see to the application of the purchase money, and the purchaser's title to the shares is not affected by any irregularity or invalidity in the proceedings with respect to the sale of the shares.

*Proceeds Of Sale Of Shares On Which Lien Exists*

17. (1) The proceeds of any sale of shares under regulation 15 received by the company must be applied in payment of any part of the amount in respect of which the lien exists as is presently payable.

(2) Any remaining proceeds from the sale of shares must (subject to any lien for sums not presently payable as existed upon the shares before the sale but which have become presently payable) be paid to the person entitled to the shares at the date of the sale.

**Calls On Shares**

*Calls On Shares*

18. (1) The directors may from time to time make calls upon the members in respect of any money unpaid on their shares, other than in accordance with the conditions of the allotment of the shares, if both of the following conditions are met:

(a) no call is payable at less than 1 month after the date fixed for the payment of the last preceding call; and

(b) at least 14 days' notice specifying the time or times and the place of payment is given by the company to the members.

(2) Each member must pay to the company at the time or times and place specified in the notice referred to in paragraph (1)(b) the amount called on the member's shares.

(3) The directors may revoke or postpone a call.

***When Is A Call Made***

19. (1) A call is treated as having been made at the time when the resolution of the directors authorising the call was passed.

(2) A call may be required to be paid by instalments.

***Joint Liability For Payment Of Calls***

20. The joint holders of a share are jointly and severally liable to pay all calls in respect of the share.

***Interest On Unpaid Calls***

21. (1) If a sum called in respect of a share is not paid before or on the day appointed for payment of the sum, the person from whom the sum is due must pay interest on the sum for the period beginning on the day appointed for payment of the sum to the time of actual payment of the sum at such rate not exceeding 8% per annum as the directors may determine.

(2) The directors may waive, wholly or in part, the payment of the interest referred to in paragraph (1).

***Deemed Call***

22. (1) Any sum which, by the terms of issue of a share, becomes payable on allotment or at any fixed date is to be treated as a call duly made and payable on the date on which, by the terms of issue of the share, the sum becomes payable.

(2) In the case of non-payment of any sum referred to in paragraph (1), all the provisions of this Constitution as to payment of interest and expenses and forfeiture apply as if the sum had become payable by virtue of a call duly made and notified.

### *Differentiation On Calls*

23. The directors may, on the issue of shares, differentiate between the holders as to the amount of calls to be paid and the times of payment.

### *Advance Payment Of Call*

24. (1) The directors may, if they think fit, receive in advance from any member (if the member is willing) all or any part of the money uncalled and unpaid upon any shares held by the member.

(2) Upon the company receiving the money referred to in paragraph (1), the directors may (until the amount would, but for the advance, become payable) pay interest to the member at such rate not exceeding (unless the company in general meeting otherwise directs) 8% per annum as may be agreed upon between the directors and the member.

## **Transfer Of Shares**

### *Transfer Of Shares*

25. (1) Subject to this Constitution, any member may transfer all or any of the member's shares by instrument in writing in any usual or common form or in any other form which the directors may approve.

(2) The instrument of transfer must be executed by or on behalf of the transferor and the transferor remains the holder of the shares transferred until the name of the transferee is entered in the electronic register of members.

### *Instrument Of Transfer*

26. (1) To enable the company to lodge a notice of transfer of shares with the Registrar under section 128(1)(a) of the Act, the following items in relation to the transfer of shares must be delivered by the transferor to the registered office of the company:

(a) the instrument of transfer;

(b) a fee not exceeding $1 as the directors from time to time may require;

(c) the certificate of the shares to which the instrument of transfer relates; and

(d) any other evidence as the directors may reasonably require to show the right of the transferor to make the transfer.

(2) Upon receipt of the items referred to in paragraph (1), the company must, subject to regulation 27, lodge with the Registrar a notice of transfer of shares in accordance with section 128 of the Act and retain the instrument of transfer referred to in regulation 25.

***Refusal To Register Transfer***

27. The directors may decline to lodge a notice of transfer of shares with the Registrar if:

(a) the shares are not fully paid shares;

(b) the directors do not approve of the transferee; or

(c) the company has a lien on the shares.

***Suspension Of Share Transfer***

28. The lodging of any notice of transfer of shares with the Registrar for the purpose of updating the electronic register of members may be suspended at any time and for any period as the directors may from time to time determine, but not for more than a total of 30 days in any year.

## Transmission Of Shares

***Transmission Of Shares***

29. (1) Where a sole holder of shares of the company dies, the company may recognise only the legal personal representatives of the deceased as having any title to the deceased's interest in the shares.

(2) Where a joint holder of shares of the company dies, the company may recognise only the survivor or survivors of the deceased as having any title to the deceased's interest in the shares.

(3) Nothing in paragraph (2) releases the estate of the deceased from any liability in respect of any share which had been jointly held by the deceased with other persons.

***Registration Of Shares***

30. (1) Any person becoming entitled to a share in consequence of the death or bankruptcy of a member may, upon such evidence being produced as may from time to time properly be required by the directors, elect to:

(a) be registered as holder of the share in the electronic register of members; or

(b) nominate another person to be registered as the transferee of the share in the electronic register of members.

(2) Despite paragraph (1), the directors have the same right to decline or suspend the lodging of a notice of transfer of shares with the Registrar for the purpose of updating the electronic register of members under regulations 27 and 28 as they would have had in the case of a transfer of the share by the member referred to in paragraph (1) before the death or bankruptcy of that member.

***Procedure For Registering Transmission Shares***

31. (1) If a person becoming entitled to a share in consequence of the death or bankruptcy of a member elects to be registered as the holder of the share in the electronic register of members, that person must deliver or send to the company a notice in writing signed by the person stating that the person elects to be registered in the electronic register of members as the holder of the share.

(2) If a person becoming entitled to a share in consequence of the death or bankruptcy of a member elects to nominate another person to be registered as the transferee of the share in the electronic register of members, the person must execute a transfer of the share to that other person.

(3) All the limitations, restrictions, and provisions of this Constitution relating to the right to transfer and the lodging of a notice of transfer by the company in relation to any transfer of shares are applicable to any notice referred to in paragraph (1) or transfer referred to in paragraph (2), as if the death or bankruptcy of the member concerned had not occurred and the notice or transfer were a transfer signed by that member.

***Rights Of Legal Representative To Be Secured As Registered Holder***

32. (1) Where the registered holder of any share dies or becomes bankrupt, the personal representative of the registered holder or the assignee of the registered holder's estate, as the case may be, is, upon the production of such evidence as may from time to time be properly required by the directors, entitled to the same dividends and other advantages, and to the same rights (whether in relation to meetings of the company, or to voting, or otherwise), that the registered holder would have been entitled to if the registered holder had not died or become bankrupt.

(2) Where 2 or more persons are jointly entitled to any share in consequence of the death of the registered holder, they are, for the purposes of this Constitution, treated as joint holders of the share.

**Forfeiture Of Shares**

***Payment Of Call***

33. If a member fails to pay any call or instalment of a call on the day appointed for payment of the call or instalment of the call, the directors may, as long as any part of the call or instalment remains unpaid, serve a notice on that member requiring payment of the unpaid part of the call or instalment, together with any interest which may have accrued.

*Notice Requiring Payment Of Call*

34. The notice under regulation 33must:

(a) name a day (not earlier than 14 days after the date of service of the notice) on or before which the payment required by the notice is to be made; and

(b) state that, in the event of non-payment at or before the time appointed, the shares in respect of which the call was made is liable to be forfeited.

*Forfeiture Of Shares*

35. (1) If the requirements of a notice referred to in regulation 34are not complied with, any share in respect of which the notice was given may, at any time after the notice is given but before the payment required by the notice has been made, be forfeited by a resolution of the directors passed for the purpose of forfeiting the share.

(2) Forfeiture under paragraph (1) includes all dividends declared in respect of the forfeited shares and not paid before the forfeiture.

*Sale Of Forfeited Shares*

36. A forfeited share may be sold or otherwise disposed of on any terms and in any manner as the directors think fit, and, at any time before a sale or disposition the forfeiture may be cancelled on any terms as the directors think fit.

*Liability In Respect Of Forfeited Shares*

37. (1) A person whose shares have been forfeited ceases to be a member in respect of the forfeited shares.

(2) Despite paragraph (1), the person referred to in that paragraph remains liable to pay to the company all money which, at the date of forfeiture, was payable by the person to the company in respect of the shares (together with interest at the rate of 8% per annum beginning on the date of forfeiture on the money for the time being unpaid if the directors think fit to enforce payment of such interest).

*Statutory Declaration On Forfeited Shares*

38. A statutory declaration in writing that the declarant is a director or the secretary of the company, and that a share in the company has been forfeited on a date stated in the declaration, is conclusive evidence of the facts stated in the declaration as against all persons claiming to be entitled to the share.

*Re-Issue Of Forfeited Shares*

39. (1) The company may receive the consideration, if any, given for a forfeited share on any sale or disposition of the forfeited share and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of (called in this regulation the transferee).

(2) Upon the company executing a transfer of the share in favour of the transferee, the company must lodge a notice of transfer of share with the Registrar under section 128 of the Act for the purpose of updating the electronic register of members to reflect the transferee as the registered owner of the forfeited share.

(3) The transferee is not bound to see to the application of the purchase money, if any, and the transferee's title to the share is not affected by any irregularity or invalidity in the proceedings with respect to the forfeiture, sale, or disposal of the share.

*Applicability Of Provisions On Forfeiture*

40. The provisions of this Constitution as to forfeiture apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time as if the sum had been payable by virtue of a call duly made and notified.

**Conversion Of Shares Into Stock**

*Conversion Of Shares Into Stock*

41. The company may by ordinary resolution passed at a general meeting convert any paid-up shares into stock and reconvert any stock into paid-up shares.

*Transfer Of Stock*

42. (1) Subject to paragraph (2), the holders of stock may transfer the stock or any part of the stock in the same manner, and subject to the same regulations, by which the shares from which the stock arose might, prior to conversion, have been transferred.

(2) The directors may from time to time fix the minimum amount of stock transferable and restrict or forbid the transfer of fractions of that minimum.

*Rights And Privileges Of Stock Holders*

43. (1) Subject to paragraph (2), the holders of stock have, according to the amount of the stock held by the holders, the same rights, privileges and advantages in relation to dividends, voting at meetings of the company and other matters as if they held the shares from which the stock arose.

(2) No privilege or advantage (except participation in the dividends and profits of the company and in the assets on winding up) is to be conferred by any aliquot part of stock on the holder of such stock which would not, if existing in shares, have conferred that privilege or advantage on the holder of such stock.

***Applicability Of Provisions On Paid-Up Shares***

44. Provisions of this Constitution applicable to paid-up shares apply to stock, and references to "share" and "shareholder" in this Constitution are to be read as if they were references to "stock" and "stockholder", respectively.

## Alteration Of Capital

***Alteration Of Capital***

45. The company may from time to time by ordinary resolution do any of the following:

(a) increase the share capital by such sum to be divided into shares of such amount as the resolution shall prescribe;

(b) consolidate and divide all or any of its share capital;

(c) subdivide its shares or any of them such that in the subdivision the proportion between the amount paid and the amount, if any, unpaid on each reduced share is the same as it was in the case of the share from which the reduced share is derived; or

(d) cancel the number of shares which at the date of the passing of the resolution have not been taken or agreed to be taken by any person or which have been forfeited, and diminish the amount of its share capital by the number of the shares so cancelled.

***Pre-Emptive Rights***

46. (1) Subject to any direction to the contrary that may be given by the company in a general meeting, all new shares must, before issue, be offered to all persons who, as at the date of the offer, are entitled to receive notices of general meetings from the company, in proportion, or as nearly as the circumstances admit, to the amount of the existing shares to which they are entitled.

(2) The offer must be made by notice specifying the number of shares offered, and limiting a time within which the offer, if not accepted, is treated to be declined.

(3) After the expiration of the time referred to in paragraph (2), or upon the person to whom the offer is made declining the shares offered, the directors may dispose of those shares in any manner as they think is the most beneficial to the company.

(4) The directors may dispose of any new shares which (by reason of the ratio which the new shares bear to shares held by persons entitled to an offer of new shares) cannot, in the opinion of the directors, be conveniently offered under this regulation.

***Reduction Of Share Capital***

47. (1) The company may, by special resolution and with any consent required by law, reduce its share capital or any reserve in any manner.

(2) Subject to the Act, the company may purchase or otherwise acquire any of its issued shares on such terms and in such manner as the company may from time to time think fit and in the manner prescribed by the Act. If required by the Act, any share which is so purchased or acquired by the company, unless held as treasury shares in accordance with the Act, shall be deemed to be cancelled immediately on the purchase or acquisition by the company. On the cancellation of any share as aforesaid, the rights and privileges attached to that share shall expire. In any other instance, the company may hold or deal with any such share (including treasury shares) which is so purchased or acquired by it in accordance with the Act.

***Treasury Shares***

48. (1) Shares that the company purchases or otherwise acquires may be held as treasury shares in accordance with the provisions of this Constitution and the Act.

(2) Where the shares purchased or otherwise acquired are held as treasury shares by the company, the company shall be entered in the electronic register of members as the member holding the treasury shares.

(3) The company shall not exercise any right in respect of the treasury shares other than as provided by the Act. Subject thereto, the company may hold or deal with its treasury shares in the manner authorised by, or prescribed pursuant to, the Act.

## General Meeting

***Convening Of General Meeting***

49. (1) An annual general meeting of the company must be held in accordance with the provisions of the Act.

(2) All general meetings other than the annual general meetings are called extraordinary general meetings.

***Requisitions For Extraordinary General Meeting***

50. (1) An extraordinary general meeting may be requisitioned by:

(a) any director, whenever the director thinks fit; or

(b) any requisitionist as provided for by the Act.

(2) Upon a requisition being made under paragraph (1), an extraordinary general meeting must be convened.

***Notice Calling General Meeting***

51. (1) Subject to the provisions of the Act relating to special resolutions and any agreement amongst persons who are entitled to receive notices of general meetings from a company, at least 14 days' notice (exclusive of the day on which the notice is served or treated to be served, but inclusive of the day for which notice is given) of any general meeting must be given to persons entitled to receive notices of general meetings from the company.

(2) A notice of a general meeting must specify the following:

(a) the place at which the general meeting is held;

(b) the date and time of the general meeting; and

(c) in case of special business to be transacted at the general meeting, the general nature of that business.

***Special Business***

52. (1) All business that is transacted at an extraordinary general meeting is special business.

(2) All business that is transacted at an annual general meeting is special business, except:

(a) the declaration of a dividend;

(b) the consideration of the financial statements, the reports of the auditors and the statements of the directors;

(c) the fixing of the remuneration of the directors; and

(d) the appointment and fixing of the remuneration of the auditors.

**Proceedings At General Meetings**

***Quorum***

53. (1) No business is to be transacted at any general meeting unless a quorum of members is present at the time when the meeting proceeds to business.

(2) Save as herein otherwise provided and subject to the provisions in the Act on wholly owned subsidiaries, two members present in person shall form a quorum. In the event the company has only 1 member, the company may pass a resolution by the member recording the resolution and signing the record.

(3) In this regulation, "member" includes a person attending as a proxy or as representing a corporation or a limited liability partnership which is a member.

***Adjourned General Meeting***

54. (1) The chairman may, with the consent of a general meeting at which a quorum is present, and must if so directed by a general meeting, adjourn the general meeting from time to time and from place to place.

(2) No business is to be transacted at any adjourned meeting other than the business left unfinished at the general meeting from which the adjournment took place (called in this regulation the original general meeting).

(3) There is no need to give any notice of an adjourned meeting or of the business to be transacted at an adjourned meeting unless the adjourned meeting is to be held more than 30 days after the date of the original general meeting.

***Insufficient Quorum***

55. (1) If within half an hour after the time appointed for a general meeting a quorum is not present, the meeting:

(a) in the case where the meeting is convened upon the requisition of members, is dissolved; or

(b) in any other case, is adjourned to the same day in the next week at the same time and place, or to another day and at another time and place as the directors may determine.

(2) If within half an hour after the time appointed for an adjourned meeting a quorum is not present, the member or members present in person or by proxy, attorney or representative shall form a quorum.

***Chairman***

56. The chairman of a general meeting is:

(a) where the board of directors has appointed a chairman amongst the directors, the chairman;

(b) where:

(i) the chairman of the board of directors is unwilling to act as the chairman of the general meeting;

(ii) the chairman is not present within 15 minutes after the time appointed for the holding of the general meeting; or

(iii) the board of directors has not appointed a chairman amongst the directors,

the member elected by the members present for the purpose of being the chairman of the general meeting; or

(c) where such general meeting is an adjourned meeting with only 1 member present in person, that member.

In this regulation, "member" includes a person attending as a proxy or as representing a corporation or a limited liability partnership which is a member.

***Voting On Resolutions***

57. (1) At any general meeting, a resolution put to the vote of the meeting must be decided on a show of hands unless a poll is (before or on the declaration of the result of the show of hands) demanded:

(a) by the chairman;

(b) by at least 2 members present in person or by proxy;

(c) by any member or members present in person or by proxy and representing not less than 5% of the total voting rights of all the members having the right to vote at the meeting; or

(d) by a member or members holding shares in the company conferring a right to vote at the meeting being shares on which an aggregate sum has been paid up equal to not less than 5% of the total sum paid up on all the shares conferring that right.

(2) Unless a poll is demanded, a declaration by the chairman that a resolution has on a show of hands been carried or carried unanimously, or by a particular majority, or lost, and an entry to that effect in the book containing the minutes of the proceedings of the company is conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against the resolution.

(3) The demand for a poll may be withdrawn.

***Members' Resolutions in Writing***

58. (1) Subject to paragraph (2), a resolution in writing signed by members of the company entitled to vote or being a corporation by its duly authorised representative shall have the same effect and validity as a special resolution (if approved by members representing at least 75% of the total voting rights) and as an ordinary resolution (if approved by members representing a simple majority of the total voting rights) of the company passed at a general meeting duly convened, held and constituted, and may consist of several documents in the like form, each signed by 1 or more of such members. The expressions "in writing" and "signed" include approval by electronic means by any such member.

(2) A resolution referred to in paragraph (1) may not be passed in respect of matters requiring special notice under the Act.

(3) In this regulation, “member” includes a person who has been appointed by a member of the company as its proxy or attorney or as representing a corporation or a limited liability partnership which is a member.

***Demand For Poll***

59. (1) Subject to paragraph (2), if a poll is demanded it must be taken in such manner and either at once or after an interval or adjournment or otherwise as the chairman directs.

(2) A poll demanded on the election of a chairman or on a question of adjournment must be taken immediately.

(3) The result of the poll is a resolution of the meeting at which the poll was demanded.

***Casting Vote For Chairman***

60. In the case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting at which the show of hands takes place or at which the poll is demanded is entitled to a second or casting vote.

***Entitlement To Vote***

61. (1) Subject to any rights or restrictions for the time being attached to any class or classes of shares, at meetings of members or classes of members, each member entitled to vote may vote in person or by proxy or by attorney.

(2) On a show of hands every member or representative of a member who is present in person has 1 vote.

(3) On a poll every member present in person or by proxy or by attorney or other duly authorised representative has 1 vote for each share the member holds.

***Vote By Joint Holders***

62. (1) In the case of joint holders, the vote of the senior who tenders a vote, whether in person or by proxy, is accepted to the exclusion of the votes of the other joint holders.

(2) For the purposes of paragraph (1), seniority is to be determined by the order in which the names stand in the electronic register of members.

7afb1d64769e427660b51fb5e9a52b61aa9a8bac0a10c58f5c978a856d0c7e25

***Vote By Member Of Unsound Mind***

63. A member who is mentally disordered or whose person or estate is liable to be dealt with in any way under the law relating to mental capacity may vote, whether on a show of hands or on a poll, by a person who properly has the management of the estate of that member, and any such person may vote by proxy or attorney.

***No Vote Unless Calls Are Paid***

64. No member is entitled to vote at any general meeting unless all calls or other sums presently payable by the member in respect of shares in the company have been paid.

***Disqualification Of Voter***

65. (1) No objection may be raised as to the qualification of any voter except at the meeting or adjourned meeting at which the vote objected to is given or tendered.

(2) Any objection made in due time must be referred to the chairman of the meeting, whose decision is final and conclusive.

(3) Every vote not disallowed at the meeting is valid for all purposes.

***Proxy To Be In Writing***

66. (1) The instrument appointing a proxy must be in writing, in the common or usual form and:

(a) where the appointer is a corporation or a limited liability partnership, either under common seal (if any) or under the hand of an officer or attorney duly authorised; or

(b) in any other case, under the hand of the appointer or of the attorney of the appointer duly authorised in writing.

(2) A proxy may but need not be a member of the company.

(3) The instrument appointing a proxy is treated as conferring authority to demand or join in demanding a poll.

***Form Of Proxy***

67. Where an opportunity of voting for or against a resolution is to be conferred on members, the instrument appointing a proxy may be in the following form or such other form as the board of directors may approve:

"I/We*, [name(s)], of [address(es)], being a member/members* of the above named company, appoint [name] of [address], or failing him/her*, [name] of [address], as my/our* proxy to vote for me/us* on my/our* behalf at the [annual or extraordinary, as the case may be] general meeting of the company, to be held on [date], and at any adjournment of the meeting.

Signed on [date].

This form is to be used in favour of/against* the resolution.

* Delete whichever is not applicable. [Unless otherwise instructed, the proxy may vote as he or she thinks fit.]".

***Deposit Of Proxy Form***

68. (1) The following documents must be deposited at the registered office of the company, or at such other place in Singapore as is specified in the notice convening the meeting by the time specified in paragraph (2) for the purpose of appointing a proxy:

(a) the instrument appointing a proxy; and

(b) the power of attorney or other authority, if any, under which the instrument appointing the proxy is signed, or a notarially certified copy of that power of attorney or authority.

(2) For the purposes of paragraph (1), the time is:

(a) in the case of a poll, not less than 24 hours before the time appointed for the taking of the poll; or

(b) in any other case, not less than 48 hours before the time for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote.

(3) An instrument of proxy is not valid if paragraph (1) is not complied with.

***Irregularity Of Proxy***

69. (1) Subject to paragraph (2), a vote given in accordance with the terms of an instrument of proxy or attorney is valid despite:

(a) the previous death or mental disorder of the principal;

(b) the revocation of the instrument or of the authority under which the instrument was executed; or

(c) the transfer of the share in respect of which the instrument is given.

7afb1d64769e427660b51fb5e9a52b61aa8a8bac0a10c58f5c978a856d0c7e25

(2) Paragraph (1) does not apply if an intimation in writing of such death, mental disorder, revocation, or transfer has been received by the company at its registered office before the commencement of the meeting or adjourned meeting at which the instrument is used.

## Directors: Appointment, etc.

***Number Of Directors***

70. The number of directors all of whom shall be natural persons shall not be less than 1.

***Change In Number Of Directors***

71. The company may from time to time by ordinary resolution passed at a general meeting increase or reduce the number of directors.

***Appointment Of New Directors***

72. Any person may be appointed to be a director, either to fill a casual vacancy or as an addition to the existing directors by way of:

(a) appointment by the board of directors; or

(b) an ordinary resolution passed at a general meeting,

subject to the condition that the total number of directors must not at any time exceed the number fixed in accordance with this Constitution.

***Removal Of Directors***

73. The company may by ordinary resolution remove any director before the expiration of his or her period of office, and may by an ordinary resolution appoint another person in place of the removed director.

***Remuneration Of Directors***

74. (1) The remuneration of the directors is, from time to time, to be determined by the company in a general meeting.

(2) The remuneration of the directors is treated as accruing from day to day.

(3) The directors may also be paid all travelling, hotel, and other expenses properly incurred by them in attending and returning from meetings of the directors or any committee of the directors or general meetings of the company or in connection with the business of the company.

***Qualification Shares***

75. Shareholding qualification for directors is not required.

***Vacation Of Office By Directors***

76. The office of director becomes vacant if the director:

(a) ceases to be a director by virtue of the Act;

(b) becomes bankrupt or makes any arrangement or composition with his or her creditors generally;

(c) becomes prohibited from being a director by reason of any order made under the Act;

(d) becomes disqualified from being a director by virtue of his or her disqualification or removal or the revocation of his or her appointment as a director, as the case may be, under the provisions of the Act or any other written law in Singapore;

(e) being a director of a Registered Fund Management Company as defined in the Securities and Futures (Licensing and Conduct of Business) Regulations (Cap. 289, Rg 10), he or she has been removed by the Registered Fund Management Company as director in accordance with those Regulations;

(f) becomes mentally disordered and incapable of managing himself or herself or his or her affairs or a person whose person or estate is liable to be dealt with in any way under the law relating to mental capacity;

(g) subject to section 145 of the Act, resigns his or her office by notice in writing to the company;

(h) for more than 6 months is absent without permission of the directors from meetings of the directors held during that period;

(i) is removed by the company in a general meeting pursuant to this Constitution; or

(j) is requested in writing to resign by all other company directors.

**Powers And Duties of Directors**

***Management Of Business By Directors***

77. (1) The business of a company is managed by or under the direction or supervision of the directors.

(2) The directors may exercise all the powers of a company except any power that the Act or this Constitution requires the company to exercise in a general meeting.

***Borrowing Powers***

78. Without limiting the generality of regulation 77, the directors may exercise all the powers of the company to do all or any of the following for any debt, liability, or obligation of the company or of any third party:

(a) borrow money;

(b) mortgage or charge its undertaking, property, and uncalled capital, or any part of the undertaking, property and uncalled capital; or

(c) issue debentures and other securities whether outright or as security.

***Appointment Of Power Of Attorney***

79. (1) The directors may from time to time by power of attorney appoint any corporation, firm, limited liability partnership or person or body of persons, whether nominated directly or indirectly by the directors, to be the attorney or attorneys of the company for the purposes and with the powers, authorities, and discretions (not exceeding those vested in or exercisable by the directors under this Constitution) and for a period and subject to any conditions as the directors may think fit.

(2) Any powers of attorney granted under paragraph (1) may contain provisions for the protection and convenience of persons dealing with the attorney as the directors think fit and may also authorise the attorney to delegate all or any of the powers, authorities, and discretions vested in the attorney.

***Signing Authority***

80. All cheques, promissory notes, drafts, bills of exchange, and other negotiable instruments, and all receipts for money paid to the company, must be signed, drawn, accepted, endorsed, or otherwise executed, as the case may be, as the directors from time to time determine.

***Minutes Of Meetings***

81. (1) The directors must cause minutes to be made of all of the following matters:

(a) all appointments of officers to be engaged in the management of the company's affairs;

(b) names of directors present at all meetings of the company and of the directors; and

(c) all proceedings at all meetings of the company and of the directors.

(2) The minutes referred to in paragraph (1) must be signed by the chairman of the meeting at which the proceedings were held or by the chairman of the next succeeding meeting.

(3) Where the company has only 1 member or only 1 director, a minute signed by the sole member or sole director stating that any act, matter or thing or any ordinary or special resolution has been performed or duly passed by a meeting of the company or a director's meeting, as the case may be, the act, matter or thing or any ordinary or special resolution shall for all purposes, be deemed to have been performed or passed by a meeting of the company or a director's meeting.

**Proceedings Of Directors**

***Directors' Meeting***

82. (1) The directors may meet together for the despatch of business, adjourn and otherwise regulate their meetings as they think fit.

(2) A director may at any time summon a meeting of the directors.

(3) The secretary must, on the requisition of a director, summon a meeting of the directors.

***Directors' Meeting By Video Conferencing***

83. (1) Any director or member of a committee of the directors may participate in a meeting of the directors or such committee by means of telephone and or video conferencing call or similar communications equipment whereby all persons participating in the meeting can hear each other and participation in the meeting in this manner shall be deemed to constitute in person at such meeting.

(2) A meeting referred to in paragraph (1) will be deemed to take place where the largest groups of directors present for the purposes of the meeting is assembled or, if there is no such group, where the chairman is present.

***Casting Vote Of Chairman***

84. (1) Subject to this Constitution, questions arising at any meeting of directors must be decided by a majority of votes and a determination by a majority of directors is for all purposes treated as a determination of the directors.

(2) In case of an equality of votes, the chairman of the meeting has a second or casting vote.

***Disclosure Of Directors' Interests***

85. A director may vote in respect of any transaction or proposed transaction with the company in which the director is interested, or in respect of any matter arising from such transaction or proposed transaction, provided that such interest is or has been disclosed to the company in accordance with section 156(1) of the Act.

*Quorum For Directors' Meeting*

86. The quorum necessary for the transaction of the business of the directors may be fixed by the directors, and unless so fixed is 2. In the event the company has only 1 director, then a director's resolution in writing signed by the sole director will suffice.

*Continuing Directors To Increase Numbers Of Directors*

87. (1) Subject to paragraph (2), the directors may act despite any vacancy in their body.

(2) If and so long as the number of directors is reduced below the number fixed by this Constitution as the necessary quorum of directors, the continuing directors or director may not act except for the purpose of increasing the number of directors to that number or for the purpose of summoning a general meeting of the company.

*Election Of Chairman*

88. (1) The directors may elect a chairman of their meetings and determine the period for which the chairman is to hold office.

(2) If no chairman is elected, or if at any meeting, the chairman is not present within 10 minutes after the time appointed for holding the meeting, the directors present may choose 1 of their number to be chairman of the meeting.

*Delegation Of Powers To Committee*

89. (1) The directors may delegate any of their powers to committees consisting of any member or members of their body as the directors think fit.

(2) Any committee formed under paragraph (1) must in the exercise of the delegated powers conform to any regulation that may be imposed on it by the directors.

*Election Of Committee Chairman*

90. (1) A committee may elect a chairman of its meetings.

(2) If no chairman is elected, or if at any meeting the chairman is not present within 10 minutes after the time appointed for holding the meeting, the members present may choose 1 of their number to be chairman of the meeting.

***Decisions By Committee***

91. (1) A committee may meet and adjourn as it thinks proper.

(2) Questions arising at any meeting must be determined by a majority of votes of the members present, and in the case of an equality of votes the chairman has a second or casting vote.

***Irregularities In Appointment Of Committee Members***

92. All acts done by any meeting of the directors or of a committee of directors or by any person acting as a director is as valid as if every such person had been duly appointed and was qualified to be a director, even if it is afterwards discovered that:

(a) there was some defect in the appointment of any director or person acting as a director; or

(b) the directors or person acting as a director or any of them were disqualified.

***Resolutions In Writing***

93. (1) A resolution in writing, signed by a simple majority of the directors for the time being entitled to receive notice of a meeting of the directors, is as valid and effectual as if it had been passed at a meeting of the directors duly convened and held.

(2) Any resolution in writing under paragraph (1) may consist of several documents in like form, each signed by 1 or more directors.

(3) In this regulation, the expressions “in writing” and “signed” include approval by any such director by telefax or any form of electronic communication approved by the directors for such purpose from time to time incorporating, if the directors deem necessary, the use of security and/or identification procedures and devices approved by the directors.

94. Where the company has only 1 director, the director may pass a resolution by recording it and signing the record.

## Managing Directors

***Appointment Of Managing Director***

95. The directors may from time to time appoint 1 or more of their body to the office of managing director for such period and on such terms as they think fit and, subject to the terms of any agreement entered into in any particular case, may revoke any such appointment.

***Remuneration Of Managing Director***

96. A managing director may, subject to the terms of any agreement entered into in any particular case, receive remuneration by 1 or more of the following ways as the directors may determine:

(a) salary;

(b) commission;

(c) participation in profits.

***Delegation Of Powers***

97. The directors may entrust to and confer upon a managing director any of the powers exercisable by them upon such terms and conditions and with such restrictions as they think fit, and either collaterally with or to the exclusion of their own powers, and may from time to time revoke, withdraw, alter, or vary all or any of those powers.

**Alternate Directors And Substitute Directors**

98. (1) Any director (called in this regulation the appointer) may, with the approval of the board of directors, appoint any person, whether a member of the company or not, to be an alternate or substitute director in the appointer's place for any period as the appointer thinks fit.

(2) Any person holding office as an alternate or substitute director is entitled to notice of meetings of the directors and to attend and vote at meetings of the directors, and to exercise all the powers of the appointer in the appointer's place.

(3) An alternate or substitute director:

(a) is not required to hold any shares to qualify him or her for appointment; and

(b) must vacate office if the appointer vacates office as a director or removes the appointee from office.

(4) Any appointment or removal under this regulation must be effected by notice in writing under the hand of the director making the appointment or removal.

**Associate Directors**

99. (1) The directors may from time to time appoint any person to be an associate director and may from time to time cancel any such appointment.

(2) The directors may fix, determine and vary the powers, duties and remuneration of any person appointed as an associate director.

(3) A person appointed as an associate director:

(a) is not required to hold any shares to qualify him or her for appointment; and

(b) does not have any right to attend or vote at any meeting of the directors except by the invitation and with the consent of the directors.

## Secretary

100. (1) The secretary must be appointed by the directors in accordance with the Act for any term, at any remuneration, and upon any conditions as the directors think fit.

(2) Any secretary appointed under paragraph (1) may be removed by the directors.

## Authentication

101. Any director or the secretary or any other person appointed by the directors for the purpose shall have power to authenticate any documents affecting the Constitution of the company and any resolutions passed by the company or the directors or any committee, and any books, records, documents, accounts and financial statements relating to the business of the company, and to certify copies thereof or extracts therefrom as true copies or extracts; and where any books, records, documents, accounts or financial statements are elsewhere than at the office of the company, the local manager or other officer of the company having the custody thereof shall be deemed to be a person appointed by the directors as aforesaid. A document purporting to be a copy of a resolution, or an extract from the minutes of a meeting, of the company or of the directors or any committee which is certified as aforesaid shall be conclusive evidence in favour of all persons dealing with the company upon the faith thereof that such resolutions has been duly passed, or the case may be, that any minute so extracted is a true and accurate record of proceedings at a duly constituted meeting. Any authentication or certification made pursuant to this regulation may be made by any electronic means approved by the directors for such purpose from time to time incorporating, if the directors deem necessary, the use of security and/or identification procedures and devices approved by the directors.

## Financial Statements

102. (1) The directors must:

(a) cause proper accounting and other records to be kept;

(b) distribute copies of financial statements and other documents as required by the Act; and

(c) determine whether, to what extent, at what times and places, and under what conditions or regulations the accounting and other records of the company are open to the inspection of members who are not directors.

(2) No member (who is not a director) has any right of inspecting any account or book or paper of the company except as conferred by statute or authorised by the directors or by the company in general meeting.

**Dividends And Reserves**

***Declaration Of Dividends***

103. The company in a general meeting may declare dividends, but any dividend declared must not exceed the amount recommended by the directors.

***Interim Dividends***

104. The directors may from time to time pay to the members such interim dividends as appear to the directors to be justified by the profits of the company.

***Dividends From Profits Only***

105. No dividend is to:

(a) be paid otherwise than out of profits; or

(b) bear interest against the company.

***Creation Of Reserves***

106. (1) The directors may, before recommending any dividend:

(a) set aside out of the profits of the company sums as they think proper as reserves; or

(b) carry forward any profits which they may think prudent not to divide, without placing the profits to the reserves.

(2) The reserves set aside under paragraph (1)(a):

(a) are, at the discretion of the directors, to be applied for any purpose to which the profits of the company may be properly applied; and

(b) may, pending any application under sub-paragraph (a) and at the discretion of the directors, be employed in the business of the company or be invested in any investments (other than shares in the company) as the directors may from time to time think fit.

***Entitlement Of Dividends***

107. (1) Subject to the rights of persons, if any, entitled to shares with special rights as to dividend, all dividends must be declared and paid by reference to the amounts paid or credited as paid on the shares in respect of which the dividend is paid.

(2) For the purposes of paragraph (1), no amount paid or credited as paid on a share in advance of calls is to be treated for the purposes of this regulation as paid on the share.

(3) All dividends must be apportioned and paid proportionately to the amounts paid or credited as paid on the shares during any portion or portions of the period in respect of which the dividend is paid.

(4) If any share is issued on terms providing that it ranks for dividend as from a particular date that share ranks for dividend accordingly.

***Calls To Be Deducted From Dividends***

108. The directors may deduct from any dividend payable to any member all sums of money, if any, presently payable by the member to the company on account of calls or otherwise in relation to the shares of the company.

***Dividend And Bonus From Assets***

109. (1) Any general meeting declaring a dividend or bonus may by resolution direct payment of the dividend or bonus wholly or partly by the distribution of specific assets, including:

(a) paid-up shares of any other company;

(b) debentures or debenture stock of any other company; or

(c) any combination of any specific assets, and the directors must give effect to the resolution.

(2) Where any difficulty arises with regard to a distribution directed under paragraph (1), the directors may do all or any of the following:

(a) settle the distribution as they think expedient;

(b) fix the value for distribution of the specific assets or any part of the specific assets;

(c) determine that cash payments be made to any members on the basis of the value fixed by the directors, in order to adjust the rights of all parties;

(d) vest any specific assets in trustees as may seem expedient to the directors.

7afb1d64769e427660b51fb5e9a52b61aa8a8bac0a10c58f5c978a856d0c7e25

***Payment Of Dividend In Cash***

110. (1) Any dividend, interest, or other money payable in cash in respect of shares may be paid by cheque or warrant sent through the post directed:

(a) in the case of joint holders:

(i) to the registered address of the joint holder who is first named on the electronic register of members; or

(ii) to a person or to an address as the joint holders may in writing direct; or

(b) in any other case:

(i) to the registered address of the holder; or

(ii) to a person or to an address as the holder may in writing direct.

(2) Every cheque or warrant made under paragraph (1) must be made payable to the order of the person to whom it is sent.

(3) Any 1 of 2 or more joint holders may give effectual receipts for any dividends, bonuses, or other money payable in respect of the shares held by them as joint holders.

## Capitalisation Of Profits

***Capitalisation Of Profits***

111. (1) The company in general meeting may, upon the recommendation of the directors, resolve to capitalise any part of the amount for the time being standing to the credit of any of the company's reserve accounts or to the credit of the profit and loss account or otherwise available for distribution.

(2) The amount capitalised under paragraph (1) is set free for distribution amongst the members who would have been entitled to the amount had it been distributed by way of dividend and in the same proportions subject to the following conditions:

(a) the capitalised amount must not be paid in cash; and

(b) the capitalised amount must be applied in or towards either or both of the following:

(i) paying up any amounts for the time being unpaid on any shares held by the members respectively;

(ii) paying up in full unissued shares or debentures of the company to be allotted, distributed and credited as fully paid up to and amongst such members in the same proportions.

***Appropriation Of Capitalised Profits***

112. (1) Whenever a resolution under regulation 111(1) has been passed, the directors must:

(a) make all appropriations and applications of the undivided profits resolved to be capitalised by the resolution;

(b) make all allotments and issues of fully-paid shares or debentures, if any; and

(c) do all acts and things required to give effect to the resolution.

(2) The directors have full power to:

(a) make provision by the issue of fractional certificates or by payment in cash or otherwise as they think fit for the case of shares or debentures becoming distributable in fractions; and

(b) authorise any person to enter on behalf of all the members entitled to the distribution into an agreement with the company providing:

(i) for the allotment to the members respectively, credited as fully paid up, of any further shares or debentures to which they may be entitled upon the capitalisation; or

(ii) for the payment up by the company on the members' behalf of the amounts or any part of the amounts remaining unpaid on their existing shares by the application of their respective proportions of the profits resolved to be capitalised,

and any agreement made under such authority is effective and binding on all members entitled to the distribution.

## Notices

***Service By Post***

113. (1) A notice may be given by the company to any member either personally or by sending it by post to the member:

(a) at the member's registered address; or

(b) if the member has no registered address in Singapore, to the address, if any, in Singapore supplied by the member to the company for the giving of notices to the member.

(2) Where a notice is sent by post, service of the notice is treated as effected by properly addressing, prepaying, and posting a letter containing the notice.

(3) Where a notice is sent by post, service of the notice is treated as effected:

(a) in the case of a notice of a meeting, on the day after the date of its posting; and

(b) in any other case, at the time at which the letter would be delivered in the ordinary course of post.

***Service By Electronic Means***

114. (1) A notice may also be sent or supplied by the company by electronic means to a member who has agreed generally or specifically that the notice may be given by electronic means and who has not revoked that agreement.

(2) Where the notice is given by electronic means, service of the notice is treated as effected properly by sending or supplying it to an address specified for the purpose by the member generally or specifically.

***Notice To Joint Holders***

115. A notice may be given by the company to the joint holders of a share by giving the notice to the joint holder first named in the electronic register of members in respect of the share.

***Notice To Persons In Event Of Deceased Or Bankrupt Member***

116. (1) A notice may be given by the company to the persons entitled to a share in consequence of the death or bankruptcy of a member by sending it through the post in a prepaid letter addressed to the persons by:

(a) name;

(b) the title of representatives of the deceased, or assignee of the bankrupt; or

(c) any like description.

(2) The notice referred to in paragraph (1) may be given:

(a) at the address, if any, in Singapore supplied for the purpose by the persons claiming to be so entitled; or

(b) if no address in Singapore has been supplied, by giving the notice in any manner in which notice might have been given if the death or bankruptcy had not occurred.

*Notice Of General Meeting*

117. (1) Notice of every general meeting must be given in any manner authorised in regulations 113 to 116 to:

(a) every member;

(b) every person entitled to a share in consequence of the death or bankruptcy of a member who, but for his or her death or bankruptcy, would be entitled to receive notice of the meeting; and

(c) the auditor for the time being of the company.

(2) No other person is entitled to receive notices of general meetings.

**Winding Up**

118. (1) If the company is wound up, the liquidator may, with the sanction of a special resolution of the company:

(a) divide amongst the members in kind the whole or any part of the assets of the company, whether they consist of property of the same kind or not;

(b) set a value as the liquidator considers fair upon the property referred to in sub-paragraph (a);

(c) determine how the division of property is to be carried out as between the members or different classes of members; and

(d) vest the whole or any part of the assets of the company in trustees upon such trusts for the benefit of the contributories as the liquidator thinks fit.

(2) No member is compelled to accept any shares or other securities on which there is any liability.

**Indemnity**

*Indemnity For Officers*

119. Every officer of the company is to be indemnified out of the assets of the company against any liability (other than any liability referred to in section 172B (1)(a) or (b) of the Act) incurred by the officer to a person other than the company attaching to the officer in connection with any negligence, default, breach of duty or breach of trust.

***Indemnity For Auditors***

120. Every auditor is to be indemnified out of the assets of the company against any liability incurred by the auditor in defending any proceedings, whether civil or criminal, in which judgment is given in the auditor's favour or in which the auditor is acquitted or in connection with any application under the Act in which relief is granted to the auditor by the Court in respect of any negligence, default, breach of duty or breach of trust.

# Exhibit 22

Superseded by NOE G000821467

**CONSTITUTION FOR A**
**PRIVATE COMPANY LIMITED BY SHARES**

CONSTITUTION OF
BYJU'S GLOBAL PTE. LTD.

1. The name of the company is BYJU'S GLOBAL PTE. LTD.

2. The registered office of the company is situated in the Republic of Singapore.

3. The liability of the members is limited.

4. The share capital of the company in the original or any increased capital may be divided into several classes, and there may be attached thereto respectively any preferential, deferred or other special rights, privileges, conditions or restrictions as to dividends, capital, voting or otherwise.

DocuSign Envelope ID: 6D960F57-6616-4347-ABD2-8E961F3E16C2

I/We, the persons(s) whose name(s), address(es) and occupation(s) is/are set out in this Constitution, desire to form a company in pursuance of this Constitution and I/we agree to take the number of shares in the capital of the company set out against my/our respective name(s).

| Name(s), address(es) and description of subscriber(s) | Number of shares taken by each subscriber | Class of shares taken by each subscriber |
|---|---|---|
| BYJU RAVEENDRAN<br>43, 14TH MAIN,<br>15TH CROSS, 4TH SECTOR,<br>H S R LAYOUT,<br>BENGALURU, KAR,<br>560102 INDIA<br><br>DIRECTOR | DocuSigned by:<br>F7F0B417823E40F...<br>1000<br>(One Thousand) | Ordinary |
| Total Number Of Shares Taken | 1000<br>(One Thousand) | |

Dated this:- 06/05/2022

Witness to the above signature(s):-

ALEX TEO WEE JIN

30 CECIL STREET,
#19-08 PRUDENTIAL TOWER
SINGAPORE 049712

X

## Interpretation

5. (1) In this Constitution:

"Act" means the Companies Act (Cap. 50) of Singapore, or any other statutory modification, amendment or re-enactment thereof for the time being in force or any and every other act for the time being in force concerning companies and affecting the company and any reference to any provision of the Act is that provision as so modified, amended or re-enacted or contained in any such subsequent Companies Act;

"board of directors" means the board of directors of the company;

"directors" means the directors of the company;

"electronic register of members" means the electronic register of members kept and maintained by the Registrar for private companies under section 196A of the Act;

"general meeting" means a general meeting of the company;

"in writing" means written or produced by any substitute for writing or partly one and partly another and shall include (except where otherwise expressly specified in this Constitution or the context otherwise requires, and subject to any limitations, conditions or restrictions contained in the Act and every other act for the time being in force concerning companies and affecting the company) any representation or reproduction of words, symbols or other information which may be displayed in a visible form, whether in a physical document or in an electronic communication or form or otherwise howsoever;

"member" means a member of the company, excluding the company in relation to shares held by it as treasury shares;

"Registrar" has the same meaning as in section 4(1) of the Act;

"secretary" means a secretary of the company appointed under section 171 of the Act; and

"treasury shares" has the same meaning as in section 4(1) of the Act.

(2) In this Constitution:

(a) references to "holders" of shares or a class of shares shall, except where otherwise expressly provided in this Constitution, exclude the company in relation to shares held by it as treasury shares, and "holding" and "held" shall be construed accordingly;

(b) expressions referring to writing include, unless the contrary intention appears, references to printing, lithography, photography and other modes of representing or reproducing words in a visible form;

(c) words or expressions contained in this Constitution must be interpreted in accordance with the provisions of the Interpretation Act (Cap. 1), and of the Act in force as at the date at which this Constitution becomes binding on the company; and

(d) the expression "electronic communication" shall have the meaning ascribed to it in the Act.

**Private Company**

6. The company is a private company and, accordingly:

(a) the right to transfer shares in the company shall be restricted in the manner hereinafter appearing; and

(b) the number of its members (counting joint holders of shares as one person and not counting any person in the employment of the company or any of its subsidiaries or any person who while previously in the employment of the company or any of its subsidiaries was and thereafter has continued to be a member of the company) shall be limited to 50.

**Share Capital And Variation Of Rights**

***Issue Of Shares***

7. (1) Without prejudice to any special rights previously conferred on the holders of any existing shares or class of shares but subject to the Act, shares in the company may be issued by the directors.

(2) Shares referred to in paragraph (1) may be issued with preferred, deferred, or other special rights or restrictions, whether in regard to dividend, voting, return of capital, or otherwise, as the directors, subject to any ordinary resolution of the company, determine.

(3) The company may issue shares for which no consideration is payable to the company.

***Preference Shares***

8. Subject to the Act, any preference shares may, with the sanction of an ordinary resolution, be issued on the terms that they are, or at the option of the company are liable, to be redeemed.



Authentication no.: M26079309A

*Variation Of Rights Attached To Shares*

9. (1) If at any time the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of the shares of that class) may, whether or not the company is being wound up, be varied with:

(a) the consent in writing of the holders of 75% of the issued shares of that class; or

(b) the sanction of a special resolution passed at a separate general meeting of the holders of the shares of that class.

(2) The provisions of this Constitution relating to general meetings apply with the necessary modifications to every separate general meeting of the holders of the shares of the class referred to in paragraph (1), except that:

(a) the necessary quorum is at least 2 persons holding or representing by proxy one-third of the issued shares of that class; and

(b) any holder of shares of that class present in person or by proxy may demand a poll.

(3) Section 184 of the Act applies with the necessary modifications to every special resolution passed at a separate general meeting of the holders of the shares of the class under paragraph (1).

*Deemed Variation Of Rights*

10. The rights conferred upon the holders of the shares of any class issued with preferred or other rights are, unless otherwise expressly provided by the terms of issue of the shares of that class, treated as being varied by the creation or issue of further shares which rank equally with the shares of that class.

*Payment Of Commission On Shares*

11. The company may on any issue of shares pay any brokerage that is permitted by law.

*Shares Held In Trust And Joint Holders*

12. (1) Except as required by law, no person is to be recognised by the company as holding any share upon any trust.

(2) Except as required by law or by this Constitution, the company is not bound by or compelled in any way to recognise:

(a) any equitable, contingent, future or partial interest in any share or unit of a share; or

(b) any other rights in respect of any share or unit of share, other than the registered holder's absolute right to the entirety of the share or unit of share.

(3) Paragraph (2) applies even when the company has notice of any interest or right referred to in paragraph (2)(a) or (b).

(4) If 2 or more persons are registered as joint holders of any share, any 1 of such persons may give effectual receipts for any dividend payable in respect of such share and the joint holders of a share shall, subject to the provisions of the Act, be severally as well as jointly liable for the payment of all instalments and calls and interest due in respect of such shares.

***Issue Of Share Certificate***

13. (1) Every person whose name is entered as a member in the electronic register of members is entitled without payment to receive a certificate in accordance with the Act.

(2) In respect of a share or shares held jointly by several persons, the company is not bound to issue more than 1 certificate, and delivery of a certificate for a share to 1 of several joint holders is sufficient delivery to all such holders.

(3) If any certificate be lost or destroyed or stolen, then upon proof thereof to the satisfaction of the directors and on such indemnity as the directors deem adequate being given, and on the payment of an administrative fee as the directors may determine, a new certificate shall be given to the person entitled to such lost or destroyed or stolen certificate.

**Lien**

***Lien On Partly Paid Shares***

14. (1) The company has a first and paramount lien on:

(a) every share (that is not a fully paid share) for all money (whether presently payable or not) called or payable at a fixed time in respect of that share; and

(b) all shares (other than fully paid shares) registered in the name of a single person for all money presently payable by the person or the person's estate to the company.

(2) The company's lien, if any, on a share extends to all dividends payable on the share.

(3) The directors may at any time declare any share to be wholly or partly exempt from paragraph (1) or (2), or both.

*Sale Of Shares On Which Lien Exists*

15. (1) Subject to paragraph (2), the company may sell, in any manner as the directors think fit, any shares on which the company has a lien.

(2) No sale may be made under paragraph (1) unless:

(a) a sum in respect of which the lien exists is presently payable;

(b) a notice in writing, stating and demanding payment of the amount in respect of which the lien exists as is presently payable, has been given by the company to the registered holder for the time being of the share, or the person entitled to the share by reason of the death or bankruptcy of the registered holder of the share; and

(c) a period of 14 days has expired after the giving of the notice in sub-paragraph (b).

*Purchase Of Shares On Which Lien Exists*

16. (1) To give effect to any sale of shares under regulation 15, the directors may authorise any person to transfer the shares sold to the purchaser of the shares.

(2) Subject to regulations 26, 27and 28, the company must lodge a notice of transfer of shares in relation to the shares sold to the purchaser with the Registrar.

(3) The purchaser of any shares referred to in paragraph (1) is not bound to see to the application of the purchase money, and the purchaser's title to the shares is not affected by any irregularity or invalidity in the proceedings with respect to the sale of the shares.

*Proceeds Of Sale Of Shares On Which Lien Exists*

17. (1) The proceeds of any sale of shares under regulation 15 received by the company must be applied in payment of any part of the amount in respect of which the lien exists as is presently payable.

(2) Any remaining proceeds from the sale of shares must (subject to any lien for sums not presently payable as existed upon the shares before the sale but which have become presently payable) be paid to the person entitled to the shares at the date of the sale.

**Calls On Shares**

*Calls On Shares*

18. (1) The directors may from time to time make calls upon the members in respect of any money unpaid on their shares, other than in accordance with the conditions of the allotment of the shares, if both of the following conditions are met:

(a) no call is payable at less than 1 month after the date fixed for the payment of the last preceding call; and

(b) at least 14 days' notice specifying the time or times and the place of payment is given by the company to the members.

(2) Each member must pay to the company at the time or times and place specified in the notice referred to in paragraph (1)(b) the amount called on the member's shares.

(3) The directors may revoke or postpone a call.

***When Is A Call Made***

19. (1) A call is treated as having been made at the time when the resolution of the directors authorising the call was passed.

(2) A call may be required to be paid by instalments.

***Joint Liability For Payment Of Calls***

20. The joint holders of a share are jointly and severally liable to pay all calls in respect of the share.

***Interest On Unpaid Calls***

21. (1) If a sum called in respect of a share is not paid before or on the day appointed for payment of the sum, the person from whom the sum is due must pay interest on the sum for the period beginning on the day appointed for payment of the sum to the time of actual payment of the sum at such rate not exceeding 8% per annum as the directors may determine.

(2) The directors may waive, wholly or in part, the payment of the interest referred to in paragraph (1).

***Deemed Call***

22. (1) Any sum which, by the terms of issue of a share, becomes payable on allotment or at any fixed date is to be treated as a call duly made and payable on the date on which, by the terms of issue of the share, the sum becomes payable.

(2) In the case of non-payment of any sum referred to in paragraph (1), all the provisions of this Constitution as to payment of interest and expenses and forfeiture apply as if the sum had become payable by virtue of a call duly made and notified.

### *Differentiation On Calls*

23. The directors may, on the issue of shares, differentiate between the holders as to the amount of calls to be paid and the times of payment.

### *Advance Payment Of Call*

24. (1) The directors may, if they think fit, receive in advance from any member (if the member is willing) all or any part of the money uncalled and unpaid upon any shares held by the member.

(2) Upon the company receiving the money referred to in paragraph (1), the directors may (until the amount would, but for the advance, become payable) pay interest to the member at such rate not exceeding (unless the company in general meeting otherwise directs) 8% per annum as may be agreed upon between the directors and the member.

## Transfer Of Shares

### *Transfer Of Shares*

25. (1) Subject to this Constitution, any member may transfer all or any of the member's shares by instrument in writing in any usual or common form or in any other form which the directors may approve.

(2) The instrument of transfer must be executed by or on behalf of the transferor and the transferor remains the holder of the shares transferred until the name of the transferee is entered in the electronic register of members.

### *Instrument Of Transfer*

26. (1) To enable the company to lodge a notice of transfer of shares with the Registrar under section 128(1)(a) of the Act, the following items in relation to the transfer of shares must be delivered by the transferor to the registered office of the company:

(a) the instrument of transfer;

(b) a fee not exceeding $1 as the directors from time to time may require;

(c) the certificate of the shares to which the instrument of transfer relates; and

(d) any other evidence as the directors may reasonably require to show the right of the transferor to make the transfer.

(2) Upon receipt of the items referred to in paragraph (1), the company must, subject to regulation 27, lodge with the Registrar a notice of transfer of shares in accordance with section 128 of the Act and retain the instrument of transfer referred to in regulation 25.



Authentication no.: M26079309A

***Refusal To Register Transfer***

27. The directors may decline to lodge a notice of transfer of shares with the Registrar if:

(a) the shares are not fully paid shares;

(b) the directors do not approve of the transferee; or

(c) the company has a lien on the shares.

***Suspension Of Share Transfer***

28. The lodging of any notice of transfer of shares with the Registrar for the purpose of updating the electronic register of members may be suspended at any time and for any period as the directors may from time to time determine, but not for more than a total of 30 days in any year.

**Transmission Of Shares**

***Transmission Of Shares***

29. (1) Where a sole holder of shares of the company dies, the company may recognise only the legal personal representatives of the deceased as having any title to the deceased's interest in the shares.

(2) Where a joint holder of shares of the company dies, the company may recognise only the survivor or survivors of the deceased as having any title to the deceased's interest in the shares.

(3) Nothing in paragraph (2) releases the estate of the deceased from any liability in respect of any share which had been jointly held by the deceased with other persons.

***Registration Of Shares***

30. (1) Any person becoming entitled to a share in consequence of the death or bankruptcy of a member may, upon such evidence being produced as may from time to time properly be required by the directors, elect to:

(a) be registered as holder of the share in the electronic register of members; or

(b) nominate another person to be registered as the transferee of the share in the electronic register of members.

(2) Despite paragraph (1), the directors have the same right to decline or suspend the lodging of a notice of transfer of shares with the Registrar for the purpose of updating the electronic register of members under regulations 27 and 28 as they would have had in the case of a transfer of the share by the member referred to in paragraph (1) before the death or bankruptcy of that member.

***Procedure For Registering Transmission Shares***

31. (1) If a person becoming entitled to a share in consequence of the death or bankruptcy of a member elects to be registered as the holder of the share in the electronic register of members, that person must deliver or send to the company a notice in writing signed by the person stating that the person elects to be registered in the electronic register of members as the holder of the share.

(2) If a person becoming entitled to a share in consequence of the death or bankruptcy of a member elects to nominate another person to be registered as the transferee of the share in the electronic register of members, the person must execute a transfer of the share to that other person.

(3) All the limitations, restrictions, and provisions of this Constitution relating to the right to transfer and the lodging of a notice of transfer by the company in relation to any transfer of shares are applicable to any notice referred to in paragraph (1) or transfer referred to in paragraph (2), as if the death or bankruptcy of the member concerned had not occurred and the notice or transfer were a transfer signed by that member.

***Rights Of Legal Representative To Be Secured As Registered Holder***

32. (1) Where the registered holder of any share dies or becomes bankrupt, the personal representative of the registered holder or the assignee of the registered holder's estate, as the case may be, is, upon the production of such evidence as may from time to time be properly required by the directors, entitled to the same dividends and other advantages, and to the same rights (whether in relation to meetings of the company, or to voting, or otherwise), that the registered holder would have been entitled to if the registered holder had not died or become bankrupt.

(2) Where 2 or more persons are jointly entitled to any share in consequence of the death of the registered holder, they are, for the purposes of this Constitution, treated as joint holders of the share.

**Forfeiture Of Shares**

***Payment Of Call***

33. If a member fails to pay any call or instalment of a call on the day appointed for payment of the call or instalment of the call, the directors may, as long as any part of the call or instalment remains unpaid, serve a notice on that member requiring payment of the unpaid part of the call or instalment, together with any interest which may have accrued.

### *Notice Requiring Payment Of Call*

34. The notice under regulation 33must:

(a) name a day (not earlier than 14 days after the date of service of the notice) on or before which the payment required by the notice is to be made; and

(b) state that, in the event of non-payment at or before the time appointed, the shares in respect of which the call was made is liable to be forfeited.

### *Forfeiture Of Shares*

35. (1) If the requirements of a notice referred to in regulation 34are not complied with, any share in respect of which the notice was given may, at any time after the notice is given but before the payment required by the notice has been made, be forfeited by a resolution of the directors passed for the purpose of forfeiting the share.

(2) Forfeiture under paragraph (1) includes all dividends declared in respect of the forfeited shares and not paid before the forfeiture.

### *Sale Of Forfeited Shares*

36. A forfeited share may be sold or otherwise disposed of on any terms and in any manner as the directors think fit, and, at any time before a sale or disposition the forfeiture may be cancelled on any terms as the directors think fit.

### *Liability In Respect Of Forfeited Shares*

37. (1) A person whose shares have been forfeited ceases to be a member in respect of the forfeited shares.

(2) Despite paragraph (1), the person referred to in that paragraph remains liable to pay to the company all money which, at the date of forfeiture, was payable by the person to the company in respect of the shares (together with interest at the rate of 8% per annum beginning on the date of forfeiture on the money for the time being unpaid if the directors think fit to enforce payment of such interest).

### *Statutory Declaration On Forfeited Shares*

38. A statutory declaration in writing that the declarant is a director or the secretary of the company, and that a share in the company has been forfeited on a date stated in the declaration, is conclusive evidence of the facts stated in the declaration as against all persons claiming to be entitled to the share.

*Re-Issue Of Forfeited Shares*

39. (1) The company may receive the consideration, if any, given for a forfeited share on any sale or disposition of the forfeited share and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of (called in this regulation the transferee).

(2) Upon the company executing a transfer of the share in favour of the transferee, the company must lodge a notice of transfer of share with the Registrar under section 128 of the Act for the purpose of updating the electronic register of members to reflect the transferee as the registered owner of the forfeited share.

(3) The transferee is not bound to see to the application of the purchase money, if any, and the transferee's title to the share is not affected by any irregularity or invalidity in the proceedings with respect to the forfeiture, sale, or disposal of the share.

*Applicability Of Provisions On Forfeiture*

40. The provisions of this Constitution as to forfeiture apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time as if the sum had been payable by virtue of a call duly made and notified.

**Conversion Of Shares Into Stock**

*Conversion Of Shares Into Stock*

41. The company may by ordinary resolution passed at a general meeting convert any paid-up shares into stock and reconvert any stock into paid-up shares.

*Transfer Of Stock*

42. (1) Subject to paragraph (2), the holders of stock may transfer the stock or any part of the stock in the same manner, and subject to the same regulations, by which the shares from which the stock arose might, prior to conversion, have been transferred.

(2) The directors may from time to time fix the minimum amount of stock transferable and restrict or forbid the transfer of fractions of that minimum.

*Rights And Privileges Of Stock Holders*

43. (1) Subject to paragraph (2), the holders of stock have, according to the amount of the stock held by the holders, the same rights, privileges and advantages in relation to dividends, voting at meetings of the company and other matters as if they held the shares from which the stock arose.



Authentication no.: M26079309A

(2) No privilege or advantage (except participation in the dividends and profits of the company and in the assets on winding up) is to be conferred by any aliquot part of stock on the holder of such stock which would not, if existing in shares, have conferred that privilege or advantage on the holder of such stock.

***Applicability Of Provisions On Paid-Up Shares***

44. Provisions of this Constitution applicable to paid-up shares apply to stock, and references to "share" and "shareholder" in this Constitution are to be read as if they were references to "stock" and "stockholder", respectively.

## Alteration Of Capital

***Alteration Of Capital***

45. The company may from time to time by ordinary resolution do any of the following:

(a) increase the share capital by such sum to be divided into shares of such amount as the resolution shall prescribe;

(b) consolidate and divide all or any of its share capital;

(c) subdivide its shares or any of them such that in the subdivision the proportion between the amount paid and the amount, if any, unpaid on each reduced share is the same as it was in the case of the share from which the reduced share is derived; or

(d) cancel the number of shares which at the date of the passing of the resolution have not been taken or agreed to be taken by any person or which have been forfeited, and diminish the amount of its share capital by the number of the shares so cancelled.

***Pre-Emptive Rights***

46. (1) Subject to any direction to the contrary that may be given by the company in a general meeting, all new shares must, before issue, be offered to all persons who, as at the date of the offer, are entitled to receive notices of general meetings from the company, in proportion, or as nearly as the circumstances admit, to the amount of the existing shares to which they are entitled.

(2) The offer must be made by notice specifying the number of shares offered, and limiting a time within which the offer, if not accepted, is treated to be declined.

(3) After the expiration of the time referred to in paragraph (2), or upon the person to whom the offer is made declining the shares offered, the directors may dispose of those shares in any manner as they think is the most beneficial to the company.

(4) The directors may dispose of any new shares which (by reason of the ratio which the new shares bear to shares held by persons entitled to an offer of new shares) cannot, in the opinion of the directors, be conveniently offered under this regulation.



Authentication no.: M26079309A

*Reduction Of Share Capital*

47. (1) The company may, by special resolution and with any consent required by law, reduce its share capital or any reserve in any manner.

(2) Subject to the Act, the company may purchase or otherwise acquire any of its issued shares on such terms and in such manner as the company may from time to time think fit and in the manner prescribed by the Act. If required by the Act, any share which is so purchased or acquired by the company, unless held as treasury shares in accordance with the Act, shall be deemed to be cancelled immediately on the purchase or acquisition by the company. On the cancellation of any share as aforesaid, the rights and privileges attached to that share shall expire. In any other instance, the company may hold or deal with any such share (including treasury shares) which is so purchased or acquired by it in accordance with the Act.

*Treasury Shares*

48. (1) Shares that the company purchases or otherwise acquires may be held as treasury shares in accordance with the provisions of this Constitution and the Act.

(2) Where the shares purchased or otherwise acquired are held as treasury shares by the company, the company shall be entered in the electronic register of members as the member holding the treasury shares.

(3) The company shall not exercise any right in respect of the treasury shares other than as provided by the Act. Subject thereto, the company may hold or deal with its treasury shares in the manner authorised by, or prescribed pursuant to, the Act.

**General Meeting**

*Convening Of General Meeting*

49. (1) An annual general meeting of the company must be held in accordance with the provisions of the Act.

(2) All general meetings other than the annual general meetings are called extraordinary general meetings.

*Requisitions For Extraordinary General Meeting*

50. (1) An extraordinary general meeting may be requisitioned by:

(a) any director, whenever the director thinks fit; or

(b) any requisitionist as provided for by the Act.

(2) Upon a requisition being made under paragraph (1), an extraordinary general meeting must be convened.



Authentication no.: M26079309A

*Notice Calling General Meeting*

51. (1) Subject to the provisions of the Act relating to special resolutions and any agreement amongst persons who are entitled to receive notices of general meetings from a company, at least 14 days' notice (exclusive of the day on which the notice is served or treated to be served, but inclusive of the day for which notice is given) of any general meeting must be given to persons entitled to receive notices of general meetings from the company.

(2) A notice of a general meeting must specify the following:

(a) the place at which the general meeting is held;

(b) the date and time of the general meeting; and

(c) in case of special business to be transacted at the general meeting, the general nature of that business.

*Special Business*

52. (1) All business that is transacted at an extraordinary general meeting is special business.

(2) All business that is transacted at an annual general meeting is special business, except:

(a) the declaration of a dividend;

(b) the consideration of the financial statements, the reports of the auditors and the statements of the directors;

(c) the fixing of the remuneration of the directors; and

(d) the appointment and fixing of the remuneration of the auditors.

**Proceedings At General Meetings**

*Quorum*

53. (1) No business is to be transacted at any general meeting unless a quorum of members is present at the time when the meeting proceeds to business.

(2) Save as herein otherwise provided and subject to the provisions in the Act on wholly owned subsidiaries, two members present in person shall form a quorum. In the event the company has only 1 member, the company may pass a resolution by the member recording the resolution and signing the record.

(3) In this regulation, “member” includes a person attending as a proxy or as representing a corporation or a limited liability partnership which is a member.

***Adjourned General Meeting***

54. (1) The chairman may, with the consent of a general meeting at which a quorum is present, and must if so directed by a general meeting, adjourn the general meeting from time to time and from place to place.

(2) No business is to be transacted at any adjourned meeting other than the business left unfinished at the general meeting from which the adjournment took place (called in this regulation the original general meeting).

(3) There is no need to give any notice of an adjourned meeting or of the business to be transacted at an adjourned meeting unless the adjourned meeting is to be held more than 30 days after the date of the original general meeting.

***Insufficient Quorum***

55. (1) If within half an hour after the time appointed for a general meeting a quorum is not present, the meeting:

(a) in the case where the meeting is convened upon the requisition of members, is dissolved; or

(b) in any other case, is adjourned to the same day in the next week at the same time and place, or to another day and at another time and place as the directors may determine.

(2) If within half an hour after the time appointed for an adjourned meeting a quorum is not present, the member or members present in person or by proxy, attorney or representative shall form a quorum.

***Chairman***

56. The chairman of a general meeting is:

(a) where the board of directors has appointed a chairman amongst the directors, the chairman;

(b) where:

(i) the chairman of the board of directors is unwilling to act as the chairman of the general meeting;

(ii) the chairman is not present within 15 minutes after the time appointed for the holding of the general meeting; or

(iii) the board of directors has not appointed a chairman amongst the directors,

the member elected by the members present for the purpose of being the chairman of the general meeting; or

(c) where such general meeting is an adjourned meeting with only 1 member present in person, that member.

In this regulation, "member" includes a person attending as a proxy or as representing a corporation or a limited liability partnership which is a member.

***Voting On Resolutions***

57. (1) At any general meeting, a resolution put to the vote of the meeting must be decided on a show of hands unless a poll is (before or on the declaration of the result of the show of hands) demanded:

(a) by the chairman;

(b) by at least 2 members present in person or by proxy;

(c) by any member or members present in person or by proxy and representing not less than 5% of the total voting rights of all the members having the right to vote at the meeting; or

(d) by a member or members holding shares in the company conferring a right to vote at the meeting being shares on which an aggregate sum has been paid up equal to not less than 5% of the total sum paid up on all the shares conferring that right.

(2) Unless a poll is demanded, a declaration by the chairman that a resolution has on a show of hands been carried or carried unanimously, or by a particular majority, or lost, and an entry to that effect in the book containing the minutes of the proceedings of the company is conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against the resolution.

(3) The demand for a poll may be withdrawn.

***Members' Resolutions in Writing***

58. (1) Subject to paragraph (2), a resolution in writing signed by members of the company entitled to vote or being a corporation by its duly authorised representative shall have the same effect and validity as a special resolution (if approved by members representing at least 75% of the total voting rights) and as an ordinary resolution (if approved by members representing a simple majority of the total voting rights) of the company passed at a general meeting duly convened, held and constituted, and may consist of several documents in the like form, each signed by 1 or more of such members. The expressions "in writing" and "signed" include approval by electronic means by any such member.

(2) A resolution referred to in paragraph (1) may not be passed in respect of matters requiring special notice under the Act.

(3) In this regulation, “member” includes a person who has been appointed by a member of the company as its proxy or attorney or as representing a corporation or a limited liability partnership which is a member.

***Demand For Poll***

59. (1) Subject to paragraph (2), if a poll is demanded it must be taken in such manner and either at once or after an interval or adjournment or otherwise as the chairman directs.

(2) A poll demanded on the election of a chairman or on a question of adjournment must be taken immediately.

(3) The result of the poll is a resolution of the meeting at which the poll was demanded.

***Casting Vote For Chairman***

60. In the case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting at which the show of hands takes place or at which the poll is demanded is entitled to a second or casting vote.

***Entitlement To Vote***

61. (1) Subject to any rights or restrictions for the time being attached to any class or classes of shares, at meetings of members or classes of members, each member entitled to vote may vote in person or by proxy or by attorney.

(2) On a show of hands every member or representative of a member who is present in person has 1 vote.

(3) On a poll every member present in person or by proxy or by attorney or other duly authorised representative has 1 vote for each share the member holds.

***Vote By Joint Holders***

62. (1) In the case of joint holders, the vote of the senior who tenders a vote, whether in person or by proxy, is accepted to the exclusion of the votes of the other joint holders.

(2) For the purposes of paragraph (1), seniority is to be determined by the order in which the names stand in the electronic register of members.



Authentication no.: M26079309A

***Vote By Member Of Unsound Mind***

63. A member who is mentally disordered or whose person or estate is liable to be dealt with in any way under the law relating to mental capacity may vote, whether on a show of hands or on a poll, by a person who properly has the management of the estate of that member, and any such person may vote by proxy or attorney.

***No Vote Unless Calls Are Paid***

64. No member is entitled to vote at any general meeting unless all calls or other sums presently payable by the member in respect of shares in the company have been paid.

***Disqualification Of Voter***

65. (1) No objection may be raised as to the qualification of any voter except at the meeting or adjourned meeting at which the vote objected to is given or tendered.

(2) Any objection made in due time must be referred to the chairman of the meeting, whose decision is final and conclusive.

(3) Every vote not disallowed at the meeting is valid for all purposes.

***Proxy To Be In Writing***

66. (1) The instrument appointing a proxy must be in writing, in the common or usual form and:

(a) where the appointer is a corporation or a limited liability partnership, either under common seal (if any) or under the hand of an officer or attorney duly authorised; or

(b) in any other case, under the hand of the appointer or of the attorney of the appointer duly authorised in writing.

(2) A proxy may but need not be a member of the company.

(3) The instrument appointing a proxy is treated as conferring authority to demand or join in demanding a poll.

***Form Of Proxy***

67. Where an opportunity of voting for or against a resolution is to be conferred on members, the instrument appointing a proxy may be in the following form or such other form as the board of directors may approve:



Authentication no.: M26079309A

"I/We*, [name(s)], of [address(es)], being a member/members* of the above named company, appoint [name] of [address], or failing him/her*, [name] of [address], as my/our* proxy to vote for me/us* on my/our* behalf at the [annual or extraordinary, as the case may be] general meeting of the company, to be held on [date], and at any adjournment of the meeting.

Signed on [date].

This form is to be used in favour of/against* the resolution.

* Delete whichever is not applicable. [Unless otherwise instructed, the proxy may vote as he or she thinks fit.]".

***Deposit Of Proxy Form***

68. (1) The following documents must be deposited at the registered office of the company, or at such other place in Singapore as is specified in the notice convening the meeting by the time specified in paragraph (2) for the purpose of appointing a proxy:

(a) the instrument appointing a proxy; and

(b) the power of attorney or other authority, if any, under which the instrument appointing the proxy is signed, or a notarially certified copy of that power of attorney or authority.

(2) For the purposes of paragraph (1), the time is:

(a) in the case of a poll, not less than 24 hours before the time appointed for the taking of the poll; or

(b) in any other case, not less than 48 hours before the time for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote.

(3) An instrument of proxy is not valid if paragraph (1) is not complied with.

***Irregularity Of Proxy***

69. (1) Subject to paragraph (2), a vote given in accordance with the terms of an instrument of proxy or attorney is valid despite:

(a) the previous death or mental disorder of the principal;

(b) the revocation of the instrument or of the authority under which the instrument was executed; or

(c) the transfer of the share in respect of which the instrument is given.

(2) Paragraph (1) does not apply if an intimation in writing of such death, mental disorder, revocation, or transfer has been received by the company at its registered office before the commencement of the meeting or adjourned meeting at which the instrument is used.

## Directors: Appointment, etc.

***Number Of Directors***

70. The number of directors all of whom shall be natural persons shall not be less than 1.

***Change In Number Of Directors***

71. The company may from time to time by ordinary resolution passed at a general meeting increase or reduce the number of directors.

***Appointment Of New Directors***

72. Any person may be appointed to be a director, either to fill a casual vacancy or as an addition to the existing directors by way of:

(a) appointment by the board of directors; or

(b) an ordinary resolution passed at a general meeting,

subject to the condition that the total number of directors must not at any time exceed the number fixed in accordance with this Constitution.

***Removal Of Directors***

73. The company may by ordinary resolution remove any director before the expiration of his or her period of office, and may by an ordinary resolution appoint another person in place of the removed director.

***Remuneration Of Directors***

74. (1) The remuneration of the directors is, from time to time, to be determined by the company in a general meeting.

(2) The remuneration of the directors is treated as accruing from day to day.

(3) The directors may also be paid all travelling, hotel, and other expenses properly incurred by them in attending and returning from meetings of the directors or any committee of the directors or general meetings of the company or in connection with the business of the company.

***Qualification Shares***

75. Shareholding qualification for directors is not required.

***Vacation Of Office By Directors***

76. The office of director becomes vacant if the director:

(a) ceases to be a director by virtue of the Act;

(b) becomes bankrupt or makes any arrangement or composition with his or her creditors generally;

(c) becomes prohibited from being a director by reason of any order made under the Act;

(d) becomes disqualified from being a director by virtue of his or her disqualification or removal or the revocation of his or her appointment as a director, as the case may be, under the provisions of the Act or any other written law in Singapore;

(e) being a director of a Registered Fund Management Company as defined in the Securities and Futures (Licensing and Conduct of Business) Regulations (Cap. 289, Rg 10), he or she has been removed by the Registered Fund Management Company as director in accordance with those Regulations;

(f) becomes mentally disordered and incapable of managing himself or herself or his or her affairs or a person whose person or estate is liable to be dealt with in any way under the law relating to mental capacity;

(g) subject to section 145 of the Act, resigns his or her office by notice in writing to the company;

(h) for more than 6 months is absent without permission of the directors from meetings of the directors held during that period;

(i) is removed by the company in a general meeting pursuant to this Constitution; or

(j) is requested in writing to resign by all other company directors.

**Powers And Duties of Directors**

***Management Of Business By Directors***

77. (1) The business of a company is managed by or under the direction or supervision of the directors.

(2) The directors may exercise all the powers of a company except any power that the Act or this Constitution requires the company to exercise in a general meeting.



Authentication no.: M26079309A

### *Borrowing Powers*

78. Without limiting the generality of regulation 77, the directors may exercise all the powers of the company to do all or any of the following for any debt, liability, or obligation of the company or of any third party:

(a) borrow money;

(b) mortgage or charge its undertaking, property, and uncalled capital, or any part of the undertaking, property and uncalled capital; or

(c) issue debentures and other securities whether outright or as security.

### *Appointment Of Power Of Attorney*

79. (1) The directors may from time to time by power of attorney appoint any corporation, firm, limited liability partnership or person or body of persons, whether nominated directly or indirectly by the directors, to be the attorney or attorneys of the company for the purposes and with the powers, authorities, and discretions (not exceeding those vested in or exercisable by the directors under this Constitution) and for a period and subject to any conditions as the directors may think fit.

(2) Any powers of attorney granted under paragraph (1) may contain provisions for the protection and convenience of persons dealing with the attorney as the directors think fit and may also authorise the attorney to delegate all or any of the powers, authorities, and discretions vested in the attorney.

### *Signing Authority*

80. All cheques, promissory notes, drafts, bills of exchange, and other negotiable instruments, and all receipts for money paid to the company, must be signed, drawn, accepted, endorsed, or otherwise executed, as the case may be, as the directors from time to time determine.

### *Minutes Of Meetings*

81. (1) The directors must cause minutes to be made of all of the following matters:

(a) all appointments of officers to be engaged in the management of the company's affairs;

(b) names of directors present at all meetings of the company and of the directors; and

(c) all proceedings at all meetings of the company and of the directors.

(2) The minutes referred to in paragraph (1) must be signed by the chairman of the meeting at which the proceedings were held or by the chairman of the next succeeding meeting.



Authentication no.: M26079309A

(3) Where the company has only 1 member or only 1 director, a minute signed by the sole member or sole director stating that any act, matter or thing or any ordinary or special resolution has been performed or duly passed by a meeting of the company or a director's meeting, as the case may be, the act, matter or thing or any ordinary or special resolution shall for all purposes, be deemed to have been performed or passed by a meeting of the company or a director's meeting.

## Proceedings Of Directors

***Directors' Meeting***

82. (1) The directors may meet together for the despatch of business, adjourn and otherwise regulate their meetings as they think fit.

(2) A director may at any time summon a meeting of the directors.

(3) The secretary must, on the requisition of a director, summon a meeting of the directors.

***Directors' Meeting By Video Conferencing***

83. (1) Any director or member of a committee of the directors may participate in a meeting of the directors or such committee by means of telephone and or video conferencing call or similar communications equipment whereby all persons participating in the meeting can hear each other and participation in the meeting in this manner shall be deemed to constitute in person at such meeting.

(2) A meeting referred to in paragraph (1) will be deemed to take place where the largest groups of directors present for the purposes of the meeting is assembled or, if there is no such group, where the chairman is present.

***Casting Vote Of Chairman***

84. (1) Subject to this Constitution, questions arising at any meeting of directors must be decided by a majority of votes and a determination by a majority of directors is for all purposes treated as a determination of the directors.

(2) In case of an equality of votes, the chairman of the meeting has a second or casting vote.

***Disclosure Of Directors' Interests***

85. (1) A director must not vote in respect of any transaction or proposed transaction with the company in which the director is interested, or in respect of any matter arising from such transaction or proposed transaction.



Authentication no.: M26079309A

(2) If a director referred to in paragraph (1) does vote in respect of any transaction or proposed transaction referred to in that paragraph, that director's vote must not be counted.

***Quorum For Directors' Meeting***

86. The quorum necessary for the transaction of the business of the directors may be fixed by the directors, and unless so fixed is 2. In the event the company has only 1 director, then a director's resolution in writing signed by the sole director will suffice.

***Continuing Directors To Increase Numbers Of Directors***

87. (1) Subject to paragraph (2), the directors may act despite any vacancy in their body.

(2) If and so long as the number of directors is reduced below the number fixed by this Constitution as the necessary quorum of directors, the continuing directors or director may not act except for the purpose of increasing the number of directors to that number or for the purpose of summoning a general meeting of the company.

***Election Of Chairman***

88. (1) The directors may elect a chairman of their meetings and determine the period for which the chairman is to hold office.

(2) If no chairman is elected, or if at any meeting, the chairman is not present within 10 minutes after the time appointed for holding the meeting, the directors present may choose 1 of their number to be chairman of the meeting.

***Delegation Of Powers To Committee***

89. (1) The directors may delegate any of their powers to committees consisting of any member or members of their body as the directors think fit.

(2) Any committee formed under paragraph (1) must in the exercise of the delegated powers conform to any regulation that may be imposed on it by the directors.

***Election Of Committee Chairman***

90. (1) A committee may elect a chairman of its meetings.

(2) If no chairman is elected, or if at any meeting the chairman is not present within 10 minutes after the time appointed for holding the meeting, the members present may choose 1 of their number to be chairman of the meeting.



Authentication no.: M26079309A

*Decisions By Committee*

91. (1) A committee may meet and adjourn as it thinks proper.

(2) Questions arising at any meeting must be determined by a majority of votes of the members present, and in the case of an equality of votes the chairman has a second or casting vote.

*Irregularities In Appointment Of Committee Members*

92. All acts done by any meeting of the directors or of a committee of directors or by any person acting as a director is as valid as if every such person had been duly appointed and was qualified to be a director, even if it is afterwards discovered that:

(a) there was some defect in the appointment of any director or person acting as a director; or

(b) the directors or person acting as a director or any of them were disqualified.

*Resolutions In Writing*

93. (1) A resolution in writing, signed by a simple majority of the directors for the time being entitled to receive notice of a meeting of the directors, is as valid and effectual as if it had been passed at a meeting of the directors duly convened and held.

(2) Any resolution in writing under paragraph (1) may consist of several documents in like form, each signed by 1 or more directors.

(3) In this regulation, the expressions "in writing" and "signed" include approval by any such director by telefax or any form of electronic communication approved by the directors for such purpose from time to time incorporating, if the directors deem necessary, the use of security and/or identification procedures and devices approved by the directors.

94. Where the company has only 1 director, the director may pass a resolution by recording it and signing the record.

**Managing Directors**

*Appointment Of Managing Director*

95. The directors may from time to time appoint 1 or more of their body to the office of managing director for such period and on such terms as they think fit and, subject to the terms of any agreement entered into in any particular case, may revoke any such appointment.



Authentication no.: M26079309A

*Remuneration Of Managing Director*

96. A managing director may, subject to the terms of any agreement entered into in any particular case, receive remuneration by 1 or more of the following ways as the directors may determine:

(a) salary;

(b) commission;

(c) participation in profits.

*Delegation Of Powers*

97. The directors may entrust to and confer upon a managing director any of the powers exercisable by them upon such terms and conditions and with such restrictions as they think fit, and either collaterally with or to the exclusion of their own powers, and may from time to time revoke, withdraw, alter, or vary all or any of those powers.

**Alternate Directors And Substitute Directors**

98. (1) Any director (called in this regulation the appointer) may, with the approval of the board of directors, appoint any person, whether a member of the company or not, to be an alternate or substitute director in the appointer's place for any period as the appointer thinks fit.

(2) Any person holding office as an alternate or substitute director is entitled to notice of meetings of the directors and to attend and vote at meetings of the directors, and to exercise all the powers of the appointer in the appointer's place.

(3) An alternate or substitute director:

(a) is not required to hold any shares to qualify him or her for appointment; and

(b) must vacate office if the appointer vacates office as a director or removes the appointee from office.

(4) Any appointment or removal under this regulation must be effected by notice in writing under the hand of the director making the appointment or removal.

**Associate Directors**

99. (1) The directors may from time to time appoint any person to be an associate director and may from time to time cancel any such appointment.

(2) The directors may fix, determine and vary the powers, duties and remuneration of any person appointed as an associate director.

(3) A person appointed as an associate director:

(a) is not required to hold any shares to qualify him or her for appointment; and

(b) does not have any right to attend or vote at any meeting of the directors except by the invitation and with the consent of the directors.

**Secretary**

100. (1) The secretary must be appointed by the directors in accordance with the Act for any term, at any remuneration, and upon any conditions as the directors think fit.

(2) Any secretary appointed under paragraph (1) may be removed by the directors.

**Authentication**

101. Any director or the secretary or any other person appointed by the directors for the purpose shall have power to authenticate any documents affecting the Constitution of the company and any resolutions passed by the company or the directors or any committee, and any books, records, documents, accounts and financial statements relating to the business of the company, and to certify copies thereof or extracts therefrom as true copies or extracts; and where any books, records, documents, accounts or financial statements are elsewhere than at the office of the company, the local manager or other officer of the company having the custody thereof shall be deemed to be a person appointed by the directors as aforesaid. A document purporting to be a copy of a resolution, or an extract from the minutes of a meeting, of the company or of the directors or any committee which is certified as aforesaid shall be conclusive evidence in favour of all persons dealing with the company upon the faith thereof that such resolutions has been duly passed, or the case may be, that any minute so extracted is a true and accurate record of proceedings at a duly constituted meeting. Any authentication or certification made pursuant to this regulation may be made by any electronic means approved by the directors for such purpose from time to time incorporating, if the directors deem necessary, the use of security and/or identification procedures and devices approved by the directors.

**Financial Statements**

102. (1) The directors must:

(a) cause proper accounting and other records to be kept;

(b) distribute copies of financial statements and other documents as required by the Act; and

(c) determine whether, to what extent, at what times and places, and under what conditions or regulations the accounting and other records of the company are open to the inspection of members who are not directors.

(2) No member (who is not a director) has any right of inspecting any account or book or paper of the company except as conferred by statute or authorised by the directors or by the company in general meeting.

## Dividends And Reserves

***Declaration Of Dividends***

103. The company in a general meeting may declare dividends, but any dividend declared must not exceed the amount recommended by the directors.

***Interim Dividends***

104. The directors may from time to time pay to the members such interim dividends as appear to the directors to be justified by the profits of the company.

***Dividends From Profits Only***

105. No dividend is to:

(a) be paid otherwise than out of profits; or

(b) bear interest against the company.

***Creation Of Reserves***

106. (1) The directors may, before recommending any dividend:

(a) set aside out of the profits of the company sums as they think proper as reserves; or

(b) carry forward any profits which they may think prudent not to divide, without placing the profits to the reserves.

(2) The reserves set aside under paragraph (1)(a):

(a) are, at the discretion of the directors, to be applied for any purpose to which the profits of the company may be properly applied; and

(b) may, pending any application under sub-paragraph (a) and at the discretion of the directors, be employed in the business of the company or be invested in any investments (other than shares in the company) as the directors may from time to time think fit.



Authentication no.: M26079309A

### *Entitlement Of Dividends*

107. (1) Subject to the rights of persons, if any, entitled to shares with special rights as to dividend, all dividends must be declared and paid by reference to the amounts paid or credited as paid on the shares in respect of which the dividend is paid.

(2) For the purposes of paragraph (1), no amount paid or credited as paid on a share in advance of calls is to be treated for the purposes of this regulation as paid on the share.

(3) All dividends must be apportioned and paid proportionately to the amounts paid or credited as paid on the shares during any portion or portions of the period in respect of which the dividend is paid.

(4) If any share is issued on terms providing that it ranks for dividend as from a particular date that share ranks for dividend accordingly.

### *Calls To Be Deducted From Dividends*

108. The directors may deduct from any dividend payable to any member all sums of money, if any, presently payable by the member to the company on account of calls or otherwise in relation to the shares of the company.

### *Dividend And Bonus From Assets*

109. (1) Any general meeting declaring a dividend or bonus may by resolution direct payment of the dividend or bonus wholly or partly by the distribution of specific assets, including:

(a) paid-up shares of any other company;

(b) debentures or debenture stock of any other company; or

(c) any combination of any specific assets, and the directors must give effect to the resolution.

(2) Where any difficulty arises with regard to a distribution directed under paragraph (1), the directors may do all or any of the following:

(a) settle the distribution as they think expedient;

(b) fix the value for distribution of the specific assets or any part of the specific assets;

(c) determine that cash payments be made to any members on the basis of the value fixed by the directors, in order to adjust the rights of all parties;

(d) vest any specific assets in trustees as may seem expedient to the directors.



Authentication no.: M26079309A

***Payment Of Dividend In Cash***

110. (1) Any dividend, interest, or other money payable in cash in respect of shares may be paid by cheque or warrant sent through the post directed:

(a) in the case of joint holders:

(i) to the registered address of the joint holder who is first named on the electronic register of members; or

(ii) to a person or to an address as the joint holders may in writing direct; or

(b) in any other case:

(i) to the registered address of the holder; or

(ii) to a person or to an address as the holder may in writing direct.

(2) Every cheque or warrant made under paragraph (1) must be made payable to the order of the person to whom it is sent.

(3) Any 1 of 2 or more joint holders may give effectual receipts for any dividends, bonuses, or other money payable in respect of the shares held by them as joint holders.

**Capitalisation Of Profits**

***Capitalisation Of Profits***

111. (1) The company in general meeting may, upon the recommendation of the directors, resolve to capitalise any part of the amount for the time being standing to the credit of any of the company's reserve accounts or to the credit of the profit and loss account or otherwise available for distribution.

(2) The amount capitalised under paragraph (1) is set free for distribution amongst the members who would have been entitled to the amount had it been distributed by way of dividend and in the same proportions subject to the following conditions:

(a) the capitalised amount must not be paid in cash; and

(b) the capitalised amount must be applied in or towards either or both of the following:

(i) paying up any amounts for the time being unpaid on any shares held by the members respectively;

(ii) paying up in full unissued shares or debentures of the company to be allotted, distributed and credited as fully paid up to and amongst such members in the same proportions.

*Appropriation Of Capitalised Profits*

112. (1) Whenever a resolution under regulation 111(1) has been passed, the directors must:

(a) make all appropriations and applications of the undivided profits resolved to be capitalised by the resolution;

(b) make all allotments and issues of fully-paid shares or debentures, if any; and

(c) do all acts and things required to give effect to the resolution.

(2) The directors have full power to:

(a) make provision by the issue of fractional certificates or by payment in cash or otherwise as they think fit for the case of shares or debentures becoming distributable in fractions; and

(b) authorise any person to enter on behalf of all the members entitled to the distribution into an agreement with the company providing:

(i) for the allotment to the members respectively, credited as fully paid up, of any further shares or debentures to which they may be entitled upon the capitalisation; or

(ii) for the payment up by the company on the members' behalf of the amounts or any part of the amounts remaining unpaid on their existing shares by the application of their respective proportions of the profits resolved to be capitalised,

and any agreement made under such authority is effective and binding on all members entitled to the distribution.

**Notices**

*Service By Post*

113. (1) A notice may be given by the company to any member either personally or by sending it by post to the member:

(a) at the member's registered address; or



Authentication no.: M26079309A

(b) if the member has no registered address in Singapore, to the address, if any, in Singapore supplied by the member to the company for the giving of notices to the member.

(2) Where a notice is sent by post, service of the notice is treated as effected by properly addressing, prepaying, and posting a letter containing the notice.

(3) Where a notice is sent by post, service of the notice is treated as effected:

(a) in the case of a notice of a meeting, on the day after the date of its posting; and

(b) in any other case, at the time at which the letter would be delivered in the ordinary course of post.

***Service By Electronic Means***

114. (1) A notice may also be sent or supplied by the company by electronic means to a member who has agreed generally or specifically that the notice may be given by electronic means and who has not revoked that agreement.

(2) Where the notice is given by electronic means, service of the notice is treated as effected properly by sending or supplying it to an address specified for the purpose by the member generally or specifically.

***Notice To Joint Holders***

115. A notice may be given by the company to the joint holders of a share by giving the notice to the joint holder first named in the electronic register of members in respect of the share.

***Notice To Persons In Event Of Deceased Or Bankrupt Member***

116. (1) A notice may be given by the company to the persons entitled to a share in consequence of the death or bankruptcy of a member by sending it through the post in a prepaid letter addressed to the persons by:

(a) name;

(b) the title of representatives of the deceased, or assignee of the bankrupt; or

(c) any like description.

(2) The notice referred to in paragraph (1) may be given:

(a) at the address, if any, in Singapore supplied for the purpose by the persons claiming to be so entitled; or

(b) if no address in Singapore has been supplied, by giving the notice in any manner in which notice might have been given if the death or bankruptcy had not occurred.

*Notice Of General Meeting*

117. (1) Notice of every general meeting must be given in any manner authorised in regulations 113 to 116 to:

(a) every member;

(b) every person entitled to a share in consequence of the death or bankruptcy of a member who, but for his or her death or bankruptcy, would be entitled to receive notice of the meeting; and

(c) the auditor for the time being of the company.

(2) No other person is entitled to receive notices of general meetings.

**Winding Up**

118. (1) If the company is wound up, the liquidator may, with the sanction of a special resolution of the company:

(a) divide amongst the members in kind the whole or any part of the assets of the company, whether they consist of property of the same kind or not;

(b) set a value as the liquidator considers fair upon the property referred to in sub-paragraph (a);

(c) determine how the division of property is to be carried out as between the members or different classes of members; and

(d) vest the whole or any part of the assets of the company in trustees upon such trusts for the benefit of the contributories as the liquidator thinks fit.

(2) No member is compelled to accept any shares or other securities on which there is any liability.

**Indemnity**

*Indemnity For Officers*

119. Every officer of the company is to be indemnified out of the assets of the company against any liability (other than any liability referred to in section 172B (1)(a) or (b) of the Act) incurred by the officer to a person other than the company attaching to the officer in connection with any negligence, default, breach of duty or breach of trust.

***Indemnity For Auditors***

120. Every auditor is to be indemnified out of the assets of the company against any liability incurred by the auditor in defending any proceedings, whether civil or criminal, in which judgment is given in the auditor's favour or in which the auditor is acquitted or in connection with any application under the Act in which relief is granted to the auditor by the Court in respect of any negligence, default, breach of duty or breach of trust.

# Exhibit 23

ACCOUNTING AND CORPORATE REGULATORY AUTHORITY

> How-to Guides > Setting Up a Local Company > Appointing Directors, Company Secretary and Other Key Personnel

# Appointing Directors, Company Secretary and Other Key Personnel

The next step is to appoint officers for your company. All companies must appoint at least one director and one company secretary.

Before submitting your application to incorporate a company, you will need the following personal particulars and contact details of the appointed officers:

- NRIC and full name
- Nationality
- Contact information (telephone number and e-mail address)
- Residential address

For NRIC and some FIN holders, there is no need to provide personal information (e.g. nationality and residential address as reflected in the NRIC and FIN) as these will be obtained from the relevant government agencies.

Officers of a company include the following:

## Company director

## Nominee director

## Company secretary

## Auditor (mandatory unless exempted)

## Chief executive officer (optional)

## Managing director (optional)

## Option to register a Contact Address

## Requirement for officers' endorsement in Bizfile

## Changes to appointments

## You May Also Like

- Before You Start
- Filing Annual Returns
- Foreigners registering a business in Singapore
- Buying Information
- Setting up and maintaining Register of Registrable Controllers (RORC)

Did you find this page useful?

# Exhibit 24

Tel: +91 80 6811 1600
www.bdo.in

SV Tower, No. 27, Floor 4
80 Feet Road, Koramangala
Bengaluru 560095, INDIA

**INDEPENDENT AUDITORS' REPORT**

**To the Board of Directors of BYJU'S Alpha, Inc.**

**Report on the Audit of the Special Purpose Financial Statements**

**Opinion**

We have audited the Special Purpose financial statements of BYJU'S Alpha, Inc. ('the Company'), which comprise the Balance Sheet as at March 31, 2022, and the related Statement of Income (including other Comprehensive Income), Statement of Changes in Stockholders' Equity and Statement of Cash Flows for the year then ended, and notes to the financial statements, including a Summary of Significant Accounting Policies. In our opinion, the accompanying special purpose financial statements present fairly, in all material respects, the financial position of the Company as at March 31, 2022, and the results of its operations and its cash flows for the period then ended in accordance with the accounting principles generally accepted in the United States of America ("US GAAP").

**Basis for Opinion**

We conducted our audit in accordance with International Standards on Auditing ("ISAs"). Our responsibilities under those standards are further described in the Auditor's Responsibilities for the Audit of the special purpose financial statements section of our report. We are independent of the Company in accordance with the relevant ethical requirements relating to our audits, which include the International Ethics Standards Board for Accountants' Code of Ethics for Professional Accountants (IESBA Code), and we have fulfilled our other ethical responsibilities in accordance with these requirements and the IESBA Code. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

**Emphasis of Matter - Basis of Accounting and Restriction on Distribution and Use**

We draw attention to Note 1 to the special purpose financial statements, which describes the basis of accounting. The special purpose financial statements are prepared to assist the Company in complying with the financial reporting in accordance with U.S. generally accepted accounting principles ("U.S. GAAP"). As a result, the special purpose financial statements may not be suitable for another purpose.

Our report is intended solely for the use of Management and should not be distributed to or used by any other parties. BDO India LLP shall not be liable to the Company or to any other concerned for any claims, liabilities or expenses relating to this assignment. Accordingly, we do not accept or assume any liability or any duty of care for any other purpose or to any other person to whom this report is shown or into whose hands it may come without our prior consent in writing.

Our opinion is not modified in respect of this matter.

### Material Uncertainty related to Going Concern

As at March 31, 2022, the accumulated losses of the Company exceeds the stockholder's equity by USD 32,204,198. Further, the Company has an outstanding loan of USD 1,204,291,667 (including interest amounting to USD 7,291,667) as at March 31, 2022. These factors are indicative of the existence of a uncertainty that may cast significant doubt on the Company's ability to continue as a going concern, which is dependent on establishing profitable operations and obtaining continuing financial support from its shareholders. The Company has received a support letter from Ultimate Parent Company to meet any shortfall in its fund requirement to meet its liabilities in future. These mitigating factors have been more fully discussed in note 1 to the accompanying special purpose financial statements, in view of which the accompanying special purpose financial statements have been prepared under the going concern assumption, and consequently, no adjustments have been made to the carrying values or classification of balance sheet accounts.

Our opinion is not qualified in respect of above matter.

### Responsibilities of the Management and Those Charged with Governance for the Special Purpose Financial Statements

Management is responsible for the preparation and fair presentation of the special purpose financial statements in accordance with US GAAP and the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of special purpose financial statements that are free from material misstatement, whether due to fraud or error.

In preparing the special purpose financial statements, management is responsible for assessing the Company's ability to continue as a going concern, disclosing as applicable, matters related to going concern and using the going concern basis of accounting unless management either intends to liquidate the Company or to cease operations, or has no realistic alternative but to do so.

Management is responsible for overseeing the Company's financial reporting process.

### Auditors' Responsibilities for the Audit of the Special Purpose Financial Statements

Our objectives are to obtain reasonable assurance about whether the special purpose financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes our opinion. Reasonable assurance is a high level of assurance but is not absolute assurance and therefore is not a guarantee that an audit conducted in accordance with ISAs will always detect a material misstatement when it exists. The risk of not detecting a material misstatement resulting from fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control.

BDO India LLP, an Indian limited liability partnership firm, is a member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

Misstatements are considered material if there is a substantial likelihood that, individually or in the aggregate, they would influence the judgment made by a reasonable user based on the special purpose financial statements.

We give in "Annexure A" a detailed description of Auditor's responsibilities for Audit of the special purpose financial statements.

BDO India LLP

**BDO India LLP**
**Mumbai, India**

**November 22, 2022**

BDO India LLP, an Indian limited liability partnership firm, is a member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

BDO

**ANNEXURE A TO THE INDEPENDENT AUDITOR'S REPORT ON EVEN DATE ON THE SPCIAL PURPOSE FINANCIAL STATEMENTS OF BYJU'S ALPHA, INC.**

**Auditor's Responsibilities for the Audit of the Special Purpose Financial Statements**

As part of an audit in accordance with ISAs, we:

- Exercise professional judgment and maintain professional skepticism throughout the audit.
- Identify and assess the risks of material misstatement of the special purpose financial statements, whether due to fraud or error, design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the special purpose financial statements.
- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of Company's internal controls. Accordingly, no such opinion is expressed.
- Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the special purpose financial statements.
- Conclude on the appropriateness of management's use of the going concern basis of accounting and, based on the audit evidence obtained, whether a material uncertainty exists related to events or conditions that may cast significant doubt on the Company's ability to continue as a going concern. If we conclude that a material uncertainty exists, we are required to draw attention in our auditor's report to the related disclosures in the special purpose financial statements or, if such disclosures are inadequate, to modify our opinion. Our conclusions are based on the audit evidence obtained up to the date of our auditor's report. However, future events or conditions may cause the Company to cease to continue as a going concern.
- Evaluate the overall presentation, structure and content of the special purpose financial statements, including the disclosures, and whether the special purpose financial statements represent the underlying transactions and events in a manner that achieves fair presentation.

We communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit and significant audit findings, including any significant deficiencies in internal control that we identify during our audit.

We also provide those charged with governance with a statement that we have complied with relevant ethical requirements regarding independence, and to communicate with them all relationships and other matters that may reasonably be thought to bear on our independence, and where applicable, related safeguards.

BDO India LLP

**BDO India LLP**
**Mumbai, India**

**November 22, 2022**

BDO India LLP, an Indian limited liability partnership firm, is a member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

**FINANCIAL STATEMENTS**

BYJU'S Alpha, Inc.
Period ended March 31, 2022

With Independent Auditor's Report

BYJU'S Alpha, Inc.

Balance sheet

| | Note | | As of March 31, 2022 |
|---|---|---|---|
| **Assets** | | | |
| *Current assets* | | | |
| Cash and cash equivalents | 4 | $ | 10,49,87,487 |
| Current investments | 5 | $ | 76,00,00,000 |
| Accounts receivable | | | 16,09,085 |
| Other current assets | 6 | | 2,22,16,144 |
| ***Total current assets*** | | **$** | **88,88,12,716** |
| Investment in associate | 7 | | 1,27,07,236 |
| Loans and advances | 8 | | 24,34,04,300 |
| ***Total assets*** | | **$** | **1,14,49,24,253** |
| **Liabilities and stockholders' equity** | | | |
| *Current liabilities* | | | |
| Accounts payable | | | 3,08,880 |
| Current portion of long-term debt | | | 1,20,00,000 |
| Accrued liabilities | 10 | | 80,07,529 |
| ***Total current liabilities*** | | **$** | **2,03,16,409** |
| Long-term debt, net of current portion | 9 | | 1,15,68,12,042 |
| ***Total liabilities*** | | **$** | **1,17,71,28,450** |
| ***Stockholders' equity*** | | | |
| Common stock | 11 | | 1,00,000 |
| Retained earnings | | | (3,23,04,198) |
| Total stockholders' equity | | | (3,22,04,198) |
| ***Total liabilities & stockholders' equity*** | | **$** | **1,14,49,24,253** |

*See accompanying notes.*

BYJU'S Alpha, Inc.

Statement of Income

| | | For the period ended March 31, 2022 |
|---|---|---|
| Revenues | 12 | $ 2,67,053 |
| Cost of revenues | | 2,00,290 |
| Gross margin | | 66,763 |
| Legal and professional charges | | 47,05,362 |
| Income/(Loss) from operations | | 46,38,599 |
| Other income, net | 13 | 1,37,775 |
| Guarantee fee | | 1,05,890 |
| Interest income | 15 | 13,42,032 |
| Interest expenses, net | 14 | 2,90,22,686 |
| Income/(Loss) before provision for income taxes | | (3,22,87,369) |
| Income tax expense | | - |
| Share of loss of associate company | | 16,829 |
| Net Income/(Loss) | | **$ (3,23,04,198)** |

*See accompanying notes*.

BYJU'S Alpha, Inc.

Statements of Stockholders' Equity

| | Common Stock | | Retained Earnings | | Total |
|---|---|---|---|---|---|
| | Shares | $ | | | |
| Capital infused on issue of common stock | 1,000 | 1,00,000 | | | **1,00,000** |
| Net Income for the period | | | (3,23,04,198) | | **(3,23,04,198)** |
| Other comprehensive income /(loss), net | | | - | | **-** |
| **Balance as of March 31, 2022** | **1,000** | **1,00,000** | **(3,23,04,198)** | **-** | **(3,22,04,198)** |

*See accompanying notes*.

BYJU'S Alpha, Inc.

Statements of Cash Flows

| | | Period ended March 31, 2022 |
|---|---|---|
| **Cash flows from operating activities** | | |
| Net income | | (3,23,04,198) |
| Adjustments to reconcile net income to net cash provided by operating activities: | | |
| Non-cash adjustments | | |
| Share of loss of associate company | | 16,829 |
| Interest income | | (13,42,032) |
| | $ | **(3,36,29,401)** |
| Changes in operating assets and liabilities: | | |
| Accounts receivable | | (2,67,053) |
| Other assets | | (2,22,16,144) |
| Accounts payable and accrued liabilities | | 1,01,64,900 |
| Net cash provided by operating activities | $ | **(4,59,47,697)** |
| **Cash flows from investing activities** | | |
| Loan given to fellow subsidiaries | | (24,34,04,300) |
| Payment made for investment in associate | | (1,27,24,065) |
| Interest received | | |
| Payment for investment in MMF | | (1,01,00,00,000) |
| Proceeds from sale of MMF | | 25,00,00,000 |
| Proceeds from sale of short term investments | | |
| Net cash (used in)/provided by investing activities | $ | **(1,01,61,28,365)** |
| **Cash flows from financing activities** | | |
| Issue of common stock | | 1,00,000 |
| Repayment of long term debt | | (30,00,000) |
| Proceeds from long term debt | | 1,20,00,00,000 |
| Debt cost incurred on facilitating Loan | | (3,00,36,450) |
| Net cash used in financing activities | $ | **1,16,70,63,550** |
| Effect of exchange rate changes on cash | | |
| Net increase in cash and cash equivalents and restricted cash during the year | | 10,49,87,487 |
| Cash, cash equivalents and restricted cash at the beginning of the year | | 0 |
| **Cash, cash equivalents and restricted cash at the end of the year** | $ | **10,49,87,487** |

**Supplementary information**

| | | |
|---|---|---|
| Cash paid for interest expense | $ | 1,91,66,667 |
| Cash paid for income taxes, net | $ | - |

*See accompanying notes.*

BYJU'S Alpha, Inc.

Notes to Financial Statements
March 31, 2022

**1. Company Overview and Summary of Significant Accounting Policies**

**Company Overview**

Byjus Alpha Inc. (the "Company") was incorporated on September 27, 2021 under the laws of the State of Delaware. The company act as a repository of all international brands/Trademarks and in turn license it out to all other associate companies. The company raise funds and provide support to other associate companies. The Company is headquartered in the U.S.

**Basis of Presentation of Financial Statements**

The accompanying financial data has been prepared in accordance with U.S. generally accepted accounting principles

The preparation of financial statements in conformity with U.S. GAAP requires management to make estimates and assumptions that affect the amounts reported in the financial statements and accompanying notes. The Company bases its estimates and judgments on historical experience and on various other assumptions that it believes are reasonable under the circumstances. The amount of assets and liabilities reported on the Company's balance sheets and the amounts of revenue and expenses reported for each of its periods presented are affected by estimates and assumptions, which are used for, but not limited to, stock-based compensation, allowance for doubtful debts, determination of impairment of long-lived assets, income taxes, hedge accounting for derivatives and other contingencies and commitments. Management believes that the estimates used in the preparation of the financial statements are prudent and reasonable. Although these estimates are based upon management's best knowledge of current events and actions, actual results could differ from those estimates.

The Company has evaluated subsequent events through November 22, 2022 the date the financial statements were available to be issued.

As at March 31, 2022, the accumulated losses of the Company exceeds the stockholder's equity by USD 32,204,198. Further, the Company has an outstanding loan of USD 1,204,291,667 (including interest amounting to USD 7,291,667) as at March 31, 2022. These factors are indicative of the existence of a uncertainty that may cast significant doubt on the Company's ability to continue as a going concern, which is dependent on establishing profitable operations and obtaining continuing financial support from its shareholders. The Company has a liquid assets of USD 868,496,308 as at March 31, 2022 and the Company has received a support letter from Ultimate Parent Company to meet any shortfall in its fund requirement to meet its liabilities in future. Accordingly, no adjustments have been made to the carrying values or classification of balance sheet accounts.

BYJU'S Alpha, Inc.

Notes to Financial Statements
March 31, 2022

**Functional Currency and Exchange Rate Translation**

The financial statements are reported in U.S. Dollars, which is the Company's functional currency.

Foreign currency transactions are translated into the functional currency at the rates of exchange prevailing on the date of the respective transactions. Monetary assets and liabilities denominated in currencies other than the functional currency are translated into the respective functional currency at the rates of exchange prevailing at the balance sheet date. The gains or losses resulting from foreign currency transactions are included in the statements of income within other income/(expense), net.

**Short Term Investments**
The Company has classified short term investments in Government Money Market funds as available-for-sale. financial assets and are within level 1 in the fair value hierarchy, these investments are measured at fair value, with unrealized gains or losses, net of tax, reported as a component of accumulated other comprehensive income/(loss) in the Statement Of Equity. securities are included in the statement of income within other income/ (expense), net. The Realized gains or losses and decline in value judged to be other than temporary on available-for sale cost of securities sold or disposed is determined on First-in-First-out (FIFO) method.

**Revenue Recognition**

In May 2014, the Financial Accounting Standards Board ("FASB") issued Accounting Standards Update ("ASU") No. 2014-09, Revenue from Contracts with Customers ("Topic 606"). Topic 606 applies to Company's license income and generally requires recognition of revenue to depict the transfer of promised goods or services to customers in an amount that reflects the consideration the entity expects to be entitled to in exchange for those goods or services. Pursuant to Topic 606, revenues are recognised upon the application of the foillowing five steps.

- Identification of the contract, or contracts, with a customer
- Identification of the performance obligations in the contract
- Determination of the transaction price
- Allocation of the transaction price to the performance obligations in the contract
- Recognition of revenue when, or as performance obligations are satisfied.

License revenue is recognised at 2% of the sub-licensee's aggregate revenues of their business derived from products or services that bear any of the Licensed Trademarks of the Company, minus any applicable taxes on those revenues but before any refunds or credits are given to their customers and without any other deductions.

Revenue is measured as the amount of consideration the Company expects to receive in exchange for providing the above services. The Company estimates different forms of variable consideration based on current conditions and contractual obligations. Revenue is recorded net of volume discounts, work credits, cash discounts, rebates and similar charges. Sales and other tax amounts collected from customers for remittance to governmental authorities are excluded from revenue.

**Other income**
*Interest Income*

Interest income is recognized on a time proportion basis taking into account the amount outstanding and the
*Dividend income*
Dividend income is recognized when the right to receive dividend is established

BYJU'S Alpha, Inc.

Notes to Financial Statements
March 31, 2022

**Accounts Receivable**

The Company extends credit to clients based upon management’s assessment of their creditworthiness. Accounts receivable are recorded at the invoiced amount, net of allowances for bad and doubtful debts, and do not bear interest.

The Company follows ASU 2016-13, Financial Instruments - Credit Losses, which requires the Company to make an estimate of current expected credit losses ('CECL') for allowance for doubtful accounts and unbilled receivables based upon assessment of various factors, including historical experience, the age of the accounts receivable balances, credit quality of customers, current economic conditions, reasonable and supportable forecasts of future economic conditions, and other factors that may affect the ability to collect from customers.

The Company also makes specific provision where there are evidences that indicate that a particular receivable balance might turn bad. The creation of this provision is based on appraising the accounts receivable on individual basis.

As a practical expedient, the Company uses a provision matrix to determine CECL allowance on portfolio of its accounts receivable. The provision matrix is based on its historically observed default rates over the expected life of the accounts receivable and is adjusted for forward-looking estimates. At every reporting date, the historical observed default rates are updated and changes in the forward-looking estimates are analysed.

The CECL allowance is a valuation account that is to be deducted from the amortized cost basis of the financial asset to present the net carrying value at the amount expected to be collected on the financial asset. The CECL allowance is recorded as selling, general and administrative expenses on the Company's statements of income. Account balances are charged off against the allowance after all means of collection have been exhausted and the potential for recovery is considered remote.

**Financial Instruments**

**Recognition**

All financial instruments are initially measured at their fair value and are subsequently classified either at amortized cost, at fair value through statement of profit and loss (FVTPL) or at fair value through other comprehensive income (FVOCI). Financial assets are classified based on the Company’s management model of such instruments and their contractual cash flows they generate. Financial liabilities are classified and measured at amortized cost, unless they are held for trading and classified as FVTPL.

The Company has made the following classifications:

BYJU'S Alpha, Inc.

Notes to Financial Statements
March 31, 2022

**Financial assets carried at amortized cost**
Cash and cash equivalents, short-term investments and accounts receivable are measured at amortized cost.

**Financial liabilities carried at amortized cost**
Accounts payable and interest accrued within accrued liabilities are measured at amortized cost.Long-term debt are measured at amortized cost using effective interest method.

Transaction costs related to financial instruments other than FVTPL are included in the initial recognition of the corresponding asset or liability and are amortized using effective interest method.

**De-recognition of financial instruments**
Financial instruments are derecognized if the contractual rights to the cash flows from the financial asset expire or the asset is transferred and the transfer qualifies for derecognition as substantially all the risks and rewards of ownership of the financial asset have been transferred

**Fair Value Measurements**

The carrying value reported in the balance sheets of cash and cash equivalents, restricted cash, short-term investments, accounts and unbilled receivables, other current assets, debt, accounts payable, accrued expenses and accrued liabilities approximate fair value because of their short term nature, and the variable interest rate on the debt.

Fair value is the price that would be received from selling an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date. When determining the fair value measurements for assets and liabilities, which are required to be recorded at fair value, the Company considers the principal or most advantageous market in which it would transact and the market-based risk measurements or assumptions that market participants would use in pricing the asset or liability, such as inherent risk, transfer restrictions, and credit risk.

The fair value hierarchy prioritizes the inputs to valuation techniques used to measure fair value. The hierarchy requires that the Company maximize the use of observable inputs and minimize the use of unobservable inputs. The levels of the fair value hierarchy are described below:

Level 1 - Quoted prices for identical instruments traded in active markets.
Level 2 - Quoted prices for similar instruments in active markets, quoted prices for identical or similar instruments in markets that are not active, and model-based valuation techniques for which all significant assumptions are observable in the market.
Level 3 - Unobservable inputs that cannot be supported by market activity and that are significant to the fair value of the asset or liability, such as the use of certain pricing models, discounted cash flow models and similar techniques that use significant assumptions. These unobservable inputs reflect our own estimates of assumptions that market participants would use in pricing the asset or liability.

Refer to Note 27, “Fair Value Measurements,” for additional information on determination of fair value of the assets and

BYJU'S Alpha, Inc.

Notes to Financial Statements
March 31, 2022

**Interests in equity-accounted investees:**

The Company's interests in equity-accounted investees comprise interests in associates.
Associates are those entities in which the Company has significant influence, but not control or joint control, over the financial and operating policies. Interests in associates are accounted for using the equity method. They are initially recognised at cost, which includes transaction costs, if any.

Subsequent to initial recognition, the financial statements include the Company's share of the profit or loss and OCI of equity accounted investees, until the date on which significant influence ceases.

**Commitment and Contingencies**

A provision is recognized if, as a result of a past event, the Company has a present legal obligation that is reasonably estimable and it is probable that an outflow of economic benefits will be required to settle the obligation. Provisions are determined by the best estimate of the outflow of economic benefits required to settle the obligation at the reporting date. Where no reliable estimate can be made, a disclosure is made as contingent liability. A disclosure for a contingent liability is also made when there is a possible obligation or a present obligation that may, but probably will not, require an outflow of resources. Where there is a possible obligation or a present obligation in respect of which the likelihood of outflow of resources is remote, no provision or disclosure is made.

Liabilities for loss contingencies arising from claims, tax assessments, litigations, fines and penalties, and other sources are recorded when it is probable that a liability has been incurred and the amount of the assessment and/or remediation can be reasonably estimated. Legal costs incurred in connection with the same are expensed as incurred.

**2. Recent accounting pronouncements**

In December 2019, the FASB issued ASU 2019-12, to simplify the accounting for income taxes. The new guidance changes various subtopics of accounting for income taxes including, but not limited to, accounting for "hybrid" tax regimes, tax basis step-up in goodwill obtained in a transaction that is not a business combination, intraperiod tax allocation exception to incremental approach, ownership changes in investments, interim-period accounting for enacted changes in tax law, and year-to-date loss limitation in interim-period tax accounting. For entities other than public business entities, the guidance is effective for fiscal years beginning after December 15, 2021 and interim periods within fiscal years beginning after December 15, 2022. Early adoption is permitted, including adoption in an interim period. The Company is currently evaluating the new guidance to determine the impact it may have on our financial position, results of operations or cash flows.

BYJU'S Alpha, Inc.

Notes to Financial Statements (Continued)
March 31, 2022

**4. Cash and cash equivalents**

Cash and cash equivalents consist primarily of cash on hand, balance in current accounts.

Cash and cash equivalents consist of the following:

| | | As of March 31, 2022 |
|---|---|---|
| - in current accounts | | 10,49,87,487 |
| **Total cash and cash equivalents** | **$** | **10,49,87,487** |

**5. Short-term investments**

Short-term investments comprise of

| | | Carrying Value | | Fair Value |
|---|---|---|---|---|
| - JPM MMF investment | $ | 76,00,00,000 | $ | 76,00,00,000 |
| | **$** | **76,00,00,000** | **$** | **76,00,00,000** |

**6. Other current assets**

Other current assets consist of the following:

| | | As of March 31, 2022 |
|---|---|---|
| Advance to suppliers | | 2,21,27,500 |
| Dividend income receivable | | 88,644 |
| **Total current assets** | **$** | **2,22,16,144** |

**7. Investment in associate**

Investment in associate consist of the following:

| | | As of March 31, 2022 |
|---|---|---|
| Investment in associate (Geogebra GMBH) | | 1,27,07,236 |
| **Total investment in associate** | **$** | **1,27,07,236** |

On March 21, 2022, the company's acquired 50% equity interest in Geogebra GMBH ('Geogebra') and Geogebra became its associate from that date. Geogrebra is an strategic investment engaged in edtech business.

BYJU'S Alpha, Inc.

Notes to Financial Statements (Continued)
March 31, 2022

The following table summarises the financial information of Geogebra as included in the financial statements, adjusted for fair value adjustments at acquisition. The table also reconciles the summarised financial information to the carrying amount of the Company's interest in Geogebra.

| | As of March 31, 2022 |
|---|---|
| Investment in associate at cost (50% ownership) | 1,27,24,065 |
| Revenue | 34,135 |
| Profit from continuing operations (100%) | (33,658) |
| Other comprehensive income (100%) | - |
| Total comprehensive income (100%) | (33,658) |
| Share of loss of associate company (50%) | (16,829) |
| Carrying amount of investment in associate | **1,27,07,236** |

**8. Loans and advances**

Loans and advances consist of the following:

| | | As of March 31, 2022 |
|---|---|---|
| Loan to related parties (fellow subsidiaries) | | 24,34,04,300 |
| **Total loans** | **$** | **24,34,04,300** |

**9. Long-term Debt**

On November 24, 2021 ("Effective Date"), the Company entered into a credit agreement with Morgan Stanley Senior Funding LLC providing a $1,200,000,000 secured term loan facility. A gaurantee of 115% of the total underlying loan has been given by Think and Learn Private Limited ("Parent Gaurantor"). The repayment of the credit facility in quarterly principal instalments, commencing on the last day of the first full fiscal quarter of the Parent Gaurantor following the effective date, in an amount equal to 0.25% of the aggregate principal amount of the Term Loan Facility made on the Effective Date, which amount shall be due and payable on the last day of each fiscal quarter of the Parent Gaurantor . An amount of USD 1,140 million shall be paid at the end of the term loan maturity date, the outstanding amount of the facility shall be paid in full in Dollars by the Company.
Security given under the Credit Agreement: The Term Loan Facility will be secured by:
(a) all assets granted by -
  (i) the Borrower,
  (ii) Whitehat Education Technology LLC,
  (iii) Tangible Play Inc.,
  (iv) BYJU's Pte. Ltd. and
  (v) Great Learning Education Pte Ltd; and
(b) Shares pledged by -
  (i) The Borrower (100% of it's own share) and
  (ii) BYJU's Pte Ltd (Shares held in Great Learning Education Pte Ltd).

**10. Accrued liabilities**

Accrued liabilities consist of the following:

| | | As of March 31, 2022 |
|---|---|---|
| Interest accrued | $ | 80,07,529 |
| **Total accrued liabilities** | **$** | **80,07,529** |

A1404

BYJU'S Alpha, Inc.

Notes to Financial Statements (Continued)
March 31, 2022

**11. Stockholders' equity**

Stockholders' equity consists of common stock which are described in detail below. Each class of stock has voting rights, with one vote for each share of stock.

As per the Byjus Alpha Inc., Certificate of Incorporation, the total number of shares that the Company is authorized to issue is 10,000 shares, which shall be Common Stock. The Common stock shall each have a par value of $100 per share.

**Classes of Stock**

*Common Stock:*

The common stock of the Company consists of 1,000 shares of authorized voting common units with a par value of $100. As of March 31, 2022, 1,000 shares issued and outstanding, respectively.

BYJU'S Alpha, Inc.
Notes to Financial Statements (Continued)
March 31, 2022

**12. Revenue from operations**

| | Period ended March 31, 2022 |
|---|---|
| License fee | 2,67,053 |
| | **$ 2,67,053** |

**13. Other income, net**

| | Period ended March 31, 2022 |
|---|---|
| Dividend income | $ 1,37,775 |
| | **$ 1,37,775** |

**14. Interest expenses**

| | Period ended March 31, 2022 |
|---|---|
| Interest expense on secured loan | 2,90,22,686 |
| | **$ 2,90,22,686** |

Notes to Financial Statements (Continued)
BYJU'S Alpha, Inc.

**15. Related party transactions**

The Company had transactions carried out with the related parties during the period ended March 31, 2022 and had balances due to/from the related parties as on March 31, 2022 as follows:

Transactions carried out with the related parties during the period ended March 31, 2022

| | Period ended March 31, 2022 |
|---|---|
| Interest income | |
| Byjus Brazil | 5,675 |
| Byjus Mexico | 5,741 |
| Byjus Beta | 35,921 |
| WhiteHat Education Technology LLC | 57,289 |
| Tangible play Inc | 8,16,831 |
| Inspilearn LLC | 4,20,575 |
| | **13,42,032** |
| License fee | |
| Byjus Brazil | 29,762 |
| Byjus Mexico | 27,276 |
| WhiteHat Education Technology LLC | 2,10,015 |
| | **2,67,053** |
| Royalty expense | |
| Think and learn private limited | 2,00,290 |
| | **2,00,290** |
| Guarantee fee | |
| Think and learn private limited | 1,05,890 |
| | **1,05,890** |
| Investment in associate | |
| Geogebra GMBH | 1,27,07,236 |
| | **1,27,07,236** |

A1407

Notes to Financial Statements (Continued)
BYJU'S Alpha, Inc.

Balance to/from the related parties as on March 31, 2022:

| | **As at March 31, 2022** |
|---|---|
| Loans given to fellow subsidiaries | |
| Byju's Brazil | 33,01,000 |
| Byju's Mexico | 31,01,000 |
| Byju's Beta Inc | 1,40,01,000 |
| Inspilearn LLC | 4,30,00,000 |
| Tangible Play Inc | 16,40,01,000 |
| Whitehat Education Technology LLC | 1,60,00,300 |
| | **24,34,04,300** |
| Interest accrued | |
| Byjus Brazil | 5,675 |
| Byjus Mexico | 5,741 |
| Byjus Beta | 35,921 |
| WhiteHat Education Technology LLC | 57,289 |
| Tangible play Inc | 8,16,831 |
| Inspilearn LLC | 4,20,575 |
| | **13,42,032** |
| Accounts payable | |
| Think and learn private limited | 3,06,180 |
| | **3,06,180** |
| Investment in associate | |
| Geogebra GMBH | 1,27,07,236 |
| | **1,27,07,236** |

BYJU'S Alpha, Inc.

Notes to Financial Statements (Continued)
March 31, 2022

**16. Subsequent events**

BYJU'S Alpha Inc has evaluated subsequent events through November 22, 2022, the date on which the financial statements were issued. The financial statements include all events or transactions, including estimates, required to be recognized in accordance with the accounting principles generally accepted in the United States of America.

**THINK & LEARN PRIVATE LIMITED**
**Consolidated Balance Sheet as at 31 March 2022**
(Amount in INR crores, unless otherwise stated)

| Particulars | Note No. | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|---|
| **ASSETS** | | | |
| **Non-current assets** | | | |
| (a) Property, plant and equipment | 3 | 324.12 | 104.58 |
| (b) Capital work in progress | 3 (a) | 103.37 | - |
| (c) Right-of-use assets | 4 | 1,451.69 | 246.60 |
| (d) Goodwill | 5 | 15,927.45 | 1,708.53 |
| (e) Intangible assets | 6 (a) | 7,225.39 | 2,094.55 |
| (f) Intangible assets under development | 6 (b) | 2,102.29 | 1,390.88 |
| (g) Financial assets | | | |
| (i) Investments | 14 (a) | 1.45 | - |
| (ii) Loans | 7 (a) | - | 32.00 |
| (iii) Other financial assets | 8 (a) | 169.90 | 456.72 |
| (h) Income tax assets | 9 | 173.89 | 85.44 |
| (i) Deferred tax assets | 36 | 47.84 | - |
| (j) Other non-current assets | 10 (a) | 666.05 | 231.46 |
| **Total non-current assets** | | **28,193.44** | **6,350.76** |
| **Current assets** | | | |
| (a) Inventories | 11 | 613.36 | 252.48 |
| (b) Financial assets | | | |
| (i) Investments | 14 (b) | 6,529.70 | 1,341.75 |
| (ii) Trade receivables | 12 | 654.87 | 377.09 |
| (iii) Cash and cash equivalents | 13 (a) | 4,301.26 | 2,675.43 |
| (iv) Bank balances other than (iii) above | 13 (b) | 765.95 | 440.92 |
| (v) Loans | 7 (b) | 4.13 | 1.05 |
| (vi) Other financial assets | 8 (b) | 260.44 | 103.16 |
| (c) Other current assets | 10 (b) | 651.27 | 95.95 |
| **Total current assets** | | **13,780.98** | **5,287.83** |
| **Total assets** | | **41,974.42** | **11,638.59** |
| **EQUITY AND LIABILITIES** | | | |
| **Equity** | | | |
| (a) Equity share capital | 15 (a) | 1.42 | 1.41 |
| (b) Instruments entirely equity in nature | 15 (b) | 2.99 | 2.24 |
| (c) Other equity | 16 | 20,956.44 | 7,833.51 |
| Total equity attributable to equity holders of the Company | | 20,960.85 | 7,837.16 |
| Non-controlling interest | 16 (a) | 47.18 | (292.55) |
| **Total equity** | | **21,008.03** | **7,544.61** |
| **Liabilities** | | | |
| **Non-current liabilities** | | | |
| (a) Financial liabilities | | | |
| (i) Borrowings | 17 (a) | 8,828.65 | - |
| (ii) Lease liabilities | 18 (a) | 1,182.29 | 171.12 |
| (iii) Other financial liabilities | 23 (a) | 566.04 | - |
| (b) Provisions | 21 (a) | 183.52 | 92.00 |
| (c) Deferred tax liabilities | 36 | 1,206.42 | 233.52 |
| (d) Other non current liabilities | 19 | 134.26 | 10.63 |
| **Total non-current liabilities** | | **12,101.18** | **507.27** |
| **Current liabilities** | | | |
| (a) Financial liabilities | | | |
| (i) Borrowings | 17 (b) | 1,273.42 | 1,351.81 |
| (ii) Lease liabilities | 18 (b) | 317.22 | 84.81 |
| (iii) Trade payables | 22 | | |
| a) total outstanding dues of micro enterprises and small enterprises | | 46.59 | 1.34 |
| b) total outstanding dues other than in (a) above | | 1,619.20 | 1,064.07 |
| (iv) Other financial liabilities | 23 (b) | 3,845.04 | 442.87 |
| (b) Provisions | 21 (b) | 113.34 | 60.37 |
| (c) Current tax liabilities (net) | | 16.22 | 0.49 |
| (d) Other current liabilities | 20 | 1,634.18 | 580.95 |
| **Total current liabilities** | | **8,865.21** | **3,586.71** |
| **Total liabilities** | | **20,966.39** | **4,093.98** |
| **Total equity and liabilities** | | **41,974.42** | **11,638.59** |
| The accompanying notes are an integral part of the Consolidated Financial Statements. | 1-59 | | |

As per our report of even date

**For M S K A & Associates**
Chartered Accountants
Firm Registration No. 105047W

**Manish P Bathija**
Partner
Membership No. 216706

Place: Bangalore
Date: November 04, 2023

For and on behalf of the Board of Directors of
**THINK & LEARN PRIVATE LIMITED**
CIN: U80903KA2011PTC061427

**Byju Raveendran**
Managing Director
DIN: 03408398

Place: Bangalore
Date: November 04, 2023

**Divya Gokulnath**
Director
DIN: 03415950

Place: Bangalore
Date: November 04, 2023

THINK & LEARN PRIVATE LIMITED
Consolidated Statement of Profit and Loss for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

| Particulars | Note No. | For the year ended 31 March 2022 | For the year ended 31 March 2021 |
|---|---|---|---|
| **Income** | | | |
| Revenue from operations | 24 | 5,014.60 | 2,280.26 |
| Other income | 25 | 283.83 | 148.13 |
| **Total income (A)** | | **5,298.43** | **2,428.39** |
| **Expenses** | | | |
| Purchase of stock-in-trade | | 1,242.28 | 774.64 |
| Changes in inventories of stock-in-trade | 26 | (353.40) | (198.25) |
| Employee benefits expense | 27 | 3,552.22 | 1,943.30 |
| Finance costs | 28 | 519.40 | 61.55 |
| Depreciation and amortisation expense | 29 | 1,171.50 | 394.56 |
| Business promotion expenses | | 4,143.94 | 2,250.94 |
| Other expenses | 30 | 3,392.50 | 1,800.73 |
| **Total expenses (B)** | | **13,668.44** | **7,027.47** |
| **Loss before tax (C =(A)-(B))** | | **(8,370.01)** | **(4,599.08)** |
| **Income Tax expense** | | | |
| Current tax | | 39.95 | 0.65 |
| Deferred tax | 36 | (164.76) | (35.35) |
| **Total income tax expense (D)** | | **(124.81)** | **(34.70)** |
| **Loss for the year (E = (C)-(D))** | | **(8,245.20)** | **(4,564.38)** |
| **Other comprehensive income / (loss)** | | | |
| *Items that will not be reclassified to profit or loss* | | | |
| Remeasurement gains / (losses) on defined benefit plans | | 4.35 | (3.43) |
| Income tax related to items that will not be reclassified to profit or loss | | 0.90 | 0.02 |
| *Items that may be reclassified to profit or loss* | | | |
| Exchange differences in translating the financial statements of foreign operations | | 135.13 | (20.96) |
| **Total other comprehensive income / (loss) for the year (F)** | | **140.38** | **(24.37)** |
| **Total comprehensive loss for the year (G=(E)+(F))** | | **(8,104.82)** | **(4,588.75)** |
| **Total comprehensive loss for the year** | | | |
| - Owners of the Company | | (8,096.60) | (4,207.48) |
| - Non-Controlling interest | | (8.22) | (381.27) |
| **Of the Total comprehensive loss above, Loss for the period attributable to:** | | | |
| - Owners of the Company | | (8,237.09) | (4,183.37) |
| - Non-Controlling interest | | (8.11) | (381.01) |
| **Of the Total comprehensive income / (loss) above, Other comprehensive income / (loss) for the year** | | | |
| - Owners of the Company | | 140.49 | (24.11) |
| - Non-Controlling interest | | (0.11) | (0.26) |
| **Earnings per equity share:** | | | |
| Basic earnings per share (Rs.) | 35 | (19,881.89) | (13,051.34) |
| Diluted earnings per share (Rs.) | 35 | (19,881.89) | (13,051.34) |
| The accompanying notes are an integral part of the Consolidated Financial Statements. | 1-59 | | |

As per our report of even date

For M S K A & Associates
Chartered Accountants
Firm Registration No. 105047W

**Manish P Bathija**
Partner
Membership No. 216706

Place: Bangalore
Date: November 04, 2023

For and on behalf of the Board of Directors of
THINK & LEARN PRIVATE LIMITED
CIN: U80903KA2011PTC061427

**Byju Raveendran**
Managing Director
DIN: 03408398

Place: Bangalore
Date: November 04, 2023

**Divya Gokulnath**
Director
DIN: 03415950

Place: Bangalore
Date: November 04, 2023

THINK & LEARN PRIVATE LIMITED

**Consolidated Statement of Changes in Equity for the year ended 31 March 2022**

(Amount in INR crores, unless otherwise stated)

**Equity share capital [Refer Note 14(a)]**

| Particulars | Amount |
|---|---|
| **Balance as at 1 April 2020** | 1.41 |
| Changes in equity share capital during the year | |
| Shares issued on exercise of stock options | - |
| **Balance as at 31 March 2021** | 1.41 |
| Changes in equity share capital during the year: | |
| Shares issued on exercise of stock options | 0.01 |
| **Balance as at 31 March 2022** | 1.42 |

**Instruments entirely equity in nature**

**Compulsorily convertible cumulative preference share capital (CCPS) [Refer Note 14(b)]**

| Particulars | Amount |
|---|---|
| Balance as at 1 April 2020 | 2.00 |
| Changes during the year: | |
| Issue of compulsorily convertible cumulative preference shares (CCCPS) | 0.24 |
| **Balance as at 31 March 2021** | 2.24 |
| Changes during the year: | |
| Issue of compulsorily convertible cumulative preference shares (CCCPS) | 0.75 |
| **Balance as at 31 March 2022** | 2.99 |

**Other equity [Refer Note 15]**

| Particulars | Attributable to equity holders of the Company | | | | | | | | | | Non-controlling interest | Total Equity |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Share application money pending allotment | Reserve and Surplus | | | | | Other Reserves | | | Total other equity | | |
| | | Share premium | Capital reserve | Capital redemption reserve | Retained earnings | Stock options outstanding | Money received against share warrants (Refer Note 45) | Commitment to issue share capital | Foreign currency translation reserve | | | |
| **Balance as at 1 April 2020** | - | 6,311.55 | 0.69 | 0.05 | (598.50) | 2.57 | 5.20 | - | 77.01 | 5,592.57 | - | 5,592.57 |
| **Total comprehensive income for the year ended 31 March 2021** | | | | | | | | | | | | |
| Loss for the year | - | - | - | - | (4,183.37) | - | - | - | - | (4,183.37) | (381.01) | (4,564.38) |
| Other comprehensive Loss (Refer Note 31) | - | - | - | - | (3.41) | - | - | - | (20.70) | (24.11) | (0.26) | (24.37) |
| **Total comprehensive loss for the year** | - | - | - | - | (4,186.78) | - | - | - | (20.70) | (4,207.48) | (381.27) | (4,588.75) |
| Share Application Money Pending Allotment | 1,139.17 | | - | - | - | - | - | - | - | 1,139.17 | - | 1,139.17 |
| Pursuant to acquisition | - | - | - | - | - | - | - | - | - | - | 88.72 | 88.72 |
| Premium on issue of CCCPS | - | 5,096.17 | - | - | - | - | - | - | - | 5,096.17 | - | 5,096.17 |
| Expenses in connection with issue of shares | - | (6.22) | - | - | - | - | - | - | - | (6.22) | - | (6.22) |
| Transferred to securities premium on allotment against stock options | - | 2.00 | - | - | - | (2.00) | - | - | - | - | - | - |
| Financial liability under option arrangement | - | - | - | - | (247.47) | - | - | - | - | (247.47) | - | (247.47) |
| Compensation cost related to employee share based payments | - | - | - | - | - | 466.77 | - | - | - | 466.77 | - | 466.77 |
| **Balance as at 31 March 2021** | 1,139.17 | 11,203.50 | 0.69 | 0.05 | (5,032.75) | 467.34 | 5.20 | - | 50.31 | 7,833.51 | (292.55) | 7,540.96 |
| **Balance as at 1 April 2021** | 1,139.17 | 11,203.50 | 0.69 | 0.05 | (5,032.75) | 467.34 | 5.20 | - | 50.31 | 7,833.51 | (292.55) | 7,540.96 |
| **Total comprehensive income for the year ended 31 March 2021** | | | | | | | | | | | | |
| Loss for the year | - | - | - | - | (8,237.09) | - | - | - | - | (8,237.09) | (8.11) | (8,245.20) |
| Other comprehensive income / (loss) (Refer Note 31) | - | - | - | - | 5.25 | - | - | - | 135.24 | 140.49 | (0.11) | 140.38 |
| **Total comprehensive loss for the year** | - | - | - | - | (8,231.84) | - | - | - | 135.24 | (8,096.60) | (8.22) | (8,104.82) |
| Shares issued against the share application money pending allotment | (1,139.17) | - | - | - | - | - | - | - | - | (1,139.17) | - | (1,139.17) |
| Premium on issue of CCCPS | - | 19,833.48 | - | - | - | - | - | - | - | 19,833.48 | - | 19,833.48 |
| Transfer on account of dilution of NCI | - | - | - | - | (2.16) | - | - | - | - | (2.16) | 2.16 | - |
| Non controlling interest on acquisition of subsidiary | - | - | - | (0.00) | 1.14 | - | - | - | 0.16 | 1.30 | 43.01 | 44.31 |
| Expenses in connection with issue of shares | - | (28.96) | - | - | 0.00 | - | - | - | - | (28.96) | - | (28.96) |
| Transferred to securities premium on allotment against stock options | - | 291.07 | - | - | - | (288.16) | - | - | - | 2.91 | - | 2.91 |
| Purchase of non-controlling interest | - | - | - | - | (242.63) | - | - | - | - | (242.63) | 302.78 | 60.14 |
| Commitment to issue Share capital | - | - | - | - | (174.98) | - | - | 2,888.49 | - | 2,713.51 | - | 2,713.51 |
| Compensation cost related to employee share based payments | - | - | - | - | 1.14 | 80.11 | - | - | - | 81.25 | - | 81.25 |
| **Balance as at 31 March 2022** | - | 31,299.09 | 0.69 | 0.05 | (13,682.07) | 259.29 | 5.20 | 2,888.49 | 185.71 | 20,956.44 | 47.18 | 21,003.61 |

See accompanying notes to the Consolidated Financial Statements 1-59

The accompanying notes are an integral part of the Consolidated Financial Statements.

As per our report of even date

For M S K A & Associates
Chartered Accountants
Firm Registration No. 105047W

Manish P Bathija
Partner
Membership No. 216706

Place: Bangalore
Date: November 04, 2023

For and on behalf of the Board of Directors of
THINK & LEARN PRIVATE LIMITED
CIN: U80903KA2011PTC061427

Byju Raveendran
Managing Director
DIN: 03408398

Place: Bangalore
Date: November 04, 2023

Divya Gokulnath
Director
DIN: 03415950

Place: Bangalore
Date: November 04, 2023

**THINK & LEARN PRIVATE LIMITED**

**Consolidated Statement of Cash flows for the year ended 31 March 2022**

(Amount in INR crores, unless otherwise stated)

| Particulars | For the year ended 31 March 2022 | For the year ended 31 March 2021 |
|---|---|---|
| **A. Cash flow from operating activities** | | |
| Profit/(loss) after tax | (8,245.20) | (4,564.38) |
| Adjustments for: | | |
| Income Tax expense | (124.81) | (34.70) |
| Depreciation and amortisation expense | 1,171.49 | 394.56 |
| Finance costs | 510.72 | 61.55 |
| Employee share-based payment expense | 70.12 | 466.67 |
| Allowance for expected credit loss | 128.08 | 32.43 |
| Bad debts written off | 39.64 | 0.07 |
| Provision for doubtful advances | 2.33 | 6.80 |
| Profit on sale of current investments | (122.00) | (93.83) |
| Net gain on assets measured at fair value through profit or loss (FVTPL) | (32.73) | 8.29 |
| Interest income on financial assets carried at amortised cost | (4.23) | (2.08) |
| Interest income on bank deposits and bonds | (52.71) | (47.00) |
| Interest income on bonds | (13.87) | (5.94) |
| Interest income on unsecured loan | (2.24) | - |
| Provision for sales returns | (29.74) | 19.51 |
| Provision for guarantee | 50.04 | 34.51 |
| Provision for doubtful security deposits | 0.71 | 4.38 |
| Net unrealised exchange gain | 19.80 | (0.83) |
| Profit on sale of property, plant and equipment | - | (0.00) |
| Lease concession income | - | (0.69) |
| | **(6,634.57)** | **(3,720.68)** |
| **Working capital changes, net of effects from purchase of controlled entities** | | |
| (Increase)/Decrease in Inventories | (350.82) | (198.25) |
| (Increase)/Decrease in Trade receivables | (352.06) | (153.69) |
| (Increase)/Decrease in Other current assets | (3.32) | 72.40 |
| (Increase)/Decrease in Other non-current assets | (376.25) | (224.88) |
| Decrease/(Increase) in Loans and other non-current financial assets | 248.59 | 4.58 |
| (Increase)/Decrease in Loans and other current financial assets | (416.58) | (100.07) |
| Increase/(Decrease) in Trade payables | 296.44 | 476.27 |
| Increase/(Decrease) in Other current liabilities | 272.70 | 260.36 |
| Increase/(Decrease) in Other non current liabilities | 79.78 | (6.18) |
| Increase/(Decrease) in Long term provisions | 62.29 | 48.12 |
| Increase/(Decrease) in Short term provisions | 32.66 | 3.93 |
| (Decrease)/Increase in Other financial liabilities | (132.11) | 117.16 |
| **Net cash (used in) operating activities** | **(7,273.25)** | **(3,420.93)** |
| Income taxes paid | (76.62) | (73.44) |
| **Net cash (used in) operating activities (A)** | **(7,349.87)** | **(3,494.37)** |
| **B. Cash flows from investing activities** | | |
| Payment for acquisition of subsidiary, net of cash acquired | (4,429.55) | (1,303.34) |
| Additions to property, plant and equipment, intangible assets (including intangible assets under development) | (2,352.37) | (1,156.19) |
| | | - |
| Proceeds from disposal of property, plant and equipment | - | 0.38 |
| Net proceeds/(investment) in term deposits | (93.72) | (140.59) |
| Investment in mutual funds and bonds | (13,389.04) | (2,352.40) |
| Loan to others | (3.00) | (32.00) |
| Proceeds from redemption of Mutual Funds and bonds | 8,496.71 | 2,983.83 |
| Interest received | 65.74 | 70.37 |
| **Net cash used in investing activities (B)** | **(11,705.23)** | **(1,929.94)** |

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. ★ Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Consolidated Statement of Cash flows for the year ended 31 March 2022**
(Amount in INR crores, unless otherwise stated)

| Particulars | For the year ended 31 March 2022 | For the year ended 31 March 2021 |
|---|---|---|
| **C. Cash flow from financing activities** | | |
| Proceeds from issue of Compulsorily convertible cumulative preference share capital (CCCPS) | 12,914.88 | 5,096.17 |
| Share application money received, pending allotment | - | 1,139.17 |
| Expenses in connection with issue of shares | (28.96) | (6.22) |
| Proceeds towards stock options | 2.91 | - |
| Principal Payment of lease liabilities | (246.01) | (85.93) |
| Repayment of borrowings | (1,464.77) | (7.26) |
| Proceeds from borrowings (net of charges) | 9,910.14 | 1,359.07 |
| Acquisition of non-controlling interest | (155.10) | - |
| Finance cost paid | (255.71) | (41.92) |
| **Net cash flow from financing activities (C)** | **20,677.38** | **7,453.08** |
| **Net Increase in Cash and cash equivalents (A+B+C)** | **1,622.28** | **2,028.77** |
| Cash and cash equivalents at the beginning of the year | 2,675.43 | 615.57 |
| Effect of exchange difference on translation of foreign currency cash and cash equivalents | 3.55 | 1.09 |
| **Cash and cash equivalents at the end of the year *** | **4,301.26** | **2,675.43** |
| * Comprises: | | |
| (a) Cash on hand | 5.70 | 0.01 |
| (b) Cheques on hand | - | - |
| (b) Funds in Transit | 13.25 | - |
| (c) Balances with banks | - | - |
| (i) In current accounts | 3,929.47 | 2,483.89 |
| (ii) In EEFC accounts | 294.02 | 134.56 |
| (iii) In deposit accounts (original maturity of 3 months or less) | 58.82 | 56.97 |
| | 4,301.26 | 2,675.43 |

**Changes in liabilities arising from financing activities**

| Particulars | 31 March 2022 | | 31 March 2021 | |
|---|---|---|---|---|
| | **Borrowings** | **Lease liabilities** | **Borrowings** | **Lease liabilities** |
| Opening balance | 1,354.36 | 255.93 | - | 215.13 |
| Pursuant to acquisition | 126.08 | 573.88 | - | - |
| Proceeds from borrowings (net of charges)/Addition in lease liabilities | 9,910.14 | 857.03 | 1,359.07 | 121.72 |
| Finance cost accrued during the year | 305.21 | 72.45 | 14.71 | 12.35 |
| Interest paid | (255.71) | - | (12.16) | - |
| Deletions | - | (4.07) | - | (6.65) |
| Repayment of borrowings/Lease liabilities | (1,464.77) | (246.01) | (7.26) | (85.93) |
| Lease concession | - | (9.70) | - | (0.69) |
| Translation differences | 193.37 | - | - | - |
| **Closing balance (including interest accrued)** | **10,168.68** | **1,499.51** | **1,354.36** | **255.93** |

The accompanying notes are an integral part of the Consolidated Financial Statements.

As per our report of even date

**For M S K A & Associates**
Chartered Accountants
Firm Registration No. 105047W

**Manish P Bathija**
Partner
Membership No. 216706

Place: Bangalore
Date: November 04, 2023

MSKA & ASSOCIATES ★ Chartered Accountants ★

For and on behalf of the Board of Directors of
**THINK & LEARN PRIVATE LIMITED**
CIN: U80903KA2011PTC061427

**Byju Raveendran**
Managing Director
DIN: 03408398

Place: Bangalore
Date: November 04, 2023

**Divya Gokulnath**
Director
DIN: 03415950

Place: Bangalore
Date: November 04, 2023

Think and Learn Pvt. Ltd. Bangalore ★

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**1 (a) Corporate information**

Think and Learn Private Limited ("the Company" or "the Parent") was incorporated on 30 November 2011 having registered office at 2nd floor, No. 4/1, IBC Knowledge Park, Tower D, Bannergatta Main Road, Bengaluru, Karnataka - 560029. The Parent is engaged in the business of providing Educational technology (Edu-tech) products and services. The Parent provides teaching aids, content and tools for LKG - 12 (Lower KG to class 12) and also various competitive and entrance examinations including but not limited to Common Admission Test (CAT) and other Master of Business Administration (MBA) entrance examinations, Common Entrance Test (CET) and other engineering entrance examinations, Indian Administration Service (IAS) and other civil service examinations, research and development of edutech products and teaching aids. The Parent together with its subsidiaries, is hereinafter referred to as "the Group".

The Board of Directors approved the Consolidated financial statements for the year ended March 31, 2022 and authorized for issue on November 4, 2023

**2 Summary of significant accounting policies**

**Basis of Preparation of Financial Statements**

**2.1 Statement of compliance with Ind AS**

The consolidated financial statements of the Group have been prepared in accordance with Indian Accounting Standards ("Ind AS") notified under the Companies (Indian Accounting Standards) Rules, 2015 and Companies (Indian Accounting Standards) Amendment Rules, 2016 read with section 133 of the Companies Act, 2013 and other relevant provisions of the act

Accounting policies have been consistently applied to all the years presented unless otherwise stated

**2.2 Basis of measurement**

The consolidated financial statements have been prepared on a historical cost convention on accrual basis, except for the following material items that have been measured at fair value as required by relevant Ind AS -
i) Certain financial assets and liabilities measured at fair value (refer accounting policy on financial instruments)
ii) Share based payment transactions and
iii) Derivatives

The consolidated financial statements have been prepared on the basis that it will continue to operate as a going concern. Also refer note 32 (C).

Previous year figures have been regrouped/ reclassified to confirm presentation as per Ind AS and as required by Schedule III of the Act.

**2.3 Basis of consolidation**

The consolidated financial statements include the financial statements of the Parent and entities controlled by it. Consolidation of a subsidiary begins when the Parent obtains control over the subsidiary and ceases when the Parent loses control over the subsidiary. Specifically, income and expenses of a subsidiary acquired or disposed off during the year are included in the consolidated statement of profit and loss from the date the Parent gains control until the date the Parent ceases to control the subsidiary.

The consolidated financial statements have been prepared in accordance with Indian Accounting Standard - 110 on "Consolidated Financial Statements" as follows.
The financial statements of the subsidiary companies are drawn up to the same reporting date as that of the Parent.
All intragroup assets and liabilities equity, income, expenses, and cash flows relating to transactions between members of the Group are eliminated in full on consolidation.
When necessary, adjustments are made to the financial statements of subsidiaries to bring their accounting policies in line with that of the Group.
The difference between the costs of investments in the Subsidiaries over the net assets at the time of acquisition of shares in the Subsidiaries is recognized in the Consolidated Financial Statements as Goodwill or Capital Reserve as the case may be.
Non-controlling interests in the results and equity of subsidiaries are shown separately in the consolidated statement of profit and loss, consolidated statement of changes in equity and consolidated balance sheet respectively.

The consolidated financial statements include following entities that are controlled by the Parent

| Name of the group | Relationship | Country of Incorporation | Ownership held by | % of Holding as at 31 March 2022 | % of Holding as at 31 March 2021 |
|---|---|---|---|---|---|
| Specadel Technologies Private Limited | Subsidiary | India | Think and Learn Private Limited | 100.00% | 100.00% |
| Span Thoughtworks Private Limited | Subsidiary | India | Think and Learn Private Limited | 100.00% | 100.00% |
| Byju's K3 Education Private Limited | Subsidiary | India | Think and Learn Private Limited | 100.00% | 100.00% |
| Byju's Inc. | Subsidiary | USA | Think and Learn Private Limited | 100.00% | 100.00% |
| Tangible Play Inc | Subsidiary | USA | Think and Learn Private Limited | 100.00% | 100.00% |
| Tangible Play BV | Step Down Subsidiary | Netherlands | Tangible Play Inc | 100.00% | 100.00% |
| Byjus Pte Limited | Subsidiary | Singapore | Think and Learn Private Limited | 100.00% | 100.00% |
| Whitehat Education Technology Private Limited | Subsidiary | India | Think and Learn Private Limited | 100.00% | 76.00% |
| Digital Aristotle Private Limited | Step Down Subsidiary | India | Byju's K3 Education Private Limited | 100.00% | 100.00% |
| Inspilearn Education Private Limited | Step Down Subsidiary | India | Byju's K3 Education Private Limited | 100.00% | 100.00% |
| Great Lakes E-Learning services Private Limited | Subsidiary | India | Think and Learn Private Limited | 100.00% | - |
| Weblength Infonet Private Limited | Step Down Subsidiary | India | Great Lakes E-Learning services Private Limited | 91.07% | - |
| Aakash Educational Services Limited (Refer note 45) | Subsidiary | India | Think and Learn Private Limited | 29.50% | - |
| Toppr Techonologies Private Limited (Refer note 43) | Subsidiary | India | Think and Learn Private Limited | 69.85% | - |
| Grade Stack Learning Private Limited (Refer note 41) | Subsidiary | India | Think and Learn Private Limited | 29.79% | - |
| Aakash Edutech Private Limited | Step Down Subsidiary | India | Aakash Educational Services Ltd | 100.00% | - |
| Haygot Services Private Limited | Step Down Subsidiary | India | Toppr Techonologies Private Limited | 100.00% | - |
| Whitehat Education Technology LLC | Step Down Subsidiary | USA | Whitehat Education Technology Private Limited | 100.00% | - |
| Byjus Alpha Inc | Step Down Subsidiary | USA | Byjus Pte Limited | 100.00% | - |
| Byjus Beta Inc | Step Down Subsidiary | USA | Byjus Pte Limited | 100.00% | - |
| GeoGebra GMBH | Step Down Subsidiary | Germany | Byjus Alpha Inc | 50.00% | - |
| Byjus UK Limited | Step Down Subsidiary | United Kingdom | Byjus Pte Limited | 100.00% | - |
| Epic! Creation Inc | Subsidiary | USA | Think and Learn Private Limited | 100.00% | - |
| EPIC creations ULC | Step Down Subsidiary | Canada | Epic! Creation Inc | 100.00% | - |
| Inspilearn LLC | Subsidiary | USA | Think and Learn Private Limited | 100.00% | - |
| Neuron Fuel Inc | Step Down Subsidiary | USA | Insplilearn LLC | 100.00% | - |
| Byjus Technologia Educacional LTDA | Step Down Subsidiary | Brazil | Byjus Pte Limited | 100.00% | - |
| Byjus S.A de C.v. | Step Down Subsidiary | Mexico | Byjus Pte Limited | 100.00% | - |
| Great Learning Education Pte Ltd | Step Down Subsidiary | Singapore | Byjus Pte Limited | 93.20% | - |

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**2.4 Classification between current and non-current**

The Group presents assets and liabilities in the balance sheet based on current/ non-current classification. An asset is treated as current when it is:
i. Expected to be realised or intended to be sold or consumed in normal operating cycle;
ii. Held primarily for the purpose of trading;
iii. Expected to be realised within twelve months after the reporting period; or
iv. Cash or cash equivalent unless restricted from being exchanged or used to settle a liability for at least twelve months after the reporting period.
All other assets are classified as non-current.

A liability is current when:
i. It is expected to be settled in normal operating cycle;
ii. It is held primarily for the purpose of trading,
iii. It is due to be settled within twelve months after the reporting period, or
iv. There is no unconditional right to defer the settlement of the liability for at least twelve months after the reporting period.
The Group classifies all other liabilities as non-current.
Deferred tax assets and liabilities are classified as non-current assets and liabilities.

Based on the nature of products/ activities of the Group and the normal time between acquisition of assets and their realisation in cash or cash equivalents, the Group has determined its operating cycle as 12 months for the purpose of classification of its assets and liabilities as current and non-current.

**2.5 Use of estimates and judgement**

The preparation of the consolidated financial statements in accordance with Ind AS requires the management to make informed judgements, reasonable assumptions and estimates that affect the application of accounting policies and the reported amount of assets and liabilities, revenues and expenses and disclosure of contingent liabilities. The uncertainty about these could result in outcomes that require a material adjustment to the carrying amount of assets or liabilities affected in the future periods. These assumptions and estimates are reviewed periodically based on the most recently available information. Revisions to accounting estimates are recognised prospectively in the Statement of Profit and Loss in the period in which the estimates are revised and in any future periods affected.

**a. Revenue recognition:**

(i) Judgement around identification of performance obligation

The Group's contracts with customers include promises to transfer product(s) and/or service(s) to a customer. Revenues from customer contracts are considered for recognition and measurement when the contract has been approved, in writing, by the parties to the contract, the parties to contract are committed to perform their respective obligations under the contract, and the contract is legally enforceable. The Group assesses the goods and services promised in a contract and identifies distinct performance obligations in the contract. Identification of distinct performance obligations to determine the deliverables and the ability of the customer to benefit independently from such deliverables, and allocation of transaction price to these distinct performance obligations involves significant judgment.

(ii) Judgement around assessment of probability of collection

In certain sale contracts with customers, the Group provides extended credit terms to customers. In evaluating whether collectability of the consideration is probable, judgment is involved in assessing the customer's ability and intention to pay the consideration when it is due.

(iii) Sale to retail customers in the Gulf Cooperation Council (GCC) countries

In respect of sales to retail customers in the Gulf Cooperation Council (GCC) countries, basis the terms of agreement, the Company invoices all its sales to an entity located in Dubai ("the Counter party"). The Counter party, in turn, is responsible for all marketing activities in the region and is entitled to a sales commission on billing/revenue earned. Judgment is required to determine whether the Counter party is an agent and whether revenue and commission are to be recorded Gross or Net in the Statement of profit and loss.

Under the arrangement with the Counter party
- the Company provides educational content only after a retail customer is identified by the Counter party
- the Company has the discretion of accepting or rejecting orders from the customers
- the Counter party does not have a right to redirect the Company's products to any other customers without getting instructions from the Company
- the Counter party offers the products at a price band in consultation with the Company
- the Company continues to be responsible to compensate the end customer in cases of product returns
- the Company controls the activation key to the educational content provided
- the Counter party is entitled to a commission inter alia for marketing activities carried out, notwithstanding remittances of the sale proceeds from the said Counter party.

Basis the above, the Company has concluded the Counter party to be an agent and accordingly records the revenue and commission expense on a gross basis in the Statement of profit and loss under Ind AS 115 (Revenue from Contract with Customers). (Also refer note 24 (ii) for details of transactions and balances during the year)

(iv) Estimation of fair value of Guarantees given to Loan Partners

The Group provides guarantees to Loan partners on behalf of its customers who avail loans from the Loan partners. The fair value of guarantee in such cases is determined based on the probability of default by the Group's customers in servicing the Loan partners and is based on historical default rate and expectations of future conditions. Also refer note 21.

(v) Judgement around significant financing component

In certain sale contracts with customers, the Group receives advance payment for services to be provided in future, which may extend beyond one year. Judgement is involved in assessing whether such contracts have a significant financing component. Management believes that no significant financing component is involved in such cases as the advance payment is primarily for reasons other than the provision of finance to the Group.

**b. Impairment of non-financial assets and goodwill**

Goodwill and intangible assets under development are tested for impairment at least annually and when events occur or changes in circumstances indicate that the recoverable amount of an asset or a cash generating unit to which the asset pertains, is less than the carrying value.
The Group assesses property, plant and equipment, right-of-use assets, intangible assets, investments and other non-financial assets with finite useful life for impairment whenever events or changes in circumstances indicate that the carrying amount may not be recoverable.
In assessing impairment, management estimates the recoverable amount of an asset or a cash generating unit as higher of value-in use and fair value less cost of disposal. The calculation of value-in-use of an asset or a cash generating unit involves use of significant estimates and assumptions which include revenue projections growth rates, net margins used to calculate projected future cash flows, risk adjusted discount rate, future economic and market conditions.

**c. Fair value of equity-settled share-based transaction**

Estimating fair value for share-based payment transactions requires determination of the fair value of shares on grant date and valuation model to determine option value, which depends on the terms and conditions of the grant. This estimate also requires determination of the most appropriate inputs to the valuation model including the expected life of the share option, volatility and dividend yield and making assumptions about them. The group measures the fair value of equity-settled transactions with employees at the grant date using Black-Scholes model.
The assumptions for estimating fair value for share-based payment transactions are disclosed in Note 52.

MSKA & ASSOCIATES * Chartered Accountants *

Think and Learn Pvt. Ltd. Bangalore *

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**d. Taxes**
Deferred tax assets are recognized for unused tax losses to the extent that it is probable that taxable profit will be available against which the losses can be utilized. Significant management judgment is required to determine the amount of deferred tax assets that can be recognized, based upon the likely timing and the level of future taxable profits together with future tax planning strategies.

The Group neither have any taxable temporary difference nor any tax planning opportunities available that could partly support the recognition of these losses as deferred tax assets. On this basis, the Group has determined that it cannot recognize deferred tax assets on the tax losses carried forward except for the unabsorbed depreciation. Refer Note 36.

Judgement is required to ascertain whether it is probable that an outflow of resources embodying economic benefits required to settle the taxation and legal disputes.

**e. Defined benefit plans (gratuity benefits and leave encashment)**
The cost of the defined benefit plans such as gratuity and leave encashment are determined using actuarial valuations. An actuarial valuation involves making various assumptions that may differ from actual developments in the future. These include the determination of the discount rate, future salary increases and mortality rates. Due to the complexities involved in the valuation and its long-term nature, a defined benefit obligation is highly sensitive to changes in these assumptions. All assumptions are reviewed at each year end.

The principal assumptions are the discount and salary growth rate. The discount rate is based upon the market yields available on government bonds at the accounting date with a term that matches that of liabilities. Salary increase rate takes into account of inflation, seniority, promotion and other relevant factors on long term basis. For details refer Note 31.

**f. Intangible asset under development**
The Group capitalises intangible asset under development for a project in accordance with the accounting policy. Initial capitalisation of costs is based on management's judgement that technological and economic feasibility is confirmed, usually when a product development project has reached a defined milestone according to an established project management model. In determining the amounts to be capitalised, management makes assumptions regarding the expected future cash generation of the project, discount rates to be applied and the expected period of benefits. This amount includes significant investment in the development of description of nature of asset.

**g. Property Plant and equipment and Intangible assets**
The charge in respect of periodic depreciation and amortisation is derived after determining an estimate of an asset's expected useful life and the expected residual value at the end of its life. The useful lives and residual values of the Group's assets are determined by the Management at the time the asset is acquired and reviewed periodically, including at each financial year end. The lives are based on historical experience with similar assets as well as anticipation of future events, which may impact their life, such as changes in technology.

**h. Provisions and Contingencies**
Recognition and measurement of provisions and contingencies involve key assumptions about the likelihood and magnitude of an outflow of resources.

**i. Assessment of control over Aakash**
The Company controls Aakash Educational Services Limited ("Aakash") from the date of acquisition (i.e 21 June 2021), even though it holds less than half (29.5%) of the its voting rights. This is because of the contractual arrangement with the other shareholders which provides the Company with a right to appoint majority of the directors in the Board of Aakash, to have its representative present in the board and shareholder meetings for quorum and the right to have its affirmative vote for adoption or approval of each board and shareholder resolution. The Company also has a contractual right to acquire the remaining voting rights as per the terms of the relevant shareholder agreements. There are certain reserved matters specified in the shareholder agreement for which prior written consent of certain shareholders group (other than the Company) is required. Based on management assessment and supported by legal opinion, these reserved matters are considered as protective in nature and not substantive to affect the Company's control assessment over Aakash.

**j. Business combination**
Fair value of the consideration transferred (including contingent consideration) and fair value of the assets acquired and liabilities assumed, measured. For details refer Note 39 to 48.

**k. Determination of functional currency**
Refer Note 2.6 below.

**l. Recognition and measurement of other provisions**
The recognition and measurement of other provisions are based on the assessment of the probability of an outflow of resources, and on past experience and circumstances known at the closing date. The actual outflow of resources at a future date may therefore, vary from the amount included in other provisions.

**m. Discounting of long-term financial assets / liabilities**
All financial assets / liabilities are required to be measured at the fair value on initial recognition. In case of financial assets / liabilities which are required to be subsequently be measured at amortized cost, interest is accrued using the effective interest method.

**n. Measurement of fair values**
Refer Note 2.14 below.

**2.6 Functional and presentation currency**
In determining the functional currency of the Group, judgment is used by the Group to determine the currency of the primary economic environment in which the Group operates. Consideration factors include the currency that mainly influences sales prices of goods and services and the currency of the country whose competitive forces and regulations mainly determines the sales prices of its goods and services.

Items included in the consolidated financial statements of the Group are measured using the currency of the primary economic environment in which the Group operates (i.e. the "functional currency"). The consolidated financial statements are presented in Indian Rupees, the national currency of India, which is the functional currency of the Parent.

**2.7 Revenue Recognition**
(i) Revenues from customer contracts are considered for recognition and measurement when the contract has been approved by the parties to the contract, the parties to contract are committed to perform their respective obligations under the contract, and the contract is legally enforceable. Revenue is recognised upon transfer of control of promised products or services to customers in an amount that reflects the consideration the Group expects to receive in exchange for those products or services. To recognise revenues, the Group applies the following five step approach
(1) identify the contract with a customer,
(2) identify the performance obligations in the contract,
(3) determine the transaction price,
(4) allocate the transaction price to the performance obligations in the contract, and
(5) recognise revenues when a performance obligation is satisfied. When there is uncertainty as to collectability, revenue recognition is deferred to a point in time when substantially all of the promised consideration has been collected from the customer and the consideration is non refundable.

(ii) The Group in its normal course of business sells Educational content to its customers via SD cards (categorised as Sale of Edutech products) and provides the content in the form of Streaming services (categorised as Sale of services).
In the case of Sale of digital content via SD cards, the Group does not have any continuing performance obligations once the content filled SD cards are made available to the customers. The Sale of Edutech products (which includes sale of tablets) are recognised at a point in time.

(iii) Revenue from digital products is recognized upfront at the moment when the Group transfers access and control of the digital product to the students.

In the case of sale of educational content in the form of Streaming services, revenue is recognised over the period of time the services are rendered to the customers.

In case of Byju's classes, the Group has two performance obligations – (a) sale of content via SD cards and (b) classroom services. The transaction price in such cases is allocated between these two performance obligations based on their relative standalone selling prices. Revenue from sale of content via SD cards is recognised at a point in time (as mentioned above) and the revenue from classroom services are recognised over the period of time the services are rendered to the customers, because the customers simultaneously receives and consumes benefits provided to them.

(iv) Sale of Edutech products to customers primarily involves 3 modes of settlement by customers:
(a) where the customer pays all the consideration upfront
(b) where the customer chooses to take a loan from a Loan partner (refer note (iv) below)
(c) where the Parent provides extended credit terms (refer (v) below).

(v) In cases where the customer takes a loan from the Loan partners, the customer makes a down payment to the Parent and the balance consideration is settled by the Loan partner. The Parent receives the balance consideration from the Loan partner net of subvention costs charged by the Loan partner to the Parent. The subvention costs being in the nature of interest paid on behalf of customers are netted off against revenue.

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

Under the aforesaid arrangements with Loan partners, the Parent has provided guarantees (First Loss Default Guarantees (FLDG)) to the Loan partners and is obligated to reimburse the Loan partners for any monthly instalments that remain uncollected by the Loan partner and stay overdue for a prescribed period (which typically ranges between "overdue for 75 days or 90 days" across the arrangements with the Loan partners). The Parent estimates fair value of the aforesaid guarantee obligations and accrues for the same.

The difference between the consideration received by the Parent from the (i) customer and the Loan partner and (ii) the fair value of the guarantee at the time of entering into the contract with the customer is recognised as revenue. The estimates of the fair value of guarantee are revisited at the end of every period closing and any changes in the fair value are accounted for as a change in the estimates.

(vi) In cases where the customers are provided deferred payment terms by the Parent, the customers are required to pay a part of the consideration ("down payment"), at the time the customers buys the product / services and the customers are also required to register an e-Nach mandate in favour of the Parent. Post payment of the down payment, the customer pays the balance consideration over the contract period (in monthly instalments which typically range from 3 months to 12 months).

2.7 **Revenue Recognition (Contd)**

In such cases, the Parent determines whether the terms of sale indicate the existence of a contract under the provisions of Ind AS 115 - Revenue from Contracts with Customers, with particular reference to whether there is a probability of collection of the consideration. Also refer Note 24

(vii) In cases where the contracts with customers includes promise to transfer multiple products and services (course material and tuition services), the Group evaluates whether each product or service promised to a customer is capable of being distinct, and is distinct in the context of the contract. If the product or service is not distinct, the promised product or service is combined and accounted as a single performance obligation. Also refer note 2.5,

(viii) Revenue relating to course fees is recognized proportionately based on the number of class availed vs total number of class expected to be availed.

(ix) Revenue from other services - Income is recognised as and when such services are performed.

(x) The Group provides discounts and cashbacks, which are considered as variable consideration and adjusted with the transaction price. The Group also provides a return policy pursuant to which the customers can return the product or cancel the contract, within 15 days of the transaction date. The Group estimates the provision of sale return at the year-end based on its past experience and subsequent returns.

(xi) The Group pays sales commission to its employees for each contract that they obtain from customers. The Group applies the optional practical expedient to immediately expense costs to obtain a contract if the amortisation period of the asset that would have been recognised is one year or less. As such, the costs to obtain the contracts are immediately recognised as an expense and included as part of employee benefits.

(xii) Revenue from coaching fees and franchises, is recognised over the period of the course / point in time (as applicable).

2.8 **Property, plant and equipment**

Property, plant and equipment assets are carried at cost less accumulated depreciation and impairment losses, if any. The cost of Property, plant and equipment assets comprises its purchase price net of any trade discounts and rebates, any import duties and other taxes (other than those subsequently recoverable from the tax authorities), any directly attributable expenditure on making the asset ready for its intended use and other incidental expenses.

Subsequent costs are included in the asset's carrying amount or recognized as a separate asset, as appropriate, only when it is probable that future economic benefits associated with the item will flow to the Group and the cost of the item can be measured reliably. The carrying amount of any component accounted for as a separate asset is derecognized when replaced. All other repairs and maintenance are charged to Statement of Profit and Loss during the year in which they are incurred.

An item of property, plant and equipment is derecognised upon disposal or when no future economic benefits are expected to arise from the continued use of the asset. Any gain or loss arising on the disposal or retirement of an item of property, plant and equipment is determined as the difference between the sales proceeds and the carrying amount of the asset and is recognised in the statement of profit and loss.

2.9 **Goodwill**

Goodwill represents the future economic benefits arising from a business combination that are not individually identified and separately recognised. Goodwill is carried at cost less accumulated impairment losses.

2.10 **Intangible assets**

**Acquired intangible assets**

Intangible assets that are acquired separately are carried at cost less accumulated amortisation and accumulated impairment losses.

**Internally generated intangible assets**

Research expenditure and development expenditure that do not meet the criteria as stated below are recognised as an expense as incurred. Development costs previously recognised as expense are not recognised as an asset in a subsequent period.

An internally-generated intangible asset arising from development (or from the development phase of an internal project) is recognised if, and only if, all of the following have been demonstrated:

- the technical feasibility of completing the intangible asset so that it will be available for use or sale;
- the intention to complete the intangible asset and use or sell it;
- the ability to use or sell the intangible asset;
- how the intangible asset will generate probable future economic benefits;
- the availability of adequate technical, financial and other resources to complete the development and to use or sell the intangible asset, and
- the ability to measure reliably the expenditure attributable to the intangible asset during its development.

The amount initially recognised for internally-generated intangible assets is the sum of the expenditure incurred from the date when the intangible asset first meets the recognition criteria listed above.

Subsequent to initial recognition, internally-generated intangible assets are reported at cost less accumulated amortisation and accumulated impairment losses, on the same basis as intangible assets that are acquired separately.

An intangible asset is derecognised upon disposal (i.e., at the date the recipient obtains control) or when no future economic benefits are expected from its use or disposal. Any gain or loss arising upon derecognition of the asset (calculated as the difference between the net disposal proceeds and the carrying amount of the asset) is included in the statement of profit and loss, when the asset is derecognised.

2.11 **Depreciation & amortization**

Depreciable amount for assets is the cost of an asset, or other amount substituted for cost, less its estimated residual value.

Depreciation on property, plant and equipment has been provided on the straight-line method as per the useful life prescribed in Schedule II to the Companies Act, 2013 except in respect of the following categories of assets, in whose case the life of the assets has been assessed as under based on technical advice, taking into account the nature of the asset, the estimated usage of the asset, the operating conditions of the asset, past history of replacement, anticipated technological changes, manufacturers warranties and maintenance support, etc.:

| Asset category | Useful life |
|---|---|
| Office equipments other than mobile handsets | 3-6 years |
| Office equipments - mobile handsets | 3 years |
| Computers | 3 years |
| Servers (included in computers) | 6 years |
| Furniture and Fixtures | 8-10 Years |
| Machinery | 5-15 Years |
| Building | 60 Years |
| Vehicles | 8 Years |
| Leasehold improvements | Primary period of the lease |

Leasehold improvements are depreciated over the lease term.

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

Intangible assets are amortised in the Statement of Profit and Loss over their estimated useful lives on straight line method, from the date that they are available for use. The Group amortises its intangible assets as follows

| Asset category | Useful life |
|---|---|
| Acquired Software | 3-6 years |
| Technology platform and content | 5-10 years |
| Trademarks, Patents and Brands | 5 years |
| Teacher network and other acquired intangibles | 4-10 years |
| Acquired Technical know-how | 5-10 years |
| **Internally generated intangibles:** | |
| Byju's Learning App(s) | 5 years |

Depreciation/amortisation method, useful lives and residual values are reviewed periodically at each financial year end and adjusted prospectively, as appropriate.

**2.12 Financial Instruments**

A financial instrument is any contract that gives rise to a financial asset of one entity and a financial liability or equity instrument of another entity.

**A) Financial assets**

**(i) Initial recognition and measurement**

At initial recognition, financial asset is measured at its fair value plus, in the case of a financial asset not at fair value through profit or loss, transaction costs that are directly attributable to the acquisition of the financial asset. Transaction costs of financial assets carried at fair value through profit or loss are expensed in profit or loss.

**(ii) Subsequent measurement**

For purposes of subsequent measurement, financial assets are classified in following categories:
a) at amortized cost, or
b) at fair value through other comprehensive income; or
c) at fair value through profit or loss
The classification depends on the entity's business model for managing the financial assets and the contractual terms of the cash flows.

**Amortized cost:** Assets that are held for collection of contractual cash flows where those cash flows represent solely payments of principal and interest are measured at amortized cost. Interest income from these financial assets is included in finance income using the effective interest rate method (EIR).

**Fair value through other comprehensive income (FVOCI):** Assets that are held for collection of contractual cash flows and for selling the financial assets, where the assets' cash flows represent solely payments of principal and interest, are measured at fair value through other comprehensive income (FVOCI). Movements in the carrying amount are taken through OCI, except for the recognition of impairment gains or losses, interest revenue and foreign exchange gains and losses which are recognized in Statement of Profit and Loss. When the financial asset is derecognized, the cumulative gain or loss previously recognized in OCI is reclassified from equity to Statement of Profit and Loss and recognized in other gains/ (losses). Interest income from these financial assets is included in other income using the effective interest rate method.

**Fair value through profit or loss (FVTPL):** Assets that do not meet the criteria for amortized cost or FVOCI are measured at fair value through profit or loss. Interest income from these financial assets is included in other income.

**(iii) Impairment of financial assets:**

The Group recognises loss allowances using the expected credit loss (ECL) model for the financial assets which are not fair valued through profit or loss. Loss allowance for trade receivables with no significant financing component is measured at an amount equal to lifetime ECL. For all other financial assets, expected credit losses are measured at an amount equal to the 12-month ECL, unless there has been a significant increase in credit risk from initial recognition in which case those are measured at lifetime ECL. The Group determines the allowance based on history of collections, customer's creditworthiness, existing market conditions as well as forward looking estimates at the end of each reporting period.

**(iv) Derecognition of financial assets:**

The Group derecognises a financial asset when the contractual rights to the cash flows from the asset expire, or when it transfers the financial asset and substantially all the risks and rewards of the ownership of the asset to another party. On derecognition of a financial asset in its entirety, the difference between the asset carrying amount and the sum of the consideration received and receivable is recognised in the statement of profit and loss.

Interest income is recognised as it accrues using effective interest method.
Dividend is accounted for when the right to receive it is established.

**(v) Cash and Cash equivalents**

Cash comprises cash on hand and demand deposits with banks. Cash equivalents are short-term (with an original maturity of three months or less from the date of acquisition), highly liquid investments that are readily convertible into known amounts of cash and which are subject to insignificant risk of changes in value.

**B) Financial liabilities**

**(i) Initial recognition and measurement**

Financial liabilities are classified, at initial recognition, as financial liabilities at fair value through profit or loss and at amortized cost, as appropriate.
All financial liabilities are recognized initially at fair value and, in the case of borrowings and payables, net of directly attributable transaction costs.

**(ii) Subsequent measurement**

The measurement of financial liabilities depends on their classification, as described below:

*Financial liabilities at fair value through profit or loss*

Financial liabilities at fair value through profit or loss include financial liabilities held for trading and financial liabilities designated upon initial recognition as at fair value through profit or loss. Separated embedded derivatives are also classified as held for trading unless they are designated as effective hedging instruments. Gains or losses on liabilities held for trading are recognized in the Statement of Profit and Loss.

*Financial liabilities at amortised cost*

Such financial liabilities are measured at amortised cost using the effective interest method. Interest expense and foreign exchange gains/losses are recognized in Statement of Profit and Loss.

**(iii) Loans and borrowings**

After initial recognition, interest-bearing loans and borrowings are subsequently measured at amortized cost using the EIR method. Gains and losses are recognized in Statement of Profit and Loss when the liabilities are derecognized as well as through the EIR amortization process. Amortized cost is calculated by taking into account any discount or premium on acquisition and fees or costs that are an integral part of the EIR. The EIR amortization is included as finance costs in the Statement of Profit and Loss.

**(iv) Equity instruments**

An equity instrument is a contract that evidences residual interest in the assets of the Group after deducting all of its liabilities. Equity instruments recognised by the Group are recognised at the proceeds received net of direct issue costs.

**(v) Derecognition of financial liabilities**

The Group derecognises financial liabilities when, and only when, the Group's obligations are discharged, cancelled or have expired. The difference between the carrying amount of the financial liability derecognised and the consideration paid and payable is recognised in the statement of profit and loss.

**vi) Offsetting financial instruments**

Financial assets and liabilities are offset and the net amount is reported in the balance sheet where there is a legally enforceable right to offset the recognized amounts and there is an intention to settle on a net basis or realize the asset and settle the liability simultaneously. The legally enforceable right must not be contingent on future events and must be enforceable in the normal course of business and in the event of default, insolvency or bankruptcy of the Group or the counterparty.

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. ★ Bangalore

**2.13 Foreign currency transactions and translations**

Transactions in foreign currencies are recorded at the exchange rate prevailing on the date of transaction. Monetary assets and liabilities denominated in foreign currencies are translated at the functional currency closing rates of exchange at the reporting date.

Exchange differences arising on settlement or translation of monetary items are recognised in the Statement of Profit and Loss except to the extent of exchange differences which are regarded as an adjustment to interest costs on foreign currency borrowings that are directly attributable to the acquisition or construction of qualifying assets, are capitalized as cost of assets.

Non-monetary items that are measured in terms of historical cost in foreign currencies are not retranslated. Income and expense items in foreign currency are translated at the average exchange rates for the period, unless exchange rates fluctuate significantly during that period, in which case the exchange rates at the dates of the transactions are used.
Non-monetary items measured at fair value in a foreign currency are translated using the exchange rates at the date when the fair value is determined. The gain or loss arising on translation of non-monetary items measured at fair value is treated in line with the recognition of the gain or loss on the change in fair value of the item (i.e., translation differences on items whose fair value gain or loss is recognised in OCI or profit or loss are also recognised in OCI or profit or loss, respectively).

**2.14 Fair value measurement**

The Group measures financial instruments, such as, derivatives at fair value at each balance sheet date.
Fair value is the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date. The fair value measurement is based on the presumption that the transaction to sell the asset or transfer the liability takes place either:
► In the principal market for the asset or liability, or
► In the absence of a principal market, in the most advantageous market for the asset or liability accessible to the Group.

The Group uses valuation techniques that are appropriate in the circumstances and for which sufficient data are available to measure fair value, maximizing the use of relevant observable inputs and minimizing the use of unobservable inputs. The Group management determines the policies and procedures for fair value measurement such as derivative instrument.

All assets and liabilities for which fair value is measured or disclosed in the financial statements are categorized within the fair value hierarchy, described as follows, based on the lowest level input that is significant to the fair value measurement as a whole:
► Level 1 — Quoted (unadjusted) market prices in active markets for identical assets or liabilities
► Level 2 — Valuation techniques for which the lowest level input that is significant to the fair value measurement is directly or indirectly observable
► Level 3 — Valuation techniques for which the lowest level input that is significant to the fair value measurement is unobservable.

**2.15 Employee Benefits**

Employee benefits include provident fund, employee state insurance scheme, gratuity fund and compensated absences.

Defined Contribution Plans:
The Group's contribution to provident fund and employee state insurance scheme are considered as defined contribution plans and are charged as an expense based on the amount of contribution required to be made and when services are rendered by the employees.

Defined Benefit Plans:

For defined benefit retirement benefit plans, the cost of providing benefits is determined using the projected unit credit method, with actuarial valuations being carried out at the end of each annual reporting period. Remeasurement, comprising actuarial gains and losses and the return on plan assets (excluding net interest), is reflected immediately in the balance sheet with a charge or credit recognised in other comprehensive income in the period in which they occur. Remeasurement recognised in other comprehensive income is reflected immediately in retained earnings and is not reclassified to the statement of profit and loss. Past service cost is recognised in the statement of profit and loss in the period of a plan amendment. Net interest is calculated by applying the discount rate at the beginning of the period to the net defined benefit liability or asset. Defined benefit costs are categorised as follows:

a) service cost (including current service cost, past service cost, as well as gains and losses on curtailments and settlements);
b) net interest expense or income; and
c) remeasurement.

The Group presents the first two components of defined benefit costs in the statement of profit and loss in the line item 'Employee benefits expense'. Curtailment gains and losses are accounted for as past service cost. Remeasurement impact is accounted in Other Comprehensive Income (OCI).

Short-term employee benefits:
The undiscounted amount of short-term employee benefits expected to be paid in exchange for the services rendered by employees are recognised during the year when the employees render the service. These benefits include performance incentive and compensated absences which are expected to occur within twelve months after the end of the period in which the employee renders the related service.

The cost of short-term compensated absences is accounted as under :
(a) in case of accumulated compensated absences, when employees render the services that increase their entitlement of future compensated absences, and
(b) in case of non-accumulating compensated absences, when the absences occur.
Long-term employee benefits:
Compensated absences which are not expected to occur within twelve months after the end of the period in which the employee renders the related service are recognised as a liability at the present value of the defined benefit obligation as at the balance sheet date less the fair value of the plan assets out of which the obligations are expected to be settled. Long service awards are recognised as a liability at the present value of the defined benefit obligation as at the balance sheet date.

**2.16 Share based payments**

Equity-settled share based payments to employees and other providing similar services are measured at the fair value of the equity instruments at the grant date. Details regarding the determination of the fair value of equity-settled share-based payment transactions are set out in note 52. The fair value determined at the grant date of the equity-settled share based payments is expensed on a straight line basis over the vesting period, based on the Group's estimate of equity instruments that will eventually vest, with a corresponding increase in equity. At the end of each reporting period, the Group revises its estimate of the number of equity instruments expected to vest. The impact of the revision of the original estimates, if any, is recognised in the statement of profit and loss such that the cumulative expenses reflect the revised estimate, with a corresponding adjustment to the Share based payments reserve.
The dilutive effect of outstanding options is reflected as additional share dilution in the computation of diluted earnings per share.

**2.17 Leases**

**The Group as a lessee**
The Group assesses whether a contract contains a lease, at inception of a contract. A contract is, or contains, a lease if the contract conveys the right to control the use of an identified asset for a period of time in exchange for consideration. To assess whether a contract conveys the right to control the use of an identified asset, the Group assesses whether: (i) the contract involves the use of an identified asset (ii) the Group has substantially all of the economic benefits from use of the asset through the period of the lease and (iii) the Group has the right to direct the use of the asset.

The Group recognises a right-of-use asset and a lease liability at the lease commencement date. The right-of-use asset is initially measured at cost, which comprises the initial amount of the lease liability adjusted for any lease payments made at or before the commencement date, plus any initial direct costs incurred and an estimate of costs to dismantle and remove the underlying asset or to restore the underlying asset or the site on which it is located, less any lease incentives received.

The right-of-use asset is subsequently depreciated using the straight-line method from the commencement date to the end of the lease term.
The lease liability is initially measured at the present value of the lease payments that are not paid at the commencement date, discounted using the Group's incremental borrowing rate. It is remeasured when there is a change in future lease payments arising from a change in an index or rate, if there is a change in the Group's estimate of the amount expected to be payable under a residual value guarantee, or if the Group changes its assessment of whether it will exercise a purchase, extension or termination option. When the lease liability is remeasured in this way, a corresponding adjustment is made to the carrying amount of the right-of-use asset, or is recorded in profit or loss if the carrying amount of the right-of-use asset has been reduced to zero.

The Group has elected not to recognise right-of-use assets and lease liabilities for short-term leases that have a lease term of 12 months or less and leases of low-value assets. The Group recognises the lease payments associated with these leases as an expense over the lease term.

MSKA & ASSOCIATES * Chartered Accountants *

Think and Learn Pvt. Ltd. Bangalore *

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

2.18 **Earnings per share**

Basic earnings per share is computed by dividing the profit / (loss) for the year attributable to equity shareholders by the weighted average number of equity shares outstanding during the year. Diluted earnings per share is computed by dividing the profit / (loss) for the year as adjusted for dividend, interest and other charges to expense or income (net of any attributable taxes) relating to the dilutive potential equity shares, by the weighted average number of equity shares considered for deriving basic earnings per share and the weighted average number of equity shares which could have been issued on the conversion of all dilutive potential equity shares. Potential equity shares are deemed to be dilutive only if their conversion to equity shares would decrease the net profit per share or increase the net loss per share from continuing ordinary operations. Potential dilutive equity shares are deemed to be converted as at the beginning of the period, unless they have been issued at a later date. The dilutive potential equity shares are adjusted for the proceeds receivable had the shares been actually issued at fair value (i.e. average market value of the outstanding shares). Dilutive potential equity shares are determined independently for each period presented. The number of equity shares and potentially dilutive equity shares are adjusted for share splits / reverse share splits and bonus shares, as appropriate.

2.19 Taxes

Tax expense for the year, comprising current tax and deferred tax, are included in the determination of the net profit or loss for the year.

**(i) Current income tax:**

Current tax assets and liabilities are measured at the amount expected to be recovered or paid to the taxation authorities. The tax rates and tax laws used to compute the amount are those that are enacted or substantively enacted, at the year/period end date. Current tax assets and tax liabilities are offset where the entity has a legally enforceable right to offset and intends either to settle on a net basis, or to realize the asset and settle the liability simultaneously.

**(ii) Deferred tax:**

Deferred income tax is provided in full, using the balance sheet approach, on temporary differences arising between the tax bases of assets and liabilities and their carrying amounts in financial statements. Deferred income tax is also not accounted for if it arises from initial recognition of an asset or liability in a transaction other than a business combination that at the time of the transaction affects neither accounting profit nor taxable profit (tax loss). Deferred income tax is determined using tax rates (and laws) that have been enacted or substantially enacted by the end of the year and are expected to apply when the related deferred income tax asset is realised or the deferred income tax liability is settled.

The carrying amount of deferred tax assets is reviewed at the end of each reporting period and reduced to the extent that it is no longer probable that sufficient taxable profits will be available to allow all or part of the asset to be recovered.

Deferred tax assets are recognised for all deductible temporary differences and unused tax losses only if it is probable that future taxable amounts will be available to utilize those temporary differences and losses.

Management periodically evaluates positions taken in tax returns with respect to situations in which applicable tax regulation is subject to interpretation. It establishes provisions where appropriate on the basis of amounts expected to be paid to the tax authorities.

Deferred tax assets and liabilities are offset when there is a legally enforceable right to offset current tax assets and liabilities and when the deferred tax balances relate to the same taxation authority. Current tax assets and tax liabilities are offset where the entity has a legally enforceable right to offset and intends either to settle on a net basis, or to realise the asset and settle the liability simultaneously.

Minimum Alternate Tax (MAT) paid in accordance with the tax laws, which gives future economic benefits in the form of adjustment to future income tax liability, is considered as an asset if there is convincing evidence that the Group will pay normal income tax. Accordingly, MAT is recognised as an deferred tax asset in the Balance Sheet when it is probable that future economic benefit associated with it will flow to the Group.

Current and deferred tax are recognised in the statement of profit and loss, except when they relate to items that are recognised in other comprehensive income (OCI) or directly in equity, in which case, the current and deferred tax are also recognised in OCI or directly in equity respectively.

2.20 **Provisions and contingent liabilities**

Provisions are recognized when there is a present obligation as a result of a past event, it is probable that an outflow of resources embodying economic benefits will be required to settle the obligation and there is a reliable estimate of the amount of the obligation. Provisions are measured at the best estimate of the expenditure required to settle the present obligation at the Balance sheet date.
If the effect of the time value of money is material, provisions are discounted using a current pre-tax rate that reflects, when appropriate, the risks specific to the liability. When discounting is used, the increase in the provision due to the passage of time is recognized as a finance cost.

Contingent liabilities are disclosed when there is a possible obligation arising from past events, the existence of which will be confirmed only by the occurrence or non occurrence of one or more uncertain future events not wholly within the control of the Group or a present obligation that arises from past events where it is either not probable that an outflow of resources will be required to settle or a reliable estimate of the amount cannot be made. Contingent liabilities are disclosed in the note 32. Contingent assets are not recognised in the consolidated financial statements.

2.21 **Inventories**

Inventories are valued at the lower of cost (on weighted average basis) and the net realisable value after providing for obsolescence and other losses, where considered necessary. Cost includes all charges in bringing the goods to the point of sale, including octroi and other levies, transit insurance and receiving charges.
Purchases of edutech products mainly represents books, SD Cards, tablets and tech embedded devices.

On transfer of inventory to customer, the cost of inventories is recognised as an expense in statement of profit and loss.

2.22 **Impairment of non-financial assets**

At the end of each reporting period, the Group reviews the carrying amounts of its tangible and intangible assets to determine whether there is any indication that those assets have suffered an impairment loss. If any such indication exists, the recoverable amount of the asset is estimated in order to determine the extent of the impairment loss (if any). When it is not possible to estimate the recoverable amount of an individual asset, the Group estimates the recoverable amount of the cash-generating unit to which the asset belongs. When a reasonable and consistent basis of allocation can be identified, corporate assets are also allocated to individual cash-generating units, or otherwise they are allocated to the smallest group of cash-generating units for which a reasonable and consistent allocation basis can be identified.

Goodwill and other intangible assets not yet available for use are tested for impairment at least annually, and whenever there is an indication that the asset may be impaired.

The recoverable amount of an asset or cash-generating unit (as defined below) is the greater of its value in use and its fair value less costs to sell. In assessing value in use, the estimated future cash flows are discounted to their present value using a pre-tax discount rate that reflects current market assessments of the time value of money and the risks specific to the asset. For the purpose of impairment testing, assets are grouped together into the smallest group of assets that generates cash in flows from continuing use that are largely independent of the cash inflows of other assets or groups of assets (the "cash-generating unit").

If the recoverable amount of an asset (or cash-generating unit) is estimated to be less than its carrying amount, the carrying amount of the asset (or cash-generating unit) is reduced to its recoverable amount. An impairment loss is recognised immediately in the statement of profit and loss.
When an impairment loss subsequently reverses, the carrying amount of the asset (or a cash-generating unit) is increased to the revised estimate of its recoverable amount, so that the increased carrying amount does not exceed the carrying amount that would have been determined had no impairment loss been recognised for the asset (or cash-generating unit) in prior years. A reversal of an impairment loss is recognised immediately in the statement of profit and loss.

MSKA & ASSOCIATES
Chartered Accountants

Think and Learn Pvt. Ltd.
Bangalore

**2.23 Segment reporting**

Operating segments are reported in the manner consistent with the internal reporting to the chief operating decision maker (CODM). The Group identifies primary segments based on the dominant source, nature of risks and returns and the internal organisation and management structure. The operating segments are the segments for which separate financial information is available and for which operating profit / loss amounts are evaluated regularly by the executive Management in deciding how to allocate resources and in assessing performance.

Segment revenue, segment expenses, segment assets and segment liabilities have been identified to segments on the basis of their relationship to the operating activities of the segment.

**2.24 Business combinations**

Business combinations have been accounted for using the acquisition method under the provisions of Ind AS 103, Business Combinations. The cost of an acquisition is measured at the fair value of the assets transferred equity instruments issued and liabilities incurred or assumed at the date of acquisition, which is the date on which control is transferred to the Group. The cost of acquisition also includes the fair value of any contingent consideration. Identifiable assets acquired and liabilities and contingent liabilities assumed in a business combination are measured initially at their fair value on the date of acquisition. Contingent consideration is remeasured at fair value at each reporting date and changes in the fair value of the contingent consideration are recognized in the Consolidated Statement of Profit and Loss.

The interest of non-controlling shareholders is initially measured either at fair value or at the non-controlling interests' proportionate share of the acquiree's identifiable net assets. The choice of measurement basis is made on an acquisition-by-acquisition basis. Subsequent to acquisition, the carrying amount of non-controlling interests is the amount of those interests at initial recognition plus the non-controlling interests' share of subsequent changes in equity of subsidiaries.

The payments related to options issued by the Group over the non-controlling interests in its subsidiaries are accounted as financial liabilities and initially recognized at the estimated present value of gross obligations. Such options are subsequently measured at fair value in order to reflect the amount payable under the option at the date at which it becomes exercisable. In the event that the option expires unexercised, the liability is derecognized. Business combinations between entities under common control is accounted for at carrying value of the assets and liabilities in the Group's Consolidated financial statements.

Transaction costs that the Group incurs in connection with a business combination such as legal fees, due diligence fees, and other professional and consulting fees are expensed as incurred.

The consideration transferred does not include amounts related to the settlement of pre-existing relationships with the acquiree. Such amounts are generally recognised in the statement of profit and loss.

If the initial accounting for a business combination is incomplete by the end of the reporting period in which the business combination occurs, the Group reports in its financial statements provisional amounts for the items for which the accounting is incomplete. During the measurement period, the Group retrospectively adjusts the provisional amounts recognised at the acquisition date to reflect new information obtained about facts and circumstances that existed as of the acquisition date and, if known, would have affected the measurement of the amounts recognised as of that date.

During the measurement period, the Group also recognises additional assets or liabilities if new information is obtained about facts and circumstances that existed as of the acquisition date and, if known, would have resulted in the recognition of those assets and liabilities as of that date.

The measurement period ends as soon as the Group receives the information it was seeking about facts and circumstances that existed as of the acquisition date or learns that more information is not obtainable but does not exceed one year from the acquisition date.

**2.25 Operating Cycle**

Based on the nature of products/ activities of the Group and the normal time between acquisition of assets and their realization in cash or cash equivalents, the Group has determined its operating cycle as 12 months for the purpose of classification of its assets and liabilities as current and non-current.

**2.26 Exceptional items**

An item of income or expense which by its size, nature or incidence requires disclosure in order to improve an understanding of the performance of the Group is treated as an exceptional item and disclosed separately in the financial statements.

**2.27 Rounding off amounts**

All amounts disclosed in financial statements and notes have been rounded off to the nearest crores as per requirement of Schedule III of the Act, unless otherwise stated.

**2.28 Recent pronouncements**

The Ministry of Corporate Affairs (MCA) notifies new standards or amendments to the existing standards under Companies (Indian Accounting Standards) Rules as issued from time to time. On March 23, 2022, MCA amended the Companies (Indian Accounting Standards) Amendment Rules, 2022, as below.

(i) Ind AS 16, Property Plant and equipment – The amendment clarifies that excess of net sale proceeds of items produced over the cost of testing, if any, shall not be recognized in the profit or loss but deducted from the directly attributable costs considered as part of cost of an item of property, plant, and equipment. The effective date for adoption of this amendment is annual periods beginning on or after April 1, 2022. The Group has evaluated the amendment and there is no impact on its Consolidated financial statements.

(ii) Ind AS 37, Provisions, Contingent Liabilities and Contingent Assets – The amendment specifies that the 'cost of fulfilling' a contract comprises the 'costs that relate directly to the contract'. Costs that relate directly to a contract can either be incremental costs of fulfilling that contract (examples would be direct labor, materials) or an allocation of other costs that relate directly to fulfilling contracts (an example would be the allocation of the depreciation charge for an item of property, plant and equipment used in fulfilling the contract). The effective date for adoption of this amendment is annual periods beginning on or after April 1, 2022, although early adoption is permitted. The Group has evaluated the amendment and there is no impact on its Consolidated financial statements.

The Ministry of Corporate Affairs (MCA) notifies new standards or amendments to the existing standards under Companies (Indian Accounting Standards) Rules as issued from time to time. On March 31, 2023, MCA amended the Companies (Indian Accounting Standards) Amendment Rules, 2023, as below.

(i) Ind AS 1, Presentation of Financial Statements – This amendment requires the entities to disclose their material accounting policies rather than their significant accounting policies. The effective date for adoption of this amendment is annual periods beginning on or after April 1, 2023. The Group has evaluated the amendment and the impact of the amendment is insignificant in the Consolidated financial statements.

(ii) Ind AS 8, Accounting Policies, Changes in Accounting Estimates and Errors – This amendment has introduced a definition of 'accounting estimates' and included amendments to Ind AS 8 to help entities distinguish changes in accounting policies from changes in accounting estimates. The effective date for adoption of this amendment is annual periods beginning on or after April 1, 2023. The Group has evaluated the amendment and there is no impact on its Consolidated financial statements.

(iii) Ind AS 12, Income Taxes – This amendment has narrowed the scope of the initial recognition exemption so that it does not apply to transactions that give rise to equal and offsetting temporary differences. The effective date for adoption of this amendment is annual periods beginning on or after April 1, 2023. The Group has evaluated the amendment and there is no impact on its Consolidated financial statements.

The other amendments to Ind AS notified by these rules are primarily in the nature of clarifications.

**2.29 Events after the reporting date**

Where events occurring after the consolidated balance sheet date provide evidence of conditions that existed as at the end of the reporting period, the impact of such events is adjusted within the financial statements. Otherwise, events after the consolidated balance sheet date of material size or nature are only disclosed.

MSKA & ASSOCIATES Chartered Accountants

("This space has been intentionally left blank")

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**3 Property, plant and equipment**

| Particulars | Leasehold improvements | Computers | Furniture and fixtures | Machinery Refer note (ii) | Office equipment | Buildings | Vehicles | Total |
|---|---|---|---|---|---|---|---|---|
| **Gross carrying value** | | | | | | | | |
| As at 1 April 2020 | 9.34 | 75.13 | 1.85 | - | 20.05 | - | - | 106.37 |
| Additions | 4.30 | 21.48 | 0.02 | 14.95 | 34.39 | - | - | 75.14 |
| Additions through Business combination | - | 0.10 | - | - | 0.14 | - | - | 0.24 |
| Disposals | - | 0.28 | - | - | 1.34 | - | - | 1.62 |
| Translation differences | (0.01) | - | - | - | - | - | - | (0.01) |
| **As at 31 March 2021** | **13.63** | **96.43** | **1.87** | **14.95** | **53.24** | **-** | **-** | **180.12** |
| As at 1 April 2021 | 13.63 | 96.43 | 1.87 | 14.95 | 53.24 | - | - | 180.12 |
| Additions | 25.230 | 87.514 | 7.913 | - | 37.364 | - | 0.10 | 158.11 |
| Additions through Business combination | 61.42 | 21.83 | 18.39 | 2.17 | 28.55 | 10.94 | 2.90 | 146.20 |
| Disposals | 0.77 | 41.35 | 0.03 | 0.04 | 0.11 | - | 0.71 | 43.01 |
| Translation differences | 0.18 | (0.46) | (0.23) | - | 1.36 | - | - | 0.85 |
| **As at 31 March 2022** | **99.69** | **163.96** | **27.91** | **17.08** | **120.40** | **10.94** | **2.29** | **442.27** |
| **Accumulated depreciation** | | | | | | | | |
| As at 1 April 2020 | 5.17 | 28.23 | 0.46 | - | 7.56 | - | - | 41.42 |
| Depreciation for the year | 2.63 | 26.23 | 0.12 | 1.00 | 5.69 | - | - | 35.67 |
| Disposals | - | 0.21 | - | - | 1.34 | - | - | 1.55 |
| **As at 31 March 2021** | **7.80** | **54.25** | **0.58** | **1.00** | **11.91** | **-** | **-** | **75.54** |
| As at 1 April 2021 | 7.80 | 54.25 | 0.58 | 1.00 | 11.91 | - | - | 75.54 |
| Depreciation for the year | 15.06 | 39.73 | 2.90 | 1.21 | 25.04 | 0.11 | 0.35 | 84.40 |
| Disposals | 0.69 | 40.98 | 0.01 | 0.04 | 0.07 | - | - | 41.79 |
| **As at 31 March 2022** | **22.17** | **53.00** | **3.47** | **2.17** | **36.88** | **0.11** | **0.35** | **118.14** |
| **Net Carrying amount** | | | | | | | | |
| **As at 31 March 2021** | **5.83** | **42.18** | **1.29** | **13.95** | **41.33** | **-** | **-** | **104.58** |
| **As at 31 March 2022** | **77.52** | **110.96** | **24.44** | **14.91** | **83.52** | **10.83** | **1.94** | **324.12** |

**Notes:**
(i) All assets are owned by the Group, unless stated as taken on lease.
(ii) Assets lying with third party

**3 (a) Capital work in progress**

| Particulars | Balance as at 31 March, 2021 | Additions through Business combination | Additions during the year | Capitalisation during the year | Balance as at 31 March, 2022 |
|---|---|---|---|---|---|
| Leasehold Improvements | - | 0.22 | 66.44 | - | 66.66 |
| Computers | - | 0.21 | 7.76 | - | 7.97 |
| Furniture and Fixtures | - | 0.13 | 1.50 | - | 1.63 |
| Office equipments | - | 0.65 | 26.46 | - | 27.11 |
| **Total** | - | 1.21 | 102.16 | - | 103.37 |

| Particulars | Balance as at 31 March, 2020 | Additions through Business combination | Additions during the year | Capitalisation during the year | Balance as at 31 March, 2021 |
|---|---|---|---|---|---|
| Leasehold Improvements | - | - | - | - | - |
| Computers | - | - | - | - | - |
| Furniture and Fixtures | - | - | - | - | - |
| Office equipments | - | - | - | - | - |
| **Total** | - | - | - | - | - |

**(i) Ageing of CWIP**

| As at 31 March, 2022 | Amounts in capital work-in-progress for a period of | | | | Total |
|---|---|---|---|---|---|
| | Less than 1 year | 1 – 2 years | 2 – 3 years | More than 3 years | |
| Projects in progress | 103.37 | - | - | - | 103.37 |
| Projects temporarily suspended | - | - | - | - | - |
| **Total** | **103.37** | - | - | - | **103.37** |

| As at 31 March, 2021 | Amounts in capital work-in-progress for a period of | | | | Total |
|---|---|---|---|---|---|
| | Less than 1 year | 1 – 2 years | 2 – 3 years | More than 3 years | |
| Projects in progress | - | - | - | - | - |
| | - | - | - | - | - |

(ii) There are no projects as Capital Work in Progess as at 31 March 2022 and 31 March 2021, whose completion is overdue or cost of which has exceeds in comparison to its original plan

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

4 Right-of-use assets

| Particulars | Buildings | Computers | Office Equipment | Total |
|---|---|---|---|---|
| **Gross carrying value** | | | | |
| As at 1 April 2020 | 231.64 | 32.71 | 4.76 | 269.11 |
| Additions | 115.93 | 7.11 | - | 123.04 |
| Disposals | 10.75 | - | - | 10.75 |
| Translation differences | - | - | - | - |
| **As at 31 March 2021** | **336.82** | **39.82** | **4.76** | **381.40** |
| As at 1 April 2021 | 336.82 | 39.82 | 4.76 | 381.40 |
| Additions | 1,320.48 | 16.08 | - | 1,336.56 |
| Additions through business combination | 110.97 | - | - | 110.97 |
| Disposals | 31.15 | 26.81 | - | 57.96 |
| Translation differences | 0.18 | - | - | 0.18 |
| **As at 31 March 2022** | **1,737.30** | **29.09** | **4.76** | **1,771.15** |
| **Accumulated depreciation** | | | | |
| As at 1 April 2020 | 47.00 | 11.15 | 0.88 | 59.03 |
| Depreciation expense | 66.06 | 13.12 | 1.22 | 80.40 |
| Disposals / adjustments | 4.63 | - | - | 4.63 |
| **As at 31 March 2021** | **108.44** | **24.27** | **2.10** | **134.80** |
| As at 1 April 2021 | 108.44 | 24.27 | 2.10 | 134.80 |
| Depreciation expense | 226.31 | 14.91 | 0.48 | 241.70 |
| Disposals / adjustments | 30.23 | 26.81 | - | 57.04 |
| **As at 31 March 2022** | **304.52** | **12.37** | **2.58** | **319.46** |
| **Net carrying amount** | | | | |
| **As at 31 March 2021** | **228.38** | **15.55** | **2.66** | **246.60** |
| **As at 31 March 2022** | **1,432.78** | **16.72** | **2.18** | **1,451.69** |

5 (a) Goodwill

Goodwill on business acquisition is as follows:

| Particulars | As at 31 March, 2022 | As at 31 March, 2021 |
|---|---|---|
| Balance at the beginning of the year | 1,708.53 | 617.24 |
| Business combinations occurred during the year (Refer Note 39-48) | 14,099.22 | 1,106.28 |
| Effect of foreign currency exchange differences | 119.70 | (14.99) |
| **Total** | **15,927.45** | **1,708.53** |

(b) Goodwill

As at 31 March 2022, the goodwill are tested for impairment at the respective Cash Generating Unit (CGU) level. The value-in-use for the respective Cash Generating Units (CGU) is determined based on discounted future cash flows. The key assumptions used for the calculations are as follows:

| Particulars | Tangible Play Inc | Whitehat Jr |
|---|---|---|
| Long term growth rate | 2.50% | 4.00% |
| Revenue growth rate | CAGR of 28% over a forecast of 7 years | CAGR of 39% over a forecast of 10 years |
| Discount rate | 17.00% | 17.00% |

| Particulars | EPIC Inc | Byju's PTE |
|---|---|---|
| Long term growth rate | 2.00% | 2.00% |
| Revenue growth rate | CAGR of 29% over a forecast of 8 years | CAGR of 30% over a forecast of 8 years |
| Discount rate | 14.60% | 15.20% |

| Particulars | Insplearn LLC | GeoGebra |
|---|---|---|
| Long term growth rate | 2.00% | 2.00% |
| Revenue growth rate | CAGR of 49% over a forecast of 10 years | CAGR of 37% over a forecast of 8 years |
| Discount rate | 13.90% | 12.80% |

| Particulars | Great Lakes E-Learning Services | Grade Stack Learning |
|---|---|---|
| Long term growth rate | 5.00% | 4.00% |
| Revenue growth rate | CAGR of 23% over a forecast of 8 years | CAGR of 39% over a forecast of 8 years |
| Discount rate | 17.50% | 21.80% |

| Particulars | Toppr Technologies | Aakash Educational Services |
|---|---|---|
| Long term growth rate | 4.00% | 5.00% |
| Revenue growth rate | CAGR of 26% over a forecast of 7 years | CAGR of 27% over a forecast of 7 years |
| Discount rate | 16.20% | 14.50% |

As at 31 March 2022, the estimated recoverable amount of the CGU exceeded its carrying amount. Reasonable sensitivities in key assumptions is unlikely to cause the carrying amount to exceed the recoverable amount of the cash generating units.

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

6 (a) Intangible assets

| Particulars | Software | Trademarks and Patents | Byju's Learning App | Technology platform and contents | Brands | Technical Know hows | Teacher network and other intangibles | Total |
|---|---|---|---|---|---|---|---|---|
| **Gross carrying value** | | | | | | | | |
| As at 1 April 2020 | 24.52 | 137.56 | 531.53 | - | 2.03 | 277.09 | - | 972.73 |
| Additions (refer note 6 (b) below) | 0.65 | - | 920.36 | - | - | 0.02 | - | 921.03 |
| Additions through business combinations | 3.02 | - | - | 597.70 | 115.00 | 13.84 | 34.07 | 763.64 |
| Disposals/adjustments | 0.04 | - | - | - | (0.53) | - | - | (0.49) |
| Translation differences | - | - | - | - | - | - | - | - |
| **As at 31 March 2021** | 28.15 | 137.56 | 1,451.89 | 597.70 | 117.56 | 290.95 | 34.07 | 2,657.89 |
| As at 1 April 2021 | 28.15 | 137.56 | 1,451.89 | 597.70 | 117.56 | 290.95 | 34.07 | 2,657.89 |
| Additions (refer note 6 (b) below) | 4.00 | - | 1,324.81 | 12.60 | - | - | - | 1,341.41 |
| Additions through business combinations | 38.01 | 902.41 | 232.53 | 658.63 | 977.36 | 235.00 | 1,545.95 | 4,589.88 |
| Disposals/adjustments | 8.28 | 0.17 | (2.09) | (1.16) | 1.15 | 9.80 | (12.70) | 3.45 |
| Translation differences | (0.06) | 6.53 | 14.89 | (0.03) | 9.94 | 12.69 | 23.78 | 67.74 |
| **As at 31 March 2022** | 61.82 | 1,046.33 | 3,026.21 | 1,270.06 | 1,103.71 | 528.84 | 1,616.50 | 8,653.47 |
| **Accumulated depreciation** | | | | | | | | |
| As at 1 April 2020 | 6.18 | 30.35 | 160.12 | - | 1.01 | 62.39 | - | 260.05 |
| Amortisation for the year | 2.88 | 28.83 | 153.00 | 38.15 | 14.79 | 61.23 | 4.45 | 303.32 |
| Disposals/adjustments | 0.01 | - | - | - | - | - | - | 0.01 |
| **As at 31 March 2021** | 9.05 | 59.18 | 313.12 | 38.15 | 15.80 | 123.62 | 4.45 | 563.34 |
| As at 1 April 2021 | 9.05 | 59.18 | 313.12 | 38.15 | 15.80 | 123.62 | 4.45 | 563.34 |
| Amortisation for the year | 8.31 | 98.35 | 329.92 | 126.89 | 107.95 | 64.87 | 124.96 | 861.25 |
| Disposals/adjustments | (0.40) | - | (3.45) | (0.04) | - | 0.44 | (0.03) | (3.48) |
| **As at 31 March 2022** | 17.76 | 157.53 | 646.49 | 165.08 | 123.75 | 188.05 | 129.42 | 1,428.08 |
| **Net carrying amount** | | | | | | | | |
| **As at 31 March 2021** | 19.10 | 78.38 | 1,138.77 | 559.55 | 101.76 | 167.33 | 29.62 | 2,094.55 |
| **As at 31 March 2022** | 44.06 | 888.80 | 2,379.72 | 1,104.98 | 979.96 | 340.79 | 1,487.08 | 7,225.39 |

(b) Cost of intangible assets under development

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Balance at the beginning of the year | 1,390.88 | 1,230.54 |
| Add: Directly attributable costs | - | - |
| Employee benefits expense (refer note 27) | 891.73 | 376.73 |
| Depreciation and interest (refer note 29 and 28) | 17.90 | 30.56 |
| Professional and other services (refer note 30) | 582.96 | 408.94 |
| | 1,492.59 | 816.23 |
| Less: Capitalized during the year | 781.18 | 655.89 |
| **Closing balance at the end of the year** | 2,102.29 | 1,390.88 |

Note 1: All assets are owned by the Company, unless stated as taken on lease.

(c) Intangible assets under development ageing schedule

As at 31 March 2022

| Intangible assets under development | Amount in Intangible under development for a period of | | | | Total |
|---|---|---|---|---|---|
| | Less than 1 year | 1-2 years | 2-3 years | More than 3 years | |
| Projects in progress | 1,183.22 | 902.57 | - | 16.50 | 2,102.29 |
| Projects temporarily suspended | - | - | - | - | - |
| **Total** | 1,183.22 | 902.57 | - | 16.50 | 2,102.29 |

As at 31 March 2021

| Intangible assets under development | Amount in Intangible Assets under development for a period of | | | | Total |
|---|---|---|---|---|---|
| | Less than 1 year | 1-2 years | 2-3years | More than 3 years | |
| Projects in progress | 1,087.26 | 287.11 | - | 16.51 | 1,390.88 |
| Projects temporarily suspended | - | - | - | - | - |
| Total | 1,087.26 | 287.11 | - | 16.51 | 1,390.88 |

(d) There are no projects as intangible assets under development as at 31 March 2022 and 31 March 2021, whose completion is overdue or cost of which has exceeds in comparison to its original plan.

MSKA & ASSOCIATES Chartered Accountants

("This space has been intentionally left blank")

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**7 Loans**

**(a) Non-current**

| **Particulars** | **As at 31 March 2022** | **As at 31 March 2021** |
|---|---|---|
| **Unsecured, considered good** | | |
| Loans | | |
| Loan to others# | - | 32.00 |
| **Total** | **-** | **32.00** |

**(b) Current**

| **Particulars** | **As at 31 March 2022** | **As at 31 March 2021** |
|---|---|---|
| **Unsecured, considered good** | | |
| Loans | | |
| Loan to Others * | 4.13 | 1.05 |
| **Total** | **4.13** | **1.05** |

*Includes loan given for the purpose of meeting the working capital/business requirements of the borrower (Intap Labs Private Limited - Rs. 3 Crores). This entity has been acquired by the Company subsequent to 31 March 2022. (Refer note 55)

#Includes loan given for the purpose of meeting the working capital/business requirements of the borrower (Toppr Technologies Private Limited - Rs. 25 Crores and Grade Stack E-learning Private Limited - Rs 7 Crores). This entity has been acquired by the Company subsequent to 31 March 2021. (Refer note 41 and 43)

**8 Other financial assets**

**(a) Non-current**

| **Particulars** | **As at 31 March 2022** | **As at 31 March 2021** |
|---|---|---|
| **Unsecured considered good** | | |
| Security deposit | 138.83 | 29.66 |
| Bank deposits with more than 12 months maturity from the reporting date* | 26.78 | 126.00 |
| Interest accrued on bank deposits | 1.91 | 1.06 |
| **Unsecured, considered doubtful** | | |
| Security Deposit | 7.50 | 4.38 |
| Less: Provision for doubtful security deposit | (5.12) | (4.38) |
| **Total** | **169.90** | **156.72** |

* Includes Rs.1.19 Crores (31 March 2021 : Rs 19.36 Crores) which is restricted by way of lien and Rs.23.64 Crores (31 March 2021: Rs 100.98 Crores) which is restricted by way of guarantee favouring the vendors based on terms of agreement

**(b) Current**

| **Particulars** | **As at 31 March 2022** | **As at 31 March 2021** |
|---|---|---|
| **Unsecured, considered good** | | |
| Interest accrued on bank deposits and bonds | 3.09 | 0.85 |
| Bank deposits with less than 12 months maturity from the reporting date ** | 167.90 | - |
| Receivable from payment gateways | 6.07 | 15.67 |
| Security deposit | 31.21 | 21.82 |
| Interest accrued on loans | 0.03 | 0.04 |
| Other receivables*** | 52.14 | 64.78 |
| **Total** | **260.44** | **103.16** |

** Includes Rs. 13.84 Crores (31 March 2021 : Rs. Nil) which is restricted by way of lien and Rs. 57.76 Crores (31 March 2021 : Rs. Nil) which is restricted by way of guarantee favouring the vendors based on terms of agreement

*** Includes balances pertaining to amount receivable from loan partners against loan taken by customers

Information about the Company's exposure to credit and market risks, and fair value measurement is included in note 50

**9 Income tax assets**

**Non-current**

| **Particulars** | **As at 31 March 2022** | **As at 31 March 2021** |
|---|---|---|
| Advance income tax including tax deducted at source (net of provision for taxes) | 173.89 | 85.44 |
| **Total** | **173.89** | **85.44** |

**10 Other assets**

**(a) Non-current**

| **Particulars** | **As at 31 March 2022** | **As at 31 March 2021** |
|---|---|---|
| **Unsecured, considered good** | | |
| Balance with statutory authorities | 592.79 | 231.22 |
| Prepaid expenses | 6.58 | 0.24 |
| Capital advances | 30.69 | - |
| Other advances | 35.99 | - |
| **Total** | **666.05** | **231.46** |




*("This space has been intentionally left blank")*



THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

(b) **Current assets**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **Unsecured, considered good** | | |
| Balance with statutory authorities | 174.62 | 2.93 |
| Advances | | |
| - to suppliers | 258.18 | 42.82 |
| - to employees | 31.87 | - |
| - to others | 6.32 | 1.63 |
| Prepaid rent | 0.16 | 0.55 |
| Unamortised costs of obtaining a contract | 54.56 | 9.85 |
| Other receivables | 0.91 | - |
| Prepaid expenses | 124.65 | 38.17 |
| **Unsecured, considered doubtful** | | |
| Advances | | |
| - to suppliers | 4.17 | 4.32 |
| Less: Provision for doubtful advances | (4.17) | (4.32) |
| - to related party | 2.48 | - |
| Less: Provision for doubtful advances | (2.48) | - |
| **Total** | **651.27** | **95.95** |

11 **Inventories (at lower of cost and net realisable value)**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Edutech products* (Stock-in-trade) | | |
| - Tech embedded devices | 282.81 | 142.02 |
| - Tablets* | 308.52 | 102.21 |
| - SD cards* | 13.84 | 2.22 |
| - Laptops | 0.68 | 3.46 |
| - Others | 7.48 | 2.57 |
| **Total** | **613.36** | **252.48** |

*Includes stock in transit of Rs.6.64 Crores (31 March 2021: Rs.17.96 Crores)

12 **Trade receivables**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **Unsecured, considered good** | | |
| - Receivable from contract with customer | 654.87 | 377.09 |
| | **654.87** | **377.09** |
| **Unsecured, considered doubtful** | | |
| - Receivable from contract with customer | 155.20 | 54.73 |
| Less: Allowance for expected credit loss | (155.20) | (54.73) |
| | - | - |
| **Total** | **654.87** | **377.09** |

The movement in the allowance for expected credit loss in respect of trade receivables during the year was as follows:

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Balance at the beginning of the year | 54.73 | 18.83 |
| Pursuant to Acquisition | 2.23 | - |
| Addition during the year | 120.37 | 35.90 |
| Written off / reversed during the year | (22.13) | - |
| **Balance at end of the year** | **155.20** | **54.73** |

**Trade receivable ageing schedule**

**(ii) Ageing of Trade receivables:**

| Particulars | Unbilled | Not due | Outstanding for following periods from due date of: Less than 6 months | 6 months - 1 year | 1-2 years | 2-3 years | More than 3 years | Total |
|---|---|---|---|---|---|---|---|---|
| (i) Undisputed Trade receivables – considered good | - | - | 594.95 | 59.68 | 0.24 | - | - | 654.87 |
| (ii) Undisputed Trade Receivables – which have significant increase in credit risk | - | - | - | - | - | - | - | - |
| (iii) Undisputed Trade Receivables – credit impaired | - | - | 119.15 | 28.33 | 5.67 | - | - | 153.15 |
| (iv) Disputed Trade Receivables – considered good | - | - | - | - | - | - | - | - |
| (v) Disputed Trade Receivables – which have significant increase in credit risk | - | - | - | - | - | - | - | - |
| (vi) Disputed Trade Receivables – credit impaired | - | - | - | - | 2.05 | - | - | 2.05 |
| Less: Allowance for bad and doubtful debts (Disputed + Undisputed) | - | - | (119.15) | (28.33) | (7.72) | - | - | (155.20) |
| **Total** | - | - | 594.96 | 59.68 | 0.24 | - | - | 654.87 |

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

| Particulars | Unbilled | Not due | Outstanding for following periods from due date of payment March 31, 2021 | | | | | Total |
|---|---|---|---|---|---|---|---|---|
| | | | Less than 6 months | 6 months - 1 year | 1-2 years | 2-3 years | More than 3 years | |
| (i) Undisputed Trade receivables – considered good | - | - | 377.06 | 0.02 | 0.01 | - | - | 377.09 |
| (ii) Undisputed Trade Receivables – which have significant increase in credit risk | - | - | - | - | - | - | - | - |
| (iii) Undisputed Trade Receivables – credit impaired | - | - | - | - | 0.02 | - | - | 0.02 |
| (iv) Disputed Trade Receivables– considered good | - | - | - | - | - | - | - | - |
| (v) Disputed Trade Receivables – which have significant increase in credit risk | - | - | - | - | - | - | - | - |
| (vi) Disputed Trade Receivables – credit impaired | - | - | - | - | (0.02) | - | - | (0.02) |
| | - | - | 377.06 | 0.02 | 0.00 | - | - | 377.09 |

13 **Cash and bank balances**

(a) Cash **and cash equivalents**

| **Particulars** | **As at 31 March 2022** | **As at 31 March 2021** |
|---|---|---|
| Cash on hand | 5.70 | 0.01 |
| Funds in transit | 13.25 | - |
| Bank balances (refer note 1 below) | | |
| (i) In Current accounts | 3,929.47 | 2,483.89 |
| (ii) In EEFC accounts | 294.02 | 134.56 |
| (iii) In deposit accounts (with maturity of less than 3 months) (refer note 3 below) | 58.82 | 56.97 |
| **Total** | **4,301.26** | **2,675.43** |

**(b) Bank balances other than above**

| **Particulars** | **As at 31 March 2022** | **As at 31 March 2021** |
|---|---|---|
| In deposit accounts (original maturity of more than 3 months but less than 12 months) (refer note 2 below) | 765.95 | 440.92 |
| **Total** | **765.95** | **440.92** |

**For the purpose of the statement of cash flows, cash and cash equivalents comprise the following:**

| **Particulars** | **As at 31 March 2022** | **As at 31 March 2021** |
|---|---|---|
| Bank balances (refer note 1 below) | | |
| (i) In Current accounts | 3,929.47 | 2,483.89 |
| (ii) In EEFC accounts | 294.02 | 134.56 |
| (iii) In deposit accounts (with maturity of less than 3 months) (refer note 3 below) | 58.82 | 56.97 |
| Cash on hand | 5.70 | 0.01 |
| **Total** | **4,288.01** | **2,675.43** |

Note 1 Bank balances in current accounts as at 31 March 2022 includes Nil (31 March 2021 : Rs 1,139.17 Crores) towards share application money pending allotment

Note 2 : Includes Rs 207.86 Crores (31 March 2021 : Nil) which is restricted by way of lien and Rs 404.88 Crores (31 March 2021 : Rs 120.69 Crores) which is restricted by way of guarantee favouring the
Note 3: Deposits amounting to INR 30.31 (March 31, 2021 INR NIL) is held as security against the overdraft facility taken from HDFC bank

Information about the Company's exposure to credit and market risks, and fair value measurement is included in note 50

MSKA & ASSOCIATES Chartered Accountants

("This space has been intentionally left blank")

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

14 Investments

(a) Non-Current

| Particulars | As at 31 March, 2022 | | As at 31 March, 2021 | |
|---|---|---|---|---|
| | Number of units | Amount | Number of units | Amount |
| **Unquoted investments (fully paid)** | | | | |
| Investments in Preference shares | | | | |
| Mobilizar Technologies Private Limited (valued at FVTPL) | 818.00 | 1.45 | - | - |
| **Total** | | 1.45 | - | - |

(b) Current Investments

| Particulars | As at 31 March, 2022 | | As at 31 March, 2021 | |
|---|---|---|---|---|
| | Number of units | Amount | Number of units | Amount |
| **(A) Unquoted investments (fully paid)** | | | | |
| **Investments in mutual funds at FVTPL** | | | | |
| Aditya Birla SL Corporate Bond Direct - Growth*# | 2,35,000.00 | 2.14 | 47,64,396.00 | 41.32 |
| ICICI Prudential Banking and PSU Debt Fund - Direct Plan - Growth# | - | - | 6,79,31,000.67 | 174.01 |
| IDFC Banking & PSU Debt Direct - Growth# | - | - | 3,37,59,858.00 | 65.97 |
| ICICI Pru Corporate bond direct - Growth** | - | - | 6,27,80,145.00 | 147.58 |
| ICICI Prudential Money Market fund | - | - | 52,93,478.70 | 156.31 |
| Aditya Birla SL Money manager fund*# | 35,560.00 | 1.06 | 80,51,196.27 | 231.21 |
| DSPBR Liquidity fund | - | - | 86,535.00 | 25.45 |
| IDFC Corporate bond direct - Growth# | - | - | 8,25,03,581.04 | 125.96 |
| Kotak FMP Series | 50,00,000.00 | 6.71 | - | - |
| Nippon India Fixed Horizon Fund- Direct Growth Plan | 50,00,000.00 | 6.72 | - | - |
| SBI Short Term Debt Direct - Growth | 0.42 | 0.00 | - | - |
| **Sub-total** | | **16.63** | | **967.81** |
| **Investments in bonds at FVTPL** | | | | |
| IIFL Wealth Finance Ltd EC950-020822 | 22,600.00 | 294.00 | 22,600.00 | 271.03 |
| IIFLWF-EC700-MLD-2022 | - | - | 10,000.00 | 102.91 |
| IIFLWPL-6.5%-2022 | 10,000.00 | 105.72 | - | - |
| IIFL WEALTH PRIME LIMITED 358 D CP | 2,000.00 | 100.00 | - | - |
| IIFLWPL EC-6.75%-2023 | 14,750.00 | 155.67 | - | - |
| BAJAJ FINANCE LIMITED SR 230 OPT | 500.00 | 68.54 | - | - |
| **Sub-total** | | **723.93** | | **373.94** |
| **Total unquoted investments** | | **740.56** | | **1,341.75** |
| **(B) Quoted investments (fully paid)** | | | | |
| **Investments in mutual funds at FVTPL** | | | | |
| Aditya Birla Sun Life Liquid Fund - Direct Plan - Growth | 74,818.27 | 2.54 | | |
| ICICI Prudential Mutual Fund (at fair market value) | 8,46,868.01 | 25.26 | - | - |
| **Sub-total** | | **27.80** | | |
| **Debt instruments measured (at FVTPL)** | | | | |
| U.S. Govt Mmkt Fund - Capital | 76,00,00,000.00 | 5,761.34 | | - |
| **Sub-total** | | **5,761.34** | | - |
| **Total quoted investments** | | **5,789.14** | | - |
| **Total unquoted and quoted investments** | | **6,529.70** | | **1,341.75** |
| **Aggregate book value of quoted investments** | | **5,789.14** | | - |
| **Aggregate market value of quoted investments** | | **5,789.14** | | - |
| **Aggregate value of unquoted investments** | | **742.01** | | **1,341.75** |
| **Aggregate amount of impairment in value of investments** | | - | | - |

*Includes Rs. 3.07 Crores (31 March 2021 : Rs. Nil) which is restricted by way of lien favouring the Aditya Birla Finance Limited against the student loan financing.
#Includes amount of Rs. Nil (31 March 2021 : Rs. 365 Crores) given on lien favouring Citi Bank N.A. against the credit facility availed by M/s. Tangible Play Inc. (Wholly owned subsidiary of the Company).

**Includes amount of Rs. Nil (31 March 2021 : Rs. 101.42 Crores) given on lien favouring The Board of Cricket Council of India.
Information about the Group's exposure to credit and market risks, and fair value measurement, is included in Note 50

*("This space has been intentionally left blank")*

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

15 Share capital

**Authorized share capital**

| Particulars | As at 31 March 2022 | | As at 31 March 2021 | |
|---|---|---|---|---|
| | Number of shares | Amount | Number of shares | Amount |
| Equity shares of Rs 10/- each with voting rights | 32,38,236 | 3.24 | 32,38,236 | 3.24 |
| Series A compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series A CCCPS") | 5,16,000 | 0.52 | 5,16,000 | 0.52 |
| Series B compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series B CCCPS") | 2,07,386 | 0.21 | 2,07,386 | 0.21 |
| Series C compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series C CCCPS") | 1,10,000 | 0.11 | 1,10,000 | 0.11 |
| Series C1 compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series C1 CCCPS") | 1,30,000 | 0.13 | 1,30,000 | 0.13 |
| Series C2 compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series C2 CCCPS") | 77,123 | 0.08 | 77,123 | 0.08 |
| Series D compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series D CCCPS") | 1,92,255 | 0.19 | 1,92,255 | 0.19 |
| Series E compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series E CCCPS") | 1,70,000 | 0.17 | 1,70,000 | 0.17 |
| Series E1 compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series E1 CCCPS") | 61,000 | 0.06 | 61,000 | 0.06 |
| Series E2 compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series E2 CCCPS") | 14,000 | 0.01 | 14,000 | 0.01 |
| Series F compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series F CCCPS") | 18,50,000 | 1.85 | 13,50,000 | 1.35 |
| **Total** | **65,66,000** | **6.57** | **60,66,000** | **6.07** |

**Issued, subscribed and fully paid-up share capital**

(a) **Equity share capital**

| Particulars | As at 31 March 2022 | | As at 31 March 2021 | |
|---|---|---|---|---|
| | Number of shares | Amount | Number of shares | Amount |
| Equity shares of Rs 10/- each with voting rights | 14,22,203 | 1.42 | 14,08,559 | 1.41 |
| **Total** | **14,22,203** | **1.42** | **14,08,559** | **1.41** |

(b) **Instruments entirely equity in nature**
**Compulsorily convertible cumulative preference share capital ("CCCPS")**

| Particulars | As at 31 March 2022 | | As at 31 March | |
|---|---|---|---|---|
| | Number of shares | Amount | Number of shares | Amount |
| Series A CCCPS of Rs. 10/- each with voting rights | 5,15,822 | 0.52 | 5,15,822 | 0.52 |
| Series B CCCPS of Rs. 10/- each with voting rights | 2,07,386 | 0.21 | 2,07,386 | 0.21 |
| Series C CCCPS of Rs. 10/- each with voting rights | 92,904 | 0.09 | 92,904 | 0.09 |
| Series C1 CCCPS of Rs. 10/- each with voting rights | 1,27,401 | 0.13 | 1,27,401 | 0.13 |
| Series C2 CCCPS of Rs. 10/- each with voting rights | 77,123 | 0.08 | 77,123 | 0.08 |
| Series D CCCPS of Rs. 10/- each with voting rights | 1,92,255 | 0.19 | 1,92,255 | 0.19 |
| Series E CCCPS of Rs. 10/- each with voting rights | 1,66,347 | 0.17 | 1,66,347 | 0.17 |
| Series E1 CCCPS of Rs. 10/- each with voting rights | 60,627 | 0.06 | 60,627 | 0.06 |
| Series E2 CCCPS of Rs. 10/- each with voting rights | 13,297 | 0.01 | 13,297 | 0.01 |
| Series F CCCPS of Rs. 10/- each with voting rights | 15,36,123 | 1.53 | 7,76,874 | 0.78 |
| **Total** | **29,89,285** | **2.99** | **22,30,036** | **2.24** |

(Refer notes (i) to (iv)below)

Notes:
(i) **Reconciliation of shares outstanding at the beginning and at the end of the reporting year**

| Particulars | Opening Balance | Issued during the year | Closing balance |
|---|---|---|---|
| **Equity shares with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 14,08,559 | 13,644 | 14,22,203 |
| - Amount (Rs. Crores) | 1.41 | 0.01 | 1.42 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 14,06,699 | 1,860 | 14,08,559 |
| - Amount (Rs. Crores) | 1.41 | - | 1.41 |
| **Series A CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 5,15,822 | - | 5,15,822 |
| - Amount (Rs. Crores) | 0.52 | - | 0.52 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 5,15,822 | - | 5,15,822 |
| - Amount (Rs. Crores) | 0.52 | - | 0.52 |

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. ★ Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**(i) Reconciliation of shares outstanding at the beginning and at the end of the reporting year (contd.)**

| Particulars | Opening Balance | Issued during the year | Opening Balance |
|---|---|---|---|
| **Series B CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 2,07,386 | - | 2,07,386 |
| - Amount (Rs. Crores) | 0.21 | - | 0.21 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 2,07,386 | - | 2,07,386 |
| - Amount (Rs. Crores) | 0.21 | - | 0.21 |
| **Series C CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 92,904 | - | 92,904 |
| - Amount (Rs. Crores) | 0.09 | - | 0.09 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 92,904 | - | 92,904 |
| - Amount (Rs. Crores) | 0.09 | - | 0.09 |
| **Series C1 CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 1,27,401 | - | 1,27,401 |
| - Amount (Rs. Crores) | 0.13 | - | 0.13 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 1,27,401 | - | 1,27,401 |
| - Amount (Rs. Crores) | 0.13 | - | 0.13 |
| **Series C2 CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 77,123 | - | 77,123 |
| - Amount (Rs. Crores) | 0.08 | - | 0.08 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 77,123 | - | 77,123 |
| - Amount (Rs. Crores) | 0.08 | - | 0.08 |
| **Series D CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 1,92,255 | - | 1,92,255 |
| - Amount (Rs. Crores) | 0.19 | - | 0.19 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 1,92,255 | - | 1,92,255 |
| - Amount (Rs. Crores) | 0.19 | - | 0.19 |
| **Series E CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 1,66,347 | - | 1,66,347 |
| - Amount (Rs. Crores) | 0.17 | - | 0.17 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 1,66,347 | - | 1,66,347 |
| - Amount (Rs. Crores) | 0.17 | - | 0.17 |
| **Series E1 CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 60,627 | - | 60,627 |
| - Amount (Rs. Crores) | 0.06 | - | 0.06 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 60,627 | - | 60,627 |
| - Amount (Rs. Crores) | 0.06 | - | 0.06 |
| **Series E2 CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 13,297 | - | 13,297 |
| - Amount (Rs. Crores) | 0.01 | - | 0.01 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 13,297 | - | 13,297 |
| - Amount (Rs. Crores) | 0.01 | - | 0.01 |
| **Series F CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 7,76,874 | 7,59,249 | 15,36,123 |
| - Amount (Rs. Crores) | 0.78 | 0.76 | 1.54 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 5,42,090 | 2,34,784 | 7,76,874 |
| - Amount (Rs. Crores) | 0.54 | 0.24 | 0.78 |

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

(ii) **Details of rights, preferences and restrictions attached to each class of shares**

a) The Parent has only one class of equity shares having a par value of Rs.10 each. Each holder of equity shares is entitled to one vote per share. In the event of liquidation, equity share holders are entitled to receive the residual assets of the Parent after distribution of all preferential amounts, in proportion to the number of shares held by them.

b) The Parent has only one class of preference shares under different series A, B, C, C1, C2, D, E, E1, E2 & F having a par value of Rs.10 per share and compulsorily convertible into equity shares as per terms as given in Memorandum & Articles of Association read with amended and restated Shareholders Agreement dated February 28, 2019. Each holder of Preference Shares shall be entitled to one vote per share at each meeting of the holders of Equity Shares of the Parent to the extent of such proportion of the total voting rights, as the Preference Share holders would have been entitled assuming full conversion of all the Preference Shares, along with any Equity Shares held by the Preference Share holders.

c) Series A

Series A CCCPS shall be converted into equity shares at any time at the option of the holders of series A. Subject to applicable laws upon the earlier of (i)One day prior to expiry of ten (10) years of allotment and, or (ii) in connection with Initial Public Offer ("IPO") including any subsequent IPO, or the last day as may be permitted under applicable law (iii) a decision by vote or by written consent of the holders of a majority of the series A CCCPS that series A CCCPS must be converted. Each Series A CCCPS is convertible to 0.97 number of equity shares.

d) Series B, C, C1, C2, D, E, E1, E2 and F

Each series of compulsorily convertible cumulative preference shares shall be converted into equity shares at any time at the option of the holders of each series. Subject to applicable laws, each series of B,C,C1,C2,D, E, E1, E2 and F CCCPS shall automatically be converted into equity shares upon the earlier of (i)1(one) day prior to the expiry of twenty (20) years from the date of allotment or (ii) in connection with IPO including any subsequent IPO prior to filing of prospectus by the Parent with the competent authority or such later date as may be permitted by law; or (iii) a decision by vote or by written consent of the holders of a majority of each of the series that all such series must be converted. Each share of the series B, C, C1, C2, D, E, E1, E2 and F CCCPS shall be converted to 1 (one) equity shares.

The share holding pattern on an "as converted" basis for the CCCPS pursuant to the latest fund rounds during the years ended March, 31 2022 and March, 31, 2021 which has been approved by the Share holders of the Company vide the results of the EGMs dated 09 March 2022 and 01 December, 2020 respectively in accordance with the terms of the agreement entered into between the share holders is as follows. Accordingly, CCCPS has been classified as equity in the financial statements.

| Particulars | As at 31 March 2022 | | As at 31 March 2021 | |
|---|---|---|---|---|
| | Number of shares before conversion of CCCPS to equity shares | Number of equity shares upon conversion of CCCPS to equity shares | Number of shares before conversion of CCCPS to equity shares | Number of equity shares upon conversion of CCCPS to equity shares |
| Series A CCCPS holders | 5,15,822 | 5,02,566 | 5,15,822 | 5,02,566 |
| Series B CCCPS holders | 2,07,386 | 2,07,386 | 2,07,386 | 2,07,386 |
| Series C CCCPS holders | 92,904 | 92,904 | 92,904 | 92,904 |
| Series C1 CCCPS holders | 1,27,401 | 1,27,401 | 1,27,401 | 1,27,401 |
| Series C2 CCCPS holders | 77,123 | 77,123 | 77,123 | 77,123 |
| Series D CCCPS holders | 1,92,255 | 1,92,255 | 1,92,255 | 1,92,255 |
| Series E CCCPS holders | 1,66,347 | 1,66,347 | 1,66,347 | 1,66,347 |
| Series E1 CCCPS holders | 60,627 | 60,627 | 60,627 | 60,627 |
| Series E2 CCCPS holders | 13,297 | 13,297 | 13,297 | 13,297 |
| Series F CCCPS holders | 15,36,123 | 15,36,123 | 7,76,874 | 7,76,874 |

All the CCCPS shares are entitled to a cumulative preference dividend of 0.001% per annum. The preference dividend shall accrue from year to year whether or not paid and accrued dividend shall be paid in full, prior and in preference to any other class of shares.

The Parent has not declared preference dividend for the past 6 (six) years to its preference shareholders. By virtue of Section 47(2) of the Companies Act 2013, these preference shareholders shall be entitled to voting rights.

The Parent has entered into a share-cum-warrant subscription agreement with Bennett, Coleman & Company Limited (BCCL) pursuant to which, 5 equity shares and 10 share warrants have been issued to BCCL. As at 31 March 2022, BCCL holds 5 Equity Shares and 10 Warrants (31 March 2021: 5 Equity shares and 10 warrants). As on 31 March 2022 none of the share warrants have been converted to shares. For further details refer note 51

(iii) **Details of shareholders holding more than 5% shares in the Parent**

| Name of the shareholder | As at 31 March 2022 | | As at 31 March 2021 | |
|---|---|---|---|---|
| | Number of shares held | % holding in that class of shares | Number of shares held | % holding in that class of shares |
| **Equity shares of Rs. 10/- each fully paid** | | | | |
| Byju Raveendran | 7,16,370 | 50.37% | 7,10,051 | 50.41% |
| Divya Gokulnath | 1,49,611 | 10.52% | 1,49,611 | 10.62% |
| Riju Ravindran | 67,864 | 4.77% | 89,763 | 6.37% |
| SLP Beta Holdings Cayman Ltd, Cayman Island | 86,780 | 6.10% | 86,780 | 6.16% |
| MIH Ventures B.V., Netherlands | 86,771 | 6.10% | 81,771 | 5.81% |
| **Series A CCCPS of Rs. 10/- each with voting rights** | | | | |
| MIH Ventures B.V., Netherlands | 1,03,871 | 20.14% | 1,03,871 | 20.14% |
| Lightspeed Venture Partners Select Mauritius, Mauritius | 61,009 | 11.83% | 61,009 | 11.83% |
| SCI Investments V, Mauritius | 50,785 | 9.85% | 53,867 | 10.44% |
| Sequoia Capital India Investments IV, Mauritius | 49,350 | 9.57% | 52,348 | 10.15% |
| General Atlantic Singapore TL Pte. Ltd, Singapore | 34,285 | 6.65% | 34,285 | 6.65% |
| Lightspeed India Partners I, LLC, Mauritius | 34,064 | 6.60% | 34,064 | 6.60% |
| INQ Holding LLC, Qatar | 26,722 | 5.18% | 26,722 | 5.18% |
| CPP Investment Board Private Holdings (3) Inc., Canada | 26,557 | 5.15% | 26,557 | 5.15% |
| Sofina SA, Belgium | - | 0.00% | 21,489 | 4.17% |
| **Series B CCCPS of Rs. 10/- each with voting rights** | | | | |
| Sequoia Capital India Investments IV, Mauritius | 1,41,035 | 68.01% | 1,49,598 | 72.14% |
| General Atlantic Singapore TL Pte. Ltd, Singapore | 30,689 | 14.80% | 30,689 | 14.80% |
| Internet Fund V Pte Ltd, Singapore | 27,099 | 13.07% | 27,099 | 13.07% |
| **Series C CCCPS of Rs. 10/- each with voting rights** | | | | |
| MIH Ventures B.V., Netherlands | 31,004 | 33.37% | 31,004 | 33.37% |
| SCI Investments V, Mauritius | 24,721 | 26.61% | 26,223 | 28.23% |
| General Atlantic Singapore TL Pte. Ltd, Singapore | 19,527 | 21.02% | 19,527 | 21.02% |
| CPP Investment Board Private Holdings (3) Inc, Canada | 11,400 | 12.27% | 11,400 | 12.27% |
| Internet Fund V Pte Ltd, Singapore | 4,750 | 5.11% | 4,750 | 5.11% |
| **Series C1 CCCPS of Rs. 10/- each with voting rights** | | | | |
| Sofina SA, Belgium | 1,27,401 | 100% | 1,27,401 | 100% |
| **Series C2 CCCPS of Rs. 10/- each with voting rights** | | | | |
| Chan Zuckerberg Mauritius, Mauritius | 54,017 | 70.04% | 54,017 | 70.04% |
| General Atlantic Singapore TL Pte. Ltd, Singapore | 23,106 | 29.96% | 23,106 | 29.96% |

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

| | | | | |
|---|---|---|---|---|
| **Series D CCCPS of Rs. 10/- each with voting rights** | | | | |
| Sofina SA, Belgium | 57,960 | 30.15% | 57,960 | 30.15% |
| International Finance Corporation, USA | 38,034 | 19.78% | 38,034 | 19.78% |
| SCHF PV Mauritius Ltd, Mauritius | 22,897 | 11.91% | 34,905 | 18.16% |
| General Atlantic Singapore TL Pte. Ltd, Singapore | 13,413 | 6.98% | 13,413 | 6.98% |
| Lightspeed Venture Partners Select Mauritius, Mauritius | 12,826 | 6.67% | 12,826 | 6.67% |
| MIH Ventures B.V., Netherlands | 9,964 | 5.18% | 9,964 | 5.18% |

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

| Name of the shareholder | As at 31 March 2022 | | As at 31 March 2021 | |
|---|---|---|---|---|
| | Number of shares held | % holding in that class of shares | Number of shares held | % holding in that class of shares |
| **Series E CCCPS of Rs. 10/- each with voting rights** | | | | |
| Verlinvest S. A., Belgium | 52,098 | 31.32% | 52,098 | 31.32% |
| DST Asia VII, Mauritius | 31,969 | 19.22% | 31,969 | 19.22% |
| DSTG VII Investments-2-IN Limited, Cayman Islands | 27,067 | 16.27% | 27,067 | 16.27% |
| Internet Fund V Pte Ltd, Singapore | 17,268 | 10.38% | 17,268 | 10.38% |
| Sofina SA, Belgium | 16,290 | 9.79% | 16,290 | 9.79% |
| **Series E1 CCCPS of Rs. 10/- each with voting rights** | | | | |
| Proxima Beta Pte. Limited, Singapore | 51,759 | 85.37% | 51,759 | 85.37% |
| Sofina SA, Belgium | 6,366 | 10.50% | 6,366 | 10.50% |
| **Series E2 CCCPS of Rs. 10/- each with voting rights** | | | | |
| Proxima Beta Pte. Limited, Singapore | 11,352 | 85.37% | 11,352 | 85.37% |
| Sofina SA, Belgium | 1,396 | 10.50% | 1,396 | 10.50% |
| **Series F CCCPS of Rs. 10/- each with voting rights** | | | | |
| MIH Ventures B.V., Netherlands | 2,02,352 | 13.17% | 1,59,352 | 20.51% |
| CPP Investment Board Private Holdings (3) Inc, Canada | 1,13,823 | 7.41% | 1,13,823 | 14.65% |
| General Atlantic Singapore TL Pte. Ltd, Singapore | 1,07,633 | 7.01% | 1,07,633 | 13.85% |
| SLP Beta Holdings Cayman Ltd | 83,647 | 5.45% | 52,632 | 6.77% |
| Internet Fund V Pte Ltd, Singapore | 49,589 | 3.23% | 49,589 | 6.38% |
| Epic Creations Aggregator | 1,25,984 | 8.20% | - | 0.00% |
| INQ Holding LLC, Qatar | - | 0.00% | 31,763 | 4.09% |

As per records of the Company, including its register of shareholders/members and other declarations received from shareholders regarding beneficial interest, the above shareholding represents both legal and beneficial ownership of shares.

**(iv) Aggregate number of equity shares issued as bonus shares, shares issued for consideration other than cash and shares bought back during the period of five years immediately preceding the reporting date:**

| Particulars | Aggregate number of shares | | | | |
|---|---|---|---|---|---|
| | As at 31 March, 2022 | As at 31 March, 2021 | As at 31 March, 2020 | As at 31 March, 2019 | As at 31 March, 2018 |
| **Equity shares with voting rights** | | | | | |
| Fully paid up pursuant to contracts without payment being received in cash* | 2,19,978 | 2,19,978 | 2,19,978 | 2,19,978 | 2,11,696 |
| Fully paid up by way of bonus shares | 7,12,620 | 7,12,620 | 7,12,620 | 7,12,620 | 7,12,620 |
| Shares bought back | 46,487 | 46,487 | 46,487 | 46,487 | 46,487 |

*8,282 number of equity shares were issued on 5 September 2018, 4,666 number of equity shares were issued on 31 January 2017, 7,030 number of equity shares were issued on 27 January 2015 and 2,00,000 number of equity shares were issued on 30 November 2011 for consideration other than cash

| Particulars | Aggregate number of shares | | | | |
|---|---|---|---|---|---|
| | As at 31 March, 2022 | As at 31 March, 2021 | As at 31 March, 2020 | As at 31 March, 2019 | As at 31 March, 2018 |
| **Series F CCCPS with voting rights** | | | | | |
| Fully paid up pursuant to contracts without payment being received in cash** | 2,87,997 | 85,575 | 85,575 | 85,575 | - |
| Fully paid up by way of bonus shares | - | - | - | - | - |
| Shares bought back | - | - | - | - | - |

**

85,575 number of series F CCCPS shares on 27 February 2019 for consideration other than cash (Swap of shares of Tangible Play, Inc.)
29,324 Number of Series F CCCPS were allotted on 26 July 2021 for consideration other than cash (Swap of ordinary shares of Great Learning Pte. Ltd.).
17,036 Number of Series F CCCPS were allotted on 31 July 2021 for consideration other than cash (Swap of securities of Toppr Technologies Private Limited).
1,25,984 Number of Series F CCCPS were allotted on 16 November 2021 for consideration other than cash (Swap of shares of common stock of Epic! Creations, Inc.).
30,078 Number of Series F CCCPS were allotted on 3 December 2021 for consideration other than cash (Swap of units of Inspilearn LLC).

**(v) Details of shareholding of promoters:**

| Particulars | As at 31 March, 2022 | | | As at 31 March, 2021 | | |
|---|---|---|---|---|---|---|
| | Number of shares | % of total shares in that class | % change during the year | Number of shares | % of total shares in that class | % change during the year |
| **Equity shares of Rs. 10/- each fully paid** | | | | | | |
| Byju Raveendran | 7,16,370 | 50.37% | (0.04%) | 7,10,051 | 50.41% | 0.07% |
| Riju Ravindran | 67,864 | 4.77% | (1.60%) | 89,763 | 6.37% | (13.79%) |
| Divya Gokulnath | 1,49,611 | 10.52% | (0.10%) | 1,49,611 | 10.62% | (0.01%) |
| **Total** | **9,33,845** | **65.66%** | **(1.74%)** | **9,49,425** | **67.40%** | **(13.73%)** |
| **Series F CCCPS of Rs. 10/- each with voting rights** | | | | | | |
| Byju Raveendran | 7,018 | 0.23% | 0.23% | - | - | - |
| **Total** | **7,018** | **0.23%** | **0.23%** | - | - | |

**(vi) Shares reserved for issue under options**
For details of shares reserved for issue under the Share based payment plan of the Company, please refer note 52

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

16 Other equity

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **Capital redemption reserve** | 0.05 | 0.05 |
| During the year ended 31 March 2013, the Parent had made a buy back of 46,487 equity shares of Rs.10/- each at a premium of Rs. 850.46/- per equity share utilising the Securities Premium Account. As required under Section 69 of the Companies Act 2013, the Parent has transferred an equivalent amount covered under the nominal value of shares so redeemed to the Capital Redemption Reserve Account by way of transfer of the amount from the Securities Premium Account. | | |
| **Capital reserve** | 0.69 | 0.69 |
| Capital reserve was created at the time of acquisition of business of TutorVista and Edurite from Pearson India Education Services Private Limited | | |
| **Securities Premium Account** | | |
| Amounts received (on issue of shares) in excess of the par value has been classified as securities premium, to be utilised in accordance with the Act. | | |
| Opening balance | 11,203.50 | 6,111.55 |
| Premium on issue of share capital | 19,833.48 | 5,096.17 |
| Expenses in connection with issue of shares | (28.96) | (6.22) |
| Transferred to securities premium on allotment against stock options | 291.07 | 2.00 |
| **Closing balance** | **31,299.09** | **11,203.50** |
| **Stock Options Outstanding** | | |
| The share option outstanding account is used to record the value of equity-settled share based payment transactions with employees. The amounts recorded in this account are transferred to share premium upon exercise of stock options by employees. In case of forfeiture, corresponding balance is transferred to general reserve. | | |
| Opening balance | 467.34 | 2.57 |
| Stock options issued | 80.11 | 466.77 |
| Transferred to securities premium on allotment against stock options | (288.16) | (2.00) |
| **Closing balance** | **259.29** | **467.34** |
| **Retained earnings** | | |
| Retained earnings comprise of the Group's prior years' undistributed earnings after taxes. | | |
| Opening balance | (5,032.75) | (598.50) |
| Other Adjustments | (417.49) | - |
| Loss for the year | (8,237.09) | (4,183.37) |
| Other comprehensive loss | 5.25 | (3.41) |
| Financial liability under option arrangement | - | (247.47) |
| **Closing balance** | **(13,682.07)** | **(5,032.75)** |
| **Share warrants** | | |
| Opening balance | 5.20 | 5.20 |
| Closing balance | **5.20** | **5.20** |
| **Commitment to Issue Share Capital** | | |
| Opening balance | - | - |
| Movement during the year | 2,888.49 | - |
| Closing balance | **2,888.49** | - |
| **Share Application Money Pending Allotment** | | |
| Opening balance | - | - |
| Money received against share application | - | 1,139.17 |
| Closing balance | - | **1,139.17** |
| **Other comprehensive income (OCI)** | | |
| Pertains to gain or loss on foreign currency translation reserve arising on account of translation of financial statements of foreign subsidiaries in accordance with Ind AS 21 - The effects of changes in foreign exchange rate. | | |
| Opening balance | 50.31 | 71.01 |
| Movement in Foreign Currency Translation Reserve during the year | 135.40 | (20.70) |
| **Closing balance** | **185.71** | **50.31** |
| **Total** | **20,956.45** | **7,833.51** |

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

16 (a) Non Controlling Interest

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **Opening Balance** | (292.55) | - |
| Pursuant to acquisition (Refer note 39 and 48) | 347.95 | 88.72 |
| Loss for the year | (8.11) | (381.01) |
| Other comprehensive loss for the year | (0.11) | (0.26) |
| **Closing Balance** | **47.18** | **(292.55)** |

17 **Borrowings**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| (a) **Non-current Borrowings** | | |
| **Secured, at amortised cost** | | |
| From others | | |
| - others (Refer Note A below) | 8,828.65 | - |
| | **8,828.65** | - |
| (b) **Current borrowings** | | |
| **Secured, at amortised cost** | | |
| From others | | |
| -current portion of secured long-term borrowings (Refer Note A below) | 36.98 | - |
| **Unsecured, at amortised cost** | | |
| Term Loan | | |
| From banks | 74.64 | 422.69 |
| From others | | |
| - others (Refer Note B below) | 1,161.80 | 729.12 |
| - current portion of secured long-term borrowings | - | 200.00 |
| | **1,273.42** | **1,351.81** |
| **Total** | **10,102.07** | **1,351.81** |

A. On November 24, 2021 ("Effective Date"), Byjus Alpha Inc ("the borrower") entered into a credit agreement with Morgan Stanley Senior Funding LLC for a $1,200,000,000 secured term loan facility. A guarantee of 115% of the total underlying loan has been given by Parent. The repayment of the credit facility in quarterly principal instalments, commencing on the last day of the first full fiscal quarter of the Parent Guarantor following the effective date, at an amount equal to 0.25% of the aggregate principal amount of the Term Loan Facility made on the Effective Date, which amount shall be due and payable on the last day of each fiscal quarter of the Parent. An amount of USD 1,140 million shall be paid at the end of the term loan maturity date (November 24, 2026), the outstanding amount of the facility shall be paid in full in Dollars by the Borrower.

Security given under the Credit Agreement: The Term Loan Facility will be secured by:
(a) all assets granted by -
(i) the Borrower,
(ii) Whitehat Education Technology LLC,
(iii) Tangible Play Inc.,
(iv) BYJU's Pte. Ltd. and
(v) Great Learning Education Pte Ltd; and

(b) Shares pledged by -
(i) The Borrower (100% of it's own share) and
(ii) BYJU's Pte Ltd (Shares held in Great Learning Education Pte Ltd).

Also refer note 32 C

**B. As at 31st March 2022** : Term loans from others includes Vidya Trust 2021 Series IV - Rs. 265.00 Crores, Vidya Trust 2021 Series V - Rs. 401.80 Crores, Vidya Trust 2021 Series VI - Rs. 200.00 Crores, and Hero Fincorp Limited - Rs.295.00 Crores.
**As at 31st March 2021** : Term loans from banks includes Kotak Mahindra Bank limited - Rs. 94.00 Crores, IndusInd Bank Limited - Rs. 113.21 Crores and SBM Bank India Limited - Rs. 69.57 Crores. Term loans from others includes Vidya Trust 2021 Series II - Rs. 440.77 Crores, Vidya Trust 2021 Series I - Rs. 139.85 Crores, Shree Vidya Trust 2021 - Rs. 148.50 Crores. Other term loans includes IIFL Wealth Finance Limited - Rs. 200.00 Crores.

For Hero Fincorp Limited, Vidya Trust 2021 Series IV, Vidya Trust 2021 Series V and Vidya Trust 2021 Series VI, the Company has assigned the account receivables created during the year.

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**Terms of repayment:**

| Lender | Interest Rate | | Repayment schedule | Purpose | Whether used for the purpose stated in the loan |
|---|---|---|---|---|---|
| | FY 2021-22 | FY 2020-21 | | | |
| Shree Vidya Trust 2021 | NA | 4.00% | Fixed monthly repayments as stipulated in the respective agreements | General corporate purpose | Yes |
| Vidya Trust 2021 Series II | NA | 5.00% | | | Yes |
| Vidya Trust 2021 Series I | NA | 4.00% | | | Yes |
| SBM Bank India Limited | NA | 4.00% | | | Yes |
| Kotak Mahindra Bank limited | NA | 10.65% | | | Yes |
| IndusInd Bank Limited | NA | 6.00% | | | Yes |
| Vidya Trust 2021 Series IV | 5.13% | NA | | | Yes |
| Vidya Trust 2021 Series V | 4.88% | NA | | | Yes |
| Vidya Trust 2021 Series VI | 5.94% | NA | | | Yes |
| Hero Fincorp Limited | 11.46% | NA | | | Yes |
| IIFL Wealth Finance Limited | NA | 10.25% | 12 months from the date of borrowing | | Yes |
| Morgan Stanley Senior Funding LLC | NA | 7.03% | 5 years at quarterly installments | | Yes |

**18 Lease liabilities**

| | Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|---|
| (a) | **Non-current** | | |
| | Lease liabilities | 1,182.29 | 171.12 |
| | | **1,182.29** | **171.12** |
| (b) | **Current** | | |
| | Lease liabilities | 317.22 | 84.81 |
| | | **317.22** | **84.81** |
| | **Total** | **1,499.51** | **255.93** |

For details of lease liabilities (refer note 38)

*("This space has been intentionally left blank")*

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**19 Other non current liabilities**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Unearned revenue (Refer note 19.1 below) | 134.26 | 10.63 |
| **Total** | **134.26** | **10.63** |

**19.1 Movement of unearned revenue**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Balance at the beginning of the year | 44.77 | 123.41 |
| Pursuant to acquisition (refer note 39 to 48) | 704.16 | |
| Invoiced during the year | 2,461.19 | 38.17 |
| Revenue recognised during the year | 2,230.87 | 116.82 |
| **Balance at the end of the year** | **979.25** | **44.76** |
| Non-current | 134.26 | 10.63 |
| Current | 844.99 | 34.13 |

**20 Other current liabilities**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Statutory liabilities | 310.92 | 194.34 |
| Advance from customers | 433.57 | 347.80 |
| Unearned revenue (Refer note 19.1 above) | 844.99 | 34.13 |
| Others | 44.70 | 4.68 |
| **Total** | **1,634.18** | **580.95** |

**21 Provisions**

**(a) Non-current**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **(a) Non-current** | | |
| **Provision for employee benefits** | | |
| Provision for Gratuity [Refer Note 31(b)] | 91.65 | 45.58 |
| Provision for Compensated Absences [Refer note 31(c)] | 91.87 | 46.42 |
| **Total** | **183.52** | **92.00** |

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **(b) Current** | | |
| **Provision for employee benefits** | | |
| Provision for Gratuity [Refer Note 31(b)] | 11.14 | 0.59 |
| Provision for Compensated Absences [Refer note 31(c)] | 27.88 | 5.76 |
| **Other provisions** | | |
| Provision for Guarantee | 4.77 | 34.51 |
| Provision for Sales return | 69.55 | 19.51 |
| **Total** | **113.34** | **60.37** |

**Movement of provision for guarantee and sales return**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **Provision for Guarantee** | | |
| Opening balance | 34.51 | - |
| Provision provided for in the current year | 4.77 | 34.51 |
| Provision reversed | (34.51) | - |
| **Closing balance** | **4.77** | **34.51** |
| | | |
| **Provision for Sales return** | | |
| Opening balance | 19.51 | - |
| Provision provided for in the current year | 69.55 | 19.51 |
| Provision reversed | (19.51) | - |
| **Closing balance** | **69.55** | **19.51** |
| | | |
| **Total** | **74.32** | **54.02** |

*("This space has been intentionally left blank")*

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**22 Trade payables**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **Carried at amortised cost** | | |
| a) total outstanding dues of micro enterprises and small enterprises | 46.59 | 1.34 |
| b) total outstanding dues other than iii (a) above | 1,619.20 | 1,064.07 |
| **Total** | **1,665.79** | **1,065.41** |

**(i) Disclosures required under Section 22 of the Micro, Small and Medium Enterprises Development Act, 2006**

| Particulars | As at March 31, 2022 | As at March 31, 2021 |
|---|---|---|
| (i) Amount remaining unpaid to any supplier at the end of each accounting year: | | |
| Principal (including capital creditors and other financial liabilities) | 46.99 | 1.33 |
| Interest | 0.55 | 0.01 |
| (ii) The amount of interest paid by the buyer in terms of section 16 of the MSMED Act, along with the amount of the payment made to the supplier beyond the appointed day during each accounting year | - | - |
| (iii) The amount of interest due and payable for the period of delay in making payment (which have been paid but beyond the appointed day during the year) but without adding the interest specified under the MSMED Act | 0.43 | 0.01 |
| (iv) The amount of interest accrued and remaining unpaid at the end of each accounting year | 0.55 | 0.01 |
| (v) The amount of further interest remaining due and payable even in the succeeding years, until such date when the interest dues above are actually paid to the small enterprise, for the purpose of disallowance of a deductible expenditure under section 23 of the MSMED Act | 0.55 | 0.00 |

**Trade Payables aging schedule**

| Particulars | Outstanding for following periods from due date of payment as at 31 March 2022 | | | | | | Total |
|---|---|---|---|---|---|---|---|
| | Unbilled | Not Due | Less than 1 Year | 1-2 years | 2-3 years | More than 3 years | |
| (i) MSME | - | 0.82 | 45.78 | - | - | - | 46.60 |
| (ii) Others | 238.82 | 64.30 | 1,276.77 | 13.66 | 6.60 | 19.04 | 1,619.19 |
| (iii) Disputed Dues- MSMES | - | - | - | - | - | - | - |
| (iv) Disputed Dues- Others | - | - | - | - | - | - | - |
| **As at 31 March 2022** | **238.82** | **65.12** | **1,322.55** | **13.66** | **6.60** | **19.04** | **1,665.79** |

| Particulars | Outstanding for following periods from due date of payment as at 31 March 2021 | | | | | | Total |
|---|---|---|---|---|---|---|---|
| | Unbilled | Not Due | Less than 1 Year | 1-2 years | 2-3 years | More than 3 years | |
| (i) MSME | - | - | 573.14 | - | - | | 573.14 |
| (ii) Others | 0.94 | 4.57 | 486.70 | - | - | 0.06 | 492.27 |
| (iii) Disputed Dues- MSMES | - | - | - | - | - | - | - |
| (iv) Disputed Dues- Others | - | - | - | - | - | - | - |
| **As at 31 March 2021** | **0.94** | **4.57** | **1,059.84** | - | - | **0.06** | **1,065.41** |

**23 Other financial liabilities**

| | Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|---|
| (a) | **Non-current** | | |
| | Payable for acquisition of business (Deferred consideration) (Refer Note 40-48) | 529.75 | - |
| | Securiy Deposits | 16.85 | - |
| | Employee related payables | 19.44 | - |
| | **Total** | **566.04** | - |
| (b) | **Current** | | |
| | **Carried at amortised cost** | | |
| | Interest accrued but not due on borrowings | 66.61 | 2.55 |
| | Creditors for capital expenditure | 90.23 | 57.52 |
| | Employee related payables | 495.44 | 79.40 |
| | Payable for acquisition of business (Deferred consideration) (Refer Note 40-48) | 3,063.13 | 5.61 |
| | Refundable security deposit | 117.81 | 39.88 |
| | Financial liability under option arrangements | - | 257.91 |
| | Other current financial liabilities not included above* | 11.82 | - |
| | **Total** | **3,845.04** | **442.87** |

* Includes unspent amount of corporate social responsibility expenditure of INR 0.112 as on March 31, 2022 to be deposited by Company in specified fund of schedule VII within 6 months

MSKA & ASSOCIATES Chartered Accountants

*("This space has been intentionally left blank")*

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

**24 Revenue from operations**

| Particulars | For the year ended 31 March, 2022 | For the year ended 31 March, 2021 |
|---|---|---|
| Revenue from operations | | |
| - Course fee | 1,442.01 | 320.61 |
| - Streaming and other services | 226.90 | 108.47 |
| - Sale of Edutech products | 2,901.20 | 1,848.74 |
| - Educational content services | 442.68 | 0.17 |
| - Other Operating revenue | 1.81 | 2.27 |
| **Total** | 5,014.60 | 2,280.26 |

(i) Revenues from transfer of products to certain customers made under deferred payment terms and totalling to Rs.788.70 Crores (31 March 2021: Rs.1,156.27 Crores) (based on consideration that the Company is entitled for such transfers) has not been recognised because at the point of these transfers as the Company did not meet the criteria that it was probable it will collect the consideration to which it is entitled. Revenues from these transfer of products will be recognised when substantially all of the consideration is received by Company or when the deferred payment terms expire because of default or any non-performance by the customer and to extent any consideration received is non-refundable. The cost of the products amounting to Rs.51.29 Crores (31 March 2021: Rs.109.18 Crores) has been expensed in Statement of profit and loss.

The Company has incurred direct selling costs in the form of employee incentives and customer referral incentives in respect of the aforesaid sales which has also been charged off to the Statement of profit and loss.

Goods and Service Taxes (GST) paid/payable on the sales has been fully discharged by the Company during the year ended March 31, 2022. On deferral of recognition of revenue in the absence of probability of collections, the consideration recoverable from the customer towards GST amounting to Rs.141.97 Crores (31 March 2021: Rs.208.14 Crores) has not been carried as an asset in the balance sheet. The same shall be recorded as income as and when consideration towards the sales (including GST) is collected from the customer.

(ii) Sale of educational content to customers based in the Gulf Cooperation Council (GCC) countries amounted to Rs.634.18 Crores during the year (Rs. 497.00 Crores for the year ended 31 March 2021). All sales of the Company to these customers are made through [a sole selling agent, More Ideas General Trading LLC], an unrelated entity, located out of Dubai (Refer note 2.5 a(iii))

Out of the above sales from transfer of products, revenues totalling to Rs. 260 Crores (31 March 2021: Nil) (based on consideration that the Company is entitled for such transfers) has not been recognised, because at the point of these transfers, the Company did not meet the criteria under Ind AS 115 (para 9) with respect to the probability of collection. Accordingly, the revenues from these transfers will be recognised when substantially all of the consideration is received by Company and to the extent such consideration received is non-refundable.

Further, however, the Company has paid commission to the aforesaid entity, being 50% of the above billed revenue per the terms of the arrangement, of Rs. 300.37 Crores during the year (31 March 2021: Rs. 237.00 Crores) which has been debited to the Statement of profit and loss. Further, based on a legal opinion obtained by the Company, such commission is not subject to GST under the reverse charge mechanism.

The Company has assessed the credit risk on the amounts recoverable from the aforesaid party as at March 31, 2022 and in accordance with Ind AS 109, estimated a provision for expected credit loss of Rs.119.15 Crores (31 March 2021: Nil) in the Statement of profit and loss. Basis on-going discussions held with the entity and a payment plan received, the Company is confident of recoveries and does not consider need for any further impairment at present.

The Company, subsequent to the year-end, has filed an application with its AD banker seeking an extension of the time limit as prescribed by the RBI guidelines for collection of these foreign currency amounts. While such approval has not been expressly received as yet, the Company believes this to be a mere procedural formality, and that no material penalty or fine is expected to devolve on the Company.

(iii) Refer note 33(i) for geography-wise revenues.

(iv) **Break of revenue based on timing of revenue recognition**

| Particulars | For the year ended 31 March 2022 | For the year ended 31 March 2021 |
|---|---|---|
| Goods transferred at a point in time | 2,901.20 | 1,848.74 |
| Services transferred over time | 2,113.40 | 431.52 |
| **Total** | 5,014.60 | 2,280.26 |

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

(v) Remaining performance obligation disclosure

The remaining performance obligation disclosure provides the aggregate amount of the transaction price yet to be recognised as at the end of the reporting period, and an explanation as to when the Company expects to recognize these amounts in revenue. Applying the practical expedient as given in Ind AS 115, the Company has not disclosed the remaining performance obligation related disclosures for contracts where the revenue recognized corresponds directly with the value to the customer of the entity's performance completed to date. Remaining performance obligation estimates are subject to change and are affected by several factors, including terminations, changes in the scope of contracts, periodic revalidations, adjustment for revenue that has not materialized and adjustments for currency fluctuations.

The aggregate value of performance obligations that are completely or partially unsatisfied as at March 31, 2022, other than those meeting the exclusion criteria mentioned above, is Rs.979.24 Crores (31 March 2021 : Rs.44.77). Out of this, the Company expects to recognize revenue of around 30.32% within the next one year and the remaining thereafter.

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

**(vi) Reconciliation of revenue recognised with contract price**

| Particulars | For the year ended 31 March 2022 | For the year ended 31 March 2021 |
|---|---|---|
| **Revenue as per contracted price** | 6,082.61 | 2,389.66 |
| **Adjustments for:** | | |
| Contract liabilities – Streaming and other services | 979.25 | 44.76 |
| Refund liabilities | 74.32 | 54.02 |
| Discounts/rebates/price concessions/incentives | 14.45 | 10.61 |
| **Total revenue from contracts with customers** | **5,014.59** | **2,280.27** |

## 25 Other income

| Particulars | For the year ended 31 March, 2022 | For the year ended 31 March, 2021 |
|---|---|---|
| Interest income on financial assets carried at amortised cost | | |
| - on bank deposits | 51.77 | 47.00 |
| - on financial assets carried at amortised cost | 4.23 | 2.08 |
| - on unsecured loan and other deposits | 2.24 | - |
| - on others | 0.94 | - |
| Income on financial assets carried at FVTPL | | |
| - Interest on bonds | 13.87 | 5.94 |
| - profit on sale of current investments | 122.00 | 93.83 |
| - net gain on assets measured at fair value through profit or loss (FVTPL) | 32.73 | (8.29) |
| Net gain / (loss) on disposal of property, plant and equipment | 0.00 | - |
| Lease concession income | 0.48 | 0.69 |
| Interest on income tax refund | 5.31 | 0.34 |
| Provision/Liabilities no longer required written back | 3.32 | - |
| Foreign exchange gain (net) | 9.78 | 0.83 |
| Miscellaneous income | 37.16 | 5.71 |
| **Total** | **283.83** | **148.13** |

## 26 Changes in inventories of edutech products

| Particulars | For the year ended 31 March, 2022 | For the year ended 31 March, 2021 |
|---|---|---|
| Inventories at the beginning of the year | 252.48 | 54.23 |
| Inventories through acquisitions (refer note 39 to 48) | 7.48 | - |
| Less: Inventories at the end of the year | 613.36 | 252.48 |
| **(Increase) /decrease in Inventories** | **(353.40)** | **(198.25)** |

## 27 Employee benefits expense

| Particulars | For the year ended 31 March, 2022 | For the year ended 31 March, 2021 |
|---|---|---|
| Salary, wages and bonus | 4,099.91 | 1,760.28 |
| Contribution to provident and other funds (Refer Note 31(a)) | 107.25 | 59.80 |
| Less: Amounts transferred to intangibles under development (Refer Note 6(b)) | (891.74) | (376.73) |
| | 3,315.42 | 1,443.35 |
| Share based payment to employees (Refer Note 52) | 70.12 | 466.67 |
| Gratuity (Refer Note 31(b)) | 52.33 | 17.78 |
| Staff welfare expenses | 114.35 | 15.50 |
| **Total** | **3,552.22** | **1,943.30** |

## 28 Finance costs

| Particulars | For the year ended 31 March, 2022 | For the year ended 31 March, 2021 |
|---|---|---|
| Interest expense on borrowings | 305.21 | 14.71 |
| Interest expense on lease liabilities (Refer Note 38) | 72.45 | 12.35 |
| Less: Amounts transferred to intangibles under development (Refer Note 6 (b)) | (2.07) | (5.72) |
| | 70.38 | 6.63 |
| Factoring cost | 18.58 | 1.79 |
| Finance cost relating to financial liability under option arrangement | 116.55 | 10.44 |
| Interest on delayed payment of statutory dues | 8.14 | 27.97 |
| Interest on delayed payment to micro enterprises and small enterprises | 0.54 | 0.01 |
| **Total** | **519.40** | **61.55** |

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

## 29 Depreciation and amortisation

| Particulars | For the year ended 31 March, 2022 | For the year ended 31 March, 2021 |
|---|---|---|
| a) Depreciation of Property, Plant and Equipment (Refer Note 3) | 84.40 | 35.67 |
| b) Depreciation of Right-of-use assets (Refer Note 4) | 241.70 | 80.40 |
| Less: Amounts transferred to intangibles under development from (b) above (Refer Note 6 (b)) | (15.83) | (24.84) |
| | 225.87 | 55.56 |
| c) Amortisation of intangible assets (Refer Note 6 (a)) | 861.23 | 303.33 |
| **Total** | **1,171.50** | **394.56** |

## 30 Other expenses

| Particulars | For the year ended 31 March, 2022 | For the year ended 31 March, 2021 |
|---|---|---|
| Power charges | 31.30 | 9.30 |
| Rent | 112.29 | 50.79 |
| Repairs and maintenance | | |
| - Buildings | 20.45 | 6.54 |
| - Others | 48.46 | 19.23 |
| Insurance | 14.23 | 5.09 |
| Communication expense | 109.15 | 50.07 |
| Travelling expense | 434.39 | 95.42 |
| Freight and forwarding expenses | 76.94 | 32.10 |
| Sponsorship expenses | - | 128.06 |
| Selling and distribution expenses | 53.83 | - |
| Commission | 309.70 | 237.00 |
| Teacher's fees | 391.45 | 297.70 |
| Gateway Charges | 44.32 | 22.28 |
| IT expenses | 324.87 | 54.21 |
| Legal and professional fees (Refer Note B) | 1,191.91 | 672.94 |
| Subscription charges | 125.75 | 73.35 |
| Allowance for expected credit loss | 146.91 | 32.43 |
| Bad debts written off | 39.64 | 0.07 |
| (Less): Provision carried in earlier years | (18.83) | - |
| Rates and taxes (Refer Note A below) | 235.59 | 347.95 |
| Printing and stationery | 4.44 | 1.70 |
| Donations and contributions | 0.01 | 1.52 |
| (Less) Add: Provision for doubtful advances and security deposits | (4.21) | 11.18 |
| Exchange difference (net) | - | 1.09 |
| Royalty expenses | 47.41 | 32.90 |
| Security charges | 20.59 | 5.23 |
| Miscellaneous expenses | 214.87 | 21.52 |
| **Total** | 3,975.46 | 2,209.67 |
| Less: Amounts transferred to intangibles under development (Refer Note 6 (b)) | (582.96) | (408.94) |
| **Total** | **3,392.50** | **1,800.73** |

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

Note A

During the year ended 31 March 2021, the Directorate General of GST Intelligence (Authority) finalized the investigation on February 18, 2021 against books supplied during the period July 2017 to October 2020. This has resulted in payment of GST of Rs.96.17 Crores, interest of Rs.27.95 Crores and penalty of Rs.14.43 Crores. The Authority has concluded the investigation without issuing show cause notice since the GST liability was accepted and paid by the Company.

**Note B: Legal and professional charges includes payment to auditors as follows:**

| Particulars | For the year ended 31 March, 2022 | For the year ended 31 March, 2021 |
|---|---|---|
| (a) Payment to Auditor | | |
| - for statutory audit (Refer Note i below) | 4.49 | 4.50 |
| - for certificates | - | 0.49 |
| (b) for taxation services (Refer Note ii below) | - | 0.64 |
| (c) for reimbursement of expenses | 0.09 | 0.17 |
| **Total** | **4.58** | **5.80** |

Note:

i. For the year ended 31 March, 2021, Statutory audit fees includes Rs.3.5 Crores towards the additional effort incurred in the audit consequent to material weaknesses observed in internal controls.

ii. The above includes Nil (Previous year : Rs.0.64 Crores) paid to a firm affiliated to the statutory auditors firm through a networking arrangement as registered with the Institute of Chartered Accountants of India.

*("This space has been intentionally left blank")*

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**31 Employee benefits**

**(a) Defined contribution plans**

The Group makes contributions to Provident Fund and Employee State Insurance Scheme which are defined contribution plans, for qualifying employees. Under the Schemes, the Group is required to contribute a specified percentage of the payroll costs to fund the benefits. The Group recognised Rs.107.16 Crore (Year ended 31 March 2021: Rs. 59.73 Crore) towards Provident Fund contributions and Rs. 0.09 Crore (Year ended 31 March 2021: Rs. 0.07 Crore) towards Employee State Insurance Scheme contributions in the Consolidated Statement of Profit and Loss.

Tangible Play Inc., a subsidiary in United States of America has a 401(k) plan to provide defined contribution retirement plan benefits to employees, who become eligible to participate in the plan upon employment. Eligible employees may elect to contribute a percentage of their compensation to the plan, subject to limitations under the Internal Revenue Code. The subsidiary may make discretionary matching contributions to the plan. During the financial years ended 31 March 2021 and 31 March 2022, the subsidiary made no discretionary matching contributions to the plan.

**(b) Defined benefit plans**

Gratuity: Every employee is entitled to a benefit equivalent to fifteen days' last drawn salary for each completed year of service in line with the Payment of Gratuity Act, 1972. The same is payable at the time of separation from the Group or retirement, whichever is earlier. The benefit vests after five years of continuous service. The plan is not funded.

**A. Expense recognised in consolidated statement of profit and loss**

| Particulars | Year ended 31 March, 2022 | Year ended 31 March, 2021 |
|---|---|---|
| **i. Amounts recognised in comprehensive income in respect of defined benefit plans are as follows:** | | |
| Current service cost | 48.46 | 16.22 |
| Interest cost | 3.87 | 1.56 |
| **Total expense recognised in the consolidated statement of profit and loss** | **52.33** | **17.78** |
| **ii. Remeasurements recognised in other comprehensive income are as follows:** | | |
| Actuarial losses/(gains) | (4.35) | 3.43 |
| **Total** | **(4.35)** | **3.43** |

**iii. Remeasurements recognised in other comprehensive income**

| Particulars | Year ended 31 March, 2022 | Year ended 31 March, 2021 |
|---|---|---|
| Gain or loss from changes in financial assumptions | (6.40) | 1.27 |
| Gain or loss from changes in demographic assumptions | (1.17) | - |
| Gain or loss from experience adjustments | 3.22 | 2.16 |
| **Total** | **(4.35)** | **3.43** |

**B. Amount recognized in the balance sheet**

| Particulars | Year ended 31 March, 2022 | Year ended 31 March, 2021 |
|---|---|---|
| Present value of defined benefit obligation recognised in the consolidated balance sheet | 102.79 | 46.17 |
| Current portion | 11.14 | 0.59 |
| Non current portion | 91.65 | 45.58 |
| **Total** | **102.79** | **46.17** |

**C. Reconciliation of the net defined benefit (asset) liability**

The following table shows a reconciliation from the opening balances to the closing balances for the net defined benefit (asset) liability and its components.

| Particulars | As at 31 March, 2022 | As at 31 March, 2021 |
|---|---|---|
| **Reconciliation of present value of defined benefit obligation** | | |
| Opening balance | 46.17 | 22.22 |
| Benefits paid | (3.12) | (0.77) |
| Current service cost | 48.46 | 16.62 |
| Pursuant to business combination | 11.76 | 2.82 |
| Interest cost | 3.87 | 1.56 |
| Actuarial (gains) losses recognised in other comprehensive income | (4.35) | 3.43 |
| Others | - | 0.29 |
| **Balance** | **102.79** | **46.17** |
| **Plan assets** | - | - |
| **Closing defined benefit obligation** | **102.79** | **46.17** |

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**D. Plan assets**
The Group does not have any plan assets

**E. Defined Benefit obligations**
**i. Actuarial assumptions**

| Particulars | As at 31 March, 2022 | As at 31 March, 2021 |
|---|---|---|
| Discount rate (per annum) | 5.66% - 7.51 % | 6.95% |
| Salary escalation | 6.5% - 20% | 8.00% until year 3 inclusive, then 7.00% |
| Attrition rate | 2% - 28% | - |
| Retirement Age | 58-74 Years | - |
| Mortality rate | 100% of IALM (2012-14) | - |

The estimate of future salary increases considered in actuarial valuation takes into account the inflation, seniority, promotion, increments and other relevant factors. The actuarial assumptions used for valuation of compensated absences is same as those used for gratuity.

Assumptions regarding mortality are based on published statistics and mortality tables by Insurance Regulatory and Development Authority of India.

**Maturity profile of defined benefit obligation**

| Particulars | For the year ended 31 March, 2022 | For the year ended 31 March, 2021 |
|---|---|---|
| Within 1 year | 10.84 | 0.59 |
| 1-2 years | 16.36 | 1.10 |
| 2-3 years | 16.57 | 1.39 |
| 3-4 years | 17.23 | 2.00 |
| 4-5 years | 16.91 | 2.82 |
| 5-10 years | 420.63 | 209.84 |
| Above 10 years | 15.99 | |

**Sensitivity analysis**

| Particulars | As at 31 March 2022 | | As at 31 March 2021 | |
|---|---|---|---|---|
| | Increase in Gratuity liability | Decrease in Gratuity liability | Increase in Gratuity liability | Decrease in Gratuity liability |
| Discount rate (0.5% movement) | (7.44) | 8.45 | (3.47) | 4.02 |
| Future salary growth (0.5% movement) | 7.75 | (7.11) | 4.00 | (3.64) |

Although the analysis does not take account of the full distribution of cash flows expected under the plan, it does provide an approximation of the sensitivity of the assumptions shown.

(c) **Compensated absences** : The Group's liability towards compensated absences is determined by actuarial valuation using Projected Unit Credit Method based on accumulated leave credit outstanding to the employee's credit as on the balance sheet date is not funded and amounts to Rs. 119.75 Crore (As at 31 March 2021: Rs. 52.18 Crore).

*("This space has been intentionally left blank")*

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

32 **A. Contingent liabilities (to the extent not provided for)**

| Particulars | As at 31 March, 2022 | As at 31 March, 2021 |
|---|---|---|
| (a) Claims against the Group not acknowledged as debt | | |
| (i) Demand / show cause notices received from tax authorities | | |
| - Service tax matters | 99 73 | - |
| -Central excise | 30 08 | - |
| - Income Tax (Refer note (i) below) | 3 81 | - |

(i) There are certain litigations related to Income Tax disputes for AY 2017-18 and AY 2018-19 in respect of which, the Parent's appeals are pending with the ITAT and CIT(A). There are no demands raised by the authorities in respect of these litigations.

**B. Commitments (to the extent not provided for)**

| Particulars | As at 31 March, 2022 | As at 31 March, 2021 |
|---|---|---|
| (b) Corporate guarantee | | |
| (i) Corporate Guarantee issued on behalf of Tangible Play Inc. | 153 13 | 149.65 |
| (ii) Corporate Guarantee issued on behalf of Byjus Alpha Inc., | 10,461 38 | - |

C Byju's Alpha Inc., a step-down subsidiary of the Company incorporated in Delaware, USA ('Alpha') availed a USD 1 2 billion term loan B facility (TLB) pursuant to a Credit and Guaranty Agreement ('Credit Agreement') dated 24 November 2021
On 3 March 2023, GLAS issued a Notice of Default and Acceleration under the Credit Agreement accelerating the TLB GLAS also issued a Notice of Enforcement taking enforcement steps under certain security agreements ('3 March Notices'). By the Notice of Enforcement, GLAS triggered a US Pledge Agreement, to effectively seize control of all the equity shares controlling Alpha and take over its board of directors, replacing Alpha's existing officer and director with its own designee, Timothy Pohl ('Mr Pohl'). The 3 March Notices were issued pursuant to the following purported events of default under Clause 8.1(e) of the Credit Agreement ('Events of Default'): (a) failure to provide unaudited and audited financial statements, including quarterly statements, and (b) failure to procure a guarantee from Whitehat India Education Technology Private Limited ('Whitehat Guarantee'), within contractually stipulated timelines. Clause 8.1 of the Credit Agreement allows GLAS to immediately accelerate the Term Loan on the occurrence of an event of default.

On 3 May 2023, GLAS and Mr Pohl ('Delaware Plaintiffs') filed an action under Section 225 of the Delaware General Corporation Law) against Alpha, one of the Company's directors, and Tangible Play Inc., subsidiary of the Company, 'Delaware Defendants') seeking declaratory relief inter alia that the replacement of the Company's director with Mr Pohl as CEO, sole director and secretary of Alpha was valid. The Company is not a party to these proceedings. The Delaware Defendants opposed the action on the following grounds
(a) The Delaware Court does not have jurisdiction to determine the dispute, and the New York Courts have exclusive jurisdiction to determine the validity of the acceleration notice under the Credit Agreement
(b) In any event and without prejudice, the 3 March Notices were not valid as the purported Events of Default were trivial, inconsequential or non-monetary and New York law (the governing law under the Credit Agreement) does not permit acceleration of loans on such grounds.
(c) The purported failure to procure the Whitehat Guarantee was due to a legal impossibility

The Delaware Chancery Court conducted a bench trial in the Delaware Proceedings on 4 August 2023, and the matter has been reserved for orders.

On 5 June 2023, the Company and guarantors under the Credit Agreement filed a complaint in the New York Supreme Court against GLAS, inter alia, seeking a declaration that the 3 March 2023 notices were invalid (New York Complaint). In the New York proceedings, GLAS is yet to file its opposition, which is currently due on 3 November 2023.

The Borrower's US counsel has indicated that the claims and defences made in the Delaware Proceedings and the New York Proceedings are arguable, have been advanced in good faith and, to date, neither the Delaware court nor the New York court have indicated that they would dismiss any of the claims or defences. Basis the legal view obtained by the Company/ Group, the litigation may take another one to two years to settle. Till such time, there are no dues/ claims payable by the Company/ Group. However, the Company/ Group is unable to determine an assessment on the likely outcome of the litigations (including the associated claims and expenses) and accordingly any impact on these financial statements is currently unascertainable. Further, the Company is not a party to the Delaware proceedings and the guarantee provided by the Company under the Credit Agreement has not been invoked as on date.

The financial statements of the Group have been prepared on the going concern basis considering the below:
- Continued operations for 18+ months from the reporting date on the basis of funds available as at March 31, 2022 and additional funds raised subsequent to the year-end aggregating to Rs.3,299 71 Crores.
- Potential sale of a subsidiary
- Non-binding term sheets with potential investors to raise funds

In the unlikely event, the TLB loan is required to be repaid by the Group prior to the scheduled maturity, the Board of Directors have approved a plan to settle the same by utilising funds available along with the proceeds from the sale of subsidiaries and raising additional funds (currently non-binding terms are available with the Group)

Outside of repayment of the original loan and fund raise from (which are non-binding), which together are categorised as material uncertain events, management does not foresee any material financial implications for the Company with respect to the TLB.

(ii) The Group has incurred a loss of Rs. 8,104.82 crore during the year ended March 31, 2022 and has accumulated loss of Rs. 13,682 07 crore as at March 31, 2022. The Group has a positive net current asset of Rs. 4,915.77 crore and a positive net worth of Rs. 21,008.03 crore as at March 31, 2022. Subsequent to the year-end, the Company has raised Rs. 3,299.71 from various sources. The Company has taken various measures including cost optimisation, focused growth plan and utilisation of resources to contain the overall cash burn. The Company has non-binding term sheets with potential investors to raise funds and has obtained term sheets from potential buyers towards the sale of a subsidiary. The management has estimated the cash flow requirement for the upcoming 12 months (up to October 2024) and believes that it has necessary resources (including cash/funds available with its subsidiary company) to continue to operate as a going concern. Accordingly, the Company has prepared the financial statements for the year ended March 31, 2022 on a going concern basis.

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**33 Operating segment**

The Group's Chief Operating Decision-Maker (CODM) is considered to be the Parent's CEO & Managing Director ('MD'). The CODM evaluates the Group's performance on an overall basis. The Group is engaged in the business of providing Educational technology (Edu-tech) products and services which constitutes a single operating segment for the purpose of decision making for allocation of resources and assessing performance. Accordingly, no additional disclosure is required to be provided under Ind AS 108, other than those provided below.

**Entity wide disclosures - information about Geographical areas:**

**(i) Revenue from external customers:**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| India | 3,464.19 | 987.67 |
| USA | 1,058.10 | 795.59 |
| Middle East | 417.80 | 497.00 |
| Australia | 22.08 | |
| UK | 14.17 | |
| Rest of the World | 38.26 | |
| **Total** | **5,014.60** | **2,280.26** |

**(ii) Non-current assets***

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| India | 17,294.35 | 3,959.65 |
| USA | 10,471.05 | 1,888.44 |
| Vietnam | 12.95 | 13.95 |
| Austria | 195.94 | |
| **Total** | **27,974.29** | **5,862.04** |

* Non-current assets exclude financial instruments and deferred taxes.

**34 Related party disclosures**

**(a) Details of related parties**

| Description of relationship | Names of related parties |
|---|---|
| (i) Key Management Personnel (KMP) | Byju Raveendran - Managing Director<br>Riju Ravindran - Director<br>Divya Gokulnath - Director |
| (ii) Relatives of KMP | Deeptha A R |
| (iii) Non-Executive Directors | Ravi Shankar Venkataraman Ganapathy Agraharam<br>Vivian Wu<br>Russell Andrew Dreisenstock |

**Details of related party transactions during the year ended 31 March, 2022**

| Particulars | KMP | Relatives of KMP | Total |
|---|---|---|---|
| **Remuneration (refer note ii below)** | | | |
| Byju Raveendran | 0.73 | - | 0.73 |
| | (0.73) | - | (0.73) |
| Riju Ravindran | 0.80 | - | 0.80 |
| | (0.80) | - | (0.80) |
| Divya Gokulnath | 0.80 | - | 0.80 |
| | (0.80) | - | (0.80) |
| Deeptha A R | - | 0.60 | 0.60 |
| | - | (0.60) | (0.60) |

**Notes:**
(i) Figures in ( ) relate to the financial year 2020-21
(ii) Remuneration does not include Gratuity and Leave encashment which is computed for the Group as a whole

**35 Loss per share**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Loss after tax | (8,245.20) | (4,564.38) |
| Adjustments: | | |
| (i) Dividends on convertible preference shares and tax thereon | - | - |
| (ii) Expenses incurred in connection with issue of shares | (28.96) | (6.22) |
| **Loss attributable to equity shareholders** | **(8,274.16)** | **(4,570.60)** |
| Weighted average number of equity shares including effect of conversion of CCCPS for basic EPS | 41,61,657 | 35,02,015 |
| Basic earnings per share (Rs.) | (19,881.89) | (13,051.34) |
| Diluted earnings per share (Rs.)* | (19,881.89) | (13,051.34) |

*Since there is a loss, potential equity shares are not considered as dilutive. Hence diluted EPS is same as basic EPS
(Nominal value per share - Rs. 10)

The incremental shares from assumed conversions (ESOPs, shares committed to be issued as consideration towards acquisitions) have not been disclosed since they have not been included in the calculation of the diluted per-share amounts, because the earnings attributable to equity holders of the parent entity, adjusted for preference dividends and share issue expenses, was negative (ie a loss, rather than profit).

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**36 Income taxes**

(a) As at 31 March 2022, the Group has a net deferred tax asset, on account of unabsorbed depreciation and carried forward loss in the Parent and certain of its subsidiaries. The same has not been recognized in the absence of reasonable certainty of taxable profits in the near future.

(b) **Deferred tax (liabilities)/ assets :**

| Particulars | As at 31 March, 2022 | As at 31 March, 2021 |
|---|---|---|
| **Deferred tax liabilities:** | | |
| Intangible assets | (1,197.92) | (233.49) |
| Others | (8.50) | |
| | **(1,206.42)** | **(233.49)** |
| **Deferred tax assets:** | | |
| Property, plant and equipment | (3.89) | (0.11) |
| Provision for employee benefits | (17.26) | 0.08 |
| Pursuant to acquisition | 18.01 | |
| Others | 50.98 | |
| | **47.84** | **(0.03)** |
| Deferred tax income | - | - |
| Less: Deferred tax asset not recognized | - | - |
| Deferred tax asset, net | - | - |

In absence of reasonable certainty of taxable income in future years, during the year ended 31 March 2022, the Group has created deferred tax asset on unabsorbed depreciation and other items to the extent of deferred tax liability. During the year ended 31 March 2021, the Group had recognized deferred tax asset to the extent of deferred tax liability only.

(c) Recognition of deferred tax asset to the extent of deferred tax liability

| **Balance sheet** | **31 March 2022** | **31 March 2021** |
|---|---|---|
| Deferred tax asset | 47.84 | - |
| Deferred tax liabilities | 1,206.42 | 233.52 |

(d) **Movement in temporary differences**

**Deferred Tax Liabilities**

| Particulars | Balances as at April 1, 2021 | Additions through business combination (Refer note 39-48) | Recognized in Profit or loss during 2021-22 charge / (credit) | Recognized in OCI during 2021-22 | Other Adjustments | Balances as at March 31, 2022 |
|---|---|---|---|---|---|---|
| Property, plant and equipment | (0.11) | - | 0.10 | - | 0.01 | - |
| On Intangibles recognized on consolidation | (233.49) | (1,078.66) | 131.71 | (17.49) | 0.01 | (1,197.92) |
| Provision for employee benefits | 0.08 | - | - | - | (0.08) | (0.00) |
| Others | - | (37.83) | 29.33 | - | - | (8.50) |
| **Total** | **(233.52)** | **(1,116.49)** | **161.14** | **(17.49)** | **(0.06)** | **(1,206.42)** |

| Particulars | Balances as at April 1, 2020 | Additions through business combination | Recognized in Profit or loss during 2020-21 charge / (credit) | Recognized in OCI during 2020-21 | Other Adjustments | Balances as at March 31, 2021 |
|---|---|---|---|---|---|---|
| Property, plant and equipment | (0.54) | - | 0.43 | - | - | (0.11) |
| On Intangibles recognized on consolidation | (77.11) | (191.25) | 34.87 | - | - | (233.49) |
| Provision for employee benefits | 0.03 | - | 0.05 | - | - | 0.08 |
| Others | 0.02 | - | - | (0.02) | - | - |
| **Total** | **(77.60)** | **(191.25)** | **35.35** | **(0.02)** | **-** | **(233.52)** |

**Deferred Tax Assets**

| Particulars | Balances as at April 1, 2021 | Additions through business combination | Recognized in Profit or loss during 2021-22 charge / (credit) | Recognized in OCI during 2021-22 | Other Adjustments | Balances as at March 31, 2022 |
|---|---|---|---|---|---|---|
| Property, plant and equipment | - | (5.79) | 1.91 | - | (0.01) | (3.89) |
| Pursuant to acquisition | - | (15.32) | (1.94) | - | - | (17.26) |
| Provision for employee benefits | - | 5.43 | 11.68 | 0.92 | (0.02) | 18.01 |
| Others | - | 59.03 | (8.03) | 0.19 | (0.21) | 50.98 |
| **Total** | **-** | **43.35** | **3.62** | **1.11** | **(0.24)** | **47.84** |

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

| (e) | **Income tax expense** | **31 March 2022** | **31 March 2021** |
|---|---|---|---|
| | - Current tax taxes | 39.95 | 0.65 |
| | - Adjustments in respect of current income tax of previous year | | |
| | - Deferred tax charge / (income) | (164.76) | (35.35) |
| | **Income tax expense reported in the statement of profit or loss** | **(124.81)** | **(34.70)** |

| (f) | **Income tax expense charged to OCI** | **31 March 2022** | **31 March 2021** |
|---|---|---|---|
| | Net loss/(gain) on remeasurements of defined benefit plans | 0.90 | 0.02 |
| | **Income tax charged to OCI** | **0.90** | **0.02** |

(g) **Reconciliation of effective tax rate**

| **Particulars** | As at 31 March, 2022 | As at 31 March, 2021 |
|---|---|---|
| Loss before tax | (8,370.01) | (4,599.08) |
| Tax using the group's domestic tax rate (Current year 25.168 % and Previous Year 25.168%) | (2,107.57) | (1,158.05) |
| On impact of Ind AS 116 | - | 39.15 |
| Expenses not deductible for tax purpose | 24.03 | - |
| Unrecognized deferred taxes for the year | 1,958.73 | 1,083.55 |
| Others | - | 0.65 |
| Current and deferred tax expense reported in the Consolidated Statement of Profit and Loss | **(124.81)** | **(34.70)** |

37 **Transfer Pricing**

The Group has established a comprehensive system of maintenance of information and documents as required by the transfer pricing legislation under Sections 92-92F of the Income-tax Act. Since the law requires existence of such information and documentation to be contemporaneous in nature, the Group is in the process of updating the documentation for the international as well as specified domestic transactions (if applicable) entered into with the associated enterprise during the financial year and expects such records to be in existence latest by the end of the stipulated timeline, as required by law. The Management of the Group is of the opinion that its international as well as specified domestic transactions (if any) are at arm's length so that the aforesaid legislation will not have any impact on the financial statements, particularly on the amount of tax expenses and that of provision for taxation.

*("This space has been intentionally left blank")*

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

**THINK & LEARN PRIVATE LIMITED**

**Notes to the consolidated financial statements for the year ended 31 March 2022**

**(Amount in INR crores, unless otherwise stated)**

**38 Leases**

(i) The following is the break-up of current and non-current lease liabilities

| Particulars | As at March 31, 2022 | As at March 31, 2021 |
|---|---|---|
| Current lease liabilities | 317.22 | 84.81 |
| Non-current lease liabilities | 1,182.29 | 171.12 |
| **Total** | **1,499.51** | **255.93** |

(ii) The following is the movement in the lease liabilities

| Particulars | As at March 31, 2022 | As at March 31, 2021 |
|---|---|---|
| Opening balance | 255.93 | 215.13 |
| Pursuant to acquisitions | 573.88 | - |
| Additions | 857.03 | 121.72 |
| Finance cost accrued during the year | 72.45 | 12.35 |
| Deletions | (4.07) | (6.65) |
| Lease rent concessions | (9.70) | (0.69) |
| Payment of lease liabilities | (246.01) | (85.93) |
| **Closing balance** | **1,499.51** | **255.93** |

(iii) Amounts recognised in the statement of profit and loss

Rental expense recorded as short-term leases in current year amounts to Rs. 76.34 Crores (31 March 2021 : Rs. 50.79 Crores).

MSKA & ASSOCIATES ★ Chartered Accountants ★

*("This space has been intentionally left blank")*

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

## 39 Acquisition of Whitehat Education Technology Private Limited ("Whitehat Jr")

On 5 August 2020, the Parent entered into Share Purchase Agreement ("SPA") and Share Holders Agreement ("SHA") with Whitehat Jr and its shareholders to acquire equity stake in Whitehat Jr. In accordance with the SPA and SHA, on 10 August 2020 the Parent acquired 73.91% stake for a cash consideration of INR 1,327.43 Crores and thus Whitehat Jr became a subsidiary of the Group. Pursuant to a further rights issue subscribed to by the Parent, the shareholding holding in Whitehat Jr as at 31 March 2021 was 76%. As on the date of acquisition, the Parent had a written put option and purchase call option for the remaining shareholding as per the agreement. The Group recorded a financial liability for the estimated present value of its gross obligation to purchase the non-controlling interest as of the acquisition date in accordance with the share purchase agreement with a corresponding adjustment to equity. The Parent completed the acquisition of the balance stake in Whitehat Jr during the year.

Whitehat Jr is engaged in providing coding classes to the students who belong to the age group of 6 to 17 years. Whitehat Jr has a unique feature to provide 1:1 online coding classes to students wherein a teacher focuses on a one child at a time. The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill. The primary items that generated this goodwill are the value of the acquired assembled workforce and estimated synergies, neither of which qualify as an amortizable intangible asset.

The purchase price is allocated to assets acquired and liabilities assumed based on the determination of fair values as determined by the Seller on the basis of the valuation report obtained from an independent valuer at the dates of acquisition as follows:

| Particulars | Acquiree's carrying amount | Fair value adjustments | Purchase price allocated |
|---|---|---|---|
| **Assets** | | | |
| Property Plant and Equipment | 0.19 | - | 0.19 |
| Other non current assets | 8.87 | - | 8.87 |
| Cash and cash equivalents | 54.62 | - | 54.62 |
| Other current assets | 54.09 | - | 54.09 |
| **Identified Intangible Assets** | | | - |
| Brand | - | 115.00 | 115.00 |
| Tech platform and content | - | 597.70 | 597.70 |
| Teacher network | - | 32.00 | 32.00 |
| **Total Assets** | **117.77** | **744.70** | **862.47** |
| **Liabilities** | | | |
| Other current liabilities | 328.72 | | 328.72 |
| Other non-current liabilities | 6.18 | | 6.18 |
| Deferred tax liability on intangibles | - | 187.52 | 187.52 |
| **Total Liabilities** | **334.90** | **187.52** | **522.42** |
| Non Controlling Interest's proportionate share in acquiree's net identifiable assets | | | (88.72) |
| Goodwill* | | | 1,076.09 |
| **Total purchase consideration paid in cash** | | | **1,327.42** |

*Goodwill is not tax deductible.

The transaction costs of Rs. 2 Crores related to the acquisition have been included under administrative expenses in the Consolidated Statement of Profit and Loss for the year ended March 31, 2021

If the acquisition had taken place at the beginning of the year, revenue from operations would have been higher by Rs. 61.31 Croress and the loss before tax from operations for the Group from Whitehat Jr would have been higher by Rs. 238.27 Croress.

From the date of acquisition, Whitehat Jr has contributed Rs.326.66 Crores of total revenue and loss of Rs.1,548.76 Crores to the loss before tax from operations of the Group.

MSKA & ASSOCIATES ★ Chartered Accountants ★

*("This space has been intentionally left blank")*

Think and Learn Pvt. Ltd. Bangalore ★

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**40 Acquisition of Great Lakes E-Learning Services Private Limited**

On 20 July 2021, the Group acquired 100% equity interests in Great Lakes E-Learning Services Private Limited (referred as "Great Learning India") on a going concern basis for a total purchase consideration of Rs. 552.23 Crores includes cash of Rs. 461.16 Crores and settlement of vested stock option granted by Great Learning India to it's employees with fair value of Rs. 91.07 Crores.

Great Learning India offers comprehensive, industry-relevant programs across various cutting-edge technology, data and business domains. Great Learning India programs are developed in collaboration with the world's foremost academic institutions. The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill.

The Group accounted for this acquisition under the acquisition method and the assets acquired and liabilities assumed have been recorded at their fair value as determined on the basis of the report obtained from an independent valuer.

The purchase price allocation for Great Lakes E-Learning Services Private Limited based upon determination of fair values at the date of acquisition is as follows:

| Particulars | Acquiree's carrying amount | Fair value adjustments | Purchase price allocated |
|---|---|---|---|
| Assets | | | |
| Property Plant and Equipment | 5.98 | - | 5.98 |
| Intangible assets | 0.15 | - | 0.15 |
| Other non current assets | 23.28 | - | 23.28 |
| Cash and cash equivalents | 15.55 | - | 15.55 |
| Other current assets | 32.24 | - | 32.24 |
| Total liabilities | 211.68 | 42.11 | 253.79 |
| **Acquired intangible assets*** | | | |
| Brand | | 50.00 | 50.00 |
| University partnership | - | 134.90 | 134.90 |
| Faculty/Mentor Network | - | 3.00 | 3.00 |
| Internally developed technology | - | 8.90 | 8.90 |
| Deferred tax liabilities on intangibles | | | 51.17 |
| Goodwill** | | | 492.12 |
| **Total purchase price** | | | **461.16** |

*Economic useful of the asset is 5-10 years
**Goodwill is not tax deductible.

If the acquisition had taken place at the beginning of the year, revenue from operations would have been Rs. 312.72 Crores and the loss before tax from operations for the Group from Great Learning India would have been Rs. 317.00 Crores.

From the date of acquisition, Great Learning India has contributed Rs. 219.50 Crores of total revenue and loss of Rs. 193.74 Crores to the loss before tax from operations of the Group.

*("This space has been intentionally left blank")*

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**41 Acquisition of Grade Stack Learning Private Limited**

During the year, the Company has entered into Share Purchase and Subscription Agreement to acquire 100% equity stake in Grade Stack Learning Private Limited ("Grade Stack").

On 03 September 2021, the Company had acquired 51.10% of voting rights (comprising 29.79% of total outstanding equity stake) for a cash consideration of Rs 131.91 Crores and adjustment arising from settlement of stock options granted by Grade stack to its employees amounting to Rs.2.08 Crores.

As per the merger framework agreement, pursuant to merger of Grade Stack with the Company, the Company has an obligation to purchase remaining 70.21% equity interests from non-controlling shareholders of Grade stack for a consideration by way of issue of 13,270 Series F CCCPS of the Company having fair value of Rs 378.29 Crores which is recorded as other equity.

Think and Learn has provided a loan of INR 48 crore to Grade Stack before the acquisition. The loan amount payable by Grade Stack to Think and Learn pre-acquisition is considered as part of purchase consideration and fair value of the loan is not taken over as part of total liabilities taken over on the acquisition date.

The transaction costs of Rs 0.01 Crores related to the acquisition have been included in the Consolidated Statement of Profit and Loss for the year ended March 31, 2022.

Grade Stack is engaged in the business of providing education and learning software's on web tablets and mobile phones. The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill. The primary items that generated this goodwill are the value of the acquired assembled workforce and estimated synergies, neither of which qualify as an amortizable intangible asset.

The purchase price is allocated to assets acquired and liabilities assumed based on the determination of fair values as determined by the Seller on the basis of the valuation report obtained from an independent valuer at the dates of acquisition as follows:

The purchase price allocation for Grade Stack Learning Private Limited based upon determination of fair values at the date of acquisition is as follows:

| Particulars | Acquiree's carrying amount | Fair value adjustments | Purchase price allocated |
|---|---|---|---|
| Total assets | | | |
| Property Plant and Equipment | 4.69 | | 4.69 |
| Intangible assets | 0.07 | | 0.07 |
| Other non current assets | 2.13 | | 2.13 |
| Cash and cash equivalents | 115.33 | | 115.33 |
| Other current assets | 6.45 | | 6.45 |
| Total liabilities | 187.05 | (48.00) | 139.05 |
| **Acquired intangible assets*** | | | |
| Intangible assets | | | 153.80 |
| Brand / Trade name | | 16.40 | |
| Teacher Network | | 2.80 | |
| Content | | 97.10 | |
| Internally Developed Technology | | 37.50 | |
| Deferred tax liabilities on intangibles | | | 39.99 |
| Goodwill** | | | 452.69 |
| **Total purchase price** | | | **556.12** |

*Economic useful of the asset is 5 years
**Goodwill is not tax-deductible.

If the acquisition had taken place at the beginning of the year, revenue from operations would have been Rs. 49.11 Crores and the loss before tax from operations for the Group from Grade Stack would have been Rs. 133.08 Crores.

From the date of acquisition, Grade Stack has contributed Rs. 30.36 Crores of total revenue and loss of Rs. 77.76 Croress to the loss before tax from operations of the Group.

MSKA & ASSOCIATES ★ Chartered Accountants ★

*("This space has been intentionally left blank")*

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

**42 Acquisition of Epic! Creations, Inc.**

On 16 November 2021, the Group acquired 100% equity interests in Epic Creations, Inc. (referred as "Epic") for a total consideration of Rs. 4,235.23 Crores. The purchase consideration includes cash of Rs 643.78 Crores and 125,984 Series F CCCPS with a fair value of Rs. 3,591.45 Crores as on the date of acquisition.

Epic provides digital books, audio/video books for kids aged between 2-12 on a monthly/annual subscription basis.

The transaction costs of Rs. 20.76 Crores related to the acquisition have been included in the Consolidated Statement of Profit and Loss for the year ended March 31, 2022.

The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill. The primary items that generated this goodwill are the value of the acquired assembled workforce and estimated synergies, neither of which qualify as an amortizable intangible asset.

The group accounted for this acquisition under the acquisition method and the assets acquired and liabilities assumed have been recorded at their fair value as determined on the basis of the report obtained from an independent valuer.

The purchase price allocation for Epic! Creations,Inc. based upon determination of fair values at the date of acquisition is as follows:

| Particulars | Acquiree's carrying amount | Fair value adjustments | Purchase price allocated |
|---|---|---|---|
| Assets** | | | |
| Property Plant and Equipment | 2.25 | | 2.25 |
| Intangible assets | 38.61 | | 38.61 |
| Other non current assets | | | - |
| Cash and cash equivalents | 93.20 | | 93.20 |
| Other current assets | 84.89 | | 84.89 |
| Total liabilities | 297.41 | | 297.41 |
| **Acquired intangible assets*** | | | |
| Brand | | 469.06 | 469.06 |
| Publisher relationship | | 186.13 | 186.13 |
| Internally developed technology | | 714.75 | 714.75 |
| Deferred tax liabilities on intangibles | | | 340.71 |
| Goodwill** | | | 3,284.46 |
| **Total purchase price** | | | **4,235.23** |

*Economic useful of the asset is 5-10 years
**Goodwill is not tax-deductible.

If the acquisition had taken place at the beginning of the year, revenue from operations would have been Rs. 418.63 Crores and the loss before tax from operations for the Group from Epic! Creations,Inc. would have been Rs. 403.16 Crores.

From the date of acquisition, Epic! Creations,Inc. has contributed Rs. 157.79 Crores of total revenue and loss of Rs. 61.39 Crores to the loss before tax from operations of the Group.

MSKA & ASSOCIATES ★ Chartered Accountants ★

*("This space has been intentionally left blank")*

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**43 Acquisition of Toppr Technologies Private Limited**

During the year, the Company has entered into share purchase agreement, share swap agreement and Merger framework agreement to acquire 100% equity interest in Toppr technologies private limited ("Toppr"). Toppr is engaged in the business of providing online practice and test packages that helps students prepare for IIT JEE, PMT, School Boards and other competitive exams.

On 31 July 2021, the Company had acquired 69.85% equity interest in Toppr for total consideration Rs. 883.02 crore which includes cash of Rs 387.02 Crores, issue of 17,036 Series F CCCPS having fair value of Rs 485.65 Crores as on the date of acquisition and settlement of vested stock option granted by Toppr to it's employees with fair value of Rs. 10.35 Crores.

As per the merger framework agreement, pursuant to merger of Toppr with the Company, the Company has an obligation to purchase remaining 30.15% equity interests from non-controlling shareholders of Toppr for a consideration by way of issue of 15,796 Series F CCCPS of the Company having fair value of Rs 450.3 Crores which is recorded as other equity.

Think and Learn has provided a loan of INR 80 crore to Toppr before the acquisition. The loan amount payable by Toppr to Think and Learn pre-acquisition is considered as part of purchase consideration and fair value of the loan is not taken over as part of total liabilities taken over on the acquisition date.

The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill. The primary items that generated this goodwill are the value of the acquired assembled workforce and estimated synergies, neither of which qualify as an amortizable intangible asset.

The transaction costs of Rs 0.57 Crores related to the acquisition have been included in the Consolidated Statement of Profit and Loss for the year ended March 31, 2022.

The purchase price is allocated to assets acquired and liabilities assumed based on the determination of fair values as determined by the Seller on the basis of the valuation report obtained from an independent valuer.

The purchase price allocation for Toppr Technologies Private Limited based upon determination of fair values at the date of acquisition is as follows.

| Particulars | Acquiree's carrying amount | Fair value adjustments | Purchase price allocated |
|---|---|---|---|
| Assets | | | |
| Property Plant and Equipment | 1.77 | | 1.77 |
| Intangible assets | 0.05 | | 0.05 |
| Other non current assets | 62.52 | | 62.52 |
| Cash and cash equivalents | 2.41 | | 2.41 |
| Other current assets | 8.92 | | 8.92 |
| Total liabilities | 192.70 | (80.00) | 112.70 |
| **Acquired intangible assets*** | | | |
| Brand/Tradename | | 72.90 | 72.90 |
| Toppr platform | | 162.80 | 162.80 |
| Content | | 210.00 | 210.00 |
| Student network | | 66.20 | 66.20 |
| Deferred tax liabilities on intangibles | | | 133.09 |
| Non controlling interest | | | - |
| Goodwill** | | | 1,071.54 |
| **Total purchase price** | | | **1,413.32** |

*Economic useful of the asset is 5 years
**Goodwill is not tax-deductible

If the acquisition had taken place at the beginning of the year, revenue from operations would have been Rs. 94.23 Crores and the loss before tax from operations for the Group from Toppr would have been Rs. 180.73 Crores.

From the date of acquisition, Toppr has contributed Rs. 82.72 Crores of total revenue and loss of Rs. 104.35 Croress to the loss before tax from operations of the Group.

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

**44 Acquisition of Neuron Fuel, Inc (Tynker)**

On 2 December 2021, the Group acquired 100% equity interests in Tynker for a total consideration of Rs. 1,153.07 Crores which includes cash of Rs 298.19 Crores and adjustment arising from settlement of stock options granted by Neuron Fuel Inc to its employees amounting to Rs.2.56 Crores and consideration by way of issue of 30,078 Series F CCCPS having fair value of Rs 857.44 Crores as on date of acquisition.

Tynker is an online coding platform that offers a platform designed to teach children programming skills and computational thinking.

The transaction costs of Rs 0.63 Crores related to the acquisition have been included in the Consolidated Statement of Profit and Loss for the year ended March 31, 2022.

The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill. The primary items that generated this goodwill are the value of the acquired assembled workforce and estimated synergies, neither of which qualify as an amortizable intangible asset.

The Group accounted for this acquisition under the acquisition method and the assets acquired and liabilities assumed have been recorded at their fair value as determined on the basis of the report obtained from an independent valuer.

The purchase price allocation for Tynker based upon determination of fair values at the date of acquisition is as follows:

| Particulars | Acquiree's carrying amount | Fair value adjustments | Purchase price allocated |
|---|---|---|---|
| Assets | | | |
| Property Plant and Equipment | - | - | - |
| Trade receivable | 2.27 | | 2.27 |
| Cash and cash equivalents | 53.91 | | 53.91 |
| Other current assets | 0.26 | | 0.26 |
| Total liabilities | 43.78 | | 43.78 |
| **Acquired intangible assets*** | | | |
| Brand | | 22.50 | 22.50 |
| Intellectual property | | 232.50 | 232.50 |
| Deferred tax liabilities on intangibles | | | 68.85 |
| Goodwill** | | | 954.26 |
| **Total purchase price** | | | **1,153.07** |

*Economic useful of the asset is 5-10 years
**Goodwill is not tax-deductible.

If the acquisition had taken place at the beginning of the year, revenue from operations would have been Rs. 21.03 Croress and the loss before tax from operations for the Group from Tynker would have been Rs. 6.92 Croress

From the date of acquisition, Tynker has contributed Rs. 16.76 Crores of total revenue and loss of Rs. 6.29 Croress to the loss before tax from operations of the Group.

*("This space has been intentionally left blank")*

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

### 45 Acquisition of Aakash Educational Services Limited

During the year, the Company has entered into share purchase agreement(SPA) and merger framework agreement to acquire 100% equity stake in Aakash Educational Services Limited ("Aakash").

On 21 June 2021, the Company acquired 29.5% controlling equity interests in Aakash for a cash consideration of Rs.1,947.64 Crores and adjustment arising from settlement of stock options granted by Aakash to its employees amounting to Rs.45.55 Crores. The Company controls Aakash through it's rights obtained through SPA and merger framework agreement on payment of the above mentioned consideration.

In accordance with the share purchase agreements the Company has a obligation to purchase ~40.2% equity interest held by selling shareholders for a cash consideration of Rs 2,839.29 Crores on first anniversary from the date of acquisition. The Group recorded a financial liability for the estimated present value of its gross obligation to purchase the shares as of the acquisition date. This estimated present value of the gross obligation to purchase the ~40.2% equity interest is valued at Rs. 2,689.03 crores at the date of acqusition.

As per the merger framework agreement, pursuant to merger of Aakash with the Company, the Company has an obligation to purchase remaining 30.3% equity interests from non-controlling shareholders of Aakash for a consideration by way of issue of 84,595 Series F CCCPS of the Company having fair value of Rs 2,007.74 Crores which is recorded as other equity.

The transaction costs of Rs 2.60 Crores related to the acquisition have been included in the Consolidated Statement of Profit and Loss for the year ended March 31, 2022.

Aakash is engaged in the business of providing test preparatory and repeater courses to students of class 8 to class 12 under three programs Aakash Medical, Aakash Foundation and Aakash IIT-JEE and delivers its services through classroom, digital and distance learning programs.

The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill. The primary items that generated this goodwill are the value of the acquired assembled workforce and estimated synergies, neither of which qualify as an amortizable intangible asset.

The Group accounted for this acquisition under the acquisition method and the assets acquired and liabilities assumed have been recorded at their fair value as determined on the basis of the report obtained from an independent valuer.

The purchase price allocation for Aakash based upon determination of fair values at the date of acquisition is as follows:

| Particulars | Acquiree's carrying amount | Fair value adjustments | Purchase price allocated |
|---|---|---|---|
| Assets | | | |
| Property Plant and Equipment | 115.27 | 3.34 | 118.61 |
| Building | | - | - |
| Intangible assets | 82.57 | (66.49) | 16.09 |
| Other non current assets | 677.29 | 4.82 | 682.11 |
| Cash and cash equivalents | 15.74 | - | 15.74 |
| Other current assets | 411.64 | - | 411.64 |
| Total liabilities | 1,357.40 | 8.09 | 1,365.49 |
| **Acquired intangible assets*** | | | |
| Tradename | | 890.90 | |
| Branch Network | | 234.90 | |
| Crystal Platform | | 24.20 | |
| Franchise Agreement | | 119.00 | 1,269.00 |
| Deferred tax liabilities on intangibles | | | 319.38 |
| Goodwill** | | | 5,770.54 |
| **Total purchase price (Including consideration payable)** | | | **6,598.86** |

*Economic useful of the asset is 5-10 years
**Goodwill is not tax-deductible.

If the acquisition had taken place at the beginning of the year, revenue from operations would have been Rs. 1,452.24 Crores and the loss before tax from operations for the Group from Aakash would have been Rs. 54.77 Croress

From the date of acquisition, Aakash has contributed Rs. 1,277.64 Crores of total revenue and profit of Rs. 126.72 Crores to the loss before tax from operations of the Group.

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

### 46 Acquisition of Geogebra GMBH

On 21 March 2022, the Group acquired 50% equity interests in Geogebra GMBH ("GeoGebra") for a cash consideration of Rs. 96.87 Crores.

The Company has an obligation as per the share swap agreement ("SSA") to purchase remaining 50% equity interests from selling shareholders of Geogebra GMBH for a consideration by way of issue of 3,157 Series F CCCPS of the Company having fair value of Rs 90.00 Crores which is recorded as other equity.

GeoGebra was founded in 2013 and is based in Linz, Austria. GeoGebra provides mathematics software that facilitates teaching and learning worldwide. GeoGebra supports 400+ STEM education, teaching and learning, and service providers worldwide such as Pearson, Google Education, Apple Education, and Office 365. GeoGebra has games and interactive learning tools through which students can learn STEM subjects called classroom resources.

The transaction costs of Rs 0.01 Crores related to the acquisition have been included in the Consolidated Statement of Profit and Loss for the year ended March 31, 2022.

The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill. The primary items that generated this goodwill are the value of the acquired assembled workforce and estimated synergies, neither of which qualify as an amortizable intangible asset.

The Group has accounted for this acquisition under the acquisition method, and the assets acquired and liabilities assumed have been recorded at their fair value as determined on the basis of the report obtained from an independent valuer.

The purchase price allocation for Geogebra GMBH based upon determination of fair values at the date of acquisition is as follows:

| Particulars | Acquiree's carrying amount | Fair value adjustments | Purchase price allocated |
|---|---|---|---|
| Asset | | | |
| Property Plant and Equipment | 0.49 | - | 0.49 |
| Intangible assets | - | - | - |
| Other non current assets | - | - | - |
| Cash and cash equivalents | 5.72 | - | 5.72 |
| Other current assets | 3.09 | - | 3.09 |
| Total liabilities | 7.39 | - | 7.39 |
| **Acquired intangible assets*** | | | |
| Intangibles | - | 37.00 | 37.00 |
| Deferred tax liabilities on intangibles | - | - | 9.25 |
| Goodwill** | | | 157.21 |
| **Total purchase price** | | | **186.87** |

*Economic useful of the asset is 5-10 years
**Goodwill is not tax-deductible.

If the acquisition had taken place at the beginning of the year, revenue from operations would have been Rs 8.84 Croress and the loss before tax from operations for the Group from Geogebra would have been Rs. 0.22 Crores.

From the date of acquisition, Geogebra has contributed Rs. 0.25 Crores of total revenue and loss of Rs. 0.26 Croress to the loss before tax from operations of the Group.

MSKA & ASSOCIATES ★ Chartered Accountants ★

*("This space has been intentionally left blank")*

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

## 47 Acquisition of Weblength Infonet Private Limited

During the year, Great Learning India has entered into share purchase agreement (SPA) to acquire 100% equity stake in Weblength Infonet Private Limited.

On 8 February 2022, Great Learning India has acquired 91.97% equity stake in Superset for a cash consideration of Rs 132.19 Crores. In accordance with the share purchase agreement Great Learning India has a obligation to purchase remaining 8.03% equity interest held by non-controlling shareholders for a cash consideration of Rs 11.54 Crores. The Group recorded a financial liability for the estimated present value of its gross obligation to purchase the remaining shares as of the acquisition date at Rs. 10.96 Crores.

The transaction costs of Rs 4.89 Crores related to the acquisition have been included in the Consolidated Statement of Profit and Loss for the year ended March 31, 2022.

The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill. The primary items that generated this goodwill are the value of the acquired assembled workforce and estimated synergies, neither of which qualify as an amortizable intangible asset.

The Group has accounted for this acquisition under the acquisition method, and the assets acquired and liabilities assumed have been recorded at their fair value as determined on the basis of the report obtained from an independent valuer.

The purchase price allocation for Weblength Infonet Private Limited based upon determination of fair values at the date of acquisition is as follows:

| Particulars | Acquiree's carrying amount | Fair value adjustments | Purchase price allocated |
|---|---|---|---|
| Total Assets | | | |
| Property Plant and Equipment | 0.61 | - | 0.61 |
| Intangible assets | 1.49 | (1.49) | - |
| Cash and cash equivalents | 6.94 | - | 6.94 |
| Other assets | 4.51 | - | 4.51 |
| Total liabilities | 6.20 | - | 6.20 |
| **Acquired intangible assets*** | | | |
| Trade name | 11.51 | - | 11.51 |
| Developed technology | 17.79 | - | 17.79 |
| Deferred tax liabilities on intangibles | - | - | 7.23 |
| Goodwill** | | | 115.22 |
| **Total purchase price** | | | **143.15** |

*Economic useful of the asset is 5 years.
**Goodwill is not tax-deductible.

If the acquisition had taken place at the beginning of the year, revenue from operations would have been Rs. 10.44 Crores and the loss before tax from operations for the Group from Superset would have been Rs. 5.59 Crores

From the date of acquisition, Superset has contributed Rs. 1.71 Crores of total revenue and loss of Rs. 2.35 Croress to the loss before tax from operations of the Group.

*("This space has been intentionally left blank")*

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**48 Acquisition of Great Learning Education Pte. Ltd**

On 22 July 2021, Byjus Pte limited (an wholly owned subsidiary of Think and Learn) acquired 56.5% equity interest in Great Learning Education Pte. Ltd ("GL Singapore") for cash consideration of Rs. 590.29 Crores and a contingent consideration based on certain performance targets with an estimated fair value of Rs. 612.51 Crores as on the date of acquisition. The determination of contingent consideration is based on performance targets as set out in the share purchase agreement.

Further, on 26 July 2021, the Company has acquired 35.7% equity interest in GL Singapore pursuant to a share swap agreement by way of issue of 29,324 Series F CCCPS having a fair value of Rs 835.94 Crores.

GL India has provided a services to GL Pte and an amount of INR 7 crore is payable by Great Learning PTE before the acquisition. The amount payable by GL PTE to GL India pre-acquisition is considered as part of purchase consideration and fair value of the liability is not taken over as part of total liabilities taken over on the acquisition date.

The acquisition of non-controlling interest is dependent on payment of contingent consideration based on certain performance targets in a manner as set out in the share purchase agreement. The Group recorded a financial liability for the estimated present value of its gross obligation to purchase the remaining shares as of the acquisition date.

GL Singapore is a ed-tech company engaged in the business for professional and higher education. It offers comprehensive, industry relevant programs across various cutting-edge Technology, Data and Business domains.

The transaction costs of Rs 1.75 Crores related to the acquisition have been included in the Consolidated Statement of Profit and Loss for the year ended March 31, 2022.

The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill. The primary items that generated this goodwill are the value of the acquired assembled workforce and estimated synergies, neither of which qualify as an amortizable intangible asset.

The group accounted for this acquisition under the acquisition method and the assets acquired and liabilities assumed have been recorded at their fair value as determined on the basis of the report obtained from an independent valuer.

The purchase price allocation for GL PTE based upon determination of fair values at the date of acquisition is as follows:

| Particulars | Acquiree's carrying amount | Fair value adjustments | Purchase price allocated |
|---|---|---|---|
| Total Assets | | | |
| Cash and cash equivalents | 54.44 | - | 54.44 |
| Other assets | 21.76 | - | 21.76 |
| Total liabilities | 118.00 | 0.38 | 118.38 |
| **Acquired intangible assets*** | | | |
| Brand | - | 74.37 | 74.37 |
| University Partner Relationship | - | 609.82 | 609.82 |
| Deferred tax liabilities on intangibles | | | 116.31 |
| NCI | 43.01 | - | 43.01 |
| Goodwill** | | | 1,563.05 |
| **Total purchase price** | | | **2,045.74** |

*Economic useful of the asset is 5-10 years
**Goodwill is not tax-deductible.

If the acquisition had taken place at the beginning of the year, revenue from operations would have been Rs. 278.81 Crores and the loss before tax from operations for the Group from GL PTE would have been Rs. 292.48 Crores.

From the date of acquisition, GL PTE has contributed Rs. 196.28 Crores of total revenue and loss of Rs. 23.74 Crores to the loss before tax from operations of the Group.

*("This space has been intentionally left blank")*

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**49 Capital management**

The Group manages its capital to ensure that it will be able to continue as a going concern (also refer note 32(c)) while maximising the return to stakeholders through the optimization of the debt and equity balance. The capital structure of the Group consists of borrowings and lease liabilities as indicated in Notes 17 and 18, respectively and total equity as indicated in Notes 15 and 16. The Board of Directors of the Group reviews the capital structure on a periodical basis. The Group manages its capital structure and makes adjustments in the light of changes in economic environment and the requirements of the financial covenants.

The capital structure is as follows:

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Total equity attributable to the shareholders of the Group | 21,008.03 | 7,544.61 |
| Equity as a percentage of total capital employed | 64.42% | 82.43% |
| Short term borrowings | 1,273.42 | 1,351.81 |
| Lease liabilities (including current portion of lease liabilities) | 1,499.51 | 255.93 |
| Non-current borrowings (including current maturities) | 8,828.65 | - |
| **Total borrowings** | **11,601.58** | **1,607.74** |
| Borrowing as a percentage of total capital employed | 0.36 | 0.18 |
| **Total capital employed** | **32,609.61** | **9,152.35** |

**Gearing Ratio**

The Group monitors capital on the basis of the following gearing ratio:

Net debt (Total borrowings net of cash and cash equivalents) divided by Total equity (as shown in Balance sheet)

The gearing ratio at the end of the reporting period was as follows:

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Borrowings | 10,102.07 | 1,351.81 |
| Cash and cash equivalents | (4,301.26) | (2,675.43) |
| **Adjusted Net Debt (A)** | **5,800.81** | **(1,323.62)** |
| **Total Equity (B)** | **21,008.03** | **7,544.61** |
| **Total capital** | **26,808.84** | **6,220.99** |
| **Gearing ratio** | **0.22** | |

Note: Since net debt is negative gearing ratio is not relevant for previous year

**50 Financial instruments - Fair value and risk management**

**A. Accounting classification and fair values**

Fair Value

The fair value of current investments, cash and cash equivalents, other bank balances, trade receivables, loans, other financial assets, trade payables, lease liabilities, other financial liabilities and borrowings approximate their carrying amount largely due to short term nature of these instruments.

| Particulars | Note No | As at 31 March 2022 | | | As at 31 March 2021 | | |
|---|---|---|---|---|---|---|---|
| | | Carrying amount | | | Carrying amount | | |
| | | FVTPL | Amortised cost | Total | FVTPL | Amortised cost | Total |
| **Financial assets** | | | | | | | |
| Loans (current and non-current) | 7 | - | 4.13 | 4.13 | - | 33.05 | 33.05 |
| Trade receivables | 12 | - | 654.87 | 654.87 | - | 377.09 | 377.09 |
| Cash and cash equivalents | 13 (a) | - | 4,301.26 | 4,301.26 | - | 2,675.43 | 2,675.43 |
| Bank balances other than above | 13 (b) | - | 765.95 | 765.95 | - | 440.92 | 440.92 |
| Other financial assets (current and non-current) | 8 | - | 430.34 | 430.34 | - | 559.88 | 559.88 |
| Investments in mutual funds (unquoted) | 14 | 16.63 | - | 16.63 | 967.81 | - | 967.81 |
| Investments in mutual funds (quoted) | 14 | 27.80 | - | 27.80 | - | - | - |
| Investments in preference shares | 14 | 1.45 | - | 1.45 | - | - | - |
| Debt instruments | 14 | 5,761.34 | - | 5,761.34 | - | - | - |
| Investments in bonds (unquoted) - current | 14 | 723.93 | - | 723.93 | 373.94 | - | 373.94 |
| **Financial liabilities** | | | | | | | |
| Borrowings - current | 17 | - | 10,102.07 | 10,102.07 | - | 1,351.81 | 1,351.81 |
| Lease liabilities (current and non-current) | 18 | - | 1,499.51 | 1,499.51 | - | 255.93 | 255.93 |
| Trade payables | 22 | - | 1,665.79 | 1,665.79 | - | 1,065.41 | 1,065.41 |
| Other financial liabilities (current and non-current) | 23 | - | 4,411.08 | 4,411.08 | - | 442.87 | 442.87 |

**Fair value hierarchy**

| Particulars | Note No | As at 31 March 2022 | | | As at 31 March 2021 | | |
|---|---|---|---|---|---|---|---|
| | | Fair value | | | Fair value | | |
| | | Level 1 | Level 2 | Level 3 | Level 1 | Level 2 | Level 3 |
| **Financial assets** | | | | | | | |
| Investments in mutual funds (unquoted) - current | 14 | - | 16.63 | - | - | 967.81 | - |
| Investments in mutual funds (quoted) | 14 | 27.80 | - | - | - | - | - |
| Investments in preference shares | 14 | - | 1.45 | - | - | - | - |
| Debt instruments | 14 | 5,761.34 | - | - | - | - | - |
| Investments in bonds (unquoted) - current | 14 | - | 723.93 | - | - | 373.94 | - |

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**Measurement of fair values:**

(a) The Management assessed that loans, trade receivables, cash and cash equivalents, other bank balances, other financial assets, borrowings, trade payables, lease liabilities and other financial liabilities approximate their carrying amounts largely due to short term maturities of these instruments.

(b) The fair values of Mutual funds are based on net asset value at the reporting date. The fair values of Bonds are based on fund statements.

**B. Financial risk management**

**i. Financial risk management**

The Group's activities expose it to a variety of financial risks: credit risk, liquidity risk, foreign currency risk and interest rate risk. The Board of Directors identify and evaluate business risks and challenges across the Group. The responsibility of developing and monitoring risk vests with the Board of Directors. The Group's focus is to foresee the unpredictability of financial markets and seek to minimize potential adverse effects on it's financial performance. The Group's exposure to credit risk is influenced mainly by the individual characteristic of each customer.

**ii. Credit risk**

Credit risk refers to the risk that the counterparty will default on its contractual obligations resulting in financial loss to the Group. Credit risk arises principally from the Group's receivables from customers. We believe that the realizability of the receivables, modification to credit standards, collection practices and other related policies may impact the allowance for doubtful accounts. Refer note 12 for disclosure for trade receivables.

Credit risk on liquid funds is limited because the counterparties are banks and companies with high credit-ratings assigned by credit-rating agencies.

**iii. Liquidity risk**

Liquidity risk is the risk that the Group will encounter difficulty in meeting the obligations associated with its financial liabilities that are settled by delivering cash or another financial asset. The Group invests surplus funds, including from those from investing activities by others into the Group, from time-to-time in various short-term instruments. It manages liquidity by maintaining adequate reserves funding facilities from banks and financial institutions and monitoring cash flows.

The following table provides details regarding the undiscounted contractual maturities of significant financial liabilities at the reporting date:

| Particulars | As at 31 March 2022 | | | |
|---|---|---|---|---|
| | Carrying amount | Less than 1 year | 1-2 years | More than 2 years |
| Lease liabilities | 1,499.51 | 402.19 | 330.05 | 1,098.57 |
| Borrowings | 10,102.07 | 1,273.42 | 34.69 | 8,793.96 |
| Trade payables | 1,665.79 | 1,664.95 | 0.84 | - |
| Other financial liabilities | 4,411.08 | 3,845.04 | 278.73 | 287.31 |
| **Total** | **17,678.45** | **7,185.60** | **644.31** | **10,179.84** |

| Particulars | As at 31 March 2021 | | | |
|---|---|---|---|---|
| | Carrying amount | Less than 1 year | 1-2 years | More than 2 years |
| Lease liabilities | 255.93 | 88.03 | 71.78 | 113.80 |
| Borrowings | 1,351.81 | 1,351.81 | - | - |
| Trade payables | 1,065.41 | 1,065.41 | - | - |
| Other financial liabilities | 442.87 | 442.87 | - | - |
| **Total** | **3,116.02** | **2,948.12** | **71.78** | **113.80** |

Information about the corporate guarantees issued by the Company is included in note 32

**iv. Market risk**

The market risk that the Group is exposed to are as follows:

Market risk is the risk that the fair value of future cash flows of a financial instrument will fluctuate because of changes in market prices. Market risk comprises three types of risk: interest rate risk, currency risk and other price risk, such as equity price risk. Financial instruments affected by market risk include borrowings and other financial instruments (witholding derivatives).

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

**a) Currency risk**

The Group's foreign exchange risk arises from its foreign currency revenues and expenses (primarily denominated in USD). The summary quantitative data about the Group's exposure to currency risk (based on notional amounts) is reported to the management as follows:

| As at 31 March 2022 | USD (in crores) |
|---|---|
| **Financial assets/ (liabilities)** | |
| Trade receivables | 12.58 |
| Other financial assets - Other receivables | 0.03 |
| Cash and cash equivalents | 20.41 |
| Trade payables | (6.56) |
| **Net assets / (liabilities)** | **26.46** |

| As at 31 March 2021 | USD (in crores) |
|---|---|
| **Financial assets/ (liabilities)** | |
| Trade receivables | 6.21 |
| Cash and cash equivalents | 1.83 |
| Trade payables | (0.65) |
| **Net assets / (liabilities)** | **7.39** |

**Sensitivity analysis**

A reasonably possible strengthening /(weakening) of the Rs. against US dollar at 31 March 2022 would have affected the measurement of financial instruments denominated in a foreign currency and affected equity and profit or loss by the amounts shown below. This analysis assumes that all other variables, in particular interest rates, remain constant and ignores any impact of forecast sales and purchases. The Group's sensitivity to a 1% increase and 1% decrease in the INR against the USD is presented below:

| Particulars | Impact on profit or (loss) before tax | |
|---|---|---|
| | Strengthening | Weakening |
| **As at 31 March 2022** | | |
| Rs. In Crores (1% movement) | 20.06 | (20.06) |
| **As at 31 March 2021** | | |
| Rs. In Crores (1% movement) | 5.43 | (5.43) |

**b) Interest rate risk**

The Company's exposure to changes in interest rates relates primarily to the Company's outstanding floating rate debt. A major portion of foreign currency debt is linked to international interest rate benchmarks like LIBOR hence subject to interest rate risk.

The exposure of the Company's borrowing (undiscounted) to interest rate changes at the end of the reporting period are as follows:

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Floating rate borrowings | 9,074.11 | - |

A hypothetical 1% change in respective currency LIBORs and other benchmarks, holding all other variables constant, on the unhedged loans would result in a corresponding increase/decrease in interest cost for the Company on a yearly basis as follows:

| Particulars | Impact on Profit and Loss after tax | | Impact on equity | |
|---|---|---|---|---|
| | As at 31 March 2022 | As at 31 March 2021 | As at 31 March 2022 | As at 31 March 2021 |
| **US Dollar** | | | | |
| Interest rates -increase by 1% in USD interest rate | (90.74) | - | (90.74) | - |
| Interest rates -decrease by 1% in USD interest rate | 90.74 | - | 90.74 | - |

**(c) Price risk**

The primary goal of the Company's investment in equity securities is to hold the investments for the long term for strategic purposes. Certain investments are designated as at FVTPL because their performance is actively monitored and they are managed on a fair value basis.

**51 Money received against share warrants**

In accordance with the Board Resolutions dated 21 December, 2017 and 17 September, 2019 and the share-cum-warrant subscription agreements dated 23 November 2017 and 16 March, 2019 entered into by the Company and Bennett, Coleman & Company Limited (BCCL), the Company issued 5 warrants each for a total consideration of Rs. 1.30 crores and Rs. 3.90 crores respectively which represents 10% of the application money. The warrants may be converted into such number of equity shares on payment of balance amount at any time post completion of 3 years but within a period of 5 years from the date of issue of warrants as determined by the valuation on the date of conversion in accordance with the terms of the agreement. In the event the warrants are not converted into shares within the said period, the Company is eligible to forfeit the amounts received towards the warrants. As on date, BCCL holds 10 share warrants and no conversion has occurred.

MSKA & ASSOCIATES ★ Chartered Accountants ★

*("This space has been intentionally left blank")*

Think and Learn Pvt. Ltd. Bangalore ★

**Think & Learn Private Limited**
**Notes to the consolidated financial statements**
**(Amount in INR crores, unless otherwise stated)**

### 52 Share based payments

During the year ended 31 March 2020, the Group introduced the Employee Stock Option Plan - 2019 ("ESOP 2019") for the benefit of the employees of the Parent and its subsidiaries, as approved by the Board of Directors in its meeting held on 20 August 2019. ESOP 2019 provides for the creation and issue of equity share options that would eventually convert into equity shares of one each in the hands of the employees of the Parent and its subsidiaries. The options are to be granted to the eligible employees as per the eligibility criteria as determined by the Board at its sole discretion. The share options vest as per the terms of the grant and are exercisable from the date of vesting until the earlier of the initial public offer of the shares of the Parent ("IPO") or liquidation event. In the event of an IPO or liquidation event:

(a) all vested options shall be mandatorily exercisable prior to an IPO / liquidation event per the timelines decided by the board or else, such options shall lapse

(b) all unvested options, shall be vested and be mandatorily exercisable prior to an IPO / liquidation event per the timelines decided by the board or else, such options shall lapse.

Pursuant to ESOP 2019, the Company granted 38,423 share options till 31 March 2022 (previous year: 25,812) to employees of the Company and its subsidiaries. The stock compensation expense recognised for employee services received during the year ended 31 March 2022 and 2021 were Rs. 70.08 Crores and Rs. 466.67 Crores respectively.

Expected volatility has been based on comparable companies based on similarity of business model of the Company.

The activity in this stock option plan is summarized below:

The weighted average remaining contractual life for the stock options outstanding as at 31 March 2022 is 3.07 years (previous year: 2.12 years).

**Fair value presentation**

Options have been valued based on fair value method as described under IND AS 102 Share Based Payments using Black Scholes valuation options-pricing model, using the fair value of the Parent's shares as on the grant date.

**Table - 1**

| Particulars | 31 March 2022 | | 31 March 2021 | |
|---|---|---|---|---|
| | No of options | Weighted average exercise price | No of options | Weighted average exercise price |
| Outstanding as at the beginning of the year (Nos.) | 1,785 | 2,31,782 | 3,310 | 1,21,922 |
| | 2,921 | 1,21,922 | | |
| | 15,000 | 4,340 | | |
| | 7,167 | 10 | | |
| Options granted during the year (Nos.) | 9,089 | 2,73,089 | 1,785 | 2,31,782 |
| | 3,522 | 10 | 15,000 | 4,340 |
| Forfeited during the year (Nos.) | 1084 | 1,62,845 | 389 | 1,21,922 |
| Exercised during the year (Nos.) | 6,750 | 4,340 | 1,860 | 10 |
| | 6,894 | 10 | | |
| Outstanding at the end of the year (Nos.) | 8,250 | 4,340 | 1,785 | 2,31,782 |
| | 3,795 | 10 | 2,921 | 1,21,922 |
| | 12,711 | 2,41,690 | 15,000 | 4,340 |
| | | | 7,167 | 10 |
| Exercisable at the end of the year(Nos.) | 8,250 | 4,340 | 15,000 | 4,340 |
| | 273 | 10 | 6,075 | 10 |
| | 1,466 | 1,46,551 | | |
| Estimated market price (Rs) | 2,85,072 | | 2,13,032 | |

*("This space has been intentionally left blank")*

**Think & Learn Private Limited**
**Notes to the consolidated financial statements**
**(Amount in INR crores, unless otherwise stated)**

Table - 2

| 31 March 2022 | | 31 March 2021 | |
|---|---|---|---|
| **Date of grant** | **Number of shares** | **Date of grant** | **Number of shares** |
| 01 April 2021 | 770 | 01 April, 2020 | 21,100 |
| 03 April 2021 | 42 | 03 April, 2020 | 1,092 |
| 06 April 2021 | 42 | 20 April, 2020 | 49 |
| 23 April 2021 | 21 | 01 June, 2020 | 2 |
| 27 April 2021 | 560 | 25 June, 2020 | 1,860 |
| 02 May 2021 | 38 | 09 July, 2020 | 10 |
| 20 May 2021 | 51 | 16 July, 2020 | 8 |
| 23 May 2021 | 35 | 21 July, 2020 | 37 |
| 01 June 2021 | 589 | 01 September, 2020 | 78 |
| 18 June 2021 | 168 | 21 September, 2020 | 157 |
| 01 July 2021 | 25 | 22 September, 2020 | 8 |
| 11 July 2021 | 17 | 01 October, 2020 | 21 |
| 18 July 2021 | 57 | 12 October, 2020 | 105 |
| 01 August 2021 | 1,356 | 14 October, 2020 | 17 |
| 10 September 2021 | 349 | 16 October, 2020 | 37 |
| 01 October 2021 | 2,956 | 20 October, 2020 | 27 |
| 03 October 2021 | 35 | 10 November, 2020 | 126 |
| 06 October 2021 | 4 | 17 November, 2020 | 21 |
| 10 October 2021 | 523 | 16 December, 2020 | 42 |
| 17 October 2021 | 87 | 24 March, 2021 | 1,015 |
| 28 October 2021 | 35 | | |
| 07 November 2021 | 782 | | |
| 08 November 2021 | 17 | | |
| 29 November 2021 | 40 | | |
| 01 December 2021 | 1,841 | | |
| 16 December 2021 | 664 | | |
| 19 December 2021 | 21 | | |
| 23 December 2021 | 2 | | |
| 01 January 2022 | 655 | | |
| 13 January 2022 | 233 | | |
| 01 February 2022 | 388 | | |
| 14 February 2022 | 22 | | |
| 25 February 2022 | 11 | | |
| 01 March 2022 | 35 | | |
| 08 March 2022 | 84 | | |
| 22 March 2022 | 56 | | |
| | **12,611** | | **25,812** |

**Table - 3**

| **Particulars** | **31 March 2022** | **31 March 2021** |
|---|---|---|
| Vesting period (years) | Upto 4 years | Upto 4 years |
| Expected life of option (years) | 4 years | 3 years |
| Expected volatility | 54.4% | 44.6% |
| Risk free rate | 5.1% | 5.4% |
| Expected dividends expressed as a dividend yield | - | - |
| Weighted average fair value at the date of grant (Rs) | 2,58,670 | 2,01,761 |

*("This space has been intentionally left blank")*

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements
(Amount in INR crores, unless otherwise stated)

53 **Additional regulatory information**

a. No proceedings have been initiated on or are pending against the Company under the Prohibition of Benami Property Transactions Act, 1988 (as ammended in 2016) (formerly the Benami Transactions (Prohibition) Act, 1988 (45 of 1988)) and Rules made thereunder.

b. The Company does not have any borrowing or loans sanctioned/received from banks and financial institutions on the basis of security of current assets.

c. The Company has not been declared wilful defaulter by any bank or financial institution or government or any government authority.

d. The Company has complied with the number of layers prescribed under Section 2(87) of the Act read with Companies (Restriction of number of layers) Rules, 2017.

e. (i) The Company has not advanced or loaned or invested funds to any other person(s) or entity(ies), including foreign entities (Intermediaries) with the understanding that the Intermediary shall:

a. directly or indirectly lend or invest in other persons or entities identified in any manner whatsoever by or on behalf of the group (Ultimate Beneficiaries) or

b. provide any guarantee, security or the like to or on behalf of the ultimate beneficiaries.

(ii) The Company has not received any fund from any person(s) or entity(ies), including foreign entities (Funding Party) with the understanding (whether recorded in writing or otherwise) that the Company shall:

a. directly or indirectly lend or invest in other persons or entities identified in any manner whatsoever by or on behalf of the Funding Party (Ultimate Beneficiaries) or

b. provide any guarantee, security or the like on behalf of the ultimate beneficiaries.

f. There is no income surrendered or disclosed as income during the current or previous year in the tax assessments under the Income Tax Act, 1961, that has not been recorded in the books of account.

g. The Company has not traded or invested in crypto currency or virtual currency during the current or previous year.

h. The Company has not revalued its property, plant and equipment or intangible assets or both during the current or previous year. The Company did not have any investment property during the current or previous year.

i. There are no charges or satisfaction which are yet to be registered with the Registrar of Companies beyond the statutory period.

j. The Company is not a Core Investment Company (CIC) as defined in the regulations made by the Reserve Bank of India.

k. **Transactions with struck off companies**
The following table summarises the transactions with the companies struck off under section 248 of the Companies Act, 2013 or section 560 of Companies Act, 1956 for the year ended / as at 31 March 2022:

| Name of struck off Company | Nature of transactions | Transactions during the year | Balance outstanding | Relationship with the Struck off company |
|---|---|---|---|---|
| True Value Marketing Private Limited | Payable | (0.50) | (0.11) | Vendor |
| 8 Finatics Mobile Private Limited | Payable | - | (0.01) | Vendor |
| Turbo Institute of Industrial Technology Private Limited | Payable | - | (0.00) | Vendor |
| Techawk IT Solutions Private Limited | Payable | - | (0.00) | Vendor |
| Renovix HR Private Limited | Payable | (0.05) | (0.02) | Vendor |
| Sri Sai Ram Agencies | Payable | (0.00) | (0.00) | Vendor |

The following table summarises the transactions with the companies struck off under section 248 of the Companies Act, 2013 or section 560 of Companies Act, 1956 for the year ended / as at 31 March 2021:

| Name of struck off Company | Nature of transactions | Transactions during the year | Balance outstanding | Relationship with the Struck off company |
|---|---|---|---|---|
| True Value Marketing Private Limited | Payable | - | (0.00) | Vendor |
| 8 FINATICS MOBILE Private Limited | Payable | - | (0.01) | Vendor |
| Turbo Institute of Industrial Technology Private Limited | Payable | - | (0.00) | Vendor |
| Techawk IT Solutions Private Limited | Payable | - | (0.00) | Vendor |

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED

Notes to the consolidated financial statements for the year ended 31 March 2022

54 Following is the share of net assets and the profit or loss of the entities which have been consolidated for preparation of the consolidated financial statements of Think & Learn Private Limited for the financial year ended 31 March, 2022:

| Name of the entity | Net assets i.e. total assets minus total liabilities | | Share in profit or loss | | Share in other comprehensive income | | Share in total comprehensive income | |
|---|---|---|---|---|---|---|---|---|
| | Amount | As a % of consolidated net assets | Amount | As a % of consolidated profit or loss | Amount | As a % of consolidated profit or loss | Amount | As a % of consolidated profit or loss |
| **Parent** | | | | | | | | |
| Think & Learn Private Limited | 2,449.58 | 11.69% | (3,729.70) | 45.28% | (0.50) | (0.36%) | (3,730.20) | 46.07% |
| **Indian subsidiaries** | | | | | | | | |
| Great Lakes E-Learning Services P Ltd | 697.35 | 3.33% | (223.91) | 2.72% | 0.24 | 0.17% | (223.67) | 2.76% |
| Grade Stack Learning Private Limited | 517.71 | 2.47% | (88.79) | 1.08% | (0.38) | (0.27%) | (89.17) | 1.10% |
| Toppr Technologies Private Limited | 1,429.35 | 6.82% | (187.77) | 2.28% | 1.33 | 0.95% | (186.44) | 2.30% |
| Aakash Educational Services Limited | 6,761.39 | 32.26% | 60.34 | (0.73%) | (2.76) | (1.96%) | 57.58 | (0.71%) |
| Span Thoughtworks Private Limited | 9.04 | 0.04% | (0.09) | 0.00% | - | - | (0.09) | 0.00% |
| Specadel Technologies Private Limited | 1.37 | 0.01% | (7.46) | 0.09% | (0.02) | (0.01%) | (7.48) | 0.09% |
| Byju's K3 Education Private Limited | 85.85 | 0.41% | (19.49) | 0.24% | (0.06) | (0.04%) | (19.55) | 0.24% |
| Whitehat Education Technology Private Ltd | 1,662.81 | 7.93% | (2,451.08) | 29.76% | 7.67 | 5.46% | (2,443.42) | 30.18% |
| **Foreign subsidiaries** | | | | | | | | |
| EPIC Creations Inc | 5,088.34 | 24.28% | (153.82) | 1.87% | 92.06 | 65.53% | (61.76) | 0.76% |
| Inspilearn LLC | 1,143.44 | 5.46% | (35.86) | 0.44% | (1.60) | (1.14%) | (37.46) | 0.46% |
| Tangible Play Inc. | 1,612.03 | 7.69% | (987.70) | 11.99% | 33.28 | 23.69% | (954.42) | 11.79% |
| GeoGebra GmbH | 187.96 | 0.90% | (0.34) | 0.00% | 1.81 | 1.29% | 1.48 | (0.02%) |
| Byjus Pte Ltd | (685.40) | (3.27%) | (411.42) | 4.99% | 9.42 | 6.71% | (402.00) | 4.96% |
| **Total** | **20,960.85** | **100.00%** | **(8,237.09)** | **100.00%** | **140.49** | **100.01%** | **(8,096.60)** | **100.00%** |
| **Non controlling interest** | | | | | | | | |
| Great Learning Education Pte. Ltd | 47.18 | | (8.11) | | (0.11) | | (8.22) | |
| **Grand Total** | **21,008.03** | | **(8,245.20)** | | **140.38** | | **(8,104.82)** | |

Note: After adjusting intercompany transactions and balances and includes goodwill and intangible assets arising on acqusition

55 **Subsequent events**

**(i) Intap Labs Private Limited**

On November 17, 2021, the Company entered into a Share Purchase Agreement and a Share Swap Agreement to acquire 100% shares of Intap Labs Private Limited, for a cash consideration of Rs.81.58 Crores and issue of 2,815 Series F CCPS of the Company. There are no other forms of variable consideration/contingent consideration arrangement. The acquisition was consummated on May 26, 2022 upon the completion of all closing conditions.

Intap Labs Private Limited is in the business of providing educational aids on the web, tablet and mobile phones.

**(ii) Northwest Education Pte. Ltd**

On April 05, 2022 the Company and Great Learning Education Pte. Ltd (a subsidiary of the Company) entered into a Share Purchase Agreement and a Share Swap Agreement to acquire 100% shares of Northwest Education Pte. Ltd for an upfront cash consideration of USD 20.00 Million (Equivalent Rs.151.61 Crores), issue of 3,750 Series F CCPS of the Company, a contingent consideration payable in cash over a period of three years starting the date of acquisition. The determination of contingent consideration is based on performance targets. The acquisition was consummated on April 27, 2022 upon the completion of all closing conditions.

Northwest Education Pte. Ltd is in the business of providing executive, continuing and lifelong learning through certificate and degree programs, boot camps, and any other programs in collaboration with universities and affiliated schools and organizations.

MSKA & ASSOCIATES ★ Chartered Accountants ★

*("This space has been intentionally left blank")*

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**

**(iii) Aakash Educational Services Limited**
In July 2022, the Company acquired 13.4% equity interest in Aakash Educational Services Limited ("Aakash") from certain shareholders of Aakash for a cash consideration. The Company entered into new agreements (Supplemental SPA, Drag Agreement and Option Agreement) with certain shareholders of Aakash and Byju's Investments Pte Ltd ("BIPL") and pursuant to such agreements, BIPL acquired 26.8% equity interest in Aakash from Investors for a cash consideration. BIPL is not part of the consolidated group owned by Think and Learn Private Limited. Further, as the Merger Long Stop date as per the Merger Framework Agreement has expired, the Company has requested for the share swap with certain other shareholders of Aakash, which is still under discussion with such shareholders.

**(iv) Geogebra GmbH**
On 27 May 2022, the Company allotted its 3,157 Series F CCPS pursuant to the share swap agreement to acquire the remaining 50% equity interests in Geogebra GmbH

**(v) Weblength Infonet Private Limited**
Subsequent to 31 March 2022, Great Lakes E-learning Services Private Limited (a subsidiary of the Company) acquired the remaining 8.03% equity interest in Weblength Infonet Private Limited for a cash consideration of Rs. 11.54 Crores.

(vi) On March 10, 2023, the Federal Deposit Insurance Corporation(FDIC) announced that SVB had been closed by the California Department of Financial Protection and Innovation. The United States Department of Treasury announced in a joint statement with the Federal Reserve and FDIC that depositors of SVB will have access to all their money starting March 13, 2023

**56** The Directorate of Enforcement, Bengaluru Zone (the "ED") issued multiple summons to the Chairman and Managing Director of the Company under section 37(1) and (3) of the Foreign Exchange Management Act, 1999 ("FEMA") read with section 131(1) of the Income Tax Act, 1961 ("IT Act") and section 30 of the Code of Civil Procedure 1908 ("CPC"), [the "Summons"]. Accordingly, various representatives of the Company have attended the ED offices on different dates and supplied information in compliance with the summons and information sought by the ED officers during such personal hearings.

Thereafter, the ED conducted search on April 27, 2023 at two office premises of the Company and one residential property of Mr. Byju Raveendran (occupied by Mr. Pravin Prakash) pursuant to authorization dated April 26, 2023 issued by Joint Director, ED under section 37(3) of the FEMA r/w section 132 of the IT Act to conduct search and seizure or freeze any record or property.

Post the search conducted by the ED, the ED officers have summoned various representatives of the Company for recording statements and also sought some further information and documents during in person visits to ED offices. The Company has not received any further communication from the ED.

**57** (a) The Parent company has received notices from Ministry of Corporate Affairs for non-compliances with the provisions of section 42, 92, 96, 137, 185, 188, 134, 88, 135, 179, 129, 144 and 148. Due to some operational challenges, Company was unable to conduct as per the requirement of these sections within prescribed timelines. Management has evaluated the possible impact of such non-compliances and provided for the same in the books of accounts. Management is in process of making an application for compounding to the authorities. Management does not foresee any further impact arising due to such non-compliances.

(b) Due to some operational challenges, the subsidiary companies Aakash Edutech Private Limited, Aakash Educational Service Limited and Whitehat Education Technology Private Limited was unable to conduct its Annual General Meeting ("AGM") in accordance with the provisions of Section 96 of the Companies Act, 2013 ("the Act"), and hence, these subsidiaries have also not complied with the provisions of Section 137 of the Act relating to the filing of financial statements with the Registrar of Companies and with Section 92 relating to filing of annual returns. The Company had made an application to the Registrar of Companies for the extension of the deadline for holding their AGM in respect of the year ended March 31, 2022, and got an approval upto December 31, 2022. However, the Company has not yet held their AGM within the above extended timelines and accordingly, is in non-compliance with the provisions of Section 96, Section 137 and Section 92 of the Act.

The management of the Company has evaluated the possible impact of such non-compliances. The management of the Company is also in the process of making an application for compounding these various non-compliances with the relevant authorities.

**58** The Board of Directors of Span Thoughtworks Private Limited and Specadel Technologies Private Limited in their meeting held on 23rd March 2022 had noted that in line with the intent of the Parent Company, to rationalize all operations, the two subsidiaries are ceasing its business operations. Accordingly, the standalone financial statements of these subsidiaries have been prepared on liquidation basis wherein assets have been remeasured at the values they are expected to realize and liabilities have been remeasured at the values they are expected to settle.

MSKA & ASSOCIATES Chartered Accountants

*("This space has been intentionally left blank")*

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022

**59 The Code on Social Security 2020**

The Code on Social Security 2020 ('the Code') relating to employee benefits, during the employment and post-employment, has received Presidential assent on September 28, 2020. The Code has been published in the Gazette of India. Further, the Ministry of Labour and Employment has released draft rules for the Code on November 13, 2020. However, the effective date from which the changes are applicable is yet to be notified and rules for quantifying the financial impact are also not yet issued.
The Company will assess the impact of the Code and will give appropriate impact in the financial statements in the period in which, the Code becomes effective and the related rules to determine the financial impact are published.

As per our report of even date

**For M S K A & Associates**
Chartered Accountants
Firm Registration No. 105047W

**Manish P Bathija**
Partner
Membership No. 216706

Place: Bangalore
Date: November 04, 2023

For and on behalf of the Board of Directors of
**THINK & LEARN PRIVATE LIMITED**

**Byju Raveendran**
Managing Director
DIN: 03408398

Place: Bangalore
Date: November 04, 2023

**Divya Gokulnath**
Director
DIN: 03415950

Place: Bangalore
Date: November 04, 2023

**THINK & LEARN PRIVATE LIMITED**
**Consolidated Balance Sheet as at 31 March 2022**
(Amount in INR crores, unless otherwise stated)

| Particulars | Note No. | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|---|
| **ASSETS** | | | |
| **Non-current assets** | | | |
| (a) Property, plant and equipment | 3 | 324.12 | 104.58 |
| (b) Capital work in progress | 3 (a) | 103.37 | - |
| (c) Right-of-use assets | 4 | 1,451.69 | 246.60 |
| (d) Goodwill | 5 | 15,927.45 | 1,708.53 |
| (e) Intangible assets | 6 (a) | 7,225.39 | 2,094.55 |
| (f) Intangible assets under development | 6 (b) | 2,102.29 | 1,390.88 |
| (g) Financial assets | | | |
| (i) Investments | 14 (a) | 1.45 | - |
| (ii) Loans | 7 (a) | - | 32.00 |
| (iii) Other financial assets | 8 (a) | 169.90 | 456.72 |
| (h) Income tax assets | 9 | 173.89 | 85.44 |
| (i) Deferred tax assets | 36 | 47.84 | - |
| (j) Other non-current assets | 10 (a) | 666.05 | 231.46 |
| **Total non-current assets** | | **28,193.44** | **6,350.76** |
| **Current assets** | | | |
| (a) Inventories | 11 | 613.36 | 252.48 |
| (b) Financial assets | | | |
| (i) Investments | 14 (b) | 6,529.70 | 1,341.75 |
| (ii) Trade receivables | 12 | 654.87 | 377.09 |
| (iii) Cash and cash equivalents | 13 (a) | 4,301.26 | 2,675.43 |
| (iv) Bank balances other than (iii) above | 13 (b) | 765.95 | 440.92 |
| (v) Loans | 7 (b) | 4.13 | 1.05 |
| (vi) Other financial assets | 8 (b) | 260.44 | 103.16 |
| (c) Other current assets | 10 (b) | 651.27 | 95.95 |
| **Total current assets** | | **13,780.98** | **5,287.83** |
| **Total assets** | | **41,974.42** | **11,638.59** |
| **EQUITY AND LIABILITIES** | | | |
| **Equity** | | | |
| (a) Equity share capital | 15 (a) | 1.42 | 1.41 |
| (b) Instruments entirely equity in nature | 15 (b) | 2.99 | 2.24 |
| (c) Other equity | 16 | 20,956.44 | 7,833.51 |
| Total equity attributable to equity holders of the Company | | 20,960.85 | 7,837.16 |
| Non-controlling interest | 16 (a) | 47.18 | (292.55) |
| **Total equity** | | **21,008.03** | **7,544.61** |
| **Liabilities** | | | |
| **Non-current liabilities** | | | |
| (a) Financial liabilities | | | |
| (i) Borrowings | 17 (a) | 8,828.65 | - |
| (ii) Lease liabilities | 18 (a) | 1,182.29 | 171.12 |
| (iii) Other financial liabilities | 23 (a) | 566.04 | - |
| (b) Provisions | 21 (a) | 183.52 | 92.00 |
| (c) Deferred tax liabilities | 36 | 1,206.42 | 233.52 |
| (d) Other non current liabilities | 19 | 134.26 | 10.63 |
| **Total non-current liabilities** | | **12,101.18** | **507.27** |
| **Current liabilities** | | | |
| (a) Financial liabilities | | | |
| (i) Borrowings | 17 (b) | 1,273.42 | 1,351.81 |
| (ii) Lease liabilities | 18 (b) | 317.22 | 84.81 |
| (iii) Trade payables | 22 | | |
| a) total outstanding dues of micro enterprises and small enterprises | | 46.59 | 1.34 |
| b) total outstanding dues other than in (a) above | | 1,619.20 | 1,064.07 |
| (iv) Other financial liabilities | 23 (b) | 3,845.04 | 442.87 |
| (b) Provisions | 21 (b) | 113.34 | 60.37 |
| (c) Current tax liabilities (net) | | 16.22 | 0.49 |
| (d) Other current liabilities | 20 | 1,634.18 | 580.95 |
| **Total current liabilities** | | **8,865.21** | **3,586.71** |
| **Total liabilities** | | **20,966.39** | **4,093.98** |
| **Total equity and liabilities** | | **41,974.42** | **11,638.59** |

The accompanying notes are an integral part of the Consolidated Financial Statements. 1-59

As per our report of even date

**For M S K A & Associates**
Chartered Accountants
Firm Registration No. 105047W

**Manish P Bathija**
Partner
Membership No. 216706

Place: Bangalore
Date: November 04, 2023

For and on behalf of the Board of Directors of
**THINK & LEARN PRIVATE LIMITED**
CIN: U80903KA2011PTC061427

**Byju Raveendran**
Managing Director
DIN: 03408398

Place: Bangalore
Date: November 04, 2023

**Divya Gokulnath**
Director
DIN: 03415950

Place: Bangalore
Date: November 04, 2023

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Consolidated Statement of Profit and Loss for the year ended 31 March 2022**
(Amount in INR crores, unless otherwise stated)

| Particulars | Note No. | For the year ended 31 March 2022 | For the year ended 31 March 2021 |
|---|---|---|---|
| **Income** | | | |
| Revenue from operations | 24 | 5,014.60 | 2,280.26 |
| Other income | 25 | 283.83 | 148.13 |
| **Total income (A)** | | **5,298.43** | **2,428.39** |
| **Expenses** | | | |
| Purchase of stock-in-trade | | 1,242.28 | 774.64 |
| Changes in inventories of stock-in-trade | 26 | (353.40) | (198.25) |
| Employee benefits expense | 27 | 3,552.22 | 1,943.30 |
| Finance costs | 28 | 519.40 | 61.55 |
| Depreciation and amortisation expense | 29 | 1,171.50 | 394.56 |
| Business promotion expenses | | 4,143.94 | 2,250.94 |
| Other expenses | 30 | 3,392.50 | 1,800.73 |
| **Total expenses (B)** | | **13,668.44** | **7,027.47** |
| **Loss before tax (C =(A)-(B))** | | **(8,370.01)** | **(4,599.08)** |
| **Income Tax expense** | | | |
| Current tax | | 39.95 | 0.65 |
| Deferred tax | 36 | (164.76) | (35.35) |
| **Total income tax expense (D)** | | **(124.81)** | **(34.70)** |
| **Loss for the year (E = (C)-(D))** | | **(8,245.20)** | **(4,564.38)** |
| **Other comprehensive income / (loss)** | | | |
| *Items that will not be reclassified to profit or loss* | | | |
| Remeasurement gains / (losses) on defined benefit plans | | 4.35 | (3.43) |
| Income tax related to items that will not be reclassified to profit or loss | | 0.90 | 0.02 |
| *Items that may be reclassified to profit or loss* | | | |
| Exchange differences in translating the financial statements of foreign operations | | 135.13 | (20.96) |
| **Total other comprehensive income / (loss) for the year (F)** | | **140.38** | **(24.37)** |
| **Total comprehensive loss for the year (G=(E)+(F))** | | **(8,104.82)** | **(4,588.75)** |
| **Total comprehensive loss for the year** | | | |
| - Owners of the Company | | (8,096.60) | (4,207.48) |
| - Non-Controlling interest | | (8.22) | (381.27) |
| **Of the Total comprehensive loss above, Loss for the period attributable to:** | | | |
| - Owners of the Company | | (8,237.09) | (4,183.37) |
| - Non-Controlling interest | | (8.11) | (381.01) |
| **Of the Total comprehensive income / (loss) above, Other comprehensive income / (loss) for the year** | | | |
| - Owners of the Company | | 140.49 | (24.11) |
| - Non-Controlling interest | | (0.11) | (0.26) |
| **Earnings per equity share:** | | | |
| Basic earnings per share (Rs.) | 35 | (19,881.89) | (13,051.34) |
| Diluted earnings per share (Rs.) | 35 | (19,881.89) | (13,051.34) |
| The accompanying notes are an integral part of the Consolidated Financial Statements. | 1-59 | | |

As per our report of even date

For M S K A & Associates
Chartered Accountants
Firm Registration No. 105047W

**Manish P Bathija**
Partner
Membership No. 216706

Place: Bangalore
Date: November 04, 2023

For and on behalf of the Board of Directors of
**THINK & LEARN PRIVATE LIMITED**
CIN: U80903KA2011PTC061427

**Byju Raveendran**
Managing Director
DIN: 03408398

Place: Bangalore
Date: November 04, 2023

**Divya Gokulnath**
Director
DIN: 03415950

Place: Bangalore
Date: November 04, 2023

THINK & LEARN PRIVATE LIMITED
Consolidated Statement of Changes in Equity for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

**Equity share capital [Refer Note 14(a)]**

| Particulars | Amount |
|---|---|
| **Balance as at 1 April 2020** | 1.41 |
| Changes in equity share capital during the year: | |
| Shares issued on exercise of stock options | - |
| **Balance as at 31 March 2021** | 1.41 |
| Changes in equity share capital during the year: | |
| Shares issued on exercise of stock options | 0.01 |
| **Balance as at 31 March 2022** | 1.42 |

**Instruments entirely equity in nature**
**Compulsorily convertible cumulative preference share capital (CCPS) [Refer Note 14(b)]**

| Particulars | Amount |
|---|---|
| Balance as at 1 April 2020 | 2.00 |
| Changes during the year: | |
| Issue of compulsorily convertible cumulative preference shares (CCCPS) | 0.24 |
| **Balance as at 31 March 2021** | 2.24 |
| Changes during the year: | |
| Issue of compulsorily convertible cumulative preference shares (CCCPS) | 0.75 |
| **Balance as at 31 March 2022** | 2.99 |

**Other equity [Refer Note 15]**

| Particulars | Attributable to equity holders of the Company | | | | | | | | | | Non-controlling interest | Total Equity |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Share application money pending allotment | Reserve and Surplus | | | | | Other Reserves | | | Total other equity | | |
| | | Share premium | Capital reserve | Capital redemption reserve | Retained earnings | Stock options outstanding | Money received against share warrants (Refer Note 45) | Commitment to issue share capital | Foreign currency translation reserve | | | |
| **Balance as at 1 April 2020** | - | 6,111.55 | 0.69 | 0.05 | (598.50) | 2.57 | 5.20 | - | 77.01 | 5,592.57 | - | 5,592.57 |
| **Total comprehensive income for the year ended 31 March 2021** | | | | | | | | | | | | |
| Loss for the year | - | - | - | - | (4,183.37) | - | - | - | - | (4,183.37) | (381.01) | (4,564.38) |
| Other comprehensive Loss (Refer Note 31) | - | - | - | - | (3.41) | - | - | - | (20.70) | (24.11) | (0.26) | (24.37) |
| **Total comprehensive loss for the year** | - | - | - | - | (4,186.78) | - | - | - | (20.70) | (4,207.48) | (381.27) | (4,588.75) |
| Share Application Money Pending Allotment | 1,139.17 | | - | - | - | - | - | - | - | 1,139.17 | - | 1,139.17 |
| Pursuant to acquisition | - | - | - | - | - | - | - | - | - | - | 88.72 | 88.72 |
| Premium on issue of CCCPS | - | 5,096.17 | - | - | - | - | - | - | - | 5,096.17 | - | 5,096.17 |
| Expenses in connection with issue of shares | - | (6.22) | - | - | - | - | - | - | - | (6.22) | - | (6.22) |
| Transferred to securities premium on allotment against stock options | - | 2.00 | - | - | - | (2.00) | - | - | - | - | - | - |
| Financial liability under option arrangement | - | - | - | - | (247.47) | - | - | - | - | (247.47) | - | (247.47) |
| Compensation cost related to employee share based payments | - | - | - | - | - | 466.77 | - | - | - | 466.77 | - | 466.77 |
| **Balance as at 31 March 2021** | 1,139.17 | 11,203.50 | 0.69 | 0.05 | (5,032.75) | 467.34 | 5.20 | - | 50.31 | 7,833.51 | (292.55) | 7,540.96 |
| **Balance as at 1 April 2021** | 1,139.17 | 11,203.50 | 0.69 | 0.05 | (5,032.75) | 467.34 | 5.20 | - | 50.31 | 7,833.51 | (292.55) | 7,540.96 |
| **Total comprehensive income for the year ended 31 March 2021** | | | | | | | | | | | | |
| Loss for the year | - | - | - | - | (8,237.09) | - | - | - | - | (8,237.09) | (8.11) | (8,245.20) |
| Other comprehensive income / (loss) (Refer Note 31) | - | - | - | - | 5.25 | - | - | - | 135.24 | 140.49 | (0.11) | 140.38 |
| **Total comprehensive loss for the year** | - | - | - | - | (8,231.84) | - | - | - | 135.24 | (8,096.60) | (8.22) | (8,104.82) |
| Shares issued against the share application money pending allotment | (1,139.17) | - | - | - | - | - | - | - | - | (1,139.17) | - | (1,139.17) |
| Premium on issue of CCCPS | - | 19,833.48 | - | - | - | - | - | - | - | 19,833.48 | - | 19,833.48 |
| Transfer on account of dilution of NCI | - | - | - | - | (2.16) | - | - | - | - | (2.16) | 2.16 | - |
| Non controlling interest on acquisition of subsidiary | - | - | - | (0.00) | 1.14 | - | - | - | 0.16 | 1.30 | 43.01 | 44.31 |
| Expenses in connection with issue of shares | - | (28.96) | - | - | 0.00 | - | - | - | - | (28.96) | - | (28.96) |
| Transferred to securities premium on allotment against stock options | - | 291.07 | - | - | - | (288.16) | - | - | - | 2.91 | - | 2.91 |
| Purchase of non-controlling interest | - | - | - | - | (242.63) | - | - | - | - | (242.63) | 302.78 | 60.14 |
| Commitment to issue Share capital | - | - | - | - | (174.98) | - | - | 2,888.49 | - | 2,713.51 | - | 2,713.51 |
| Compensation cost related to employee share based payments | - | - | - | - | 1.14 | 80.11 | - | - | - | 81.25 | - | 81.25 |
| **Balance as at 31 March 2022** | - | 31,299.09 | 0.69 | 0.05 | (13,682.07) | 259.29 | 5.20 | 2,888.49 | 185.71 | 20,956.44 | 47.18 | 21,003.61 |

See accompanying notes to the Consolidated Financial Statements 1-59
The accompanying notes are an integral part of the Consolidated Financial Statements.

As per our report of even date

For M S K A & Associates
Chartered Accountants
Firm Registration No. 105047W

Manish P Bathija
Partner
Membership No. 216706

Place: Bangalore
Date: November 04, 2023

For and on behalf of the Board of Directors of
THINK & LEARN PRIVATE LIMITED
CIN: U80903KA2011PTC061427

Byju Raveendran
Managing Director
DIN: 03408398

Place: Bangalore
Date: November 04, 2023

Divya Gokulnath
Director
DIN: 03415950

Place: Bangalore
Date: November 04, 2023

THINK & LEARN PRIVATE LIMITED
Consolidated Statement of Cash flows for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

| Particulars | For the year ended 31 March 2022 | For the year ended 31 March 2021 |
|---|---|---|
| **A. Cash flow from operating activities** | | |
| Profit/(loss) after tax | (8,245.20) | (4,564.38) |
| Adjustments for: | | |
| Income Tax expense | (124.81) | (34.70) |
| Depreciation and amortisation expense | 1,171.49 | 394.56 |
| Finance costs | 510.72 | 61.55 |
| Employee share-based payment expense | 70.12 | 466.67 |
| Allowance for expected credit loss | 128.08 | 32.43 |
| Bad debts written off | 39.64 | 0.07 |
| Provision for doubtful advances | 2.33 | 6.80 |
| Profit on sale of current investments | (122.00) | (93.83) |
| Net gain on assets measured at fair value through profit or loss (FVTPL) | (32.73) | 8.29 |
| Interest income on financial assets carried at amortised cost | (4.23) | (2.08) |
| Interest income on bank deposits and bonds | (52.71) | (47.00) |
| Interest income on bonds | (13.87) | (5.94) |
| Interest income on unsecured loan | (2.24) | - |
| Provision for sales returns | (29.74) | 19.51 |
| Provision for guarantee | 50.04 | 34.51 |
| Provision for doubtful security deposits | 0.71 | 4.38 |
| Net unrealised exchange gain | 19.80 | (0.83) |
| Profit on sale of property, plant and equipment | - | (0.00) |
| Lease concession income | - | (0.69) |
| | **(6,634.57)** | **(3,720.68)** |
| **Working capital changes, net of effects from purchase of controlled entities** | | |
| (Increase)/Decrease in Inventories | (350.82) | (198.25) |
| (Increase)/Decrease in Trade receivables | (352.06) | (153.69) |
| (Increase)/Decrease in Other current assets | (3.32) | 72.40 |
| (Increase)/Decrease in Other non-current assets | (376.25) | (224.88) |
| Decrease/(Increase) in Loans and other non-current financial assets | 248.59 | 4.58 |
| (Increase)/Decrease in Loans and other current financial assets | (416.58) | (100.07) |
| Increase/(Decrease) in Trade payables | 296.44 | 476.27 |
| Increase/(Decrease) in Other current liabilities | 272.70 | 260.36 |
| Increase/(Decrease) in Other non current liabilities | 79.78 | (6.18) |
| Increase/(Decrease) in Long term provisions | 62.29 | 48.12 |
| Increase/(Decrease) in Short term provisions | 32.66 | 3.93 |
| (Decrease)/Increase in Other financial liabilities | (132.11) | 117.16 |
| **Net cash (used in) operating activities** | **(7,273.25)** | **(3,420.93)** |
| Income taxes paid | (76.62) | (73.44) |
| **Net cash (used in) operating activities (A)** | **(7,349.87)** | **(3,494.37)** |
| **B. Cash flows from investing activities** | | |
| Payment for acquisition of subsidiary, net of cash acquired | (4,429.55) | (1,303.34) |
| Additions to property, plant and equipment, intangible assets (including intangible assets under development) | (2,352.37) | (1,156.19) |
| | | - |
| Proceeds from disposal of property, plant and equipment | - | 0.38 |
| Net proceeds/(investment) in term deposits | (93.72) | (140.59) |
| Investment in mutual funds and bonds | (13,389.04) | (2,352.40) |
| Loan to others | (3.00) | (32.00) |
| Proceeds from redemption of Mutual Funds and bonds | 8,496.71 | 2,983.83 |
| Interest received | 65.74 | 70.37 |
| **Net cash used in investing activities (B)** | **(11,705.23)** | **(1,929.94)** |

THINK & LEARN PRIVATE LIMITED
**Consolidated Statement of Cash flows for the year ended 31 March 2022**
(Amount in INR crores, unless otherwise stated)

| Particulars | For the year ended 31 March 2022 | For the year ended 31 March 2021 |
|---|---|---|
| **C. Cash flow from financing activities** | | |
| Proceeds from issue of Compulsorily convertible cumulative preference share capital (CCCPS) | 12,914.88 | 5,096.17 |
| Share application money received, pending allotment | - | 1,139.17 |
| Expenses in connection with issue of shares | (28.96) | (6.22) |
| Proceeds towards stock options | 2.91 | - |
| Principal Payment of lease liabilities | (246.01) | (85.93) |
| Repayment of borrowings | (1,464.77) | (7.26) |
| Proceeds from borrowings (net of charges) | 9,910.14 | 1,359.07 |
| Acquisition of non-controlling interest | (155.10) | - |
| Finance cost paid | (255.71) | (41.92) |
| **Net cash flow from financing activities (C)** | **20,677.38** | **7,453.08** |
| **Net Increase in Cash and cash equivalents (A+B+C)** | **1,622.28** | **2,028.77** |
| Cash and cash equivalents at the beginning of the year | 2,675.43 | 615.57 |
| Effect of exchange difference on translation of foreign currency cash and cash equivalents | 3.55 | 1.09 |
| **Cash and cash equivalents at the end of the year** * | **4,301.26** | **2,675.43** |
| * Comprises: | | |
| (a) Cash on hand | 5.70 | 0.01 |
| (b) Cheques on hand | - | - |
| (b) Funds in Transit | 13.25 | - |
| (c) Balances with banks | - | - |
| (i) In current accounts | 3,929.47 | 2,483.89 |
| (ii) In EEFC accounts | 294.02 | 134.56 |
| (iii) In deposit accounts (original maturity of 3 months or less) | 58.82 | 56.97 |
| | 4,301.26 | 2,675.43 |

**Changes in liabilities arising from financing activities**

| Particulars | 31 March 2022 | | 31 March 2021 | |
|---|---|---|---|---|
| | Borrowings | Lease liabilities | Borrowings | Lease liabilities |
| Opening balance | 1,354.36 | 255.93 | - | 215.13 |
| Pursuant to acquisition | 126.08 | 573.88 | - | - |
| Proceeds from borrowings (net of charges)/Addition in lease liabilities | 9,910.14 | 857.03 | 1,359.07 | 121.72 |
| Finance cost accrued during the year | 305.21 | 72.45 | 14.71 | 12.35 |
| Interest paid | (255.71) | - | (12.16) | - |
| Deletions | - | (4.07) | - | (6.65) |
| Repayment of borrowings/Lease liabilities | (1,464.77) | (246.01) | (7.26) | (85.93) |
| Lease concession | - | (9.70) | - | (0.69) |
| Translation differences | 193.37 | - | - | - |
| **Closing balance (including interest accrued)** | **10,168.68** | **1,499.51** | **1,354.36** | **255.93** |

The accompanying notes are an integral part of the Consolidated Financial Statements.

As per our report of even date

**For M S K A & Associates**
Chartered Accountants
Firm Registration No. 105047W

**Manish P Bathija**
Partner
Membership No. 216706

Place: Bangalore
Date: November 04, 2023

MSKA & ASSOCIATES ★ Chartered Accountants ★

For and on behalf of the Board of Directors of
**THINK & LEARN PRIVATE LIMITED**
CIN: U80903KA2011PTC061427

**Byju Raveendran**
Managing Director
DIN: 03408398

Place: Bangalore
Date: November 04, 2023

**Divya Gokulnath**
Director
DIN: 03415950

Place: Bangalore
Date: November 04, 2023

Think and Learn Pvt. Ltd. Bangalore ★

**THINK & LEARN PRIVATE LIMITED**
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

**1 (a) Corporate information**

Think and Learn Private Limited ("the Company" or "the Parent") was incorporated on 30 November 2011 having registered office at 2nd floor, No. 4/1, IBC Knowledge Park, Tower D, Banneragatta Main Road, Bengaluru, Karnataka - 560029. The Parent is engaged in the business of providing Educational technology (Edu-tech) products and services. The Parent provides teaching aids, content and tools for LKG - 12 (Lower KG to class 12) and also various competitive and entrance examinations including but not limited to Common Admission Test (CAT) and other Master of Business Administration (MBA) entrance examinations, Common Entrance Test (CET) and other engineering entrance examinations, Indian Administration Service (IAS) and other civil service examinations, research and development of edutech products and teaching aids. The Parent together with its subsidiaries, is hereinafter referred to as "the Group".

The Board of Directors approved the Consolidated financial statements for the year ended March 31, 2022 and authorized for issue on November 4, 2023.

**2 Summary of significant accounting policies**

**Basis of Preparation of Financial Statements**

**2.1 Statement of compliance with Ind AS**

The consolidated financial statements of the Group have been prepared in accordance with Indian Accounting Standards ("Ind AS") notified under the Companies (Indian Accounting Standards) Rules, 2015 and Companies (Indian Accounting Standards) Amendment Rules, 2016 read with section 133 of the Companies Act, 2013 and other relevant provisions of the act.

Accounting policies have been consistently applied to all the years presented unless otherwise stated.

**2.2 Basis of measurement**

The consolidated financial statements have been prepared on a historical cost convention on accrual basis, except for the following material items that have been measured at fair value as required by relevant Ind AS :-
i) Certain financial assets and liabilities measured at fair value (refer accounting policy on financial instruments)
ii) Share based payment transactions and
iii) Derivatives

The consolidated financial statements have been prepared on the basis that it will continue to operate as a going concern. Also refer note 32 (C).

Previous year figures have been regrouped/ reclassified to confirm presentation as per Ind AS and as required by Schedule III of the Act.

**2.3 Basis of consolidation**

The consolidated financial statements include the financial statements of the Parent and entities controlled by it. Consolidation of a subsidiary begins when the Parent obtains control over the subsidiary and ceases when the Parent loses control over the subsidiary. Specifically, income and expenses of a subsidiary acquired or disposed off during the year are included in the consolidated statement of profit and loss from the date the Parent gains control until the date the Parent ceases to control the subsidiary.

The consolidated financial statements have been prepared in accordance with Indian Accounting Standard - 110 on "Consolidated Financial Statements" as follows.
The financial statements of the subsidiary companies are drawn up to the same reporting date as that of the Parent.
All intragroup assets and liabilities equity, income, expenses, and cash flows relating to transactions between members of the Group are eliminated in full on consolidation.
When necessary, adjustments are made to the financial statements of subsidiaries to bring their accounting policies in line with that of the Group.
The difference between the costs of investments in the Subsidiaries over the net assets at the time of acquisition of shares in the Subsidiaries is recognized in the Consolidated Financial Statements as Goodwill or Capital Reserve as the case may be.
Non-controlling interests in the results and equity of subsidiaries are shown separately in the consolidated statement of profit and loss, consolidated statement of changes in equity and consolidated balance sheet respectively.

The consolidated financial statements include following entities that are controlled by the Parent

| Name of the group | Relationship | Country of Incorporation | Ownership held by | % of Holding as at 31 March 2022 | % of Holding as at 31 March 2021 |
|---|---|---|---|---|---|
| Specadel Technologies Private Limited | Subsidiary | India | Think and Learn Private Limited | 100.00% | 100.00% |
| Span Thoughtworks Private Limited | Subsidiary | India | Think and Learn Private Limited | 100.00% | 100.00% |
| Byju's K3 Education Private Limited | Subsidiary | India | Think and Learn Private Limited | 100.00% | 100.00% |
| Byju's Inc. | Subsidiary | USA | Think and Learn Private Limited | 100.00% | 100.00% |
| Tangible Play Inc | Subsidiary | USA | Think and Learn Private Limited | 100.00% | 100.00% |
| Tangible Play BV | Step Down Subsidiary | Netherlands | Tangible Play Inc | 100.00% | 100.00% |
| Byjus Pte Limited | Subsidiary | Singapore | Think and Learn Private Limited | 100.00% | 100.00% |
| Whitehat Education Technology Private Limited | Subsidiary | India | Think and Learn Private Limited | 100.00% | 76.00% |
| Digital Aristotle Private Limited | Step Down Subsidiary | India | Byju's K3 Education Private Limited | 100.00% | 100.00% |
| Inspilearn Education Private Limited | Step Down Subsidiary | India | Byju's K3 Education Private Limited | 100.00% | 100.00% |
| Great Lakes E-Learning services Private Limited | Subsidiary | India | Think and Learn Private Limited | 100.00% | - |
| Weblength Infonet Private Limited | Step Down Subsidiary | India | Great Lakes E-Learning services Private Limited | 91.97% | - |
| Aakash Educational Services Limited (Refer note 45) | Subsidiary | India | Think and Learn Private Limited | 29.50% | - |
| Toppr Techonologies Private Limited (Refer note 43) | Subsidiary | India | Think and Learn Private Limited | 69.85% | - |
| Grade Stack Learning Private Limited (Refer note 41) | Subsidiary | India | Think and Learn Private Limited | 29.79% | - |
| Aakash Edutech Private Limited | Step Down Subsidiary | India | Aakash Educational Services Ltd | 100.00% | - |
| Haygot Services Private Limited | Step Down Subsidiary | India | Toppr Techonologies Private Limited | 100.00% | - |
| Whitehat Education Technology LLC | Step Down Subsidiary | USA | Whitehat Education Technology Private Limited | 100.00% | - |
| Byjus Alpha Inc | Step Down Subsidiary | USA | Byjus Pte Limited | 100.00% | - |
| Byjus Beta Inc | Step Down Subsidiary | USA | Byjus Pte Limited | 100.00% | - |
| GeoGebra GMBH | Step Down Subsidiary | Germany | Byjus Alpha Inc | 50.00% | - |
| Byjus UK Limited | Step Down Subsidiary | United Kingdom | Byjus Pte Limited | 100.00% | - |
| Epic! Creation Inc | Subsidiary | USA | Think and Learn Private Limited | 100.00% | - |
| EPIC creations ULC | Step Down Subsidiary | Canada | Epic! Creation Inc | 100.00% | - |
| Inspilearn LLC | Subsidiary | USA | Think and Learn Private Limited | 100.00% | - |
| Neuron Fuel Inc | Step Down Subsidiary | USA | Insplilearn LLC | 100.00% | - |
| Byjus Technologia Educacional LTDA | Step Down Subsidiary | Brazil | Byjus Pte Limited | 100.00% | - |
| Byjus S.A de C.v. | Step Down Subsidiary | Mexico | Byjus Pte Limited | 100.00% | - |
| Great Learning Education Pte Ltd | Step Down Subsidiary | Singapore | Byjus Pte Limited | 93.20% | - |

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**2.4 Classification between current and non-current**

The Group presents assets and liabilities in the balance sheet based on current/ non-current classification. An asset is treated as current when it is:
i. Expected to be realised or intended to be sold or consumed in normal operating cycle;
ii. Held primarily for the purpose of trading;
iii. Expected to be realised within twelve months after the reporting period; or
iv. Cash or cash equivalent unless restricted from being exchanged or used to settle a liability for at least twelve months after the reporting period.
All other assets are classified as non-current.

A liability is current when:
i. It is expected to be settled in normal operating cycle;
ii. It is held primarily for the purpose of trading,
iii. It is due to be settled within twelve months after the reporting period, or
iv. There is no unconditional right to defer the settlement of the liability for at least twelve months after the reporting period.
The Group classifies all other liabilities as non-current.
Deferred tax assets and liabilities are classified as non-current assets and liabilities.

Based on the nature of products/ activities of the Group and the normal time between acquisition of assets and their realisation in cash or cash equivalents, the Group has determined its operating cycle as 12 months for the purpose of classification of its assets and liabilities as current and non-current.

**2.5 Use of estimates and judgement**

The preparation of the consolidated financial statements in accordance with Ind AS requires the management to make informed judgements, reasonable assumptions and estimates that affect the application of accounting policies and the reported amount of assets and liabilities, revenues and expenses and disclosure of contingent liabilities. The uncertainty about these could result in outcomes that require a material adjustment to the carrying amount of assets or liabilities affected in the future periods. These assumptions and estimates are reviewed periodically based on the most recently available information. Revisions to accounting estimates are recognised prospectively in the Statement of Profit and Loss in the period in which the estimates are revised and in any future periods affected.

**a. Revenue recognition:**

(i) Judgement around identification of performance obligation

The Group's contracts with customers include promises to transfer product(s) and/or service(s) to a customer. Revenues from customer contracts are considered for recognition and measurement when the contract has been approved, in writing, by the parties to the contract, the parties to contract are committed to perform their respective obligations under the contract, and the contract is legally enforceable. The Group assesses the goods and services promised in a contract and identifies distinct performance obligations in the contract. Identification of distinct performance obligations to determine the deliverables and the ability of the customer to benefit independently from such deliverables, and allocation of transaction price to these distinct performance obligations involves significant judgment.

(ii) Judgement around assessment of probability of collection

In certain sale contracts with customers, the Group provides extended credit terms to customers. In evaluating whether collectability of the consideration is probable, judgment is involved in assessing the customer's ability and intention to pay the consideration when it is due.

(iii) Sale to retail customers in the Gulf Cooperation Council (GCC) countries

In respect of sales to retail customers in the Gulf Cooperation Council (GCC) countries, basis the terms of agreement, the Company invoices all its sales to an entity located in Dubai ("the Counter party"). The Counter party, in turn, is responsible for all marketing activities in the region and is entitled to a sales commission on billing/revenue earned. Judgment is required to determine whether the Counter party is an agent and whether revenue and commission are to be recorded Gross or Net in the Statement of profit and loss.

Under the arrangement with the Counter party
- the Company provides educational content only after a retail customer is identified by the Counter party
- the Company has the discretion of accepting or rejecting orders from the customers
- the Counter party does not have a right to redirect the Company's products to any other customers without getting instructions from the Company
- the Counter party offers the products at a price band in consultation with the Company
- the Company continues to be responsible to compensate the end customer in cases of product returns
- the Company controls the activation key to the educational content provided
- the Counter party is entitled to a commission inter alia for marketing activities carried out, notwithstanding remittances of the sale proceeds from the said Counter party.

Basis the above, the Company has concluded the Counter party to be an agent and accordingly records the revenue and commission expense on a gross basis in the Statement of profit and loss under Ind AS 115 (Revenue from Contract with Customers). (Also refer note 24 (ii) for details of transactions and balances during the year)

(iv) Estimation of fair value of Guarantees given to Loan Partners

The Group provides guarantees to Loan partners on behalf of its customers who avail loans from the Loan partners. The fair value of guarantee in such cases is determined based on the probability of default by the Group's customers in servicing the Loan partners and is based on historical default rate and expectations of future conditions. Also refer note 21.

(v) Judgement around significant financing component

In certain sale contracts with customers, the Group receives advance payment for services to be provided in future, which may extend beyond one year. Judgement is involved in assessing whether such contracts have a significant financing component. Management believes that no significant financing component is involved in such cases as the advance payment is primarily for reasons other than the provision of finance to the Group.

**b. Impairment of non-financial assets and goodwill**

Goodwill and intangible assets under development are tested for impairment at least annually and when events occur or changes in circumstances indicate that the recoverable amount of an asset or a cash generating unit to which the asset pertains, is less than the carrying value.
The Group assesses property, plant and equipment, right-of-use assets, intangible assets, investments and other non-financial assets with finite useful life for impairment whenever events or changes in circumstances indicate that the carrying amount may not be recoverable.
In assessing impairment, management estimates the recoverable amount of an asset or a cash generating unit as higher of value-in use and fair value less cost of disposal. The calculation of value-in-use of an asset or a cash generating unit involves use of significant estimates and assumptions which include revenue projections growth rates, net margins used to calculate projected future cash flows, risk adjusted discount rate, future economic and market conditions.

**c. Fair value of equity-settled share-based transaction**

Estimating fair value for share-based payment transactions requires determination of the fair value of shares on grant date and valuation model to determine option value, which depends on the terms and conditions of the grant. This estimate also requires determination of the most appropriate inputs to the valuation model including the expected life of the share option, volatility and dividend yield and making assumptions about them. The group measures the fair value of equity-settled transactions with employees at the grant date using Black-Scholes model.
The assumptions for estimating fair value for share-based payment transactions are disclosed in Note 52.

MSKA & ASSOCIATES * Chartered Accountants *

Think and Learn Pvt. Ltd. Bangalore *

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**d. Taxes**
Deferred tax assets are recognized for unused tax losses to the extent that it is probable that taxable profit will be available against which the losses can be utilized. Significant management judgment is required to determine the amount of deferred tax assets that can be recognized, based upon the likely timing and the level of future taxable profits together with future tax planning strategies.

The Group neither have any taxable temporary difference nor any tax planning opportunities available that could partly support the recognition of these losses as deferred tax assets. On this basis, the Group has determined that it cannot recognize deferred tax assets on the tax losses carried forward except for the unabsorbed depreciation. Refer Note 36.

Judgement is required to ascertain whether it is probable that an outflow of resources embodying economic benefits required to settle the taxation and legal disputes.

**e. Defined benefit plans (gratuity benefits and leave encashment)**
The cost of the defined benefit plans such as gratuity and leave encashment are determined using actuarial valuations. An actuarial valuation involves making various assumptions that may differ from actual developments in the future. These include the determination of the discount rate, future salary increases and mortality rates. Due to the complexities involved in the valuation and its long-term nature, a defined benefit obligation is highly sensitive to changes in these assumptions. All assumptions are reviewed at each year end.

The principal assumptions are the discount and salary growth rate. The discount rate is based upon the market yields available on government bonds at the accounting date with a term that matches that of liabilities. Salary increase rate takes into account of inflation, seniority, promotion and other relevant factors on long term basis. For details refer Note 31.

**f. Intangible asset under development**
The Group capitalises intangible asset under development for a project in accordance with the accounting policy. Initial capitalisation of costs is based on management's judgement that technological and economic feasibility is confirmed, usually when a product development project has reached a defined milestone according to an established project management model. In determining the amounts to be capitalised, management makes assumptions regarding the expected future cash generation of the project, discount rates to be applied and the expected period of benefits. This amount includes significant investment in the development of description of nature of asset.

**g. Property Plant and equipment and Intangible assets**
The charge in respect of periodic depreciation and amortisation is derived after determining an estimate of an asset's expected useful life and the expected residual value at the end of its life. The useful lives and residual values of the Group's assets are determined by the Management at the time the asset is acquired and reviewed periodically, including at each financial year end. The lives are based on historical experience with similar assets as well as anticipation of future events, which may impact their life, such as changes in technology.

**h. Provisions and Contingencies**
Recognition and measurement of provisions and contingencies involve key assumptions about the likelihood and magnitude of an outflow of resources.

**i. Assessment of control over Aakash**
The Company controls Aakash Educational Services Limited ("Aakash") from the date of acquisition (i.e 21 June 2021), even though it holds less than half (29.5%) of the its voting rights. This is because of the contractual arrangement with the other shareholders which provides the Company with a right to appoint majority of the directors in the Board of Aakash, to have its representative present in the board and shareholder meetings for quorum and the right to have its affirmative vote for adoption or approval of each board and shareholder resolution. The Company also has a contractual right to acquire the remaining voting rights as per the terms of the relevant shareholder agreements. There are certain reserved matters specified in the shareholder agreement for which prior written consent of certain shareholders group (other than the Company) is required. Based on management assessment and supported by legal opinion, these reserved matters are considered as protective in nature and not substantive to affect the Company's control assessment over Aakash.

**j. Business combination**
Fair value of the consideration transferred (including contingent consideration) and fair value of the assets acquired and liabilities assumed, measured. For details refer Note 39 to 48.

**k. Determination of functional currency**
Refer Note 2.6 below.

**l. Recognition and measurement of other provisions**
The recognition and measurement of other provisions are based on the assessment of the probability of an outflow of resources, and on past experience and circumstances known at the closing date. The actual outflow of resources at a future date may therefore, vary from the amount included in other provisions.

**m. Discounting of long-term financial assets / liabilities**
All financial assets / liabilities are required to be measured at the fair value on initial recognition. In case of financial assets / liabilities which are required to be subsequently be measured at amortized cost, interest is accrued using the effective interest method.

**n. Measurement of fair values**
Refer Note 2.14 below.

2.6 **Functional and presentation currency**
In determining the functional currency of the Group, judgment is used by the Group to determine the currency of the primary economic environment in which the Group operates. Consideration factors include the currency that mainly influences sales prices of goods and services and the currency of the country whose competitive forces and regulations mainly determines the sales prices of its goods and services.

Items included in the consolidated financial statements of the Group are measured using the currency of the primary economic environment in which the Group operates (i.e. the "functional currency"). The consolidated financial statements are presented in Indian Rupees, the national currency of India, which is the functional currency of the Parent.

2.7 **Revenue Recognition**
(i) Revenues from customer contracts are considered for recognition and measurement when the contract has been approved by the parties to the contract, the parties to contract are committed to perform their respective obligations under the contract, and the contract is legally enforceable. Revenue is recognised upon transfer of control of promised products or services to customers in an amount that reflects the consideration the Group expects to receive in exchange for those products or services. To recognise revenues, the Group applies the following five step approach
(1) identify the contract with a customer,
(2) identify the performance obligations in the contract,
(3) determine the transaction price,
(4) allocate the transaction price to the performance obligations in the contract, and
(5) recognise revenues when a performance obligation is satisfied. When there is uncertainty as to collectability, revenue recognition is deferred to a point in time when substantially all of the promised consideration has been collected from the customer and the consideration is non refundable.

(ii) The Group in its normal course of business sells Educational content to its customers via SD cards (categorised as Sale of Edutech products) and provides the content in the form of Streaming services (categorised as Sale of services).
In the case of Sale of digital content via SD cards, the Group does not have any continuing performance obligations once the content filled SD cards are made available to the customers. The Sale of Edutech products (which includes sale of tablets) are recognised at a point in time.

(iii) Revenue from digital products is recognized upfront at the moment when the Group transfers access and control of the digital product to the students.

In the case of sale of educational content in the form of Streaming services, revenue is recognised over the period of time the services are rendered to the customers.

In case of Byju's classes, the Group has two performance obligations – (a) sale of content via SD cards and (b) classroom services. The transaction price in such cases is allocated between these two performance obligations based on their relative standalone selling prices. Revenue from sale of content via SD cards is recognised at a point in time (as mentioned above) and the revenue from classroom services are recognised over the period of time the services are rendered to the customers, because the customers simultaneously receives and consumes benefits provided to them.

(iv) Sale of Edutech products to customers primarily involves 3 modes of settlement by customers:
(a) where the customer pays all the consideration upfront
(b) where the customer chooses to take a loan from a Loan partner (refer note (iv) below)
(c) where the Parent provides extended credit terms (refer (v) below).

(v) In cases where the customer takes a loan from the Loan partners, the customer makes a down payment to the Parent and the balance consideration is settled by the Loan partner. The Parent receives the balance consideration from the Loan partner net of subvention costs charged by the Loan partner to the Parent. The subvention costs being in the nature of interest paid on behalf of customers are netted off against revenue.

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

Under the aforesaid arrangements with Loan partners, the Parent has provided guarantees (First Loss Default Guarantees (FLDG)) to the Loan partners and is obligated to reimburse the Loan partners for any monthly instalments that remain uncollected by the Loan partner and stay overdue for a prescribed period (which typically ranges between "overdue for 75 days or 90 days" across the arrangements with the Loan partners). The Parent estimates fair value of the aforesaid guarantee obligations and accrues for the same.

The difference between the consideration received by the Parent from the (i) customer and the Loan partner and (ii) the fair value of the guarantee at the time of entering into the contract with the customer is recognised as revenue. The estimates of the fair value of guarantee are revisited at the end of every period closing and any changes in the fair value are accounted for as a change in the estimates.

(vi) In cases where the customers are provided deferred payment terms by the Parent, the customers are required to pay a part of the consideration ("down payment"), at the time the customers buys the product / services and the customers are also required to register an e-Nach mandate in favour of the Parent. Post payment of the down payment, the customer pays the balance consideration over the contract period (in monthly instalments which typically range from 3 months to 12 months).

2.7 **Revenue Recognition ('Contd)**
In such cases, the Parent determines whether the terms of sale indicate the existence of a contract under the provisions of Ind AS 115 - Revenue from Contracts with Customers, with particular reference to whether there is a probability of collection of the consideration. Also refer Note 24

(vii) In cases where the contracts with customers includes promise to transfer multiple products and services (course material and tuition services), the Group evaluates whether each product or service promised to a customer is capable of being distinct, and is distinct in the context of the contract. If the product or service is not distinct, the promised product or service is combined and accounted as a single performance obligation. Also refer note 2.5.

(viii) Revenue relating to course fees is recognized proportionately based on the number of class availed vs total number of class expected to be availed.

(ix) Revenue from other services - Income is recognised as and when such services are performed.

(x) The Group provides discounts and cashbacks, which are considered as variable consideration and adjusted with the transaction price. The Group also provides a return policy pursuant to which the customers can return the product or cancel the contract, within 15 days of the transaction date. The Group estimates the provision of sale return at the year-end based on its past experience and subsequent returns.

(xi) The Group pays sales commission to its employees for each contract that they obtain from customers. The Group applies the optional practical expedient to immediately expense costs to obtain a contract if the amortisation period of the asset that would have been recognised is one year or less. As such, the costs to obtain the contracts are immediately recognised as an expense and included as part of employee benefits.

(xii) Revenue from coaching fees and franchises, is recognised over the period of the course / point in time (as applicable).

2.8 **Property, plant and equipment**
Property, plant and equipment assets are carried at cost less accumulated depreciation and impairment losses, if any. The cost of Property, plant and equipment assets comprises its purchase price net of any trade discounts and rebates, any import duties and other taxes (other than those subsequently recoverable from the tax authorities), any directly attributable expenditure on making the asset ready for its intended use and other incidental expenses.

Subsequent costs are included in the asset's carrying amount or recognized as a separate asset, as appropriate, only when it is probable that future economic benefits associated with the item will flow to the Group and the cost of the item can be measured reliably. The carrying amount of any component accounted for as a separate asset is derecognized when replaced. All other repairs and maintenance are charged to Statement of Profit and Loss during the year in which they are incurred.

An item of property, plant and equipment is derecognised upon disposal or when no future economic benefits are expected to arise from the continued use of the asset. Any gain or loss arising on the disposal or retirement of an item of property, plant and equipment is determined as the difference between the sales proceeds and the carrying amount of the asset and is recognised in the statement of profit and loss.

2.9 **Goodwill**

Goodwill represents the future economic benefits arising from a business combination that are not individually identified and separately recognised. Goodwill is carried at cost less accumulated impairment losses.

2.10 **Intangible assets**
**Acquired intangible assets**
Intangible assets that are acquired separately are carried at cost less accumulated amortisation and accumulated impairment losses.
**Internally generated intangible assets**
Research expenditure and development expenditure that do not meet the criteria as stated below are recognised as an expense as incurred. Development costs previously recognised as expense are not recognised as an asset in a subsequent period.
An internally-generated intangible asset arising from development (or from the development phase of an internal project) is recognised if, and only if, all of the following have been demonstrated:
- the technical feasibility of completing the intangible asset so that it will be available for use or sale;
- the intention to complete the intangible asset and use or sell it;
- the ability to use or sell the intangible asset;
- how the intangible asset will generate probable future economic benefits;
- the availability of adequate technical, financial and other resources to complete the development and to use or sell the intangible asset, and
- the ability to measure reliably the expenditure attributable to the intangible asset during its development.

The amount initially recognised for internally-generated intangible assets is the sum of the expenditure incurred from the date when the intangible asset first meets the recognition criteria listed above.
Subsequent to initial recognition, internally-generated intangible assets are reported at cost less accumulated amortisation and accumulated impairment losses, on the same basis as intangible assets that are acquired separately.
An intangible asset is derecognised upon disposal (i.e., at the date the recipient obtains control) or when no future economic benefits are expected from its use or disposal. Any gain or loss arising upon derecognition of the asset (calculated as the difference between the net disposal proceeds and the carrying amount of the asset) is included in the statement of profit and loss, when the asset is derecognised.

2.11 **Depreciation & amortization**
Depreciable amount for assets is the cost of an asset, or other amount substituted for cost, less its estimated residual value.
Depreciation on property, plant and equipment has been provided on the straight-line method as per the useful life prescribed in Schedule II to the Companies Act, 2013 except in respect of the following categories of assets, in whose case the life of the assets has been assessed as under based on technical advice, taking into account the nature of the asset, the estimated usage of the asset, the operating conditions of the asset, past history of replacement, anticipated technological changes, manufacturers warranties and maintenance support, etc.:

| Asset category | Useful life |
|---|---|
| Office equipments other than mobile handsets | 3-6 years |
| Office equipments - mobile handsets | 3 years |
| Computers | 3 years |
| Servers (included in computers) | 6 years |
| Furniture and Fixtures | 8-10 Years |
| Machinery | 5-15 Years |
| Building | 60 Years |
| Vehicles | 8 Years |
| Leasehold improvements | Primary period of the lease |

Leasehold improvements are depreciated over the lease term.

MSKA & ASSOCIATES
Chartered Accountants

Think and Learn Pvt. Ltd.
Bangalore

Intangible assets are amortised in the Statement of Profit and Loss over their estimated useful lives on straight line method, from the date that they are available for use. The Group amortises its intangible assets as follows

| Asset category | Useful life |
|---|---|
| Acquired Software | 3-6 years |
| Technology platform and content | 5-10 years |
| Trademarks, Patents and Brands | 5 years |
| Teacher network and other acquired intangibles | 4-10 years |
| Acquired Technical know-how | 5-10 years |
| **Internally generated intangibles:** | |
| Byju's Learning App(s) | 5 years |

Depreciation/amortisation method, useful lives and residual values are reviewed periodically at each financial year end and adjusted prospectively, as appropriate.

**2.12 Financial Instruments**

A financial instrument is any contract that gives rise to a financial asset of one entity and a financial liability or equity instrument of another entity.

**A) Financial assets**

**(i) Initial recognition and measurement**

At initial recognition, financial asset is measured at its fair value plus, in the case of a financial asset not at fair value through profit or loss, transaction costs that are directly attributable to the acquisition of the financial asset. Transaction costs of financial assets carried at fair value through profit or loss are expensed in profit or loss.

**(ii) Subsequent measurement**

For purposes of subsequent measurement, financial assets are classified in following categories:
a) at amortized cost, or
b) at fair value through other comprehensive income; or
c) at fair value through profit or loss
The classification depends on the entity's business model for managing the financial assets and the contractual terms of the cash flows.

**Amortized cost:** Assets that are held for collection of contractual cash flows where those cash flows represent solely payments of principal and interest are measured at amortized cost. Interest income from these financial assets is included in finance income using the effective interest rate method (EIR).

**Fair value through other comprehensive income (FVOCI):** Assets that are held for collection of contractual cash flows and for selling the financial assets, where the assets' cash flows represent solely payments of principal and interest, are measured at fair value through other comprehensive income (FVOCI). Movements in the carrying amount are taken through OCI, except for the recognition of impairment gains or losses, interest revenue and foreign exchange gains and losses which are recognized in Statement of Profit and Loss. When the financial asset is derecognized, the cumulative gain or loss previously recognized in OCI is reclassified from equity to Statement of Profit and Loss and recognized in other gains/ (losses). Interest income from these financial assets is included in other income using the effective interest rate method.

**Fair value through profit or loss (FVTPL):** Assets that do not meet the criteria for amortized cost or FVOCI are measured at fair value through profit or loss. Interest income from these financial assets is included in other income.

**(iii) Impairment of financial assets:**

The Group recognises loss allowances using the expected credit loss (ECL) model for the financial assets which are not fair valued through profit or loss. Loss allowance for trade receivables with no significant financing component is measured at an amount equal to lifetime ECL. For all other financial assets, expected credit losses are measured at an amount equal to the 12-month ECL, unless there has been a significant increase in credit risk from initial recognition in which case those are measured at lifetime ECL. The Group determines the allowance based on history of collections, customer's creditworthiness, existing market conditions as well as forward looking estimates at the end of each reporting period.

**(iv) Derecognition of financial assets:**

The Group derecognises a financial asset when the contractual rights to the cash flows from the asset expire, or when it transfers the financial asset and substantially all the risks and rewards of the ownership of the asset to another party. On derecognition of a financial asset in its entirety, the difference between the asset carrying amount and the sum of the consideration received and receivable is recognised in the statement of profit and loss.

Interest income is recognised as it accrues using effective interest method.
Dividend is accounted for when the right to receive it is established.

**(v) Cash and Cash equivalents**

Cash comprises cash on hand and demand deposits with banks. Cash equivalents are short-term (with an original maturity of three months or less from the date of acquisition), highly liquid investments that are readily convertible into known amounts of cash and which are subject to insignificant risk of changes in value.

**B) Financial liabilities**

**(i) Initial recognition and measurement**

Financial liabilities are classified, at initial recognition, as financial liabilities at fair value through profit or loss and at amortized cost, as appropriate.
All financial liabilities are recognized initially at fair value and, in the case of borrowings and payables, net of directly attributable transaction costs.

**(ii) Subsequent measurement**

The measurement of financial liabilities depends on their classification, as described below:

*Financial liabilities at fair value through profit or loss*

Financial liabilities at fair value through profit or loss include financial liabilities held for trading and financial liabilities designated upon initial recognition as at fair value through profit or loss. Separated embedded derivatives are also classified as held for trading unless they are designated as effective hedging instruments. Gains or losses on liabilities held for trading are recognized in the Statement of Profit and Loss.

*Financial liabilities at amortised cost*

Such financial liabilities are measured at amortised cost using the effective interest method. Interest expense and foreign exchange gains/losses are recognized in Statement of Profit and Loss.

**(iii) Loans and borrowings**

After initial recognition, interest-bearing loans and borrowings are subsequently measured at amortized cost using the EIR method. Gains and losses are recognized in Statement of Profit and Loss when the liabilities are derecognized as well as through the EIR amortization process. Amortized cost is calculated by taking into account any discount or premium on acquisition and fees or costs that are an integral part of the EIR. The EIR amortization is included as finance costs in the Statement of Profit and Loss.

**(iv) Equity instruments**

An equity instrument is a contract that evidences residual interest in the assets of the Group after deducting all of its liabilities. Equity instruments recognised by the Group are recognised at the proceeds received net of direct issue costs.

**(v) Derecognition of financial liabilities**

The Group derecognises financial liabilities when, and only when, the Group's obligations are discharged, cancelled or have expired. The difference between the carrying amount of the financial liability derecognised and the consideration paid and payable is recognised in the statement of profit and loss.

**vi) Offsetting financial instruments**

Financial assets and liabilities are offset and the net amount is reported in the balance sheet where there is a legally enforceable right to offset the recognized amounts and there is an intention to settle on a net basis or realize the asset and settle the liability simultaneously. The legally enforceable right must not be contingent on future events and must be enforceable in the normal course of business and in the event of default, insolvency or bankruptcy of the Group or the counterparty.

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

**2.13 Foreign currency transactions and translations**

Transactions in foreign currencies are recorded at the exchange rate prevailing on the date of transaction. Monetary assets and liabilities denominated in foreign currencies are translated at the functional currency closing rates of exchange at the reporting date.

Exchange differences arising on settlement or translation of monetary items are recognised in the Statement of Profit and Loss except to the extent of exchange differences which are regarded as an adjustment to interest costs on foreign currency borrowings that are directly attributable to the acquisition or construction of qualifying assets, are capitalized as cost of assets.

Non-monetary items that are measured in terms of historical cost in foreign currencies are not retranslated. Income and expense items in foreign currency are translated at the average exchange rates for the period, unless exchange rates fluctuate significantly during that period, in which case the exchange rates at the dates of the transactions are used.
Non-monetary items measured at fair value in a foreign currency are translated using the exchange rates at the date when the fair value is determined. The gain or loss arising on translation of non-monetary items measured at fair value is treated in line with the recognition of the gain or loss on the change in fair value of the item (i.e., translation differences on items whose fair value gain or loss is recognised in OCI or profit or loss are also recognised in OCI or profit or loss, respectively).

**2.14 Fair value measurement**

The Group measures financial instruments, such as, derivatives at fair value at each balance sheet date.
Fair value is the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date. The fair value measurement is based on the presumption that the transaction to sell the asset or transfer the liability takes place either:
- ► In the principal market for the asset or liability, or
- ► In the absence of a principal market, in the most advantageous market for the asset or liability accessible to the Group.

The Group uses valuation techniques that are appropriate in the circumstances and for which sufficient data are available to measure fair value, maximizing the use of relevant observable inputs and minimizing the use of unobservable inputs. The Group management determines the policies and procedures for fair value measurement such as derivative instrument.

All assets and liabilities for which fair value is measured or disclosed in the financial statements are categorized within the fair value hierarchy, described as follows, based on the lowest level input that is significant to the fair value measurement as a whole.
- ► Level 1 — Quoted (unadjusted) market prices in active markets for identical assets or liabilities
- ► Level 2 — Valuation techniques for which the lowest level input that is significant to the fair value measurement is directly or indirectly observable
- ► Level 3 — Valuation techniques for which the lowest level input that is significant to the fair value measurement is unobservable.

**2.15 Employee Benefits**

Employee benefits include provident fund, employee state insurance scheme, gratuity fund and compensated absences.

Defined Contribution Plans:
The Group's contribution to provident fund and employee state insurance scheme are considered as defined contribution plans and are charged as an expense based on the amount of contribution required to be made and when services are rendered by the employees.

Defined Benefit Plans:

For defined benefit retirement benefit plans, the cost of providing benefits is determined using the projected unit credit method, with actuarial valuations being carried out at the end of each annual reporting period. Remeasurement, comprising actuarial gains and losses and the return on plan assets (excluding net interest), is reflected immediately in the balance sheet with a charge or credit recognised in other comprehensive income in the period in which they occur. Remeasurement recognised in other comprehensive income is reflected immediately in retained earnings and is not reclassified to the statement of profit and loss. Past service cost is recognised in the statement of profit and loss in the period of a plan amendment. Net interest is calculated by applying the discount rate at the beginning of the period to the net defined benefit liability or asset. Defined benefit costs are categorised as follows:

a) service cost (including current service cost, past service cost, as well as gains and losses on curtailments and settlements);
b) net interest expense or income; and
c) remeasurement.

The Group presents the first two components of defined benefit costs in the statement of profit and loss in the line item 'Employee benefits expense'. Curtailment gains and losses are accounted for as past service cost. Remeasurement impact is accounted in Other Comprehensive Income (OCI).

Short-term employee benefits:
The undiscounted amount of short-term employee benefits expected to be paid in exchange for the services rendered by employees are recognised during the year when the employees render the service. These benefits include performance incentive and compensated absences which are expected to occur within twelve months after the end of the period in which the employee renders the related service.

The cost of short-term compensated absences is accounted as under :
(a) in case of accumulated compensated absences, when employees render the services that increase their entitlement of future compensated absences, and
(b) in case of non-accumulating compensated absences, when the absences occur.
Long-term employee benefits:
Compensated absences which are not expected to occur within twelve months after the end of the period in which the employee renders the related service are recognised as a liability at the present value of the defined benefit obligation as at the balance sheet date less the fair value of the plan assets out of which the obligations are expected to be settled. Long service awards are recognised as a liability at the present value of the defined benefit obligation as at the balance sheet date.

**2.16 Share based payments**

Equity-settled share based payments to employees and other providing similar services are measured at the fair value of the equity instruments at the grant date. Details regarding the determination of the fair value of equity-settled share-based payment transactions are set out in note 52. The fair value determined at the grant date of the equity-settled share based payments is expensed on a straight line basis over the vesting period, based on the Group's estimate of equity instruments that will eventually vest, with a corresponding increase in equity. At the end of each reporting period, the Group revises its estimate of the number of equity instruments expected to vest. The impact of the revision of the original estimates, if any, is recognised in the statement of profit and loss such that the cumulative expenses reflect the revised estimate, with a corresponding adjustment to the Share based payments reserve.
The dilutive effect of outstanding options is reflected as additional share dilution in the computation of diluted earnings per share.

**2.17 Leases**

**The Group as a lessee**
The Group assesses whether a contract contains a lease, at inception of a contract. A contract is, or contains, a lease if the contract conveys the right to control the use of an identified asset for a period of time in exchange for consideration. To assess whether a contract conveys the right to control the use of an identified asset, the Group assesses whether: (i) the contract involves the use of an identified asset (ii) the Group has substantially all of the economic benefits from use of the asset through the period of the lease and (iii) the Group has the right to direct the use of the asset.

The Group recognises a right-of-use asset and a lease liability at the lease commencement date. The right-of-use asset is initially measured at cost, which comprises the initial amount of the lease liability adjusted for any lease payments made at or before the commencement date, plus any initial direct costs incurred and an estimate of costs to dismantle and remove the underlying asset or to restore the underlying asset or the site on which it is located, less any lease incentives received.

The right-of-use asset is subsequently depreciated using the straight-line method from the commencement date to the end of the lease term.
The lease liability is initially measured at the present value of the lease payments that are not paid at the commencement date, discounted using the Group's incremental borrowing rate. It is remeasured when there is a change in future lease payments arising from a change in an index or rate, if there is a change in the Group's estimate of the amount expected to be payable under a residual value guarantee, or if the Group changes its assessment of whether it will exercise a purchase, extension or termination option. When the lease liability is remeasured in this way, a corresponding adjustment is made to the carrying amount of the right-of-use asset, or is recorded in profit or loss if the carrying amount of the right-of-use asset has been reduced to zero.

The Group has elected not to recognise right-of-use assets and lease liabilities for short-term leases that have a lease term of 12 months or less and leases of low-value assets. The Group recognises the lease payments associated with these leases as an expense over the lease term.

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**2.18 Earnings per share**

Basic earnings per share is computed by dividing the profit / (loss) for the year attributable to equity shareholders by the weighted average number of equity shares outstanding during the year. Diluted earnings per share is computed by dividing the profit / (loss) for the year as adjusted for dividend, interest and other charges to expense or income (net of any attributable taxes) relating to the dilutive potential equity shares, by the weighted average number of equity shares considered for deriving basic earnings per share and the weighted average number of equity shares which could have been issued on the conversion of all dilutive potential equity shares. Potential equity shares are deemed to be dilutive only if their conversion to equity shares would decrease the net profit per share or increase the net loss per share from continuing ordinary operations. Potential dilutive equity shares are deemed to be converted as at the beginning of the period, unless they have been issued at a later date. The dilutive potential equity shares are adjusted for the proceeds receivable had the shares been actually issued at fair value (i.e. average market value of the outstanding shares). Dilutive potential equity shares are determined independently for each period presented. The number of equity shares and potentially dilutive equity shares are adjusted for share splits / reverse share splits and bonus shares, as appropriate

**2.19 Taxes**

Tax expense for the year, comprising current tax and deferred tax, are included in the determination of the net profit or loss for the year

**(i) Current income tax:**

Current tax assets and liabilities are measured at the amount expected to be recovered or paid to the taxation authorities. The tax rates and tax laws used to compute the amount are those that are enacted or substantively enacted, at the year/period end date. Current tax assets and tax liabilities are offset where the entity has a legally enforceable right to offset and intends either to settle on a net basis, or to realize the asset and settle the liability simultaneously

**(ii) Deferred tax:**

Deferred income tax is provided in full, using the balance sheet approach, on temporary differences arising between the tax bases of assets and liabilities and their carrying amounts in financial statements. Deferred income tax is also not accounted for if it arises from initial recognition of an asset or liability in a transaction other than a business combination that at the time of the transaction affects neither accounting profit nor taxable profit (tax loss). Deferred income tax is determined using tax rates (and laws) that have been enacted or substantially enacted by the end of the year and are expected to apply when the related deferred income tax asset is realised or the deferred income tax liability is settled.

The carrying amount of deferred tax assets is reviewed at the end of each reporting period and reduced to the extent that it is no longer probable that sufficient taxable profits will be available to allow all or part of the asset to be recovered

Deferred tax assets are recognised for all deductible temporary differences and unused tax losses only if it is probable that future taxable amounts will be available to utilize those temporary differences and losses

Management periodically evaluates positions taken in tax returns with respect to situations in which applicable tax regulation is subject to interpretation. It establishes provisions where appropriate on the basis of amounts expected to be paid to the tax authorities

Deferred tax assets and liabilities are offset when there is a legally enforceable right to offset current tax assets and liabilities and when the deferred tax balances relate to the same taxation authority. Current tax assets and tax liabilities are offset where the entity has a legally enforceable right to offset and intends either to settle on a net basis, or to realise the asset and settle the liability simultaneously.

Minimum Alternate Tax (MAT) paid in accordance with the tax laws, which gives future economic benefits in the form of adjustment to future income tax liability, is considered as an asset if there is convincing evidence that the Group will pay normal income tax. Accordingly, MAT is recognised as an deferred tax asset in the Balance Sheet when it is probable that future economic benefit associated with it will flow to the Group

Current and deferred tax are recognised in the statement of profit and loss, except when they relate to items that are recognised in other comprehensive income (OCI) or directly in equity, in which case, the current and deferred tax are also recognised in OCI or directly in equity respectively.

**2.20 Provisions and contingent liabilities**

Provisions are recognized when there is a present obligation as a result of a past event, it is probable that an outflow of resources embodying economic benefits will be required to settle the obligation and there is a reliable estimate of the amount of the obligation. Provisions are measured at the best estimate of the expenditure required to settle the present obligation at the Balance sheet date

If the effect of the time value of money is material, provisions are discounted using a current pre-tax rate that reflects, when appropriate, the risks specific to the liability. When discounting is used, the increase in the provision due to the passage of time is recognized as a finance cost

Contingent liabilities are disclosed when there is a possible obligation arising from past events, the existence of which will be confirmed only by the occurrence or non occurrence of one or more uncertain future events not wholly within the control of the Group or a present obligation that arises from past events where it is either not probable that an outflow of resources will be required to settle or a reliable estimate of the amount cannot be made. Contingent liabilities are disclosed in the note 32. Contingent assets are not recognised in the consolidated financial statements

**2.21 Inventories**

Inventories are valued at the lower of cost (on weighted average basis) and the net realisable value after providing for obsolescence and other losses, where considered necessary. Cost includes all charges in bringing the goods to the point of sale, including octroi and other levies, transit insurance and receiving charges.

Purchases of edutech products mainly represents books, SD Cards, tablets and tech embedded devices.

On transfer of inventory to customer, the cost of inventories is recognised as an expense in statement of profit and loss

**2.22 Impairment of non-financial assets**

At the end of each reporting period, the Group reviews the carrying amounts of its tangible and intangible assets to determine whether there is any indication that those assets have suffered an impairment loss. If any such indication exists, the recoverable amount of the asset is estimated in order to determine the extent of the impairment loss (if any). When it is not possible to estimate the recoverable amount of an individual asset, the Group estimates the recoverable amount of the cash-generating unit to which the asset belongs. When a reasonable and consistent basis of allocation can be identified, corporate assets are also allocated to individual cash-generating units, or otherwise they are allocated to the smallest group of cash-generating units for which a reasonable and consistent allocation basis can be identified

Goodwill and other intangible assets not yet available for use are tested for impairment at least annually, and whenever there is an indication that the asset may be impaired

The recoverable amount of an asset or cash-generating unit (as defined below) is the greater of its value in use and its fair value less costs to sell. In assessing value in use, the estimated future cash flows are discounted to their present value using a pre-tax discount rate that reflects current market assessments of the time value of money and the risks specific to the asset. For the purpose of impairment testing, assets are grouped together into the smallest group of assets that generates cash in flows from continuing use that are largely independent of the cash inflows of other assets or groups of assets (the "cash-generating unit")

If the recoverable amount of an asset (or cash-generating unit) is estimated to be less than its carrying amount, the carrying amount of the asset (or cash-generating unit) is reduced to its recoverable amount. An impairment loss is recognised immediately in the statement of profit and loss

When an impairment loss subsequently reverses, the carrying amount of the asset (or a cash-generating unit) is increased to the revised estimate of its recoverable amount, so that the increased carrying amount does not exceed the carrying amount that would have been determined had no impairment loss been recognised for the asset (or cash-generating unit) in prior years. A reversal of an impairment loss is recognised immediately in the statement of profit and loss.

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**2.23 Segment reporting**

Operating segments are reported in the manner consistent with the internal reporting to the chief operating decision maker (CODM). The Group identifies primary segments based on the dominant source, nature of risks and returns and the internal organisation and management structure. The operating segments are the segments for which separate financial information is available and for which operating profit / loss amounts are evaluated regularly by the executive Management in deciding how to allocate resources and in assessing performance.

Segment revenue, segment expenses, segment assets and segment liabilities have been identified to segments on the basis of their relationship to the operating activities of the segment.

**2.24 Business combinations**

Business combinations have been accounted for using the acquisition method under the provisions of Ind AS 103, Business Combinations. The cost of an acquisition is measured at the fair value of the assets transferred, equity instruments issued and liabilities incurred or assumed at the date of acquisition, which is the date on which control is transferred to the Group. The cost of acquisition also includes the fair value of any contingent consideration. Identifiable assets acquired and liabilities and contingent liabilities assumed in a business combination are measured initially at their fair value on the date of acquisition. Contingent consideration is remeasured at fair value at each reporting date and changes in the fair value of the contingent consideration are recognized in the Consolidated Statement of Profit and Loss.

The interest of non-controlling shareholders is initially measured either at fair value or at the non-controlling interests' proportionate share of the acquiree's identifiable net assets. The choice of measurement basis is made on an acquisition-by-acquisition basis. Subsequent to acquisition, the carrying amount of non-controlling interests is the amount of those interests at initial recognition plus the non-controlling interests' share of subsequent changes in equity of subsidiaries.

The payments related to options issued by the Group over the non-controlling interests in its subsidiaries are accounted as financial liabilities and initially recognized at the estimated present value of gross obligations. Such options are subsequently measured at fair value in order to reflect the amount payable under the option at the date at which it becomes exercisable. In the event that the option expires unexercised, the liability is derecognized. Business combinations between entities under common control is accounted for at carrying value of the assets and liabilities in the Group's Consolidated financial statements.

Transaction costs that the Group incurs in connection with a business combination such as legal fees, due diligence fees, and other professional and consulting fees are expensed as incurred.

The consideration transferred does not include amounts related to the settlement of pre-existing relationships with the acquiree. Such amounts are generally recognised in the statement of profit and loss.

If the initial accounting for a business combination is incomplete by the end of the reporting period in which the business combination occurs, the Group reports in its financial statements provisional amounts for the items for which the accounting is incomplete. During the measurement period, the Group retrospectively adjusts the provisional amounts recognised at the acquisition date to reflect new information obtained about facts and circumstances that existed as of the acquisition date and, if known, would have affected the measurement of the amounts recognised as of that date.

During the measurement period, the Group also recognises additional assets or liabilities if new information is obtained about facts and circumstances that existed as of the acquisition date and, if known, would have resulted in the recognition of those assets and liabilities as of that date.

The measurement period ends as soon as the Group receives the information it was seeking about facts and circumstances that existed as of the acquisition date or learns that more information is not obtainable but does not exceed one year from the acquisition date.

**2.25 Operating Cycle**

Based on the nature of products/ activities of the Group and the normal time between acquisition of assets and their realization in cash or cash equivalents, the Group has determined its operating cycle as 12 months for the purpose of classification of its assets and liabilities as current and non-current.

**2.26 Exceptional items**

An item of income or expense which by its size, nature or incidence requires disclosure in order to improve an understanding of the performance of the Group is treated as an exceptional item and disclosed separately in the financial statements.

**2.27 Rounding off amounts**

All amounts disclosed in financial statements and notes have been rounded off to the nearest crores as per requirement of Schedule III of the Act, unless otherwise stated.

**2.28 Recent pronouncements**

The Ministry of Corporate Affairs (MCA) notifies new standards or amendments to the existing standards under Companies (Indian Accounting Standards) Rules as issued from time to time. On March 23, 2022, MCA amended the Companies (Indian Accounting Standards) Amendment Rules, 2022, as below.

(i) Ind AS 16, Property Plant and equipment – The amendment clarifies that excess of net sale proceeds of items produced over the cost of testing, if any, shall not be recognized in the profit or loss but deducted from the directly attributable costs considered as part of cost of an item of property, plant, and equipment. The effective date for adoption of this amendment is annual periods beginning on or after April 1, 2022. The Group has evaluated the amendment and there is no impact on its Consolidated financial statements.

(ii) Ind AS 37, Provisions, Contingent Liabilities and Contingent Assets – The amendment specifies that the 'cost of fulfilling' a contract comprises the 'costs that relate directly to the contract'. Costs that relate directly to a contract can either be incremental costs of fulfilling that contract (examples would be direct labor, materials) or an allocation of other costs that relate directly to fulfilling contracts (an example would be the allocation of the depreciation charge for an item of property, plant and equipment used in fulfilling the contract). The effective date for adoption of this amendment is annual periods beginning on or after April 1, 2022, although early adoption is permitted. The Group has evaluated the amendment and there is no impact on its Consolidated financial statements.

The Ministry of Corporate Affairs (MCA) notifies new standards or amendments to the existing standards under Companies (Indian Accounting Standards) Rules as issued from time to time. On March 31, 2023, MCA amended the Companies (Indian Accounting Standards) Amendment Rules, 2023, as below.

(i) Ind AS 1, Presentation of Financial Statements – This amendment requires the entities to disclose their material accounting policies rather than their significant accounting policies. The effective date for adoption of this amendment is annual periods beginning on or after April 1, 2023. The Group has evaluated the amendment and the impact of the amendment is insignificant in the Consolidated financial statements.

(ii) Ind AS 8, Accounting Policies, Changes in Accounting Estimates and Errors – This amendment has introduced a definition of 'accounting estimates' and included amendments in Ind AS 8 to help entities distinguish changes in accounting policies from changes in accounting estimates. The effective date for adoption of this amendment is annual periods beginning on or after April 1, 2023. The Group has evaluated the amendment and there is no impact on its Consolidated financial statements.

(iii) Ind AS 12, Income Taxes – This amendment has narrowed the scope of the initial recognition exemption so that it does not apply to transactions that give rise to equal and offsetting temporary differences. The effective date for adoption of this amendment is annual periods beginning on or after April 1, 2023. The Group has evaluated the amendment and there is no impact on its Consolidated financial statements.

The other amendments to Ind AS notified by these rules are primarily in the nature of clarifications.

**2.29 Events after the reporting date**

Where events occuring after the consolidated balance sheet date provide evidence of conditions that existed as at the end of the reporting period, the impact of such events is adjusted within the financial statements. Otherwise, events after the consolidated balance sheet date of material size or nature are only disclosed.

MSKA & ASSOCIATES * Chartered Accountants *

*("This space has been intentionally left blank")*

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

## 3 Property, plant and equipment

| Particulars | Leasehold improvements | Computers | Furniture and fixtures | Machinery Refer note (ii) | Office equipment | Buildings | Vehicles | Total |
|---|---|---|---|---|---|---|---|---|
| **Gross carrying value** | | | | | | | | |
| As at 1 April 2020 | 9.34 | 75.13 | 1.85 | - | 20.05 | - | - | 106.37 |
| Additions | 4.30 | 21.48 | 0.02 | 14.95 | 34.39 | - | - | 75.14 |
| Additions through Business combination | - | 0.10 | - | - | 0.14 | - | - | 0.24 |
| Disposals | - | 0.28 | - | - | 1.34 | - | - | 1.62 |
| Translation differences | (0.01) | - | - | - | - | - | - | (0.01) |
| **As at 31 March 2021** | **13.63** | **96.43** | **1.87** | **14.95** | **53.24** | **-** | **-** | **180.12** |
| As at 1 April 2021 | 13.63 | 96.43 | 1.87 | 14.95 | 53.24 | - | - | 180.12 |
| Additions | 25.230 | 87.514 | 7.913 | - | 37.364 | - | 0.10 | 158.11 |
| Additions through Business combination | 61.42 | 21.83 | 18.39 | 2.17 | 28.55 | 10.94 | 2.90 | 146.20 |
| Disposals | 0.77 | 41.35 | 0.03 | 0.04 | 0.11 | - | 0.71 | 43.01 |
| Translation differences | 0.18 | (0.46) | (0.23) | - | 1.36 | - | - | 0.85 |
| **As at 31 March 2022** | **99.69** | **163.96** | **27.91** | **17.08** | **120.40** | **10.94** | **2.29** | **442.27** |
| **Accumulated depreciation** | | | | | | | | |
| As at 1 April 2020 | 5.17 | 28.23 | 0.46 | - | 7.56 | - | - | 41.42 |
| Depreciation for the year | 2.63 | 26.23 | 0.12 | 1.00 | 5.69 | - | - | 35.67 |
| Disposals | - | 0.21 | - | - | 1.34 | - | - | 1.55 |
| **As at 31 March 2021** | **7.80** | **54.25** | **0.58** | **1.00** | **11.91** | **-** | **-** | **75.54** |
| As at 1 April 2021 | 7.80 | 54.25 | 0.58 | 1.00 | 11.91 | - | - | 75.54 |
| Depreciation for the year | 15.06 | 39.73 | 2.90 | 1.21 | 25.04 | 0.11 | 0.35 | 84.40 |
| Disposals | 0.69 | 40.98 | 0.01 | 0.04 | 0.07 | - | - | 41.79 |
| **As at 31 March 2022** | **22.17** | **53.00** | **3.47** | **2.17** | **36.88** | **0.11** | **0.35** | **118.14** |
| **Net Carrying amount** | | | | | | | | |
| **As at 31 March 2021** | **5.83** | **42.18** | **1.29** | **13.95** | **41.33** | **-** | **-** | **104.58** |
| **As at 31 March 2022** | **77.52** | **110.96** | **24.44** | **14.91** | **83.52** | **10.83** | **1.94** | **324.12** |

Notes:
(i) All assets are owned by the Group, unless stated as taken on lease.
(ii) Assets lying with third party

## 3 (a) Capital work in progress

| Particulars | Balance as at 31 March, 2021 | Additions through Business combination | Additions during the year | Capitalisation during the year | Balance as at 31 March, 2022 |
|---|---|---|---|---|---|
| Leasehold Improvements | - | 0.22 | 66.44 | - | 66.66 |
| Computers | - | 0.21 | 7.76 | - | 7.97 |
| Furniture and Fixtures | - | 0.13 | 1.50 | - | 1.63 |
| Office equipments | - | 0.65 | 26.46 | - | 27.11 |
| **Total** | **-** | **1.21** | **102.16** | **-** | **103.37** |

| Particulars | Balance as at 31 March, 2020 | Additions through Business combination | Additions during the year | Capitalisation during the year | Balance as at 31 March, 2021 |
|---|---|---|---|---|---|
| Leasehold Improvements | - | - | - | - | - |
| Computers | - | - | - | - | - |
| Furniture and Fixtures | - | - | - | - | - |
| Office equipments | - | - | - | - | - |
| **Total** | **-** | **-** | **-** | **-** | **-** |

**(i) Ageing of CWIP**

| As at 31 March, 2022 | Amounts in capital work-in-progress for a period of | | | | Total |
|---|---|---|---|---|---|
| | Less than 1 year | 1 – 2 years | 2 – 3 years | More than 3 years | |
| Projects in progress | 103.37 | - | - | - | 103.37 |
| Projects temporarily suspended | - | - | - | - | - |
| **Total** | **103.37** | **-** | **-** | **-** | **103.37** |

| As at 31 March, 2021 | Amounts in capital work-in-progress for a period of | | | | Total |
|---|---|---|---|---|---|
| | Less than 1 year | 1 – 2 years | 2 – 3 years | More than 3 years | |
| Projects in progress | - | - | - | - | - |
| | - | - | - | - | - |

(ii) There are no projects as Capital Work in Progess as at 31 March 2022 and 31 March 2021, whose completion is overdue or cost of which has exceeds in comparison to its original plan

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

4 **Right-of-use assets**

| Particulars | Buildings | Computers | Office Equipment | Total |
|---|---|---|---|---|
| **Gross carrying value** | | | | |
| As at 1 April 2020 | 231.64 | 32.71 | 4.76 | 269.11 |
| Additions | 115.93 | 7.11 | - | 123.04 |
| Disposals | 10.75 | - | - | 10.75 |
| Translation differences | - | - | - | - |
| **As at 31 March 2021** | **336.82** | **39.82** | **4.76** | **381.40** |
| As at 1 April 2021 | 336.82 | 39.82 | 4.76 | 381.40 |
| Additions | 1,320.48 | 16.08 | - | 1,336.56 |
| Additions through business combination | 110.97 | - | - | 110.97 |
| Disposals | 31.15 | 26.81 | - | 57.96 |
| Translation differences | 0.18 | - | - | 0.18 |
| **As at 31 March 2022** | **1,737.30** | **29.09** | **4.76** | **1,771.15** |
| **Accumulated depreciation** | | | | |
| As at 1 April 2020 | 47.00 | 11.15 | 0.88 | 59.03 |
| Depreciation expense | 66.06 | 13.12 | 1.22 | 80.40 |
| Disposals / adjustments | 4.63 | - | - | 4.63 |
| **As at 31 March 2021** | **108.44** | **24.27** | **2.10** | **134.80** |
| As at 1 April 2021 | 108.44 | 24.27 | 2.10 | 134.80 |
| Depreciation expense | 226.31 | 14.91 | 0.48 | 241.70 |
| Disposals / adjustments | 30.23 | 26.81 | - | 57.04 |
| **As at 31 March 2022** | **304.52** | **12.37** | **2.58** | **319.46** |
| **Net carrying amount** | | | | |
| **As at 31 March 2021** | **228.38** | **15.55** | **2.66** | **246.60** |
| **As at 31 March 2022** | **1,432.78** | **16.72** | **2.18** | **1,451.69** |

5 **(a) Goodwill**

Goodwill on business acquisition is as follows:

| Particulars | As at 31 March, 2022 | As at 31 March, 2021 |
|---|---|---|
| Balance at the beginning of the year | 1,708.53 | 617.24 |
| Business combinations occurred during the year (Refer Note 39-48) | 14,099.22 | 1,106.28 |
| Effect of foreign currency exchange differences | 119.70 | (14.99) |
| **Total** | **15,927.45** | **1,708.53** |

**(b) Goodwill**

As at 31 March 2022, the goodwill are tested for impairment at the respective Cash Generating Unit (CGU) level. The value-in-use for the respective Cash Generating Units (CGU) is determined based on discounted future cash flows. The key assumptions used for the calculations are as follows:

| Particulars | Tangible Play Inc | Whitehat Jr |
|---|---|---|
| Long term growth rate | 2.50% | 4.00% |
| Revenue growth rate | CAGR of 28% over a forecast of 7 years | CAGR of 39% over a forecast of 10 years |
| Discount rate | 17.00% | 17.00% |

| Particulars | EPIC Inc | Byju's PTE |
|---|---|---|
| Long term growth rate | 2.00% | 2.00% |
| Revenue growth rate | CAGR of 29% over a forecast of 8 years | CAGR of 30% over a forecast of 8 years |
| Discount rate | 14.60% | 15.20% |

| Particulars | Insplicarn LLC | GeoGebra |
|---|---|---|
| Long term growth rate | 2.00% | 2.00% |
| Revenue growth rate | CAGR of 49% over a forecast of 10 years | CAGR of 37% over a forecast of 8 years |
| Discount rate | 13.90% | 12.80% |

| Particulars | Great Lakes E-Learning Services | Grade Stack Learning |
|---|---|---|
| Long term growth rate | 5.00% | 4.00% |
| Revenue growth rate | CAGR of 23% over a forecast of 8 years | CAGR of 39% over a forecast of 8 years |
| Discount rate | 17.50% | 21.80% |

| Particulars | Toppr Technologies | Aakash Educational Services |
|---|---|---|
| Long term growth rate | 4.00% | 5.00% |
| Revenue growth rate | CAGR of 26% over a forecast of 7 years | CAGR of 27% over a forecast of 7 years |
| Discount rate | 16.20% | 14.50% |

As at 31 March 2022, the estimated recoverable amount of the CGU exceeded its carrying amount. Reasonable sensitivities in key assumptions is unlikely to cause the carrying amount to exceed the recoverable amount of the cash generating units.

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

6 (a) Intangible assets

| Particulars | Software | Trademarks and Patents | Byju's Learning App | Technology platform and contents | Brands | Technical Know hows | Teacher network and other intangibles | Total |
|---|---|---|---|---|---|---|---|---|
| **Gross carrying value** | | | | | | | | |
| As at 1 April 2020 | 24.52 | 137.56 | 531.53 | - | 2.03 | 277.09 | - | 972.73 |
| Additions (refer note 6 (b) below) | 0.65 | - | 920.36 | - | - | 0.02 | - | 921.03 |
| Additions through business combinations | 3.02 | - | - | 597.70 | 115.00 | 13.84 | 34.07 | 763.64 |
| Disposals/adjustments | 0.04 | - | - | - | (0.53) | - | - | (0.49) |
| Translation differences | - | - | - | - | - | - | - | - |
| **As at 31 March 2021** | **28.15** | **137.56** | **1,451.89** | **597.70** | **117.56** | **290.95** | **34.07** | **2,657.89** |
| As at 1 April 2021 | 28.15 | 137.56 | 1,451.89 | 597.70 | 117.56 | 290.95 | 34.07 | 2,657.89 |
| Additions (refer note 6 (b) below) | 4.00 | - | 1,324.81 | 12.60 | - | - | - | 1,341.41 |
| Additions through business combinations | 38.01 | 902.41 | 232.53 | 658.63 | 977.36 | 235.00 | 1,545.95 | 4,589.88 |
| Disposals/adjustments | 8.28 | 0.17 | (2.09) | (1.16) | 1.15 | 9.80 | (12.70) | 3.45 |
| Translation differences | (0.06) | 6.53 | 14.89 | (0.03) | 9.94 | 12.69 | 23.78 | 67.74 |
| **As at 31 March 2022** | **61.82** | **1,046.33** | **3,026.21** | **1,270.06** | **1,103.71** | **528.84** | **1,616.50** | **8,653.47** |
| **Accumulated depreciation** | | | | | | | | |
| As at 1 April 2020 | 6.18 | 30.35 | 160.12 | - | 1.01 | 62.39 | - | 260.03 |
| Amortisation for the year | 2.88 | 28.83 | 153.00 | 38.15 | 14.79 | 61.23 | 4.45 | 303.32 |
| Disposals/adjustments | 0.01 | - | - | - | - | - | - | 0.01 |
| **As at 31 March 2021** | **9.05** | **59.18** | **313.12** | **38.15** | **15.80** | **123.62** | **4.45** | **563.34** |
| As at 1 April 2021 | 9.05 | 59.18 | 313.12 | 38.15 | 15.80 | 123.62 | 4.45 | 563.34 |
| Amortisation for the year | 8.31 | 98.35 | 329.92 | 126.89 | 107.95 | 64.87 | 124.96 | 861.25 |
| Disposals/adjustments | (0.40) | - | (3.45) | (0.04) | - | 0.44 | (0.03) | (3.48) |
| **As at 31 March 2022** | **17.76** | **157.53** | **646.49** | **165.08** | **123.75** | **188.05** | **129.42** | **1,428.08** |
| **Net carrying amount** | | | | | | | | |
| **As at 31 March 2021** | **19.10** | **78.38** | **1,138.77** | **559.55** | **101.76** | **167.33** | **29.62** | **2,094.55** |
| **As at 31 March 2022** | **44.06** | **888.80** | **2,379.72** | **1,104.98** | **979.96** | **340.79** | **1,487.08** | **7,225.39** |

**(b) Cost of intangible assets under development**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Balance at the beginning of the year | 1,390.88 | 1,230.54 |
| Add: Directly attributable costs | - | - |
| Employee benefits expense (refer note 27) | 891.73 | 376.73 |
| Depreciation and interest (refer note 29 and 28) | 17.90 | 30.56 |
| Professional and other services (refer note 30) | 582.96 | 408.94 |
| | **1,492.59** | **816.23** |
| Less: Capitalized during the year | 781.18 | 655.89 |
| **Closing balance at the end of the year** | **2,102.29** | **1,390.88** |

Note 1: All assets are owned by the Company, unless stated as taken on lease.

**(c) Intangible assets under development ageing schedule**

**As at 31 March 2022**

| Intangible assets under development | Amount in Intangible under development for a period of | | | | Total |
|---|---|---|---|---|---|
| | Less than 1 year | 1-2 years | 2-3 years | More than 3 years | |
| Projects in progress | 1,183.22 | 902.57 | - | 16.50 | 2,102.29 |
| Projects temporarily suspended | - | - | - | - | - |
| **Total** | **1,183.22** | **902.57** | - | **16.50** | **2,102.29** |

**As at 31 March 2021**

| Intangible assets under development | Amount in Intangible Assets under development for a period of | | | | Total |
|---|---|---|---|---|---|
| | Less than 1 year | 1-2 years | 2-3years | More than 3 years | |
| Projects in progress | 1,087.26 | 287.11 | - | 16.51 | 1,390.88 |
| Projects temporarily suspended | - | - | - | - | - |
| Total | **1,087.26** | **287.11** | - | **16.51** | **1,390.88** |

(d) There are no projects as intangible assets under development as at 31 March 2022 and 31 March 2021, whose completion is overdue or cost of which has exceeds in comparison to its original plan.

MSKA & ASSOCIATES ★ Chartered Accountants ★

("This space has been intentionally left blank")

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

**7 Loans**

**(a) Non-current**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **Unsecured, considered good** | | |
| Loans | | |
| Loan to others# | - | 32.00 |
| **Total** | **-** | **32.00** |

**(b) Current**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **Unsecured, considered good** | | |
| Loans | | |
| Loan to Others * | 4.13 | 1.05 |
| **Total** | **4.13** | **1.05** |

*Includes loan given for the purpose of meeting the working capital/business requirements of the borrower (Intap Labs Private Limited - Rs. 3 Crores). This entity has been acquired by the Company subsequent to 31 March 2022 (Refer note 55)

#Includes loan given for the purpose of meeting the working capital/business requirements of the borrower (Toppr Technologies Private Limited - Rs. 25 Crores and Grade Stack E-learning Private Limited - Rs 7 Crores). This entity has been acquired by the Company subsequent to 31 March 2021 (Refer note 41 and 43)

**8 Other financial assets**

**(a) Non-current**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **Unsecured considered good** | | |
| Security deposit | 138.83 | 29.66 |
| Bank deposits with more than 12 months maturity from the reporting date* | 26.78 | 126.00 |
| Interest accrued on bank deposits | 1.91 | 1.06 |
| **Unsecured, considered doubtful** | | |
| Security Deposit | 7.50 | 4.38 |
| Less: Provision for doubtful security deposit | (5.12) | (4.38) |
| **Total** | **169.90** | **156.72** |

* Includes Rs.1.19 Crores (31 March 2021 : Rs 19.36 Crores) which is restricted by way of lien and Rs.23.64 Crores (31 March 2021: Rs 100.98 Crores) which is restricted by way of guarantee favouring the vendors based on terms of agreement

**(b) Current**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **Unsecured, considered good** | | |
| Interest accrued on bank deposits and bonds | 3.09 | 0.85 |
| Bank deposits with less than 12 months maturity from the reporting date ** | 167.90 | - |
| Receivable from payment gateways | 6.07 | 15.67 |
| Security deposit | 31.21 | 21.82 |
| Interest accrued on loans | 0.03 | 0.04 |
| Other receivables*** | 52.14 | 64.78 |
| **Total** | **260.44** | **103.16** |

** Includes Rs. 13.84 Crores (31 March 2021 : Rs. Nil) which is restricted by way of lien and Rs. 57.76 Crores (31 March 2021 : Rs. Nil) which is restricted by way of guarantee favouring the vendors based on terms of agreement

***Includes balances pertaining to amount receivable from loan partners against loan taken by customers

Information about the Company's exposure to credit and market risks, and fair value measurement is included in note 50

**9 Income tax assets**

**Non-current**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Advance income tax including tax deducted at source (net of provision for taxes) | 173.89 | 85.44 |
| **Total** | **173.89** | **85.44** |

**10 Other assets**

**(a) Non-current**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **Unsecured, considered good** | | |
| Balance with statutory authorities | 592.79 | 231.22 |
| Prepaid expenses | 6.58 | 0.24 |
| Capital advances | 30.69 | - |
| Other advances | 35.99 | - |
| **Total** | **666.05** | **231.46** |

MSKA & ASSOCIATES Chartered Accountants

("This space has been intentionally left blank")

Think and Learn Pvt. Ltd. Bangalore

(b) **Current assets**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **Unsecured, considered good** | | |
| Balance with statutory authorities | 174.62 | 2.93 |
| Advances | | |
| - to suppliers | 258.18 | 42.82 |
| - to employees | 31.87 | - |
| - to others | 6.32 | 1.63 |
| Prepaid rent | 0.16 | 0.55 |
| Unamortised costs of obtaining a contract | 54.56 | 9.85 |
| Other receivables | 0.91 | - |
| Prepaid expenses | 124.65 | 38.17 |
| **Unsecured, considered doubtful** | | |
| Advances | | |
| - to suppliers | 4.17 | 4.32 |
| Less: Provision for doubtful advances | (4.17) | (4.32) |
| - to related party | 2.48 | - |
| Less: Provision for doubtful advances | (2.48) | - |
| **Total** | **651.27** | **95.95** |

11 **Inventories (at lower of cost and net realisable value)**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Edutech products* (Stock-in-trade) | | |
| - Tech embedded devices | 282.81 | 142.02 |
| - Tablets* | 308.52 | 102.21 |
| - SD cards* | 13.84 | 2.22 |
| - Laptops | 0.68 | 3.46 |
| - Others | 7.48 | 2.57 |
| **Total** | **613.36** | **252.48** |

*Includes stock in transit of Rs.6.64 Crores (31 March 2021: Rs.17.96 Crores)

12 **Trade receivables**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **Unsecured, considered good** | | |
| - Receivable from contract with customer | 654.87 | 377.09 |
| | **654.87** | **377.09** |
| **Unsecured, considered doubtful** | | |
| - Receivable from contract with customer | 155.20 | 54.73 |
| Less: Allowance for expected credit loss | (155.20) | (54.73) |
| | - | - |
| **Total** | **654.87** | **377.09** |

The movement in the allowance for expected credit loss in respect of trade receivables during the year was as follows:

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Balance at the beginning of the year | 54.73 | 18.83 |
| Pursuant to Acquisition | 2.23 | - |
| Addition during the year | 120.37 | 35.90 |
| Written off / reversed during the year | (22.13) | - |
| **Balance at end of the year** | **155.20** | **54.73** |

**Trade receivable ageing schedule**

**(ii) Ageing of Trade receivables:**

| Particulars | Unbilled | Not due | Outstanding for following periods from due date of: Less than 6 months | 6 months - 1 year | 1-2 years | 2-3 years | More than 3 years | Total |
|---|---|---|---|---|---|---|---|---|
| (i) Undisputed Trade receivables – considered good | - | - | 594.95 | 59.68 | 0.24 | - | - | 654.87 |
| (ii) Undisputed Trade Receivables – which have significant increase in credit risk | - | - | - | - | - | - | - | - |
| (iii) Undisputed Trade Receivables – credit impaired | - | - | 119.15 | 28.33 | 5.67 | - | - | 153.15 |
| (iv) Disputed Trade Receivables– considered good | - | - | - | - | - | - | - | - |
| (v) Disputed Trade Receivables – which have significant increase in credit risk | - | - | - | - | - | - | - | - |
| (vi) Disputed Trade Receivables – credit impaired | - | - | - | - | 2.05 | - | - | 2.05 |
| Less: Allowance for bad and doubtful debts (Disputed + Undisputed) | - | - | (119.15) | (28.33) | (7.72) | - | - | (155.20) |
| **Total** | - | - | 594.96 | 59.68 | 0.24 | - | - | 654.87 |

MSKA & ASSOCIATES * Chartered Accountants *

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

| Particulars | Unbilled | Not due | Outstanding for following periods from due date of payment March 31, 2021 | | | | | Total |
|---|---|---|---|---|---|---|---|---|
| | | | Less than 6 months | 6 months - 1 year | 1-2 years | 2-3 years | More than 3 years | |
| (i) Undisputed Trade receivables – considered good | - | - | 377.06 | 0.02 | 0.00 | - | - | 377.09 |
| (ii) Undisputed Trade Receivables – which have significant increase in credit risk | - | - | - | - | - | - | - | - |
| (iii) Undisputed Trade Receivables – credit impaired | - | - | - | - | 0.02 | - | - | 0.02 |
| (iv) Disputed Trade Receivables– considered good | - | - | - | - | - | - | - | - |
| (v) Disputed Trade Receivables – which have significant increase in credit risk | - | - | - | - | - | - | - | - |
| (vi) Disputed Trade Receivables – credit impaired | - | - | - | - | (0.02) | - | - | (0.02) |
| | - | - | 377.06 | 0.02 | 0.00 | - | - | 377.09 |

**13 Cash and bank balances**

(a) Cash **and cash equivalents**

| **Particulars** | **As at 31 March 2022** | **As at 31 March 2021** |
|---|---|---|
| Cash on hand | 5.70 | 0.01 |
| Funds in transit | 13.25 | - |
| Bank balances (refer note 1 below) | | |
| (i) In Current accounts | 3,929.47 | 2,483.89 |
| (ii) In EEFC accounts | 294.02 | 134.56 |
| (iii) In deposit accounts (with maturity of less than 3 months) (refer note 3 below) | 58.82 | 56.97 |
| **Total** | **4,301.26** | **2,675.43** |

**(b) Bank balances other than above**

| **Particulars** | **As at 31 March 2022** | **As at 31 March 2021** |
|---|---|---|
| In deposit accounts (original maturity of more than 3 months but less than 12 months) (refer note 2 below) | 765.95 | 440.92 |
| **Total** | **765.95** | **440.92** |

**For the purpose of the statement of cash flows, cash and cash equivalents comprise the following:**

| **Particulars** | **As at 31 March 2022** | **As at 31 March 2021** |
|---|---|---|
| Bank balances (refer note 1 below) | | |
| (i) In Current accounts | 3,929.47 | 2,483.89 |
| (ii) In EEFC accounts | 294.02 | 134.56 |
| (iii) In deposit accounts (with maturity of less than 3 months) (refer note 3 below) | 58.82 | 56.97 |
| Cash on hand | 5.70 | 0.01 |
| **Total** | **4,288.01** | **2,675.43** |

Note 1 Bank balances in current accounts as at 31 March 2022 includes Nil (31 March 2021 : Rs 1,139.17 Crores) towards share application money pending allotment

Note 2 : Includes Rs 207.86 Crores (31 March 2021 : Nil) which is restricted by way of lien and Rs 404.88 Crores (31 March 2021 : Rs 120.69 Crores) which is restricted by way of guarantee favouring the

Note 3 Deposits amounting to INR 30.31 (March 31, 2021 INR NIL) is held as security against the overdraft facility taken from HDFC bank

Information about the Company's exposure to credit and market risks, and fair value measurement is included in note 50

MSKA & ASSOCIATES
Chartered Accountants

("This space has been intentionally left blank")

Think and Learn Pvt. Ltd.
Bangalore

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

14 Investments

(a) Non-Current

| Particulars | As at 31 March, 2022 | | As at 31 March, 2021 | |
|---|---|---|---|---|
| | Number of units | Amount | Number of units | Amount |
| **Unquoted investments (fully paid)** | | | | |
| Investments in Preference shares | | | | |
| Mobilizar Technologies Private Limited (valued at FVTPL) | 818.00 | 1.45 | - | - |
| Total | | 1.45 | - | - |

(b) Current Investments

| Particulars | As at 31 March, 2022 | | As at 31 March, 2021 | |
|---|---|---|---|---|
| | Number of units | Amount | Number of units | Amount |
| **(A) Unquoted investments (fully paid)** | | | | |
| **Investments in mutual funds at FVTPL** | | | | |
| Aditya Birla SL Corporate Bond Direct - Growth*# | 2,35,000.00 | 2.14 | 47,64,396.00 | 41.32 |
| ICICI Prudential Banking and PSU Debt Fund - Direct Plan - Growth# | - | - | 6,79,31,000.67 | 171.01 |
| IDFC Banking & PSU Debt Direct - Growth# | - | - | 3,37,59,858.00 | 65.97 |
| ICICI Pru Corporate bond direct - Growth** | - | - | 6,27,80,145.00 | 147.58 |
| ICICI Prudential Money Market fund | - | - | 52,93,478.70 | 156.31 |
| Aditya Birla SL Money manager fund*# | 35,560.00 | 1.06 | 80,51,196.27 | 231.21 |
| DSPBR Liquidity fund | - | - | 86,535.00 | 25.45 |
| IDFC Corporate bond direct - Growth# | - | - | 8,25,03,581.04 | 125.96 |
| Kotak FMP Series | 50,00,000.00 | 6.71 | - | - |
| Nippon India Fixed Horizon Fund- Direct Growth Plan | 50,00,000.00 | 6.72 | - | - |
| SBI Short Term Debt Direct - Growth | 0.42 | 0.00 | - | - |
| **Sub-total** | | **16.63** | | **967.81** |
| **Investments in bonds at FVTPL** | | | | |
| IIFL Wealth Finance Ltd EC950-020822 | 22,600.00 | 294.00 | 22,600.00 | 271.03 |
| IIFLWF-EC700-MLD-2022 | - | - | 10,000.00 | 102.91 |
| IIFLWPL-6.5%-2022 | 10,000.00 | 105.72 | - | - |
| IIFL WEALTH PRIME LIMITED 358 D CP | 2,000.00 | 100.00 | - | - |
| IIFLWPL EC-6.75%-2023 | 14,750.00 | 155.67 | - | - |
| BAJAJ FINANCE LIMITED SR 230 OPT | 500.00 | 68.54 | - | - |
| **Sub-total** | | **723.93** | | **373.94** |
| **Total unquoted investments** | | **740.56** | | **1,341.75** |
| **(B) Quoted investments (fully paid)** | | | | |
| **Investments in mutual funds at FVTPL** | | | | |
| Aditya Birla Sun Life Liquid Fund - Direct Plan - Growth | 74,818.27 | 2.54 | | |
| ICICI Prudential Mutual Fund (at fair market value) | 8,46,868.01 | 25.26 | - | - |
| **Sub-total** | | **27.80** | | |
| **Debt instruments measured (at FVTPL)** | | | | |
| U.S. Govt Mmkt Fund - Capital | 76,00,00,000.00 | 5,761.34 | | - |
| **Sub-total** | | **5,761.34** | | - |
| **Total quoted investments** | | **5,789.14** | | - |
| **Total unquoted and quoted investments** | | **6,529.70** | | **1,341.75** |
| | | | | |
| **Aggregate book value of quoted investments** | | **5,789.14** | | - |
| **Aggregate market value of quoted investments** | | **5,789.14** | | - |
| **Aggregate value of unquoted investments** | | **742.01** | | **1,341.75** |
| **Aggregate amount of impairment in value of investments** | | - | | - |

*Includes Rs. 3.07 Crores (31 March 2021 : Rs. Nil) which is restricted by way of lien favouring the Aditya Birla Finance Limited against the student loan financing.
#Includes amount of Rs. Nil (31 March 2021 : Rs. 365 Crores) given on lien favouring Citi Bank N.A. against the credit facility availed by M/s. Tangible Play Inc. (Wholly owned subsidiary of the Company).

**Includes amount of Rs. Nil (31 March 2021 : Rs. 101.42 Crores) given on lien favouring The Board of Cricket Council of India.
Information about the Group's exposure to credit and market risks, and fair value measurement, is included in Note 50

*("This space has been intentionally left blank")*

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

15 Share capital

**Authorized share capital**

| Particulars | As at 31 March 2022 | | As at 31 March 2021 | |
|---|---|---|---|---|
| | Number of shares | Amount | Number of shares | Amount |
| Equity shares of Rs 10/- each with voting rights | 32,38,236 | 3.24 | 32,38,236 | 3.24 |
| Series A compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series A CCCPS") | 5,16,000 | 0.52 | 5,16,000 | 0.52 |
| Series B compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series B CCCPS") | 2,07,386 | 0.21 | 2,07,386 | 0.21 |
| Series C compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series C CCCPS") | 1,10,000 | 0.11 | 1,10,000 | 0.11 |
| Series C1 compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series C1 CCCPS") | 1,30,000 | 0.13 | 1,30,000 | 0.13 |
| Series C2 compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series C2 CCCPS") | 77,123 | 0.08 | 77,123 | 0.08 |
| Series D compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series D CCCPS") | 1,92,255 | 0.19 | 1,92,255 | 0.19 |
| Series E compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series E CCCPS") | 1,70,000 | 0.17 | 1,70,000 | 0.17 |
| Series E1 compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series E1 CCCPS") | 61,000 | 0.06 | 61,000 | 0.06 |
| Series E2 compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series E2 CCCPS") | 14,000 | 0.01 | 14,000 | 0.01 |
| Series F compulsorily convertible cumulative preference shares of Rs. 10/- each with voting rights ("Series F CCCPS") | 18,50,000 | 1.85 | 13,50,000 | 1.35 |
| **Total** | **65,66,000** | **6.57** | **60,66,000** | **6.07** |

**Issued, subscribed and fully paid-up share capital**

(a) **Equity share capital**

| Particulars | As at 31 March 2022 | | As at 31 March 2021 | |
|---|---|---|---|---|
| | Number of shares | Amount | Number of shares | Amount |
| Equity shares of Rs 10/- each with voting rights | 14,22,203 | 1.42 | 14,08,559 | 1.41 |
| **Total** | **14,22,203** | **1.42** | **14,08,559** | **1.41** |

(b) **Instruments entirely equity in nature**
**Compulsorily convertible cumulative preference share capital ("CCCPS")**

| Particulars | As at 31 March 2022 | | As at 31 March | |
|---|---|---|---|---|
| | Number of shares | Amount | Number of shares | Amount |
| Series A CCCPS of Rs. 10/- each with voting rights | 5,15,822 | 0.52 | 5,15,822 | 0.52 |
| Series B CCCPS of Rs. 10/- each with voting rights | 2,07,386 | 0.21 | 2,07,386 | 0.21 |
| Series C CCCPS of Rs. 10/- each with voting rights | 92,904 | 0.09 | 92,904 | 0.09 |
| Series C1 CCCPS of Rs. 10/- each with voting rights | 1,27,401 | 0.13 | 1,27,401 | 0.13 |
| Series C2 CCCPS of Rs. 10/- each with voting rights | 77,123 | 0.08 | 77,123 | 0.08 |
| Series D CCCPS of Rs. 10/- each with voting rights | 1,92,255 | 0.19 | 1,92,255 | 0.19 |
| Series E CCCPS of Rs. 10/- each with voting rights | 1,66,347 | 0.17 | 1,66,347 | 0.17 |
| Series E1 CCCPS of Rs. 10/- each with voting rights | 60,627 | 0.06 | 60,627 | 0.06 |
| Series E2 CCCPS of Rs. 10/- each with voting rights | 13,297 | 0.01 | 13,297 | 0.01 |
| Series F CCCPS of Rs. 10/- each with voting rights | 15,36,123 | 1.53 | 7,76,874 | 0.78 |
| **Total** | **29,89,285** | **2.99** | **22,30,036** | **2.24** |

(Refer notes (i) to (iv)below)

Notes:
(i) **Reconciliation of shares outstanding at the beginning and at the end of the reporting year**

| Particulars | Opening Balance | Issued during the year | Closing balance |
|---|---|---|---|
| **Equity shares with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 14,08,559 | 13,644 | 14,22,203 |
| - Amount (Rs. Crores) | 1.41 | 0.01 | 1.42 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 14,06,699 | 1,860 | 14,08,559 |
| - Amount (Rs. Crores) | 1.41 | - | 1.41 |
| **Series A CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 5,15,822 | - | 5,15,822 |
| - Amount (Rs. Crores) | 0.52 | - | 0.52 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 5,15,822 | - | 5,15,822 |
| - Amount (Rs. Crores) | 0.52 | - | 0.52 |

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

(i) Reconciliation of shares outstanding at the beginning and at the end of the reporting year (contd.)

| Particulars | Opening Balance | Issued during the year | Opening Balance |
|---|---|---|---|
| **Series B CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 2,07,386 | - | 2,07,386 |
| - Amount (Rs. Crores) | 0.21 | - | 0.21 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 2,07,386 | - | 2,07,386 |
| - Amount (Rs. Crores) | 0.21 | - | 0.21 |
| **Series C CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 92,904 | - | 92,904 |
| - Amount (Rs. Crores) | 0.09 | - | 0.09 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 92,904 | - | 92,904 |
| - Amount (Rs. Crores) | 0.09 | - | 0.09 |
| **Series C1 CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 1,27,401 | - | 1,27,401 |
| - Amount (Rs. Crores) | 0.13 | - | 0.13 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 1,27,401 | - | 1,27,401 |
| - Amount (Rs. Crores) | 0.13 | - | 0.13 |
| **Series C2 CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 77,123 | - | 77,123 |
| - Amount (Rs. Crores) | 0.08 | - | 0.08 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 77,123 | - | 77,123 |
| - Amount (Rs. Crores) | 0.08 | - | 0.08 |
| **Series D CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 1,92,255 | - | 1,92,255 |
| - Amount (Rs. Crores) | 0.19 | - | 0.19 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 1,92,255 | - | 1,92,255 |
| - Amount (Rs. Crores) | 0.19 | - | 0.19 |
| **Series E CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 1,66,347 | - | 1,66,347 |
| - Amount (Rs. Crores) | 0.17 | - | 0.17 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 1,66,347 | - | 1,66,347 |
| - Amount (Rs. Crores) | 0.17 | - | 0.17 |
| **Series E1 CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 60,627 | - | 60,627 |
| - Amount (Rs. Crores) | 0.06 | - | 0.06 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 60,627 | - | 60,627 |
| - Amount (Rs. Crores) | 0.06 | - | 0.06 |
| **Series E2 CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 13,297 | - | 13,297 |
| - Amount (Rs. Crores) | 0.01 | - | 0.01 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 13,297 | - | 13,297 |
| - Amount (Rs. Crores) | 0.01 | - | 0.01 |
| **Series F CCCPS with voting rights** | | | |
| Year ended 31 March, 2022 | | | |
| - Number of shares | 7,76,874 | 7,59,249 | 15,36,123 |
| - Amount (Rs. Crores) | 0.78 | 0.76 | 1.54 |
| Year ended 31 March, 2021 | | | |
| - Number of shares | 5,42,090 | 2,34,784 | 7,76,874 |
| - Amount (Rs. Crores) | 0.54 | 0.24 | 0.78 |

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★