THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

(ii) **Details of rights, preferences and restrictions attached to each class of shares**

a) The Parent has only one class of equity shares having a par value of Rs.10 each. Each holder of equity shares is entitled to one vote per share. In the event of liquidation, equity share holders are entitled to receive the residual assets of the Parent after distribution of all preferential amounts, in proportion to the number of shares held by them.

b) The Parent has only one class of preference shares under different series A, B, C, C1, C2, D, E, E1, E2 & F having a par value of Rs.10 per share and compulsorily convertible into equity shares as per terms as given in Memorandum & Articles of Association read with amended and restated Shareholders Agreement dated February 28, 2019. Each holder of Preference Shares shall be entitled to one vote per share at each meeting of the holders of Equity Shares of the Parent to the extent of such proportion of the total voting rights, as the Preference Share holders would have been entitled assuming full conversion of all the Preference Shares, along with any Equity Shares held by the Preference Share holders.

c) Series A

Series A CCCPS shall be converted into equity shares at any time at the option of the holders of series A. Subject to applicable laws upon the earlier of (i)One day prior to expiry of ten (10) years of allotment and, or (ii) in connection with Initial Public Offer ("IPO") including any subsequent IPO, or the last day as may be permitted under applicable law (iii) a decision by vote or by written consent of the holders of a majority of the series A CCCPS that series A CCCPS must be converted. Each Series A CCCPS is convertible to 0.97 number of equity shares.

d) Series B, C, C1, C2, D, E, E1, E2 and F

Each series of compulsorily convertible cumulative preference shares shall be converted into equity shares at any time at the option of the holders of each series. Subject to applicable laws, each series of B,C,C1,C2,D, E, E1, E2 and F CCCPS shall automatically be converted into equity shares upon the earlier of (i)1(one) day prior to the expiry of twenty (20) years from the date of allotment or (ii) in connection with IPO including any subsequent IPO prior to filing of prospectus by the Parent with the competent authority or such later date as may be permitted by law; or (iii) a decision by vote or by written consent of the holders of a majority of each of the series that all such series must be converted. Each share of the series B, C, C1, C2, D, E, E1, E2 and F CCCPS shall be converted to 1 (one) equity shares.

The share holding pattern on an "as converted" basis for the CCCPS pursuant to the latest fund rounds during the years ended March, 31 2022 and March, 31, 2021 which has been approved by the Share holders of the Company vide the results of the EGMs dated 09 March 2022 and 01 December, 2020 respectively in accordance with the terms of the agreement entered into between the share holders is as follows. Accordingly, CCCPS has been classified as equity in the financial statements.

| Particulars | As at 31 March 2022 | | As at 31 March 2021 | |
|---|---|---|---|---|
| | Number of shares before conversion of CCCPS to equity shares | Number of equity shares upon conversion of CCCPS to equity shares | Number of shares before conversion of CCCPS to equity shares | Number of equity shares upon conversion of CCCPS to equity shares |
| Series A CCCPS holders | 5,15,822 | 5,02,566 | 5,15,822 | 5,02,566 |
| Series B CCCPS holders | 2,07,386 | 2,07,386 | 2,07,386 | 2,07,386 |
| Series C CCCPS holders | 92,904 | 92,904 | 92,904 | 92,904 |
| Series C1 CCCPS holders | 1,27,401 | 1,27,401 | 1,27,401 | 1,27,401 |
| Series C2 CCCPS holders | 77,123 | 77,123 | 77,123 | 77,123 |
| Series D CCCPS holders | 1,92,255 | 1,92,255 | 1,92,255 | 1,92,255 |
| Series E CCCPS holders | 1,66,347 | 1,66,347 | 1,66,347 | 1,66,347 |
| Series E1 CCCPS holders | 60,627 | 60,627 | 60,627 | 60,627 |
| Series E2 CCCPS holders | 13,297 | 13,297 | 13,297 | 13,297 |
| Series F CCCPS holders | 15,36,123 | 15,36,123 | 7,76,874 | 7,76,874 |

All the CCCPS shares are entitled to a cumulative preference dividend of 0.001% per annum. The preference dividend shall accrue from year to year whether or not paid and accrued dividend shall be paid in full, prior and in preference to any other class of shares.

The Parent has not declared preference dividend for the past 6 (six) years to its preference shareholders. By virtue of Section 47(2) of the Companies Act 2013, these preference shareholders shall be entitled to voting rights.

The Parent has entered into a share-cum-warrant subscription agreement with Bennett, Coleman & Company Limited (BCCL) pursuant to which, 5 equity shares and 10 share warrants have been issued to BCCL. As at 31 March 2022, BCCL holds 5 Equity Shares and 10 Warrants (31 March 2021: 5 Equity shares and 10 warrants). As on 31 March 2022 none of the share warrants have been converted to shares. For further details refer note 51.

(iii) **Details of shareholders holding more than 5% shares in the Parent**

| Name of the shareholder | As at 31 March 2022 | | As at 31 March 2021 | |
|---|---|---|---|---|
| | Number of shares held | % holding in that class of shares | Number of shares held | % holding in that class of shares |
| **Equity shares of Rs. 10/- each fully paid** | | | | |
| Byju Raveendran | 7,16,370 | 50.37% | 7,10,051 | 50.41% |
| Divya Gokulnath | 1,49,611 | 10.52% | 1,49,611 | 10.62% |
| Riju Ravindran | 67,864 | 4.77% | 89,763 | 6.37% |
| SLP Beta Holdings Cayman Ltd, Cayman Island | 86,780 | 6.10% | 86,780 | 6.16% |
| MIH Ventures B.V., Netherlands | 86,771 | 6.10% | 81,771 | 5.81% |
| **Series A CCCPS of Rs. 10/- each with voting rights** | | | | |
| MIH Ventures B.V., Netherlands | 1,03,871 | 20.14% | 1,03,871 | 20.14% |
| Lightspeed Venture Partners Select Mauritius, Mauritius | 61,009 | 11.83% | 61,009 | 11.83% |
| SCI Investments V, Mauritius | 50,785 | 9.85% | 53,867 | 10.44% |
| Sequoia Capital India Investments IV, Mauritius | 49,350 | 9.57% | 52,348 | 10.15% |
| General Atlantic Singapore TL Pte. Ltd, Singapore | 34,285 | 6.65% | 34,285 | 6.65% |
| Lightspeed India Partners I, LLC, Mauritius | 34,064 | 6.60% | 34,064 | 6.60% |
| INQ Holding LLC, Qatar | 26,722 | 5.18% | 26,722 | 5.18% |
| CPP Investment Board Private Holdings (3) Inc., Canada | 26,557 | 5.15% | 26,557 | 5.15% |
| Sofina SA, Belgium | - | 0.00% | 21,489 | 4.17% |
| **Series B CCCPS of Rs. 10/- each with voting rights** | | | | |
| Sequoia Capital India Investments IV, Mauritius | 1,41,035 | 68.01% | 1,49,598 | 72.14% |
| General Atlantic Singapore TL Pte. Ltd, Singapore | 30,689 | 14.80% | 30,689 | 14.80% |
| Internet Fund V Pte Ltd, Singapore | 27,099 | 13.07% | 27,099 | 13.07% |
| **Series C CCCPS of Rs. 10/- each with voting rights** | | | | |
| MIH Ventures B.V., Netherlands | 31,004 | 33.37% | 31,004 | 33.37% |
| SCI Investments V, Mauritius | 24,721 | 26.61% | 26,223 | 28.23% |
| General Atlantic Singapore TL Pte. Ltd, Singapore | 19,527 | 21.02% | 19,527 | 21.02% |
| CPP Investment Board Private Holdings (3) Inc, Canada | 11,400 | 12.27% | 11,400 | 12.27% |
| Internet Fund V Pte Ltd, Singapore | 4,750 | 5.11% | 4,750 | 5.11% |
| **Series C1 CCCPS of Rs. 10/- each with voting rights** | | | | |
| Sofina SA, Belgium | 1,27,401 | 100% | 1,27,401 | 100% |
| **Series C2 CCCPS of Rs. 10/- each with voting rights** | | | | |
| Chan Zuckerberg Mauritius, Mauritius | 54,017 | 70.04% | 54,017 | 70.04% |
| General Atlantic Singapore TL Pte. Ltd, Singapore | 23,106 | 29.96% | 23,106 | 29.96% |

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

| | | | | |
|---|---|---|---|---|
| **Series D CCCPS of Rs. 10/- each with voting rights** | | | | |
| Sofina SA, Belgium | 57,960 | 30.15% | 57,960 | 30.15% |
| International Finance Corporation, USA | 38,034 | 19.78% | 38,034 | 19.78% |
| SCHF PV Mauritius Ltd, Mauritius | 22,897 | 11.91% | 34,905 | 18.16% |
| General Atlantic Singapore TL Pte. Ltd, Singapore | 13,413 | 6.98% | 13,413 | 6.98% |
| Lightspeed Venture Partners Select Mauritius, Mauritius | 12,826 | 6.67% | 12,826 | 6.67% |
| MIH Ventures B.V., Netherlands | 9,964 | 5.18% | 9,964 | 5.18% |

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

| Name of the shareholder | As at 31 March 2022 | | As at 31 March 2021 | |
|---|---|---|---|---|
| | Number of shares held | % holding in that class of shares | Number of shares held | % holding in that class of shares |
| **Series E CCCPS of Rs. 10/- each with voting rights** | | | | |
| Verlinvest S. A., Belgium | 52,098 | 31.32% | 52,098 | 31.32% |
| DST Asia VII, Mauritius | 31,969 | 19.22% | 31,969 | 19.22% |
| DSTG VII Investments-2-IN Limited, Cayman Islands | 27,067 | 16.27% | 27,067 | 16.27% |
| Internet Fund V Pte Ltd, Singapore | 17,268 | 10.38% | 17,268 | 10.38% |
| Sofina SA, Belgium | 16,290 | 9.79% | 16,290 | 9.79% |
| **Series E1 CCCPS of Rs. 10/- each with voting rights** | | | | |
| Proxima Beta Pte. Limited, Singapore | 51,759 | 85.37% | 51,759 | 85.37% |
| Sofina SA, Belgium | 6,366 | 10.50% | 6,366 | 10.50% |
| **Series E2 CCCPS of Rs. 10/- each with voting rights** | | | | |
| Proxima Beta Pte. Limited, Singapore | 11,352 | 85.37% | 11,352 | 85.37% |
| Sofina SA, Belgium | 1,396 | 10.50% | 1,396 | 10.50% |
| **Series F CCCPS of Rs. 10/- each with voting rights** | | | | |
| MIH Ventures B.V., Netherlands | 2,02,352 | 13.17% | 1,59,352 | 20.51% |
| CPP Investment Board Private Holdings (3) Inc, Canada | 1,13,823 | 7.41% | 1,13,823 | 14.65% |
| General Atlantic Singapore TL Pte. Ltd, Singapore | 1,07,633 | 7.01% | 1,07,633 | 13.85% |
| SLP Beta Holdings Cayman Ltd | 83,647 | 5.45% | 52,632 | 6.77% |
| Internet Fund V Pte Ltd, Singapore | 49,589 | 3.23% | 49,589 | 6.38% |
| Epic Creations Aggregator | 1,25,984 | 8.20% | - | 0.00% |
| INQ Holding LLC, Qatar | - | 0.00% | 31,763 | 4.09% |

As per records of the Company, including its register of shareholders/members and other declarations received from shareholders regarding beneficial interest, the above shareholding represents both legal and beneficial ownership of shares.

**(iv) Aggregate number of equity shares issued as bonus shares, shares issued for consideration other than cash and shares bought back during the period of five years immediately preceding the reporting date:**

| Particulars | Aggregate number of shares | | | | |
|---|---|---|---|---|---|
| | As at 31 March, 2022 | As at 31 March, 2021 | As at 31 March, 2020 | As at 31 March, 2019 | As at 31 March, 2018 |
| **Equity shares with voting rights** | | | | | |
| Fully paid up pursuant to contracts without payment being received in cash* | 2,19,978 | 2,19,978 | 2,19,978 | 2,19,978 | 2,11,696 |
| Fully paid up by way of bonus shares | 7,12,620 | 7,12,620 | 7,12,620 | 7,12,620 | 7,12,620 |
| Shares bought back | 46,487 | 46,487 | 46,487 | 46,487 | 46,487 |

*8,282 number of equity shares were issued on 5 September 2018, 4,666 number of equity shares were issued on 31 January 2017, 7,030 number of equity shares were issued on 27 January 2015 and 2,00,000 number of equity shares were issued on 30 November 2011 for consideration other than cash

| Particulars | Aggregate number of shares | | | | |
|---|---|---|---|---|---|
| | As at 31 March, 2022 | As at 31 March, 2021 | As at 31 March, 2020 | As at 31 March, 2019 | As at 31 March, 2018 |
| **Series F CCCPS with voting rights** | | | | | |
| Fully paid up pursuant to contracts without payment being received in cash** | 2,87,997 | 85,575 | 85,575 | 85,575 | - |
| Fully paid up by way of bonus shares | - | - | - | - | - |
| Shares bought back | - | - | - | - | - |

**
85,575 number of series F CCCPS shares on 27 February 2019 for consideration other than cash (Swap of shares of Tangible Play, Inc.)
29,324 Number of Series F CCCPS were allotted on 26 July 2021 for consideration other than cash (Swap of ordinary shares of Great Learning Pte. Ltd.).
17,036 Number of Series F CCCPS were allotted on 31 July 2021 for consideration other than cash (Swap of securities of Toppr Technologies Private Limited).
1,25,984 Number of Series F CCCPS were allotted on 16 November 2021 for consideration other than cash (Swap of shares of common stock of Epic! Creations, Inc.).
30,078 Number of Series F CCCPS were allotted on 3 December 2021 for consideration other than cash (Swap of units of Inspilearn LLC).

**(v) Details of shareholding of promoters:**

| Particulars | As at 31 March, 2022 | | | As at 31 March, 2021 | | |
|---|---|---|---|---|---|---|
| | Number of shares | % of total shares in that class | % change during the year | Number of shares | % of total shares in that class | % change during the year |
| **Equity shares of Rs. 10/- each fully paid** | | | | | | |
| Byju Raveendran | 7,16,370 | 50.37% | (0.04%) | 7,10,051 | 50.41% | 0.07% |
| Riju Ravindran | 67,864 | 4.77% | (1.60%) | 89,763 | 6.37% | (13.79%) |
| Divya Gokulnath | 1,49,611 | 10.52% | (0.10%) | 1,49,611 | 10.62% | (0.01%) |
| **Total** | **9,33,845** | **65.66%** | **(1.74%)** | **9,49,425** | **67.40%** | **(13.73%)** |
| **Series F CCCPS of Rs. 10/- each with voting rights** | | | | | | |
| Byju Raveendran | 7,018 | 0.23% | 0.23% | - | - | - |
| **Total** | **7,018** | **0.23%** | **0.23%** | - | - | |

**(vi) Shares reserved for issue under options**
For details of shares reserved for issue under the Share based payment plan of the Company, please refer note 52

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

16 Other equity

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **Capital redemption reserve** | 0.05 | 0.05 |
| During the year ended 31 March 2013, the Parent had made a buy back of 46,487 equity shares of Rs.10/- each at a premium of Rs. 850.46/- per equity share utilising the Securities Premium Account. As required under Section 69 of the Companies Act 2013, the Parent has transferred an equivalent amount covered under the nominal value of shares so redeemed to the Capital Redemption Reserve Account by way of transfer of the amount from the Securities Premium Account. | | |
| **Capital reserve** | 0.69 | 0.69 |
| Capital reserve was created at the time of acquisition of business of TutorVista and Edurite from Pearson India Education Services Private Limited | | |
| **Securities Premium Account** | | |
| Amounts received (on issue of shares) in excess of the par value has been classified as securities premium, to be utilised in accordance with the Act. | | |
| Opening balance | 11,203.50 | 6,111.55 |
| Premium on issue of share capital | 19,833.48 | 5,096.17 |
| Expenses in connection with issue of shares | (28.96) | (6.22) |
| Transferred to securities premium on allotment against stock options | 291.07 | 2.00 |
| **Closing balance** | **31,299.09** | **11,203.50** |
| **Stock Options Outstanding** | | |
| The share option outstanding account is used to record the value of equity-settled share based payment transactions with employees. The amounts recorded in this account are transferred to share premium upon exercise of stock options by employees. In case of forfeiture, corresponding balance is transferred to general reserve. | | |
| Opening balance | 467.34 | 2.57 |
| Stock options issued | 80.11 | 466.77 |
| Transferred to securities premium on allotment against stock options | (288.16) | (2.00) |
| **Closing balance** | **259.29** | **467.34** |
| **Retained earnings** | | |
| Retained earnings comprise of the Group's prior years' undistributed earnings after taxes. | | |
| Opening balance | (5,032.75) | (598.50) |
| Other Adjustments | (417.49) | - |
| Loss for the year | (8,237.09) | (4,183.37) |
| Other comprehensive loss | 5.25 | (3.41) |
| Financial liability under option arrangement | - | (247.47) |
| **Closing balance** | **(13,682.07)** | **(5,032.75)** |
| **Share warrants** | | |
| Opening balance | 5.20 | 5.20 |
| Closing balance | **5.20** | **5.20** |
| **Commitment to Issue Share Capital** | | |
| Opening balance | - | - |
| Movement during the year | 2,888.49 | - |
| Closing balance | **2,888.49** | - |
| **Share Application Money Pending Allotment** | | |
| Opening balance | - | - |
| Money received against share application | - | 1,139.17 |
| Closing balance | - | **1,139.17** |
| **Other comprehensive income (OCI)** | | |
| Pertains to gain or loss on foreign currency translation reserve arising on account of translation of financial statements of foreign subsidiaries in accordance with Ind AS 21 - The effects of changes in foreign exchange rate. | | |
| Opening balance | 50.31 | 71.01 |
| Movement in Foreign Currency Translation Reserve during the year | 135.40 | (20.70) |
| **Closing balance** | **185.71** | **50.31** |
| **Total** | **20,956.45** | **7,833.51** |

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

16 (a) **Non Controlling Interest**

| **Particulars** | **As at 31 March 2022** | **As at 31 March 2021** |
|---|---|---|
| **Opening Balance** | (292.55) | - |
| Pursuant to acquisition (Refer note 39 and 48) | 347.95 | 88.72 |
| Loss for the year | (8.11) | (381.01) |
| Other comprehensive loss for the year | (0.11) | (0.26) |
| **Closing Balance** | **47.18** | **(292.55)** |

17 **Borrowings**

| | **Particulars** | **As at 31 March 2022** | **As at 31 March 2021** |
|---|---|---|---|
| (a) | **Non-current Borrowings** | | |
| | **Secured, at amortised cost** | | |
| | From others | | |
| | - others (Refer Note A below) | 8,828.65 | - |
| | | **8,828.65** | - |
| (b) | **Current borrowings** | | |
| | **Secured, at amortised cost** | | |
| | From others | | |
| | -current portion of secured long-term borrowings (Refer Note A below) | 36.98 | - |
| | **Unsecured, at amortised cost** | | |
| | Term Loan | | |
| | From banks | 74.64 | 422.69 |
| | From others | | |
| | - others (Refer Note B below) | 1,161.80 | 729.12 |
| | - current portion of secured long-term borrowings | - | 200.00 |
| | | **1,273.42** | **1,351.81** |
| | **Total** | **10,102.07** | **1,351.81** |

A. On November 24, 2021 ("Effective Date"), Byjus Alpha Inc ("the borrower") entered into a credit agreement with Morgan Stanley Senior Funding LLC for a $1,200,000,000 secured term loan facility. A guarantee of 115% of the total underlying loan has been given by Parent. The repayment of the credit facility in quarterly principal instalments, commencing on the last day of the first full fiscal quarter of the Parent Guarantor following the effective date, at an amount equal to 0.25% of the aggregate principal amount of the Term Loan Facility made on the Effective Date, which amount shall be due and payable on the last day of each fiscal quarter of the Parent. An amount of USD 1,140 million shall be paid at the end of the term loan maturity date (November 24, 2026), the outstanding amount of the facility shall be paid in full in Dollars by the Borrower.

Security given under the Credit Agreement: The Term Loan Facility will be secured by:
(a) all assets granted by -
(i) the Borrower,
(ii) Whitehat Education Technology LLC,
(iii) Tangible Play Inc.,
(iv) BYJU's Pte. Ltd. and
(v) Great Learning Education Pte Ltd; and

(b) Shares pledged by -
(i) The Borrower (100% of it's own share) and
(ii) BYJU's Pte Ltd (Shares held in Great Learning Education Pte Ltd).

Also refer note 32 C

**B. As at 31st March 2022** : Term loans from others includes Vidya Trust 2021 Series IV - Rs. 265.00 Crores, Vidya Trust 2021 Series V - Rs. 401.80 Crores, Vidya Trust 2021 Series VI - Rs. 200.00 Crores, and Hero Fincorp Limited - Rs.295.00 Crores.
**As at 31st March 2021** : Term loans from banks includes Kotak Mahindra Bank limited - Rs. 94.00 Crores, IndusInd Bank Limited - Rs. 113.21 Crores and SBM Bank India Limited - Rs. 69.57 Crores. Term loans from others includes Vidya Trust 2021 Series II - Rs. 440.77 Crores, Vidya Trust 2021 Series I - Rs. 139.85 Crores, Shree Vidya Trust 2021 - Rs. 148.50 Crores. Other term loans includes IIFL Wealth Finance Limited - Rs. 200.00 Crores.

For Hero Fincorp Limited, Vidya Trust 2021 Series IV, Vidya Trust 2021 Series V and Vidya Trust 2021 Series VI, the Company has assigned the account receivables created during the year.

MSKA & ASSOCIATES * Chartered Accountants *

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**Terms of repayment:**

| Lender | Interest Rate | | Repayment schedule | Purpose | Whether used for the purpose stated in the loan |
|---|---|---|---|---|---|
| | FY 2021-22 | FY 2020-21 | | | |
| Shree Vidya Trust 2021 | NA | 4.00% | Fixed monthly repayments as stipulated in the respective agreements | | Yes |
| Vidya Trust 2021 Series II | NA | 5.00% | | | Yes |
| Vidya Trust 2021 Series I | NA | 4.00% | | | Yes |
| SBM Bank India Limited | NA | 4.00% | | | Yes |
| Kotak Mahindra Bank limited | NA | 10.65% | | | Yes |
| IndusInd Bank Limited | NA | 6.00% | | | Yes |
| Vidya Trust 2021 Series IV | 5.13% | NA | | | Yes |
| Vidya Trust 2021 Series V | 4.88% | NA | | General corporate purpose | Yes |
| Vidya Trust 2021 Series VI | 5.94% | NA | | | Yes |
| Hero Fincorp Limited | 11.46% | NA | | | Yes |
| IIFL Wealth Finance Limited | NA | 10.25% | 12 months from the date of borrowing | | Yes |
| Morgan Stanley Senior Funding LLC | NA | 7.03% | 5 years at quarterly installments | | Yes |

**18 Lease liabilities**

| | Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|---|
| (a) | **Non-current** | | |
| | Lease liabilities | 1,182.29 | 171.12 |
| | | **1,182.29** | **171.12** |
| (b) | **Current** | | |
| | Lease liabilities | 317.22 | 84.81 |
| | | **317.22** | **84.81** |
| | **Total** | **1,499.51** | **255.93** |

For details of lease liabilities (refer note 38)

MSKA & ASSOCIATES
Chartered Accountants

*("This space has been intentionally left blank")*

Think and Learn Pvt. Ltd.
Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**19 Other non current liabilities**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Unearned revenue (Refer note 19.1 below) | 134.26 | 10.63 |
| **Total** | **134.26** | **10.63** |

**19.1 Movement of unearned revenue**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Balance at the beginning of the year | 44.77 | 123.41 |
| Pursuant to acquisition (refer note 39 to 48) | 704.16 | |
| Invoiced during the year | 2,461.19 | 38.17 |
| Revenue recognised during the year | 2,230.87 | 116.82 |
| **Balance at the end of the year** | **979.25** | **44.76** |
| Non-current | 134.26 | 10.63 |
| Current | 844.99 | 34.13 |

**20 Other current liabilities**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Statutory liabilities | 310.92 | 194.34 |
| Advance from customers | 433.57 | 347.80 |
| Unearned revenue (Refer note 19.1 above) | 844.99 | 34.13 |
| Others | 44.70 | 4.68 |
| **Total** | **1,634.18** | **580.95** |

**21 Provisions**

**(a) Non-current**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **(a) Non-current** | | |
| **Provision for employee benefits** | | |
| Provision for Gratuity [Refer Note 31(b)] | 91.65 | 45.58 |
| Provision for Compensated Absences [Refer note 31(c)] | 91.87 | 46.42 |
| **Total** | **183.52** | **92.00** |

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **(b) Current** | | |
| **Provision for employee benefits** | | |
| Provision for Gratuity [Refer Note 31(b)] | 11.14 | 0.59 |
| Provision for Compensated Absences [Refer note 31(c)] | 27.88 | 5.76 |
| **Other provisions** | | |
| Provision for Guarantee | 4.77 | 34.51 |
| Provision for Sales return | 69.55 | 19.51 |
| **Total** | **113.34** | **60.37** |

**Movement of provision for guarantee and sales return**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **Provision for Guarantee** | | |
| Opening balance | 34.51 | - |
| Provision provided for in the current year | 4.77 | 34.51 |
| Provision reversed | (34.51) | - |
| **Closing balance** | **4.77** | **34.51** |
| **Provision for Sales return** | | |
| Opening balance | 19.51 | - |
| Provision provided for in the current year | 69.55 | 19.51 |
| Provision reversed | (19.51) | - |
| **Closing balance** | **69.55** | **19.51** |
| **Total** | **74.32** | **54.02** |

*("This space has been intentionally left blank")*

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

22 **Trade payables**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| **Carried at amortised cost** | | |
| a) total outstanding dues of micro enterprises and small enterprises | 46.59 | 1.34 |
| b) total outstanding dues other than iii (a) above | 1,619.20 | 1,064.07 |
| **Total** | 1,665.79 | 1,065.41 |

**(i) Disclosures required under Section 22 of the Micro, Small and Medium Enterprises Development Act, 2006**

| Particulars | As at March 31, 2022 | As at March 31, 2021 |
|---|---|---|
| (i) Amount remaining unpaid to any supplier at the end of each accounting year: | | |
| Principal (including capital creditors and other financial liabilities) | 46.99 | 1.33 |
| Interest | 0.55 | 0.01 |
| (ii) The amount of interest paid by the buyer in terms of section 16 of the MSMED Act, along with the amount of the payment made to the supplier beyond the appointed day during each accounting year | - | - |
| (iii) The amount of interest due and payable for the period of delay in making payment (which have been paid but beyond the appointed day during the year) but without adding the interest specified under the MSMED Act | 0.43 | 0.01 |
| (iv) The amount of interest accrued and remaining unpaid at the end of each accounting year | 0.55 | 0.01 |
| (v) The amount of further interest remaining due and payable even in the succeeding years, until such date when the interest dues above are actually paid to the small enterprise, for the purpose of disallowance of a deductible expenditure under section 23 of the MSMED Act | 0.55 | 0.00 |

**Trade Payables aging schedule**

| Particulars | Outstanding for following periods from due date of payment as at 31 March 2022 | | | | | | Total |
|---|---|---|---|---|---|---|---|
| | Unbilled | Not Due | Less than 1 Year | 1-2 years | 2-3 years | More than 3 years | |
| (i) MSME | - | 0.82 | 45.78 | - | - | - | 46.60 |
| (ii) Others | 238.82 | 64.30 | 1,276.77 | 13.66 | 6.60 | 19.04 | 1,619.19 |
| (iii) Disputed Dues- MSMES | - | - | - | - | - | - | - |
| (iv) Disputed Dues- Others | - | - | - | - | - | - | - |
| **As at 31 March 2022** | **238.82** | **65.12** | **1,322.55** | **13.66** | **6.60** | **19.04** | **1,665.79** |

| Particulars | Outstanding for following periods from due date of payment as at 31 March 2021 | | | | | | Total |
|---|---|---|---|---|---|---|---|
| | Unbilled | Not Due | Less than 1 Year | 1-2 years | 2-3 years | More than 3 years | |
| (i) MSME | - | - | 573.14 | - | - | - | 573.14 |
| (ii) Others | 0.94 | 4.57 | 486.70 | - | - | 0.06 | 492.27 |
| (iii) Disputed Dues- MSMES | - | - | - | - | - | - | - |
| (iv) Disputed Dues- Others | - | - | - | - | - | - | - |
| **As at 31 March 2021** | **0.94** | **4.57** | **1,059.84** | - | - | **0.06** | **1,065.41** |

23 **Other financial liabilities**

| | Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|---|
| (a) | **Non-current** | | |
| | Payable for acquisition of business (Deferred consideration) (Refer Note 40-48) | 529.75 | - |
| | Securtiy Deposits | 16.85 | - |
| | Employee related payables | 19.44 | - |
| | **Total** | 566.04 | - |
| (b) | **Current** | | |
| | **Carried at amortised cost** | | |
| | Interest accrued but not due on borrowings | 66.61 | 2.55 |
| | Creditors for capital expenditure | 90.23 | 57.52 |
| | Employee related payables | 495.44 | 79.40 |
| | Payable for acquisition of business (Deferred consideration) (Refer Note 40-48) | 3,063.13 | 5.61 |
| | Refundable security deposit | 117.81 | 39.88 |
| | Financial liability under option arrangements | - | 257.91 |
| | Other current financial liabilities not included above* | 11.82 | - |
| | **Total** | **3,845.04** | 442.87 |

* Includes unspent amount of corporate social responsibility expenditure of INR 0.112 as on March 31, 2022 to be deposited by Company in specified fund of schedule VII within 6 months

*("This space has been intentionally left blank")*

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

**24 Revenue from operations**

| Particulars | For the year ended 31 March, 2022 | For the year ended 31 March, 2021 |
|---|---|---|
| Revenue from operations | | |
| - Course fee | 1,442.01 | 320.61 |
| - Streaming and other services | 226.90 | 108.47 |
| - Sale of Edutech products | 2,901.20 | 1,848.74 |
| - Educational content services | 442.68 | 0.17 |
| - Other Operating revenue | 1.81 | 2.27 |
| **Total** | 5,014.60 | 2,280.26 |

(i) Revenues from transfer of products to certain customers made under deferred payment terms and totalling to Rs.788.70 Crores (31 March 2021: Rs.1,156.27 Crores) (based on consideration that the Company is entitled for such transfers) has not been recognised because at the point of these transfers as the Company did not meet the criteria that it was probable it will collect the consideration to which it is entitled. Revenues from these transfer of products will be recognised when substantially all of the consideration is received by Company or when the deferred payment terms expire because of default or any non-performance by the customer and to extent any consideration received is non-refundable. The cost of the products amounting to Rs.51.29 Crores (31 March 2021: Rs.109.18 Crores) has been expensed in Statement of profit and loss.

The Company has incurred direct selling costs in the form of employee incentives and customer referral incentives in respect of the aforesaid sales which has also been charged off to the Statement of profit and loss.

Goods and Service Taxes (GST) paid/payable on the sales has been fully discharged by the Company during the year ended March 31, 2022. On deferral of recognition of revenue in the absence of probability of collections, the consideration recoverable from the customer towards GST amounting to Rs.141.97 Crores (31 March 2021: Rs.208.14 Crores) has not been carried as an asset in the balance sheet. The same shall be recorded as income as and when consideration towards the sales (including GST) is collected from the customer.

(ii) Sale of educational content to customers based in the Gulf Cooperation Council (GCC) countries amounted to Rs.634.18 Crores during the year (Rs. 497.00 Crores for the year ended 31 March 2021). All sales of the Company to these customers are made through [a sole selling agent, More Ideas General Trading LLC], an unrelated entity, located out of Dubai (Refer note 2.5 a(iii))

Out of the above sales from transfer of products, revenues totalling to Rs. 260 Crores (31 March 2021: Nil) (based on consideration that the Company is entitled for such transfers) has not been recognised, because at the point of these transfers, the Company did not meet the criteria under Ind AS 115 (para 9) with respect to the probability of collection. Accordingly, the revenues from these transfers will be recognised when substantially all of the consideration is received by Company and to the extent such consideration received is non-refundable.

Further, however, the Company has paid commission to the aforesaid entity, being 50% of the above billed revenue per the terms of the arrangement, of Rs. 300.37 Crores during the year (31 March 2021: Rs. 237.00 Crores) which has been debited to the Statement of profit and loss. Further, based on a legal opinion obtained by the Company, such commission is not subject to GST under the reverse charge mechanism.

The Company has assessed the credit risk on the amounts recoverable from the aforesaid party as at March 31, 2022 and in accordance with Ind AS 109, estimated a provision for expected credit loss of Rs.119.15 Crores (31 March 2021: Nil) in the Statement of profit and loss. Basis on-going discussions held with the entity and a payment plan received, the Company is confident of recoveries and does not consider need for any further impairment at present.

The Company, subsequent to the year-end, has filed an application with its AD banker seeking an extension of the time limit as prescribed by the RBI guidelines for collection of these foreign currency amounts. While such approval has not been expressly received as yet, the Company believes this to be a mere procedural formality, and that no material penalty or fine is expected to devolve on the Company.

(iii) Refer note 33(i) for geography-wise revenues.

(iv) **Break of revenue based on timing of revenue recognition**

| Particulars | For the year ended 31 March 2022 | For the year ended 31 March 2021 |
|---|---|---|
| Goods transferred at a point in time | 2,901.20 | 1,848.74 |
| Services transferred over time | 2,113.40 | 431.52 |
| **Total** | 5,014.60 | 2,280.26 |

MSKA & ASSOCIATES * Chartered Accountants *

Think and Learn Pvt. Ltd. Bangalore *

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

(v) Remaining performance obligation disclosure

The remaining performance obligation disclosure provides the aggregate amount of the transaction price yet to be recognised as at the end of the reporting period, and an explanation as to when the Company expects to recognize these amounts in revenue. Applying the practical expedient as given in Ind AS 115, the Company has not disclosed the remaining performance obligation related disclosures for contracts where the revenue recognized corresponds directly with the value to the customer of the entity's performance completed to date. Remaining performance obligation estimates are subject to change and are affected by several factors, including terminations, changes in the scope of contracts, periodic revalidations, adjustment for revenue that has not materialized and adjustments for currency fluctuations.

The aggregate value of performance obligations that are completely or partially unsatisfied as at March 31, 2022, other than those meeting the exclusion criteria mentioned above, is Rs.979.24 Crores (31 March 2021 : Rs.44.77). Out of this, the Company expects to recognize revenue of around 30.32% within the next one year and the remaining thereafter.

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

(vi) Reconciliation of revenue recognised with contract price

| Particulars | For the year ended 31 March 2022 | For the year ended 31 March 2021 |
|---|---|---|
| **Revenue as per contracted price** | 6,082.61 | 2,389.66 |
| **Adjustments for:** | | |
| Contract liabilities – Streaming and other services | 979.25 | 44.76 |
| Refund liabilities | 74.32 | 54.02 |
| Discounts/rebates/price concessions/incentives | 14.45 | 10.61 |
| **Total revenue from contracts with customers** | **5,014.59** | **2,280.27** |

25 **Other income**

| Particulars | For the year ended 31 March, 2022 | For the year ended 31 March, 2021 |
|---|---|---|
| Interest income on financial assets carried at amortised cost | | |
| - on bank deposits | 51.77 | 47.00 |
| - on financial assets carried at amortised cost | 4.23 | 2.08 |
| - on unsecured loan and other deposits | 2.24 | - |
| - on others | 0.94 | - |
| Income on financial assets carried at FVTPL | | |
| - Interest on bonds | 13.87 | 5.94 |
| - profit on sale of current investments | 122.00 | 93.83 |
| - net gain on assets measured at fair value through profit or loss (FVTPL) | 32.73 | (8.29) |
| Net gain / (loss) on disposal of property, plant and equipment | 0.00 | - |
| Lease concession income | 0.48 | 0.69 |
| Interest on income tax refund | 5.31 | 0.34 |
| Provision/Liabilities no longer required written back | 3.32 | - |
| Foreign exchange gain (net) | 9.78 | 0.83 |
| Miscellaneous income | 37.16 | 5.71 |
| **Total** | **283.83** | **148.13** |

26 **Changes in inventories of edutech products**

| Particulars | For the year ended 31 March, 2022 | For the year ended 31 March, 2021 |
|---|---|---|
| Inventories at the beginning of the year | 252.48 | 54.23 |
| Inventories through acquisitions (refer note 39 to 48) | 7.48 | - |
| Less: Inventories at the end of the year | 613.36 | 252.48 |
| **(Increase) /decrease in Inventories** | **(353.40)** | **(198.25)** |

27 **Employee benefits expense**

| Particulars | For the year ended 31 March, 2022 | For the year ended 31 March, 2021 |
|---|---|---|
| Salary, wages and bonus | 4,099.91 | 1,760.28 |
| Contribution to provident and other funds (Refer Note 31(a)) | 107.25 | 59.80 |
| Less: Amounts transferred to intangibles under development (Refer Note 6(b)) | (891.74) | (376.73) |
| | 3,315.42 | 1,443.35 |
| Share based payment to employees (Refer Note 52) | 70.12 | 466.67 |
| Gratuity (Refer Note 31(b)) | 52.33 | 17.78 |
| Staff welfare expenses | 114.35 | 15.50 |
| **Total** | **3,552.22** | **1,943.30** |

28 **Finance costs**

| Particulars | For the year ended 31 March, 2022 | For the year ended 31 March, 2021 |
|---|---|---|
| Interest expense on borrowings | 305.21 | 14.71 |
| Interest expense on lease liabilities (Refer Note 38) | 72.45 | 12.35 |
| Less: Amounts transferred to intangibles under development (Refer Note 6 (b)) | (2.07) | (5.72) |
| | 70.38 | 6.63 |
| Factoring cost | 18.58 | 1.79 |
| Finance cost relating to financial liability under option arrangement | 116.55 | 10.44 |
| Interest on delayed payment of statutory dues | 8.14 | 27.97 |
| Interest on delayed payment to micro enterprises and small enterprises | 0.54 | 0.01 |
| **Total** | **519.40** | **61.55** |

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

**29 Depreciation and amortisation**

| Particulars | For the year ended 31 March, 2022 | For the year ended 31 March, 2021 |
|---|---|---|
| a) Depreciation of Property, Plant and Equipment (Refer Note 3) | 84.40 | 35.67 |
| b) Depreciation of Right-of-use assets (Refer Note 4) | 241.70 | 80.40 |
| Less: Amounts transferred to intangibles under development from (b) above (Refer Note 6 (b)) | (15.83) | (24.84) |
| | 225.87 | 55.56 |
| c) Amortisation of intangible assets (Refer Note 6 (a)) | 861.23 | 303.33 |
| **Total** | **1,171.50** | **394.56** |

**30 Other expenses**

| Particulars | For the year ended 31 March, 2022 | For the year ended 31 March, 2021 |
|---|---|---|
| Power charges | 31.30 | 9.30 |
| Rent | 112.29 | 50.79 |
| Repairs and maintenance | | |
| - Buildings | 20.45 | 6.54 |
| - Others | 48.46 | 19.23 |
| Insurance | 14.23 | 5.09 |
| Communication expense | 109.15 | 50.07 |
| Travelling expense | 434.39 | 95.42 |
| Freight and forwarding expenses | 76.94 | 32.10 |
| Sponsorship expenses | - | 128.06 |
| Selling and distribution expenses | 53.83 | - |
| Commission | 309.70 | 237.00 |
| Teacher's fees | 391.45 | 297.70 |
| Gateway Charges | 44.32 | 22.28 |
| IT expenses | 324.87 | 54.21 |
| Legal and professional fees (Refer Note B) | 1,191.91 | 672.94 |
| Subscription charges | 125.75 | 73.35 |
| Allowance for expected credit loss | 146.91 | 32.43 |
| Bad debts written off | 39.64 | 0.07 |
| (Less): Provision carried in earlier years | (18.83) | - |
| Rates and taxes (Refer Note A below) | 235.59 | 347.95 |
| Printing and stationery | 4.44 | 1.70 |
| Donations and contributions | 0.01 | 1.52 |
| (Less) Add: Provision for doubtful advances and security deposits | (4.21) | 11.18 |
| Exchange difference (net) | - | 1.09 |
| Royalty expenses | 47.41 | 32.90 |
| Security charges | 20.59 | 5.23 |
| Miscellaneous expenses | 214.87 | 21.52 |
| **Total** | 3,975.46 | 2,209.67 |
| Less: Amounts transferred to intangibles under development (Refer Note 6 (b)) | (582.96) | (408.94) |
| **Total** | **3,392.50** | **1,800.73** |

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

Note A

During the year ended 31 March 2021, the Directorate General of GST Intelligence (Authority) finalized the investigation on February 18, 2021 against books supplied during the period July 2017 to October 2020. This has resulted in payment of GST of Rs.96.17 Crores, interest of Rs.27.95 Crores and penalty of Rs.14.43 Crores. The Authority has concluded the investigation without issuing show cause notice since the GST liability was accepted and paid by the Company.

**Note B: Legal and professional charges includes payment to auditors as follows:**

| Particulars | For the year ended 31 March, 2022 | For the year ended 31 March, 2021 |
|---|---|---|
| (a) Payment to Auditor | | |
| - for statutory audit (Refer Note i below) | 4.49 | 4.50 |
| - for certificates | - | 0.49 |
| (b) for taxation services (Refer Note ii below) | - | 0.64 |
| (c) for reimbursement of expenses | 0.09 | 0.17 |
| **Total** | **4.58** | **5.80** |

Note:

i. For the year ended 31 March, 2021, Statutory audit fees includes Rs.3.5 Crores towards the additional effort incurred in the audit consequent to material weaknesses observed in internal controls.

ii. The above includes Nil (Previous year : Rs.0.64 Crores) paid to a firm affiliated to the statutory auditors firm through a networking arrangement as registered with the Institute of Chartered Accountants of India.

MSKA & ASSOCIATES Chartered Accountants

*("This space has been intentionally left blank")*

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

**31 Employee benefits**

**(a) Defined contribution plans**

The Group makes contributions to Provident Fund and Employee State Insurance Scheme which are defined contribution plans, for qualifying employees. Under the Schemes, the Group is required to contribute a specified percentage of the payroll costs to fund the benefits. The Group recognised Rs.107.16 Crore (Year ended 31 March 2021: Rs. 59.73 Crore) towards Provident Fund contributions and Rs. 0.09 Crore (Year ended 31 March 2021: Rs. 0.07 Crore) towards Employee State Insurance Scheme contributions in the Consolidated Statement of Profit and Loss.

Tangible Play Inc., a subsidiary in United States of America has a 401(k) plan to provide defined contribution retirement plan benefits to employees, who become eligible to participate in the plan upon employment. Eligible employees may elect to contribute a percentage of their compensation to the plan, subject to limitations under the Internal Revenue Code. The subsidiary may make discretionary matching contributions to the plan. During the financial years ended 31 March 2021 and 31 March 2022, the subsidiary made no discretionary matching contributions to the plan.

**(b) Defined benefit plans**

Gratuity: Every employee is entitled to a benefit equivalent to fifteen days' last drawn salary for each completed year of service in line with the Payment of Gratuity Act, 1972. The same is payable at the time of separation from the Group or retirement, whichever is earlier. The benefit vests after five years of continuous service. The plan is not funded.

**A. Expense recognised in consolidated statement of profit and loss**

| Particulars | Year ended 31 March, 2022 | Year ended 31 March, 2021 |
|---|---|---|
| **i. Amounts recognised in comprehensive income in respect of defined benefit plans are as follows:** | | |
| Current service cost | 48.46 | 16.22 |
| Interest cost | 3.87 | 1.56 |
| **Total expense recognised in the consolidated statement of profit and loss** | **52.33** | **17.78** |
| **ii. Remeasurements recognised in other comprehensive income are as follows:** | | |
| Actuarial losses/(gains) | (4.35) | 3.43 |
| **Total** | **(4.35)** | **3.43** |

**iii. Remeasurements recognised in other comprehensive income**

| Particulars | Year ended 31 March, 2022 | Year ended 31 March, 2021 |
|---|---|---|
| Gain or loss from changes in financial assumptions | (6.40) | 1.27 |
| Gain or loss from changes in demographic assumptions | (1.17) | - |
| Gain or loss from experience adjustments | 3.22 | 2.16 |
| **Total** | **(4.35)** | **3.43** |

**B. Amount recognized in the balance sheet**

| Particulars | Year ended 31 March, 2022 | Year ended 31 March, 2021 |
|---|---|---|
| Present value of defined benefit obligation recognised in the consolidated balance sheet | 102.79 | 46.17 |
| Current portion | 11.14 | 0.59 |
| Non current portion | 91.65 | 45.58 |
| **Total** | **102.79** | **46.17** |

**C. Reconciliation of the net defined benefit (asset) liability**

The following table shows a reconciliation from the opening balances to the closing balances for the net defined benefit (asset) liability and its components.

| Particulars | As at 31 March, 2022 | As at 31 March, 2021 |
|---|---|---|
| **Reconciliation of present value of defined benefit obligation** | | |
| Opening balance | 46.17 | 22.22 |
| Benefits paid | (3.12) | (0.77) |
| Current service cost | 48.46 | 16.62 |
| Pursuant to business combination | 11.76 | 2.82 |
| Interest cost | 3.87 | 1.56 |
| Actuarial (gains) losses recognised in other comprehensive income | (4.35) | 3.43 |
| Others | - | 0.29 |
| **Balance** | 102.79 | 46.17 |
| **Plan assets** | - | - |
| **Closing defined benefit obligation** | 102.79 | 46.17 |

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**D. Plan assets**
The Group does not have any plan assets

**E. Defined Benefit obligations**
**i. Actuarial assumptions**

| Particulars | As at 31 March, 2022 | As at 31 March, 2021 |
|---|---|---|
| Discount rate (per annum) | 5.66% - 7.51 % | 6.95% |
| Salary escalation | 6.5% - 20% | 8.00% until year 3 inclusive, then 7.00% |
| Attrition rate | 2% - 28% | - |
| Retirement Age | 58-74 Years | - |
| Mortality rate | 100% of IALM (2012-14) | - |

The estimate of future salary increases considered in actuarial valuation takes into account the inflation, seniority, promotion, increments and other relevant factors. The actuarial assumptions used for valuation of compensated absences is same as those used for gratuity.

Assumptions regarding mortality are based on published statistics and mortality tables by Insurance Regulatory and Development Authority of India.

**Maturity profile of defined benefit obligation**

| Particulars | For the year ended 31 March, 2022 | For the year ended 31 March, 2021 |
|---|---|---|
| Within 1 year | 10.84 | 0.59 |
| 1-2 years | 16.36 | 1.10 |
| 2-3 years | 16.57 | 1.39 |
| 3-4 years | 17.23 | 2.00 |
| 4-5 years | 16.91 | 2.82 |
| 5-10 years | 420.63 | 209.84 |
| Above 10 years | 15.99 | |

**Sensitivity analysis**

| Particulars | As at 31 March 2022 | | As at 31 March 2021 | |
|---|---|---|---|---|
| | Increase in Gratuity liability | Decrease in Gratuity liability | Increase in Gratuity liability | Decrease in Gratuity liability |
| Discount rate (0.5% movement) | (7.44) | 8.45 | (3.47) | 4.02 |
| Future salary growth (0.5% movement) | 7.75 | (7.11) | 4.00 | (3.64) |

Although the analysis does not take account of the full distribution of cash flows expected under the plan, it does provide an approximation of the sensitivity of the assumptions shown.

(c) **Compensated absences** : The Group's liability towards compensated absences is determined by actuarial valuation using Projected Unit Credit Method based on accumulated leave credit outstanding to the employee's credit as on the balance sheet date is not funded and amounts to Rs. 119.75 Crore (As at 31 March 2021: Rs. 52.18 Crore).

*("This space has been intentionally left blank")*

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

32 A. Contingent liabilities (to the extent not provided for)

| Particulars | As at 31 March, 2022 | As at 31 March, 2021 |
|---|---|---|
| (a) Claims against the Group not acknowledged as debt | | |
| (i) Demand / show cause notices received from tax authorities | | |
| - Service tax matters | 99.73 | - |
| -Central excise | 30.08 | - |
| - Income Tax (Refer note (i) below) | 3.81 | - |

(i) There are certain litigations related to Income Tax disputes for AY 2017-18 and AY 2018-19 in respect of which, the Parent's appeals are pending with the ITAT and CIT(A). There are no demands raised by the authorities in respect of these litigations.

B. Commitments (to the extent not provided for)

| Particulars | As at 31 March, 2022 | As at 31 March, 2021 |
|---|---|---|
| (b) Corporate guarantee | | |
| (i) Corporate Guarantee issued on behalf of Tangible Play Inc. | 153.13 | 149.65 |
| (ii) Corporate Guarantee issued on behalf of Byjus Alpha Inc., | 10,461.38 | - |

C. Byju's Alpha Inc., a step-down subsidiary of the Company incorporated in Delaware, USA ('Alpha') availed a USD 1.2 billion term loan B facility (TLB) pursuant to a Credit and Guaranty Agreement ('Credit Agreement') dated 24 November 2021.
On 3 March 2023, GLAS issued a Notice of Default and Acceleration under the Credit Agreement accelerating the TLB. GLAS also issued a Notice of Enforcement taking enforcement steps under certain security agreements ('3 March Notices'). By the Notice of Enforcement, GLAS triggered a US Pledge Agreement, to effectively seize control of all the equity shares controlling Alpha and take over its board of directors, replacing Alpha's existing officer and director with its own designee, Timothy Pohl ('Mr Pohl'). The 3 March Notices were issued pursuant to the following purported events of default under Clause 8.1(e) of the Credit Agreement ('Events of Default'): (a) failure to provide unaudited and audited financial statements, including quarterly statements, and (b) failure to procure a guarantee from Whitehat India Education Technology Private Limited ('Whitehat Guarantee'), within contractually stipulated timelines. Clause 8.1 of the Credit Agreement allows GLAS to immediately accelerate the Term Loan on the occurrence of an event of default.

On 3 May 2023, GLAS and Mr Pohl ('Delaware Plaintiffs') filed an action under Section 225 of the Delaware General Corporation Law) against Alpha, one of the Company's directors, and Tangible Play Inc., subsidiary of the Company, 'Delaware Defendants') seeking declaratory relief inter alia that the replacement of the Company's director with Mr Pohl as CEO, sole director and secretary of Alpha was valid. The Company is not a party to these proceedings. The Delaware Defendants opposed the action on the following grounds:
(a) The Delaware Court does not have jurisdiction to determine the dispute, and the New York Courts have exclusive jurisdiction to determine the validity of the acceleration notice under the Credit Agreement.
(b) In any event and without prejudice, the 3 March Notices were not valid as the purported Events of Default were trivial, inconsequential or non-monetary and New York law (the governing law under the Credit Agreement) does not permit acceleration of loans on such grounds.
(c) The purported failure to procure the Whitehat Guarantee was due to a legal impossibility.

The Delaware Chancery Court conducted a bench trial in the Delaware Proceedings on 4 August 2023, and the matter has been reserved for orders.

On 5 June 2023, the Company and guarantors under the Credit Agreement filed a complaint in the New York Supreme Court against GLAS, inter alia, seeking a declaration that the 3 March 2023 notices were invalid (New York Complaint). In the New York proceedings, GLAS is yet to file its opposition, which is currently due on 3 November 2023.

The Borrower's US counsel has indicated that the claims and defences made in the Delaware Proceedings and the New York Proceedings are arguable, have been advanced in good faith and, to date, neither the Delaware court nor the New York court have indicated that they would dismiss any of the claims or defences. Basis the legal view obtained by the Company/ Group, the litigation may take another one to two years to settle. Till such time, there are no dues/ claims payable by the Company/ Group. However, the Company/ Group is unable to determine an assessment on the likely outcome of the litigations (including the associated claims and expenses) and accordingly any impact on these financial statements is currently unascertainable. Further, the Company is not a party to the Delaware proceedings and the guarantee provided by the Company under the Credit Agreement has not been invoked as on date.

The financial statements of the Group have been prepared on the going concern basis considering the below:
- Continued operations for 18+ months from the reporting date on the basis of funds available as at March 31, 2022 and additional funds raised subsequent to the year-end aggregating to Rs.3,299.71 Crores.
- Potential sale of a subsidiary
- Non-binding term sheets with potential investors to raise funds.

In the unlikely event, the TLB loan is required to be repaid by the Group prior to the scheduled maturity, the Board of Directors have approved a plan to settle the same by utilising funds available along with the proceeds from the sale of subsidiaries and raising additional funds (currently non-binding terms are available with the Group).

Outside of repayment of the original loan and fund raise from (which are non-binding), which together are categorised as material uncertain events, management does not foresee any material financial implications for the Company with respect to the TLB.

(ii) The Group has incurred a loss of Rs. 8,104.82 crore during the year ended March 31, 2022 and has accumulated loss of Rs. 13,682.07 crore as at March 31, 2022. The Group has a positive net current asset of Rs. 4,915.77 crore and a positive net worth of Rs. 21,008.03 crore as at March 31, 2022. Subsequent to the year-end, the Company has raised Rs. 3,299.71 from various sources. The Company has taken various measures including cost optimisation, focused growth plan and utilisation of resources to contain the overall cash burn. The Company has non-binding term sheets with potential investors to raise funds and has obtained term sheets from potential buyers towards the sale of a subsidiary. The management has estimated the cash flow requirement for the upcoming 12 months (up to October 2024) and believes that it has necessary resources (including cash/funds available with its subsidiary company) to continue to operate as a going concern. Accordingly, the Company has prepared the financial statements for the year ended March 31, 2022 on a going concern basis.

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

33 **Operating segment**

The Group's Chief Operating Decision-Maker (CODM) is considered to be the Parent's CEO & Managing Director ('MD'). The CODM evaluates the Group's performance on an overall basis. The Group is engaged in the business of providing Educational technology (Edu-tech) products and services which constitutes a single operating segment for the purpose of decision making for allocation of resources and assessing performance. Accordingly, no additional disclosure is required to be provided under Ind AS 108, other than those provided below.

**Entity wide disclosures - information about Geographical areas:**

**(i) Revenue from external customers:**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| India | 3,464.19 | 987.67 |
| USA | 1,058.10 | 795.59 |
| Middle East | 417.80 | 497.00 |
| Australia | 22.08 | |
| UK | 14.17 | |
| Rest of the World | 38.26 | |
| **Total** | **5,014.60** | **2,280.26** |

**(ii) Non-current assets***

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| India | 17,294.35 | 3,959.65 |
| USA | 10,471.05 | 1,888.44 |
| Vietnam | 12.95 | 13.95 |
| Austria | 195.94 | |
| **Total** | **27,974.29** | **5,862.04** |

* Non-current assets exclude financial instruments and deferred taxes.

34 **Related party disclosures**

**(a) Details of related parties**

| Description of relationship | Names of related parties |
|---|---|
| (i) Key Management Personnel (KMP) | Byju Raveendran - Managing Director<br>Riju Ravindran - Director<br>Divya Gokulnath - Director |
| (ii) Relatives of KMP | Deeptha A R |
| (iii) Non-Executive Directors | Ravi Shankar Venkataraman Ganapathy Agraharam<br>Vivian Wu<br>Russell Andrew Dreisenstock |

**Details of related party transactions during the year ended 31 March, 2022**

| Particulars | KMP | Relatives of KMP | Total |
|---|---|---|---|
| **Remuneration (refer note ii below)** | | | |
| Byju Raveendran | 0.73 | - | 0.73 |
| | (0.73) | - | (0.73) |
| Riju Ravindran | 0.80 | - | 0.80 |
| | (0.80) | - | (0.80) |
| Divya Gokulnath | 0.80 | - | 0.80 |
| | (0.80) | - | (0.80) |
| Deeptha A R | - | 0.60 | 0.60 |
| | - | (0.60) | (0.60) |

**Notes:**
(i) Figures in ( ) relate to the financial year 2020-21
(ii) Remuneration does not include Gratuity and Leave encashment which is computed for the Group as a whole.

35 **Loss per share**

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Loss after tax | (8,245.20) | (4,564.38) |
| Adjustments: | | |
| (i) Dividends on convertible preference shares and tax thereon | - | - |
| (ii) Expenses incurred in connection with issue of shares | (28.96) | (6.22) |
| **Loss attributable to equity shareholders** | **(8,274.16)** | **(4,570.60)** |
| Weighted average number of equity shares including effect of conversion of CCCPS for basic EPS | 41,61,657 | 35,02,015 |
| Basic earnings per share (Rs.) | (19,881.89) | (13,051.34) |
| Diluted earnings per share (Rs.)* | (19,881.89) | (13,051.34) |

*Since there is a loss, potential equity shares are not considered as dilutive. Hence diluted EPS is same as basic EPS
(Nominal value per share - Rs. 10)

The incremental shares from assumed conversions (ESOPs, shares committed to be issued as consideration towards acquisitions) have not been disclosed since they have not been included in the calculation of the diluted per-share amounts, because the earnings attributable to equity holders of the parent entity, adjusted for preference dividends and share issue expenses, was negative (ie a loss, rather than profit).

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**36 Income taxes**

(a) As at 31 March 2022, the Group has a net deferred tax asset, on account of unabsorbed depreciation and carried forward loss in the Parent and certain of its subsidiaries. The same has not been recognized in the absence of reasonable certainty of taxable profits in the near future.

(b) **Deferred tax (liabilities)/ assets :**

| Particulars | As at 31 March, 2022 | As at 31 March, 2021 |
|---|---|---|
| **Deferred tax liabilities:** | | |
| Intangible assets | (1,197.92) | (233.49) |
| Others | (8.50) | |
| | **(1,206.42)** | **(233.49)** |
| **Deferred tax assets:** | | |
| Property, plant and equipment | (3.89) | (0.11) |
| Provision for employee benefits | (17.26) | 0.08 |
| Pursuant to acquisition | 18.01 | |
| Others | 50.98 | |
| | **47.84** | **(0.03)** |
| Deferred tax income | - | - |
| Less: Deferred tax asset not recognized | - | - |
| Deferred tax asset, net | - | - |

In absence of reasonable certainty of taxable income in future years, during the year ended 31 March 2022, the Group has created deferred tax asset on unabsorbed depreciation and other items to the extent of deferred tax liability. During the year ended 31 March 2021, the Group had recognized deferred tax asset to the extent of deferred tax liability only.

(c) Recognition of deferred tax asset to the extent of deferred tax liability

| **Balance sheet** | 31 March 2022 | 31 March 2021 |
|---|---|---|
| Deferred tax asset | 47.84 | - |
| Deferred tax liabilities | 1,206.42 | 233.52 |

(d) **Movement in temporary differences**

**Deferred Tax Liabilities**

| Particulars | Balances as at April 1, 2021 | Additions through business combination (Refer note 39-48) | Recognized in Profit or loss during 2021-22 charge / (credit) | Recognized in OCI during 2021-22 | Other Adjustments | Balances as at March 31, 2022 |
|---|---|---|---|---|---|---|
| Property, plant and equipment | (0.11) | - | 0.10 | - | 0.01 | - |
| On Intangibles recognized on consolidation | (233.49) | (1,078.66) | 131.71 | (17.49) | 0.01 | (1,197.92) |
| Provision for employee benefits | 0.08 | - | - | - | (0.08) | (0.00) |
| Others | - | (37.83) | 29.33 | - | - | (8.50) |
| **Total** | **(233.52)** | **(1,116.49)** | **161.14** | **(17.49)** | **(0.06)** | **(1,206.42)** |

| Particulars | Balances as at April 1, 2020 | Additions through business combination | Recognized in Profit or loss during 2020-21 charge / (credit) | Recognized in OCI during 2020-21 | Other Adjustments | Balances as at March 31, 2021 |
|---|---|---|---|---|---|---|
| Property, plant and equipment | (0.54) | - | 0.43 | - | - | (0.11) |
| On Intangibles recognized on consolidation | (77.11) | (191.25) | 34.87 | - | - | (233.49) |
| Provision for employee benefits | 0.03 | - | 0.05 | - | - | 0.08 |
| Others | 0.02 | - | - | (0.02) | - | - |
| **Total** | **(77.60)** | **(191.25)** | **35.35** | **(0.02)** | **-** | **(233.52)** |

**Deferred Tax Assets**

| Particulars | Balances as at April 1, 2021 | Additions through business combination | Recognized in Profit or loss during 2021-22 charge / (credit) | Recognized in OCI during 2021-22 | Other Adjustments | Balances as at March 31, 2022 |
|---|---|---|---|---|---|---|
| Property, plant and equipment | - | (5.79) | 1.91 | - | (0.01) | (3.89) |
| Pursuant to acquisition | - | (15.32) | (1.94) | - | - | (17.26) |
| Provision for employee benefits | - | 5.43 | 11.68 | 0.92 | (0.02) | 18.01 |
| Others | - | 59.03 | (8.03) | 0.19 | (0.21) | 50.98 |
| **Total** | **-** | **43.35** | **3.62** | **1.11** | **(0.24)** | **47.84** |

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

(e) **Income tax expense**

| | 31 March 2022 | 31 March 2021 |
|---|---|---|
| - Current tax taxes | 39.95 | 0.65 |
| - Adjustments in respect of current income tax of previous year | | |
| - Deferred tax charge / (income) | (164.76) | (35.35) |
| **Income tax expense reported in the statement of profit or loss** | **(124.81)** | **(34.70)** |

(f) **Income tax expense charged to OCI**

| | 31 March 2022 | 31 March 2021 |
|---|---|---|
| Net loss/(gain) on remeasurements of defined benefit plans | 0.90 | 0.02 |
| **Income tax charged to OCI** | **0.90** | **0.02** |

(g) **Reconciliation of effective tax rate**

| Particulars | As at 31 March, 2022 | As at 31 March, 2021 |
|---|---|---|
| Loss before tax | (8,370.01) | (4,599.08) |
| Tax using the group's domestic tax rate (Current year 25.168 % and Previous Year 25.168%) | (2,107.57) | (1,158.05) |
| On impact of Ind AS 116 | - | 39.15 |
| Expenses not deductible for tax purpose | 24.03 | - |
| Unrecognized deferred taxes for the year | 1,958.73 | 1,083.55 |
| Others | - | 0.65 |
| Current and deferred tax expense reported in the Consolidated Statement of Profit and Loss | (124.81) | (34.70) |

37 **Transfer Pricing**

The Group has established a comprehensive system of maintenance of information and documents as required by the transfer pricing legislation under Sections 92-92F of the Income-tax Act. Since the law requires existence of such information and documentation to be contemporaneous in nature, the Group is in the process of updating the documentation for the international as well as specified domestic transactions (if applicable) entered into with the associated enterprise during the financial year and expects such records to be in existence latest by the end of the stipulated timeline, as required by law. The Management of the Group is of the opinion that its international as well as specified domestic transactions (if any) are at arm's length so that the aforesaid legislation will not have any impact on the financial statements, particularly on the amount of tax expenses and that of provision for taxation.

MSKA & ASSOCIATES ★ Chartered Accountants ★

*("This space has been intentionally left blank")*

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED

**Notes to the consolidated financial statements for the year ended 31 March 2022**

**(Amount in INR crores, unless otherwise stated)**

**38 Leases**

(i) The following is the break-up of current and non-current lease liabilities

| Particulars | As at March 31, 2022 | As at March 31, 2021 |
|---|---|---|
| Current lease liabilities | 317.22 | 84.81 |
| Non-current lease liabilities | 1,182.29 | 171.12 |
| **Total** | **1,499.51** | **255.93** |

(ii) The following is the movement in the lease liabilities

| Particulars | As at March 31, 2022 | As at March 31, 2021 |
|---|---|---|
| Opening balance | 255.93 | 215.13 |
| Pursuant to acquisitions | 573.88 | - |
| Additions | 857.03 | 121.72 |
| Finance cost accrued during the year | 72.45 | 12.35 |
| Deletions | (4.07) | (6.65) |
| Lease rent concessions | (9.70) | (0.69) |
| Payment of lease liabilities | (246.01) | (85.93) |
| **Closing balance** | **1,499.51** | **255.93** |

(iii) Amounts recognised in the statement of profit and loss

Rental expense recorded as short-term leases in current year amounts to Rs. 76.34 Crores (31 March 2021 : Rs. 50.79 Crores).

*("This space has been intentionally left blank")*

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

## 39 Acquisition of Whitehat Education Technology Private Limited ("Whitehat Jr")

On 5 August 2020, the Parent entered into Share Purchase Agreement ("SPA") and Share Holders Agreement ("SHA") with Whitehat Jr and its shareholders to acquire equity stake in Whitehat Jr. In accordance with the SPA and SHA, on 10 August 2020 the Parent acquired 73.91% stake for a cash consideration of INR 1,327.43 Crores and thus Whitehat Jr became a subsidiary of the Group. Pursuant to a further rights issue subscribed to by the Parent, the shareholding holding in Whitehat Jr as at 31 March 2021 was 76%. As on the date of acquisition, the Parent had a written put option and purchase call option for the remaining shareholding as per the agreement. The Group recorded a financial liability for the estimated present value of its gross obligation to purchase the non-controlling interest as of the acquisition date in accordance with the share purchase agreement with a corresponding adjustment to equity. The Parent completed the acquisition of the balance stake in Whitehat Jr during the year.

Whitehat Jr is engaged in providing coding classes to the students who belong to the age group of 6 to 17 years. Whitehat Jr has a unique feature to provide 1:1 online coding classes to students wherein a teacher focuses on a one child at a time. The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill. The primary items that generated this goodwill are the value of the acquired assembled workforce and estimated synergies, neither of which qualify as an amortizable intangible asset.

The purchase price is allocated to assets acquired and liabilities assumed based on the determination of fair values as determined by the Seller on the basis of the valuation report obtained from an independent valuer at the dates of acquisition as follows:

| Particulars | Acquiree's carrying amount | Fair value adjustments | Purchase price allocated |
|---|---|---|---|
| **Assets** | | | |
| Property Plant and Equipment | 0.19 | - | 0.19 |
| Other non current assets | 8.87 | - | 8.87 |
| Cash and cash equivalents | 54.62 | - | 54.62 |
| Other current assets | 54.09 | - | 54.09 |
| **Identified Intangible Assets** | | | - |
| Brand | - | 115.00 | 115.00 |
| Tech platform and content | - | 597.70 | 597.70 |
| Teacher network | - | 32.00 | 32.00 |
| **Total Assets** | **117.77** | **744.70** | **862.47** |
| **Liabilities** | | | |
| Other current liabilities | 328.72 | | 328.72 |
| Other non-current liabilities | 6.18 | | 6.18 |
| Deferred tax liability on intangibles | - | 187.52 | 187.52 |
| **Total Liabilities** | **334.90** | **187.52** | **522.42** |
| Non Controlling Interest's proportionate share in acquiree's net identifiable assets | | | (88.72) |
| Goodwill* | | | 1,076.09 |
| **Total purchase consideration paid in cash** | | | **1,327.42** |

*Goodwill is not tax deductible.

The transaction costs of Rs. 2 Crores related to the acquisition have been included under administrative expenses in the Consolidated Statement of Profit and Loss for the year ended March 31, 2021

If the acquisition had taken place at the beginning of the year, revenue from operations would have been higher by Rs. 61.31 Croress and the loss before tax from operations for the Group from Whitehat Jr would have been higher by Rs. 238.27 Croress.

From the date of acquisition, Whitehat Jr has contributed Rs.326.66 Crores of total revenue and loss of Rs.1,548.76 Crores to the loss before tax from operations of the Group.

MSKA & ASSOCIATES ★ Chartered Accountants ★

*("This space has been intentionally left blank")*

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

## 40 Acquisition of Great Lakes E-Learning Services Private Limited

On 20 July 2021, the Group acquired 100% equity interests in Great Lakes E-Learning Services Private Limited (referred as "Great Learning India") on a going concern basis for a total purchase consideration of Rs. 552.23 Crores includes cash of Rs. 461.16 Crores and settlement of vested stock option granted by Great Learning India to it's employees with fair value of Rs. 91.07 Crores

Great Learning India offers comprehensive, industry-relevant programs across various cutting-edge technology, data and business domains. Great Learning India programs are developed in collaboration with the world's foremost academic institutions. The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill.

The Group accounted for this acquisition under the acquisition method and the assets acquired and liabilities assumed have been recorded at their fair value as determined on the basis of the report obtained from an independent valuer.

The purchase price allocation for Great Lakes E-Learning Services Private Limited based upon determination of fair values at the date of acquisition is as follows:

| Particulars | Acquiree's carrying amount | Fair value adjustments | Purchase price allocated |
|---|---|---|---|
| Assets | | | |
| Property Plant and Equipment | 5.98 | - | 5.98 |
| Intangible assets | 0.15 | - | 0.15 |
| Other non current assets | 23.28 | - | 23.28 |
| Cash and cash equivalents | 15.55 | - | 15.55 |
| Other current assets | 32.24 | - | 32.24 |
| Total liabilities | 211.68 | 42.11 | 253.79 |
| **Acquired intangible assets*** | | | |
| Brand | | 50.00 | 50.00 |
| University partnership | - | 134.90 | 134.90 |
| Faculty/Mentor Network | - | 3.00 | 3.00 |
| Internally developed technology | - | 8.90 | 8.90 |
| Deferred tax liabilities on intangibles | | | 51.17 |
| Goodwill** | | | 492.12 |
| **Total purchase price** | | | **461.16** |

*Economic useful of the asset is 5-10 years

**Goodwill is not tax deductible.

If the acquisition had taken place at the beginning of the year, revenue from operations would have been Rs. 312.72 Crores and the loss before tax from operations for the Group from Great Learning India would have been Rs. 317.00 Crores.

From the date of acquisition, Great Learning India has contributed Rs. 219.50 Crores of total revenue and loss of Rs. 193.74 Crores to the loss before tax from operations of the Group.

*("This space has been intentionally left blank")*

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

**41 Acquisition of Grade Stack Learning Private Limited**

During the year, the Company has entered into Share Purchase and Subscription Agreement to acquire 100% equity stake in Grade Stack Learning Private Limited ("Grade Stack").

On 03 September 2021, the Company had acquired 51.10% of voting rights (comprising 29.79% of total outstanding equity stake) for a cash consideration of Rs 131.91 Crores and adjustment arising from settlement of stock options granted by Grade stack to its employees amounting to Rs.2.08 Crores.

As per the merger framework agreement, pursuant to merger of Grade Stack with the Company, the Company has an obligation to purchase remaining 70.21% equity interests from non-controlling shareholders of Grade stack for a consideration by way of issue of 13,270 Series F CCCPS of the Company having fair value of Rs 378.29 Crores which is recorded as other equity.

Think and Learn has provided a loan of INR 48 crore to Grade Stack before the acquisition. The loan amount payable by Grade Stack to Think and Learn pre-acquisition is considered as part of purchase consideration and fair value of the loan is not taken over as part of total liabilities taken over on the acquisition date.

The transaction costs of Rs 0.01 Crores related to the acquisition have been included in the Consolidated Statement of Profit and Loss for the year ended March 31, 2022.

Grade Stack is engaged in the business of providing education and learning software's on web tablets and mobile phones. The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill. The primary items that generated this goodwill are the value of the acquired assembled workforce and estimated synergies, neither of which qualify as an amortizable intangible asset.

The purchase price is allocated to assets acquired and liabilities assumed based on the determination of fair values as determined by the Seller on the basis of the valuation report obtained from an independent valuer at the dates of acquisition as follows:

The purchase price allocation for Grade Stack Learning Private Limited based upon determination of fair values at the date of acquisition is as follows:

| Particulars | Acquiree's carrying amount | Fair value adjustments | Purchase price allocated |
|---|---|---|---|
| Total assets | | | |
| Property Plant and Equipment | 4.69 | | 4.69 |
| Intangible assets | 0.07 | | 0.07 |
| Other non current assets | 2.13 | | 2.13 |
| Cash and cash equivalents | 115.33 | | 115.33 |
| Other current assets | 6.45 | | 6.45 |
| Total liabilities | 187.05 | (48.00) | 139.05 |
| **Acquired intangible assets*** | | | |
| Intangible assets | | | 153.80 |
| Brand / Trade name | | 16.40 | |
| Teacher Network | | 2.80 | |
| Content | | 97.10 | |
| Internally Developed Technology | | 37.50 | |
| Deferred tax liabilities on intangibles | | | 39.99 |
| Goodwill** | | | 452.69 |
| **Total purchase price** | | | **556.12** |

*Economic useful of the asset is 5 years
**Goodwill is not tax-deductible.

If the acquisition had taken place at the beginning of the year, revenue from operations would have been Rs. 49.11 Crores and the loss before tax from operations for the Group from Grade Stack would have been Rs. 133.08 Crores.

From the date of acquisition, Grade Stack has contributed Rs. 30.36 Crores of total revenue and loss of Rs. 77.76 Croress to the loss before tax from operations of the Group.

*("This space has been intentionally left blank")*

MSKA & ASSOCIATES ★ Chartered Accountants ★

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

## 42 Acquisition of Epic! Creations, Inc.

On 16 November 2021, the Group acquired 100% equity interests in Epic Creations, Inc. (referred as "Epic") for a total consideration of Rs. 4,235.23 Crores. The purchase consideration includes cash of Rs 643.78 Crores and 125,984 Series F CCCPS with a fair value of Rs. 3,591.45 Crores as on the date of acquisition

Epic provides digital books, audio/video books for kids aged between 2-12 on a monthly/annual subscription basis.

The transaction costs of Rs. 20.76 Crores related to the acquisition have been included in the Consolidated Statement of Profit and Loss for the year ended March 31, 2022.

The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill. The primary items that generated this goodwill are the value of the acquired assembled workforce and estimated synergies, neither of which qualify as an amortizable intangible asset

The group accounted for this acquisition under the acquisition method and the assets acquired and liabilities assumed have been recorded at their fair value as determined on the basis of the report obtained from an independent valuer.

The purchase price allocation for Epic! Creations,Inc. based upon determination of fair values at the date of acquisition is as follows:

| Particulars | Acquiree's carrying amount | Fair value adjustments | Purchase price allocated |
|---|---|---|---|
| Assets** | | | |
| Property Plant and Equipment | 2.25 | | 2.25 |
| Intangible assets | 38.61 | | 38.61 |
| Other non current assets | | | - |
| Cash and cash equivalents | 93.20 | | 93.20 |
| Other current assets | 84.89 | | 84.89 |
| Total liabilities | 297.41 | | 297.41 |
| **Acquired intangible assets*** | | | |
| Brand | | 469.06 | 469.06 |
| Publisher relationship | | 186.13 | 186.13 |
| Internally developed technology | | 714.75 | 714.75 |
| Deferred tax liabilities on intangibles | | | 340.71 |
| Goodwill** | | | 3,284.46 |
| **Total purchase price** | | | **4,235.23** |

*Economic useful of the asset is 5-10 years
**Goodwill is not tax-deductible.

If the acquisition had taken place at the beginning of the year, revenue from operations would have been Rs. 418.63 Crores and the loss before tax from operations for the Group from Epic! Creations,Inc. would have been Rs. 403.16 Crores

From the date of acquisition, Epic! Creations,Inc. has contributed Rs. 157.79 Crores of total revenue and loss of Rs. 61.39 Crores to the loss before tax from operations of the Group.

MSKA & ASSOCIATES ★ Chartered Accountants ★

*("This space has been intentionally left blank")*

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022
(Amount in INR crores, unless otherwise stated)

## 43 Acquisition of Toppr Technologies Private Limited

During the year, the Company has entered into share purchase agreement, share swap agreement and Merger framework agreement to acquire 100% equity interest in Toppr technologies private limited ("Toppr"). Toppr is engaged in the business of providing online practice and test packages that helps students prepare for IIT JEE, PMT, School Boards and other competitive exams.

On 31 July 2021, the Company had acquired 69.85% equity interest in Toppr for total consideration Rs. 883.02 crore which includes cash of Rs 387.02 Crores, issue of 17,036 Series F CCCPS having fair value of Rs 485.65 Crores as on the date of acquisition and settlement of vested stock option granted by Toppr to it's employees with fair value of Rs. 10.35 Crores.

As per the merger framework agreement, pursuant to merger of Toppr with the Company, the Company has an obligation to purchase remaining 30.15% equity interests from non-controlling shareholders of Toppr for a consideration by way of issue of 15,796 Series F CCCPS of the Company having fair value of Rs 450.3 Crores which is recorded as other equity.

Think and Learn has provided a loan of INR 80 crore to Toppr before the acquisition. The loan amount payable by Toppr to Think and Learn pre-acquisition is considered as part of purchase consideration and fair value of the loan is not taken over as part of total liabilities taken over on the acquisition date.

The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill. The primary items that generated this goodwill are the value of the acquired assembled workforce and estimated synergies, neither of which qualify as an amortizable intangible asset.

The transaction costs of Rs 0.57 Crores related to the acquisition have been included in the Consolidated Statement of Profit and Loss for the year ended March 31, 2022.

The purchase price is allocated to assets acquired and liabilities assumed based on the determination of fair values as determined by the Seller on the basis of the valuation report obtained from an independent valuer.

The purchase price allocation for Toppr Technologies Private Limited based upon determination of fair values at the date of acquisition is as follows.

| Particulars | Acquiree's carrying amount | Fair value adjustments | Purchase price allocated |
|---|---|---|---|
| Assets | | | |
| Property Plant and Equipment | 1.77 | | 1.77 |
| Intangible assets | 0.05 | | 0.05 |
| Other non current assets | 62.52 | | 62.52 |
| Cash and cash equivalents | 2.41 | | 2.41 |
| Other current assets | 8.92 | | 8.92 |
| Total liabilities | 192.70 | (80.00) | 112.70 |
| **Acquired intangible assets*** | | | |
| Brand/Tradename | | 72.90 | 72.90 |
| Toppr platform | | 162.80 | 162.80 |
| Content | | 210.00 | 210.00 |
| Student network | | 66.20 | 66.20 |
| Deferred tax liabilities on intangibles | | | 133.09 |
| Non controlling interest | | | - |
| Goodwill** | | | 1,071.54 |
| **Total purchase price** | | | **1,413.32** |

*Economic useful of the asset is 5 years
**Goodwill is not tax-deductible

If the acquisition had taken place at the beginning of the year, revenue from operations would have been Rs. 94.23 Crores and the loss before tax from operations for the Group from Toppr would have been Rs. 180.73 Crores.

From the date of acquisition, Toppr has contributed Rs. 82.72 Crores of total revenue and loss of Rs. 104.35 Croress to the loss before tax from operations of the Group.

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**44 Acquisition of Neuron Fuel, Inc (Tynker)**

On 2 December 2021, the Group acquired 100% equity interests in Tynker for a total consideration of Rs. 1,153.07 Crores which includes cash of Rs 298.19 Crores and adjustment arising from settlement of stock options granted by Neuron Fuel Inc to its employees amounting to Rs.2.56 Crores and consideration by way of issue of 30,078 Series F CCCPS having fair value of Rs 857.44 Crores as on date of acquisition.

Tynker is an online coding platform that offers a platform designed to teach children programming skills and computational thinking.

The transaction costs of Rs 0.63 Crores related to the acquisition have been included in the Consolidated Statement of Profit and Loss for the year ended March 31, 2022.

The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill. The primary items that generated this goodwill are the value of the acquired assembled workforce and estimated synergies, neither of which qualify as an amortizable intangible asset.

The Group accounted for this acquisition under the acquisition method and the assets acquired and liabilities assumed have been recorded at their fair value as determined on the basis of the report obtained from an independent valuer.

The purchase price allocation for Tynker based upon determination of fair values at the date of acquisition is as follows:

| Particulars | Acquiree's carrying amount | Fair value adjustments | Purchase price allocated |
|---|---|---|---|
| Assets | | | |
| Property Plant and Equipment | - | - | - |
| Trade receivable | 2.27 | | 2.27 |
| Cash and cash equivalents | 53.91 | | 53.91 |
| Other current assets | 0.26 | | 0.26 |
| Total liabilities | 43.78 | | 43.78 |
| **Acquired intangible assets*** | | | |
| Brand | | 22.50 | 22.50 |
| Intellectual property | | 232.50 | 232.50 |
| Deferred tax liabilities on intangibles | | | 68.85 |
| Goodwill** | | | 954.26 |
| **Total purchase price** | | | **1,153.07** |

*Economic useful of the asset is 5-10 years

**Goodwill is not tax-deductible.

If the acquisition had taken place at the beginning of the year, revenue from operations would have been Rs. 21.03 Croress and the loss before tax from operations for the Group from Tynker would have been Rs. 6.92 Croress

From the date of acquisition, Tynker has contributed Rs. 16.76 Crores of total revenue and loss of Rs. 6.29 Croress to the loss before tax from operations of the Group.

*("This space has been intentionally left blank")*

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

## 45 Acquisition of Aakash Educational Services Limited

During the year, the Company has entered into share purchase agreement(SPA) and merger framework agreement to acquire 100% equity stake in Aakash Educational Services Limited ("Aakash").

On 21 June 2021, the Company acquired 29.5% controlling equity interests in Aakash for a cash consideration of Rs.1,947.64 Crores and adjustment arising from settlement of stock options granted by Aakash to its employees amounting to Rs.45.55 Crores. The Company controls Aakash through it's rights obtained through SPA and merger framework agreement on payment of the above mentioned consideration.

In accordance with the share purchase agreements the Company has a obligation to purchase ~40.2% equity interest held by selling shareholders for a cash consideration of Rs 2,839.29 Crores on first anniversary from the date of acquisition. The Group recorded a financial liability for the estimated present value of its gross obligation to purchase the shares as of the acquisition date. This estimated present value of the gross obligation to purchase the ~40.2% equity interest is valued at Rs. 2,689.03 crores at the date of acqusition.

As per the merger framework agreement, pursuant to merger of Aakash with the Company, the Company has an obligation to purchase remaining 30.3% equity interests from non-controlling shareholders of Aakash for a consideration by way of issue of 84,595 Series F CCCPS of the Company having fair value of Rs 2,007.74 Crores which is recorded as other equity.

The transaction costs of Rs 2.60 Crores related to the acquisition have been included in the Consolidated Statement of Profit and Loss for the year ended March 31, 2022.

Aakash is engaged in the business of providing test preparatory and repeater courses to students of class 8 to class 12 under three programs Aakash Medical, Aakash Foundation and Aakash IIT-JEE and delivers its services through classroom, digital and distance learning programs.

The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill. The primary items that generated this goodwill are the value of the acquired assembled workforce and estimated synergies, neither of which qualify as an amortizable intangible asset.

The Group accounted for this acquisition under the acquisition method and the assets acquired and liabilities assumed have been recorded at their fair value as determined on the basis of the report obtained from an independent valuer.

The purchase price allocation for Aakash based upon determination of fair values at the date of acquisition is as follows:

| **Particulars** | **Acquiree's carrying amount** | **Fair value adjustments** | **Purchase price allocated** |
|---|---|---|---|
| Assets | | | |
| Property Plant and Equipment | 115.27 | 3.34 | 118.61 |
| Building | | - | - |
| Intangible assets | 82.57 | (66.49) | 16.09 |
| Other non current assets | 677.29 | 4.82 | 682.11 |
| Cash and cash equivalents | 15.74 | - | 15.74 |
| Other current assets | 411.64 | - | 411.64 |
| Total liabilities | 1,357.40 | 8.09 | 1,365.49 |
| **Acquired intangible assets*** | | | |
| Tradename | | 890.90 | |
| Branch Network | | 234.90 | |
| Crystal Platform | | 24.20 | |
| Franchise Agreement | | 119.00 | 1,269.00 |
| Deferred tax liabilities on intangibles | | | 319.38 |
| Goodwill** | | | 5,770.54 |
| **Total purchase price (Including consideration payable)** | | | **6,598.86** |

*Economic useful of the asset is 5-10 years
**Goodwill is not tax-deductible.

If the acquisition had taken place at the beginning of the year, revenue from operations would have been Rs. 1,452.24 Crores and the loss before tax from operations for the Group from Aakash would have been Rs. 54.77 Croress.

From the date of acquisition, Aakash has contributed Rs. 1,277.64 Crores of total revenue and profit of Rs. 126.72 Crores to the loss before tax from operations of the Group.

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**46 Acquisition of Geogebra GMBH**

On 21 March 2022, the Group acquired 50% equity interests in Geogebra GMBH ("GeoGebra") for a cash consideration of Rs. 96.87 Crores.

The Company has an obligation as per the share swap agreement ("SSA") to purchase remaining 50% equity interests from selling shareholders of Geogebra GMBH for a consideration by way of issue of 3,157 Series F CCCPS of the Company having fair value of Rs 90.00 Crores which is recorded as other equity.

GeoGebra was founded in 2013 and is based in Linz, Austria. GeoGebra provides mathematics software that facilitates teaching and learning worldwide. GeoGebra supports 400+ STEM education, teaching and learning, and service providers worldwide such as Pearson, Google Education, Apple Education, and Office 365. GeoGebra has games and interactive learning tools through which students can learn STEM subjects called classroom resources.

The transaction costs of Rs 0.01 Crores related to the acquisition have been included in the Consolidated Statement of Profit and Loss for the year ended March 31, 2022.

The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill. The primary items that generated this goodwill are the value of the acquired assembled workforce and estimated synergies, neither of which qualify as an amortizable intangible asset.

The Group has accounted for this acquisition under the acquisition method, and the assets acquired and liabilities assumed have been recorded at their fair value as determined on the basis of the report obtained from an independent valuer.

The purchase price allocation for Geogebra GMBH based upon determination of fair values at the date of acquisition is as follows:

| Particulars | Acquiree's carrying amount | Fair value adjustments | Purchase price allocated |
|---|---|---|---|
| Asset | | | |
| Property Plant and Equipment | 0.49 | - | 0.49 |
| Intangible assets | - | - | - |
| Other non current assets | - | - | - |
| Cash and cash equivalents | 5.72 | - | 5.72 |
| Other current assets | 3.09 | - | 3.09 |
| Total liabilities | 7.39 | - | 7.39 |
| **Acquired intangible assets*** | | | |
| Intangibles | - | 37.00 | 37.00 |
| Deferred tax liabilities on intangibles | - | - | 9.25 |
| Goodwill** | | | 157.21 |
| **Total purchase price** | | | **186.87** |

*Economic useful of the asset is 5-10 years
**Goodwill is not tax-deductible.

If the acquisition had taken place at the beginning of the year, revenue from operations would have been Rs 8.84 Croress and the loss before tax from operations for the Group from Geogebra would have been Rs. 0.22 Crores

From the date of acquisition, Geogebra has contributed Rs. 0.25 Crores of total revenue and loss of Rs. 0.26 Croress to the loss before tax from operations of the Group.

MSKA & ASSOCIATES ★ Chartered Accountants ★

*("This space has been intentionally left blank")*

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**47 Acquisition of Weblength Infonet Private Limited**

During the year, Great Learning India has entered into share purchase agreement (SPA) to acquire 100% equity stake in Weblength Infonet Private Limited.

On 8 February 2022, Great Learning India has acquired 91.97% equity stake in Superset for a cash consideration of Rs 132.19 Crores. In accordance with the share purchase agreement Great Learning India has a obligation to purchase remaining 8.03% equity interest held by non-controlling shareholders for a cash consideration of Rs 11.54 Crores. The Group recorded a financial liability for the estimated present value of its gross obligation to purchase the remaining shares as of the acquisition date at Rs. 10.96 Crores.

The transaction costs of Rs 4.89 Crores related to the acquisition have been included in the Consolidated Statement of Profit and Loss for the year ended March 31, 2022.

The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill. The primary items that generated this goodwill are the value of the acquired assembled workforce and estimated synergies, neither of which qualify as an amortizable intangible asset.

The Group has accounted for this acquisition under the acquisition method, and the assets acquired and liabilities assumed have been recorded at their fair value as determined on the basis of the report obtained from an independent valuer.

The purchase price allocation for Weblength Infonet Private Limited based upon determination of fair values at the date of acquisition is as follows:

| Particulars | Acquiree's carrying amount | Fair value adjustments | Purchase price allocated |
|---|---|---|---|
| Total Assets | | | |
| Property Plant and Equipment | 0.61 | - | 0.61 |
| Intangible assets | 1.49 | (1.49) | - |
| Cash and cash equivalents | 6.94 | - | 6.94 |
| Other assets | 4.51 | - | 4.51 |
| Total liabilities | 6.20 | - | 6.20 |
| **Acquired intangible assets*** | | | |
| Trade name | 11.51 | - | 11.51 |
| Developed technology | 17.79 | - | 17.79 |
| Deferred tax liabilities on intangibles | - | - | 7.23 |
| Goodwill** | | | 115.22 |
| **Total purchase price** | | | **143.15** |

*Economic useful of the asset is 5 years.
**Goodwill is not tax-deductible.

If the acquisition had taken place at the beginning of the year, revenue from operations would have been Rs. 10.44 Crores and the loss before tax from operations for the Group from Superset would have been Rs. 5.59 Crores

From the date of acquisition, Superset has contributed Rs. 1.71 Crores of total revenue and loss of Rs. 2.35 Croress to the loss before tax from operations of the Group.

MSKA & ASSOCIATES Chartered Accountants

*("This space has been intentionally left blank")*

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

### 48 Acquisition of Great Learning Education Pte. Ltd

On 22 July 2021, Byjus Pte limited (an wholly owned subsidiary of Think and Learn) acquired 56.5% equity interest in Great Learning Education Pte. Ltd ("GL Singapore") for cash consideration of Rs. 590.29 Crores and a contingent consideration based on certain performance targets with an estimated fair value of Rs. 612.51 Crores as on the date of acquisition. The determination of contingent consideration is based on performance targets as set out in the share purchase agreement.

Further, on 26 July 2021, the Company has acquired 35.7% equity interest in GL Singapore pursuant to a share swap agreement by way of issue of 29,324 Series F CCCPS having a fair value of Rs 835.94 Crores.

GL India has provided a services to GL Pte and an amount of INR 7 crore is payable by Great Learning PTE before the acquisition. The amount payable by GL PTE to GL India pre-acquisition is considered as part of purchase consideration and fair value of the liability is not taken over as part of total liabilities taken over on the acquisition date.

The acquisition of non-controlling interest is dependent on payment of contingent consideration based on certain performance targets in a manner as set out in the share purchase agreement. The Group recorded a financial liability for the estimated present value of its gross obligation to purchase the remaining shares as of the acquisition date.

GL Singapore is a ed-tech company engaged in the business for professional and higher education. It offers comprehensive, industry relevant programs across various cutting-edge Technology, Data and Business domains.

The transaction costs of Rs 1.75 Crores related to the acquisition have been included in the Consolidated Statement of Profit and Loss for the year ended March 31, 2022.

The excess of the purchase consideration paid over the fair value of assets acquired has been attributed to goodwill. The primary items that generated this goodwill are the value of the acquired assembled workforce and estimated synergies, neither of which qualify as an amortizable intangible asset.

The group accounted for this acquisition under the acquisition method and the assets acquired and liabilities assumed have been recorded at their fair value as determined on the basis of the report obtained from an independent valuer.

The purchase price allocation for GL PTE based upon determination of fair values at the date of acquisition is as follows:

| Particulars | Acquiree's carrying amount | Fair value adjustments | Purchase price allocated |
|---|---|---|---|
| Total Assets | | | |
| Cash and cash equivalents | 54.44 | - | 54.44 |
| Other assets | 21.76 | - | 21.76 |
| Total liabilities | 118.00 | 0.38 | 118.38 |
| **Acquired intangible assets*** | | | |
| Brand | - | 74.37 | 74.37 |
| University Partner Relationship | - | 609.82 | 609.82 |
| Deferred tax liabilities on intangibles | | | 116.31 |
| NCI | 43.01 | - | 43.01 |
| Goodwill** | | | 1,563.05 |
| **Total purchase price** | | | **2,045.74** |

*Economic useful of the asset is 5-10 years
**Goodwill is not tax-deductible.

If the acquisition had taken place at the beginning of the year, revenue from operations would have been Rs. 278.81 Crores and the loss before tax from operations for the Group from GL PTE would have been Rs. 292.48 Crores.

From the date of acquisition, GL PTE has contributed Rs. 196.28 Crores of total revenue and loss of Rs. 23.74 Crores to the loss before tax from operations of the Group.

*("This space has been intentionally left blank")*

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**49 Capital management**

The Group manages its capital to ensure that it will be able to continue as a going concern (also refer note 32(c)) while maximising the return to stakeholders through the optimization of the debt and equity balance. The capital structure of the Group consists of borrowings and lease liabilities as indicated in Notes 17 and 18, respectively and total equity as indicated in Notes 15 and 16. The Board of Directors of the Group reviews the capital structure on a periodical basis. The Group manages its capital structure and makes adjustments in the light of changes in economic environment and the requirements of the financial covenants.

The capital structure is as follows:

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Total equity attributable to the shareholders of the Group | 21,008.03 | 7,544.61 |
| Equity as a percentage of total capital employed | 64.42% | 82.43% |
| Short term borrowings | 1,273.42 | 1,351.81 |
| Lease liabilities (including current portion of lease liabilities) | 1,499.51 | 255.93 |
| Non-current borrowings (including current maturities) | 8,828.65 | - |
| **Total borrowings** | **11,601.58** | **1,607.74** |
| Borrowing as a percentage of total capital employed | 0.36 | 0.18 |
| **Total capital employed** | **32,609.61** | **9,152.35** |

**Gearing Ratio**

The Group monitors capital on the basis of the following gearing ratio:

Net debt (Total borrowings net of cash and cash equivalents) divided by Total equity (as shown in Balance sheet)

The gearing ratio at the end of the reporting period was as follows:

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Borrowings | 10,102.07 | 1,351.81 |
| Cash and cash equivalents | (4,301.26) | (2,675.43) |
| **Adjusted Net Debt (A)** | **5,800.81** | **(1,323.62)** |
| **Total Equity (B)** | **21,008.03** | **7,544.61** |
| **Total capital** | **26,808.84** | **6,220.99** |
| **Gearing ratio** | **0.22** | |

Note: Since net debt is negative gearing ratio is not relevant for previous year

**50 Financial instruments - Fair value and risk management**

**A. Accounting classification and fair values**

Fair Value

The fair value of current investments, cash and cash equivalents, other bank balances, trade receivables, loans, other financial assets, trade payables, lease liabilities, other financial liabilities and borrowings approximate their carrying amount largely due to short term nature of these instruments.

| Particulars | Note No | As at 31 March 2022 | | | As at 31 March 2021 | | |
|---|---|---|---|---|---|---|---|
| | | Carrying amount | | | Carrying amount | | |
| | | FVTPL | Amortised cost | Total | FVTPL | Amortised cost | Total |
| **Financial assets** | | | | | | | |
| Loans (current and non-current) | 7 | - | 4.13 | 4.13 | - | 33.05 | 33.05 |
| Trade receivables | 12 | - | 654.87 | 654.87 | - | 377.09 | 377.09 |
| Cash and cash equivalents | 13 (a) | - | 4,301.26 | 4,301.26 | - | 2,675.43 | 2,675.43 |
| Bank balances other than above | 13 (b) | - | 765.95 | 765.95 | - | 440.92 | 440.92 |
| Other financial assets (current and non-current) | 8 | - | 430.34 | 430.34 | - | 559.88 | 559.88 |
| Investments in mutual funds (unquoted) | 14 | 16.63 | - | 16.63 | 967.81 | - | 967.81 |
| Investments in mutual funds (quoted) | 14 | 27.80 | - | 27.80 | - | - | - |
| Investments in preference shares | 14 | 1.45 | - | 1.45 | - | - | - |
| Debt instruments | 14 | 5,761.34 | - | 5,761.34 | - | - | - |
| Investments in bonds (unquoted) - current | 14 | 723.93 | - | 723.93 | 373.94 | - | 373.94 |
| **Financial liabilities** | | | | | | | |
| Borrowings - current | 17 | - | 10,102.07 | 10,102.07 | - | 1,351.81 | 1,351.81 |
| Lease liabilities (current and non-current) | 18 | - | 1,499.51 | 1,499.51 | - | 255.93 | 255.93 |
| Trade payables | 22 | - | 1,665.79 | 1,665.79 | - | 1,065.41 | 1,065.41 |
| Other financial liabilities (current and non-current) | 23 | - | 4,411.08 | 4,411.08 | - | 442.87 | 442.87 |

**Fair value hierarchy**

| Particulars | Note No | As at 31 March 2022 | | | As at 31 March 2021 | | |
|---|---|---|---|---|---|---|---|
| | | Fair value | | | Fair value | | |
| | | Level 1 | Level 2 | Level 3 | Level 1 | Level 2 | Level 3 |
| **Financial assets** | | | | | | | |
| Investments in mutual funds (unquoted) - current | 14 | - | 16.63 | - | - | 967.81 | - |
| Investments in mutual funds (quoted) | 14 | 27.80 | - | - | - | - | - |
| Investments in preference shares | 14 | - | 1.45 | - | - | - | - |
| Debt instruments | 14 | 5,761.34 | - | - | - | - | - |
| Investments in bonds (unquoted) - current | 14 | - | 723.93 | - | - | 373.94 | - |

MSKA & ASSOCIATES * Chartered Accountants *

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**Measurement of fair values:**

(a) The Management assessed that loans, trade receivables, cash and cash equivalents, other bank balances, other financial assets, borrowings, trade payables, lease liabilities and other financial liabilities approximate their carrying amounts largely due to short term maturities of these instruments.

(b) The fair values of Mutual funds are based on net asset value at the reporting date. The fair values of Bonds are based on fund statements.

**B. Financial risk management**

**i. Financial risk management**
The Group's activities expose it to a variety of financial risks: credit risk, liquidity risk, foreign currency risk and interest rate risk. The Board of Directors identify and evaluate business risks and challenges across the Group. The responsibility of developing and monitoring risk vests with the Board of Directors. The Group's focus is to foresee the unpredictability of financial markets and seek to minimize potential adverse effects on it's financial performance. The Group's exposure to credit risk is influenced mainly by the individual characteristic of each customer.

**ii. Credit risk**
Credit risk refers to the risk that the counterparty will default on its contractual obligations resulting in financial loss to the Group. Credit risk arises principally from the Group's receivables from customers. We believe that the realizability of the receivables, modification to credit standards, collection practices and other related policies may impact the allowance for doubtful accounts. Refer note 12 for disclosure for trade receivables.

Credit risk on liquid funds is limited because the counterparties are banks and companies with high credit-ratings assigned by credit-rating agencies.

**iii. Liquidity risk**
Liquidity risk is the risk that the Group will encounter difficulty in meeting the obligations associated with its financial liabilities that are settled by delivering cash or another financial asset. The Group invests surplus funds, including from those from investing activities by others into the Group, from time-to-time in various short-term instruments. It manages liquidity by maintaining adequate reserves funding facilities from banks and financial institutions and monitoring cash flows.

The following table provides details regarding the undiscounted contractual maturities of significant financial liabilities at the reporting date:

| Particulars | As at 31 March 2022 | | | |
|---|---|---|---|---|
| | Carrying amount | Less than 1 year | 1-2 years | More than 2 years |
| Lease liabilities | 1,499.51 | 402.19 | 330.05 | 1,098.57 |
| Borrowings | 10,102.07 | 1,273.42 | 34.69 | 8,793.96 |
| Trade payables | 1,665.79 | 1,664.95 | 0.84 | - |
| Other financial liabilities | 4,411.08 | 3,845.04 | 278.73 | 287.31 |
| **Total** | **17,678.45** | **7,185.60** | **644.31** | **10,179.84** |

| Particulars | As at 31 March 2021 | | | |
|---|---|---|---|---|
| | Carrying amount | Less than 1 year | 1-2 years | More than 2 years |
| Lease liabilities | 255.93 | 88.03 | 71.78 | 113.80 |
| Borrowings | 1,351.81 | 1,351.81 | - | - |
| Trade payables | 1,065.41 | 1,065.41 | - | - |
| Other financial liabilities | 442.87 | 442.87 | - | - |
| **Total** | **3,116.02** | **2,948.12** | **71.78** | **113.80** |

Information about the corporate guarantees issued by the Company is included in note 32

**iv. Market risk**
The market risk that the Group is exposed to are as follows:

Market risk is the risk that the fair value of future cash flows of a financial instrument will fluctuate because of changes in market prices. Market risk comprises three types of risk: interest rate risk, currency risk and other price risk, such as equity price risk. Financial instruments affected by market risk include borrowings and other financial instruments (witholding derivatives).

MSKA & ASSOCIATES * Chartered Accountants *

Think and Learn Pvt. Ltd. Bangalore

**THINK & LEARN PRIVATE LIMITED**
**Notes to the consolidated financial statements for the year ended 31 March 2022**
**(Amount in INR crores, unless otherwise stated)**

**a) Currency risk**
The Group's foreign exchange risk arises from its foreign currency revenues and expenses (primarily denominated in USD). The summary quantitative data about the Group's exposure to currency risk (based on notional amounts) is reported to the management as follows:

| As at 31 March 2022 | USD (in crores) |
|---|---|
| **Financial assets/ (liabilities)** | |
| Trade receivables | 12.58 |
| Other financial assets - Other receivables | 0.03 |
| Cash and cash equivalents | 20.41 |
| Trade payables | (6.56) |
| **Net assets / (liabilities)** | **26.46** |

| As at 31 March 2021 | USD (in crores) |
|---|---|
| **Financial assets/ (liabilities)** | |
| Trade receivables | 6.21 |
| Cash and cash equivalents | 1.83 |
| Trade payables | (0.65) |
| **Net assets / (liabilities)** | **7.39** |

**Sensitivity analysis**
A reasonably possible strengthening /(weakening) of the Rs. against US dollar at 31 March 2022 would have affected the measurement of financial instruments denominated in a foreign currency and affected equity and profit or loss by the amounts shown below. This analysis assumes that all other variables, in particular interest rates, remain constant and ignores any impact of forecast sales and purchases. The Group's sensitivity to a 1% increase and 1% decrease in the INR against the USD is presented below

| Particulars | Impact on profit or (loss) before tax | |
|---|---|---|
| | Strengthening | Weakening |
| **As at 31 March 2022** | | |
| Rs. In Crores (1% movement) | 20.06 | (20.06) |
| **As at 31 March 2021** | | |
| Rs. In Crores (1% movement) | 5.43 | (5.43) |

**b) Interest rate risk**
The Company's exposure to changes in interest rates relates primarily to the Company's outstanding floating rate debt. A major portion of foreign currency debt is linked to international interest rate benchmarks like LIBOR hence subject to interest rate risk.

The exposure of the Company's borrowing (undiscounted) to interest rate changes at the end of the reporting period are as follows:

| Particulars | As at 31 March 2022 | As at 31 March 2021 |
|---|---|---|
| Floating rate borrowings | 9,074.11 | - |

A hypothetical 1% change in respective currency LIBORs and other benchmarks, holding all other variables constant, on the unhedged loans would result in a corresponding increase/decrease in interest cost for the Company on a yearly basis as follows:

| Particulars | Impact on Profit and Loss after tax | | Impact on equity | |
|---|---|---|---|---|
| | As at 31 March 2022 | As at 31 March 2021 | As at 31 March 2022 | As at 31 March 2021 |
| **US Dollar** | | | | |
| Interest rates -increase by 1% in USD interest rate | (90.74) | - | (90.74) | - |
| Interest rates -decrease by 1% in USD interest rate | 90.74 | - | 90.74 | - |

**(c) Price risk**
The primary goal of the Company's investment in equity securities is to hold the investments for the long term for strategic purposes. Certain investments are designated as at FVTPL because their performance is actively monitored and they are managed on a fair value basis.

**51 Money received against share warrants**
In accordance with the Board Resolutions dated 21 December, 2017 and 17 September, 2019 and the share-cum-warrant subscription agreements dated 23 November 2017 and 16 March, 2019 entered into by the Company and Bennett, Coleman & Company Limited (BCCL), the Company issued 5 warrants each for a total consideration of Rs. 1.30 crores and Rs. 3.90 crores respectively which represents 10% of the application money. The warrants may be converted into such number of equity shares on payment of balance amount at any time post completion of 3 years but within a period of 5 years from the date of issue of warrants as determined by the valuation on the date of conversion in accordance with the terms of the agreement. In the event the warrants are not converted into shares within the said period, the Company is eligible to forfeit the amounts received towards the warrants. As on date, BCCL holds 10 share warrants and no conversion has occurred.

MSKA & ASSOCIATES ★ Chartered Accountants ★

*("This space has been intentionally left blank")*

Think and Learn Pvt. Ltd. Bangalore ★

**Think & Learn Private Limited**
**Notes to the consolidated financial statements**
**(Amount in INR crores, unless otherwise stated)**

**52 Share based payments**

During the year ended 31 March 2020, the Group introduced the Employee Stock Option Plan - 2019 ("ESOP 2019") for the benefit of the employees of the Parent and its subsidiaries, as approved by the Board of Directors in its meeting held on 20 August 2019. ESOP 2019 provides for the creation and issue of equity share options that would eventually convert into equity shares of one each in the hands of the employees of the Parent and its subsidiaries. The options are to be granted to the eligible employees as per the eligibility criteria as determined by the Board at its sole discretion. The share options vest as per the terms of the grant and are exercisable from the date of vesting until the earlier of the initial public offer of the shares of the Parent ("IPO") or liquidation event. In the event of an IPO or liquidation event:

(a) all vested options shall be mandatorily exercisable prior to an IPO / liquidation event per the timelines decided by the board or else, such options shall lapse.

(b) all unvested options, shall be vested and be mandatorily exercisable prior to an IPO / liquidation event per the timelines decided by the board or else, such options shall lapse.

Pursuant to ESOP 2019, the Company granted 38,423 share options till 31 March 2022 (previous year: 25,812) to employees of the Company and its subsidiaries. The stock compensation expense recognised for employee services received during the year ended 31 March 2022 and 2021 were Rs. 70.08 Crores and Rs. 466.67 Crores respectively.

Expected volatility has been based on comparable companies based on similarity of business model of the Company.

The activity in this stock option plan is summarized below:

The weighted average remaining contractual life for the stock options outstanding as at 31 March 2022 is 3.07 years (previous year: 2.12 years).

**Fair value presentation**

Options have been valued based on fair value method as described under IND AS 102 Share Based Payments using Black Scholes valuation options-pricing model, using the fair value of the Parent's shares as on the grant date.

**Table - 1**

| Particulars | 31 March 2022 | | 31 March 2021 | |
|---|---|---|---|---|
| | No of options | Weighted average exercise price | No of options | Weighted average exercise price |
| Outstanding as at the beginning of the year (Nos.) | 1,785 | 2,31,782 | 3,310 | 1,21,922 |
| | 2,921 | 1,21,922 | | |
| | 15,000 | 4,340 | | |
| | 7,167 | 10 | | |
| Options granted during the year (Nos.) | 9,089 | 2,73,089 | 1,785 | 2,31,782 |
| | 3,522 | 10 | 15,000 | 4,340 |
| Forfeited during the year (Nos.) | 1084 | 1,62,845 | 389 | 1,21,922 |
| Exercised during the year (Nos.) | 6,750 | 4,340 | 1,860 | 10 |
| | 6,894 | 10 | | |
| Outstanding at the end of the year (Nos.) | 8,250 | 4,340 | 1,785 | 2,31,782 |
| | 3,795 | 10 | 2,921 | 1,21,922 |
| | 12,711 | 2,41,690 | 15,000 | 4,340 |
| | | | 7,167 | 10 |
| Exercisable at the end of the year(Nos.) | 8,250 | 4,340 | 15,000 | 4,340 |
| | 273 | 10 | 6,075 | 10 |
| | 1,466 | 1,46,551 | | |
| Estimated market price (Rs) | 2,85,072 | | 2,13,032 | |

*("This space has been intentionally left blank")*

MSKA & ASSOCIATES * Chartered Accountants *

Think and Learn Pvt. Ltd. Bangalore

**Think & Learn Private Limited**
**Notes to the consolidated financial statements**
**(Amount in INR crores, unless otherwise stated)**

Table - 2

| 31 March 2022 | | 31 March 2021 | |
|---|---|---|---|
| **Date of grant** | **Number of shares** | **Date of grant** | **Number of shares** |
| 01 April 2021 | 770 | 01 April, 2020 | 21,100 |
| 03 April 2021 | 42 | 03 April, 2020 | 1,092 |
| 06 April 2021 | 42 | 20 April, 2020 | 49 |
| 23 April 2021 | 21 | 01 June, 2020 | 2 |
| 27 April 2021 | 560 | 25 June, 2020 | 1,860 |
| 02 May 2021 | 38 | 09 July, 2020 | 10 |
| 20 May 2021 | 51 | 16 July, 2020 | 8 |
| 23 May 2021 | 35 | 21 July, 2020 | 37 |
| 01 June 2021 | 589 | 01 September, 2020 | 78 |
| 18 June 2021 | 168 | 21 September, 2020 | 157 |
| 01 July 2021 | 25 | 22 September, 2020 | 8 |
| 11 July 2021 | 17 | 01 October, 2020 | 21 |
| 18 July 2021 | 57 | 12 October, 2020 | 105 |
| 01 August 2021 | 1,356 | 14 October, 2020 | 17 |
| 10 September 2021 | 349 | 16 October, 2020 | 37 |
| 01 October 2021 | 2,956 | 20 October, 2020 | 27 |
| 03 October 2021 | 35 | 10 November, 2020 | 126 |
| 06 October 2021 | 4 | 17 November, 2020 | 21 |
| 10 October 2021 | 523 | 16 December, 2020 | 42 |
| 17 October 2021 | 87 | 24 March, 2021 | 1,015 |
| 28 October 2021 | 35 | | |
| 07 November 2021 | 782 | | |
| 08 November 2021 | 17 | | |
| 29 November 2021 | 40 | | |
| 01 December 2021 | 1,841 | | |
| 16 December 2021 | 664 | | |
| 19 December 2021 | 21 | | |
| 23 December 2021 | 2 | | |
| 01 January 2022 | 655 | | |
| 13 January 2022 | 233 | | |
| 01 February 2022 | 388 | | |
| 14 February 2022 | 22 | | |
| 25 February 2022 | 11 | | |
| 01 March 2022 | 35 | | |
| 08 March 2022 | 84 | | |
| 22 March 2022 | 56 | | |
| | **12,611** | | **25,812** |

Table - 3

| Particulars | 31 March 2022 | 31 March 2021 |
|---|---|---|
| Vesting period (years) | Upto 4 years | Upto 4 years |
| Expected life of option (years) | 4 years | 3 years |
| Expected volatility | 54.4% | 44.6% |
| Risk free rate | 5.1% | 5.4% |
| Expected dividends expressed as a dividend yield | - | - |
| Weighted average fair value at the date of grant (Rs) | 2,58,670 | 2,01,761 |

*("This space has been intentionally left blank")*

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements
(Amount in INR crores, unless otherwise stated)

**53 Additional regulatory information**

a. No proceedings have been initiated on or are pending against the Company under the Prohibition of Benami Property Transactions Act, 1988 (as ammended in 2016) (formerly the Benami Transactions (Prohibition) Act, 1988 (45 of 1988)) and Rules made thereunder.

b. The Company does not have any borrowing or loans sanctioned/received from banks and financial institutions on the basis of security of current assets.

c. The Company has not been declared wilful defaulter by any bank or financial institution or government or any government authority.

d. The Company has complied with the number of layers prescribed under Section 2(87) of the Act read with Companies (Restriction of number of layers) Rules, 2017.

e. (i) The Company has not advanced or loaned or invested funds to any other person(s) or entity(ies), including foreign entities (Intermediaries) with the understanding that the Intermediary shall:

a. directly or indirectly lend or invest in other persons or entities identified in any manner whatsoever by or on behalf of the group (Ultimate Beneficiaries) or

b. provide any guarantee, security or the like to or on behalf of the ultimate beneficiaries.

(ii) The Company has not received any fund from any person(s) or entity(ies), including foreign entities (Funding Party) with the understanding (whether recorded in writing or otherwise) that the Company shall:

a. directly or indirectly lend or invest in other persons or entities identified in any manner whatsoever by or on behalf of the Funding Party (Ultimate Beneficiaries) or

b. provide any guarantee, security or the like on behalf of the ultimate beneficiaries.

f. There is no income surrendered or disclosed as income during the current or previous year in the tax assessments under the Income Tax Act, 1961, that has not been recorded in the books of account.

g. The Company has not traded or invested in crypto currency or virtual currency during the current or previous year.

h. The Company has not revalued its property, plant and equipment or intangible assets or both during the current or previous year. The Company did not have any investment property during the current or previous year.

i. There are no charges or satisfaction which are yet to be registered with the Registrar of Companies beyond the statutory period.

j. The Company is not a Core Investment Company (CIC) as defined in the regulations made by the Reserve Bank of India.

k. **Transactions with struck off companies**

The following table summarises the transactions with the companies struck off under section 248 of the Companies Act, 2013 or section 560 of Companies Act, 1956 for the year ended / as at 31 March 2022:

| Name of struck off Company | Nature of transactions | Transactions during the year | Balance outstanding | Relationship with the Struck off company |
|---|---|---|---|---|
| True Value Marketing Private Limited | Payable | (0.50) | (0.11) | Vendor |
| 8 Finatics Mobile Private Limited | Payable | - | (0.01) | Vendor |
| Turbo Institute of Industrial Technology Private Limited | Payable | - | (0.00) | Vendor |
| Techawk IT Solutions Private Limited | Payable | - | (0.00) | Vendor |
| Renovix HR Private Limited | Payable | (0.05) | (0.02) | Vendor |
| Sri Sai Ram Agencies | Payable | (0.00) | (0.00) | Vendor |

The following table summarises the transactions with the companies struck off under section 248 of the Companies Act, 2013 or section 560 of Companies Act, 1956 for the year ended / as at 31 March 2021:

| Name of struck off Company | Nature of transactions | Transactions during the year | Balance outstanding | Relationship with the Struck off company |
|---|---|---|---|---|
| True Value Marketing Private Limited | Payable | - | (0.00) | Vendor |
| 8 FINATICS MOBILE Private Limited | Payable | - | (0.01) | Vendor |
| Turbo Institute of Industrial Technology Private Limited | Payable | - | (0.00) | Vendor |
| Techawk IT Solutions Private Limited | Payable | - | (0.00) | Vendor |

MSKA & ASSOCIATES Chartered Accountants

Think and Learn Pvt. Ltd. Bangalore

THINK & LEARN PRIVATE LIMITED

Notes to the consolidated financial statements for the year ended 31 March 2022

54 Following is the share of net assets and the profit or loss of the entities which have been consolidated for preparation of the consolidated financial statements of Think & Learn Private Limited for the financial year ended 31 March, 2022:

| Name of the entity | Net assets i.e. total assets minus total liabilities | | Share in profit or loss | | Share in other comprehensive income | | Share in total comprehensive income | |
|---|---|---|---|---|---|---|---|---|
| | Amount | As a % of consolidated net assets | Amount | As a % of consolidated profit or loss | Amount | As a % of consolidated profit or loss | Amount | As a % of consolidated profit or loss |
| **Parent** | | | | | | | | |
| Think & Learn Private Limited | 2,449.58 | 11.69% | (3,729.70) | 45.28% | (0.50) | (0.36%) | (3,730.20) | 46.07% |
| **Indian subsidiaries** | | | | | | | | |
| Great Lakes E-Learning Services P Ltd | 697.35 | 3.33% | (223.91) | 2.72% | 0.24 | 0.17% | (223.67) | 2.76% |
| Grade Stack Learning Private Limited | 517.71 | 2.47% | (88.79) | 1.08% | (0.38) | (0.27%) | (89.17) | 1.10% |
| Toppr Technologies Private Limited | 1,429.35 | 6.82% | (187.77) | 2.28% | 1.33 | 0.95% | (186.44) | 2.30% |
| Aakash Educational Services Limited | 6,761.39 | 32.26% | 60.34 | (0.73%) | (2.76) | (1.96%) | 57.58 | (0.71%) |
| Span Thoughtworks Private Limited | 9.04 | 0.04% | (0.09) | 0.00% | - | - | (0.09) | 0.00% |
| Specadel Technologies Private Limited | 1.37 | 0.01% | (7.46) | 0.09% | (0.02) | (0.01%) | (7.48) | 0.09% |
| Byju's K3 Education Private Limited | 85.85 | 0.41% | (19.49) | 0.24% | (0.06) | (0.04%) | (19.55) | 0.24% |
| Whitehat Education Technology Private Ltd | 1,662.81 | 7.93% | (2,451.08) | 29.76% | 7.67 | 5.46% | (2,443.42) | 30.18% |
| **Foreign subsidiaries** | | | | | | | | |
| EPIC Creations Inc | 5,088.34 | 24.28% | (153.82) | 1.87% | 92.06 | 65.53% | (61.76) | 0.76% |
| Inspilearn LLC | 1,143.44 | 5.46% | (35.86) | 0.44% | (1.60) | (1.14%) | (37.46) | 0.46% |
| Tangible Play Inc. | 1,612.03 | 7.69% | (987.70) | 11.99% | 33.28 | 23.69% | (954.42) | 11.79% |
| GeoGebra GmbH | 187.96 | 0.90% | (0.34) | 0.00% | 1.81 | 1.29% | 1.48 | (0.02%) |
| Byjus Pte Ltd | (685.40) | (3.27%) | (411.42) | 4.99% | 9.42 | 6.71% | (402.00) | 4.96% |
| **Total** | **20,960.85** | **100.00%** | **(8,237.09)** | **100.00%** | **140.49** | **100.01%** | **(8,096.60)** | **100.00%** |
| **Non controlling interest** | | | | | | | | |
| Great Learning Education Pte. Ltd | 47.18 | | (8.11) | | (0.11) | | (8.22) | |
| **Grand Total** | **21,008.03** | | **(8,245.20)** | | **140.38** | | **(8,104.82)** | |

Note: After adjusting intercompany transactions and balances and includes goodwill and intangible assets arising on acqusition

55 **Subsequent events**

**(i) Intap Labs Private Limited**

On November 17, 2021, the Company entered into a Share Purchase Agreement and a Share Swap Agreement to acquire 100% shares of Intap Labs Private Limited, for a cash consideration of Rs.81.58 Crores and issue of 2,815 Series F CCPS of the Company. There are no other forms of variable consideration/contingent consideration arrangement. The acquisition was consummated on May 26, 2022 upon the completion of all closing conditions.

Intap Labs Private Limited is in the business of providing educational aids on the web, tablet and mobile phones.

**(ii) Northwest Education Pte. Ltd**

On April 05, 2022 the Company and Great Learning Education Pte. Ltd (a subsidiary of the Company) entered into a Share Purchase Agreement and a Share Swap Agreement to acquire 100% shares of Northwest Education Pte. Ltd for an upfront cash consideration of USD 20.00 Million (Equivalent Rs.151.61 Crores), issue of 3,750 Series F CCPS of the Company, a contingent consideration payable in cash over a period of three years starting the date of acquisition. The determination of contingent consideration is based on performance targets. The acquisition was consummated on April 27, 2022 upon the completion of all closing conditions.

Northwest Education Pte. Ltd is in the business of providing executive, continuing and lifelong learning through certificate and degree programs, boot camps, and any other programs in collaboration with universities and affiliated schools and organizations.

MSKA & ASSOCIATES ★ Chartered Accountants ★

("This space has been intentionally left blank")

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022

**(iii) Aakash Educational Services Limited**
In July 2022, the Company acquired 13.4% equity interest in Aakash Educational Services Limited ("Aakash") from certain shareholders of Aakash for a cash consideration. The Company entered into new agreements (Supplemental SPA, Drag Agreement and Option Agreement) with certain shareholders of Aakash and Byju's Investments Pte Ltd ("BIPL") and pursuant to such agreements, BIPL acquired 26.8% equity interest in Aakash from Investors for a cash consideration. BIPL is not part of the consolidated group owned by Think and Learn Private Limited. Further, as the Merger Long Stop date as per the Merger Framework Agreement has expired, the Company has requested for the share swap with certain other shareholders of Aakash, which is still under discussion with such shareholders.

**(iv) Geogebra GmbH**
On 27 May 2022, the Company allotted its 3,157 Series F CCPS pursuant to the share swap agreement to acquire the remaining 50% equity interests in Geogebra GmbH.

**(v) Weblength Infonet Private Limited**
Subsequent to 31 March 2022, Great Lakes E-learning Services Private Limited (a subsidiary of the Company) acquired the remaining 8.03% equity interest in Weblength Infonet Private Limited for a cash consideration of Rs. 11.54 Crores.

(vi) On March 10, 2023, the Federal Deposit Insurance Corporation(FDIC) announced that SVB had been closed by the California Department of Financial Protection and Innovation. The United States Department of Treasury announced in a joint statement with the Federal Reserve and FDIC that depositors of SVB will have access to all their money starting March 13, 2023.

56 The Directorate of Enforcement, Bengaluru Zone (the "ED") issued multiple summons to the Chairman and Managing Director of the Company under section 37(1) and (3) of the Foreign Exchange Management Act, 1999 ("FEMA") read with section 131(1) of the Income Tax Act, 1961 ("IT Act") and section 30 of the Code of Civil Procedure 1908 ("CPC"), [the "Summons"]. Accordingly, various representatives of the Company have attended the ED offices on different dates and supplied information in compliance with the summons and information sought by the ED officers during such personal hearings.

Thereafter, the ED conducted search on April 27, 2023 at two office premises of the Company and one residential property of Mr. Byju Raveendran (occupied by Mr. Pravin Prakash) pursuant to authorization dated April 26, 2023 issued by Joint Director, ED under section 37(3) of the FEMA r/w section 132 of the IT Act to conduct search and seizure or freeze any record or property.

Post the search conducted by the ED, the ED officers have summoned various representatives of the Company for recording statements and also sought some further information and documents during in person visits to ED offices. The Company has not received any further communication from the ED.

57 (a) The Parent company has received notices from Ministry of Corporate Affairs for non-compliances with the provisions of section 42, 92, 96, 137, 185, 188, 134, 88, 135, 179, 129, 144 and 148. Due to some operational challenges, Company was unable to conduct as per the requirement of these sections within prescribed timelines. Management has evaluated the possible impact of such non-compliances and provided for the same in the books of accounts. Management is in process of making an application for compounding to the authorities. Management does not foresee any further impact arising due to such non-compliances.

(b) Due to some operational challenges, the subsidiary companies Aakash Edutech Private Limited, Aakash Educational Service Limited and Whitehat Education Technology Private Limited was unable to conduct its Annual General Meeting ("AGM") in accordance with the provisions of Section 96 of the Companies Act, 2013 ("the Act"), and hence, these subsidiaries have also not complied with the provisions of Section 137 of the Act relating to the filing of financial statements with the Registrar of Companies and with Section 92 relating to filing of annual returns. The Company had made an application to the Registrar of Companies for the extension of the deadline for holding their AGM in respect of the year ended March 31, 2022, and got an approval upto December 31, 2022. However, the Company has not yet held their AGM within the above extended timelines and accordingly, is in non-compliance with the provisions of Section 96, Section 137 and Section 92 of the Act.

The management of the Company has evaluated the possible impact of such non-compliances. The management of the Company is also in the process of making an application for compounding these various non-compliances with the relevant authorities.

58 The Board of Directors of Span Thoughtworks Private Limited and Specadel Technologies Private Limited in their meeting held on 23rd March 2022 had noted that in line with the intent of the Parent Company, to rationalize all operations, the two subsidiaries are ceasing its business operations. Accordingly, the standalone financial statements of these subsidiaries have been prepared on liquidation basis wherein assets have been remeasured at the values they are expected to realize and liabilities have been remeasured at the values they are expected to settle.

MSKA & ASSOCIATES ★ Chartered Accountants ★

*("This space has been intentionally left blank")*

Think and Learn Pvt. Ltd. Bangalore ★

THINK & LEARN PRIVATE LIMITED
Notes to the consolidated financial statements for the year ended 31 March 2022

59 The Code on Social Security 2020

The Code on Social Security 2020 ('the Code') relating to employee benefits, during the employment and post-employment, has received Presidential assent on September 28, 2020. The Code has been published in the Gazette of India. Further, the Ministry of Labour and Employment has released draft rules for the Code on November 13, 2020. However, the effective date from which the changes are applicable is yet to be notified and rules for quantifying the financial impact are also not yet issued.
The Company will assess the impact of the Code and will give appropriate impact in the financial statements in the period in which, the Code becomes effective and the related rules to determine the financial impact are published.

As per our report of even date

For M S K A & Associates
Chartered Accountants
Firm Registration No. 105047W

Manish P Bathija
Partner
Membership No. 216706

Place: Bangalore
Date: November 04, 2023

MSKA & ASSOCIATES ★ Chartered Accountants ★

For and on behalf of the Board of Directors of
THINK & LEARN PRIVATE LIMITED

Byju Raveendran
Managing Director
DIN: 03408398

Place: Bangalore
Date: November 04, 2023

Divya Gokulnath
Director
DIN: 03415950

Place: Bangalore
Date: November 04, 2023

Think and Learn Pvt. Ltd. Bangalore

# Exhibit 26

MINUTES

**THINK & LEARN PRIVATE LIMITED**
**CIN:** U80903KA2011PTC061427
**REGISTERED OFFICE:** IBC KNOWLEDGE PARK, 4/1, 2ND FLOOR
TOWER D, BANNERGHATTA MAIN ROAD, BANGALORE – 560029
KARNATAKA, INDIA

**MINUTES OF THE MEETING OF THE BOARD OF DIRECTORS OF THE COMPANY (TNLPL/BM/12/2021-22) HELD ON MONDAY, THE 22ND DAY OF NOVEMBER 2021 AT 8:00 P.M. (IST) AT THE REGISTERED OFFICE OF THE COMPANY AT IBC KNOWLEDGE PARK, 4/1, 2ND FLOOR, TOWER D, BANNERGHATTA MAIN ROAD, BANGALORE – 560029, KARNATAKA, INDIA.**

---

Time of commencement of the meeting : **8:00 P.M.**
Time of conclusion of the meeting : **9:00 P.M.**

**I. ROUTINE AGENDA**

**1. TO RECORD THE NAMES AND ATTENDANCE OF THE DIRECTORS PRESENT AT THE MEETING:**

| Sl. No. | Name, Designation & DIN | Mode of Presence at the Meeting (In Person / Video Conferencing or other Audio Visual means) | Location |
|---|---|---|---|
| (i) | **Mr. Byju Raveendran**<br>Chairman & Managing Director<br>DIN: 03408398 | Attended in Person | Bangalore, INDIA |
| (ii) | **Ms. Divya Gokulnath**<br>Director<br>DIN: 03415950 | Attended in Person | Bangalore, INDIA |
| (iii) | **Mr. Riju Ravindran**<br>Director<br>DIN: 03416072 | Attended in Person | Bangalore, INDIA |
| (iv) | **Ms. Vivian Wu**<br>Nominee Director<br>DIN: 07649210 | Attended through video conferencing | California |

**2. TO CONSIDER CHAIRMAN OF THE MEETING:**

Mr. Byju Raveendran, the Chairman of the Board, occupied the chair.

Thereafter, roll call was taken by the Chairman, whereby the director participating through video conferencing stated her name, confirmed the receipt of agenda for the meeting and confirmed that no other person is attending or has access to the proceedings of the meeting.

He then informed the Board that Ms. Vivian Wu (DIN - 07649210), Nominee Director, was present at the Meeting through video conferencing facility and confirmed that the requisite quorum was present.

Initial of the Chairman

**MINUTES**

Thereafter, he called the meeting to order and conducted the proceedings of the meeting as per the agenda.

**3. TO CONSIDER NOTICE OF THE MEETING:**

The Chairman noted that the Notice of the Board Meeting has been served to all the Directors and others who are entitled to receive the notice, in accordance with the articles of association of the Company and provisions of the Section 173(3) and other applicable provisions of the Companies Act, 2013 and Rules made there-under.

The Chairman further noted that the Meeting was called at a short notice and the Company has received the Consents from all the Directors pursuant to Section 173(3) of the Companies Act, 2013, to hold the Board Meeting at a Shorter Notice.

Notice of the Meeting was taken as read after seeking Directors' consent.

**4. TO GRANT LEAVE OF ABSENCE, IF ANY:**

Leave of absence was granted to Mr. G V Ravishankar (DIN: 02604007), Nominee Directors and Mr. Russell Andrew Dreisenstock (DIN: 08368304), Director, as requested by them.

The Chairman took note of the leave of absence and waiver letter received from the nominee director and director and informed the board that, the nominee director and director have waived the requirement of their presence to constitute quorum as per Article 20 of the Articles of Association of the Company.

**5. TO CONFIRM THE MINUTES OF THE PREVIOUS BOARD MEETING OF THE COMPANY:**

The minutes of the previous meeting of the board of directors held on 20th November 2021 was placed before the meeting. After perusal, the said minutes were approved as a fair and correct record of the proceedings.

Thereafter, the following resolution was passed unanimously:

"**RESOLVED THAT** the minutes of the previous meeting of the board of directors held on 20th November 2021 as placed before the meeting be and is hereby noted and approved."

**II. STATUTORY AND/OR BUSINESS RELATED AGENDA REQUIRING APPROVAL OR NOTING OF THE BOARD**

**6. APPROVAL AND AUTHORIZATION TO PROVIDE GUARANTEE IN RELATION TO TERM LOAN FACILITY, ADDITIONAL INCREMENTAL FACILITIES, REFINANCING FACILITY AND CERTAIN OTHER FACILITIES PROPOSED TO BE AVAILED BY BYJU'S ALPHA INC. AND MATTERS INCIDENTAL THERETO:**

The Chairman informed the Board that BYJU'S Alpha Inc. ("**Borrower**"), the indirect wholly owned subsidiary of the Company, established in Delaware, intends to avail a term loan facility with initial term loan commitments of USD 1,200,000,000 (the "**Term Loan Facility**") from a syndicate of financial institutions and other entities ("**Lenders**"), arranged by the Morgan Stanley Senior Funding Inc. and JPMorgan

Initial of the Chairman

**MINUTES**

Chase Bank, N.A. (together, "**MLAB**"). The Term Loan Facility will be availed in terms of an agreement to be executed by, *inter alia*, the Company, the Borrower, the Lenders and MLAB (the "**Facility Agreement**").

As a part of the proposed transaction:

(i) Term Loan Facility, along with additional incremental facilities, refinancing facility and certain other facilities permitted under the Facility Agreement and availed from time to time ("**Covered Obligations**") will be guaranteed by a guarantee of up to "Applicable Limit as set out in the deed of guarantee to be entered into by the Company (the "**Onshore Guarantee Deed**");

(ii) The Covered Obligations will also be guaranteed by present and future foreign and Indian material subsidiaries of the Company ("**Material Subsidiaries**"), but excluding any Excluded Subsidiary (as defined in the Facility Agreement) and Aakash Educational Services Limited, more particularly described in the Facility Agreement (which includes, as on the date of this resolution, Tangible Play, Inc., Byju's Pte. Ltd., Great Learning Education Pte. Ltd. and Whitehat Education Technology Private Limited ("**Whitehat**")) (the "**Procured Guarantees**") and the guaranteed amount in case of Procured Guarantees from Indian Material Subsidiaries of the Company will not be more than the Applicable Limit as set out in the Onshore Guarantee Deed and any Procured Guarantee from Indian Material Subsidiaries of the Company (other than Whitehat will be subject to receipt of the RBI Additional Guarantor Approval (as defined in the Facility Agreement), if required in terms of the Facility Agreement;

(iii) The Covered Obligations will be secured by creation of pledge over the shares held by the present and future foreign Material Subsidiaries of the Company ("**Pledgors**") in other present and future foreign Material Subsidiaries of the Company ("**Underlying Companies**"), as more particularly described in the Facility Agreement (the "**Pledge Agreements**");

(iv) The Company (and any other direct or indirect subsidiary of the Company who owns shares in an Underlying Company and is restricted by any law or regulation from granting a pledge over the shares held by it in any Underlying Companies), shall enter into call option agreements with the Pledgors with respect to its holding in the Underlying Companies under which each Pledgor, upon the occurrence of specified events set out therein, will have the right to exercise a call option on the Company and/ or any other direct or indirect subsidiary of the Company which owns shares in an Underlying Company and restricted by any law or regulation from granting a pledge over the shares held by it in any Underlying Companies with respect to its shareholding in the relevant Underlying Company (subject to compliance with legal requirements as to any minimum holding periods) (the "**Call Option Agreements**"), as more particularly described in the Facility Agreement;

(v) The Company and each of its direct and indirect subsidiaries who owns intellectual property which is material to and used by the Underlying Companies will also enter into licensing agreements with its present and future foreign Material Subsidiaries to provide them exclusive and perpetual license with respect to intellectual property owned by it and utilized/ to be utilized by

Initial of the Chairman

MINUTES

such Material Subsidiaries (the "**IP Licensing Agreements**"), as more particularly described in the Facility Agreement; and

(vi) The present and future foreign Material Subsidiaries of the Company will secure the Covered Obligations by providing security over all their assets, including their rights and benefits under the Call Option Agreements and the IP Licensing Agreements they are parties to (the "**Charge Documents**"), as more particularly described in the Facility Agreement.

In addition, it is proposed that the articles of association of certain Material Subsidiaries will be amended to, *inter alia*, remove any share transfer restrictions and, in case of Whitehat Education Technology Private Limited, remove references to pre-existing shareholders agreements.

The Chairman further informed the board that a notice of this meeting of the Board of Directors was issued to all Eligible Investors, as defined under the amended and restated shareholders agreement dated 28 February 2019 entered into by and between, inter alia, the Company, Mr. Byju Raveendran, Mr. Riju Ravindran, Mrs. Divya Gokulnath, SCI Investments V, Sequoia Capital India Investments IV, SCHF PV Mauritius, Ltd., Advent Management Belgium SA, Times Internet Limited, International Finance Corporation, Verlinest S.A., Proxima Beta Pte Limited, General Atlantic Singapore TL Pte. Ltd, CPP Investment Board Private Holdings (3) Inc., Naspers Ventures BV, Lightspeed India Partners I, LLC, Lightspeed Venture Partners Select Mauritius, Aarin Capital Partners, Chan Zuckerberg Mauritius and Aarin Capital Partners (Mauritius), read with an addendum dated 6 July 2019 and various deeds of adherence ("**Shareholders Agreement**"), and the Eligible Investors have not raised any objections to the Proposed Transaction, the resolutions proposed to be passed and the actions proposed to be taken pursuant to it.

Draft copies of the Facility Agreement, the Onshore Guarantee Deed and the term sheet for the Facility were placed before the Board for the purpose of explaining the details of the proposed transaction.

Thereafter, the board discussed on the matter at length and after due corroboration passed the following resolution unanimously:

"**RESOLVED THAT** pursuant to the relevant provisions of the Companies Act, 2013 and the rules and regulations framed thereunder, the Memorandum and Articles of Association of the Company, and such other provisions as may be applicable and other applicable laws, if any, and the provisions of the Shareholders Agreement, the unanimous approval of the Board be and is hereby accorded to the Borrower (or any other subsidiary of the Company) to avail the Covered Obligations from time to time."

"**RESOLVED FURTHER THAT** pursuant to the relevant provisions of the Companies Act, 2013 and the rules and regulations framed thereunder, the Memorandum and Articles of Association of the Company, and such other provisions as may be applicable and other applicable laws, if any, and the provisions of the Shareholders Agreement, the unanimous approval of the Board be and is hereby accorded to the Company to provide the guarantee of an amount up to the Applicable Limit (as defined in the Onshore Guarantee Deed) for guaranteeing the Covered Obligations."

Initial of the Chairman

MINUTES

"**RESOLVED FURTHER THAT** pursuant to the relevant provisions of the Companies Act, 2013 and the rules and regulations framed thereunder, the Memorandum and Articles of Association of the Company, and such other provisions as may be applicable and other applicable laws, if any, and the provisions of the Shareholders Agreement, the unanimous approval of the Board be and is hereby accorded to the Company to procure from present and future foreign and Indian Material Subsidiaries of the Company, guarantees for guaranteeing the Covered Obligations, which in case of Indian subsidiaries of the Company will be for an amount up to the Applicable Limit (as defined in the Onshore Guarantee Deed) and any Procured Guarantee from Subsidiaries of the Company (other than Whitehat) will be subject to receipt of the RBI Additional Guarantor Approval (as defined in the Facility Agreement), if required in terms of the Facility Agreement."

"**RESOLVED FURTHER THAT** pursuant to the relevant provisions of the Companies Act, 2013 and the rules and regulations framed thereunder, the Memorandum and Articles of Association of the Company, and such other provisions as may be applicable and other applicable laws, if any, and the provisions of the Shareholders Agreement, the unanimous approval of the Board be and is hereby accorded to the Company to procure from foreign Material Subsidiaries of the Company the following security (the "**Procured Security**") to secure the Covered Obligations:

(a) pledge over the shares held by the foreign Material Subsidiaries of the Company in the Underlying Companies, as more particularly described in the Facility Agreement; and

(b) charge, assignment or other security by foreign Material Subsidiaries of the Company over all their assets, including their rights and benefits under the Call Option Agreements and the IP Licensing Agreements they are parties to.

"**RESOLVED FURTHER THAT** pursuant to the relevant provisions of the Companies Act, 2013 and the rules and regulations framed thereunder, the Memorandum and Articles of Association of the Company, and such other provisions as may be applicable and other applicable laws, if any, and the Shareholders Agreement, the unanimous approval of the Board be and is hereby accorded to the Company and its relevant subsidiaries to:

(a) subject to the terms and conditions set out in the IP Licensing Arrangement, provide exclusive and perpetual licenses with respect to the intellectual property owned by it and its relevant subsidiaries to the Underlying Companies; and

(b) enter into the Call Option Agreements with respect to its shareholding in Underlying Companies."

"**RESOLVED FURTHER THAT** the board hereby also unanimously approves any disposal or transfer of assets including shares and rights under contracts upon enforcement of any Procured Security and agrees that any restriction on transfer of such shares and/or assets under the Articles of Association of the Company, the Shareholders Agreement or any other agreement with the shareholders of the Company shall not apply to such disposal or transfer and such disposal or transfer will not be considered a Liquidation Event under the Shareholders Agreement and the Articles of Association of the Company."

Initial of the Chairman

**MINUTES**

"**RESOLVED FURTHER THAT** pursuant to the relevant provisions of the Companies Act, 2013 and the rules and regulations framed thereunder, the Memorandum and Articles of Association of the Company, and such other provisions as may be applicable and other applicable laws, if any, and the Shareholders Agreement, the unanimous approval of the Board be and is hereby accorded to the Company for amendment of the constitutional documents of its Indian and foreign Material Subsidiaries as required under the Facility Agreement."

"**RESOLVED FURTHER THAT** pursuant to the relevant provisions of the Companies Act, 2013 and the rules and regulations framed thereunder, the applicable provisions of the Companies Act, 1956, the Memorandum and Articles of Association of the Company, and such other provisions as may be applicable and other applicable laws, if any, and the Shareholders Agreement, the unanimous approval of the Board be and is hereby accorded to the Company and relevant subsidiaries of the Company to enter into the following agreements or deeds, as well as the transactions contemplated therein:

(a) the Facility Agreement;
(b) the Onshore Guarantee Deed;
(c) the Procured Guarantees;
(d) the Pledge Agreements;
(e) the Call Option Agreement;
(f) the IP Licensing Agreements;
(g) the Charge Documents; and
(h) all other agreements, instruments, undertakings, indentures, deeds, power of attorneys, declarations, letters, writings and other documents (whether financing, security or otherwise) as required in relation, or pertaining, to the transactions contemplated by, or under the above documents or in connection with the Proposed Transaction, (together, the "**Transaction Documents**")."

"**RESOLVED FURTHER THAT** Byju Raveendran, Chairman & Managing Director, Riju Ravindran and Divya Gokulnath, Directors (collectively referred to as "**Authorised Signatories**") be and are hereby severally authorized on behalf of the Company to:

(a) execute, deliver and dispatch the Transaction Documents and other deeds, documents, requests, notices and other writings as and when necessary and to take all such further steps as may be required to give effect to these resolutions;
(b) negotiate, agree, accept and execute the Transaction Documents, any changes, modifications or amendments (however fundamental they may be) to the terms and conditions contained in the Transaction Documents, together with all other documents, agreements, instruments, deeds, documents, letters and other writings as and when necessary or required by the Lenders in connection with, or ancillary to the Transaction Documents;
(c) obtain all necessary authorisations from governmental authorities and/or third parties (including but not limited to, the Reserve Bank of India) as may be required in connection with the transactions contemplated under the Transaction Documents and complete all formalities in respect thereto;
(d) arrange for payment of all applicable stamp duty in respect of the Transaction Documents;

Initial of the Chairman

MINUTES

(e) make all necessary filings with governmental or other authorities (including, but not limited to, filing of Form ODI with the Company's authorized dealer bank) as necessary, in relation to the Transaction Documents;

(f) make the necessary applications to all such authorities as may be necessitated from time to time for purpose of the Transaction Documents;

(g) do all other acts or things and execute all other documents as may be necessary or required for the aforesaid purposes, including to sign and/or dispatch all forms, documents and notices to be signed, submitted and/or dispatched by the Company under or in connection with the Transaction Documents;

(h) do all such acts, deeds, matters and things and to execute such documents or writing as may be necessary, proper or expedient, including but not limited to signing and filing necessary forms and documents for giving effect to this resolution and for matters connected therewith or ancillary or incidental thereto; and

(i) certify as having been adopted by the Board, any and all resolutions necessary, advisable or appropriate to consummate the Transaction Documents or its other obligations in relation to the Transaction Documents as contemplated by the foregoing resolutions."

"**RESOLVED FURTHER THAT** the nominee directors of the Company in the board of directors of each of the relevant subsidiaries of the Company are hereby authorized:

(a) to attend, participate in and vote, on the Company's behalf, at any board meeting of any relevant subsidiary of the Company (including, without limitation, at any adjournments thereof, to accept short notice or dispense with formal notices of any such meetings or adjourned meetings where appropriate); and

(b) to sign, on the Company's behalf, any written board resolutions and all relevant documents pertaining to the written board resolutions in respect of any relevant subsidiary, to approve the transactions mentioned in this resolution and execution of the relevant Transaction Documents by such subsidiaries."

"**RESOLVED FURTHER THAT** each of Byju Raveendran, Chairman & Managing Director, Riju Ravindran and Divya Gokulnath, Directors be and is hereby appointed as the Company's representative:

(a) to attend, participate in and vote, on the Company's behalf, at any general meeting of any relevant subsidiary of the Company (including, without limitation, at any adjournments thereof, to accept short notice or dispense with formal notices of any such meetings or adjourned meetings where appropriate); and

(b) to sign, on the Company's behalf, any written shareholders' or members' resolutions and all relevant documents pertaining to the written shareholders' or members' resolutions in respect of any relevant subsidiary of the Company, to approve the transactions mentioned in this resolution and execution of the relevant Transaction Documents by such subsidiaries.

"**RESOLVED FURTHER THAT** any and all actions taken by any Authorised Signatory in connection with any transaction or objectives approved in any or all of the foregoing resolutions, and all transactions related thereto, are hereby approved,

Initial of the Chairman

Case 25-50526-BLS Doc 205-8 Filed 04/28/26 Page 43 of 102

**MINUTES**

ratified and confirmed in all respects and any and all actions hereafter to be taken by any Authorised Signatory in furtherance of the objectives of the foregoing resolutions are hereby authorised, approved and ratified in all respects."

"**RESOLVED FURTHER THAT** the certified true copies of the above resolutions be furnished by any of the Authorised Signatories for further necessary actions thereon."

**III. ANY OTHER MATTERS**

**7. ANY OTHER AGENDA WITH THE PERMISSION OF CHAIRMAN AND MAJORITY OF THE DIRECTORS PRESENT AT THE MEETING:**

With the permission of the Chairman and consent of all the Directors present at the Meeting, the following additional matters were discussed and approved by the Board:

**7(i). APPROVAL FOR AND AUTHORIZATION TO PROVIDE AN INTERCORPORATE LOAN TO INTAP LABS PRIVATE LIMITED AND MATTERS INCIDENTAL THERETO:**

The Chairman informed the board that the Company on request of Intap Labs Private Limited (**"Hello English"**) is proposing to provide an intercorporate loan of up to INR 5,00,00,000/- (Indian Rupees Five Crore only) to Hello English in one or more tranches based on its business exigencies.

In this regard, he requested the board to approve the loan agreement (the *draft* of which initialed by the Chairman for the purpose of identification was placed before the board) and authorize any of the Directors to verify, sign, execute and deliver the loan agreement and all other incidental documents under the loan agreement in relation to the transactions contemplated thereunder.

Thereafter, the board discussed on the agenda and passed the following resolution unanimously:

**"RESOLVED THAT** pursuant to (i) provisions of Section 179(3)(e), 186(2)(c) and other applicable provisions, if any, of the Companies Act, 2013, read with the Companies (Meetings of Board and its Powers) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force) and (ii) the enabling provisions of the Articles of Association of the Company, the consent of the Board be and is hereby accorded to approve and execute loan agreement (the *draft* of which initialed by the Chairman for the purpose of identification is placed before the board) amongst the Company and Intap Labs Private Limited (**"Hello English"**) and to provide an intercorporate loan of up to INR 5,00,00,000/- (Indian Rupees Five Crore only) to Hello English in one or more tranches based on its business exigencies.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN - 03416072), Director and Ms. Divya Gokulnath (DIN - 03415950), Director, be and are hereby severally authorized on behalf of the Company:

[a] to verify, sign, execute and deliver the loan agreement and all other incidental documents under the loan agreement in relation to the transactions contemplated thereunder;

Initial of the Chairman

[b] to update the Register of Loans, Guarantee, Security and Acquisition made by the Company and other concerned Registers, if any, maintained by the Company in this regard;

[c] to certify a copy of the aforementioned resolution and issue the same; and

[d] to do all such acts, deeds, matters and things in their absolute discretion, deem necessary, expedient, usual or proper, to be in the best interest of the Company; and to settle all doubts, difficulties that may arise from time to time while giving effect to this resolution."

**7(ii). APPROVAL FOR AND AUTHORIZATION TO SIGN AND EXECUTE RENTAL/LEASE AGREEMENTS ON BEHALF OF THE COMPANY AND INCIDENTAL MATTERS THERETO:**

The Chairman informed the board that the Company is proposing to sign and execute rental/lease agreement(s) for various premises as may be required for the Company in the states of Andhra Pradesh and Telangana.

In this regard, the Chairman proposed to authorize Mr. Ballari Balraj, Senior Manager – Operations (Employee ID TNL201300114) to verify, sign and execute the Rental / Lease Agreements and all other associated documents on behalf of the Company and to represent the Company before the jurisdictional authorities of respective States to register the Rental / Lease Agreements, if required and to do the needful as may be required in this connection.

Thereafter, the board discussed on the agenda in brief and passed the following resolution unanimously:

"**RESOLVED THAT** in supersession to the earlier resolution passed by the board of directors, consent of the Board be and is hereby accorded to authorize **Mr. Ballari Balraj, Senior Manager – Operations (Employee ID TNL201300114)**, in place of Mr. Atul Kumar Singh, Assistant Vice President (Sales), to verify, sign and execute the Rental / Lease Agreements and all other associated documents on behalf of the Company in the states of Andhra Pradesh and Telangana.

**RESOLVED FURTHER THAT** Mr. Ballari Balraj is authorized to represent the Company before the jurisdictional authorities of respective States to register the Rental / Lease Agreements, if required and to do the needful as may be required in this connection.

**RESOLVED FURTHER THAT** the aforesaid powers granted to Mr. Ballari Balraj shall be valid and effective unless revoked earlier by the Board and shall be exercised by him only so long as he is in the employment of the Company and is binding on the Company.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN: 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN: 03416072), Director and Ms. Divya Gokulnath (DIN: 03415950), Director, be and are hereby severally authorized on behalf of the Company to do the needful as may be required in this connection."

Initial of the Chairman

**MINUTES**

**7(iii). APPROVAL AND AUTHORIZATION TO AVAIL FINANCIAL ASSISTANCE IN THE FORM OF BANK GUARANTEE FROM ICICI BANK LIMITED IN FAVOUR OF ADITYA BIRLA FINANCE LIMITED AND MATTERS INCIDENTAL THERETO:**

The Chairman informed the Board that the Company is proposing to approach ICICI Bank Limited (the **"Bank"**) for availing financial assistance in the form of Bank Guarantee not exceeding Rs. 1,50,00,000/- (Rupees One Crore Fifty Lakh only) in favour of Aditya Birla Finance Limited, on such terms and conditions as may be stipulated by the Bank.

The board discussed on the agenda and passed the following resolutions unanimously:

**"RESOLVED**

1. That the Company do borrow and avail of financial assistance by way of Bank Guarantee not exceeding Rs.1,50,00,000/- (Rupees One Crore Fifty Lakh only) (the **"Facility"**) from ICICI Bank Limited (the **"Bank"**), in favour of Aditya Birla Finance Limited against the security of the fixed deposit/ term deposit of amount not exceeding Rs. 1,50,00,000/- (Rupees One Crore Fifty Lakh only).

2. That Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN – 03416072), Director and Ms. Divya Gokulnath (DIN – 03415950), Director of the Company (**"Authorized Directors"**) are hereby severally authorized to apply for the aforesaid facility and submit such application to the Bank and do all such acts and execute all such documents as the Bank may require in connection with the Facility.

3. The common seal of the Company be affixed in the presence of any of Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN – 03416072), Director and Ms. Divya Gokulnath (DIN – 03415950), Director of the Company, on such of the documents as are required by the Bank.

4. Copies of the aforesaid resolutions certified to be true be furnished to the Bank and they be requested to act thereon.

**7(iv). APPROVAL AND AUTHORIZATION TO AVAIL FINANCIAL ASSISTANCE IN_THE FORM OF BANK GUARANTEE FROM ICICI BANK LIMITED IN FAVOUR OF AVANSE FINANCIAL SERVICES LIMITED AND MATTERS INCIDENTAL THERETO:**

The Chairman informed the Board that the Company is proposing to approach ICICI Bank Limited (the **"Bank"**) for availing financial assistance in the form of Bank Guarantee not exceeding Rs.2,00,00,000/- (Rupees Two Crore only) in favour of Avanse Financial Services Limited, on such terms and conditions as may be stipulated by the Bank.

The board discussed on the agenda and passed the following resolutions unanimously:

**"RESOLVED**

Initial of the Chairman

**MINUTES**

1. That the Company do borrow and avail of financial assistance by way of Bank Guarantee not exceeding Rs.2,00,00,000/- (Rupees Two Crore only) (the **"Facility"**) from ICICI Bank Limited (the **"Bank"**), in favour of Avanse Financial Services Limited against the security of the fixed deposit/ term deposit of amount not exceeding Rs. 2,00,00,000/- (Rupees Two Crore only).

2. That Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN – 03416072), Director and Ms. Divya Gokulnath (DIN – 03415950), Director of the Company (**"Authorized Directors"**) are hereby severally authorized to apply for the aforesaid facility and submit such application to the Bank and do all such acts and execute all such documents as the Bank may require in connection with the Facility.

3. The common seal of the Company be affixed in the presence of any of Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN – 03416072), Director and Ms. Divya Gokulnath (DIN – 03415950), Director of the Company, on such of the documents as are required by the Bank.

4. Copies of the aforesaid resolutions certified to be true be furnished to the Bank and they be requested to act thereon.

**7(v). APPROVAL FOR AND AUTHORIZATION TO AVAIL FINANCIAL FACILITIES FROM INDUSIND BANK LIMITED AND MATTERS INCIDENTAL THERETO:**

The Chairman informed the board that the Company is proposing to avail financial facility from IndusInd Bank Limited ("**IndusInd Bank**" or "**Lender**") and placed the sanction letter dated 02/11/2021 bearing reference number IBL/CADSOUTH/CCBG/0929/2021-2022 ("**Sanction Letter**"), initialed by him for the purpose of identification before the board.

He further informed that the financial facility shall be as per the terms of the sanction letter and by whatever name called, whether granted by way of fund or non-fund based credit facilities up to a maximum principal amount of Rs. 50,00,000/- (Rupees Fifty Lakhs rupees only) in aggregate to the Company.

The financial facilities will be *inter alia* secured by a charge over the moveable and immoveable assets of the Company in favour of the Lender or their security agent/trustee as set out in the Sanction Letter to secure the Facility.

The Board, after a detailed discussion, unanimously approved availing the said financial facility by the Company on the terms and condition stated in the Sanction Letter and passed the following resolution:

"**RESOLVED THAT** the Board hereby accords it approval to:

1. the Company for availing from IndusInd Bank Limited (**"IndusInd Bank" or "Lender"**) the financial facilities, as mentioned in the sanction letter dated 02-11-2021 bearing reference number IBL/CADSOUTH/CCBG/0929/2021-2022 ("**Sanction Letter**"), duly initialed by the Chairman / Managing Director for the purpose of identification, by whatever name called whether granted by way of fund or non-fund based credit facilities up to a maximum principal amount of Rs. 50,00,000/- (Rupees Fifty Lakhs rupees only) in aggregate, as detailed

Initial of the Chairman

MINUTES

herein below and on the terms, conditions and securities as mentioned in the Sanction Letter and as may be stipulated by the Bank from time to time.

| Facility | Limits Sanctioned (Rs. in Crores) | |
|---|---|---|
| | Existing | Revised |
| Cash Credit/ Overdraft | 0.00 | 0.50 |
| Working Capital Demand Loan | 0.00 | 0.00 |
| Pre-shipment Export Credit | 0.00 | 0.00 |
| Post shipment Export Credit | 0.00 | 0.00 |
| Short Term Loan | 120.00 | 120.00 |
| Medium/ Long term Loan | 0.00 | 0.00 |
| Others | 0.00 | 0.00 |
| Total Fund Based Facilities ('FB') | **120.00** | **120.50** |
| Letter of Credit (Inland / Foreign) | 0.00 | 0.00 |
| Bank Guarantee | 0.00 | 0.00 |
| Total Non Fund Based ('NFB') | **0.00** | **0.00** |
| **Total FB + NFB ('Overall Limit')** | **120.00** | **120.50** |

2. the Company for creating charge by way of hypothecation, mortgage, pledge or otherwise in favour of Indusind Bank or a security trustee appointed by the Lender over the Company's moveable and immovable assets to secure the Credit Facilities availed / to be availed by Company under the Sanction Letter.

**RESOLVED FURTHER THAT** the following officials of the Company ("Authorised Officials")–

(a) Byju Raveendran – Chairman & Managing Director
(b) Riju Ravindran - Director
(c) Divya Gokulnath - Director

be and are hereby severally authorised:-

a) to convey to the Bank, acceptance on behalf of the Company of the Sanction Letter and agree to such changes and modifications in the terms and conditions, as may be suggested by IndusInd Bank from time to time;
b) to negotiate, settle, finalise, accept, approve and execute documents as may be required in connection with financial facilities agreed to be extended by IndusInd Bank;
c) to sign and execute the agreements, deeds, documents and other writings for the purpose of availing the financial facilities from IndusInd Bank and to create security in favour IndusInd Bank;
d) to agree to such changes and modifications in the said terms and conditions as may be suggested/stipulated by IndusInd Bank from time to time in relation to the financial facilities and also to approve, finalise and sign such other deeds, documents and writings as may be required by the Bank in connection with the financial facility;

Initial of the Chairman

e) to register or lodge for registration with the relevant government authorities the memoranda of entry/deposit of title deeds and related declarations, and any amendments/ modifications thereto, including any rectification deed(s) executed by the Company in relation to the creation or modification of any security interest in favour of the Lender or a security trustee appointed by the Lender as contemplated hereinabove;

f) Opening and operation of Escrow Account; and

g) to execute on behalf of the Company, an irrevocable power of attorney to appoint IndusInd Bank or any person appointed by it, to be its true and lawful attorney, with full power of substitution and in its name or otherwise on its behalf to sign, seal, execute, register, deliver, perfect and do all deeds, instruments, acts and things which may be desirable or necessary, or which the Bank shall think proper or expedient for carrying out any obligations imposed on the Borrower under the facility documents or for exercising any of the powers conferred in connection with the financial facility or the exercise of any rights in respect thereof.

**RESOLVED FURTHER THAT** the Company do file the requisite forms with the Registrar of Companies and such government authorities as may be required for, *inter-alia*, creation / modification, registration or satisfaction of any charge in favour of the Lender and the creation of Security, and also take such other action as may be required in respect of financial facilities upon execution of the respective documents within the time stipulated under the applicable law.

**RESOLVED FURTHER THAT** a copy of the resolution be submitted to the Lender, duly certified by any of the Authorised Officials of the Company.

**7(vi). APPROVAL FOR AND AUTHORIZATION TO ENGAGE AND TRANSACT WITH GOLDMAN SACHS (INDIA) SECURITIES PTIVATE LIMITED AND MATTERS INCIDENTAL THERETO:**

The Chairman informed the board that the Company is proposing to engage and transact with Goldman Sachs (India) Securities Private Limited as a placement agent for the Company in relation to potential issuance of certain convertible preference shares in the Company.

In this regard, he requested the board to authorize any of the Directors to verify, sign, execute, deliver and submit such agreements, powers of attorney, consents, certificates, letters and other requisite documents, writings and deeds as may be deemed necessary or expedient.

The board after due discussion passed the following resolution unanimously:

**RESOLVED THAT** pursuant to provisions of the Articles of Association of the Company, the consent of the board be and is hereby accorded to the Company to engage and transact with Goldman Sachs (India) Securities Private Limited as a placement agent for the Company in relation to potential issuance of certain convertible preference shares in the Company.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN - 03416072), Director and Ms. Divya Gokulnath (DIN - 03415950), Director, (collectively, **"Authorized Directors"**) be and are hereby severally authorized on behalf of the Company:

Initial of the Chairman

[a] to verify, sign, execute, deliver and submit such agreements, powers of attorney, consents, certificates, letters and other requisite documents, writings and deeds as may be deemed necessary or expedient;

[b] to sign and attest any document on behalf of the company to complete the purpose(s) mentioned above and for any related purpose as determined by any of the authorized directors.

[c] to certify a copy of the aforementioned resolution and issue the same; and

[d] to do all such acts, deeds, matters and things in their absolute discretion, deem necessary, expedient, usual or proper, to be in the best interest of the Company; and to settle all doubts, difficulties that may arise from time to time while giving effect to this resolution."

**7(vii). APPROVAL FOR AND AUTHORIZATION TO OPEN AN ESCROW ACCOUNT WITH KOTAK MAHINDRA BANK LIMITED AND MATTERS INCIDENTAL THERETO:**

The Chairman apprised the board that the Company is intending to open an Escrow Account with Kotak Mahindra Bank Limited and he requested the board to authorize any of the Directors to execute the necessary forms, escrow agreement and any other relevant documents required thereof.

The board after discussion passed the following resolution unanimously:

"**RESOLVED THAT** the consent of the board be and is hereby accorded to the Company to open an Escrow Account bearing the title **"THINK & LEARN PRIVATE LIMITED"** with Kotak Mahindra Bank Limited and any one of the authorized signatories listed below are hereby authorized to execute the necessary forms, escrow agreement and any other relevant documents required thereof.

| NAME | DESIGNATION | SIGNATURE |
|---|---|---|
| Byju Raveendran | Chairman & Managing Director | Sd/- |
| Riju Ravindran | Director | Sd/- |
| Divya Gokulnath | Director | Sd/- |

**RESOLVED FURTHER THAT** the following signatories are severally authorized to operate and provide instructions for the above mentioned escrow account and any other banking facilities.

Initial of the Chairman

**MINUTES**

| NAME | DESIGNATION | SIGNATURE |
|---|---|---|
| Byju Raveendran | Chairman & Managing Director | Sd/- |
| Riju Ravindran | Director | Sd/- |
| Divya Gokulnath | Director | Sd/- |

**7(viii). APPROVAL FOR AND AUTHORIZATION TO SIGN & EXECUTE THE SERIES F SHARE SUBSCRIPTION AGREEMENT WITH GENGLOBAL AND MATTERS INCIDENTAL THERETO:**

The Chairman informed the board that the Company is proposing to sign and execute Series F Share Subscription Agreement (**"Redsprig Series F SSA"**) amongst Redsprig Innovation Partners LLP (**"Redsprig"**), Byju Raveendran, Riju Ravindran, Divya Gokulnath (**"Founders"**) and the Company for subscription of Series F CCCPS of the Company by Redsprig.

In this regard, he requested the board to authorize Director(s) to verify, sign, execute and deliver the Redsprig Series F SSA and all other incidental documents under the Redsprig Series F SSA in relation to the transactions contemplated thereunder.

Thereafter, the board discussed on the agenda and passed the following resolution unanimously:

"**RESOLVED THAT** pursuant to the provisions of Memorandum and Articles of Association of the Company read together with applicable provisions, if any, of the Companies Act, 2013 and the Rules made there-under (including any statutory modifications and re-enactment, for the time being in force), the consent of the Board of Directors be and is hereby accorded to sign and execute for and on behalf of the Company, Series F Share Subscription Agreement ("**Redsprig Series F SSA**") amongst Redsprig Innovation Partners LLP ("**Redsprig**"), Byju Raveendran, Riju Ravindran, Divya Gokulnath **("Founders")** and the Company, for the subscription of Series F CCCPS of the Company by Redsprig.

**RESOLVED FURTHER THAT** any of Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN - 03415950), Director, Mr. Riju Ravindran (DIN - 03416072), Director, be and are hereby severally authorized on behalf of the Company:

[a] to verify, sign, execute and deliver the Redsprig Series F SSA and all other incidental documents under the Redsprig Series F SSA in relation to the transactions contemplated thereunder (Redsprig Series F SSA and all other incidental documents are collectively referred to as the **'Redsprig Transaction Documents**');

Initial of the Chairman

**MINUTES**

[b] to affix common seal of the Company, if necessary, on the Redsprig Transaction Documents, in terms of Articles of Association of the Company;

[c] to certify a copy of the aforementioned resolution and issue the same; and

[d] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and settle all doubts, difficulties that may arise from time to time while giving effect to the above resolution."

**7(ix). SUMMARY OF THE DECISIONS TAKEN IN THE MEETING:**

The Chairman announced the summary of the decisions taken on each agenda item and declared that all the agendas were unanimously approved by the Directors.

**8. FIXATION OF SCHEDULE FOR NEXT BOARD MEETING:**

Thereafter, it was decided that the next Meeting of the Board of Directors be fixed by the Board at the earliest, in consultation with the Directors.

**9. VOTE OF THANKS:**

The Chairman thanked the Directors for their active participation at the Meeting. Thereafter, the Meeting was declared as concluded with a vote of thanks to the Chairman.

**BYJU RAVEENDRAN**
**CHAIRMAN OF THE BOARD**
**5TH DECEMBER 2021**
**BANGALORE**

DATE OF ENTRY IN THE MINUTES BOOK: **5TH DECEMBER 2021**

**BYJU RAVEENDRAN**
CHAIRMAN & MANAGING DIRECTOR
DIN: 03408398
NO.43, YOGANARASIMHA, 14TH MAIN, 15TH CROSS, BDA COMPLEX
HSR LAYOUT, SECTOR-4, BANGALORE – 560102, KARNATAKA, INDIA

Initial of the Chairman

# Exhibit 27

MINUTES

**THINK & LEARN PRIVATE LIMITED**
**CIN:** U80903KA2011PTC061427
**REGISTERED OFFICE:** IBC KNOWLEDGE PARK, 4/1, 2ND FLOOR
TOWER D, BANNERGHATTA MAIN ROAD, BANGALORE – 560029
KARNATAKA, INDIA

**MINUTES OF THE MEETING OF THE BOARD OF DIRECTORS OF THE COMPANY (TNLPL/BM/01/2022-23) HELD ON MONDAY, THE 27TH DAY OF JUNE 2022 AT 11:30 P.M. (IST) AT THE REGISTERED OFFICE OF THE COMPANY AT IBC KNOWLEDGE PARK, 4/1, 2ND FLOOR, TOWER D, BANNERGHATTA MAIN ROAD, BANGALORE - 560029, KARNATAKA, INDIA ('DEEMED VENUE') THROUGH VIDEO CONFERENCING OR OTHER AUDIO VISUAL MEANS.**

| | | |
|---|---|---|
| Time of commencement of the meeting | : | **11:30 P.M.** |
| Time of conclusion of the meeting | : | **12:30 A.M.** |

## I. ROUTINE AGENDA

**1. TO RECORD THE NAMES AND ATTENDANCE OF THE DIRECTORS PRESENT AT THE MEETING:**

| Sl. No. | Name, Designation & DIN | Mode of Presence at the Meeting (In Person / Video Conferencing or other Audio Visual means) | Location |
|---|---|---|---|
| (i) | **Mr. Byju Raveendran**<br>Chairman & Managing Director<br>DIN: 03408398 | Attended through VC/OAVM | New York |
| (ii) | **Ms. Divya Gokulnath**<br>Director<br>DIN: 03415950 | Attended through VC/OAVM | New York |
| (iii) | **Mr. Riju Ravindran**<br>Director<br>DIN: 03416072 | Attended through VC/OAVM | New York |

**2. TO CONSIDER CHAIRMAN OF THE MEETING:**

Mr. Byju Raveendran, the Chairman of the Board, occupied the chair.

Thereafter, roll call was taken by the Chairman, whereby the directors participating through video conference or other audio-visual means stated their name, confirmed the receipt of agenda for the meeting and confirmed that no other person is attending or has access to the proceedings of the meeting.

Thereafter, he confirmed that the requisite quorum was present and called the meeting to order and conducted the proceedings of the meeting as per the agenda.

Initial of the Chairman

MINUTES

3. **TO CONSIDER NOTICE OF THE MEETING:**

The Chairman noted that the Notice of the Board Meeting has been served to all the Directors and others who are entitled to receive the notice, in accordance with the articles of association of the Company and provisions of the Section 173(3) and other applicable provisions of the Companies Act, 2013 and Rules made there-under.

The Chairman further noted that the Meeting was called at a short notice and the Company has received the Consent from all the Directors pursuant to Section 173(3) of the Companies Act, 2013, to hold the Board Meeting at a Shorter Notice.

Notice of the Meeting was taken as read after seeking Directors' consent.

4. **TO GRANT LEAVE OF ABSENCE, IF ANY:**

Leave of absence was granted to Mr. G V Ravishankar (DIN: 02604007), Ms. Vivian Wu (DIN: 07649210) (**"Nominee Directors"**) and Mr. Russell Andrew Dreisenstock (DIN: 08368304), Director, as requested by them.

The Chairman took note of the leave of absence and waiver letter received from the nominee directors and director and informed the board that, the nominee directors and director have waived the requirement of their presence to constitute quorum as per Article 20 of the Articles of Association of the Company.

5. **TO CONFIRM THE MINUTES OF THE PREVIOUS BOARD MEETING OF THE COMPANY:**

The minutes of the previous meeting of the board of directors held on 5th March 2022 was placed before the meeting. After perusal, the said minutes were approved as a fair and correct record of the proceedings.

Thereafter, the following resolution was passed unanimously:

"**RESOLVED THAT** the minutes of the previous meeting of the board of directors held on 5th March 2022 as placed before the meeting be and is hereby noted and approved."

**II. STATUTORY AND/OR BUSINESS-RELATED AGENDA REQUIRING APPROVAL OR NOTING OF THE BOARD**

6. **NOTING OF CIRCULAR RESOLUTIONS PASSED BY THE COMPANY SINCE LAST BOARD MEETING:**

The Chairman briefed the board that in accordance with the provisions of Section 175 of the Companies Act, 2013 read together with Rule 5 of the Companies (Meetings of Board and its Powers) Rules, 2014, the Company had circulated resolutions for the consideration and approval of the board of directors on three occasions, since the date of last board meeting due to the urgency involved in passing the resolutions.

He further briefed that the recording of circular resolutions in the board minutes is required in accordance with the afore-stated provisions and from the perspective of good corporate governance.

Initial of the Chairman

**MINUTES**

In this connection, after discussions the board considered the proposal and passed the following resolution unanimously:

"**RESOLVED THAT** the following resolutions circulated to the Directors and approved by the Directors, as reproduced below, be and are hereby noted and confirmed:

1. **Circular Resolution No.25/2021-22, circulated by the Company and approved by the Directors on 29th March 2022:**

**APPROVAL FOR ALLOTMENT OF SERIES F COMPULSORILY CONVERTIBLE CUMULATIVE PREFERENCE SHARES TO BEARNAISE LUX S.C.SP. AND MATTERS INCIDENTAL THERETO:**

"**RESOLVED THAT** pursuant to (i) the provisions of Sections 23(2), 42, 62(1)(c), 55 and other applicable provisions, if any, of the Companies Act, 2013 ("**the Act**") read together with rules 9 & 13 of the Companies (Share Capital and Debentures) Rules, 2014 and rule 14 of Companies (Prospectus and Allotment of Securities) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force), (ii) the Foreign Exchange Management Act, 1999 and the rules specified thereunder, (iii) the enabling provisions of the memorandum and articles of association of the company, (iv) Series F Share Subscription Agreement (**"Series F SSA"**) executed on February 17, 2022, by and among the Company, Byju Raveendran, Riju Ravindran and Divya Gokulnath ("**the Founders**") and Bearnaise Lux S.C.Sp. (**"Vitruvian"**), (v) approval of the shareholders of the company by way of a special resolution at an extraordinary general meeting held on March 9, 2022, and (vi) receipt of application form and the subscription money in accordance with the Series F SSA from Vitruvian, the approval of the board be and is hereby accorded for allotment of 16,031 (Sixteen Thousand Thirty One) Series F Compulsorily Convertible Cumulative Preference Shares (**"Series F CCCPS"**) of face value of INR 10 (Indian Rupees Ten only) each, at a premium of INR 3,56,240/- (Indian Rupees Three Lakh Fifty Six Thousand Two Hundred Forty only) per Series F CCCPS, aggregating to total consideration of INR 571,10,43,750 (Indian Rupees Five Hundred Seventy One Crore Ten Lakh Forty Three Thousand Seven Hundred Fifty only) to Vitruvian, having terms set out in the articles of association of the company and reproduced in **Annexure A** hereto.

**RESOLVED FURTHER THAT** the share certificate for the Series F CCCPS allotted as aforementioned be and is hereby issued to Vitruvian in the manner indicated below under the signatures of (i) any two of the following three directors viz., Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN - 03415950), Director, Mr. Riju Ravindran (DIN - 03416072), Director, and (ii) an authorized signatory as may be identified by Mr. Byju Raveendran, in accordance with the applicable provisions of the Act (including rules made thereunder) and the common seal of the company be affixed on such share certificate as per the articles of association of the company:

| Sl. No. | Name | Folio No. | Sh. Cert. No. | No. of Shares | Distinctive Nos. | |
|---|---|---|---|---|---|---|
| | | | | | From | To |
| 1 | Bearnaise Lux S.C.Sp. | F-113 | F-169 | 16,031 | 1499040 | 1515070 |

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN - 03416072), Director and Ms. Divya

Initial of the Chairman

Gokulnath (DIN - 03415950), Director, be and are hereby severally authorized on behalf of the company:

[a] to sign and submit e-Form PAS-3 and other statutory forms along with necessary documents, if any, in accordance with the applicable provisions, if any, of the Companies Act, 2013, with the jurisdictional Registrar of Companies;

[b] to pay the stamp duty, issue share certificate, make entries in the register of members (to reflect the allotment of the aforesaid shares to Vitruvian and to record Vitruvian as the registered and beneficial owner of the Series F CCCPS) and other concerned registers, if any, maintained by the company in this regard;

[c] to submit or to authorize company's officials to submit master file creation form to National Securities Depository Limited for admission of Series F CCCPS allotted to Vitruvian pursuant to this resolution and to request for allocation of ISIN for the same;

[d] to submit relevant forms and to adhere to the rules and regulations of extant foreign exchange laws, as amended up-to-date, in respect of allotment of shares to Vitruvian, being a non-resident investor;

[e] to certify a copy of the resolution and issue the same; and

[f] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and settle all doubts, difficulties that may arise from time to time while giving effect to the above resolution."

**2. Circular Resolution No.26/2021-22, circulated by the Company and approved by the Directors on 30th March 2022:**

**APPROVAL FOR ALLOTMENT OF SERIES F COMPULSORILY CONVERTIBLE CUMULATIVE PREFERENCE SHARES TO MR. BYJU RAVEENDRAN AND BYJUS INVESTMENTS PRIVATE LIMITED AND MATTERS INCIDENTAL THERETO.**

"**RESOLVED THAT** pursuant to (i) the provisions of Sections 23(2), 42, 62(1)(c), 55 and other applicable provisions, if any, of the Companies Act, 2013 ("**the Act**") read together with rules 9 & 13 of the Companies (Share Capital and Debentures) Rules, 2014 and rule 14 of Companies (Prospectus and Allotment of Securities) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force), (ii) the enabling provisions of the memorandum and articles of association of the company (iii) approval of the shareholders of the company by way of a special resolution at an extraordinary general meeting held on March 9, 2021, and (iv) receipt of application form(s) and the subscription amount(s), the approval of the board be and is hereby accorded for allotment of Series F Compulsorily Convertible Cumulative Preference Shares **("Series F CCCPS")** of face value of INR 10 (Indian Rupees Ten only) each, at a premium of INR 3,56,240/- (Indian Rupees Three Lakh Fifty Six Thousand Two Hundred Forty only) per Series F CCCPS to Mr. Byju Raveendran and Byjus Investments Private Limited (**"BIPL"**) as detailed in the table below, having terms set out in the articles of association of the company and reproduced in **Annexure A** hereto.

Initial of the Chairman

MINUTES

| Sl. No. | Name of the Allottees | Number of Series F CCCPS Allotted | Total Consideration (in INR) |
|---|---|---|---|
| 1 | Byju Raveendran | 7,018 | 250,01,62,500 |
| 2 | Byjus Investments Private Limited | 14,035 | 499,99,68,750 |

**RESOLVED FURTHER THAT** the share certificates for the Series F CCCPS allotted as aforementioned be and are hereby issued to the allottees in the manner indicated below under the signatures of (i) any two of the following three directors viz., Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN - 03415950), Director, Mr. Riju Ravindran (DIN - 03416072), Director, and (ii) an authorized signatory as may be identified by Mr. Byju Raveendran, in accordance with the applicable provisions of the Act (including rules made thereunder) and the common seal of the company be affixed on such share certificates as per the articles of association of the company:

| Sl. No. | Name | Folio No. | Sh. Cert. No. | No. of Shares | Distinctive Nos. | |
|---|---|---|---|---|---|---|
| | | | | | From | To |
| 1 | Byjus Investments Private Limited | F-114 | F-170 | 14,035 | 1515071 | 1529105 |
| 2 | Byju Raveendran | F-115 | F-171 | 7,018 | 1529106 | 1536123 |

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN - 03416072), Director and Ms. Divya Gokulnath (DIN - 03415950), Director, be and are hereby severally authorized on behalf of the company:

[a] to sign and submit e-Form PAS-3 and other statutory forms along with necessary documents, if any, in accordance with the applicable provisions, if any, of the Companies Act, 2013, with the jurisdictional Registrar of Companies;

[b] to pay the stamp duty, issue share certificates, make entries in the register of members (to reflect the allotment of the aforesaid shares to the allottees and to record allottees as registered and beneficial owner of the Series F CCCPS) and other concerned registers, if any, maintained by the company in this regard;

[c] to submit or to authorize company's officials to submit master file creation form to National Securities Depository Limited for admission of Series F CCCPS allotted to the allottees pursuant to this resolution and to request for allocation of ISIN for the same;

[d] to certify a copy of the resolution and issue the same; and

[e] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and settle all doubts, difficulties that may arise from time to time while giving effect to the above resolution."

Byju

Initial of the Chairman

MINUTES

**3. Circular Resolution No.01/2022-23, circulated by the Company and approved by the Directors on 27th May 2022:**

**APPROVAL FOR ALLOTMENT OF SERIES F COMPULSORILY CONVERTIBLE CUMULATIVE PREFERENCE SHARES OF THINK & LEARN PRIVATE LIMITED ("COMPANY") TO ERSTWHILE HELLO ENGLISH SHAREHOLDERS AND MATTERS INCIDENTAL THERETO:**

"**RESOLVED THAT** pursuant to (i) the provisions of Sections 23(2), 42, 62(1)(c), 55 and other applicable provisions, if any, of the Companies Act, 2013 ("**the Act**") read together with rules 9 & 13 of the Companies (Share Capital and Debentures) Rules, 2014 and rule 14 of Companies (Prospectus and Allotment of Securities) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force), (ii) the Foreign Exchange Management Act, 1999 and the rules specified thereunder, (iii) the enabling provisions of the memorandum and articles of association of the company (iv) approval of the shareholders of the company by way of a special resolution at an extraordinary general meeting held on March 9, 2022 and (v) receipt of application forms from Internet Fund III Pte Limited ("**Tiger**"), Nishant Patni, Pranshu Patni, Kalysta Capital Fund Mauritius ("**Kalysta**") {Tiger, Nishant Patni, Pranshu Patni and Kalysta are collectively referred to as Erstwhile Intap Labs Private Limited ("**Hello English**") Shareholders}, the approval of the board be and is hereby accorded for allotment 2,815 (Two Thousand Eight Hundred Fifteen) Series F Compulsorily Convertible Cumulative Preference Shares **("Series F CCCPS")** of face value of INR 10/- (Indian Rupees Ten only) each to Erstwhile Hello English Shareholders in consideration for swap of 90,351 (Ninety Thousand Three Hundred Fifty One) equity shares of Hello English held by Erstwhile Hello English Shareholders, as detailed in the table below, having terms set out in the articles of association of the company and reproduced in **Annexure A** hereto.

| Name of the Allottee | Number of Series F CCCPS Allotted | Equity Shares of Hello English to be transferred to / acquired by the Company in consideration for issuance of Series F CCCPS of the Company | Price per Series F CCCPS including premium (in INR) | Total Consideration deemed to be paid for the Series F CCCPS allotted |
|---|---|---|---|---|
| Nishant Patni | 984 | 31,572 | 2,85,091.09 | 28,05,29,629 |
| Pranshu Patni | 492 | 15,786 | 2,85,091.09 | 14,02,64,814 |
| Internet Fund III Pte. Limited | 817 | 26,240 | 2,85,373.62 | 23,31,50,252 |
| Kalysta Capital Fund Mauritius | 522 | 16,753 | 2,85,163.63 | 14,88,55,418 |

Initial of the Chairman

**RESOLVED FURTHER THAT** the share certificates for the Series F CCCPS allotted as aforementioned be and are hereby issued to erstwhile Hello English shareholders in the manner indicated below under the signatures of (i) any two of the following three directors viz., Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN – 03415950), Director, Mr. Riju Ravindran (DIN – 03416072), Director, and (ii) an authorized signatory as may be identified by Mr. Byju Raveendran, in accordance with the applicable provisions of the Act (including rules made thereunder) and the common seal of the company be affixed on such share certificates as per the articles of association of the company:

| Sl. No. | Name | Folio No. | Sh. Cert. No. | No. of Shares | Distinctive Nos. | |
|---|---|---|---|---|---|---|
| | | | | | From | To |
| 1 | Nishant Patni | F-116 | F-172 | 984 | 1536124 | 1537107 |
| 2 | Pranshu Patni | F-117 | F-173 | 492 | 1537108 | 1537599 |
| 3 | Internet Fund III Pte. Limited | F-118 | F-174 | 817 | 1537600 | 1538416 |
| 4 | Kalysta Capital Fund Mauritius | F-119 | F-175 | 522 | 1538417 | 1538938 |

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN - 03416072), Director and Ms. Divya Gokulnath (DIN - 03415950), Director, be and are hereby severally authorized on behalf of the company:

[a] to sign and submit e-Form PAS-3 and other statutory forms along with necessary documents, if any, in accordance with the applicable provisions, if any, of the Companies Act, 2013, with the jurisdictional Registrar of Companies;

[b] to issue share certificates, make entries in the register of members (to reflect the allotment of the aforesaid shares to Erstwhile Hello English Shareholders and to record them as the registered and beneficial owner of the Series F CCCPS) and other concerned registers, if any, maintained by the company in this regard;

[c] to submit or to authorize company's officials to submit master file creation form to National Securities Depository Limited for admission of Series F CCCPS allotted to Erstwhile Hello English Shareholders pursuant to this resolution and to request for allocation of ISIN for the same;

[d] to submit relevant form(s) and to adhere to the rules and regulations of extant foreign exchange laws, as amended up-to-date, in respect of allotment of shares to erstwhile Hello English shareholders;

[e] to certify a copy of the resolution and issue the same; and

[f] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and settle all doubts, difficulties that may arise from time to time while giving effect to the above resolutions."

Initial of the Chairman

MINUTES

**APPROVAL FOR ALLOTMENT OF SERIES F COMPULSORILY CONVERTIBLE CUMULATIVE PREFERENCE SHARES OF THINK & LEARN PRIVATE LIMITED ("COMPANY") TO ERSTWHILE GEOGEBRA GMBH SHAREHOLDERS AND MATTERS INCIDENTAL THERETO:**

"**RESOLVED THAT** pursuant to (i) the provisions of Sections 23(2), 42, 62(1)(c), 55 and other applicable provisions, if any, of the Companies Act, 2013 ("**the Act**") read together with Rules 9 & 13 of the Companies (Share Capital and Debentures) Rules, 2014 and Rule 14 of Companies (Prospectus and Allotment of Securities) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force), (ii) the Foreign Exchange Management Act, 1999 and the rules specified thereunder, (iii) the enabling provisions of the memorandum and articles of association of the Company (iv) approval of the shareholders of the Company by way of a special resolution at an extraordinary general meeting held on March 9, 2022, (v) share swap agreement dated March 14, 2022, amongst the Company, GeoGebra GmbH ("**GeoGebra**"), Markus Hohenwarter, Michael Borcherds and Stephen Jull (Markus Hohenwarter, Michael Borcherds and Stephen Jull are collectively referred to as "**Erstwhile GeoGebra Shareholders**"), and (vi) receipt of application forms from each of the Erstwhile GeoGebra Shareholders, the approval of the board of directors of the Company be and is hereby accorded for allotment of 3,157 (Three Thousand One Hundred Fifty Seven) Series F Compulsorily Convertible Cumulative Preference Shares ("**Series F CCCPS**") of face value of INR 10/- (Indian Rupees Ten only) each of the Company, at a premium of INR 2,95,333.30/- (Indian Rupees Two Lakh Ninety Five Thousand Three Hundred Thirty Three point Three Zero) per Series F CCCPS to the Erstwhile GeoGebra Shareholders (as detailed in the table set forth below) in consideration for the transfer of equity interest representing 50% of the share capital in aggregate in GeoGebra held by the Erstwhile GeoGebra Shareholders (to the Company), as detailed in the table below, having terms set out in the articles of association of the Company and reproduced in **Annexure A** hereto.

| Name of the Allottee | Number of Series F CCCPS Allotted | Shares of GeoGebra to be transferred to / acquired by the Company in consideration for issuance of Series F CCPS of the Company | Price per Series F CCCPS including premium (in INR) | Total Consideration (in INR) |
|---|---|---|---|---|
| Markus Hohenwarter | 2,525 | 1 (Constituting 40% equity interest) | 2,95,343.30 | 74,57,41,839.94 |
| Michael Borcherds | 316 | 1 (Constituting 5% equity interest) | 2,95,343.30 | 9,33,28,483.53 |
| Stephen Jull | 316 | 1 (Constituting 5% equity interest) | 2,95,343.30 | 9,33,28,483.53 |

Initial of the Chairman

MINUTES

**RESOLVED FURTHER THAT** the share certificates for the Series F CCCPS allotted as aforementioned be and is hereby issued to Erstwhile GeoGebra Shareholders in the manner indicated below under the signatures of (i) any two of the following three directors viz., Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN – 03415950), Director, Mr. Riju Ravindran (DIN – 03416072), Director, and (ii) an authorized signatory as may be identified by Mr. Byju Raveendran, in accordance with the applicable provisions of the Act (including rules made thereunder) and the common seal of the Company be affixed on such share certificates as per the articles of association of the Company:

| Sl. No. | Name | Folio No. | Sh. Cert. No. | No. of Shares | Distinctive Nos. | |
|---|---|---|---|---|---|---|
| | | | | | From | To |
| 1 | Markus Hohenwarter | F-120 | F-176 | 2,525 | 1538939 | 1541463 |
| 2 | Michael Borcherds | F-121 | F-177 | 316 | 1541464 | 1541779 |
| 3 | Stephen Jull | F-122 | F-178 | 316 | 1541780 | 1542095 |

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN - 03416072), Director and Ms. Divya Gokulnath (DIN - 03415950), Director, be and are hereby severally authorized on behalf of the Company:

[a] to sign and submit e-Form PAS-3 and other statutory forms along with necessary documents, if any, in accordance with the applicable provisions, if any, of the Companies Act, 2013, with the jurisdictional Registrar of Companies;

[b] to issue share certificates, make entries in the register of members (to reflect the allotment of the aforesaid shares to Erstwhile GeoGebra Shareholders and to record them as the registered and beneficial owner of the Series F CCCPS) and other concerned registers, if any, maintained by the Company in this regard;

[c] to submit or to authorize Company's officials to submit master file creation form to National Securities Depository Limited for admission of Series F CCCPS allotted to Erstwhile GeoGebra Shareholders pursuant to this resolution and to request for allocation of ISIN for the same;

[d] to submit relevant form(s) and to adhere to the rules and regulations of extant foreign exchange laws, as amended up-to-date, in respect of allotment of shares to Erstwhile GeoGebra Shareholders;

[e] to certify a copy of the resolution and issue the same; and

[f] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and settle all doubts, difficulties that may arise from time to time while giving effect to the above resolutions."

Initial of the Chairman

**APPROVAL FOR AND AUTHORIZATION TO ISSUE SPLIT SHARE CERTIFICATES TO IIFL ENTITIES AND MATTERS INCIDENTAL THERETO:**

"**RESOLVED THAT** in response to the requests made by IIFL Special Opportunities Fund – Series 8, a scheme of IIFL Private Equity Fund (**"IIFL SOF 8"**) and IIFL Monopolistic Market Intermediaries Fund, a scheme of IIFL Private Equity Fund (**"IIFL MMIF"**) (IIFL SOF 8 and IIFL MMIF are hereinafter collectively referred to as **'IIFL Entities**), the existing shareholders, and on receipt of the original share certificates by the Company, the approval of the Board be and is hereby accorded to issue split share certificates in the following manner and to cancel and extinguish the original share certificates, pursuant to the enabling provisions of the Articles of Association of the Company read together with the provisions of Section 46 and other applicable provisions, if any, of the Companies Act, 2013 and the Rule 5 & 6 of the Companies (Share Capital and Debentures) Rules, 2014, (including any statutory modifications and re-enactment, for the time being in force):

| Sl. No. | Name of the Shareholder | Folio No. | Old Share Certificate No. | New Share Certificate No. | No. of Shares | Distinctive Nos. | |
|---|---|---|---|---|---|---|---|
| | | | | | | From | To |
| 1. | IIFL Special Opportunities Fund – Series 8, a scheme of IIFL Private Equity Fund | F-85 | F-151 | F-179 | 1,973 | 1307966 | 1309938 |
| | | | | F-180 | 448 | 1309939 | 1310386 |
| 2. | IIFL Monopolistic Market Intermediaries Fund, a scheme of IIFL Private Equity Fund | F-86 | F-152 | F-181 | 978 | 1310387 | 1311364 |
| | | | | F-182 | 461 | 1311365 | 1311825 |

**RESOLVED FURTHER THAT** the Company be and is hereby authorised to issue new share certificates as per the details furnished above to IIFL entities under the signatures of (i) any two of the following three directors viz., Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN – 03415950), Director, Mr. Riju Ravindran (DIN – 03416072), Director, and (ii) an authorized signatory as may be identified by Mr. Byju Raveendran, in accordance with the applicable provisions of the Companies Act, 2013, (including rules made thereunder) and the common seal of the company be affixed on such share certificates as per the articles of association of the company.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN - 03415950), Director, Mr. Riju Ravindran (DIN - 03416072), Director, be and are hereby severally authorized on behalf of the Company:

[a] to update the Register of Members and other concerned Registers, if any, maintained by the Company; and

[b] to certify a copy of the resolution and issue the same; and

Initial of the Chairman

[c] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and settle all doubts, difficulties that may arise from time to time while giving effect to the above resolutions."

**APPROVAL FOR ALLOTMENT OF EQUITY SHARES TO BENNETT, COLEMAN AND COMPANY LIMITED PURSUANT TO EXERCISE OF WARRANTS AND MATTERS INCIDENTAL THERETO:**

"**RESOLVED THAT** pursuant to (a) the provisions of Section 42 and 62 of the Companies Act, 2013 ("the Act") along with the applicable Rules made thereunder including but not limited to Companies (Prospectus and Allotment of Securities) Rules, 2014, Companies (Share Capital and Debentures) Rules, 2014 and all other applicable provisions, if any, of the Act (including any statutory modification(s) or re-enactment thereof, for the time being in force) (b) the provisions of the Memorandum and Articles of Association of the Company (c) Share cum Warrant Subscription Agreement (**"SWSA"**) executed amongst the Company, Bennett, Coleman & Company Limited (**"BCCL"**) and Mr. Byju Raveendran, Mr. Riju Ravindran & Ms. Divya Gokulnath (**"Promoters"**), and any other Rules / Regulations / Guidelines, if any, prescribed by other statutory / regulatory authority in India, the approval of the board be and is hereby accorded for allotment of 1,139 (One Thousand One Hundred Thirty Nine) equity shares of face value of Rs.10/- (Rupees Ten only) each of the Company on exercise of 5 (Five) Warrants held by BCCL, at a securities premium of Rs.1,14,060.98/- (One Lakh Fourteen Thousand Sixty point Nine Eight) per equity share, aggregating to total consideration of Rs.12,99,26,846/- (Twelve Crore Ninety Nine Lakh Twenty Six Thousand Eight Hundred Forty Six) as per the predetermined terms of SWSA, out of which Rs.1,30,00,000/- (Rupees One Crore Thirty Lakh) had been received by the Company as an initial subscription amount at the time of issuance of the said warrants under the SWSA and the balance amount of Rs.11,69,26,846/- (Rupees Eleven Crore Sixty Nine Lakh Twenty Six Thousand Eight Hundred Forty Six) on May 27, 2022.

**RESOLVED FURTHER THAT** the Board be and hereby takes note of the Warrant Exercise Notice dated May 19, 2022, received from BCCL for exercise of Warrants held by them and subscribe to 1,139 (One Thousand One Hundred Thirty Nine) equity shares of the Company in accordance with the terms of the SWSA.

**RESOLVED FURTHER THAT** the equity shares allotted to BCCL shall rank pari-passu with the existing equity shares of the Company as to dividend, voting or otherwise.

**RESOLVED FURTHER THAT** the share certificate for the equity shares allotted as aforementioned be and is hereby issued to BCCL in the manner indicated below under the signatures of (i) any two of the following three directors viz., Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN – 03415950), Director, Mr. Riju Ravindran (DIN – 03416072), Director, and (ii) an authorized signatory as may be identified by Mr. Byju Raveendran, in accordance with the applicable provisions of the Act (including rules made thereunder) and the common seal of the company be affixed on such share certificates as per the articles of association of the company:

Initial of the Chairman

| Sl. No. | Name | Folio No. | Sh. Cert. No. | No. of Shares | Distinctive Nos. | |
|---|---|---|---|---|---|---|
| | | | | | From | To |
| 1 | Bennett, Coleman & Company Limited | 23 | 175 | 1,139 | 1468691 | 1469829 |

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN - 03416072), Director and Ms. Divya Gokulnath (DIN - 03415950), Director, be and are hereby severally authorized on behalf of the company:

[a] to sign and submit e-Form PAS-3 and other statutory forms along with necessary documents, if any, in accordance with the applicable provisions, if any, of the Companies Act, 2013, with the jurisdictional Registrar of Companies;

[b] to issue share certificate, make entries in the register of members (to reflect the allotment of the aforesaid shares to BCCL) and other concerned registers, if any, maintained by the company in this regard;

[c] to submit or to authorize company's officials to submit corporate action information form to the Registrar and Transfer Agent and/or National Securities Depository Limited for updating the share capital data;

[d] to certify a copy of the resolution and issue the same; and

[e] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and settle all doubts, difficulties that may arise from time to time while giving effect to the above resolutions."

**7. TO CONSIDER AND NOTE THE DISCLOSURE OF INTEREST UNDER SECTION 184 OF THE COMPANIES ACT, 2013 RECEIVED FROM THE DIRECTORS FOR THE FINANCIAL YEAR 2022-23:**

The Chairman informed the board that it is mandatory for every director of the Company to disclose his/her interest in other Companies, Bodies Corporate, Firms or other Association of Individuals etc., pursuant to Section 184(1) of the Companies Act, 2013 read together with Rule 9(1) of Companies (Meetings of Board and its Powers) Rules, 2014.

He further informed the board that the Company has received such disclosure from all the directors in prescribed Form MBP-1 and he placed the disclosures received from the directors before the board for noting.

Thereafter, the board took note of the same and passed the following resolution unanimously:

"**RESOLVED THAT** the notices of disclosure of interest in Form MBP-1 received from the directors of the Company, pursuant to the provisions of Section 184(1) of the Companies Act, 2013 and the Rules made thereunder, for the financial year 2022-23, disclosing their concern or interest in other companies/bodies corporates/firms association of individuals, brought up and read at this meeting be and are hereby noted and taken on record.

Initial of the Chairman

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN - 03415950), Director, Mr. Riju Ravindran (DIN - 03416072), Director, be and are hereby severally authorized on behalf of the Company to make necessary entries in the 'Register of Contracts or Arrangements in which the Directors are interested' in accordance with Section 189 of the Companies Act, 2013 and the Rules made thereunder; and to do all such acts, deeds, things, matters required and settle all doubts, difficulties that may arise from time to time while giving effect to this resolution."

8. **TO CONSIDER AND NOTE THE DECLARATIONS UNDER SECTION 164 OF THE COMPANIES ACT, 2013 RECEIVED FROM THE DIRECTORS FOR THE FINANCIAL YEAR ENDED 31ST MARCH 2022:**

The Chairman apprised the board that it is mandatory for every director of the Company to confirm, declare and certify that he/she has not been disqualified from continuing to act as director of the Company in accordance with the provisions specified under Section 164(2) of the Companies Act, 2013 read together with Rule 14(1) of Companies (Appointment and Qualification of Directors) Rules, 2014.

He further informed the board that the Company has received declaration/qualification certificate in the prescribed Form DIR-8 from all the directors and placed the same before the board.

The Board took note of the same and passed the following resolution unanimously:

"**RESOLVED THAT** the declaration/qualification certificate in Form DIR-8 made by the directors of the Company for the financial year ended 31st March 2022 to the effect that they are qualified to continue to act as directors of the Company in terms of the provisions of Section 164(2) of the Companies Act, 2013 read together with Rule 14(1) of Companies (Appointment and Qualification of Directors) Rules, 2014, as placed before the meeting, be and is hereby noted and taken on record.

**RESOLVED FURTHER THAT** the Statutory Auditors of the Company be and are hereby informed about the receipt of such declarations and taking note thereof at the Board Meeting, for enabling them to report the fact to the shareholders for their information.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN - 03415950), Director, Mr. Riju Ravindran (DIN - 03416072), Director, be and are hereby severally authorized on behalf of the Company, to do all such acts, deeds, things, matters required and settle all doubts, difficulties that may arise from time to time while giving effect to this Resolution."

9. **APPROVAL FOR CANCELLATION/WITHDRAWAL OF AN OFFER AND ISSUANCE OF UNISSUED AND UNSUBSCRIBED SERIES F CCCPS MADE TO PROSPECTIVE INVESTORS AND MATTERS INCIDENTAL THERETO:**

The Chairman apprised the board that the Company at an extraordinary general meeting of the shareholders held on March 9, 2022, had approved an offer and issuance of Series F Compulsorily Convertible Cumulative Preference Shares (**"Series F CCCPS"**) of the Company under Private Placement to various identified investors including Sumeru Global Digital Technology Fund -A, L.P. (**"Sumeru"**),

Byju

Initial of the Chairman

**MINUTES**

Byjus Investments Private Limited **("BIPL")**, AMS Investment Management **("AMS")**, Redsprig Innovation Partners LLP **("RedSprig")**, Sasa Partners, LP **("Sasa")** DRD Holdings SARL **("DRD Holdings")**, BlackRock Strategic Income Opportunities Portfolio **("BSIOP")**, Master Total Return Portfolio of Master Bond LLC **("MTRP")**, BlackRock ESG Capital Allocation Trust **("BECAT")**.

He further informed that the Company intends to withdraw / cancel the earlier offer and issuance of Series F CCCPS made to Sumeru, BIPL, AMS, RedSprig, Sasa, DRD Holdings, BSIOP, MTRP and BECAT to open a new offer of securities in terms of Section 42(5) of the Companies Act, 2013. In this regard it is necessary to approve the withdrawal of the offer and issuance of Series F CCCPS and to authorize Director/s of the Company to verify, sign, execute and deliver requisite documents and to do all such acts, deeds, things etc., as may be required in relation thereto.

Thereafter, the board discussed on the agenda and passed the following resolution unanimously:

**"RESOLVED THAT** pursuant to the provisions of Section 42(5) and other applicable provisions, if any, of the Companies Act, 2013 ("**the Act**") read together with rule 14 of Companies (Prospectus and Allotment of Securities) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force), the consent of the board be and is hereby accorded to withdraw or cancel an offer and issuance of Series F Compulsorily Convertible Cumulative Preference Shares **("Series F CCCPS")** made to Sumeru Global Digital Technology Fund -A, L.P. (**"Sumeru"**), Byjus Investments Private Limited (**"BIPL"**), AMS Investment Management (**"AMS"**), Redsprig Innovation Partners LLP (**"RedSprig"**), Sasa Partners, LP (**"Sasa"**) DRD Holdings SARL (**"DRD Holdings"**), BlackRock Strategic Income Opportunities Portfolio (**"BSIOP"**), Master Total Return Portfolio of Master Bond LLC (**"MTRP"**), BlackRock ESG Capital Allocation Trust (**"BECAT"**) as detailed below:

| Sl. No | Name of the Investor | Maximum Number of Series F CCCPS that were Offered | Price per Series F CCCPS including Premium (in INR) | Total Consideration for the maximum number of Series F CCCPS that were Offered (in INR) |
|---|---|---|---|---|
| 1 | Sumeru Global Digital Technology Fund -A, L.P. | 32,210 | 3,56,250 | 11,47,48,12,500 |
| 2 | Byjus Investments Private Limited* | 77,193 | 3,56,250 | 27,50,00,06,250 |
| 3 | AMS Investment Management | 26,947 | 3,56,250 | 9,59,98,68,750 |
| 4 | Redsprig Innovation Partners LLP | 141 | 3,56,250 | 5,02,31,250 |
| 5 | Sasa Partners, LP | 3,158 | 3,56,250 | 1,12,50,37,500 |
| 6 | DRD Holdings SARL | 42,095 | 2,85,072 | 12,00,01,05,840 |
| 7 | BlackRock Strategic Income Opportunities Portfolio | 9,261 | 2,85,072 | 2,64,00,51,792 |
| 8 | Master Total Return Portfolio of Master Bond LLC | 3,297 | 2,85,072 | 93,98,82,384 |

Initial of the Chairman

| | | | | |
|---|---|---|---|---|
| 9 | BlackRock ESG Capital Allocation Trust | 1,473 | 2,85,072 | 41,99,11,056 |

**BIPL has subscribed to 14,035 (Fourteen Thousand Thirty Five) Series F CCCPS out of the total Series F CCCPS offered to them.*

**RESOLVED FURTHER THAT** the offer and issuance of Series F CCCPS made to Sumeru, AMS, RedSprig, Sasa, DRD Holdings, BSIOP, MTRP, BECAT and BIPL (to the extent unsubscribed) shall be withdrawn and cancelled with immediate effect.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN - 03416072), Director and Ms. Divya Gokulnath (DIN - 03415950), Director, be and are hereby severally authorized on behalf of the company:

[a] to take all necessary steps for withdrawal / cancellation of the offer and issuance of Series F CCCPS made to Sumeru, AMS, RedSprig, Sasa, DRD Holdings, BSIOP, MTRP, BECAT and BIPL;

[b] to verify, sign, execute and submit the necessary Documents and Papers;

[c] to certify a copy of the resolution and issue the same; and

[d] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and settle all doubts, difficulties that may arise from time to time while giving effect to the above resolutions."

**10. APPROVAL FOR AN OFFER AND ISSUANCE OF SERIES F CCCPS OF THE COMPANY UNDER PRIVATE PLACEMENT AND MATTERS INCIDENTAL THERETO.**

The Chairman informed the board that in order to meet further funding requirements for business expansion the Company proposes to offer and issue Series F Compulsorily Convertible Cumulative Preference Shares (**"Series F CCCPS"**) of face value of INR 10 (Indian Rupees Ten only) each, in accordance with (i) the provisions of Sections 23(2), 42, 62(1)(c), 55 and other applicable provisions, if any, of the Companies Act, 2013 (**"the Act"**) read together with rules 9 & 13 of the Companies (Share Capital and Debentures) Rules, 2014 and rule 14 of Companies (Prospectus and Allotment of Securities) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force), (ii) the Foreign Exchange Management Act, 1999 and the rules specified thereunder, (iii) the enabling provisions of the Articles of Association of the Company, and subject to the approval of the members at a general meeting by way of a special resolution, under private placement to the identified investors, as detailed below:

| S No | Name of the Identified Investors | Max. Number of Series F CCCPS to be offered and issued | Offer and issuance price per Series F CCCPS including premium (in INR) | Consideration for offer and issuance of the maximum number of Series F CCCPS (in INR) |
|---|---|---|---|---|

Initial of the Chairman

MINUTES

| | | | | |
|---|---|---|---|---|
| 1 | Sumeru Global Digital Technology Fund -A, L.P. | 32,210 | 3,56,250 | 11,47,48,12,500 |
| 2 | Byju's Investments Pte. Ltd. | 89,825 | 3,56,250 | 32,00,01,56,250 |
| 3 | DRD Holdings SARL | 42,095 | 2,85,072 | 12,00,01,05,840 |

Thereafter, he placed the Share Valuation Report from Mr. Saurobh Kumar Barick, Registered Valuer, holding Registration No. IBBI/RV/11/2019/12454, determining the fair value of shares of the Company, based on which the Series F CCCPS will be offered and issued to the identified investors.

Further, he requested the board to authorize any of the Directors to take all necessary steps for an offer and issuance of Series F CCCPS to the identified investors, to call and convene an extraordinary general meeting, to sign and submit the necessary documents and forms to the jurisdictional Registrar of Companies and to do all such incidental acts, deeds, things etc.

The board considered the agenda for discussion and passed the following resolution unanimously:

"**RESOLVED THAT** pursuant to (i) the provisions of Sections 23(2), 42, 62(1)(c), 55 and other applicable provisions, if any, of the Companies Act, 2013 ("**the Act**") read together with rules 9 & 13 of the Companies (Share Capital and Debentures) Rules, 2014 and rule 14 of Companies (Prospectus and Allotment of Securities) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force), (ii) the Foreign Exchange Management Act, 1999 and the rules specified thereunder, (iii) the enabling provisions of the Articles of Association of the Company and subject to the approval of the Members of the Company at a General Meeting, the consent of the Board be and is hereby accorded for the offer and issuance of Series F Compulsorily Convertible Cumulative Preference Shares ("**Series F CCCPS**") of face value of INR 10 (Indian Rupees Ten only) each, under private placement as detailed below:

| S No | Name of the Identified Investors | Max. Number of Series F CCCPS to be offered and issued | Offer and issuance price per Series F CCCPS including premium (in INR) | Consideration for offer and issuance of the maximum number of Series F CCCPS (in INR) |
|---|---|---|---|---|
| 1 | Sumeru Global Digital Technology Fund -A, L.P. | 32,210 | 3,56,250 | 11,47,48,12,500 |
| 2 | Byju's Investments Pte. Ltd. | 89,825 | 3,56,250 | 32,00,01,56,250 |
| 3 | DRD Holdings SARL | 42,095 | 2,85,072 | 12,00,01,05,840 |

**RESOLVED FURTHER THAT** the Series F CCCPS will have (i) priority with respect to payment of dividend or repayment of capital vis-à-vis Equity Shares, (ii) that the payment of dividend will be on cumulative basis, (iii) and that the terms of conversion, voting rights and other terms are attached as an **Annexure** to this Resolution.

Byju

Initial of the Chairman

MINUTES

**RESOLVED FURTHER THAT** the Private Placement Offer cum Application Letters serially numbered and addressed to the respective identified investors as required under Rule 14 of the Companies (Prospectus and Allotment of Securities) Rules, 2014 read with Section 42(3) of the Companies Act, 2013 (including any statutory modifications and re-enactment, for the time being in force) be approved and the same be issued to the respective investors to subscribe to Series F CCCPS upon approval of the offer and issuance by the members at a general meeting by way of Special Resolution and filing of such Special Resolution with the jurisdictional Registrar of Companies.

**RESOLVED FURTHER THAT** the Company to record the names of the identified investors and maintain such record of private placement offer of Series F CCCPS in Form PAS-5 under the Companies (Prospectus and Allotment of Securities) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force).

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN - 03415950), Director, Mr. Riju Ravindran (DIN - 03416072), Director, be and are hereby severally authorized on behalf of the Company:

[a] to take all necessary steps for offer and issuance of Series F CCCPS;

[b] to call and convene an extraordinary general meeting of the Company;

[c] to verify, sign and issue the offer letters and the application forms and to maintain a Record of Private Placement and to sign and execute all necessary documents and/or any other deed / document / letter / agreement;

[d] to verify, sign, execute and submit the necessary Documents and Forms, if any, to the jurisdictional Registrar of Companies;

[e] to certify a copy of the resolution and issue the same; and

[f] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and settle all doubts, difficulties that may arise from time to time while giving effect to the above resolutions."

**11. TO CALL AND CONVENE AN EXTRAORDINARY GENERAL MEETING AND MATTERS INCIDENTAL THERETO:**

The Board was informed by the Chairman about the requirement to convene an extraordinary general meeting of the shareholders of the Company to seek their approval for an offer and issuance of Series F Compulsorily Convertible Cumulative Preference Shares (**"Series F CCCPS"**) under private placement.

Then, he proposed to schedule an extraordinary general meeting of the shareholders on **Wednesday, the 29th day of June 2022** at **11:00 a.m. (IST)** through video conferencing ('VC') or other audio-visual means ('OAVM'), at a shorter notice with the consent of the shareholders of the Company.

Initial of the Chairman

Then, he requested the board to approve the *draft* of the notice of extraordinary general meeting along with the relevant annexures forming part of the notice and authorize any of the Directors to take all necessary steps to call and convene an extraordinary general meeting, and to do all such incidental acts, deeds, things etc.

Thereafter, the board considered the agenda, had a brief discussion and passed the following resolution unanimously:

"**RESOLVED THAT** an extraordinary general meeting of the shareholders of the Company be convened at a shorter notice on **Wednesday, the 29th day of June 2022** at **11:00 a.m. (IST)** through video conferencing ('VC') or other audio-visual means ('OAVM'), to consider and approve the matter as per the *draft* notice placed before the meeting, with or without modification(s).

**RESOLVED FURTHER THAT** the consent from all the shareholders and those who are entitled to receive the notice, for convening the extraordinary general meeting at shorter notice, be obtained by the Company according to the statutory provisions envisaged under the Companies Act, 2013.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN - 03415950), Director, Mr. Riju Ravindran (DIN - 03416072), Director, be and are hereby severally authorized on behalf of the Company:

[a] to issue notice convening the extraordinary general meeting along with the explanatory statement to all the directors, shareholders and to others entitled to receive the same;

[b] to verify, sign, execute and submit the necessary documents and forms to the jurisdictional Registrar of Companies; and

[c] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and settle all doubts, difficulties that may arise from time to time while giving effect to the above resolutions."

**III. ANY OTHER MATTERS**

**12. ANY OTHER AGENDA WITH THE PERMISSION OF THE CHAIRMAN AND THE MAJORITY OF THE DIRECTORS PRESENT AT THE MEETING:**

With the permission of the Chairman and consent of all the Directors present at the Meeting, the following additional matters were discussed and approved by the Board:

**12.1. APPROVAL FOR PROVIDING NO OBJECTION TO STEP-DOWN SUBSIDIARY DIGITAL ARISTOTLE PRIVATE LIMITED, TO USE THE PREMISES AS REGISTERED OFFICE:**

The Chairman informed the board that a consent from the board is required to **Digital Aristotle Private Limited,** step-down subsidiary, to use the premises located at **IBC Knowledge Park, 4/1, 13th Floor, Tower D, Bannerghatta Main Road, Bangalore – 560029, Karnataka, INDIA**, as its registered office.

Initial of the Chairman

Thereafter, the board considered the agenda, had a brief discussion and passed the following resolution unanimously:

"**RESOLVED THAT** pursuant to applicable provisions, if any, of the Companies Act, 2013 (the 'Act'), and rules framed thereunder (including any statutory modifications and re-enactment, for the time being in force), the consent of the Board be and is hereby accorded to **"DIGITAL ARISTOTLE PRIVATE LIMITED"**, step-down subsidiary, to use the premises located at **IBC Knowledge Park, 4/1, 13th Floor, Tower D, Bannerghatta Main Road, Bangalore – 560029, Karnataka, INDIA**, as its registered office.

**RESOLVED FURTHER THAT** any of the Directors of the Company, be and are hereby severally authorized on behalf of the Company:

[a] to sign and execute necessary documents, letters, etc. which are necessary to give effect to this resolution;

[b] to certify a copy of the aforementioned resolution and issue the same; and

[c] to do all such acts, deeds, matters and things in their absolute discretion, deem necessary, expedient, usual or proper, to be in the best interest of the Company; and to settle all doubts, difficulties that may arise from time to time while giving effect to this resolution."

**12.2. APPROVAL FOR ACQUISITION OF SECURITIES OF AAKASH EDUCATIONAL SERVICES LIMITED AND MATTERS INCIDENTAL THERETO:**

The chairman informed that the Company is proposing acquire certain securities of Aakash Educational Services Limited (**"Aakash"**) by way of secondary investment in one or more tranches from the existing shareholders of Aakash as detailed in the table below:

| S. No. | Transferor | Class of shares | No. of shares Proposed to be acquired |
|---|---|---|---|
| 1. | J C Chaudhry | Equity shares | 8,929,443 |
| 2. | Kamla Chaudhry | Equity shares | 1 |
| 3. | Aashish Chaudhry | Equity shares | 1 |
| 4. | Hemant Sultania | Equity shares | 17,425 |
| 5. | Singapore VII Topco I Pte. Ltd. | Equity shares | 17,763,992 |
| 6. | BCP Asia Athena ESC (Cayman) Ltd. | Equity shares | 127,297 |

Thereafter, the board considered the agenda, had a brief discussion and passed the following resolution unanimously:

"**RESOLVED THAT** pursuant to (i) the provisions of Section 179(3)(e), 186(2)(c) and other applicable provisions, if any, of the Companies Act, 2013 (the 'Act'), read with the Companies (Meetings of Board and its Powers) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force), (ii) the Foreign Exchange Management Act, 1999 and the rules specified thereunder, and (iii) in terms of the enabling provisions of the Articles of Association of the Company, the consent of the Board be and is hereby accorded for acquisition of the following

Initial of the Chairman

securities of Aakash Educational Services Limited ("**Aakash**") by the Company, by way of secondary investment in one or more tranches.

| S. No. | Transferor | Class of shares | No. of shares |
|---|---|---|---|
| 1. | J C Chaudhry | Equity shares | 8,929,443 |
| 2. | Kamla Chaudhry | Equity shares | 1 |
| 3. | Aashish Chaudhry | Equity shares | 1 |
| 4. | Hemant Sultania | Equity shares | 17,425 |
| 5. | Singapore VII Topco I Pte. Ltd. | Equity shares | 17,763,992 |
| 6. | BCP Asia Athena ESC (Cayman) Ltd. | Equity shares | 127,297 |

**RESOLVED FURTHER THAT** the Board of Directors hereby take note that the Company acquiring shares of Aakash will be deemed to be a downstream investment in accordance with the Foreign Exchange Management Act, 1999 and the rules and regulations made thereunder.

**RESOLVED FURTHER THAT** pursuant to provisions of Section 89 of the Act read with Rule 9 of the Companies (Management and Administration) Rules, 2014, (including any statutory modifications and re-enactment, for the time being in force) Great Lakes E-Learning Services Private Limited (CIN – U80302DL2010PTC211483), subsidiary of the Company, be and is hereby authorized on behalf of the Company to acquire 1 (one) Equity Shares of face value Rs. 5/- (Rupees Five Only) of Aakash and be a registered holder of such security of Aakash.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN: 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN: 03416072), Director and Ms. Divya Gokulnath, (DIN – 03415950), Director, be and are hereby severally authorized on behalf of the Company:

[a] to take all necessary steps for completion of the investment transaction including negotiation, amendment and finalization of the terms & conditions of the investment.

[b] to sign and execute declaration in Form No. MGT-5 pursuant to subsection (2) and (3) of section 89 of the Companies Act, 2013 and rule 9(2) of the Companies (Management and Administration) Rules, 2014;

[c] to file Form FC-TRS, for acquisition of securities by non-residents and to intimate downstream investment made by the Company in Form DI, with the Reserve Bank of India (RBI), through Authorized Dealer (AD) Bank and to intimate downstream investment with the Department for Promotion of Industry and Internal Trade, pursuant to the provisions of Foreign Exchange Management Act, 1999 and the rules specified thereunder;

[d] to sign and execute necessary documents, forms, applications etc. which are necessary to acquire the securities and to intimate the acquisition of securities with the regulatory authorities;

[e] to update the Register of Loans, Guarantee, Security and Acquisition made by the Company and other concerned Registers, if any, maintained by the Company in this regard;

Initial of the Chairman

MINUTES

[f] to certify a copy of the aforementioned resolution and issue the same; and

[g] to do all such acts, deeds, matters and things in their absolute discretion, deem necessary, expedient, usual or proper, to be in the best interest of the Company; and to settle all doubts, difficulties that may arise from time to time while giving effect to this resolution."

**12.3. ADOPTION OF UNAUDITED FINANCIAL STATEMENTS OF TANGIBLE PLAY, INC., A WHOLLY-OWNED SUBSIDIARY OF THE COMPANY:**

The Chairman informed the board that it is required to adopt and ratify unaudited financial statements of Tangible Play, Inc. ("Osmo"), a wholly owned subsidiary of the Company, for the financial year ended 31st March, 2021, consisting of balance sheet, statement of operations and notes and schedules appended thereto.

Thereafter, the board considered the agenda, had a brief discussion and passed the following resolution unanimously:

"**RESOLVED THAT** pursuant to applicable provisions, if any, of the Companies Act, 2013 read with the relevant Rules made there-under (including any Statutory modifications and/or re-enactment, for the time being in force), the Memorandum and Articles of Association of the Company, and such other provisions as may be applicable and other applicable laws, if any, the unaudited financial statements of Tangible Play, Inc. ("Osmo"), a wholly owned subsidiary of the Company, for the financial year ended 31st March, 2021, consisting of balance sheet, statement of operations and notes and schedules appended thereto, as placed before the board be and are hereby adopted and ratified."

**13. FIXATION OF SCHEDULE FOR NEXT BOARD MEETING:**

Thereafter, it was decided that the next Meeting of the Board of Directors be fixed by the Board at the earliest, in consultation with the Directors.

**14. VOTE OF THANKS:**

The Chairman thanked the Directors for their active participation at the Meeting. Thereafter, the Meeting was declared as concluded with a vote of thanks to the Chairman.

**BYJU RAVEENDRAN**
**CHAIRMAN OF THE BOARD**
**29TH JUNE 2022**
**NEW YORK**

DATE OF ENTRY IN THE MINUTES BOOK: **29TH JUNE 2022**

**BYJU RAVEENDRAN**
CHAIRMAN & MANAGING DIRECTOR
DIN: 03408398
NO.43, YOGANARASIMHA, 14TH MAIN, 15TH CROSS, BDA COMPLEX
HSR LAYOUT, SECTOR-4, BANGALORE – 560102, KARNATAKA, INDIA

Initial of the Chairman

ANNEXURE - A

TERMS OF SERIES F CCCPS

Capitalised terms used, but not defined in this Annexure shall have the meaning as ascribed to such terms in the articles of association of the Company.

1. **DIVIDEND RIGHTS**

1.1 The Series F CCCPS are issued at a preferential dividend rate of 0.001% (one thousandths per cent.) per annum ("**Series F Preferential Dividend**"). The Series F Preferential Dividend is cumulative and shall accrue from year to year whether or not paid, and accrued dividends shall be paid in full (together with dividends accrued from prior years) prior and in preference to any dividend or distribution payable upon shares of any other class or series in the same fiscal year.

1.2 In addition to and after payment of the Series F Preferential Dividend, each Series F CCCPS would be entitled to participate *pari passu* in any cash or non-cash dividends paid to the holders of shares of any other class (including Equity Shares) or series on a *pro rata*, As-converted Basis.

1.3 No dividend or distribution shall be paid on any share of any class or series of the Company if and to the extent that as a consequence of such dividend or distribution any Series F CCCPS would be entitled to a dividend hereunder greater than the maximum amount permitted to be paid in respect of Series F CCCPS of an Indian company held by a non-resident under applicable Law (including without limitation, the Foreign Exchange Management (Transfer or Issue of Security by a Person Resident Outside India), Regulations, 2017).

2. **CONVERSION OF THE SERIES F CCCPS**

2.1 Conversion

(a) Each Series F CCCPS may be converted into Equity Shares at any time at the option of the holder of the Series F CCCPS.

(b) Subject to compliance with applicable Law, each Series F CCCPS shall automatically be converted into Equity Shares, at the Series F Conversion Price (as defined below) then in effect, upon the earlier of (i) 1 (one) day prior to the expiry of 20 (twenty) years from the date of allotment, or (ii) in connection with an IPO (or any subsequent public offering), prior to the filing of a prospectus (or equivalent document, by whatever name called) hy the Company with the competent authority or such later date as may be permitted under applicable Law.

(c) The Series F CCCPS shall be converted into Equity Shares at the conversion price determined as provided herein in effect at the time of conversion, which shall initially be as provided in paragraph 2.1(d) below ("**Series F Conversion Price**").

(d) The initial Series F Conversion Price for the Series F CCCPS shall be total price per Series F CCCPS including premium.

(e) The number of Equity Shares issuable pursuant to the conversion of any Series F CCCPS shall be that number obtained by dividing the cumulative amount actually paid by holders of Series F CCCPS to subscribe to all the Series F CCCPS being converted, by the applicable Series F Conversion Price (as defined

above) at the time in effect for such Series F CCCPS. No fractional shares shall be issued upon conversion of the Series F CCCPS, and the number of Equity Shares to be issued shall be rounded to the nearest whole share.

2.2 **Conversion Procedure**

Each holder of a Series F CCCPS who elects to convert the Series F CCCPS into Equity Shares shall surrender the relevant share certificate or certificates therefore at the registered office of the Company, and shall, at the time of such surrender, give written notice to the Company that such holder has elected to convert the same and shall state in such notice the number of Series F CCCPS being converted. Within 10 (ten) Business Days after receipt of such notice and the accompanying share certificates, the Company shall issue and deliver to the holder of the converted Series F CCCPS, a share certificate or certificates for the aggregate number of Equity Shares issuable upon such conversion. Where such aggregate number of Equity Shares includes any fractional share, such fractional share shall be disregarded. Subject to the requirements of applicable Law, such conversion shall be deemed to have been made immediately prior to the close of business on the date of such surrender of the certificate or certificates representing the Series F CCCPS, and the Person entitled to receive the Equity Shares issuable upon such conversion shall be treated for all purposes as the record holder of such Equity Shares on such date.

In the event that the Company undertakes any form of Capital Restructuring, then the number of Equity Shares that each Series F CCCPS converts into and the Series F Conversion Price for each such Equity Share shall be adjusted accordingly in a manner that each holder of Series F CCCPS receives such number of Equity Shares that such holder would have been entitled to receive immediately after occurrence of any such Capital Restructuring had the conversion of the Series F CCCPS occurred immediately prior to the occurrence of such Capital Restructuring. It is clarified that from the effective date of each adjustment to the Series F Conversion Price, the term "Series F Conversion Price" shall thereafter mean the adjusted Series F Conversion Price.

3. **VOTING RIGHTS**

The holders of Series F CCCPS shall be entitled to receive notice of and vote on all matters that are submitted to the vote of the Shareholders (including the holders of Equity Shares). Each of the Company and the Founders acknowledge that the holders of Series F CCCPS had agreed to subscribe to the Series F CCCPS on the basis that they would be able to exercise voting rights on the Series F CCCPS as if the same were converted into Equity Shares. Each Series F CCCPS shall entitle the holder to the number of votes equal to the number of whole or fractional Equity Shares into which such Series F CCCPS could then be converted. To this effect, each of the Company and the Founders agree to ensure that the Articles shall at all times contain a provision enabling and permitting holders of each Preference Share of the Company to have the right to such number of votes as is equal to the number of Equity Shares issuable upon conversion of such Preference Shares. If applicable Law does not permit the holders of Series F CCCPS to exercise voting rights on all shareholder matters submitted to the vote of the Shareholders (including the holders of Equity Shares), then until the conversion of all the Series F CCCPS into Equity Shares, each Founder shall vote in accordance with the instructions of the holders of Series F CCCPS at a General Meeting or provide proxies without instructions to the holders of Series F CCCPS for the purposes of a General Meeting, in respect of such

number of Equity Shares held by each of them such that the relevant percentage of the Equity Shares of the Company are voted on in the manner required by holders of the Series F CCCPS. For the purposes of this paragraph 3 of Schedule IVF, the relevant percentage in relation to each holder of Series F CCCPS shall be equal to the percentage of Equity Shares in the Company that such holder of Series F CCCPS would hold if such holder of Series F CCCPS was to elect to convert their Series F CCCPS into Equity Shares based on the then applicable Series F Conversion Price. The obligation of all Shareholders (other than the Investors) to vote on their Equity Securities as aforesaid shall be *pro-rated* in accordance with their *inter se* shareholding in the Company.

Subject to the applicable Law, the Company and the Shareholders hereby agree and acknowledge that the provisions of Section 43 and Section 47 of the Act are not applicable to the Company.

**4. GENERAL**

No Impairment. The Company and Shareholders shall not avoid or seek to avoid the observance or performance of any of the terms to be observed or performed hereunder by the Company or the Shareholders, but shall at all times in good faith assist in carrying out all such action as may be reasonably necessary or appropriate in order to protect the rights of the holders of the Series F CCCPS against impairment.

Initial of the Chairman

# Exhibit 28

MINUTES

**THINK & LEARN PRIVATE LIMITED**
**CIN:** U80903KA2011PTC061427
**REGISTERED OFFICE:** IBC KNOWLEDGE PARK, 4/1, 2ND FLOOR
TOWER D, BANNERGHATTA MAIN ROAD, BANGALORE – 560029
KARNATAKA, INDIA

**MINUTES OF THE MEETING OF THE BOARD OF DIRECTORS OF THE COMPANY (TNLPL/BM/02/2022-23) HELD ON WEDNESDAY, THE 29TH DAY OF JUNE 2022 AT 06:30 P.M. (IST) AT THE REGISTERED OFFICE OF THE COMPANY AT IBC KNOWLEDGE PARK, 4/1, 2ND FLOOR, TOWER D, BANNERGHATTA MAIN ROAD, BANGALORE - 560029, KARNATAKA, INDIA ('DEEMED VENUE') THROUGH VIDEO CONFERENCING OR OTHER AUDIO VISUAL MEANS.**

Time of commencement of the meeting : **06:30 P.M.**
Time of conclusion of the meeting : **07:30 P.M.**

**I. ROUTINE AGENDA**

**1A. TO RECORD THE NAMES AND ATTENDANCE OF THE DIRECTORS PRESENT AT THE MEETING:**

| Sl. No. | Name, Designation & DIN | Mode of Presence at the Meeting (In Person / Video Conferencing or other Audio Visual means) | Location |
|---|---|---|---|
| (i) | **Mr. Byju Raveendran**<br>Chairman & Managing Director<br>DIN: 03408398 | Attended through video conference | New York |
| (ii) | **Ms. Divya Gokulnath**<br>Director<br>DIN: 03415950 | Attended through video conference | New York |
| (iii) | **Mr. Riju Ravindran**<br>Director<br>DIN: 03416072 | Attended through video conference | New York |
| (iv) | **Ms. Vivian Wu**<br>Nominee Director<br>DIN: 07649210 | Attended through video conference | California |
| (v) | **Mr. Russell Andrew Dreisenstock**<br>Director<br>DIN: 08368304 | Attended through video conference | Singapore |
| (vi) | **Mr. G. V. Ravishankar**<br>Nominee Director<br>DIN: 02604007 | Attended through video conference | Bangalore, INDIA |

**1B. TO RECORD THE NAMES AND ATTENDANCE OF THE INVITEES PRESENT AT THE MEETING:**

| Sl. No. | Name & Designation | Mode of Presence at the Meeting (In Person / Video |
|---|---|---|

Initial of the Chairman

MINUTES

| | | Conferencing or other Audio Visual means) |
|---|---|---|
| (i) | **Deepak Ravichandran**<br>Representing Alkeon entities | Attended through video conference |
| (ii) | **Aakash Tulsani**<br>Representing B Capital Group | Attended through video conference |
| (iii) | **Amit Patel**<br>Representing Owl entities | Attended through video conference |
| (iv) | **Anuj Aggarwal**<br>Representing Baron Capital | Attended through video conference |
| (v) | **Arjun Anand**<br>Representing Verlinvest S.A. | Attended through video conference |
| (vi) | **Barron Martin** | Attended through video conference |
| (vii) | **Chetan Naik**<br>Representing IIFL | Attended through video conference |
| (viii) | **Christopher Chalk**<br>Representing Vitruvian Partners | Attended through video conference |
| (ix) | **Colin Wu**<br>Representing Macquarie | Attended through video conference |
| (x) | **Dan Brody**<br>Representing Proxima Beta Pte. Ltd. | Attended through video conference |
| (xi) | **David Tarnowski**<br>Representing DTA | Attended through video conference |
| (xii) | **Germaine Low** | Attended through video conference |
| (xiii) | **Glenn Shapiro**<br>Representing A&Q Metric SPC | Attended through video conference |
| (xiv) | **Himanshu Gulati** | Attended through video conference |
| (xv) | **Jason Kirschner**<br>Representing Footpath Ventures | Attended through video conference |
| (xvi) | **Johannes Loefstrand**<br>Representing T. Rowe Price | Attended through video conference |
| (xvii) | **Kabir Narang**<br>Representing B Capital Group | Attended through video conference |
| (xviii) | **Maxence Tombeur**<br>Representing Sofina S.A. | Attended through video conference |
| (xix) | **Ruchira Shukla**<br>Representing International Finance Corporation | Attended through video conference |
| (xx) | **Sandeep Naik**<br>Representing General Atlantic Singapore TL Pte Ltd | Attended through video conference |
| (xxi) | **Saurabh Gupta**<br>Representing DST entities | Attended through video conference |
| (xxii) | **Sharad Bhojnagarwala**<br>Representing General Atlantic Singapore TL Pte. Ltd. | Attended through video conference |
| (xxiii) | **Michael Dennis**<br>Representing BlackRock | Attended through video conference |

Initial of the Chairman

MINUTES

| | | |
|---|---|---|
| (xxiii) | **Prakul Kaushiva**<br>Representing CPPIB | Attended through video conference |
| (xxiv) | **Ravi Bellur**<br>Representing Tarsadia Capital | Attended through video conference |
| (xxv) | **Sumit Pande**<br>Representing QIA entities | Attended through video conference |
| (xxvi) | **Yingqi Li**<br>Representing Silverlake | Attended through video conference |

**2. TO CONSIDER CHAIRMAN OF THE MEETING:**

Mr. Byju Raveendran, the Chairman of the Board, occupied the chair.

Thereafter, roll call was taken by the Chairman, whereby the directors participating through video conferencing stated their names, confirmed the receipt of agenda for the meeting and confirmed that no other person is attending or has access to the proceedings of the meeting.

He then informed the Board that Mr. Russell Andrew Dreisenstock (DIN – 08368304), Director, Mr. G.V. Ravishankar (DIN – 02604007), and Ms. Vivian Wu (DIN - 07649210), Nominee Director and all the invitees as stated above were present at the Meeting through video conferencing facility and confirmed that the requisite quorum was present.

Thereafter, he called the meeting to order and conducted the proceedings of the meeting as per the agenda.

**3. TO CONSIDER NOTICE OF THE MEETING:**

The Chairman noted that the Notice of the Board Meeting has been served to all the Directors and others who are entitled to receive the notice, in accordance with the articles of association of the Company and provisions of the Section 173(3) and other applicable provisions of the Companies Act, 2013 and Rules made there-under.

The Chairman further noted that the Meeting was called at a short notice and the Company has received the Consents from all the Directors pursuant to Section 173(3) of the Companies Act, 2013, to hold the Board Meeting at a Shorter Notice.

Notice of the Meeting was taken as read after seeking Directors' consent.

**4. TO GRANT LEAVE OF ABSENCE, IF ANY:**

Matter did not arise as all the Directors were present at the Meeting.

**5. TO CONFIRM THE MINUTES OF THE PREVIOUS BOARD MEETING OF THE COMPANY:**

The minutes of the previous meeting of the board of directors held on 27th June 2022 was placed before the meeting. After perusal, the said minutes were approved as a fair and correct record of the proceedings.

Thereafter, the following resolution was passed unanimously:

Initial of the Chairman

"**RESOLVED THAT** the minutes of the previous meeting of the board of directors held on 27th June 2022 as placed before the meeting be and is hereby noted and approved."

**II. STATUTORY AND/OR BUSINESS-RELATED AGENDA REQUIRING APPROVAL OR NOTING OF THE BOARD**

**6. REVIEW OF GENERAL BUSINESS PROGRESS OF THE COMPANY / STATUS UPDATE ON COMPANY'S ACTIVITIES AND DISCUSSION ON THE FINANCIAL PERFORMANCE FOR THE QUARTER ENDED AND FINANCIAL YEAR ENDED ON 31ST MARCH 2022.**

The Chairman briefed the Board on the general business progress of the Company.

Further, he presented a report on the Company's activities since the last Board Meeting. The Directors verified the same and planned on the course of action for the next quarter.

**III. ANY OTHER MATTERS**

**7. ANY OTHER AGENDA WITH THE PERMISSION OF THE CHAIRMAN AND THE MAJORITY OF THE DIRECTORS PRESENT AT THE MEETING:**

With the permission of the Chairman and consent of all the Directors present at the Meeting, the following additional matters were discussed and approved by the Board:

**7.1 TO CONSIDER AND APPROVE THE TRANSFER OF SECURITIES BETWEEN TIGER AFFILIATES AND MATTERS INCIDENTAL THERETO:**

The Chairman informed the board that the Company has received duly stamped and executed Securities Transfer Form (SH-4) between Internet Fund III Pte. Limited ("Transferor") and Internet Fund V Pte. Ltd. ("Transferee") and relevant share certificate, requesting the Company to consider and approve the transfer of shares.

Further, he requested the board to consider and approve the share transfer in accordance with the Form SH-4, placed before the board.
Thereafter, the board considered the matter and passed the following resolution unanimously:

"**RESOLVED THAT** pursuant to the duly stamped and executed Securities Transfer Form (**"Form SH-4"**) and the Share Certificate lodged with the Company by Internet Fund III Pte. Limited (**"Transferor"**) and Internet Fund V Pte. Ltd. (**"Transferee"**) requesting for transfer of 817 (Eight Hundred Seventeen) Series F Compulsorily Convertible Cumulative Preference Shares (**"Series F CCCPS"**) of the Company held by the Transferor to the Transferee as per the details given below, the consent of the Board be and is hereby accorded pursuant to (i) the provisions of Section 56 and other applicable provisions, if any, of the Companies Act, 2013 and the rules made there-under (including any statutory modifications and re-enactment, for the time being in force) and the articles of association of the Company, for such transfer and for taking on record such transfer:

Initial of the Chairman

**MINUTES**

| Transferor's Details | | No. and Nature of Securities Transferred | Securities Cert. No. | Distinctive Nos. | | Transferee's Details | |
|---|---|---|---|---|---|---|---|
| Lf. No. | Name | | | From | To | Lf. No. | Name |
| F-118 | Internet Fund III Pte. Limited | 817 Series F CCCPS | F-174 | 1537600 | 1538416 | F-25 | Internet Fund V Pte. Ltd. |

**RESOLVED FURTHER THAT** Mr. Byju Raveendran, Chairman & Managing Director (DIN - 03408398), Mr. Riju Ravindran (DIN - 03416072), Director and Ms. Divya Gokulnath (DIN - 03415950), Director, be and are hereby severally authorized on behalf of the Company:

[a] to endorse transfer of the above mentioned securities on Form SH-4 and the share certificate;

[b] to update the Register of Members and other statutory Registers, if any, maintained by the Company;

[c] to certify a copy of the resolution and issue the same; and

[d] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and settle all doubts, difficulties that may arise from time to time while giving effect to the above resolutions."

**8. FIXATION OF SCHEDULE FOR NEXT BOARD MEETING:**

Thereafter, it was decided that the next Meeting of the Board of Directors be fixed by the Board at the earliest, in consultation with the Directors.

**9. VOTE OF THANKS:**

The Chairman thanked the Directors for their active participation at the Meeting. Thereafter, the Meeting was declared as concluded with a vote of thanks to the Chairman.

**BYJU RAVEENDRAN**
**CHAIRMAN OF THE BOARD**
**16TH JULY 2022**
**NEW YORK**

DATE OF ENTRY IN THE MINUTES BOOK: **16TH JULY 2022**

**BYJU RAVEENDRAN**
CHAIRMAN & MANAGING DIRECTOR
DIN: 03408398
NO.43, YOGANARASIMHA, 14TH MAIN, 15TH CROSS, BDA COMPLEX
HSR LAYOUT, SECTOR-4, BANGALORE – 560102, KARNATAKA, INDIA

Initial of the Chairman

# Exhibit 29

MINUTES

**THINK & LEARN PRIVATE LIMITED**
**CIN:** U80903KA2011PTC061427
**REGISTERED OFFICE:** IBC KNOWLEDGE PARK, 4/1, 2ND FLOOR
TOWER D, BANNERGHATTA MAIN ROAD, BANGALORE – 560029
KARNATAKA, INDIA

**MINUTES OF THE EXTRAORDINARY GENERAL MEETING OF THE SHAREHOLDERS OF THE COMPANY (TNLPL/GM/01/2022-23) HELD AT THE REGISTERED OFFICE OF THE COMPANY AT IBC KNOWLEDGE PARK, 4/1, 2ND FLOOR, TOWER D, BANNERGHATTA MAIN ROAD, BANGALORE 560029, KARNATAKA, INDIA, ON WEDNESDAY, THE 29TH DAY OF JUNE 2022 AT 09:00 A.M. (IST) THROUGH VIDEO CONFERENCING OR OTHER AUDIO VISUAL MEANS**

Time of Commencement of the Meeting : **09:00 A.M.**
Time of Conclusion of the Meeting : **09:30 A.M.**

**1. TO RECORD THE NAMES AND ATTENDANCE OF THE DIRECTORS PRESENT AT THE MEETING**

| Sl. No. | Name, Designation & DIN | Mode of Presence at the Meeting (In Person / Video Conferencing or other Audio Visual means) | Location from where the meeting was attended |
|---|---|---|---|
| (i) | **Mr. Byju Raveendran**<br>Chairman & Managing Director<br>DIN: 03408398 | Attended through VC/OAVM | New York |
| (ii) | **Ms. Divya Gokulnath**<br>Director<br>DIN: 03415950 | Attended through VC/OAVM | New York |
| (iii) | **Mr. Riju Ravindran**<br>Director<br>DIN: 03416072 | Attended through VC/OAVM | New York |

**2. TO RECORD THE NAMES AND ATTENDANCE OF THE SHAREHOLDERS PRESENT AT THE MEETING**

| Sl. No. | Name | Mode of Presence at the Meeting (In Person / Video Conferencing or other Audio Visual means) | Location from where the meeting was attended |
|---|---|---|---|
| (i) | **Mr. Byju Raveendran** | Attended through VC/OAVM | New York |
| (ii) | **Ms. Divya Gokulnath** | Attended through VC/OAVM | New York |
| (iii) | **Mr. Riju Ravindran** | Attended through VC/OAVM | New York |

Byju

Initial of the Chairman

MINUTES

**3. TO CONSIDER CHAIRMAN OF THE MEETING**

Mr. Byju Raveendran, the Chairman, occupied the chair. He then informed the members that the extraordinary general meeting is being held through video conferencing as per the framework prescribed by the Ministry of Corporate Affairs.

After recording that the quorum was present and that the meeting was in order, the Chairman initiated the proceedings of the meeting as per the agenda.

Thereafter, he formally extended a very warm welcome to the Shareholders for the Extraordinary General Meeting and explained the need to convene the Extraordinary General Meeting to consider the special business item as stated in the notice of the meeting.

**4. NOTING OF ATTENDANCE OF SHAREHOLDERS, DIRECTORS, AND STATUTORY AUDITORS**

The Chairman noted that:

[a] Three (3) Directors were present at the meeting and Ms. Vivian Wu, Nominee Director, Mr. G V Ravishankar, Nominee Director and Mr. Russel Andrew Dreisenstock, Director, did not attend the meeting due to pre-occupation.

[b] Three (3) Shareholders were present at the meeting.

[c] The Company has received waiver letter from Chan Zuckerberg Mauritius as required under Article 38 of Articles of Association of the Company, waiving the requirement of presence of their authorised representative to constitute the quorum for the meeting.

[d] Statutory Auditors have expressed their inability to attend the meeting due to their preoccupation and have not appointed any of their authorized representatives to attend the meeting.

**5. NOTICE OF THE MEETING**

The Chairman noted that the notice of the Extraordinary General Meeting has been served to all the members of the Company, Directors of the Company and Statutory Auditors of the Company, in accordance with the provisions of the Section 101(3) and other applicable provisions of the Companies Act, 2013 and Rules made thereunder and General Circular 17/2020 dated April 13, 2020, issued by the Ministry of Corporate Affairs, prescribing the manner and mode of issue of notices to the members before convening the general meeting.

The Chairman further noted that the meeting has been called at shorter notice and the requisite consents for the same have been received from the Shareholders.

The notice of the Extraordinary General Meeting was taken as read after seeking Shareholders' consent.

Initial of the Chairman

MINUTES

6. **APPROVAL FOR OFFER AND ISSUE OF SERIES F CCCPS OF THE COMPANY UNDER PRIVATE PLACEMENT AND INCIDENTAL MATTERS THERETO:**

The Chairman informed the members that in order to meet further funding requirements, the board of directors of the Company had proposed to offer and issue Series F Compulsorily Convertible Cumulative Preference Shares ("**Series F CCCPS**") of face value of INR 10/- (Indian Rupees Ten only) each, under Private Placement. He then stated that the provisions of Sections 23, 42, 62 (1)(c) and 55 of the Companies Act, 2013 and Rule 14 of the Companies (Prospectus and Allotment of Securities) Rules, 2014 and Rules 9 & 13 of the Companies (Share Capital and Debentures) Rules, 2014 require the consent of the Shareholders by way of Special Resolution for offer and issue of any securities through Private Placement.

In this connection, Mr. Riju Ravindran proposed the following Resolution as a Special Resolution:

"**RESOLVED THAT** pursuant to (i) the provisions of Sections 23(2), 42, 62(1)(c), 55 and other applicable provisions, if any, of the Companies Act, 2013, read together with rules 9 & 13 of the Companies (Share Capital and Debentures) Rules, 2014 and rule 14 of Companies (Prospectus and Allotment of Securities) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force), (ii) the Foreign Exchange Management Act, 1999 and the rules specified thereunder, and (iii) the enabling provisions of the Articles of Association of the Company, the approval of the Members of the Company be and is hereby accorded for an offer and issuance of Series F Compulsorily Convertible Cumulative Preference Shares ("**Series F CCCPS**") of face value of INR 10/- (Indian Rupees Ten only) each, under private placement to the identified investors as detailed in the table below:

| S No | Name of the Identified Investors | Max. Number of Series F CCCPS to be offered and issued | Offer and issuance price per Series F CCCPS including premium (in INR) | Consideration for offer and issuance of the maximum number of Series F CCCPS (in INR) |
|---|---|---|---|---|
| 1 | Sumeru Global Digital Technology Fund -A, L.P. | 32,210 | 3,56,250 | 11,47,48,12,500 |
| 2 | Byju's Investments Pte. Ltd. | 89,825 | 3,56,250 | 32,00,01,56,250 |
| 3 | DRD Holdings SARL | 42,095 | 2,85,072 | 12,00,01,05,840 |

**RESOLVED FURTHER THAT** the Series F CCCPS will have (i) priority with respect to payment of dividend or repayment of capital vis-à-vis Equity Shares, (ii) that the payment of dividend will be on cumulative basis, and (iii) that the terms of conversion, voting rights and other terms are attached as an **Annexure** to this Resolution.

**RESOLVED FURTHER THAT** the Private Placement Offer cum Application Letters serially numbered and addressed to the identified investors as required under Rule 14 of the Companies (Prospectus and Allotment of Securities) Rules, 2014 read with Section 42(3) of the Companies Act, 2013 (including any statutory modifications and re-enactment, for the time being in force) be approved and the same be issued to the

Initial of the Chairman

identified investors to subscribe to Series F CCCPS upon filing of this Special Resolution with the jurisdictional Registrar of Companies and that a Record of the Private Placement Offer Letter be maintained in Form PAS-5.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN - 03415950), Director, Mr. Riju Ravindran (DIN - 03416072), Director, be and are hereby severally authorized on behalf of the Company:

[a] to take all necessary steps for offer and issue of Series F CCCPS;

[b] to verify, sign and issue the offer letters and the application forms and to maintain a Record of Private Placement and to sign and execute all necessary documents and/or any other deed/document / letter/agreement;

[c] to verify, sign, execute and submit the necessary documents and forms, if any, to the jurisdictional Registrar of Companies;

[d] to certify a copy of the resolution and issue the same; and

[e] to do all such acts, deeds, matters and things in their absolute discretion, deem necessary, expedient, usual or proper, to be in the best interest of the Company; and to settle all doubts, difficulties that may arise from time to time while giving effect to this resolution."

Ms. Divya Gokulnath seconded the Resolution.

The Chairman, then put the said Resolution to vote on show of hands, and the Resolution was passed unanimously by all the members present at the meeting.

**7. VOTE OF THANKS**

Since there was no other agenda/business, the Chairman thanked the Members for their presence and active participation at the Meeting.

Thereafter, the Meeting was declared concluded with a vote of thanks to the Chairman.

**BYJU RAVEENDRAN**
**CHAIRMAN**
**19TH JULY 2022**
**NEW YORK**

DATE OF ENTRY IN THE MINUTES BOOK: **6TH JULY 2022**

**BYJU RAVEENDRAN**
CHAIRMAN & MANAGING DIRECTOR
DIN: 03408398
NO.43, YOGANARASIMHA, 14TH MAIN, 15TH CROSS, BDA COMPLEX
HSR LAYOUT, SECTOR-4, BANGALORE – 560102
KARNATAKA, INDIA

Initial of the Chairman

## ANNEXURE

## TERMS OF SERIES F CCCPS

Capitalised terms used, but not defined in this Annexure shall have the meaning as ascribed to such terms in the articles of association of the Company.

### 1. DIVIDEND RIGHTS

1.1 The Series F CCCPS are issued at a preferential dividend rate of 0.001% (one thousandths per cent.) per annum ("**Series F Preferential Dividend**"). The Series F Preferential Dividend is cumulative and shall accrue from year to year whether or not paid, and accrued dividends shall be paid in full (together with dividends accrued from prior years) prior and in preference to any dividend or distribution payable upon shares of any other class or series in the same fiscal year.

1.2 In addition to and after payment of the Series F Preferential Dividend, each Series F CCCPS would be entitled to participate *pari passu* in any cash or non-cash dividends paid to the holders of shares of any other class (including Equity Shares) or series on a *pro rata*, As-converted Basis.

1.3 No dividend or distribution shall be paid on any share of any class or series of the Company if and to the extent that as a consequence of such dividend or distribution any Series F CCCPS would be entitled to a dividend hereunder greater than the maximum amount permitted to be paid in respect of Series F CCCPS of an Indian company held by a non-resident under applicable Law (including without limitation, the Foreign Exchange Management (Transfer or Issue of Security by a Person Resident Outside India), Regulations, 2017).

### 2. CONVERSION OF THE SERIES F CCCPS

2.1 Conversion

(a) Each Series F CCCPS may be converted into Equity Shares at any time at the option of the holder of the Series F CCCPS.

(b) Subject to compliance with applicable Law, each Series F CCCPS shall automatically be converted into Equity Shares, at the Series F Conversion Price (as defined below) then in effect, upon the earlier of (i) 1 (one) day prior to the expiry of 20 (twenty) years from the date of allotment, or (ii) in connection with an IPO (or any subsequent public offering), prior to the filing of a prospectus (or equivalent document, by whatever name called) by the Company with the competent authority or such later date as may be permitted under applicable Law.

(c) The Series F CCCPS shall be converted into Equity Shares at the conversion price determined as provided herein in effect at the time of conversion, which shall initially be as provided in paragraph 2.1(d) below ("**Series F Conversion Price**").

(d) The initial Series F Conversion Price for the Series F CCCPS shall be total price per Series F CCCPS including premium.

(e) The number of Equity Shares issuable pursuant to the conversion of any Series F CCCPS shall be that number obtained by dividing the cumulative amount actually paid by holders of Series F CCCPS to subscribe to all the Series F CCCPS being converted, by the applicable Series F Conversion Price (as defined

Byju

Initial of the Chairman

MINUTES

above) at the time in effect for such Series F CCCPS. No fractional shares shall be issued upon conversion of the Series F CCCPS, and the number of Equity Shares to be issued shall be rounded to the nearest whole share.

2.2 **Conversion Procedure**

Each holder of a Series F CCCPS who elects to convert the Series F CCCPS into Equity Shares shall surrender the relevant share certificate or certificates therefore at the registered office of the Company, and shall, at the time of such surrender, give written notice to the Company that such holder has elected to convert the same and shall state in such notice the number of Series F CCCPS being converted. Within 10 (ten) Business Days after receipt of such notice and the accompanying share certificates, the Company shall issue and deliver to the holder of the converted Series F CCCPS, a share certificate or certificates for the aggregate number of Equity Shares issuable upon such conversion. Where such aggregate number of Equity Shares includes any fractional share, such fractional share shall be disregarded. Subject to the requirements of applicable Law, such conversion shall be deemed to have been made immediately prior to the close of business on the date of such surrender of the certificate or certificates representing the Series F CCCPS, and the Person entitled to receive the Equity Shares issuable upon such conversion shall be treated for all purposes as the record holder of such Equity Shares on such date.

In the event that the Company undertakes any form of Capital Restructuring, then the number of Equity Shares that each Series F CCCPS converts into and the Series F Conversion Price for each such Equity Share shall be adjusted accordingly in a manner that each holder of Series F CCCPS receives such number of Equity Shares that such holder would have been entitled to receive immediately after occurrence of any such Capital Restructuring had the conversion of the Series F CCCPS occurred immediately prior to the occurrence of such Capital Restructuring. It is clarified that from the effective date of each adjustment to the Series F Conversion Price, the term "Series F Conversion Price" shall thereafter mean the adjusted Series F Conversion Price.

3. **VOTING RIGHTS**

The holders of Series F CCCPS shall be entitled to receive notice of and vote on all matters that are submitted to the vote of the Shareholders (including the holders of Equity Shares). Each of the Company and the Founders acknowledge that the holders of Series F CCCPS had agreed to subscribe to the Series F CCCPS on the basis that they would be able to exercise voting rights on the Series F CCCPS as if the same were converted into Equity Shares. Each Series F CCCPS shall entitle the holder to the number of votes equal to the number of whole or fractional Equity Shares into which such Series F CCCPS could then be converted. To this effect, each of the Company and the Founders agree to ensure that the Articles shall at all times contain a provision enabling and permitting holders of each Preference Share of the Company to have the right to such number of votes as is equal to the number of Equity Shares issuable upon conversion of such Preference Shares. If applicable Law does not permit the holders of Series F CCCPS to exercise voting rights on all shareholder matters submitted to the vote of the Shareholders (including the holders of Equity Shares), then until the conversion of all the Series F CCCPS into Equity Shares, each Founder shall vote in accordance with the instructions of the holders of Series F CCCPS at a General Meeting or provide proxies without instructions to the holders of Series F CCCPS for the purposes of a General Meeting, in respect of such

Initial of the Chairman

number of Equity Shares held by each of them such that the relevant percentage of the Equity Shares of the Company are voted on in the manner required by holders of the Series F CCCPS. For the purposes of this paragraph 3 of Schedule IVF, the relevant percentage in relation to each holder of Series F CCCPS shall be equal to the percentage of Equity Shares in the Company that such holder of Series F CCCPS would hold if such holder of Series F CCCPS was to elect to convert their Series F CCCPS into Equity Shares based on the then applicable Series F Conversion Price. The obligation of all Shareholders (other than the Investors) to vote on their Equity Securities as aforesaid shall be *pro-rated* in accordance with their *inter se* shareholding in the Company.

Subject to the applicable Law, the Company and the Shareholders hereby agree and acknowledge that the provisions of Section 43 and Section 47 of the Act are not applicable to the Company.

4. **GENERAL**

No Impairment. The Company and Shareholders shall not avoid or seek to avoid the observance or performance of any of the terms to be observed or performed hereunder by the Company or the Shareholders, but shall at all times in good faith assist in carrying out all such action as may be reasonably necessary or appropriate in order to protect the rights of the holders of the Series F CCCPS against impairment.

Initial of the Chairman

# Exhibit 30

MINUTES

**THINK & LEARN PRIVATE LIMITED**
**CIN:** U80903KA2011PTC061427
**REGISTERED OFFICE:** IBC KNOWLEDGE PARK, 4/1, 2ND FLOOR
TOWER D, BANNERGHATTA MAIN ROAD, BANGALORE – 560029
KARNATAKA, INDIA

**MINUTES OF THE MEETING OF THE BOARD OF DIRECTORS OF THE COMPANY (TNLPL/BM/03/2022-23) HELD ON SATURDAY, THE 16TH DAY OF JULY 2022 AT 12:00 NOON (IST) AT THE REGISTERED OFFICE OF THE COMPANY AT IBC KNOWLEDGE PARK, 4/1, 2ND FLOOR, TOWER D, BANNERGHATTA MAIN ROAD, BANGALORE - 560029, KARNATAKA, INDIA ('DEEMED VENUE') THROUGH VIDEO CONFERENCING OR OTHER AUDIO VISUAL MEANS.**

Time of commencement of the meeting : **12:00 NOON**
Time of conclusion of the meeting : **12:50 P.M.**

**I. ROUTINE AGENDA**

**1. TO RECORD THE NAMES AND ATTENDANCE OF THE DIRECTORS PRESENT AT THE MEETING:**

| Sl. No. | Name, Designation & DIN | Mode of Presence at the Meeting (In Person / Video Conferencing or other Audio Visual means) | Location |
|---|---|---|---|
| (i) | **Mr. Byju Raveendran**<br>Chairman & Managing Director<br>DIN: 03408398 | Attended through VC/OAVM | New York |
| (ii) | **Ms. Divya Gokulnath**<br>Director<br>DIN: 03415950 | Attended through VC/OAVM | Bangalore |
| (iii) | **Mr. Riju Ravindran**<br>Director<br>DIN: 03416072 | Attended through VC/OAVM | Bangalore |

**2. TO CONSIDER CHAIRMAN OF THE MEETING:**

Mr. Byju Raveendran, the Chairman of the Board, occupied the chair.

Thereafter, roll call was taken by the Chairman, whereby the directors participating through video conferencing stated their names, confirmed the receipt of agenda for the meeting and confirmed that the requisite quorum was present and no other person is attending or has access to the proceedings of the meeting.

Thereafter, he called the meeting to order and conducted the proceedings of the meeting as per the agenda.

**3. TO CONSIDER NOTICE OF THE MEETING:**

The Chairman noted that the Notice of the Board Meeting has been served to all the

Byju

Initial of the Chairman

Directors and others who are entitled to receive the notice, in accordance with the articles of association of the Company and provisions of the Section 173(3) and other applicable provisions of the Companies Act, 2013 and Rules made there-under.

The Chairman further noted that the Meeting was called at a short notice and the Company has received the Consents from all the Directors pursuant to Section 173(3) of the Companies Act, 2013, to hold the Board Meeting at a Shorter Notice.

Notice of the Meeting was taken as read after seeking Directors' consent.

**4. TO GRANT LEAVE OF ABSENCE, IF ANY:**

Leave of absence was granted to Mr. G V Ravishankar (DIN: 02604007), Ms. Vivian Wu (DIN: 07649210) **("Nominee Directors")** and Mr. Russell Andrew Dreisenstock (DIN: 08368304), Director, as requested by them.

The Chairman took note of the leave of absence and waiver letter received from the nominee directors and director and informed the board that, the nominee directors and director have waived the requirement of their presence to constitute quorum as per Article 20 of the Articles of Association of the Company.

**5. TO CONFIRM THE MINUTES OF THE PREVIOUS BOARD MEETING OF THE COMPANY:**

The minutes of the previous meeting of the board of directors held on 29th June 2022 was placed before the meeting. After perusal, the said minutes were approved as a fair and correct record of the proceedings.

Thereafter, the following resolution was passed unanimously:

"**RESOLVED THAT** the minutes of the previous meeting of the board of directors held on 29th June 2022 as placed before the meeting be and is hereby noted and approved."

**II. STATUTORY AND/OR BUSINESS-RELATED AGENDA REQUIRING APPROVAL OR NOTING OF THE BOARD**

**6. NOTING OF CIRCULAR RESOLUTIONS PASSED BY THE COMPANY SINCE THE LAST BOARD MEETING:**

The Chairman briefed the board that in accordance with the provisions of Section 175 of the Companies Act, 2013 read together with Rule 5 of the Companies (Meetings of Board and its Powers) Rules, 2014, the Company had circulated resolutions for the consideration and approval of the board of directors on two occasions since physical meeting of the board of directors within a short period was not possible.

He further briefed that the recording of circular resolutions in the board minutes is required in accordance with the afore-stated provisions and from the perspective of good corporate governance.

In this connection, after discussions the board considered the proposal and passed the following resolution unanimously:

Initial of the Chairman

**MINUTES**

"**RESOLVED THAT** the following resolutions circulated to the Directors and approved by the Directors, as reproduced below, be and are hereby noted and confirmed:

1. **Circular Resolution No. CR02/2022-23, circulated by the Company and approved by the Directors on 1st July 2022:**

**APPROVAL FOR ALLOTMENT OF SERIES F COMPULSORILY CONVERTIBLE CUMULATIVE PREFERENCE SHARES OF THINK & LEARN PRIVATE LIMITED ("COMPANY") TO BYJU'S INVESTMENTS PTE. LTD. AND MATTERS INCIDENTAL THERETO.**

"**RESOLVED THAT** pursuant to (i) the provisions of Sections 23(2), 42, 62(1)(c), 55 and other applicable provisions, if any, of the Companies Act, 2013 (**"the Act"**) read together with rules 9 & 13 of the Companies (Share Capital and Debentures) Rules, 2014 and rule 14 of Companies (Prospectus and Allotment of Securities) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force), (ii) the Foreign Exchange Management Act, 1999 and the rules specified thereunder, (iii) the enabling provisions of the memorandum and articles of association of the company (iv) approval of the shareholders of the company by way of a special resolution at an extraordinary general meeting held on June 29, 2022 and (v) receipt of application form and the subscription amount from Byju's Investments Pte. Ltd. (**"BIPL"**), the approval of the board be and is hereby accorded for allotment 27,701 (Twenty Seven Thousand Seven Hundred One) Series F Compulsorily Convertible Cumulative Preference Shares **("Series F CCCPS")** of face value of INR 10/- (Indian Rupees Ten only) each at a securities premium of INR 3,56,240/- (Indian Rupees Three Lakh Fifty Six Thousand Two Hundred Forty only) aggregating to total consideration of INR 986,84,81,250 (Indian Rupees Nine Hundred Eighty Six Crore Eighty Four Lakh Eighty One Thousand Two Hundred Fifty only) to BIPL, having terms set out in the articles of association of the company and reproduced in **Annexure A** hereto.

**RESOLVED FURTHER THAT** the share certificate for the Series F CCCPS allotted as aforementioned be and is hereby issued to BIPL in the manner indicated below under the signatures of (i) any two of the following three directors viz., Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN – 03415950), Director, Mr. Riju Ravindran (DIN – 03416072), Director, and (ii) an authorized signatory as may be identified by Mr. Byju Raveendran, in accordance with the applicable provisions of the Act (including rules made thereunder) and the common seal of the company be affixed on such share certificate as per the articles of association of the company:

| Sl. No. | Name | Folio No. | Sh. Cert. No. | No. of Shares | Distinctive Nos. | |
|---|---|---|---|---|---|---|
| | | | | | From | To |
| 1 | Byju's Investments Pte. Ltd. | F-123 | F-183 | 27,701 | 1542096 | 1569796 |

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN - 03416072), Director and Ms. Divya Gokulnath (DIN - 03415950), Director, be and are hereby severally authorized on behalf of the company:

Initial of the Chairman

MINUTES

[a] to sign and submit e-Form PAS-3 and other statutory forms along with necessary documents, if any, in accordance with the applicable provisions, if any, of the Companies Act, 2013, with the jurisdictional Registrar of Companies;

[b] to issue share certificate, make entries in the register of members (to reflect the allotment of the aforesaid shares to BIPL and to record them as the registered and beneficial owner of the Series F CCCPS) and other concerned registers, if any, maintained by the company in this regard;

[c] to submit or to authorize company's officials to submit master file creation form to National Securities Depository Limited for admission of Series F CCCPS allotted to BIPL pursuant to this resolution and to request for allocation of ISIN for the same;

[d] to submit relevant form(s) and to adhere to the rules and regulations of extant foreign exchange laws, as amended up-to-date, in respect of allotment of shares to BIPL;

[e] to certify a copy of the resolution and issue the same; and

[f] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and settle all doubts, difficulties that may arise from time to time while giving effect to the above resolutions."

**2. Circular Resolution No. CR03/2022-23, circulated by the Company and approved by the Directors on 5th July 2022:**

**APPROVAL FOR ALLOTMENT OF SERIES F COMPULSORILY CONVERTIBLE CUMULATIVE PREFERENCE SHARES OF THINK & LEARN PRIVATE LIMITED ("COMPANY") TO BYJU'S INVESTMENTS PTE. LTD. AND MATTERS INCIDENTAL THERETO.**

"**RESOLVED THAT** pursuant to (i) the provisions of Sections 23(2), 42, 62(1)(c), 55 and other applicable provisions, if any, of the Companies Act, 2013 ("**the Act**") read together with rules 9 & 13 of the Companies (Share Capital and Debentures) Rules, 2014 and rule 14 of Companies (Prospectus and Allotment of Securities) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force), (ii) the Foreign Exchange Management Act, 1999 and the rules specified thereunder, (iii) the enabling provisions of the memorandum and articles of association of the company (iv) approval of the shareholders of the company by way of a special resolution at an extraordinary general meeting held on June 29, 2022 and (v) receipt of application form and the subscription amount from Byju's Investments Pte. Ltd. (**"BIPL"**), the approval of the board be and is hereby accorded for allotment of 25,470 (Twenty Five Thousand Four Hundred Seventy) Series F Compulsorily Convertible Cumulative Preference Shares **("Series F CCCPS")** of face value of INR 10/- (Indian Rupees Ten only) each at a securities premium of INR 3,56,240/- (Indian Rupees Three Lakh Fifty Six Thousand Two Hundred Forty only) aggregating to total consideration of INR 907,36,87,500 (Indian Rupees Nine Hundred Seven Crore Thirty Six Lakh Eighty Seven Thousand Five Hundred only) to BIPL, having terms set out in the articles of association of the company and reproduced in **Annexure A** hereto.

Byju

**Initial of the Chairman**

MINUTES

**RESOLVED FURTHER THAT** the share certificate for the Series F CCCPS allotted as aforementioned be and is hereby issued to BIPL in the manner indicated below under the signatures of (i) any two of the following three directors viz., Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN – 03415950), Director, Mr. Riju Ravindran (DIN – 03416072), Director, and (ii) an authorized signatory as may be identified by Mr. Byju Raveendran, in accordance with the applicable provisions of the Act (including rules made thereunder) and the common seal of the company be affixed on such share certificate as per the articles of association of the company:

| Sl. No. | Name | Folio No. | Sh. Cert. No. | No. of Shares | Distinctive Nos. | |
|---|---|---|---|---|---|---|
| | | | | | From | To |
| 1 | Byju's Investments Pte. Ltd. | F-123 | F-184 | 25,470 | 1569797 | 1595266 |

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN - 03416072), Director and Ms. Divya Gokulnath (DIN - 03415950), Director, be and are hereby severally authorized on behalf of the company:

[a] to sign and submit e-Form PAS-3 and other statutory forms along with necessary documents, if any, in accordance with the applicable provisions, if any, of the Companies Act, 2013, with the jurisdictional Registrar of Companies;

[b] to issue share certificate, make entries in the register of members (to reflect the allotment of the aforesaid shares to BIPL and to record them as the registered and beneficial owner of the Series F CCCPS) and other concerned registers, if any, maintained by the company in this regard;

[c] to submit or to authorize company's officials to submit master file creation form to National Securities Depository Limited for admission of Series F CCCPS allotted to BIPL pursuant to this resolution and to request for allocation of ISIN for the same;

[d] to submit relevant form(s) and to adhere to the rules and regulations of extant foreign exchange laws, as amended up-to-date, in respect of allotment of shares to BIPL;

[e] to certify a copy of the resolution and issue the same; and

[f] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and settle all doubts, difficulties that may arise from time to time while giving effect to the above resolutions."

**7. APPROVAL FOR GRANTING OF OPTIONS TO THE EMPLOYEES OF SUBSIDIARY COMPANIES UNDER EMPLOYEE STOCK OPTION PLAN – 2019 AND MATTERS INCIDENTAL THERETO.**

The Chairman informed the Board that in order to incentivize the employees of

Byju

Initial of the Chairman

MINUTES

Aakash Educational Services Limited (**"Aakash"**), Great Learning Entity(ies) (**"GreatLearning"**), Tangible Play, Inc. (**"Osmo"**), Epic! Creations, Inc. (**"Epic"**), Whitehat Education Technology Private Limited and/or its subsidiaries and/or Byju's Future School Entities (**"WHJ"**), Byju's UK Ltd. (**"Byju's UK"**), and Neuron Fuel, Inc. (**"Neuron"**), subsidiaries/step-down subsidiaries of the Company, the Company wishes to grant options to the eligible identified employees of the above mentioned subsidiaries/step-down subsidiaries under the Employee Stock Option Plan – 2019 ("ESOP 2019") as detailed in the table below.

| Sl. No. | Name of the subsidiaries/step-down subsidiaries of the Company | Number of options to be granted |
|---|---|---|
| 1 | Aakash Educational Services Limited | 15 |
| 2 | Great Learning Entity(ies) | 523 |
| 3 | Tangible Play, Inc. | 212 |
| 4 | Epic! Creations, Inc. | 527 |
| 5 | Whitehat Education Technology Private Limited and/or its subsidiaries and/or Byju's Future School Entities | 28 |
| 6 | Neuron Fuel, Inc. | 1,063 |
| 7 | Byju's UK Ltd. | 376 |

He further informed that the provisions of Section 62(1)(b) of the Companies Act, 2013, read together with rule 12 of the Companies (Share Capital and Debentures) Rules, 2014, requires the consent of the Shareholders by way of a separate Resolution for grant of option to the employees of subsidiary companies. In this regard, it is necessary to authorize any of the directors to take all necessary steps for granting options to the eligible and identified employees, to call and convene an Extraordinary General Meeting and to do all such acts, deeds, things etc incidental thereto.

Thereafter, the board considered the matter and passed the following resolution unanimously:

"**RESOLVED THAT** pursuant to (i) the provisions of Section 62(1)(b) and other applicable provisions, if any of the Companies Act, 2013 ("**the Act**") read together with rule 12 of the Companies (Share Capital and Debentures) Rules, 2014, (including any statutory modifications and re-enactment, for the time being in force), (ii) the Foreign Exchange Management Act, 1999 and the rules specified thereunder and (iii) the enabling provisions of the memorandum and articles of association of the company and subject to approval of members at a general meeting, the consent of the Board be and is hereby accorded for granting options to the eligible identified employees of subsidiaries/step-down subsidiaries of the Company under the Employee Stock Option Plan – 2019, as detailed in the table below:

| Sl. No. | Name of the subsidiaries/step-down subsidiaries of the Company | Number of options to be granted |
|---|---|---|
| 1 | Aakash Educational Services Limited | 15 |
| 2 | Great Learning Entity(ies) | 523 |
| 3 | Tangible Play, Inc. | 212 |
| 4 | Epic! Creations, Inc. | 527 |

Initial of the Chairman

| | | |
|---|---|---|
| 5 | Whitehat Education Technology Private Limited and/or its subsidiaries and/or Byju's Future School Entities | 28 |
| 6 | Neuron Fuel, Inc. | 1,063 |
| 7 | Byju's UK Ltd. | 376 |

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN - 03415950), Director, and Mr. Riju Ravindran (DIN - 03416072), Director, be and are hereby severally authorized on behalf of the Company:

[a] to take all necessary steps for granting of options to the eligible and identified employees;

[b] to call and convene an extraordinary general meeting of the Company;

[c] to issue grant letters to the eligible and identified employees under the Employee Stock Option Plan – 2019;

[d] to submit Form-ESOP to the jurisdictional Reserve Bank of India, through authorized dealer bank in FIRMS portal and such other documents as may be required in respect of non-resident employees;

[e] to update the Register of Employee Stock Option and other concerned Registers, if any, maintained by the Company;

[f] to certify a copy of the resolution and issue the same; and

[g] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and settle all doubts, difficulties that may arise from time to time while giving effect to the above resolutions."

**8. APPROVAL OF LOANS TO SUBSIDIARY COMPANIES AND MATTERS INCIDENTAL THERETO:**

The board was informed by the chairman about the requirement to take note of and approve (a) the loan amount of INR 99,00,00,000 (Indian Rupees Ninety Nine Crore) provided by the Company to Grade Stack Learning Private Limited (**"Grade Stack"**), along with loan agreements executed in connection with the same by the Company with Grade Stack and providing further loan of upto INR 50,00,00,000 (India Rupees Fifty Crore only) in one or more tranches, based on the business exigencies of Grade Stack; and (b) the loan amount of INR 25,26,40,00,000 (Indian Rupees Two Thousand Five Hundred Twenty Six Crore Forty Lakh only) provided by the Company to Whitehat Education Technology Private Limited (**"Whitehat"**), which was repaid by Whitehat to the Company (in accordance with the relevant loan agreements executed with the Company) along with loan agreements executed in connection with the same by the Company with Whitehat.

He further informed that the board is requested to note that pursuant to provisions of Section 185 and other applicable provisions, if any, of the Companies Act, 2013, read together with the Companies (Meetings of Board and its Powers) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force),

it is required to seek consent of the shareholders by passing a Special Resolution for providing loan to any person in whom any of the director of the company is interested.

He further informed that Mr. Riju Ravindran (DIN – 03416072), Mr. Byju Raveendran (DIN – 03408398) and Ms. Divya Gokulnath (DIN – 03415950), are interested parties, being common directors on the Board of the Company and Subsidiary Companies, the board is required to approve the loans as aforesaid and seek consent of the shareholders by way of a Special Resolution at their duly convened general meeting.

Thereafter, the board considered the matter and passed the following resolution unanimously:

"**RESOLVED THAT** pursuant to (i) the provisions of Section 185 and other applicable provisions, if any, of the Companies Act, 2013, read together with the Companies (Meetings of Board and its Powers) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force); and (ii) the enabling provisions of the memorandum and articles of association of the company, and subject to the approval of the Members of the Company at a General Meeting, the consent of the Board be and is hereby accorded for (a) the loan amount of INR 99,00,00,000 (Indian Rupees Ninety Nine Crore) provided by the Company to Grade Stack Learning Private Limited (**"Grade Stack"**), along with loan agreements executed in connection with the same by the Company with Grade Stack and providing further loan of upto INR 50,00,00,000 (India Rupees Fifty Crore only) in one or more tranches, based on the business exigencies of Grade Stack; and (b) the loan amount of INR 25,26,40,00,000 (Indian Rupees Two Thousand Five Hundred Twenty Six Crore Forty Lakh only) provided by the Company to Whitehat Education Technology Private Limited (**"Whitehat"**), which was repaid by Whitehat to the Company (in accordance with the relevant loan agreements executed with the Company), along with loan agreements executed in connection with the same by the Company with Whitehat (Grade Stack and Whitehat are hereinafter collectively referred to as **'Subsidiary Companies'**).

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN: 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN: 03416072), Director, and Ms. Divya Gokulnath (DIN: 03415950), Director, be and are hereby severally authorized on behalf of the Company:

[a] to take all necessary steps for approval of loans provided and loans proposed to be provided to each of the Subsidiary Companies in one or more tranches based on their business exigencies;

[b] to call and convene an extraordinary general meeting of the Company;

[c] to sign and execute all necessary documents /deeds / agreement / letters;

[d] to verify, sign, execute and submit the necessary documents and forms, if any, to the jurisdictional Registrar of Companies;

[e] to certify a copy of the resolution and issue the same; and

[f] to do all such acts, deeds, matters and things in their absolute discretion, deem necessary, expedient, usual or proper, to be in the best interest of the

Byju

Initial of the Chairman

Company; and to settle all doubts, difficulties that may arise from time to time while giving effect to this resolution."

9. **TO CALL AND CONVENE AN EXTRAORDINARY GENERAL MEETING AND MATTERS INCIDENTAL THERETO.**

The Board was informed by the Chairman that it is necessary to convene an extraordinary general meeting of the shareholders of the Company to seek their approval for (a) granting employee stock options to the employees of subsidiary companies; and (b) approval of loans to subsidiary companies.

Then, he proposed to schedule an extraordinary general meeting of the shareholders on **Tuesday, the 19th day of July 2022** at **12:00 noon** through video conferencing ('VC') or other audio-visual means ('OAVM'), at shorter notice with the consent of the shareholders of the Company.

Then, he requested the board to approve the *draft* of the notice of extraordinary general meeting along with the relevant annexures forming part of the notice and authorize any of the Directors to take all necessary steps to call and convene an extraordinary general meeting, and to do all such incidental acts, deeds, things etc.

Thereafter, the board considered the agenda, had a brief discussion and passed the following resolution unanimously:

"**RESOLVED THAT** an extraordinary general meeting of the shareholders of the Company be convened at a shorter notice on **Tuesday, the 19th day of July 2022** at **12:00 noon** through video conferencing ('VC') or other audio-visual means ('OAVM'), to consider and approve the matter as per the *draft* notice placed before the meeting, with or without modification(s).

**RESOLVED FURTHER THAT** the consent from all the shareholders and those who are entitled to receive the notice, for convening the extraordinary general meeting at shorter notice, be obtained by the Company according to the statutory provisions envisaged under the Companies Act, 2013.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN - 03415950), Director, Mr. Riju Ravindran (DIN - 03416072), Director, be and are hereby severally authorized on behalf of the Company:

[a] to issue notice convening the extraordinary general meeting along with the explanatory statement to all the directors, shareholders and to others entitled to receive the same;

[b] to verify, sign, execute and submit the necessary documents and forms to the jurisdictional Registrar of Companies; and

[c] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and settle all doubts, difficulties that may arise from time to time while giving effect to the above resolutions."

Byju

Initial of the Chairman

MINUTES

**III. ANY OTHER MATTERS**

**10. ANY OTHER AGENDA WITH THE PERMISSION OF CHAIRMAN AND MAJORITY OF THE DIRECTORS PRESENT AT THE MEETING:**

With the permission of the Chairman and consent of all the Directors present at the Meeting, the following additional matters were discussed and approved by the Board:

**10.1. TO CONSIDER AND APPROVE AVAILING OVERDRAFT FACILITY FROM ICICI BANK LIMITED AND MATTERS INCIDENTAL THERETO**

The Chairman informed the board that the Company is proposing to avail an overdraft facility not exceeding INR 4,60,00,000/- (Indian Rupees Four Crore Sixty Lakh only) from ICICI Bank Limited (the **"Bank"**), on such terms and conditions as may be mutually agreed between the Company and the Bank.

Thereafter, the board discussed on the agenda and passed the following resolution unanimously:

**"RESOLVED**

1. That the Company do borrow and avail of financial assistance by way of ~~rupee loan~~ / overdraft ~~/LC / BG~~ facility not exceeding INR 4,60,00,000/- (Indian Rupees Four Crore Sixty Lakh only) (the "Facility") from ICICI Bank Limited (the **"Bank"**) against the security of the fixed deposit/ term deposit of amount not exceeding INR 4,60,00,000/- (Indian Rupees Four Crore Sixty Lakh only).

2. That Ms. Divya Gokulnath (DIN – 03415950) and Mr. Riju Ravindran (DIN – 03416072), Directors of the Company (the **"Authorized Directors"**) are hereby severally authorized to apply for the aforesaid facility and submit such application to the Bank and do all such acts and execute all such documents as the Bank may require in connection with the Facility.

3. The common seal of the Company be affixed in the presence of at least one Director on such of the documents as are required by the Bank.

4. Copies of the aforesaid resolutions certified to be true be furnished to the Bank and they be requested to act thereon.

**10.2. APPROVAL FOR ENGAGING M/S. DELOITTE HASKINS & SELLS LLP FOR DIRECT TAX SERVICES FOR THE FINANCIAL YEAR 2022-23**

The chairman informed the Board that the Company is proposing to engage M/s. Deloitte Haskins & Sells LLP, Chartered Accountants, for providing consultancy, advisory, and other services to the Company relating to Direct Tax matters for the financial year 2022-23.

Thereafter, the board discussed on the agenda and passed the following resolution unanimously:

**"RESOLVED THAT** the consent of the Board be and is hereby accorded to engage M/s. Deloitte Haskins & Sells LLP, Chartered Accountants, for providing consultancy, advisory and other services to the Company relating to Direct Tax matters for the

Initial of the Chairman

MINUTES

financial year 2022-23.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN: 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN: 03416072), Director and Ms. Divya Gokulnath (DIN: 03415950), Director, be and are hereby severally authorized on behalf of the Company:

[a] to verify, sign, execute and deliver the engagement letter and all other incidental documents in relation to the engagement;

[b] to certify a copy of the aforesaid resolutions and issue the same; and

[c] to do all such acts, deeds, things, matters and settle all doubts, difficulties that may arise from time to time while giving effect to this Resolution."

**10.3. APPROVAL AND AUTHORIZATION TO AVAIL FINANCIAL ASSISTANCE IN THE FORM OF BANK GUARANTEE FROM ICICI BANK LIMITED IN FAVOUR OF AVANSE FINANCIAL SERVICES LIMITED AND MATTERS INCIDENTAL THERETO:**

The Chairman informed the Board that the Company is proposing to avail financial assistance in the form of Bank Guarantee not exceeding Rs.20,00,00,000/- (Rupees Twenty Crore only) (the **"Facility"**) in favour of Avanse Financial Services Limited from ICICI Bank Limited (the **"Bank"**). In this regard the Chairman proposed to avail the said facility on such terms and conditions as may be stipulated by the Bank.

The board discussed on the agenda and passed the following resolutions unanimously:

"**RESOLVED**

1. That the Company do borrow and avail financial assistance by way of Bank Guarantee not exceeding Rs.20,00,00,000/- (Rupees Twenty Crore only) (the **"Facility"**) from ICICI Bank Limited (the **"Bank"**), in favour of Avanse Financial Services Limited against the security of the fixed deposit/ term deposit of amount not exceeding Rs.20,00,00,000/- (Rupees Twenty Crore only).

2. That Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN – 03416072), Director and Ms. Divya Gokulnath (DIN – 03415950), Director of the Company (**"Authorized Directors"**) are hereby severally authorized to apply for the aforesaid facility and submit such application to the Bank and do all such acts and execute all such documents as the Bank may require in connection with the Facility.

3. The common seal of the Company be affixed in the presence of any of Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN – 03416072), Director and Ms. Divya Gokulnath (DIN – 03415950), Director of the Company, on such of the documents as are required by the Bank.

4. Copies of the aforesaid resolutions certified to be true be furnished to the Bank and they be requested to act thereon.

Initial of the Chairman

**MINUTES**

**10.4. APPROVAL FOR AVAILING CORPORATE INTERNET BANKING (CIB) FACILITY FROM ICICI BANK LIMITED AND MATTERS INCIDENTAL THERETO:**

The chairman informed the Board that the Board is required to approve availing Corporate Internet Banking (CIB) facility from ICICI Bank Limited.

The board discussed on the agenda and passed the following resolutions unanimously:

**RESOLVED THAT:**

1. A Current Account (**"Account"**) in the name of the Company be opened with ICICI Bank Limited (**"ICICI Bank"**) at Bangalore and Mr. Riju Ravindran (DIN – 03416072), and Ms. Divya Gokulnath (DIN – 03415950), Directors, be severally authorised to sign and deliver necessary Application Forms and other Documents therefor and do all acts and deeds as may be required by ICICI Bank in connection with opening/ activating the Account and that the Company do accept the terms and conditions applicable for the Current Account as may be contained in the Application Forms and displayed on the website www.icicibank.com ("Website") or any other terms and conditions as may be notified by ICICI Bank from time to time in connection with the provision of products and services offered in respect of the Current Account.

2. ICICI Bank be instructed to accept and credit to the Account all moneys deposited with or owing by ICICI Bank on any account or accounts at any time or times, kept or to be kept in the name of the Company and tbe amount of all cheques, notes, bills, other negotiable instruments, orders or receipt, provided they are endorsed/signed/issued by Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN – 03416072), and Ms. Divya Gokulnath (DIN – 03415950), Directors of the Company for the time being, ~~jointly~~/severally on behalf of the Company.

3. ICICI Bank be instructed to honour all cheques, promissory notes, and other instruments drawn by and all bills accepted on behalf of the Company up to the Limit of INR 500,00,00,000/- (Indian Rupees Five Hundred Crore) per instrument/bill, so long as the Account being in credit balance or, where overdraft facility is provided by ICICI Bank in respect of the Account, so long as it is within the overdraft limit, and are endorsed/signed/issued by Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN – 03416072), and Ms. Divya Gokulnath (DIN – 03415950), Directors of the Company, for the time being, ~~jointly~~/severally on behalf of the Company and such signature(s) shall be sufficient authority to bind the Company in all transactions between ICICI Bank and the Company including those specifically referred to herein.

4. The Company do also operate the Account through the mode of Phone Banking, Internet Banking, Tax Payments, Statutory Payments, E-mail Banking, Debit Card, ATM Card offered by ICICI Bank for operation of the Account from time to time and the following Officials are authorised to operate the Account under different Limits in the manner set out below:

   (a) Corporate Internet Banking (CIB)

**Initial of the Chairman**

MINUTES

| Name of the Official (User) | Limits (Rs) | | To be approved by any one of the below | Phone Banking/ E-mail Banking | ATM Card/Debit Card |
|---|---|---|---|---|---|
| | From | To | | Yes/No | Yes/No |
| JAYANTHA. A | Rs. 1 | Rs. 700 Crores | BYJU RAVEENDRAN, RIJU RAVINDRAN, DIVYA GOKULNATH | NO | NO |

(b) Trade Online Access (TOL)

Please tick the box if you want the above-mentioned Users to have the same limits and workflow as CIB on TOL

OR

please provide the details of the Users, the limits and the workflow, in the table below, if you would like a different workflow and Users for TOL

| Name of the Official (User) | Limits (Rs) | | To be approved by |
|---|---|---|---|
| | From | To | |
| NA | | | |

and the mentioned authorised Officials be and are hereby authorised to complete the formalities for applying for and obtaining connected Login ID and Password(s) / Debit Cards / ATM Cards, as the case may be, as applicable, to each of the above mode of operations and operate the Account, as per the Limit and in the manner indicated above or as per the Limit set by ICICI Bank in respect of ATM / Debit Cards, as the case may be, and Shri. ____________ and Shri. ______________ the __________________________ (mention status of the persons) of the Company are severally authorised to collect the applications and other documents from authorised Officials, submit the same to ICICI Bank and collect the Login ID and Password(s) / Debit Cards / ATM Cards, as the case may be, from ICICI Bank and deliver the same to the respective authorised Officials.

5. Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN – 03416072), and Ms. Divya Gokulnath (DIN – 03415950), Directors of the Company are severally authorised to additionally authorise such other Official(s) to operate the Account in any of the modes indicated above / evaluate and decide on adopting any other mode of operation of the Account that ICICI Bank may offer from time to time and details of every such additional authorisation / adoption of mode of operation shall be placed before the next following Meeting of Board of Directors for information.

6. The Company does convey to ICICI Bank that the transactions done under the mode of operations adopted by the Company are binding on the Company

Byju

Initial of the Chairman

notwithstanding any fraud, negligence, allowing unauthorised use, failure to maintain confidentiality of Login ID and/or Password or default on the part of the authorised Official(s) in the operation of the Account and the Company agrees to hold ICICI Bank harmless and its interest protected on execution of every transaction and shall not hold ICICI Bank liable for any such unauthorised or fraudulent transactions.

7. Copies of the foregoing Resolutions certified to be true copies by any two Directors of the Company be provided to ICICI Bank and it be requested to act thereon.

**10.5 APPROVAL AND AUTHORIZATION TO AVAIL FINANCIAL ASSISTANCE IN THE FORM OF BANK GUARANTEE FROM ICICI BANK LIMITED IN FAVOUR OF ADITYA BIRLA FINANCE LIMITED AND MATTERS INCIDENTAL THERETO:**

The Chairman informed the Board about the necessity to avail financial assistance in the form of Bank Guarantee not exceeding Rs.1,00,00,000/- (Rupees One Crore only) (the **"Facility"**) from ICICI Bank Limited (the **"Bank"**) in favour of Aditya Birla Finance Limited. In this regard the Chairman proposed to avail the said facility on such terms and conditions as may be stipulated by the Bank.

The board discussed on the agenda and passed the following resolutions unanimously:

**"RESOLVED**

1. That the Company do borrow and avail financial assistance by way of Bank Guarantee not exceeding Rs.1,00,00,000/- (Rupees One Crore only) (the **"Facility"**) from ICICI Bank Limited (the **"Bank"**), in favour of Aditya Birla Finance Limited against the security of the fixed deposit/ term deposit of amount not exceeding Rs.1,00,00,000/- (Rupees One Crore only).

2. That Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN – 03416072), Director and Ms. Divya Gokulnath (DIN – 03415950), Director of the Company (**"Authorized Directors"**) are hereby severally authorized to apply for the aforesaid facility and submit such application to the Bank and do all such acts and execute all such documents as the Bank may require in connection with the Facility.

3. The common seal of the Company be affixed in the presence of any of Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN – 03416072), Director and Ms. Divya Gokulnath (DIN – 03415950), Director of the Company, on such of the documents as are required by the Bank.

4. Copies of the aforesaid resolutions certified to be true be furnished to the Bank and they be requested to act thereon.

Initial of the Chairman

**10.6 APPROVAL FOR AND AUTHORIZATION TO MAKE FURTHER INVESTMENT IN BYJU'S K3 EDUCATION PRIVATE LIMITED AND MATTERS INCIDENTAL THERETO:**

The Chairman informed the board that the Company is proposing to make an additional investment of up to INR 82,00,00,000 (Indian Rupees Eighty Two Crore only) by way of subscription of equity shares of Byju's K3 Education Private Limited, a wholly-owned subsidiary of the Company.

Thereafter, the board had a detailed discussion on the agenda and passed the following resolution unanimously:

"**RESOLVED THAT** pursuant to provisions of Section 179, 186 and other applicable provisions, if any, of the Companies Act, 2013, read with the Companies (Meetings of Board and its Powers) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force) and in terms of enabling provisions of the Articles of Association of the Company the consent of the Board be and is hereby accorded to make a further investment of up to INR 82,00,00,000 (Indian Rupees Eighty Two Crore only) for subscription of equity shares of Byju's K3 Education Private Limited.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN - 03416072), Director and Ms. Divya Gokulnath (DIN - 03415950), Director, be and are hereby severally authorized on behalf of the Company:

[a] to take all necessary steps for completion of the investment transaction including negotiation, amendment and finalization of the terms & conditions of the investment;

[b] to intimate downstream investment made by the Company in prescribed form with the Reserve Bank of India (RBI), through Authorized Dealer (AD) Bank and with the Department for Promotion of Industry and Internal Trade, pursuant to the provisions of Foreign Exchange Management Act, 1999 and the rules specified thereunder;

[c] to sign and execute necessary documents, forms, applications etc. which are necessary to acquire the securities and to intimate the acquisition of securities with the regulatory authorities;

[d] to update the Register of Loans, Guarantee, Security and Acquisition made by the Company and other concerned Registers, if any, maintained by the Company in this regard;

[e] to certify a copy of the aforementioned resolution and issue the same; and

[f] to do all such acts, deeds, matters and things in their absolute discretion, deem necessary, expedient, usual or proper, to be in the best interest of the Company; and to settle all doubts, difficulties that may arise from time to time while giving effect to this resolution."

Byju

Initial of the Chairman

**10.7 APPROVAL OF LOANS TO INTAP LABS PRIVATE LIMITED AND MATTERS INCIDENTAL THERETO:**

The Chairman informed the board that at the meeting of board of directors held on November 22, 2021, it was approved to provide an intercorporate loan of up to INR 5,00,00,000/- (Indian Rupees Five Crore only) to Intap Labs Private Limited (**"Hello English"**) in one or more tranches based on its business exigencies.

The Chairman further informed about the requirement to take note of and approve increasing the said loan amount to up to INR 15,00,00,000 (Indian Rupees Fifteen Crore) provided/to be provided by the Company, in one or more tranches, along with loan agreement/addendum to loan agreement, executed in connection with the same by the Company with Hello English.

Thereafter, the board discussed on the agenda and passed the following resolution unanimously:

"**RESOLVED THAT** pursuant to (i) the provisions of Section 186 and other applicable provisions, if any, of the Companies Act, 2013, read together with the Companies (Meetings of Board and its Powers) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force); and (ii) the enabling provisions of the memorandum and articles of association of the company and in partial modification to the resolution passed by the board in its meeting held on November 22, 2021, the consent of the Board be and is hereby accorded for increasing the loan amount to Intap Labs Private Limited (**"Hello English"**) to up to INR 15,00,00,000 (Indian Rupees Fifteen Crore), along with loan agreement/addendum to loan agreement, executed in connection with the same by the Company with Hello English.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN: 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN: 03416072), Director, and Ms. Divya Gokulnath (DIN: 03415950), Director, be and are hereby severally authorized on behalf of the Company:

[a] to take all necessary steps for approval of loans provided and loans proposed to be provided to Hello English in one or more tranches based on their business exigencies;

[b] to sign and execute all necessary documents /deeds / agreement / letters;

[c] to certify a copy of the resolution and issue the same; and

[d] to do all such acts, deeds, matters and things in their absolute discretion, deem necessary, expedient, usual or proper, to be in the best interest of the Company; and to settle all doubts, difficulties that may arise from time to time while giving effect to this resolution."

**10. 8 APPROVAL FOR ENTERING INTO COST RECHARGE AGREEMENT WITH WHITEHAT EDUCATION TECHNOLOGY PRIVATE LIMITED:**

The Chairman informed the board that the Company is proposing to enter into a Cost Recharge Agreement ("Agreement") with Whitehat Education Technology Private Limited ("WHJ"), a wholly-owned subsidiary of the Company.

Initial of the Chairman

He further informed the board that, by executing the said agreement the Company intends to achieve the administrative convenience and economies of scale and by virtue of the Agreement the Company and WHJ have decided that for below-the-line marketing campaigns, the Company may enter into contracts with vendors and incur expenses in the nature of fees for such marketing campaigns for marketing the Company's and/ or WHJ's offerings. The expenses pertaining to the WHJ shall be recovered by the Company from WHJ at actuals i.e. the Company shall raise invoices on WHJ on a cost-to-cost basis and such invoice shall not contain any mark-up or profit element.

The board had a detailed discussion on the agenda, corroborated the Agreement and passed the following resolution unanimously:

**"RESOLVED THAT** pursuant to (a) the provisions of Section 188 and other applicable provisions, if any, of the Companies Act, 2013 ("the Act") read together with the Companies (Meetings of Board and its Powers) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force) and (b) the enabling provisions of the Articles of Association of the Company, the consent of the board be and is hereby accorded to enter into Cost Recharge Agreement (**"Agreement"**) with Whitehat Education Technology Private Limited ("WHJ"), a wholly-owned subsidiary of the Company.

**RESOVLED FURTHER THAT** the draft of the Agreement initialed by the Chairman for the purpose of identification, as placed before the board, be and is hereby noted and approved.

**RESOLVED FURTHER THAT** any of Mr. Byju Raveendran (DIN - 03408398) and Mr. Riju Ravindran (DIN - 03416072), Directors, be and are hereby severally authorized on behalf of the Company:

[a] to verify, sign, execute and deliver the Agreement and all other incidental documents under the Agreement in relation to the transactions contemplated thereunder (Agreement and all other incidental documents are collectively referred to as the 'Transaction Documents');

[b] to update the Register of Contracts in Form MBP-4 and other statutory registers, if any, maintained by the Company;

[c] to certify a copy of the aforementioned resolution and issue the same; and

[d] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and settle all doubts, difficulties that may arise from time to time while giving effect to the above resolution."

## 11. FIXATION OF SCHEDULE FOR NEXT BOARD MEETING:

Thereafter, it was decided that the next Meeting of the Board of Directors be fixed by the Board at the earliest, in consultation with the Directors.

Initial of the Chairman

**12. VOTE OF THANKS:**

The Chairman thanked the Directors for their active participation at the Meeting. Thereafter, the Meeting was declared as concluded with a vote of thanks to the Chairman.

**BYJU RAVEENDRAN**
**CHAIRMAN OF THE BOARD**
**30TH AUGUST 2022**
**NEW YORK**

DATE OF ENTRY IN THE MINUTES BOOK: **2ND AUGUST 2022**

**BYJU RAVEENDRAN**
CHAIRMAN & MANAGING DIRECTOR
DIN: 03408398
NO.43, YOGANARASIMHA, 14TH MAIN, 15TH CROSS, BDA COMPLEX
HSR LAYOUT, SECTOR-4, BANGALORE – 560102, KARNATAKA, INDIA

## ANNEXURE - A
## TERMS OF SERIES F CCCPS

Capitalised terms used, but not defined in this Annexure shall have the meaning as ascribed to such terms in the articles of association of the Company.

1. **DIVIDEND RIGHTS**

1.1 The Series F CCCPS are issued at a preferential dividend rate of 0.001% (one thousandths per cent.) per annum ("**Series F Preferential Dividend**"). The Series F Preferential Dividend is cumulative and shall accrue from year to year whether or not paid, and accrued dividends shall be paid in full (together with dividends accrued from prior years) prior and in preference to any dividend or distribution payable upon shares of any other class or series in the same fiscal year.

1.2 In addition to and after payment of the Series F Preferential Dividend, each Series F CCCPS would be entitled to participate *pari passu* in any cash or non-cash dividends paid to the holders of shares of any other class (including Equity Shares) or series on a *pro rata*, As-converted Basis.

1.3 No dividend or distribution shall be paid on any share of any class or series of the Company if and to the extent that as a consequence of such dividend or distribution any Series F CCCPS would be entitled to a dividend hereunder greater than the maximum amount permitted to be paid in respect of Series F CCCPS of an Indian company held by a non-resident under applicable Law (including without limitation, the Foreign Exchange Management (Transfer or Issue of Security by a Person Resident Outside India), Regulations, 2017).

2. **CONVERSION OF THE SERIES F CCCPS**

2.1 Conversion

(a) Each Series F CCCPS may be converted into Equity Shares at any time at the option of the holder of the Series F CCCPS.

(b) Subject to compliance with applicable Law, each Series F CCCPS shall automatically be converted into Equity Shares, at the Series F Conversion Price (as defined below) then in effect, upon the earlier of (i) 1 (one) day prior to the expiry of 20 (twenty) years from the date of allotment, or (ii) in connection with an IPO (or any subsequent public offering), prior to the filing of a prospectus (or equivalent document, by whatever name called) by the Company with the competent authority or such later date as may be permitted under applicable Law.

(c) The Series F CCCPS shall be converted into Equity Shares at the conversion price determined as provided herein in effect at the time of conversion, which shall initially be as provided in paragraph 2.1(d) below ("**Series F Conversion Price**").

(d) The initial Series F Conversion Price for the Series F CCCPS shall be total price per Series F CCCPS including premium.

(e) The number of Equity Shares issuable pursuant to the conversion of any Series F CCCPS shall be that number obtained by dividing the cumulative amount actually paid by holders of Series F CCCPS to subscribe to all the Series F CCCPS being converted, by the applicable Series F Conversion Price (as defined above) at the time in effect for such Series F CCCPS. No fractional shares shall

Initial of the Chairman

be issued upon conversion of the Series F CCCPS, and the number of Equity Shares to be issued shall be rounded to the nearest whole share.

2.2 **Conversion Procedure**

Each holder of a Series F CCCPS who elects to convert the Series F CCCPS into Equity Shares shall surrender the relevant share certificate or certificates therefore at the registered office of the Company, and shall, at the time of such surrender, give written notice to the Company that such holder has elected to convert the same and shall state in such notice the number of Series F CCCPS being converted. Within 10 (ten) Business Days after receipt of such notice and the accompanying share certificates, the Company shall issue and deliver to the holder of the converted Series F CCCPS, a share certificate or certificates for the aggregate number of Equity Shares issuable upon such conversion. Where such aggregate number of Equity Shares includes any fractional share, such fractional share shall be disregarded. Subject to the requirements of applicable Law, such conversion shall be deemed to have been made immediately prior to the close of business on the date of such surrender of the certificate or certificates representing the Series F CCCPS, and the Person entitled to receive the Equity Shares issuable upon such conversion shall be treated for all purposes as the record holder of such Equity Shares on such date.

In the event that the Company undertakes any form of Capital Restructuring, then the number of Equity Shares that each Series F CCCPS converts into and the Series F Conversion Price for each such Equity Share shall be adjusted accordingly in a manner that each holder of Series F CCCPS receives such number of Equity Shares that such holder would have been entitled to receive immediately after occurrence of any such Capital Restructuring had the conversion of the Series F CCCPS occurred immediately prior to the occurrence of such Capital Restructuring. It is clarified that from the effective date of each adjustment to the Series F Conversion Price, the term "Series F Conversion Price" shall thereafter mean the adjusted Series F Conversion Price.

3. **VOTING RIGHTS**

The holders of Series F CCCPS shall be entitled to receive notice of and vote on all matters that are submitted to the vote of the Shareholders (including the holders of Equity Shares). Each of the Company and the Founders acknowledge that the holders of Series F CCCPS had agreed to subscribe to the Series F CCCPS on the basis that they would be able to exercise voting rights on the Series F CCCPS as if the same were converted into Equity Shares. Each Series F CCCPS shall entitle the holder to the number of votes equal to the number of whole or fractional Equity Shares into which such Series F CCCPS could then be converted. To this effect, each of the Company and the Founders agree to ensure that the Articles shall at all times contain a provision enabling and permitting holders of each Preference Share of the Company to have the right to such number of votes as is equal to the number of Equity Shares issuable upon conversion of such Preference Shares. If applicable Law does not permit the holders of Series F CCCPS to exercise voting rights on all shareholder matters submitted to the vote of the Shareholders (including the holders of Equity Shares), then until the conversion of all the Series F CCCPS into Equity Shares, each Founder shall vote in accordance with the instructions of the holders of Series F CCCPS at a General Meeting or provide proxies without instructions to the holders of Series F CCCPS for the purposes of a General Meeting, in respect of such number of Equity Shares held by each of them such that the relevant percentage of

Initial of the Chairman

the Equity Shares of the Company are voted on in the manner required by holders of the Series F CCCPS. For the purposes of this paragraph 3 of Schedule IVF, the relevant percentage in relation to each holder of Series F CCCPS shall be equal to the percentage of Equity Shares in the Company that such holder of Series F CCCPS would hold if such holder of Series F CCCPS was to elect to convert their Series F CCCPS into Equity Shares based on the then applicable Series F Conversion Price. The obligation of all Shareholders (other than the Investors) to vote on their Equity Securities as aforesaid shall be *pro-rated* in accordance with their *inter se* shareholding in the Company.

Subject to the applicable Law, the Company and the Shareholders hereby agree and acknowledge that the provisions of Section 43 and Section 47 of the Act are not applicable to the Company.

**4. GENERAL**

No Impairment. The Company and Shareholders shall not avoid or seek to avoid the observance or performance of any of the terms to be observed or performed hereunder by the Company or the Shareholders, but shall at all times in good faith assist in carrying out all such action as may be reasonably necessary or appropriate in order to protect the rights of the holders of the Series F CCCPS against impairment.

Initial of the Chairman

# Exhibit 31

MINUTES

**THINK & LEARN PRIVATE LIMITED**
**CIN:** U80903KA2011PTC061427
**REGISTERED OFFICE:** IBC KNOWLEDGE PARK, 4/1, 2ND FLOOR
TOWER D, BANNERGHATTA MAIN ROAD, BANGALORE – 560029
KARNATAKA, INDIA

# MINUTES OF THE EXTRAORDINARY GENERAL MEETING OF THE SHAREHOLDERS OF THE COMPANY (TNLPL/GM/02/2022-23) HELD AT THE REGISTERED OFFICE OF THE COMPANY AT IBC KNOWLEDGE PARK, 4/1, 2ND FLOOR, TOWER D, BANNERGHATTA MAIN ROAD, BANGALORE 560029, KARNATAKA, INDIA ON TUESDAY, THE 19TH DAY OF JULY 2022 AT 12:00 NOON (IST) THROUGH VIDEO CONFERENCING OR OTHER AUDIO VISUAL MEANS

Time of Commencement of the Meeting : **12:00 NOON**
Time of Conclusion of the Meeting : **12:30 P.M.**

## 1. TO RECORD THE NAMES AND ATTENDANCE OF THE DIRECTORS PRESENT AT THE MEETING

| Sl. No. | Name, Designation & DIN | Mode of Presence at the Meeting (In Person / Video Conferencing or other Audio Visual means) | Location from where the meeting was attended |
|---|---|---|---|
| (i) | **Mr. Byju Raveendran**<br>Chairman & Managing Director<br>DIN: 03408398 | Attended through VC/OAVM | New York |
| (ii) | **Ms. Divya Gokulnath**<br>Director<br>DIN: 03415950 | Attended through VC/OAVM | New York |
| (iii) | **Mr. Riju Ravindran**<br>Director<br>DIN: 03416072 | Attended through VC/OAVM | New York |

## 2. TO RECORD THE NAMES AND ATTENDANCE OF THE SHAREHOLDERS PRESENT AT THE MEETING

| Sl. No. | Name | Mode of Presence at the Meeting (In Person / Video Conferencing or other Audio Visual means) | Location from where the meeting was attended |
|---|---|---|---|
| (i) | **Mr. Byju Raveendran** | Attended through VC/OAVM | New York |
| (ii) | **Ms. Divya Gokulnath** | Attended through VC/OAVM | New York |
| (iii) | **Mr. Riju Ravindran** | Attended through VC/OAVM | New York |

Initial of the Chairman

**3. TO CONSIDER CHAIRMAN OF THE MEETING**

Mr. Byju Raveendran, the Chairman, occupied the chair. He then informed the members that the extraordinary general meeting is being held through video conferencing as per the framework prescribed by the Ministry of Corporate Affairs.

After recording that the quorum was present and that the meeting was in order, the Chairman initiated the proceedings of the meeting as per the agenda.

Thereafter, he formally extended a very warm welcome to the Shareholders for the Extraordinary General Meeting and explained the need to convene the Extraordinary General Meeting to consider the special business items as stated in the notice of the meeting.

**4. NOTING OF ATTENDANCE OF SHAREHOLDERS, DIRECTORS, AND STATUTORY AUDITORS**

The Chairman noted that:

[a] Three (3) Directors were present at the meeting and Ms. Vivian Wu, Nominee Director, Mr. G V Ravishankar, Nominee Director and Mr. Russel Andrew Dreisenstock, Director, did not attend the meeting due to pre-occupation.

[b] Three (3) Shareholders were present at the meeting.

[c] The Company has received waiver letter from Chan Zuckerberg Mauritius as required under Article 38 of Articles of Association of the Company, waiving the requirement of presence of their authorised representative to constitute the quorum for the meeting.

[d] Statutory Auditors have expressed their inability to attend the meeting due to their preoccupation and have not appointed any of their authorized representatives to attend the meeting.

**5. NOTICE OF THE MEETING**

The Chairman noted that the notice of the Extraordinary General Meeting has been served to all the members of the Company, Directors of the Company and Statutory Auditors of the Company, in accordance with the provisions of the Section 101(3) and other applicable provisions of the Companies Act, 2013 and Rules made there-under and General Circular 17/2020 dated April 13, 2020, issued by the Ministry of Corporate Affairs, prescribing the manner and mode of issue of notices to the members before convening the general meeting.

The Chairman further noted that the meeting has been called at shorter notice and the requisite consents for the same have been received from the Shareholders.

The notice of the Extraordinary General Meeting was taken as read after seeking Shareholders' consent.

Byju

Initial of the Chairman

MINUTES

6. **APPROVAL FOR GRANTING OF OPTIONS TO THE EMPLOYEES OF SUBSIDIARY COMPANIES UNDER EMPLOYEE STOCK OPTION PLAN - 2019 AND MATTERS INCIDENTAL THERETO:**

The Chairman informed the members that in order to incentivize the employees of subsidiaries/step-down subsidiaries of the Company, the Company is proposing to grant options to the eligible identified employees under the Employee Stock Option Plan – 2019.

He then stated that the provisions of Section 62(1)(b) of the Companies Act, 2013, read together with rule 12 of the Companies (Share Capital and Debentures) Rules, 2014, requires the consent of the Shareholders by way of a separate Resolution for grant of option to the employees of subsidiary company.

In this connection, Mr. Riju Ravindran proposed the following Resolution as an Ordinary Resolution:

"**RESOLVED THAT** pursuant to (i) the provisions of Section 62(1)(b) and other applicable provisions, if any of the Companies Act, 2013 ("**the Act**") read together with rule 12 of the Companies (Share Capital and Debentures) Rules, 2014, (including any statutory modifications and re-enactment, for the time being in force), (ii) the Foreign Exchange Management Act, 1999 and the rules specified thereunder, and (iii) the enabling provisions of the memorandum and articles of association of the Company, the approval of the Members of the Company be and is hereby accorded for granting of options to the eligible identified employees of subsidiaries/step-down subsidiaries of the Company under the Employee Stock Option Plan – 2019, as detailed in the table below:

| Sl. No. | Name of the subsidiaries/step-down subsidiaries of the Company | Number of options to be granted |
|---|---|---|
| 1 | Aakash Educational Services Limited | 15 |
| 2 | Great Learning Entity(ies) | 523 |
| 3 | Tangible Play, Inc. | 212 |
| 4 | Epic! Creations, Inc. | 527 |
| 5 | Whitehat Education Technology Private Limited and/or its subsidiaries and/or Byju's Future School Entities | 28 |
| 6 | Neuron Fuel, Inc. | 1,063 |
| 7 | Byju's UK Ltd. | 376 |

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN - 03415950), Director, Mr. Riju Ravindran (DIN - 03416072), Director, be and are hereby severally authorized on behalf of the Company:

[a] to take all necessary steps for granting of options to the eligible and identified employees;

[b] to issue grant letters to the eligible and identified employees under the Employee Stock Option Plan – 2019;

Initial of the Chairman

[c] to submit Form-ESOP to the jurisdictional Reserve Bank of India, through authorized dealer bank in FIRMS portal and such other documents as may be required in this regard;

[d] to update the Register of Employee Stock Option and other concerned Registers, if any, maintained by the Company;

[e] to certify a copy of the resolution and issue the same; and

[f] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and settle all doubts, difficulties that may arise from time to time while giving effect to the above resolutions."

Ms. Divya Gokulnath seconded the Resolution.

The Chairman, then put the said Resolution to vote on show of hands, and the Resolution was passed unanimously by all the members present at the meeting.

**7. APPROVAL OF LOANS TO SUBSIDIARY COMPANIES AND MATTERS INCIDENTAL THERETO:**

The Chairman informed the members that based on the requests received from Grade Stack Learning Private Limited (**"Grade Stack"**) and Whitehat Education Technology Private Limited (**"Whitehat"**) the Company (a) had provided loan amount of INR 99,00,00,000 (Indian Rupees Ninety Nine Crore only) to Grade Stack and executed loan agreements in connection with the same with Grade Stack and intends to provide further loan of upto INR 50,00,00,000 (Indian Rupees Fifty Crore only) in one or more tranches, based on the business exigencies of Grade Stack; and (b) had provided loan amount of INR 25,26,40,00,000 (Indian Rupees Two Thousand Five Hundred Twenty Six Crore Forty Lakh only) to Whitehat, which was repaid by Whitehat to the Company (in accordance with the loan agreements executed with the Company), and executed loan agreements in connection with the same with Whitehat.

The chairman further informed that the provisions of Sections 185 of the Companies Act, 2013, read together with the Companies (Meetings of Board and its Powers) Rules, 2014, requires the consent of the Shareholders by way of Special Resolution for providing loan to any person in whom any of the director of the company is interested.

In this connection, Ms. Divya Gokulnath proposed the following Resolution as a Special Resolution:

"**RESOLVED THAT** pursuant to (i) the provisions of Section 185 and other applicable provisions, if any, of the Companies Act, 2013, read together with the Companies (Meetings of Board and its Powers) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force); and (ii) the enabling provisions of the memorandum and articles of association of the company, the consent of the Members be and is hereby accorded for (a) the loan amount of INR 99,00,00,000 (Indian Rupees Ninety Nine Crore) provided by the Company to Grade Stack Learning Private Limited (**"Grade Stack"**), along with loan agreements executed in connection with the same by the Company with Grade Stack and providing further loan of upto INR 50,00,00,000 (India Rupees Fifty Crore only) in

Byju

Initial of the Chairman

MINUTES

one or more tranches, based on the business exigencies of Grade Stack; and (b) the loan amount of INR 25,26,40,00,000 (Indian Rupees Two Thousand Five Hundred Twenty Six Crore Forty Lakh only) provided by the Company to Whitehat Education Technology Private Limited (**"Whitehat"**), which was repaid by Whitehat to the Company (in accordance with the relevant loan agreements executed with the Company) along with loan agreements executed in connection with the same by the Company with Whitehat (Grade Stack and Whitehat are hereinafter collectively referred to as **'Subsidiary Companies'**).

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN: 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN: 03416072), Director, and Ms. Divya Gokulnath (DIN: 03415950), Director, be and are hereby severally authorized on behalf of the Company:

[a] to take all necessary steps for approval of loans provided and loans proposed to be provided to each of the Subsidiary Companies in one or more tranches based on their business exigencies;

[b] to sign and execute all necessary documents /deeds / agreement / letters;

[c] to verify, sign, execute and submit the necessary documents and forms, if any, to the jurisdictional Registrar of Companies;

[d] to certify a copy of the resolution and issue the same; and

[e] to do all such acts, deeds, matters and things in their absolute discretion, deem necessary, expedient, usual or proper, to be in the best interest of the Company; and to settle all doubts, difficulties that may arise from time to time while giving effect to this resolution."

Mr. Riju Ravindran seconded the Resolution.

The Chairman, then put the said Resolution to vote on show of hands, and the Resolution was passed unanimously by all the members present at the meeting.

**8. VOTE OF THANKS**

Since there was no other agenda/business, the Chairman thanked the Members for their presence and active participation at the Meeting.

Thereafter, the Meeting was declared concluded with a vote of thanks to the Chairman.

**BYJU RAVEENDRAN**
**CHAIRMAN OF THE MEETING**
**25TH JULY 2022**
**NEW YORK**

Initial of the Chairman

MINUTES

DATE OF ENTRY IN THE MINUTES BOOK: **25TH JULY 2022**

Byju

**BYJU RAVEENDRAN**
CHAIRMAN & MANAGING DIRECTOR
DIN: 03408398
NO.43, YOGANARASIMHA, 14TH MAIN, 15TH CROSS, BDA COMPLEX
HSR LAYOUT, SECTOR-4, BANGALORE – 560102
KARNATAKA, INDIA

Initial of the Chairman

## ANNEXURE

## TERMS OF SERIES F CCCPS

Capitalised terms used, but not defined in this Annexure shall have the meaning as ascribed to such terms in the articles of association of the Company.

**1. DIVIDEND RIGHTS**

1.1 The Series F CCCPS are issued at a preferential dividend rate of 0.001% (one thousandths per cent.) per annum ("**Series F Preferential Dividend**"). The Series F Preferential Dividend is cumulative and shall accrue from year to year whether or not paid, and accrued dividends shall be paid in full (together with dividends accrued from prior years) prior and in preference to any dividend or distribution payable upon shares of any other class or series in the same fiscal year.

1.2 In addition to and after payment of the Series F Preferential Dividend, each Series F CCCPS would be entitled to participate *pari passu* in any cash or non-cash dividends paid to the holders of shares of any other class (including Equity Shares) or series on a *pro rata*, As-converted Basis.

1.3 No dividend or distribution shall be paid on any share of any class or series of the Company if and to the extent that as a consequence of such dividend or distribution any Series F CCCPS would be entitled to a dividend hereunder greater than the maximum amount permitted to be paid in respect of Series F CCCPS of an Indian company held by a non-resident under applicable Law (including without limitation, the Foreign Exchange Management (Transfer or Issue of Security by a Person Resident Outside India), Regulations, 2017).

**2. CONVERSION OF THE SERIES F CCCPS**

2.1 Conversion

(a) Each Series F CCCPS may be converted into Equity Shares at any time at the option of the holder of the Series F CCCPS.

(b) Subject to compliance with applicable Law, each Series F CCCPS shall automatically be converted into Equity Shares, at the Series F Conversion Price (as defined below) then in effect, upon the earlier of (i) 1 (one) day prior to the expiry of 20 (twenty) years from the date of allotment, or (ii) in connection with an IPO (or any subsequent public offering), prior to the filing of a prospectus (or equivalent document, by whatever name called) by the Company with the competent authority or such later date as may be permitted under applicable Law.

(c) The Series F CCCPS shall be converted into Equity Shares at the conversion price determined as provided herein in effect at the time of conversion, which shall initially be as provided in paragraph 2.1(d) below ("**Series F Conversion Price**").

(d) The initial Series F Conversion Price for the Series F CCCPS shall be total price per Series F CCCPS including premium.

(e) The number of Equity Shares issuable pursuant to the conversion of any Series F CCCPS shall be that number obtained by dividing the cumulative amount actually paid by holders of Series F CCCPS to subscribe to all the Series F

Initial of the Chairman

CCCPS being converted, by the applicable Series F Conversion Price (as defined above) at the time in effect for such Series F CCCPS. No fractional shares shall be issued upon conversion of the Series F CCCPS, and the number of Equity Shares to be issued shall be rounded to the nearest whole share.

2.2 **Conversion Procedure**

Each holder of a Series F CCCPS who elects to convert the Series F CCCPS into Equity Shares shall surrender the relevant share certificate or certificates therefore at the registered office of the Company, and shall, at the time of such surrender, give written notice to the Company that such holder has elected to convert the same and shall state in such notice the number of Series F CCCPS being converted. Within 10 (ten) Business Days after receipt of such notice and the accompanying share certificates, the Company shall issue and deliver to the holder of the converted Series F CCCPS, a share certificate or certificates for the aggregate number of Equity Shares issuable upon such conversion. Where such aggregate number of Equity Shares includes any fractional share, such fractional share shall be disregarded. Subject to the requirements of applicable Law, such conversion shall be deemed to have been made immediately prior to the close of business on the date of such surrender of the certificate or certificates representing the Series F CCCPS, and the Person entitled to receive the Equity Shares issuable upon such conversion shall be treated for all purposes as the record holder of such Equity Shares on such date.

In the event that the Company undertakes any form of Capital Restructuring, then the number of Equity Shares that each Series F CCCPS converts into and the Series F Conversion Price for each such Equity Share shall be adjusted accordingly in a manner that each holder of Series F CCCPS receives such number of Equity Shares that such holder would have been entitled to receive immediately after occurrence of any such Capital Restructuring had the conversion of the Series F CCCPS occurred immediately prior to the occurrence of such Capital Restructuring. It is clarified that from the effective date of each adjustment to the Series F Conversion Price, the term "Series F Conversion Price" shall thereafter mean the adjusted Series F Conversion Price.

**3. VOTING RIGHTS**

The holders of Series F CCCPS shall be entitled to receive notice of and vote on all matters that are submitted to the vote of the Shareholders (including the holders of Equity Shares). Each of the Company and the Founders acknowledge that the holders of Series F CCCPS had agreed to subscribe to the Series F CCCPS on the basis that they would be able to exercise voting rights on the Series F CCCPS as if the same were converted into Equity Shares. Each Series F CCCPS shall entitle the holder to the number of votes equal to the number of whole or fractional Equity Shares into which such Series F CCCPS could then be converted. To this effect, each of the Company and the Founders agree to ensure that the Articles shall at all times contain a provision enabling and permitting holders of each Preference Share of the Company to have the right to such number of votes as is equal to the number of Equity Shares issuable upon conversion of such Preference Shares. If applicable Law does not permit the holders of Series F CCCPS to exercise voting rights on all shareholder matters submitted to the vote of the Shareholders (including the holders of Equity Shares), then until the conversion of all the Series F CCCPS into Equity Shares, each Founder shall vote in accordance with the instructions of the holders of Series F CCCPS at a General Meeting or provide proxies without instructions to the

holders of Series F CCCPS for the purposes of a General Meeting, in respect of such number of Equity Shares held by each of them such that the relevant percentage of the Equity Shares of the Company are voted on in the manner required by holders of the Series F CCCPS. For the purposes of this paragraph 3 of Schedule IVF, the relevant percentage in relation to each holder of Series F CCCPS shall be equal to the percentage of Equity Shares in the Company that such holder of Series F CCCPS would hold if such holder of Series F CCCPS was to elect to convert their Series F CCCPS into Equity Shares based on the then applicable Series F Conversion Price. The obligation of all Shareholders (other than the Investors) to vote on their Equity Securities as aforesaid shall be *pro-rated* in accordance with their *inter se* shareholding in the Company.

Subject to the applicable Law, the Company and the Shareholders hereby agree and acknowledge that the provisions of Section 43 and Section 47 of the Act are not applicable to the Company.

**4. GENERAL**

No Impairment. The Company and Shareholders shall not avoid or seek to avoid the observance or performance of any of the terms to be observed or performed hereunder by the Company or the Shareholders, but shall at all times in good faith assist in carrying out all such action as may be reasonably necessary or appropriate in order to protect the rights of the holders of the Series F CCCPS against impairment.

# Exhibit 32

MINUTES

**THINK & LEARN PRIVATE LIMITED**
**CIN:** U80903KA2011PTC061427
**REGISTERED OFFICE:** IBC KNOWLEDGE PARK, 4/1, 2ND FLOOR TOWER D, BANNERGHATTA MAIN ROAD, BANGALORE – 560029 KARNATAKA, INDIA

**MINUTES OF THE MEETING OF THE BOARD OF DIRECTORS OF THE COMPANY (TNLPL/BM/04/2022-23) HELD ON TUESDAY, THE 30TH DAY OF AUGUST 2022 AT 10:00 P.M. (IST) AT THE REGISTERED OFFICE OF THE COMPANY AT IBC KNOWLEDGE PARK, 4/1, 2ND FLOOR, TOWER D, BANNERGHATTA MAIN ROAD, BANGALORE - 560029, KARNATAKA, INDIA ('DEEMED VENUE') THROUGH VIDEO CONFERENCING OR OTHER AUDIO VISUAL MEANS.**

Time of commencement of the meeting : **10:00 P.M. (IST)**
Time of conclusion of the meeting : **12.30 A.M. (IST)**

**I. ROUTINE AGENDA**

**1. TO RECORD THE NAMES AND ATTENDANCE OF THE DIRECTORS PRESENT AT THE MEETING:**

| Sl. No. | Name, Designation & DIN | Mode of Presence at the Meeting (In Person / Video Conferencing or other Audio Visual means) | Location |
|---|---|---|---|
| (i) | **Mr. Byju Raveendran**<br>Chairman & Managing Director<br>DIN: 03408398 | Attended through video-conference | New York |
| (ii) | **Ms. Divya Gokulnath**<br>Director<br>DIN: 03415950 | Attended through video-conference | New York |
| (iii) | **Mr. Riju Ravindran**<br>Director<br>DIN: 03416072 | Attended through video-conference | New York |
| (iv) | **Mr. G. V. Ravishankar**<br>Nominee Director<br>DIN: 02604007 | Attended through video-conference | Dubai |
| (v) | **Mr. Russell Andrew Dreisenstock**<br>Director<br>DIN: 08368304 | Attended through video-conference | Singapore |
| (v) | **Ms. Vivian Wu**<br>Nominee Director<br>DIN: 07649210 | Attended through video-conference | USA |

**2. TO CONSIDER CHAIRMAN OF THE MEETING:**

Mr. Byju Raveendran, the Chairman of the Board, occupied the chair.

Thereafter, roll call was taken by the Chairman, whereby the directors participating through video conference stated their name, confirmed the receipt of agenda for the

Byju

Initial of the Chairman

meeting and confirmed that the requisite quorum was present and no other person is attending or has access to the proceedings of the meeting.

Thereafter, he called the meeting to order and conducted the proceedings of the meeting as per the agenda.

**3. TO CONSIDER NOTICE OF THE MEETING:**

The Chairman noted that the Notice of the Board Meeting has been served to all the Directors and others who are entitled to receive the notice, in accordance with the articles of association of the Company and provisions of the Section 173(3) and other applicable provisions of the Companies Act, 2013 and Rules made there-under.

The Chairman further noted that the Meeting was called at a short notice and the Company has received the Consents from all the Directors pursuant to Section 173(3) of the Companies Act, 2013, to hold the Board Meeting at a Shorter Notice.

Notice of the Meeting was taken as read after seeking Directors' consent.

**4. TO GRANT LEAVE OF ABSENCE, IF ANY:**

The matter did not arise as all the Directors were present at the meeting.

**5. TO CONFIRM THE MINUTES OF THE PREVIOUS BOARD MEETING OF THE COMPANY:**

The minutes of the previous meeting of the board of directors held on 16th July 2022 was placed before the meeting. After perusal, the said minutes were approved as a fair and correct record of the proceedings.

Thereafter, the following resolution was passed unanimously:

"**RESOLVED THAT** the minutes of the previous meeting of the board of directors held on 16th July 2022 as placed before the meeting be and is hereby noted and approved."

**II. STATUTORY AND/OR BUSINESS RELATED AGENDA REQUIRING APPROVAL OR NOTING OF THE BOARD**

**6. NOTING OF CIRCULAR RESOLUTION PASSED BY THE COMPANY SINCE LAST BOARD MEETING:**

The Chairman briefed the board that in accordance with the provisions of Section 175 of the Companies Act, 2013 read together with Rule 5 of the Companies (Meetings of Board and its Powers) Rules, 2014, the Company had circulated a resolution for the consideration and approval of the board of directors on an occasion since physical meeting of the board of directors within a short period was not possible.

He further briefed that the recording of circular resolution in the board minutes is required in accordance with the afore-stated provisions and from the perspective of good corporate governance.

Initial of the Chairman

In this connection, after discussions the board considered the proposal and passed the following resolution unanimously:

"**RESOLVED THAT** the following resolution circulated to the Directors and approved by the Directors, as reproduced below, be and are hereby noted and confirmed:

1. **Circular Resolution No.04/2022-23, circulated by the Company and approved by the directors on 27th July 2022:**

**APPROVAL AND AUTHORISATION TO SIGN THE TRANSACTION DOCUMENTS:**

"**RESOLVED THAT** the Board hereby approves the drafts of the following documents proposed to be executed by the Company and placed before the Board and initialed by the Chairman for the purpose of identification:

(i) Option Agreement to be executed among Singapore VII Topco I Pte. Ltd, BCP Asia Athena ESC (Cayman) Ltd. ("Investors") and Byju's Investments Pte. Ltd. ("BIPL");
(ii) Supplementary Agreement to the Share Purchase Agreement dated April 3, 2021 executed among the Company, Investors and Aakash Educational Services Limited, to be executed among Investors, BIPL and Aakash Educational Services Limited; and
(iii) Drag Agreement to be executed among Investors and BIPL. ("collectively the "Transaction Documents")

**RESOLVED FURTHER THAT** any of Mr. Byju Raveendran (DIN 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN - 03415950), Director and Mr. Riju Ravindran (DIN - 03416072), Director be and are hereby severally authorized to, for and on behalf of the Company to:

(a) discuss, negotiate, finalize, sign, execute and deliver, the Transaction Documents (including any and all amendments supplements and modifications thereto);

(b) provide any consent or waiver to any person, in relation to the Transaction Documents; and

(c) undertake any and all transactions contemplated therein and execute such other documents, agreements, letters, undertakings, schedules, deeds and writings, including any amendments, modifications, variations and alterations thereto, and to do all such acts, deeds and things, as may be necessary or expedient, to give effect to and perform the Transaction Documents and/or as may be necessary to give effect to this resolution, including removing any difficulties arising in relation thereto.

7. **TO RECEIVE, CONSIDER, APPROVE AND ADOPT THE ANNUAL ACCOUNTS / FINANCIAL STATEMENTS (STANDALONE & CONSOLIDATED) ALONG WITH NOTES FOR THE FINANCIAL YEAR ENDED 31ST MARCH 2021:**

The Chairman informed the Board that it is required to approve and adopt the Annual Accounts / Financial Statements (Standalone & Consolidated) pursuant to the provisions of Section 134 and other applicable provisions, if any, of the

Initial of the Chairman

MINUTES

Companies Act, 2013 and Rules made there-under (including any Statutory modifications and/or re-enactment, for the time being in force).

Further, the *draft* Annual Accounts / Financial Statements along with Notes (both Standalone and Consolidated) for the Financial Year ended 31st March 2021, were placed before the Meeting.

The Company's performance during the financial year was reviewed and compared with its performance in the previous financial year.

Thereafter, the Chairman requested the Board to authorize the Directors of the Company to sign the Financial Statements and other associated Documents, if any, on behalf of the Company and to do all such acts, deeds, things etc., as may be required in connection.

Thereafter, the following Resolution was proposed to the Directors for consideration and adoption of Annual Accounts for the financial year ended 31st March 2021 and was unanimously passed:

"**RESOLVED THAT** pursuant to Section 134 and other applicable provisions, if any, of the Companies Act, 2013 read with the relevant Rules made there-under (including any Statutory modifications and/or re-enactment, for the time being in force), the Financial Statements (Standalone and Consolidated) of the Company for the financial year ended 31st March, 2021, consisting of Balance Sheet, Statement of Profit & Loss, Cash Flow Statement and Notes appended thereto, as placed before the Board be and are hereby considered and approved.

**RESOLVED FURTHER THAT** pursuant to Section 134 and other applicable provisions, if any, of the Companies Act, 2013 read together with the relevant Rules made there-under (including any Statutory modifications and/or re-enactment, for the time being in force), the annual accounts/financial statements (standalone and consolidated) for the financial year ended 31st March 2021 be signed by Mr. Byju Raveendran [DIN – 03408398], Chairman & Managing Director and Ms. Divya Gokulnath [DIN – 03415950], Director, at their convenient schedule.

**RESOLVED FURTHER THAT** the annual accounts/financial statements (standalone and consolidated) for the financial year ended 31st March 2021, after the signatures of the Directors of the Company, be submitted to the statutory auditors of the Company, for their signature and report thereon.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran, (DIN - 03408398) Chairman & Managing Director, Mr. Riju Ravindran (DIN - 03416072), Director and Ms. Divya Gokulnath (DIN - 03415950), Director, be and are hereby severally authorized to do all such acts, deeds, things as may be necessary while giving effect to the foregoing Resolution."

**8. TO TAKE NOTE OF THE *DRAFT* AUDITORS' REPORT (STANDALONE & CONSOLIDATED) FOR THE FINANCIAL YEAR ENDED 31ST MARCH 2021.**

The Chairman placed before the Board, the *draft* Auditors' Report (Standalone & Consolidated) for the Financial Year ended 31st March 2021 and requested the Board to take note of the same.

Initial of the Chairman

MINUTES

After perusal thereof, the following Resolution was passed unanimously:

"**RESOLVED THAT** the *draft* Auditors' Report (standalone and consolidated) issued by Deloitte Haskins & Sells LLP, Chartered Accountants, Bangalore, for the financial year ended 31st March 2021 as placed before the Meeting, be and is hereby taken on record."

**9. TO CONSIDER, APPROVE AND ADOPT THE *DRAFT* DIRECTORS' REPORT FOR THE FINANCIAL YEAR ENDED 31ST MARCH 2021:**

The Chairman placed before the Board, the *draft* Report of Directors for the financial year ended 31st March 2021 to which the Balance Sheet relates, containing the facts and disclosures as enumerated under Section 134 and other applicable provisions of the Companies Act, 2013 and the Rules made there-under, to the extent applicable to the Company, for perusal, finalization and sign-off by the Directors

Thereafter, the other Board Members analysed the Report in detail and passed the following Resolution unanimously approving the Report.

"**RESOLVED THAT** the *draft* Report of the Board of Directors of the Company for the financial year ended 31st March 2021 containing the facts and disclosures as enumerated under Section 134 and other applicable provisions, if any, of the Companies Act, 2013 read together with the relevant Rules made there-under (including any Statutory modifications and/or re-enactment, for the time being in force), to the extent applicable to the Company as submitted before the Meeting, be and is hereby considered and approved, with or without modifications.

**RESOLVED FURTHER THAT** pursuant to Section 134(6) and other applicable provisions, if any, of the Companies Act, 2013 read together with the relevant Rules made there-under (including any Statutory modifications and/or re-enactment, for the time being in force), the Directors' Report for the financial year ended 31st March 2021 be signed by Mr. Byju Raveendran, (DIN – 03408398), Chairman & Managing Director and Ms. Divya Gokulnath (DIN – 03415950), Director, at their convenient schedule.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN - 03416072), Director and Ms. Divya Gokulnath (DIN - 03415950), Director, be and are hereby severally authorized to do all such acts, deeds, things as may be necessary while giving effect to the foregoing Resolution."

**10. TO CALL AND CONVENE AN ANNUAL GENERAL MEETING ('AGM') FOR THE FINANCIAL YEAR ENDED 31ST MARCH 2021; APPROVAL OF NOTICE OF AGM; AND AUTHORIZATION TO ISSUE/SEND OUT THE DOCUMENTS RELATED TO AGM:**

The Chairman apprised the board about the requirement to call and convene the 10th Annual General Meeting ("AGM") of the members of the Company to seek their approval for financial statements (standalone & consolidated) along with notes and the Report of the Directors and Auditors for the financial year ended 31st March 2021.

Byju

Initial of the Chairman

He further apprised the board that it is required to authorize any of the Directors of the Company to call and convene the AGM, to sign the AGM Notice and to issue the AGM related documents to all the Directors, Shareholders, Statutory Auditors and to others who are entitled to receive the same and to do the needful as may be required in this connection.

Thereafter, the board discussed on the agenda and passed the following resolution unanimously:

"**RESOLVED THAT** the 10th Annual General Meeting (**"AGM"**) of shareholders of the Company be convened at a shorter notice through video conferencing or other audio visual means, to transact the business as provided in the *draft* notice convening the Meeting, with or without modification(s) thereon.

**RESOLVED FURTHER THAT** the Company shall obtain the consent from all the shareholders who are entitled to receive the notice / provide their consent in terms of Articles of Association of the Company and the Companies Act, 2013 for convening the 10th AGM at shorter notice.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran, (DIN – 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN - 03416072), Director and Ms. Divya Gokulnath (DIN – 03415950), Director, be and are hereby severally authorized on behalf of the Company:

[a] to sign the said Notice of 10th AGM with such modifications as are deemed necessary;

[b] to issue / send out the notice of the 10th AGM along with Directors' Report, Auditors' Report, Financial Statements along with other accompanying documents, with such modifications as are deemed necessary, to the Directors, Shareholders, Statutory Auditors and to others who are entitled to receive the same."

**11. AUTHORIZATION TO SIGN AND SUBMIT THE FORMS AND/OR DOCUMENTS AFTER THE ANNUAL GENERAL MEETING OF THE COMPANY:**

The Chairman notified the Board that after the conclusion of the Tenth Annual General Meeting of the Company, it is necessary to file the Balance Sheet, Annual Return and other forms and documents within the stipulated period from the date of AGM as prescribed in accordance with the provisions of the Companies Act, 2013 and the Rules made there-under.

He further requested the Board to authorize any of the Directors of the Company to sign and submit the necessary forms and documents with the Registrar of Companies, Karnataka, Bangalore {through the portal of the Ministry of Corporate Affairs (www.mca.gov.in)} and to do the needful required in this connection.

In this regard, the Board passed the following Resolution unanimously:

"**RESOLVED THAT** Mr. Byju Raveendran, (DIN - 03408398) Chairman & Managing Director, Mr. Riju Ravindran (DIN – 03416072aaa), Director and Ms. Divya Gokulnath (DIN - 03415950), Director, be and are hereby severally authorized to sign and submit various documents, forms, returns, etc., with the Registrar of

Initial of the Chairman

Companies, Karnataka, Bangalore {through the portal of the Ministry of Corporate Affairs (www.mca.gov.in)} which are required to be filed after the approval of the Shareholders at the 10th Annual General Meeting and to do all such acts, deeds, things as may be necessary while giving effect to the foregoing resolution."

**III. ANY OTHER MATTERS**

**12. ANY OTHER AGENDA WITH THE PERMISSION OF CHAIRMAN AND MAJORITY OF THE DIRECTORS PRESENT AT THE MEETING:**

With the permission of the Chairman and consent of all the Directors present at the Meeting, the following additional matters were discussed and approved by the Board:

**12.1 CORRECTIVE MEASURES TO REMEDY THE SHORTCOMINGS OF THE INTERNAL FINANCIAL CONTROL OF THE COMPANY**

The following corrective measures were discussed and agreed upon by the Board to remedy the shortcomings of the internal financial controls of the Company and to ensure future course-correction:

(i) The Board is to be apprised of all relevant details in relation to the Company and the management shall work towards being forthcoming on potential issues and present a fair and accurate picture of the state of affairs proactively.

(ii) Appointment of a Company chief financial officer as soon as reasonably practicable and designation of an interim CFO until such hire is made. Such officer would also oversee the finance function overseas and in India. Both the CFO and interim CFO appointments are to be reviewed and approved by the Board.

(iii) Appointment of a Top 5 accounting firm as internal auditor for the company and its key subsidiaries who can review on a quarterly basis all key internal financial controls and report their findings and corrective measures periodically to the Board.

(iv) A suitably qualified Company Secretary be appointed. The Company Secretary will implement an electronic system for cap table management (e.g. Carta or Qapita) and will maintain Board meeting minutes.

(v) Finalization of timelines for the audit for the financial year ended 31 March 2022 ("Audit 22"), and to provide a list of potential key points to the Board, in respect of closing of such audit. Moreover, the Management will schedule board updates every two weeks to report on progress towards completion of Audit 22.

(vi) Reorganization of the finance department of the Company, establishing protocols and procedures for proper functioning of the finance department and preparation of a well-defined format of financial reporting.

Initial of the Chairman

MINUTES

**12.2 APPROVAL AND AUTHORIZATION TO AVAIL FINANCIAL ASSISTANCE IN THE FORM OF BANK GUARANTEE FROM ICICI BANK LIMITED IN FAVOUR OF ADITYA BIRLA FINANCE LIMITED AND MATTERS INCIDENTAL THERETO:**

The Chairman informed the Board that the Company is proposing to avail financial assistance in the form of Bank Guarantee not exceeding Rs.6,50,00,000/- (Rupees Six Crore Fifty Lakh only) (the **"Facility"**) in favour of Aditya Birla Finance Limited from ICICI Bank Limited (the **"Bank"**).

In this regard the Chairman proposed to avail the said facility on such terms and conditions as may be stipulated by the Bank.

The board discussed on the agenda and passed the following resolutions unanimously:

**"RESOLVED**

1. That the Company do borrow and avail financial assistance by way of Bank Guarantee not exceeding Rs.6,50,00,000/- (Rupees Six Crore Fifty Lakh only) (the **"Facility"**) from ICICI Bank Limited (the **"Bank"**), in favour of Avanse Financial Services Limited against the security of the fixed deposit/ term deposit of amount not exceeding Rs.6,50,00,000/- (Rupees Six Crore Fifty Lakh only).

2. That Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN – 03416072), Director and Ms. Divya Gokulnath (DIN – 03415950), Director of the Company (**"Authorized Directors"**) are hereby severally authorized to apply for the aforesaid facility and submit such application to the Bank and do all such acts and execute all such documents as the Bank may require in connection with the Facility.

3. The common seal of the Company be affixed in the presence of any of Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN – 03416072), Director and Ms. Divya Gokulnath (DIN – 03415950), Director of the Company, on such of the documents as are required by the Bank.

4. Copies of the aforesaid resolutions certified to be true be furnished to the Bank and they be requested to act thereon.

**12.3 APPROVAL FOR CHANGING THE OPERATION AUTHORIZATIONS TO THE BANK ACCOUNTS OF THE COMPANY MAINTAINED WITH ICICI BANK LIMITED AND MATTERS INCIDENTAL THERETO:**

The Chairman apprised the board about the requirement to change the operation authorizations to some of the bank accounts of the Company maintained with ICICI Bank Limited.

The board had a brief discussion on the matter and passed the following resolution unanimously:

**RESOLVED THAT**

Byju

Initial of the Chairman

MINUTES

1. Current Accounts ("**Accounts**") in the name of the Company Think & Learn Private Limited is already held with ICICI Bank, Bengaluru.

In view of the management decision and administrative reasons, only the below mentioned signatories **(Table A)** in the mentioned account numbers is to be removed / deleted from the Signatories list.

**Table A**

| Account Nos | Name of Signatories |
|---|---|
| 004705011400 | Deepak Kumar Sinkha |
| 004705011401 | Adesh Chedda |
| 004705013358 | Ajay Alex |
| 004705013263 | Vikram Sakhuja |
| 004705013359 | Atul Kumar |

All other remaining signatories and their limits / powers / workflow set-up and other services will continue like earlier & there will not be any changes in their powers

2. The Directors of the Company are **severally** authorised to additionally authorize such other official(s) to operate the Account in any of the modes indicated above and decide on adopting any other mode of operation of the Account that ICICI Bank may offer from time to time and details of every such additional authorization / adoption of mode of operation shall be placed before the next meeting of the Board of Directors for information.

3. Copies of the foregoing Resolutions certified to be true copies by any of the Director(s) of the Company be furnished to ICICI Bank and it be requested to act thereon.

**13. FIXATION OF SCHEDULE FOR NEXT BOARD MEETING:**

Thereafter, it was decided that the next Meeting of the Board of Directors be fixed by the Board at the earliest, in consultation with the Directors.

**14. VOTE OF THANKS:**

The Chairman thanked the Directors for their active participation at the Meeting.

Initial of the Chairman

MINUTES

Thereafter, the Meeting was declared concluded with a vote of thanks to the Chairman.

BYJU RAVEENDRAN
CHAIRMAN OF THE BOARD
20TH SEPTEMBER 2022
DUBAI

DATE OF ENTRY IN THE MINUTES BOOK: **15TH SEPTEMBER 2022**

**BYJU RAVEENDRAN**
CHAIRMAN & MANAGING DIRECTOR
DIN: 03408398
NO.43, YOGANARASIMHA, 14TH MAIN, 15TH CROSS, BDA COMPLEX
HSR LAYOUT, SECTOR-4, BANGALORE – 560102
KARNATAKA, INDIA

Initial of the Chairman

# Exhibit 33

MINUTES

**THINK & LEARN PRIVATE LIMITED**
**CIN:** U80903KA2011PTC061427
**REGISTERED OFFICE:** IBC KNOWLEDGE PARK, 4/1, 2ND FLOOR
TOWER D, BANNERGHATTA MAIN ROAD, BANGALORE – 560029
KARNATAKA, INDIA

**MINUTES OF THE 10TH ANNUAL GENERAL MEETING OF THE SHAREHOLDERS OF THE COMPANY (TNLPL/GM/03/2022-23) HELD AT THE REGISTERED OFFICE OF THE COMPANY AT IBC KNOWLEDGE PARK, 4/1, 2ND FLOOR, TOWER D, BANNERGHATTA MAIN ROAD, BANGALORE 560029, KARNATAKA, INDIA, ON MONDAY, THE 19TH DAY OF SEPTEMBER 2022 AT 12:00 NOON (IST)**

Time of Commencement of the Meeting : **12:00 NOON**
Time of Conclusion of the Meeting : **12:30 P.M.**

**1. TO RECORD THE NAMES AND ATTENDANCE OF THE DIRECTORS PRESENT AT THE MEETING**

| Sl. No. | Name, Designation & DIN |
|---|---|
| (i) | **Mr. Byju Raveendran**<br>Chairman & Managing Director<br>DIN: 03408398 |
| (ii) | **Ms. Divya Gokulnath**<br>Director<br>DIN: 03415950 |
| (iii) | **Mr. Riju Ravindran**<br>Director<br>DIN: 03416072 |

**2. TO RECORD THE NAMES AND ATTENDANCE OF THE SHAREHOLDERS PRESENT AT THE MEETING**

| Sl. No. | Name |
|---|---|
| (i) | **Mr. Byju Raveendran** |
| (ii) | **Ms. Divya Gokulnath** |
| (iii) | **Mr. Riju Ravindran** |

**3. TO CONSIDER CHAIRMAN OF THE MEETING**

Mr. Byju Raveendran, the Chairman, occupied the chair.

After recording that the quorum was present and that the Meeting was in order, the Chairman initiated the proceedings of the Meeting as per the agenda and formally extended a very warm welcome to the Shareholders for the Annual General Meeting.

Byju

Initial of the Chairman

MINUTES

**4. NOTING OF ATTENDANCE OF SHAREHOLDERS, DIRECTORS, AND STATUTORY AUDITORS**

The Chairman noted that:

[a] Three (3) Directors were present at the meeting and Ms. Vivian Wu, Nominee Director, Mr. G V Ravishankar, Nominee Director and Mr. Russel Andrew Dreisenstock, Director, did not attend the meeting due to pre-occupation.

[b] Three (3) Shareholders were present at the meeting.

[c] The Company has received waiver letter from Chan Zuckerberg Mauritius as required under Article 38 of Articles of Association of the Company, waiving the requirement of presence of their authorised representative to constitute the quorum for the meeting.

[d] Statutory Auditors have expressed their inability to attend the meeting due to their preoccupation and have not appointed any of their authorized representatives to attend the meeting.

**5. NOTICE OF THE MEETING**

The Chairman noted that the notice of the Annual General Meeting has been served to all the Members of the Company, Directors of the Company and Statutory Auditors of the Company, in accordance with the provisions of the Section 101(3) and other applicable provisions of the Companies Act, 2013 and Rules made there-under.

The Chairman further noted that the Meeting has been called at Shorter Notice and the requisite Consents for the same have been received from all the Shareholders.

The Notice of the Annual General Meeting was taken as read after seeking Shareholders' consent.

**6. TO RECEIVE, CONSIDER, APPROVE AND ADOPT THE AUDITED STANDALONE AND CONSOLIDATED FINANCIAL STATEMENTS OF THE COMPANY FOR THE FINANCIAL YEAR ENDED 31ST MARCH 2021 TOGETHER WITH THE REPORT OF THE BOARD OF DIRECTORS AND AUDITORS THEREON:**

The Chairman informed the members present at the meeting that the members need to consider, approve and adopt the Standalone as well as Consolidated Audited Financial Statements of the Company for the financial year ended 31st March 2021 together with the Report of Directors along with annexures and Report of Auditors thereon, which was circulated to the members along with the notice of the Annual General Meeting.

He further informed the Shareholders that any queries pertaining to the Financial Statements and the Reports raised shall be answered by him.

Thereafter, Mr. Divya Gokulnath proposed the following Resolution as an Ordinary Resolution:

Initial of the Chairman

MINUTES

"**RESOLVED THAT** pursuant to the applicable provisions of the Companies Act, 2013 read together with the relevant rules made there-under (including any statutory modifications and re-enactment, for the time being in force), the audited financial statements (standalone and consolidated) of the Company for the financial year ended 31st March 2021 together with the report of the board of directors along with annexures and the report of the statutory auditors thereon, be and are hereby approved and adopted."

Mr. Riju Ravindran seconded the Resolution.

The Chairman, then put the said Resolution to vote on show of hands, and the Resolution was passed unanimously by all the members present at the meeting.

**7. VOTE OF THANKS**

Since there was no other agenda/business, the Chairman thanked the Members for their presence and active participation at the Meeting.

Thereafter, the Meeting was declared concluded with a vote of thanks to the Chairman.

**BYJU RAVEENDRAN**
**CHAIRMAN**
**21ST SEPTEMBER 2022**
**DUBAI**

DATE OF ENTRY IN THE MINUTES BOOK: **21ST SEPTEMBER 2022**

**BYJU RAVEENDRAN**
CHAIRMAN & MANAGING DIRECTOR
DIN: 03408398
NO.43, YOGANARASIMHA, 14TH MAIN, 15TH CROSS, BDA COMPLEX
HSR LAYOUT, SECTOR-4, BANGALORE – 560102
KARNATAKA, INDIA

Initial of the Chairman

# Exhibit 34

MINUTES

**THINK & LEARN PRIVATE LIMITED**
**CIN:** U80903KA2011PTC061427
**REGISTERED OFFICE:** IBC KNOWLEDGE PARK, 4/1, 2ND FLOOR
TOWER D, BANNERGHATTA MAIN ROAD, BANGALORE – 560029
KARNATAKA, INDIA

**MINUTES OF THE MEETING OF THE BOARD OF DIRECTORS OF THE COMPANY (TNLPL/BM/05/2022-23) HELD ON TUESDAY, THE 20TH DAY OF SEPTEMBER 2022 AT 8:00 P.M. (IST) AT THE REGISTERED OFFICE OF THE COMPANY AT IBC KNOWLEDGE PARK, 4/1, 2ND FLOOR, TOWER D, BANNERGHATTA MAIN ROAD, BANGALORE - 560029, KARNATAKA, INDIA ('DEEMED VENUE') THROUGH VIDEO CONFERENCING OR OTHER AUDIO VISUAL MEANS.**

Time of commencement of the meeting : **8:00 P.M. (IST)**
Time of conclusion of the meeting : **8.40 P.M. (IST)**

**I. ROUTINE AGENDA**

**1. TO RECORD THE NAMES AND ATTENDANCE OF THE DIRECTORS PRESENT AT THE MEETING:**

| Sl. No. | Name, Designation & DIN | Mode of Presence at the Meeting (In Person / Video Conferencing or other Audio Visual means) | Location |
|---|---|---|---|
| (i) | **Mr. Byju Raveendran**<br>Chairman & Managing Director<br>DIN: 03408398 | Attended through video-conference | Dubai |
| (ii) | **Ms. Divya Gokulnath**<br>Director<br>DIN: 03415950 | Attended through video-conference | Delhi |
| (iii) | **Mr. Riju Ravindran**<br>Director<br>DIN: 03416072 | Attended through video-conference | Dubai |

**2. TO CONSIDER CHAIRMAN OF THE MEETING:**

Mr. Byju Raveendran, the Chairman of the Board, occupied the chair.

Thereafter, roll call was taken by the Chairman, whereby the directors participating through video conference or other audio visual means stated their name, confirmed the receipt of agenda for the meeting and confirmed that the quorum was present and no other person is attending or has access to the proceedings of the meeting.

Thereafter, he called the meeting to order and conducted the proceedings of the meeting as per the agenda.

**3. TO CONSIDER NOTICE OF THE MEETING:**

The Chairman noted that the notice of the board meeting has been served to all the

MINUTES

Directors and others who are entitled to receive the notice, in accordance with the articles of association of the Company and provisions of the Section 173(3) and other applicable provisions of the Companies Act, 2013 and rules made there-under.

The Chairman further noted that the meeting was called at a short notice and the Company has received the consents from all the Directors pursuant to Section 173(3) of the Companies Act, 2013, to hold the Board Meeting at a shorter notice.

Notice of the Meeting was taken as read after seeking Directors' consent.

**4. TO GRANT LEAVE OF ABSENCE, IF ANY:**

Leave of absence was granted to Mr. G V Ravishankar (DIN: 02604007), Ms. Vivian Wu (DIN: 07649210) **("Nominee Directors")** and Mr. Russell Andrew Dreisenstock (DIN: 08368304), Director, as requested by them.

The Chairman took note of the leave of absence and waiver letter received from the nominee directors and director and informed the board that, the nominee directors and director have waived the requirement of their presence to constitute quorum as per Article 20 of the Articles of Association of the Company.

**5. TO CONFIRM THE MINUTES OF THE PREVIOUS BOARD MEETING OF THE COMPANY:**

The minutes of the previous meeting of the board of directors held on 30th August 2022 was placed before the meeting. After perusal, the said minutes were approved as a fair and correct record of the proceedings.

Thereafter, the following resolution was passed unanimously:

"**RESOLVED THAT** the minutes of the previous meeting of the board of directors held on 30th August 2022 as placed before the meeting be and is hereby noted and approved."

**II. STATUTORY AND/OR BUSINESS RELATED AGENDA REQUIRING APPROVAL OR NOTING OF THE BOARD**

**6. APPROVAL FOR CANCELLATION/WITHDRAWAL OF AN OFFER AND ISSUANCE OF UNISSUED AND UNSUBSCRIBED SERIES F CCCPS MADE TO PROSPECTIVE INVESTORS AND MATTERS INCIDENTAL THERETO:**

The Chairman apprised the board that the Company at an extraordinary general meeting of the shareholders held on June 29, 2022, had approved an offer and issuance of Series F Compulsorily Convertible Cumulative Preference Shares ("Series F CCCPS") of the Company under Private Placement to various identified investors viz., Sumeru Global Digital Technology Fund -A, L.P. (**"Sumeru"**), Byjus Investments Pte. Ltd. (**"BIPL"**) and DRD Holdings SARL (**"DRD Holdings"**).

He further informed that the Company intends to withdraw / cancel the earlier offer and issuance of Series F CCCPS made to Sumeru, BIPL and DRD Holdings to open a new offer of securities in terms of Section 42(5) of the Companies Act, 2013.

Initial of the Chairman

MINUTES

In this regard it is necessary to approve the withdrawal of the offer and issuance of Series F CCCPS and to authorize Director(s) of the Company to verify, sign, execute and deliver requisite documents and to do all such acts, deeds, things etc., as may be required in relation thereto.

Thereafter, the board discussed on the agenda and passed the following resolution unanimously:

**"RESOLVED THAT** pursuant to the provisions of Section 42(5) and other applicable provisions, if any, of the Companies Act, 2013 (**"the Act"**) read together with rule 14 of Companies (Prospectus and Allotment of Securities) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force), the consent of the board be and is hereby accorded to withdraw or cancel an offer and issuance of Series F Compulsorily Convertible Cumulative Preference Shares **("Series F CCCPS")** made to Sumeru Global Digital Technology Fund -A, L.P. (**"Sumeru"**), Byjus Investments Pte. Ltd. (**"BIPL"**) and DRD Holdings SARL (**"DRD Holdings"**) as detailed below:

| Sl. No | Name of the Investor | Maximum Number of Series F CCCPS that were Offered | Price per Series F CCCPS including Premium (in INR) | Total Consideration for the maximum number of Series F CCCPS that were Offered (in INR) |
|---|---|---|---|---|
| 1 | Sumeru Global Digital Technology Fund -A, L.P. | 32,210 | 3,56,250 | 11,47,48,12,500 |
| 2 | Byjus Investments Pte. Ltd.* | 89,825 | 3,56,250 | 32,00,01,56,250 |
| 3 | DRD Holdings SARL | 42,095 | 2,85,072 | 12,00,01,05,840 |

***BIPL has subscribed to and has been allotted 53,171 (Fifty Three Thousand One Hundred Seventy One) Series F CCCPS out of the total Series F CCCPS offered to them.***

**RESOLVED FURTHER THAT** the offer and issuance of Series F CCCPS made to Sumeru, DRD Holdings and BIPL (to the extent unsubscribed) shall be withdrawn and cancelled with immediate effect.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN - 03416072), Director and Ms. Divya Gokulnath (DIN - 03415950), Director, be and are hereby severally authorized on behalf of the company:

[a] to take all necessary steps for withdrawal / cancellation of the offer and issuance of Series F CCCPS made to Sumeru, DRD Holdings and BIPL;

[b] to verify, sign, execute and submit the necessary Documents and Papers;

[c] to certify a copy of the resolution and issue the same; and

[d] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and

Initial of the Chairman

settle all doubts, difficulties that may arise from time to time while giving effect to the above resolutions."

7. **APPROVAL FOR AN OFFER AND ISSUANCE OF SERIES F CCCPS OF THE COMPANY UNDER PRIVATE PLACEMENT AND MATTERS INCIDENTAL THERETO:**

The Chairman informed the Board that the Company had offered and issued 89,825 Series F CCCPS ("Offered Shares") to Byju's Investments Pte. Ltd. ("BIPL") following the approval of the shareholders provided at the extraordinary general meeting of the Company held on June 29, 2022. Pursuant to the abovementioned offer and issuance, BIPL had subscribed to an aggregate of 53,171 Series F CCCPS of the Offered Shares, with 36,654 Series F CCCPS ("Unsubscribed Shares") of the Offered Shares remaining unsubscribed. Upon request of BIPL, the Company intends to update the offer and issuance of the Unsubscribed Shares in favour of Byju's Holdings 1 Pte. Ltd. ("Byju's Holdings"). Accordingly, upon the Company withdrawing/ cancelling the Unsubscribed Shares offered and issued to BIPL, such shares will be offered and issued to Byju's Holdings in compliance with the requirements of the Companies Act, 2013 (including the rules made thereunder).

The board was further apprised by the Chairman that the Company is proposing to offer and issue up to 36,654 (Thirty Six Thousand Six Hundred Fifty Four) Series F CCCPS of face value of INR 10/- (Indian Rupees Ten only) each of the Company, at a securities premium of INR 3,56,240/- (Indian Rupees Three Lakh Fifty Six Thousand Two Hundred Forty) per Series F CCCPS under private placement to Byju's Holdings, subject to the approval of the members at a general meeting by way of a special resolution.

Thereafter, the Chairman also placed the Share Valuation Report from Mr. Saurobh Kumar Barick, Registered Valuer, holding Registration No. IBBI/RV/11/2019/12454, determining the fair value of shares of the Company, based on which the Series F CCCPS will be offered and issued to Byju's Holdings, before the board.

Then, he requested the board to consider the proposal and authorize Director(s) to take all necessary steps for an offer and issuance of Series F CCCPS to the proposed investors, to call and convene an extraordinary general meeting, to sign and submit the necessary documents and forms to the jurisdictional Registrar of Companies and to do all such incidental acts, deeds, things etc.

The board discussed in detail on the agenda and passed the following resolution unanimously:

"**RESOLVED THAT** pursuant to (i) the provisions of Sections 62(1)(c), 42, 55 and other applicable provisions, if any, of the Companies Act, 2013 read together with Rule 14 of the Companies (Prospectus and Allotment of Securities) Rules, 2014 and Rule 9 & 13 of the Companies (Share Capital and Debentures) Rules, 2014 including any statutory modifications and re-enactment for the time being in force), (ii) the Foreign Exchange Management Act, 1999 and the rules specified thereunder, and (iii) the enabling provisions of the Articles of Association of the Company and subject to the approval of the Members of the Company at a General Meeting, the consent of the Board be and is hereby accorded for an offer and issuance of up to 36,654 (Thirty Six Thousand Six Hundred Fifty Four) Series F CCCPS of face value of INR

Initial of the Chairman

10/- (Indian Rupees Ten only) each of the Company, at a securities premium of INR 3,56,240/- (Indian Rupees Three Lakh Fifty Six Thousand Two Hundred Forty) per Series F CCCPS, under Private Placement to Byju's Holdings 1 Pte. Ltd. **("Byju's Holdings")**.

**RESOLVED FURTHER THAT** the Series F CCCPS will have (i) priority with respect to payment of dividend or repayment of capital vis-à-vis Equity Shares, (ii) that the payment of dividend will be on cumulative basis, and (iii) that the terms of conversion, voting rights and other terms are attached as an **Annexure** to this Resolution.

**RESOLVED FURTHER THAT** the Private Placement Offer cum Application Letter serially numbered and addressed to Byju's Holdings as required under Rule 14 of the Companies (Prospectus and Allotment of Securities) Rules, 2014 read with Section 42(3) of the Companies Act, 2013 (including any statutory modifications and re-enactment, for the time being in force) be approved and the same be issued to the respective identified investors to subscribe to securities upon approval of the offer and issuance by the members and filing of such Special Resolution with the jurisdictional Registrar of Companies.

**RESOLVED FURTHER THAT** the Company do record the name of the identified investor and maintain such record of private placement offer of Series F CCCPS in Form PAS-5 under the Companies (Prospectus and Allotment of Securities) Rules, 2014 (including any statutory modifications and re-enactment, for the time being in force).

**RESOLVED FURTHER THAT** subscription amount to be received by the Company from the identified investor as application monies to allot the Series F CCCPS, pursuant to the issue shall be kept by the Company in a separate bank account maintained by the Company and shall be utilized by the Company in accordance with provisions of Section 42 of the Act.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN - 03415950), Director, Mr. Riju Ravindran (DIN - 03416072), Director, be and are hereby severally authorized on behalf of the Company:

[a] to take all necessary steps for offer and issuance of Series F CCCPS;

[b] to call and convene an extraordinary general meeting of the Company;

[c] to verify, sign and issue the offer letter and the application form and to maintain a record of Private Placement and to sign and execute all necessary documents and/or any other deed / document / letter / agreement;

[d] to verify, sign, execute and submit the necessary Documents and Forms, if any, to the jurisdictional Registrar of Companies;

[e] to file Form SMF (FC-GPR) with the Reserve Bank of India (RBI), through Authorized Dealer (AD) Bank in accordance with the provisions of Foreign Exchange Management Act, 1999 and the rules specified thereunder;

[f] to certify a copy of the resolution and issue the same; and

Byju

Initial of the Chairman

MINUTES

[g] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and settle all doubts, difficulties that may arise from time to time while giving effect to the above resolutions."

**8. TO CALL AND CONVENE AN EXTRAORDINARY GENERAL MEETING AND MATTERS INCIDENTAL THERETO:**

The Board was informed by the Chairman about the requirement to convene an extraordinary general meeting of the shareholders of the Company to seek their approval for an offer and issuance of Series F Compulsorily Convertible Cumulative Preference Shares ("**Series F CCCPS**") under private placement.

Then, he proposed to schedule an extraordinary general meeting of the shareholders on **Wednesday, the 21st day of September 2022** at **11:00 a.m. (IST)** through video conferencing ('VC') or other audio-visual means ('OAVM'), at a shorter notice with the consent of the shareholders of the Company.

Then, he requested the board to approve the *draft* of the notice of extraordinary general meeting along with the relevant annexures forming part of the notice and authorize any of the Directors to take all necessary steps to call and convene an extraordinary general meeting, and to do all such incidental acts, deeds, things etc.

Thereafter, the board considered the agenda, had a brief discussion and passed the following resolution unanimously:

"**RESOLVED THAT** an extraordinary general meeting of the shareholders of the Company be convened at a shorter notice on **Wednesday, the 21st day of September 2022** at **11:00 a.m. (IST)** through video conferencing ('VC') or other audio-visual means ('OAVM'), to consider and approve the matter as per the *draft* notice placed before the meeting, with or without modification(s).

**RESOLVED FURTHER THAT** the consent from all the shareholders and those who are entitled to receive the notice, for convening the extraordinary general meeting at shorter notice, be obtained by the Company according to the statutory provisions envisaged under the Companies Act, 2013.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN - 03408398), Chairman & Managing Director, Ms. Divya Gokulnath (DIN - 03415950), Director, Mr. Riju Ravindran (DIN - 03416072), Director, be and are hereby severally authorized on behalf of the Company:

[a] to issue notice convening the extraordinary general meeting along with the explanatory statement to all the directors, shareholders and to others entitled to receive the same;

[b] to verify, sign, execute and submit the necessary documents and forms to the jurisdictional Registrar of Companies; and

[c] to do all such acts, deeds, things, matters necessary, desirable or required in connection with or incidental to giving effect to the above resolutions and settle all doubts, difficulties that may arise from time to time while giving

Initial of the Chairman

MINUTES

effect to the above resolutions."

**III. ANY OTHER MATTERS**

**9. ANY OTHER AGENDA WITH THE PERMISSION OF CHAIRMAN AND MAJORITY OF THE DIRECTORS PRESENT AT THE MEETING:**

With the permission of the Chairman and consent of all the Directors present at the Meeting, the following additional matters were discussed and approved by the Board:

**9.1 APPROVAL AND AUTHORIZATION TO EXECUTE LEASE/RENTAL AGREEMENT(S) ON BEHALF OF THE COMPANY AND MATTERS INCIDENTAL THERETO:**

The Chairman informed the board that it is required to authorize personnel from the Company to execute lease/rental agreement(s) on behalf of the Company at various places. He then proposed the names of the employees for executing the said documents.

The board discussed on the agenda briefly and passed the following resolution unanimously:

"**RESOLVED THAT** the consent of the Board be and is hereby accorded to authorize employee(s) of the Company to verify, sign and execute lease/rental agreement(s) and all other associated documents on behalf of the Company in respective states as stated in the table below:

| Sl. No | State | Signing Authority Name | TNL ID |
|---|---|---|---|
| 1 | Andhra Pradesh | Vipun PV/ Keshaboina Sandeeep Yadav | TNL21821240 / TNL21889619 |
| 2 | Arunachal Pradesh | Vikas Mishra / Abhijit Paul / Sushovan Maity | TNL201300116 / TNL21896264 / TNL201804174 |
| 3 | Assam | Vikas Mishra / Abhijit Paul / Sushovan Maity | TNL201300116 / TNL21896264 / TNL201804174 |
| 4 | Bihar | Vikas Mishra / Abhijit Paul / Sushovan Maity | TNL201300116 / TNL21896264 / TNL201804174 |
| 5 | Chandigarh | Karamjeet Singh/ Jagan Rawat/ Anmol Gupta | TNL21898483/ TNL201710149 / TNL201707221 |
| 6 | Chhattisgarh | Vipun PV/ Keshaboina Sandeeep Yadav | TNL21821240 / TNL21889619 |
| 7 | Delhi | Karamjeet Singh/ Jagan Rawat/ Anmol Gupta | TNL21898483/ TNL201710149 / TNL201707221 |
| 8 | Goa | Akshay Sharma M B/ Rangappa M G | TNL21825033 / TNL201706510 |

Initial of the Chairman

**MINUTES**

| | | | |
|---|---|---|---|
| 9 | Gujarat | Abhay Shah/<br>Amit K Rawool | TNL21827522 /<br>TNL21827238 |
| 10 | Haryana | Karamjeet Singh/<br>Jagan Rawat/<br>Anmol Gupta | TNL21898483/<br>TNL201710149 /<br>TNL201707221 |
| 11 | Himachal Pradesh | Karamjeet Singh/<br>Jagan Rawat/<br>Anmol Gupta | TNL21898483/<br>TNL201710149 /<br>TNL201707221 |
| 12 | Jammu & Kashmir | Karamjeet Singh/<br>Jagan Rawat/<br>Anmol Gupta | TNL21898483/<br>TNL201710149 /<br>TNL201707221 |
| 13 | Jharkhand | Vikas Mishra /<br>Abhijit Paul /<br>Sushovan Maity | TNL201300116 /<br>TNL21896264 /<br>TNL201804174 |
| 14 | Karnataka | Akshay Sharma M B/<br>Rangappa M G | TNL21825033 /<br>TNL201706510 |
| 15 | Kerala | Bipin Thomas /<br>Vignesh S | TNL21816066 /<br>TNL21500860 |
| 16 | Madhya Pradesh | Habaram Kanji/<br>Abhay Shah /<br>Amit K Rawool | TNL201200146 /<br>TNL21827522 /<br>TNL21827238 |
| 17 | Maharashtra | Amit K Rawool /<br>Suresha B /<br>Aakash Magar | TNL21827238 /<br>TNL21898714 /<br>TNL21895602 |
| 18 | Manipura | Vikas Mishra /<br>Abhijit Paul /<br>Sushovan Maity | TNL201300116 /<br>TNL21896264 /<br>TNL201804174 |
| 19 | Meghalaya | Vikas Mishra /<br>Abhijit Paul /<br>Sushovan Maity | TNL201300116 /<br>TNL21896264 /<br>TNL201804174 |
| 20 | Mizoram | Vikas Mishra /<br>Abhijit Paul /<br>Sushovan Maity | TNL201300116 /<br>TNL21896264 /<br>TNL201804174 |
| 21 | Nagaland | Vikas Mishra /<br>Abhijit Paul /<br>Sushovan Maity | TNL201300116 /<br>TNL21896264 /<br>TNL201804174 |
| 22 | Orissa | Vipun PV/<br>Keshaboina Sandeeep Yadav | TNL21821240 /<br>TNL21889619 |
| 23 | Pondicherry | Vignesh S/<br>Karthikeyan M/<br>Raja Mohamed M | TNL201500860/<br>TNL201705106 /<br>TNL201707533 |
| 24 | Punjab | Karamjeet Singh/<br>Jagan Rawat/<br>Anmol Gupta | TNL21898483/<br>TNL201710149 /<br>TNL201707221 |
| 25 | Rajasthan | Habaram Kanji /<br>Abhay Shah | TNL201200146 /<br>TNL21827522 |
| 26 | Sikkim | Vikas Mishra /<br>Abhijit Paul /<br>Sushovan Maity | TNL201300116 /<br>TNL21896264 /<br>TNL201804174 |

Bipin

Initial of the Chairman

| | | | |
|---|---|---|---|
| 27 | Tamil Nadu | Vignesh S/<br>Karthikeyan M/<br>Raja Mohamed M | TNL201500860/<br>TNL201705106 /<br>TNL201707533 |
| 28 | Telangana | Vipun PV/<br>Keshaboina Sandeeep Yadav | TNL21821240 /<br>TNL21889619 |
| 29 | Tripura | Vikas Mishra /<br>Abhijit Paul /<br>Sushovan Maity | TNL201300116 /<br>TNL21896264 /<br>TNL201804174 |
| 30 | Uttarakhand | Karamjeet Singh/<br>Jagan Rawat/<br>Anmol Gupta | TNL21898483/<br>TNL201710149 /<br>TNL201707221 |
| 31 | Uttar Pradesh | Jagan Singh Rawat/<br>Rajeev Sinha/<br>Anmol Gupta | TNL201710149 /<br>TNL201400178 /<br>TNL201707221 |
| 32 | West Bengal | Vikas Mishra /<br>Abhijit Paul /<br>Sushovan Maity | TNL201300116 /<br>TNL21896264 /<br>TNL201804174 |

**RESOLVED FURTHER THAT** the above stated employee(s) are authorised to represent the Company before the jurisdictional authorities of respective States to register the lease/rental agreements, if required and to do the needful as may be required in this connection.

**RESOLVED FURTHER THAT** the aforesaid powers granted to the employee(s) shall be valid and effective unless revoked earlier by the Board and shall be exercised by them only so long as they are in the employment of the Company.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN: 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN: 03416072), Director and Ms. Divya Gokulnath (DIN: 03415950), Director, be and are hereby severally authorized on behalf of the Company to do the needful as may be required in this connection."

**9.2 APPROVAL AND AUTHORIZATION TO CLOSE THE CURRENT ACCOUNT OF THE COMPANY WITH FEDERAL BANK LIMITED:**

The Chairman informed the Board that the Company is proposing to close the Current Account No. 11045600007183 of the Company with Federal Bank Limited, St Marks Road Branch, Bangalore (the "Bank").

He further proposed to authorize official(s) of the Company to submit necessary application and to do all such act(s) that may be necessary to close the account.

The board discussed on the agenda and passed the following resolutions unanimously:

**"RESOLVED THAT** the consent of the board be and is hereby accorded to close the Current Account No. 11045600007183 of the Company with Federal Bank Limited, St Marks Road Branch, Bangalore (the "Bank").

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN: 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN: 03416072), Director and Ms. Divya Gokulnath (DIN: 03415950), Director ("Authorized Signatories"), be and are hereby

Initial of the Chairman

MINUTES

severally authorized on behalf of the Company:

(a) to submit necessary application and to do all such act(s) that may be necessary to close the account.

(b) to verify, sign, execute and deliver the necessary document(s) in relation to the closure of the bank account;

(c) to certify a copy of the resolution and issue the same; and

(d) to do all such acts, deeds, things, matters required and settle all doubts, difficulties that may arise from time to time while giving effect to this Resolution.

**RESOLVED FURTHER THAT** a copy of this resolution be forwarded to the Bank for their records and necessary action."

**9.3 AUTHORIZATION TO APPLY FOR A CUSTOMER ID TO BE OPENED WITH DEUTSCHE BANK AG AND MATTERS INCIDENTAL THERETO:**

The board was informed by the Chairman that the Company is proposing to apply for a Customer ID to be opened with Deutsche Bank AG (the **"Bank"**) at its Bangalore branch.

In this connection, he requested the board to authorize Mr. Roshan Mani Thomas – Authorised Signatory, to sign and deliver on behalf of the Company, all forms, deeds and documents.

The board had a brief discussion on the matter and passed the following resolution unanimously:

**RESOLVED THAT** Think & Learn Private Limited (the **"Company"**) do apply for a Customer ID to be opened with Deutsche Bank AG (the **"Bank"**) at its Bangalore branch and that Mr. Roshan Mani Thomas – Authorised Signatory of the Company be and is hereby **Singly** authorized to sign and deliver on behalf of the Company, all forms, deeds and documents in relation to the allocation of the above Customer ID by the Bank including any modifications or amendments thereof.

**RESOLVED FURTHER THAT,** a copy of the resolution of the Board, if purporting to be certified as true and correct by any Director of the Company shall, as between the Bank and the Company, be conclusive evidence of the passing of the resolution so certified and this resolution shall remain in full force and effect until notice in writing of its withdrawal, or cancellation is given to the Bank by the Company.

**9.4 APPROVAL FOR APPOINTMENT OF TAX AUDITORS AND MATTERS INCIDENTAL THERETO:**

The Chairman informed the board that the Company is proposing to appoint M/s. Suri & Co., Chartered Accountants, as Tax Auditors of the Company, as required under the provisions Section 44AB and other related provisions of the Income Tax Act, 1961 and the rules made there-under (as amended from time to time).

Initial of the Chairman

Thereafter, the board discussed in brief on the agenda and passed the following resolution unanimously:

**"RESOLVED THAT** approval of the Board be and is hereby accorded for appointment of M/s. Suri & Co., Chartered Accountants, as Tax Auditors, as required under the provisions Section 44AB and other related provisions of the Income Tax Act, 1961 and the rules made there-under (as amended from time to time).

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN: 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN: 03416072), Director and Ms. Divya Gokulnath (DIN: 03415950), Director, be and are hereby severally authorized on behalf of the Company:

(a) to verify, sign, execute and deliver the engagement letter and all other incidental documents in relation to the appointment of tax auditors;

(b) to negotiate, finalize and fix the professional fee or remuneration of the tax auditors;

(c) to certify a copy of the resolution and issue the same; and

(d) to do all such acts, deeds, things, matters required and settle all doubts, difficulties that may arise from time to time while giving effect to this Resolution."

**9.5 APPROVAL FOR AND AUTHORIZATION TO CLOSE THE BANK ACCOUNT OF THE COMPANY WITH SBM BANK (INDIA) LTD. AND MATTERS INCIDENTAL THERETO:**

The Chairman informed the board that the Company is proposing to close the Bank Account No. 20062521000031 of the Company maintained with SBM Bank (India) Ltd., which is inoperative.

Thereafter the Board discussed on the agenda and passed the following resolution unanimously:

**"RESOLVED THAT** the consent of the Board be and is hereby accorded to submit an application and/or such other application(s)/document(s) as may be required to close the bank account (Acc No. 20062521000031) of the Company maintained with SBM Bank (India) Ltd. (the **"Bank"**).

**RESOLVED FURTHER THAT** the Bank may be requested to transfer the balance amount, if any, in the account to the following account of the Company:

| | |
|---|---|
| Beneficiary Name | Think and Learn Private Limited |
| Beneficiary Address | Tower – D, IBC Knowledge Park, Bannerghatta Main Road Bangalore |
| Account Number | 004705010191 |
| Bank Name | ICICI Bank |
| Bank Address | No 584, 80ft Road, opp Bethany High, Koramangala |

Initial of the Chairman

**MINUTES**

| | |
|---|---|
| | 8th Block, Bangalore - 560095 |
| IFSC Code | ICIC0000047 |

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN: 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN: 03416072), Director and Ms. Divya Gokulnath (DIN: 03415950), Director, (**"Authorised Signatories"**) be and are hereby severally authorized on behalf of the Company:

(a) to verify, sign, execute and submit an application and/or such other application(s)/document(s) as may be required to close the bank account;

(b) to certify a copy of the resolution and issue the same; and

(c) to do all such acts, deeds, things, matters required and settle all doubts, difficulties that may arise from time to time while giving effect to this Resolution."

**9.6 APPROVAL FOR AVAILING A LOAN FACILITY FROM EDELWEISS FINANCE AND INVESTMENTS LIMITED AND MATTERS INCIDENTAL THERETO:**

The board was apprised by the Chairman that the Company is proposing to avail a loan facility from Edelweiss Finance and Investments Limited for a sum not exceeding Rs. 1,50,00,00,000 (Rupees One Hundred and Fifty Crore only).

Thereafter, the board had a detailed discussion on the proposal and the following resolution was passed unanimously:

**"RESOLVED THAT** the Company do propose and agree to avail a loan facility of a sum not exceeding Rs. 1,50,00,00,000 (Rupees One Hundred and Fifty Crore only) from Edelweiss Finance and Investments Limited, (herewith termed as **"EFIL"**) up on such terms and conditions as may be mutually agreed upon.

**RESOLVED FURTHER THAT** Mr. Byju Raveendran (DIN – 03408398), Chairman & Managing Director, Mr. Riju Ravindran (DIN – 03416072), Director and Mrs. Divya Gokulnath (DIN – 03415950), Director be and are hereby severally authorized to borrow monies on behalf of the Company under the facility from EFIL, from time to time up to the limit mentioned above viz, Rs. 1,50,00,00,000 (Rupees One Hundred and Fifty Crore only) by executing Master Loan Agreement, Schedule of Terms, Demand Promissory Note and all such documents & deeds and doing such acts and deeds as are required by EFIL to operate the Company's accounts with EFIL, by drawing/ endorsing/ negotiating/ and doing all other necessary acts, deeds and things on behalf of the Company for availing the aforesaid facility with EFIL up to the limit specified.

**RESOLVED FURTHER THAT** the Company do request Mr. Riju Ravindran, Director, to execute a unconditional and irrevocable guarantee / Third Party Pledge in favour of EFIL, guaranteeing the repayment by Riju Ravindran on behalf the Company of the above facility and the disbursement(s)/interim disbursement(s) from/against the facility of Rs. 1,50,00,00,000 (Rupees One Hundred and Fifty Crore only) sanctioned to the Company by EFIL together with interest, and all other moneys payable by the Company to EFIL; the Guarantee/ Third Party Pledge to be

Initial of the Chairman

executed in such form and manner as may be required by EFIL.

**RESOLVED FURTHER THAT** any amendment to the above authorization will be made only upon intimation to EFIL of the amendment and upon receipt of written acknowledgement thereof from EFIL.

**RESOLVED FURTHER THAT** a certified copy of the above resolutions be furnished to EFIL duly signed by any of the directors with a request to EFIL to act thereon."

**9.7 APPROVAL AND AUTHORIZATION TO AVAIL CMS NET IT FACILITY GRANTED TO THE COMPANY BY KOTAK MAHINDRA BANK LIMITED:**

The Chairman informed the Board that the CMS Net IT Facility granted to the Company by Kotak Mahindra Bank Limited **("KMBL")** on the terms and conditions and other documents executed by the Company shall be availed for the purpose of instructing KMBL to print instruments on behalf of the company.

After due discussion on the agenda, the following resolution was passed unanimously by the Board:

**RESOLVED THAT** the Company do and hereby avail the CMS Net IT facility & E-tax facility, extended by KMBL and desirous of opting for the CMS Net IT Facility & E-tax facility with **Account Number "6311971855"** upon such terms and conditions as KMBL may stipulate and require.

**RESOLVED FURTHER THAT** the company do and hereby nominate the below mentioned Officers/Employees of the company to upload the data file consisting of the list of beneficiaries and corresponding payments to be made to them and such upload of data file shall be authenticated jointly or severally. The said Officers/Employees referred to as **Uploaders** shall be vested with the powers of cancellation of any of the data in the Uploaded File prior to authorization by the authorizers.

1. Jayantha A. – Assistant General Manager - Finance
2. Syju Abraham – Manager – Finance & Accounts

**RESOLVED FURTHER THAT** the company do and hereby nominate the below mentioned Authorized Signatories of the company to authorize payments as per the uploaded data file to be authenticated.

These Authorized Signatories shall be termed as '**Authorizer(s)** and the said '**Authorizer(s)** shall be vested with the powers of cancellation of any of the data in the Uploaded File before the authorization.

| S. No | Authorizer Name | Limits and Mode of Operation (Should be same as Account MOP) |
|---|---|---|
| 1 | RIJU RAVINDRAN | NO LIMIT, SEVERALLY |
| 2 | DIVYA GOKULNATH | NO LIMIT, SEVERALLY |
| 3 | BYJU RAVEENDRAN | NO LIMIT, SEVERALLY |

Byju

Initial of the Chairman