**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 24-10140 (BLS) |
| BYJU'S ALPHA, INC.,[1] | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |
| BYJU'S ALPHA, INC., | ) | Adversary Proceeding |
| | ) | |
| Plaintiff, | ) | No. 26-50221 (BLS) |
| | ) | |
| v. | ) | |
| | ) | |
| REVERE MASTER SPV LLC SERIES | ) | |
| VII, REVERE MASTER SPV LLC, | ) | |
| REVERE MANAGER LLC, REVERE | ) | |
| SECURITIES LLC, KYLE M. WOOL, | ) | |
| JEROME F. NILES, JOSHUA A. | ) | |
| SHIPLEY, AND JOHN AND JANE DOES | ) | |
| 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REVERE DEFENDANTS' OBJECTION TO**
**GLAS TRUST COMPANY LLC'S MOTION TO INTERVENE**

Defendants Revere Master SPV LLC Series VII, Revere Master SPV LLC, Revere

Manager LLC, Revere Securities LLC, Kyle M. Wool, Jerome F. Niles, Joshua A. Shipley

(collectively, the "Defendants") submit this objection (the "Objection") to the motion to

intervene (the "Motion to Intervene") filed by GLAS Trust Company LLC ("GLAS") [Adv. D.I.

11].

---

[1]   The Debtor in this Chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: BYJU's Alpha, Inc. (4260). The location of the Debtor's service address for purposes of this Chapter 11 Case is: 1007 N. Market Street Ste. G20 452, Wilmington, Delaware 19801.

This Objection is straightforward.  GLAS seeks to intervene to prosecute the same claims already asserted by Plaintiff BYJU's Alpha, Inc. ("Debtor"), without asserting any independent claim or defense.  But the Debtor's confirmed Chapter 11 Plan fundamentally altered the structure governing this litigation, vesting exclusive authority to investigate, prosecute, and resolve Retained Causes of Action in the Wind-Down Debtor, acting through the Plan Administrator and subject to oversight by the Wind-Down Debtor Oversight Committee—a structure in which GLAS already participates.

GLAS therefore cannot satisfy the requirements for intervention as of right under Rule 24(a)(2), as it lacks a distinct protectable interest, cannot demonstrate impairment of any independent right, and cannot show that its interests are inadequately represented.  Nor can GLAS satisfy the standard for permissive intervention under Rule 24(b), because it identifies no independent "claim or defense" and seeks only to duplicate the Debtor's litigation efforts. GLAS's reliance on section 1109(b) of the Bankruptcy Code is likewise misplaced, as that provision does not confer an unconditional right to intervene in adversary proceedings where, as here, intervention would undermine the Plan's court-approved governance structure and result in duplicative litigation.

If the Court were nevertheless inclined to permit intervention, GLAS's participation should be narrowly limited to ensure coordinated, unified prosecution of the claims and to prevent the duplication, inefficiency, and burden that Rule 24 is designed to avoid.

**RELEVANT BACKGROUND**

1.     On February 1, 2024, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2.     On March 20, 2026, the Debtor commenced this adversary proceeding with the filing of the Complaint (the "Complaint"). [Adv. D.I. 1].

3.      The Adversary Complaint asserts a single cause of action: a claim, pursuant to 11 U.S.C. §§ 544(b)(1) and 550(a)(2) and applicable state law (including 6 Del. C. §§ 1304(a)(2) and 1305), against the Defendants arising out of Revere's alleged receipt of approximately $480 million in fraudulently transferred funds as an alleged subsequent transferee of previously avoided transfers (*see* Compl., ¶¶ 54-63).  The Complaint alleges that Revere received these funds from OCI and related intermediaries, retained approximately $4,626,765.00 in fees, and transferred the remaining funds onward as part of a scheme to "roundtrip" the funds back to the Debtor's former controller (*id*. at ¶¶ 48-52, 55).  The Debtor seeks recovery of the full amount of the transfers from the Revere Defendants under 11 U.S.C. § 550(a)(2) and applicable state law (*see id*. at ¶ 63 and Prayer for Relief ¶ a), and further asserts that Defendants are not entitled to the good-faith transferee defense under 11 U.S.C. § 550(b) (*see id*. at ¶ 60).

