**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) |
| BYJU'S ALPHA, INC.,[1] | ) Chapter 11 |
| | ) |
| Debtor. | ) Case No. 24-10140 (BLS) |
| | ) |
| BYJU'S ALPHA, INC., | ) |
| Plaintiff, | ) Adv. Pro. Case No. 26-50221 |
| | ) |
| v. | ) |
| | ) |
| REVERE MASTER SPV LLC SERIES VII, | ) |
| REVERE MASTER SPV LLC, REVERE | ) |
| MANAGER LLC, REVERE SECURITIES LLC, | ) |
| KYLE M. WOOL, JEROME F. NILES, JOSHUA | ) |
| A. SHIPLEY, AND JOHN AND JANE DOES 1- | ) |
| 10, | ) |
| | ) |
| Defendants. | ) |

## GLAS TRUST COMPANY LLC'S REPLY IN SUPPORT OF MOTION TO INTERVENE

In further support of its *Motion to Intervene* [Adv. D.I. 11] (the "Motion")[2] and in response

to the *Revere Defendants' Objection to GLAS Trust Company LLC's Motion to Intervene* [Adv.

D.I. 16] (the "Objection") filed by Defendants Revere Master SPV LLC Series VII, Revere Master

SPV LLC, Revere Manager LLC, Revere Securities LLC, Kyle M. Wool, Jerome F. Niles, and

Joshua A. Shipley (collectively, the "Defendants"),[3] GLAS Trust Company LLC ("GLAS") states

as follows:

---

[1]    The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is:  BYJU's Alpha, Inc. (4260).  The location of the Debtor's service address for purposes of this Chapter 11 Case is:  1007 N. Market Street Ste. G20 452, Wilmington, Delaware 19801.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Complaint [Adv. D.I. 1] (the "Complaint") or in the Plan (defined below), as the case may be.

[3]    On May 19, 2026, Reed Smith LLP, as counsel to GLAS, shared a copy of the Motion with Defendants' counsel in connection with seeking Defendants' consent to the Motion. On May 20, 2026, Defendants' counsel responded that they had not yet spoken to their client regarding GLAS's intervention in this action, so they could not consent or object at that time. Defendants did not request that GLAS limit the scope of its intervention or otherwise express that it would object to the Motion. Instead, they filed the Objection without prior notification on June 4, 2026.

**INTRODUCTION**

1.      Defendants' Objection to GLAS's Motion incorrectly describes the effect of the Plan,[4] misconstrues binding Third Circuit precedent, ignores GLAS's undisputed interests, and trades in express speculation about what prejudice GLAS's intervention *might* cause.  Separately, the Objection is unavailing because through it, Defendants purport to employ the Plan—which is intended to benefit GLAS, on behalf of the Lenders—to circumscribe GLAS's rights while advantaging the very parties alleged to have engaged in the misconduct that contributed to the Debtor's bankruptcy.

2.      First, Defendants' Objection primarily rests on the flawed premise that by vesting certain prosecution authority in the Wind-Down Debtor and Plan Administrator, the Plan stripped GLAS of any right to intervene in this adversary proceeding [*see* Adv. D.I. 16].  Not so.  That prosecution authority does not reach the full set of GLAS's interests in this proceeding. Regardless, the Plan grants the Debtor (and Plan Administrator) the right to take "all other actions consistent with the provisions of the Plans, the Confirmation Orders, and this Agreement that the Plan Administrator deems reasonably necessary or desirable to administer the Debtors and the Wind-Down Debtors" [Bk. D.I. 595, Ex. B (the "Plan Administrator Agmt.") § 2.1(c)(xxviii); *see* Bk. D.I. 517 (the "Confirmation Order") ¶ 79].  Here, and as described in the Motion, the Debtor consented to GLAS's intervention.  That consent necessarily entailed that of the Plan Administrator, as well, because the sole principal of the Debtor, Timothy Pohl, serves as Plan Administrator.  Moreover, Defendants themselves state that "the Wind-Down Debtor[] act[s] through the Plan Administrator . . ." [Obj. 1].  Regardless, in response to Defendants' Objection, GLAS confirmed with counsel for the Plan Administrator that the Plan Administrator consents to

---

[4]    The confirmed Chapter 11 plan (the "Plan") [Bk. D.I. 475].