4.      GLAS is the administrative agent and collateral agent under the Debtor's prepetition term loan facility and the post-confirmation wind-down financing facility, acting on behalf of the Debtor's secured lenders. *See* Mot. to Intervene, ¶¶ 5, 9.  GLAS asserts that, in addition to its role as agent for the lenders and its status as the Debtor's largest creditor, it became the Debtor's sole equity holder in or about March 2023, following the exercise of remedies under the loan documents and changes in corporate control implemented at that time. *Id*.  GLAS further asserts that it has "continu[ed] working cooperatively with the Debtor … since becoming the Debtor's sole shareholder in March 2023," and now seeks to intervene in this adversary proceeding in those overlapping capacities as agent, creditor representative, and equity owner. *Id*. at ¶ 9.

5.       On May 21, 2026, GLAS filed the Motion to Intervene, in which it seeks to intervene in this adversary proceeding and pursue the same claims brought by the Debtor.  *See*

Mot. to Intervene, ¶¶ 4, 8, 30 (stating that GLAS seeks to join the Complaint in full while stating it does not intend to file a separate complaint).  GLAS does not identify any separate claims in seeking intervention.  GLAS seeks intervention on three bases: (i) intervention as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure (the "Rules"), asserting that it has a direct and substantial interest in this action, that disposition of the action may impair that interest, and that the Debtor does not adequately represent it; (ii) permissive intervention under Rule 24(b)(1)(B), contending that its position shares common questions of law and fact because it intends to adopt the Complaint in full; and (iii) an asserted "unconditional" right to intervene under section 1109(b) of the Bankruptcy Code as a "party in interest."  *See* Mot. to Intervene. The Motion to Intervene reprises the same basic arguments GLAS has invoked to intervene in several adversary proceedings throughout this Chapter 11 case, asserting, among other things, that (i) it must intervene to "protect" creditor interests, (ii) it has "unique knowledge and a distinct perspective," and (iii) "the Debtor's fiduciary duties lie only with itself."  Mot. to Intervene, ¶¶ 6, 9, 20.

6.      GLAS has previously been granted leave to intervene in the Debtor's other adversary proceedings in earlier phases of this Chapter 11 case.[2]  Those interventions, however, were permitted before the Court confirmed the Debtor's Chapter 11 plan (the "Plan")[3] on October 29, 2025, and before the Plan became effective on March 31, 2026.  *See* Findings of Fact, Conclusions of Law, and Order Confirming the Amended Combined Disclosure Statement and Chapter 11 Plan of BYJU's Alpha, Inc., Case No. 24-10140 (BLS) (Bankr. D. Del. Oct. 29,

---

[2]    *See* Order Granting GLAS Trust Company LLC's Motion to Intervene in the Adversary Proceeding, *BYJU's Alpha, Inc. v. Camshaft Cap. Fund, LP*, Adv. Pro. No. 24-50013 (Bankr. D. Del. Mar. 1, 2024) [Adv. D.I. 48]; Order Granting GLAS Trust Company LLC's Motion to Intervene in the Adversary Proceeding, *BYJU's Alpha, Inc. v. Raveendran*, Adv. Pro. No. 25-50526 (Bankr. D. Del. May 7, 2025) [Adv. D.I. 23]; Order Granting GLAS Trust Company LLC's Motion to Intervene in the Adversary Proceeding, *BYJU's Alpha, Inc. v. OCI Limited and Rupin Banker*, Adv. Pro. No. 25-50822 (Bankr. D. Del. July 8, 2025) [Adv. D.I. 22].

[3]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

2025) [D.I. 517] (the "Confirmation Order"); Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) Related Bar Dates, Case No. 24-10140 (BLS) (Bankr. D. Del. Mar. 31, 2026) [D.I. 596].