GLAS's intervention, here.  This eliminates any concern that GLAS's intervention would improperly encroach on the Plan Administrator's role.

3.      Moreover, the Court should not allow Defendants to use the Plan as a shield to prevent GLAS from pursuing money that it, and other beneficiaries under the Plan, are owed. The Plan—which is the product of years of enforcement proceedings initiated by GLAS and funded by the Lenders for which GLAS acts—is expressly intended for GLAS on behalf of the Lenders, the only remaining stakeholders and beneficiaries of the Retained Causes of Action.  Defendants' effort to misappropriate the Plan's purpose would weaponize it against those it is meant to protect.

4.      Second, Defendants' claim that GLAS lacks a distinct interest in pursuing this action is both irrelevant and wrong.  It is irrelevant because intervention does not require a "distinct" interest.  It is wrong because GLAS *does* have a legally sufficient interest in this action— recovery of the Alpha Funds.

5.      Third, Defendants' argument that GLAS's interests will not be impaired absent intervention rests on an erroneously high standard.  GLAS only needs to demonstrate that its interests *might* be impaired if it were not allowed to participate in this action.  Defendants readily concede, as they must, that GLAS has a valid economic interest in its outcome; as described below, that interest risks impairment if the Motion is denied.

6.      Finally, Defendants acknowledge that they have no basis for their speculative assertion that GLAS's intervention will prejudice them through delay and duplication.  GLAS has committed to coordinating with the Debtor, just as it has successfully done in four related adversary proceedings.  Tellingly, Defendants can point to no conduct by GLAS in any of those actions that has caused any prejudice to any defendant.

7.      The Court should allow GLAS to intervene and join in the Debtor's Complaint in full.

## ARGUMENT

**I.      THE PLAN WAS NEGOTIATED AND CONFIRMED FOR THE BENEFIT OF THOSE PARTY TO IT, NOT FOR THE BENEFIT OF THE DEFENDANTS**

### A. The Defendants, as Alleged Bad Actors, Cannot Use the Terms of the Plan to Argue Against Those the Plan Benefits

8.      Before explaining why the Objection is wrong on the facts and wrong on the law, it bears emphasis that through their misinterpretation of the Plan, Defendants are trying to use its negotiated terms against the parties the Plan is designed to protect, for the improper purpose of shielding those alleged to have participated in the wrongdoing that led to the Debtor's bankruptcy.

9.      The Plan is the result of years of enforcement and negotiations between the Debtor, affiliates of the Debtor, the Plan Administrator, GLAS, and the Lenders.  It was implemented to benefit Holders of Allowed Class 3 Claims, who would not have voted in favor of the Plan had it not provided for litigation of the Retained Causes of Action to protect their interests in the Debtor's estate [*see* Plan Art. III.C].  GLAS, as the Agent of Lenders that are Holders of Allowed Class 3 Claims, is a beneficiary under the Plan and therefore entitled to rely on its provisions.  Moreover, GLAS, in its capacity as Agent, facilitated the funding of the Plan by the Lenders and administers the facilities that support administration of the estates (including litigation of certain Retained Causes of Action) [Bk. D.I. 595, Ex. H].

10.      On the other hand, the Defendants are not stakeholders or beneficiaries to the Plan, have not participated in the funding of the Plan, and are not protected by it.  Indeed, they are alleged to have been among the wrongdoers whose misconduct gave rise to the need for it in the first place.  It would be inequitable to deny GLAS's request for intervention in reference to the Plan, which was crafted for its benefit and remains funded by the Lenders it acts on behalf of today.

II.     **GLAS SATISFIES THE REQUIREMENTS TO INTERVENE AS A MATTER OF RIGHT UNDER FEDERAL RULE 24(A)(2)**

11.     The Objection fails to rebut GLAS's showing that it satisfies the three elements at issue (Defendants do not appear to dispute the timeliness of the request [*see* Obj. ¶ 14]): (1) that GLAS has a sufficient interest in the litigation; (2) that GLAS's interest may be impaired or affected, as a practical matter, by the disposition of the action; and (3) that GLAS's interest may be inadequately represented by existing parties to the litigation [*see* Mot. ¶ 16].