7.      The post-confirmation posture of this case is materially different.  Under the Confirmation Order and the Plan annexed thereto, the Debtor's remaining estate assets— including all Retained Causes of Action—irrevocably vested in the Wind-Down Debtor on the Effective Date.  *See* Confirmation Order ¶¶ 75, 77; Plan Arts. V.B, V.H.  The Plan defines "Retained Causes of Action" broadly to include all claims and causes of action belonging to the Debtor or its estate, including claims arising out of or relating to the Alpha Funds.  *See* Plan Art. II.A.125; Confirmation Order, ¶¶ 28–29.  Indeed, GLAS acknowledges that this adversary proceeding constitutes a Retained Cause of Action under the Plan.  *See* Mot. to Intervene, ¶ 3 ("GLAS, on behalf of the Lenders, has an interest in Retained Causes of Action, which includes this Action.").  Accordingly, the Debtor's claims against the Defendants in this adversary proceeding fall within the Plan's retained-litigation framework.

8.      The Plan and Confirmation Order also dictate who controls litigation of the Retained Causes of Action.  Specifically, on the Effective Date, the Plan Administrator (Timothy R. Pohl) became the "sole director and sole officer" of the Wind-Down Debtor, succeeded to the powers of the Debtor's directors and officers, and obtained the sole authority to act on behalf of the Wind-Down Debtor, including with respect to the Retained Causes of Action (subject to coordination with, and where applicable consent of, the Wind-Down Debtor Oversight Committee). Confirmation Order ¶ 136; Plan Art. V.D.

9.       Importantly, the Confirmation Order provides that the vesting of the Retained Causes of Action in the Wind-Down Debtor, and the Plan Administrator's investigation and

5

prosecution of those claims, is a "critical and integral component" of the Plan.  Confirmation Order ¶ 79.  Subject to the Plan and the oversight of the Wind-Down Debtor Oversight Committee, the Plan Administrator has the "exclusive right to investigate, enforce, sue on, settle, compromise, transfer, or assign"—or decline to pursue—any Retained Causes of Action that has not been released, without notice to or approval from the Court or the Debtor.  *Id.;* Plan Art. VI.E.15.  The Plan similarly provides that *only* the Wind-Down Debtor, with oversight of the Wind-Down Debtor Oversight Committee, may pursue, decline to pursue, compromise, or settle disputes concerning Wind-Down Debtor Assets, which includes the Retained Causes of Action. Plan Art. V.C.

10.     The Wind-Down Debtor Oversight Committee in turn has oversight authority over the Plan Administrator and the Wind-Down Debtor, and has affirmative consent rights over the estate's material decisions, including whether "to prosecute, enforce, settle or abandon any material Retained Causes of Action."  Plan Art. V.K.1; Confirmation Order ¶ 82.  Thus, the Plan deliberately centralizes control of estate litigation in the Wind-Down Debtor, through the Plan Administrator, subject to the Wind-Down Debtor Oversight Committee's oversight and consent rights.  It does not contemplate participation by individual creditors or other parties in interest in litigation relating to the Retained Causes of Action.

11.     This structure was not imposed over creditor objection.  Not only was GLAS the Debtor's sole shareholder at the time the Plan was developed (*see* Mot. to Intervene, ¶¶ 5, 9, 26), the Debtor's prepetition lenders (whose interests GLAS is required to protect as administrative agent under the prepetition term loan facility) were the *only* impaired class entitled to vote on the Plan, and the holders of those claims voted to unanimously accept the Plan.  *See* Confirmation Order, ¶¶ 16, 47, 50; Plan Art. IV.B.1.c.v; Debtor's Memorandum of Law in Support of

Confirmation of the Amended Combined Disclosure Statement and Chapter 11 Plan for BYJU's Alpha, Inc., Case No. 24-10140 (BLS) (Bankr. D. Del. Oct. 27, 2025) [D.I. 511], ¶ 17. Thus, GLAS had an active role in crafting the Plan that vested the Retained Causes of Action in the Wind-Down Debtor and centralized control of those claims in the Plan Administrator, subject to the oversight and consent rights of the Wind-Down Debtor Oversight Committee'. *See* Confirmation Order ¶¶ 75, 77, 79, 81–82, 136; Plan Arts. V.B, V.C, V.D, V.K.1, VI.E.15.