**A.  GLAS Has a Sufficient Interest in this Adversary Proceeding**

i. The Plan Does Not Extinguish GLAS's Interest in Intervening

12.     Defendants' principal objection against intervention is that, by its vesting of Retained Causes of Action in the Wind-Down Debtor, the Plan precludes GLAS from intervening because (they claim) GLAS did not identify an interest in this Action separate from that of the estate [*see* Obj. ¶¶ 15–16].  That argument is wrong as to both what the Plan does and to the relief GLAS seeks.

13.     The threshold problem for the Defendants' position is that GLAS's interests are not fully encompassed by the Retained Causes of Action.  Under Federal Rule 24(a), "intervenors of right need only an 'interest' in the litigation—not a 'cause of action' or 'permission to sue.'" *Bautista v. United States*, No. 21-00018, 2023 WL 4706822, at *5 n.12 (D.V.I. July 24, 2023) (citing *Jones v. Prince George's County*, 348 F.3d 1014, 1017–18 (D.C. Cir. 2003)).  GLAS meets this standard because, as Defendants concede, it has an "economic interest" in this Action "in maximizing recoveries for the prepetition lenders from estate litigation."  [*See* Obj. ¶ 16.] Separately, and as described below, GLAS is uniquely involved in several foreign actions that are not within the scope of the Retained Causes of Action and are therefore unaffected by the Plan's grant of authority to the Plan Administrator.  These interests alone entitle GLAS to intervene.

5

14.    Moreover, and belying the Objection's claim that GLAS is trying to "circumvent" the Plan, the Plan Administrator has consented to GLAS's intervention.  That the Plan Administrator can do so is clear: its duties and powers include "taking all other actions consistent with the provisions of the Plans, the Confirmation Orders, and this Agreement that the Plan Administrator deems reasonably necessary or desirable to administer the Debtors and the Wind-Down Debtors." [Plan Administrator Agmt. § 2.1(c)(xxviii); *see* Confirmation Order ¶ 79.] Through this provision, and as it has done here, the Plan Administrator is empowered to consent to the intervention of GLAS, as Agent for the Lenders and sole beneficiary of the Retained Causes of Action, if the Plan Administrator deems such intervention "necessary or desirable."  Far from being in tension with the Plan, GLAS's intervention—which would provide the Debtor the benefit of its deep familiarity with the issues here and ensure that the interests of the Lenders are consistently maintained across global enforcement proceedings—would be consistent with its purpose: to preserve and maximize recoveries from the Retained Causes of Action for the benefit of the creditors whose support was necessary for confirmation of such Plan [*see* Plan Art. III.C].

ii.   GLAS Has a Sufficient Interest in This Adversary Proceeding

15.    Defendants' argument that GLAS's interest in this proceeding is not sufficient to merit intervention is wrong on the law and wrong on the facts.

16.    On the law, Defendants' claim that GLAS must demonstrate an interest "distinct" from the estate's [Obj. ¶ 16] is incorrect.  But revealingly, Defendants cite no authority in support of that proposition.  None exists.  Instead, Rule 24(a)(2) requires only that an intervenor demonstrate "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2); *Bautista*, 2023 WL 4706822, at *3, *5 n.12 ("[I]ntervenors of right need only an interest in the litigation" (citation omitted)).  And "[a] party seeking to intervene . . . need not have an independent cause of action to be considered to have an interest within the scope

of Rule 24(a)." *Bridgeport Guardians v. Delmonte*, 227 F.R.D. 32, 34 (D. Conn. Mar. 4, 2005) (citation omitted). This black letter law aligns with the well-established judicial treatment of the "sufficient interest" standard as a flexible test [*see* Mot. ¶ 18 (citing cases)].

17.   Turning to the facts, GLAS readily meets this requirement because courts permit intervention where, among other things, the outcome of a litigation "might impede [the intervenor's] recovery." *See Casino Caribbean, LLC v. Money Ctrs. of Am., Inc. (In re Money Ctr. of Am., Inc.)*, 544 B.R. 107, 115–16 (Bankr. D. Del. 2016).

18.   First, GLAS, on behalf of the Lenders, stands to benefit from any recovery of the Alpha Funds in this proceeding. Indeed, Defendants themselves concede that GLAS has an "economic interest" in the outcome here [Obj. ¶ 16].