12. GLAS also maintains direct involvement in the Debtor's wind-down governance structure. The members of the Wind-Down Oversight Committee are appointed by a Steerco of the Debtor's prepetition lenders and GLAS has its own appointed representative (Irena Goldstein). *See* Plan Administrator Agreement, filed as part of the Second Amended Plan Supplement, *In re BYJU's Alpha, Inc.*, Case No. 24-10140 (BLS) (Bankr. D. Del. Mar. 30, 2026) [D.I. 595] (the "Plan Administrator Agreement") at 10-11, Ex. H. GLAS therefore already directly participates, through the Wind-Down Debtor Oversight Committee, in the very framework governing material decisions concerning Retained Causes of Action.

13. GLAS nevertheless advances the same theories in its Motion to Intervene that it relied upon in its earlier motions to intervene, without addressing how the Plan and the post-confirmation structure affect its purported entitlement to intervene in this adversary proceeding. GLAS should not be permitted to circumvent the structure it designed by intervening as a separate party to assert or control the same estate claims that the Plan exclusively vests to the Wind-Down Debtor and Plan Administrator.

## ARGUMENT

### I. GLAS Does Not Satisfy Rule 24(a)(2)'s Requirements for Mandatory Intervention.

14. To intervene as of right under Rule 24(a)(2), a movant must establish four elements: (1) a timely application for intervention; (2) a sufficient interest in the litigation; (3) a

threat that "the interest may be affected or impaired, as a practical matter, by the disposition of the action"; and (4) inadequate representation of the prospective intervenor's interest by existing parties to the litigation. *See Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987); *see also Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 368-69 (3d Cir. 1995). Even assuming that GLAS can satisfy the timeliness requirement, it cannot satisfy the remaining requirements in this post-confirmation case.

15.     First, the confirmed Plan fundamentally changed the governing framework of how these actions should be prosecuted and administered. On the Effective Date, all Retained Causes of Action, including this adversary proceeding, irrevocably vested in the Wind-Down Debtor. Confirmation Order ¶¶ 75, 77; Plan Arts. V.B, V.H; Mot. to Intervene ¶ 3. The Plan likewise provides that only the Wind-Down Debtor, with the consent of the Wind-Down Debtor Oversight Committee, may pursue, decline to pursue, compromise, or settle disputes concerning Wind-Down Debtor Assets, including Retained Causes of Action. Plan Art. V.C. The Confirmation Order is explicit that the vesting of the Retained Causes of Action in the Wind-Down Debtor, and the Plan Administrator's prosecution of those claims is a "critical and integral component" of the Plan. *See* Confirmation Order ¶ 79. Thus, the claims asserted against the Defendants are not claims belonging to GLAS, nor are they claims that GLAS may separately control. They are estate claims that vested in the Wind-Down Debtor and, subject to oversight from the Wind-Down Debtor Oversight Committee, and the Plan Administrator has the "exclusive right" to prosecute and settle such claims. Confirmation Order ¶ 79; Plan Art. VI.E.15.

16.     Second, GLAS fails to identify any distinct, legally protectable interest separate from the estate's interest in light of the Plan's allocation of authority described above. As

mentioned, GLAS seeks to "join the Complaint in full" and does not identify any separate claim of its own. Mot. to Intervene, ¶¶ 4, 8, 30. Its asserted interest is, at most, an economic interest in maximizing recoveries for the prepetition lenders from estate litigation.  But that is precisely the interest the Plan assigns the Wind-Down Debtor and Plan Administrator to pursue, subject to the Wind-Down Debtor Oversight Committee's review and consent (which, again, is comprised of members appointed by the prepetition lenders and GLAS).

17.    The Wind-Down Debtor Oversight Committee's role further confirms that creditor interests, including those of GLAS, are already represented through the wind-down structure.  The Wind-Down Debtor Oversight Committee has oversight authority over the Plan Administrator and affirmative consent rights over material decisions with respect to the Retained Causes of Action. The Plan therefore deliberately places litigation control in a single fiduciary— the Wind-Down Debtor acting through the Plan Administrator—subject to committee oversight and consent.  It does not contemplate duplicative participation by individual creditors in the same estate claims.