19.   Second, GLAS has a further interest in this proceeding because it may bear on recovery in separate, foreign proceedings. Specifically, GLAS is party to a Corporate Insolvency Resolution Process ("CIRP") against Think & Learn Private Limited ("T&L"), the guarantor of the prepetition loan and alleged recipient of the Alpha Funds.[5] There, GLAS is actively involved in enforcement of the CIRP and sits as the largest creditor on the Committee of Creditors (the "COC"). Because any amounts due by the Debtor are also due by its guarantors, the outcome of this Action may impact the liability of affiliate entities abroad. Discovery in this Action may also bear on the location of the Alpha Funds and potential additional transferees, aiding these separate enforcement proceedings.

20.   Because GLAS is the common denominator across these proceedings, it is uniquely positioned to ensure the consistent treatment of facts, assertion of arguments, and application of findings. That role is particularly important given GLAS's legitimate concern that foreign parties

---

[5] The location of the Alpha Funds at T&L has not been identified.

may wrongly point to developments in this Action to hinder enforcement proceedings in other jurisdictions.

**B.  GLAS's Interests Could Be Impaired Absent Intervention**

21.     Defendants also erect too high of a standard in arguing that intervention should be denied because "GLAS does not assert that any independent legal right *will* be impaired." [*See* Obj. ¶ 18 (emphasis added).]  That is not the law.  A proposed intervenor need only show that its interest "*might* become affected or impaired, as a practical matter, by the disposition of the action in their absence." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 368 (3d Cir. 1995) (citation omitted).  This standard requires the Court "to assess the practical consequences of the litigation" and "any significant legal effect on the applicant's interest." *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992) (citation omitted).  For several reasons, resolution of this Action may affect or impair GLAS were it not allowed to intervene.

22.     First, GLAS, on behalf of the Lenders, stands to recover (or lose) directly based on the outcome of this Action, because any recovery of the Alpha Funds will flow to the Lenders through GLAS.  Because of this, Defendants concede that GLAS has an economic interest in the outcome of this Action [*see* Obj. ¶ 16].  Denial of GLAS's motion would bar it from raising points of fact and law that may bear on the extent of that recovery.

23.     Second, this Action may be a critical source of information regarding the location of the Alpha Funds that could aid GLAS in foreign enforcement actions.  If not allowed to participate here, GLAS may not access discovery that could be relevant to (among other things) the movement of the funds from Defendants and the identity of additional transferees.

24.     Third, the substantive resolution of this Action may impact GLAS's rights in other jurisdictions.  Findings here regarding the movement of the fraudulently transferred funds and the parties involved in misconduct may bear on GLAS's foreign proceedings, potentially with either

persuasive or preclusive effect.  GLAS, therefore, has a vested interest in the outcome of this proceeding that would be impaired were it unable to advocate, as appropriate.

### C. Debtor May Not Adequately Represent GLAS's Interests

25.   Finally, Defendants' conclusory statement that "GLAS's interests are directly aligned with the Debtor's," [*see* Obj. ¶ 19] is mistaken.

26.   The burden to establish inadequate representation is "treated as minimal." *Mountain Top Condo. Ass'n*, 72 F.3d at 368.  GLAS only needs to show that its representation "may be inadequate," *see id.*, and "[a]ll reasonable doubts should be resolved in favor of allowing the absentee . . . to intervene . . . ."  *City of Colorado Springs v. Chao*, No. 07-01559, 2007 WL 4169307, at *4 (D. Colo. Nov. 20, 2007) (quoting Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1909). Inadequate representation is found where, "although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests."  *Spang*, 957 F.2d at 1123 (citation omitted).

27.   Defendants acknowledge that this Court has already held that GLAS has certain "peculiar interests."  [Obj. ¶ 19.]  As compared to the Debtor, which has fiduciary duties that run to the estate as a whole, GLAS acts as Administrative Agent and Collateral Agent under the Prepetition Term Loan Facility and Wind-Down Facility, which provide the exclusive right to enforce remedies and the specific interest of protecting and enforcing the interests of the Lenders [*see* Mot. ¶ 20].  These interests are aligned, but not identical, which is sufficient to meet the standard of this element.