18.    Third, GLAS cannot show that its interests would be impaired absent separate party status in this adversary proceeding.  GLAS does not assert that any independent legal right will be impaired; its recovery rises or falls with the Debtor's prosecution of the same claims. GLAS therefore fails to satisfy Rule 24(a)(2)'s mandatory intervention requirements. *Mountain Top Condo. Ass'n*, 72 F.3d at 366.

19.    Fourth, GLAS cannot establish inadequate representation. Its assertion that the "Debtor's fiduciary duties lie only with itself" is misplaced.  Mot. to Intervene, ¶ 20.  While the Court did previously acknowledge that GLAS has "peculiar interests" that were not shared by the trustee, that was before the Plan's wind-down governance was implemented.  *See* Hr'g Tr. at

20:21-21:6, *Springer v. Google LLC et al.*, Adv. Pro. No. 24-50233 (BLS) (Bankr. D. Del. Jan. 29, 2025). GLAS's interests are directly aligned with the Debtor's. GLAS cannot manufacture inadequate representation by ignoring the very litigation structure that it designed and its constituents, the Debtor's prepetition lenders, unanimously approved.

20. GLAS's repeated reliance on boilerplate language across multiple adversary proceedings reinforces this point and underscores that GLAS has not tailored its arguments to the current posture of the case. It again asserts that it is the Debtor's "largest creditor," possesses "irrefutable and inseparable" interests, and brings a "unique knowledge and a distinct perspective to the issues here". *See* Mot. to Intervene, ¶¶ 6, 7; GLAS Trust Company LLC's Motion to Intervene, *Claudia Z. Springer, as Chapter 11 Trustee of Epic! Creations, Inc., et al., v. Google, LLC, et al.*, Adv. Pro. No. 24-50233 (BLS) (Bankr. D. Del.) [Adv. D.I. 65], ¶¶ 3, 4; OCI Mot. to Intervene, ¶¶ 1, 3, 4; GLAS Trust Company LLC's Motion to Intervene, *BYJU's Alpha Inc. v. Byju Raveendran, et al.*, Adv. Pro. No. 25-50526 (BLS) (Bankr. D. Del.) [Adv. D.I. 10], ¶¶ 1, 3, 4. GLAS's repetition of these assertions here, without accounting for the Plan's post-confirmation governance structure, further demonstrates that its arguments are untethered to the current posture of the case and do not support intervention.

## II. GLAS Does Not Satisfy Rule 24(b)(1)(B)'s Requirements for Permissive Intervention.

21. Permissive intervention under Rule 24(b) may be appropriate if the intervening party "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). However, the Third Circuit has made it clear that such intervention is inappropriate where the proposed intervenor's interests are indistinguishable from those of an existing party and the proposed intervenor's participation would be duplicative or directed at influencing the litigation rather than advancing a particular claim or defense. *See United States*

10

*v. Terr. of the V.I.*, 748 F.3d 514, 525 (3d Cir. 2014) (denying intervention where proposed intervenor's interests were "essentially identical" to those of an existing party and any differences were "merely differences in strategy, which are not enough to justify intervention," and where intervention would result in "duplication of effort that is unnecessary and unwarranted").

22.     The Court also has ample discretion to deny intervention to avoid delay or prejudice.  FED. R. CIV. P. 24(b)(3) ("[I]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."); *ACRA Turf Club, Ltd. Liab. Co. v. Zanzuccki*, 561 F. App'x 219, 222 (3d Cir. 2014) (quoting *Hoots v. Commonwealth of Pa.*, 672 F.2d 1133, 1136 (3d Cir. 1982)) ("[W]here, as here, the interests of the applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be 'undue.'"); *see also Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1124 (3d Cir. 1992) ("[I]f intervention as of right is not available, the same reasoning would indicate that it would not be an abuse of discretion to deny permissive intervention as well.").

23.     GLAS identifies no independent "claim or defense."  Instead, it seeks to "join the Complaint in full."  Mot. to Intervene, ¶ 4.  Allowing GLAS to intervene would require the Defendants to litigate against two entities advancing identical claims on identical theories. Courts have held that Rule 24(b)(1)(B) requires a proposed intervenor to assert its own "claim or defense," not merely a general interest in the outcome of the litigation. *See Meridian Fin. Advisors, Ltd. v. Contract Purchase & Design, Inc. (In re Shubh Hotels Pittsburgh, LLC)*, 495

B.R. 274, 287–88 (Bankr. W.D. Pa. 2013) (denying permissive intervention where the movant had "not presented any claim or defense," but asserted only an interest in the proceeding's outcome).