28.   Defendants suggest that this fundamental distinction is a nullity following enactment of the Plan.  According to them, GLAS's interests are fully protected through GLAS's participation on the Wind-Down Debtor Oversight Committee [*see* Obj. ¶¶ 10–12, 17].  Defendants are mistaken.  For one thing, Defendants materially overstate GLAS's role and

influence over the Wind-Down Debtor Oversight Committee.  There, GLAS is a non-voting member [*see* Plan Administrator Agmt. § 3.1].  In other words, GLAS does not control the committee.  For another, nothing about GLAS's participation on that committee does anything to change its discrete position, and therefore interests, compared to the Debtor.  That GLAS and the Lenders approved the Plan does not imply the erasure of their distinct identity.

### III.    GLAS SHOULD BE ALLOWED TO PERMISSIVELY INTERVENE UNDER FEDERAL RULE 24(B)(1)(B)

#### A.  GLAS Has a Claim Sharing Common Questions of Law and Fact with Debtor

29.    The Court should also reject Defendants' arguments against permissive intervention, which is committed to the Court's broad discretion.  *See United States v. Territory of V.I.*, 748 F.3d 514, 519 (3d Cir. 2014).  Permissive intervention requires only the modest showing that the proposed intervenor has "a claim or defense that shares with the main action a common question of law or fact."  *See* Fed. R. Civ. P. 24(b)(1)(B); *Allentown Cement Co. v. Hong Sung Indus. Co. (In re United Minerals and Grains Corp.)*, 76 B.R. 991, 1000 (Bankr. E.D. Pa. 1987).  "[T]he interest of the proposed intervener need not be related to the property or transaction in issue." *Allentown Cement Co.*, 76 B.R. at 1000.

30.    GLAS straightforwardly satisfies this standard.  As described above, it has a pending claim against T&L in the CIRP proceeding in India, which involves allegations regarding many of the same parties, and which turns on the same legal theories set forth by the Debtor.  *See In re Abad*, No. 26-60011, 2026 WL 959293, at *4 (S.D. Fla. April 8, 2026) (permitting intervention where movant's claim in a foreign divorce proceeding had "at least one question of law or fact in common" with the main action).  GLAS also remains involved in enforcement actions against BYJU's Pte Ltd. and Great Learning Education Pte Ltd., affiliates of the Debtor, in Singapore tied to the transactions at issue here.

31.      Moreover, GLAS has adopted the Debtor's complaint.  *Cf. Piazza v. Genger (In re Genger)*, No. 19-13895, 2024 WL 5251949, at *6 (S.D.N.Y. Dec. 30, 2024) (finding movant "plainly shares common questions of fact and law with the Complaint" where movant "adopts the allegations . . . of the Complaint as his own." (citations omitted)).  The Court should reject Defendants' attempted minimization of that fact; as set forth above, GLAS's interests are not "identical to those of the Debtor." [*See* Obj. ¶ 25.]  And, as also explained above and in the Motion, GLAS brings unique knowledge and a distinct perspective borne out of its role as the constant party in the sprawling cross-border disputes involving BYJU's fraudulent scheme [*see* Mot. ¶ 6]. *See, e.g., Uniformed Fire Officers Ass'n v. DeBlasio*, No. 20-05441, 2020 WL 9211174, at *1 (S.D.N.Y. Aug. 25, 2020) (granting intervention where the intervenor "presented unique information and insights").

**B.  Defendants Will Not Be Prejudiced by GLAS's Intervention**

32.      Permissive intervention is also appropriate because the Objection's passing, speculative reference to prejudice "risk[ed]" by GLAS's intervention falls far short of providing grounds to deny the Motion [Obj. ¶ 25].  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  GLAS's intervention will do neither.

33.      First, GLAS's intervention does not plausibly threaten any delay.  No discovery has been exchanged, no depositions taken, and no dispositive motions decided.  Just two days before the filing of this reply, the Debtor sought an enlargement of its time to serve additional defendants until *September* [Adv. D.I. 17 at *1].  In short, this Action is in its infancy, and there are no credible grounds on which to suppose that GLAS's participation would draw out the proceedings; Defendants, certainly, have not even attempted to point to any.