24.     GLAS's invocation of its "unique knowledge and distinct perspective to the issues" is likewise unavailing.  Mot. to Intervene, ¶ 6.  Differences in litigation approach or emphasis are insufficient to warrant intervention where the intervenor seeks only to supplement an existing party's litigation of the same issues. *See United States v. Terr. of the V.I.*, 748 F.3d at 525.

25.     Accordingly, GLAS cannot satisfy the standard for permissive intervention under Rule 24(b)(1)(B) because its interests are identical to those of the Debtor, and it seeks only to participate in the prosecution of the same claims—not to advance any independent claim or defense.  Intervention would therefore be duplicative and would serve only to influence litigation strategy, risking unnecessary delay and prejudice to the Defendants.

26.     GLAS's purported interest in discovery obtained in this action further underscores why the Court should use its discretion to deny permissive intervention.  *See* Mot. to Intervene, ¶ 10.  Here, GLAS does not identify any discovery it is unable to obtain without becoming a party, but instead offers only a generalized assertion that it may wish to participate in discovery. *Id.* at ¶¶ 17, 19.  Intervention is not a mechanism to obtain discovery or monitor litigation, but to assert a claim or defense.

27.     Moreover, GLAS has ample alternative mechanisms to obtain any information it claims to need without becoming a duplicative party to the litigation.  It may coordinate with the Wind-Down Debtor, over which it already exercises oversight, or if appropriate, pursue discovery directly through subpoenas or other available means.  GLAS has not attempted to

utilize any of these mechanisms.   That failure confirms that intervention is not necessary to protect any purported discovery interest.   Indeed, GLAS's own representations that it will coordinate with the Debtor underscore that point.   GLAS asserts that it will "continue working cooperatively with the Debtor" and "avoid…unnecessary and duplicative filings and motion practice."   Mot. to Intervene, ¶ 9.   If GLAS is already cooperating with the Debtor "as it has done since becoming the Debtor's sole shareholder in March 2023," naming GLAS as a separate litigant serves no functional purpose.

### III. Section 1109(b) of the Bankruptcy Code Does Not Provide GLAS with an Automatic Right to Intervene.

28.   GLAS also seeks to intervene as a matter of right under Rule 24(a)(1), which permits intervention when the proposed intervenor is "given an unconditional right to intervene by federal statute", by virtue of section 1109(b) of the Bankruptcy Code, which in turn provides that "[a] party in interest, including . . . a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."   FED. R. CIV. P. 24(a)(1); 11 U.S.C. § 1109(b).

29.   While GLAS cites to the Third Circuit's decisions *In re Marin Motor Oil, Inc.*, 689 F.2d 445 (3d Cir. 1982) and *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228 (3d Cir. 1994) as support for its view that parties in interest have an unqualified right to intervene, this view has been limited by courts in this Circuit and, if applied mechanically, would be practically unworkable as it would necessarily mean *any* creditor could intervene in *every* adversary proceeding.   Indeed, this Court has recognized this practical concern, noting that it is "not intuitive…that any creditor is entitled to intervene in an adversary proceeding."   Hr'g Tr. at 14:17-19, *Springer v. Google LLC et al.*, Adv. Pro. No. 24-50233 (BLS) (Bankr. D. Del. Jan. 29, 2025).