34.     Second, in the absence of any non-conclusory argument by Defendants on this point, GLAS's commitment to coordination with the Debtor undercuts any conjectural risk of duplication, delay, or prejudice across discovery, motion practice, and other areas.

35.     Third, as this Court is aware, GLAS has intervened in four related adversary proceedings, across which Defendants do not, and cannot, point to a single instance of GLAS even being *alleged* to have contributed to delay or duplication.[6]

36.     Finally, and despite GLAS's unobtrusive track record in related proceedings, should it be determined at some future time that GLAS's participation has led to a needless burden on Defendants, the Court possesses ample remedial tools to craft an equitable solution as part of its inherent authority to manage its docket.

### C. GLAS Does Not Have Alternate Mechanisms to Enforce Its Claims Against Defendants

37.     Finally, the Court should reject Defendants' argument that permissive intervention should be denied because GLAS, according to them, could obtain "any information it claims to need without becoming a duplicative party to the litigation" through "alternative mechanisms." [Obj. ¶ 27.]

38.     Here, Defendants mischaracterize and grossly narrow GLAS's interests that justify its intervention, which go significantly beyond participating in discovery [*see, e.g.,* Mot. ¶ 19 (indicating that "the resolution of this Action will materially impact any recovery by GLAS as a result of Defendants' transfers" and that any "discovery obtained in this Action" will "inform future enforcement efforts")]. GLAS seeks to preserve and protect its rights as against Defendants

---

[6] The four adversary proceedings are (1) *BYJU's Alpha, Inc. v. Banker*, Adv. Proc. No. 25-50822; (2) *BYJU's Alpha, Inc. v. Camshaft Cap. Fund, LP*, Adv. Proc. No. 24-50013; (3) *Springer v. Voizzit Tech. Priv. Ltd.*, Adv. Proc. No. 24-50233; and (4) *BYJU's Alpha, Inc. v. Raveendran*, Adv. Proc. No. 25-50526.

with respect to the Alpha Funds, to participate in the prosecution of claims that will determine whether its recovery of the Alpha Funds will be satisfied, and to coordinate with the Debtor in a manner that maximizes the prospects of recovery both domestically and abroad.

39.     Further, Defendants' suggestion that GLAS could "pursue discovery directly through subpoenas or other available means," [Obj. ¶ 27] is unavailing.  Without intervention, GLAS's ability to coordinate with the Debtor and share in discovery from this Action would be at best significantly inefficient and at worst seriously compromised.   More fundamentally, Defendants' invitation for GLAS to pursue discovery of it through subpoenas is perplexing: it is unclear how Defendants can claim that GLAS's participation in joint discovery with the Debtor would be unduly burdensome, but its service of third-party subpoenas would be acceptable.

## IV.    GLAS SHOULD BE ALLOWED TO INTERVENE AS A "PARTY IN INTEREST" UNDER SECTION 1109(B) OF THE BANKRUPTCY CODE

40.     Defendants' argument that GLAS is not entitled to intervene pursuant to Section 1109(b) misses the mark.  In support of their position, Defendants raise two points: first, that granting GLAS's request "would necessarily mean *any* creditor could intervene in *every* adversary proceeding;" and second, that GLAS "seeks to insert itself into litigation that the confirmed Chapter 11 plan assigns *exclusively* to the Plan-designated fiduciary and where the proposed intervenor's interests are fully aligned with, and already represented by, that fiduciary."  [Obj. ¶¶ 29, 31.]  Both points fail.

41.     As to the first, the Court should reject this strawman argument.  Section 1109(b) "has been construed to create a broad right of participation in Chapter 11 cases" and is intended to encourage, not stifle, "greater participation in reorganization cases."  *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 211 (3d Cir. 2011) (citations omitted) (Mot. ¶ 26).  But even putting aside this broad judicial application of the statute, contrary to Defendants' insinuation, GLAS is not asking

the Court to "mechanically" apply Section 1109(b), nor is it requesting that the Court find that intervention would be appropriate as to any other would-be intervenor. Whatever academic concerns Defendants might have when it comes to line drawing under Section 1109(b) with regard to other parties, there is no serious question as to whether GLAS should be treated as a "party in interest" for the reasons described in the Motion and above: GLAS has interests independent of the Retained Causes of Action [*see supra* II.A; Mot. ¶¶ 5, 18]; GLAS's interests would be impaired absent intervention [*see supra* II.B; Mot. ¶ 19]; and GLAS's interests are not fully represented by the Debtor [*see supra* II.C; Mot. ¶ 20].