30.     Decisions from the Third Circuit and lower courts are clear that the right to intervene under section 1109(b) is not unqualified and have identified important limitations on whether it may be invoked to secure mandatory intervention under Rule 24(a)(1).  *See, e.g., Phar-Mor, Inc.*, 22 F.3d at 1241, n. 21 (noting that the section 1109(b) right to intervene may not prevail where "an independent federal right overrides the interests of creditors to intervene"); *United States v. LTV Steel Co.*, 269 B.R. 576, 580 (W.D. Pa. 2001) (applying reasoning of *Phar-Mor* in denying creditors' committee's motion to intervene in a Clean Air Act enforcement action in part because the enforcement of environmental laws constituted an independent federal right overriding the committee's interest in intervention); *In re Stone & Webster, Inc.*, 373 B.R. 353, 362 (Bankr. D. Del. 2007), *aff'd*, 2008 WL 4890896 (D. Del. Nov. 12, 2008) (concluding purchaser of debtor's assets did not have the right to intervene in liquidating trust's adversary proceedings under Rule 24(a)(1) and section 1109(b) because it had no right to the proceeds of the trust's claims); *In re Elcom Techs. Corp.*, No. 98-13343 SR, 2001 WL 36260776, at *4 (Bankr. E.D. Pa. Feb. 13, 2001) (denying intervention where movant was only a "marginal party" not "directly affected" by the outcome).

31.     This Court should similarly limit the application of *Marin* and *Phar-Mor* under these circumstances.  Those decisions do not compel intervention where, as here, the proposed intervenor seeks to insert itself into litigation that the confirmed Chapter 11 plan assigns *exclusively* to the Plan-designated fiduciary and where the proposed intervenor's interests are fully aligned with, and already represented by, that fiduciary. Allowing intervention in these circumstances would undermine the Plan's post-confirmation governance framework by permitting individual creditors to circumvent the centralized control over estate causes of action that the Confirmation Order deems "critical and integral" to the Plan.  *See* Confirmation Order,

¶ 79.  It would also render the Plan's vesting and exclusivity provisions effectively meaningless, inviting duplicative participation and conflicting litigation strategies in proceedings that the Plan expressly vests in the Wind-Down Debtor and its Plan Administrator.  Section 1109(b) and the caselaw in this Circuit do not require such a result.

32.     *Marin* and *Phar-Mor* can be further distinguished because, unlike here, both decisions involved motions to intervene in an adversary proceeding by creditors' committees (not an individual creditor) and both arose before confirmation of any chapter 11 plan.  *See Marin Motor Oil, Inc.*, 689 F.2d at 446-47; *Phar-Mor, Inc.*, 22 F.3d at 1231-32.  Indeed, the Third Circuit in *Phar-Mor* emphasized that section 1109(b) serves, in part, to "speed the debtor's reorganization" and provide creditors' committee with leverage to ensure the debtor-in-possession does not compromise the creditors' interest.  22 F.3d at 1240.  Those concerns are absent in this post-confirmation case.  *Marin* is further distinguishable because the creditors' committee there sought intervention because it was not satisfied with the trustee's prosecution of the claims.  689 F.2d at 447.  Here, by contrast, GLAS has not identified any dissatisfaction in the Wind-Down Debtor's or Plan Administrator's prosecution of this action, and any oversight rights are already built into the Plan's governance structure.

33.     Accordingly, section 1109(b) of the Bankruptcy Code should not grant GLAS an unconditional right to intervene in this proceeding under Rule 24(a)(1).  Given that GLAS has offered no other statute to mandate intervention under Rule 24(a)(1), GLAS should be required to satisfy the standards to intervene under Rule 24(a)(2) or Rule 24(b), which, for the reasons discussed above, it cannot do.

### IV. Alternatively, Any Intervention Should Be Strictly Limited to Prevent Duplication and Undue Burden.

34.     GLAS acknowledges that it is aligned with the Debtor, intends to adopt the existing Complaint, and seeks to proceed without filing a separate pleading.  *See* Mot. to Intervene, ¶¶ 4, 8, 30.  At the same time, it contends that its participation will not burden the proceedings because it will "avoid…unnecessary and duplicative filings and motion practice." *Id*. at ¶ 9.  These positions cannot be reconciled.  Where, as here, GLAS seeks to proceed on the same allegations, theories, and claims as the Debtor, its participation necessarily duplicates, rather than supplements, the existing litigation.

35.     Accordingly, if the Court permits GLAS to intervene, it should exercise its broad discretion to impose conditions that eliminate duplication and mitigate the resulting burden and expense to Defendants.  At a minimum, the Court should require: (i) the service of joint discovery requests, (ii) coordinated and consolidated responses to Defendants' discovery, (iii) the filing of joint or coordinated briefs and motions absent leave of Court, and (iv) a prohibition on duplicative depositions, document requests, motion practice, or argument.