42.    The Defendants' second claim fares no better. Simply, Section 1109(b) is not limited to pre-confirmation matters. By its plain language, that section applies to "any issue in a case under this chapter" and, therefore, applies to any action governed by Chapter 11, which includes those brought post-confirmation, such as this action. *See SWE & C Liquidating Tr. v. Saudi Arabian Oil Co. (In re Stone & Webster, Inc.)*, 373 B.R. 353, 361 (Bankr. D. Del. 2007); *Carr v. JP Morgan Chase Bank, N.A. (In re New Century TRS Holdings, Inc.)*, 505 B.R. 431, 438 n.9 (Bankr. D. Del. 2014).

43.    The cases cited by Defendants are inapposite. *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1241 n.2 (3d Cir. 1994) and *United States v. LTV Steel Co.*, 269 B.R. 576, 580 (W.D. Pa. 2001), are cited for the proposition that Section 1109(b) does not provide a basis for intervention where an independent federal right overrides the interests of creditors [*see* Obj. ¶¶ 30–32] but Defendants have not identified any such "independent federal right," here. That is because there is none.

44.    *Stone & Webster, Inc.* is cited for the proposition that intervention is improper where the movant had no right to the proceeds of a liquidating trust's claims [*see* Obj. ¶ 30]. That

is irrelevant; as described above, GLAS *does* have a direct interest in the proceeds of this Action, as set forth in the Motion and above.

45.     *In re Elcom Techs. Corp.*, No. 98-13343, 2001 WL 36260776, at *4 (Bankr. E.D. Pa. Feb. 13, 2001), is cited for the proposition that a "marginal party" not "directly affected" by the outcome should not be allowed to intervene in an action [*see* Obj. ¶ 30].  But Defendants do not, and could not, explain why GLAS should be considered a "marginal party."  That position would be straining at best.

## V.     THERE IS NO BASIS TO PREMATURELY LIMIT GLAS'S INTERVENTION

46.     Finally, there is no cause to prophylactically impose limits on GLAS's participation in the Action.  GLAS has already committed to avoiding duplication and expense [*see* Mot. ¶ 9]. And despite GLAS having intervened in four related proceedings, Defendants point to *no* conduct by GLAS in those proceedings that required judicial intervention, or from which a party *even claimed* to require relief—because they cannot.  If Defendants believe that GLAS's discovery or filings are unduly burdensome, Defendants can raise any such concern when ripe.  In the meantime, preventative restrictions on GLAS's rights on the basis of wholly speculative risks would serve no purpose and interfere with the purpose of intervention, which "gives parties, among other things, the right to participate in discovery."  *See United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1186 n.17 (3d Cir. 1994).

### CONCLUSION

47.     For the reasons set forth above, GLAS respectfully requests that the Court enter the Proposed Order filed at Adv. D.I. 11-1, (i) authorizing GLAS to intervene in this Action and (ii) granting GLAS such other and further relief as the Court may deem just and proper.

Dated: June 11, 2026
      Wilmington, Delaware

/s/ *Peter J. Keane*

| | |
|---|---|
| **PACHULSKI STANG ZIEHL & JONES LLP** | **REED SMITH LLP** |
| Laura Davis Jones (DE Bar No. 2436) | Nicholas B. Vislocky (admitted *pro hac vice*) |
| Peter J. Keane (DE Bar No. 5503) | Zachary B. Kaye (admitted *pro hac vice*) |
| 919 North Market Street, 17th Floor | 599 Lexington Avenue, 22nd Floor |
| P.O. Box 8705 | New York, New York 10022 |
| Wilmington, Delaware 19801 | Telephone: (212) 521-5400 |
| Telephone: (302) 652-4100 | Facsimile: (212) 521-5450 |
| Email: ljones@pszjlaw.com | Email: nvislocky@reedsmith.com |
| pkeane@pszjlaw.com | zkaye@reedsmith.com |

*Counsel to GLAS Trust Company LLC*

16