36.     Such limitations are particularly appropriate here because GLAS has confirmed that it is not asserting any independent claim and is merely adopting the Debtor's Complaint in full.  Under those circumstances, there is no justification for allowing GLAS to operate as a separate litigant with independent discovery and motion practice rights.  Requiring coordinated participation would not prejudice GLAS in any way, as it seeks only to advance the same claims and relief already being pursued by the Debtor.

37.     Nor should coordination pose any practical difficulty.  GLAS and the Debtor are already aligned in interest, and their respective counsel have coordinated in other adversary proceedings arising from the Alpha Fund matters.  *See, e.g., BYJU's Alpha, Inc. v. Camshaft*

16

*Cap. Fund, LP*, Adv. Pro. No. 24-50013 (Bankr. D. Del. Mar. 1, 2024); *BYJU's Alpha, Inc. v. Raveendran*, Adv. Pro. No. 25-50526 (Bankr. D. Del. May 7, 2025); *BYJU's Alpha, Inc. v. OCI Limited and Rupin Banker*, Adv. Pro. No. 25-50822 (Bankr. D. Del. July 8, 2025).

38.     Indeed, GLAS itself represents that it will "continue working cooperatively with the Debtor" and avoid duplicative efforts.  Mot. to Intervene, ¶ 9.  The conditions requested here simply formalize that representation and ensure that Defendants are not subjected to undue burden.

## RESERVATION OF RIGHTS

39.     The Defendants reserve all available rights and remedies with respect to the Debtor, GLAS, the Motion to Intervene, this adversary proceeding, and this Chapter 11 case. Nothing contained in, or omitted from, this Objection is intended to waive, limit, or modify the Defendants' rights.

## CONCLUSION

40.     For the foregoing reasons, GLAS's Motion to Intervene should be denied.  GLAS cannot satisfy Rule 24(a)(2)'s mandatory intervention standard because it has no distinct, legally protectable interest in claims that the confirmed Plan vests exclusively in the Wind-Down Debtor, cannot show  that any independent right will be impaired absent intervention, and cannot establish inadequate representation in light of the Plan's centralized litigation structure and oversight committee safeguards.  GLAS likewise cannot satisfy Rule 24(b)(1)(B)'s permissive intervention standard because it asserts no independent claim or defense and seeks only to duplicate the Debtor's prosecution of the same claims.  Nor do section 1109(b) of the Bankruptcy Code or Rule 24(a)(1) provide GLAS with an unconditional right to intervene under these circumstances.

41.     If the Court nevertheless permits GLAS to intervene, the Defendants respectfully request that such intervention be narrowly limited to prevent duplication, inefficiency, and undue burden.  At a minimum, GLAS and the Debtor should be required to proceed jointly in all material aspects of the litigation, including through coordinated discovery, unified responses, joint briefing and motion practice, and a prohibition on duplicative depositions, document requests, or motion practice.  Such limitations are necessary to ensure that Defendants are not forced to defend parallel litigation on identical claims.

Dated: June 4, 2026
Wilmington, Delaware

**GELLERT SEITZ BUSENKELL & BROWN LLC**

_/s/ Michael Busenkell_
Michael Busenkell (DE 3933)
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Phone: (302) 425-5812
Mbusenkell@gsbblaw.com

-and-

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

Howard W. Schub
330 Madison Avenue, 27th Floor
New York, New York 10017
Phone: (212) 413-9060
Howard.Schub@nelsonmullins.com
Lee B. Hart
201 17th Street NW
Atlanta, GA 30363
Phone: (404) 322-6349
Lee.hart@nelsonmullins.com

_Attorneys for Defendants Revere Master SPV LLC Series VII, Revere Master SPV LLC, Revere Manager LLC, Revere Securities LLC, Kyle M. Wool, Jerome F. Niles, Joshua A. Shipley_

18

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 4, 2026, a true and correct copy of the foregoing *Revere Defendants' Objection to GLAS Trust Company LLC's Motion to Intervene* was served via CM/ECF on all parties registered to receive electronic notices.

*/s/ Michael Busenkell*
