**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BYJU'S ALPHA, INC.,[1] | Case No. 24-10140 (BLS)<br><br>Chapter 11 |
| BYJU'S ALPHA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>REVERE MASTER SPV LLC SERIES VII, REVERE MASTER SPV LLC, REVERE MANAGER LLC, REVERE SECURITIES LLC, KYLE M. WOOL, JEROME F. NILES, JOSHUA A. SHIPLEY, AND JOHN AND JANE DOES 1-10,<br><br>Defendants. | Adversary Proceeding<br><br>No. 26-50221 (BLS) |

**REPLY IN FURTHER SUPPORT OF REVERE**
**DEFENDANTS' MOTION TO DISMISS ADVERSARY COMPLAINT**

**GELLERT SEITZ BUSENKELL & BROWN LLC**
Michael Busenkell (DE 3933)
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Phone: (302) 425-5812
Mbusenkell@gsbblaw.com

*Attorneys for Defendants Revere Master SPV LLC Series VII, Revere Master SPV LLC, Revere Manager LLC, Revere Securities LLC, Kyle M. Wool, Jerome F. Niles, Joshua A. Shipley*

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Howard W. Schub
330 Madison Avenue, 27th Floor
New York, New York 10017
Phone: (212) 413-9060
Howard.Schub@nelsonmullins.com
Lee B. Hart
201 17th Street NW
Atlanta, GA 30363
Phone: (404) 322-6349
Lee.Hart@nelsonmullins.com

Dated: June 26, 2026
Wilmington, Delaware

[1] The Debtor in this Chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: BYJU's Alpha, Inc. (4260). The location of the Debtor's service address for purposes of this Chapter 11 Case is: 1007 N. Market Street Ste. G20 452, Wilmington, Delaware 19801.

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ... 1

ARGUMENT ... 3

I. The Complaint Should Be Dismissed Because Its Allegations Are Conclusory and the Mere Conduit Defense Appears on the Face of the Complaint ... 3

II. The Complaint Should Be Dismissed Because Section 550(b)(1) of the Bankruptcy Code Independently Bars Recovery from the Defendants ... 6

A. The Complaint Fails to Adequately Allege that the Defendants Took the Transferred Property in Bad Faith ... 6

B. Alternatively, the Complaint Should Be Dismissed Because the Good Faith Defense Is Apparent from the Face of the Complaint and the Documents on Which the Complaint Is Based ... 8

III. The Debtor Cannot Avoid Dismissal by Omitting the Relevant Agreements and Known Facts Surrounding the Challenged Transfers ... 9

IV. The Complaint Should Be Dismissed with Prejudice Because Amendment Would Be Futile and Inequitable ... 14

CONCLUSION ... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ALA, Inc. v. CCAIR, Inc.*,
29 F.3d 855 (3d Cir. 1994)....................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................4, 7

*Buck v. Hampton Twp. Sch. Dist.*,
452 F.3d 256 (3d Cir. 2006)....................8

*BYJU's Alpha, Inc. v. Camshaft Capital Fund, LP (In re BYJU's Alpha, Inc.)*,
2025 WL 659092 (Bankr. D. Del. Feb. 27, 2025)....................4, 5

*BYJU's Alpha Inc. v. OCI Limited and Rupin Banker*,
Adv. Pro. No. 25-50822 (BLS) (Bankr. D. Del.)....................14

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)....................12

*Cortec Industries, Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991)....................2

*Foman v. Davis*,
371 U.S. 178 (1962)....................14

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009)....................4

*Glob. Network Commc'ns, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006)....................12

*In re Astropower Liquidating Tr.*,
2006 WL 1173853 (Bankr. D. Del. Apr. 19, 2006)....................5

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)....................2, 11, 12

*In re Conex Holdings, LLC*,
518 B.R. 792 (Bankr. D. Del. 2014)....................12

*In re DVI, Inc.*,
2008 WL 4239120 (Bankr. D. Del. Sept. 16, 2008) ....................5

*In re Mervyn's Holdings, LLC*,
426 B.R. 96 (Bankr. D. Del. 2010) ....................6, 12

*In re Old CarCo LLC*,
435 B.R. 169 (Bankr. S.D.N.Y. 2010) ....................12

*In re Tower Air, Inc.*,
416 F.3d 229 (3d Cir. 2005) ....................4

*Lake v. Arnold*,
232 F.3d 360 (3d Cir. 2000) ....................14

*Leveto v. Lapina*,
258 F.3d 156 (3d Cir. 2001) ....................4, 8

*Lupian v. Joseph Cory Holdings LLC*,
905 F.3d 127 (3d Cir. 2018) ....................4

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1993) ....................11

*Schmidt v. Skolas*,
770 F.3d 241 (3d Cir. 2014) ....................4

*Wasserman v. Bressman (In re Bressman)*,
327 F.3d 229 (3d Cir. 2003) ....................6

**Rules**

Fed. R. Bankr. P. 7012(b) ....................1

Fed. R. Civ. P. 11 ....................14, 15

Fed. R. Civ. P. 12(b)(6) .................... *passim*

**Statutes**

11 U.S.C. § 550 ....................6

11 U.S.C. § 550(a)(2) ....................6

11 U.S.C. § 550(b)(1) ....................6, 7, 8, 9

Defendants Revere Master SPV LLC Series VII, Revere Master SPV LLC, Revere Manager LLC, Revere Securities LLC, Kyle M. Wool, Jerome F. Niles, Joshua A. Shipley (collectively, the "Defendants") file this brief ("Brief") in further support of their motion to dismiss [Adv. D.I. 6, 7] (the "Motion to Dismiss")[2] the adversary complaint [Adv. D.I. 1] (the "Complaint") filed by BYJU's Alpha, Inc. (the "Debtor") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"), as made applicable under Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[3]

**PRELIMINARY STATEMENT**

The Debtor's opposition to the Motion to Dismiss [Adv. D.I. 18] (the "Debtor's Opposition") lacks any merit. The Debtor does not deny that the Complaint admits on its face that the Alpha Funds were roundtripped right back to its parent company, T&L. The Debtor also does not dispute that Revere transferred all the funds it received from OCI onward to BYJU's Global and BYJU's Investments other than an agreed management fee. Nor does the Debtor deny that its allegation that Revere must have known of the fraud is conclusory and not supported by any allegation that Revere knew or should have known that it was facilitating a prior fraud when it later transacted with OCI and the Debtor's affiliates.

Despite these admissions, the Debtor argues the Complaint's conclusory allegations of fraud and bad faith suffice at the pleading stage. That is not the law. While the Court must accept well-pleaded allegations as true on a Rule 12(b)(6) motion, conclusory allegations are insufficient. A complaint must allege facts demonstrating that plaintiff has a claim for relief. Here, the Debtor pleads no such facts to support its fraudulent conveyance claim against the Defendants as

---

2 Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion to Dismiss.

3 In further support of the Motion to Dismiss, the Defendants submit the *Declaration of Howard W. Schub in Support of Revere Defendants' Motion to Dismiss Adversary Proceeding* (the "Schub Declaration").

subsequent transferees. That failure is unsurprising, as the Debtor has previously determined there was no basis to similar claims against another subsequent transferee, Mr. Oliver Chapman, the founder and CEO of OCI—the very entity that transferred the funds to Revere. Obviously, this admission belies the Debtor's conclusory allegation that no participant in the subsequent transfers could have acted in good faith.

The Debtor also argues that dismissal based on the mere conduit or good faith defenses is premature because they are affirmative defenses for which the Defendants bear the burden of proof. The Defendants do not concede that point, and, in any event the Debtor ignores settled law permitting dismissal under Rule 12(b)(6) where an affirmative defense appears on the face of the complaint and incorporated documents. That is exactly the case here: the Complaint admits that the Defendants merely facilitated a roundtrip of the Alpha Funds to T&L, and the underlying documents show that the Defendants lacked dominion or control and did not act in bad faith.

The Debtor's final argument—that the Complaint cannot be dismissed because it does not allege the facts negating its claim—is also wrong. A plaintiff's deliberate failure to include facts in its complaint that disprove its claim does not save a defective claim from dismissal. A plaintiff cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them:

> Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion.

*Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991); s*ee also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Here, the Debtor bases its entire claim on the results of its comprehensive investigation into the alleged fraud which supposedly revealed that the Alpha Funds "were funneled through

Revere as part of a sprawling, multi-entity fraudulent scheme" (Debtor's Opp. at 1) and information the Debtor received from Chapman that "itemizes down to the cent what happened to the Alpha Funds once OCI received the money." (Compl. at ¶3). But the Debtor did not describe or attach to its Complaint the investment agreements between OCI and Revere, the loan agreements between Revere and BYJU's Investments or BYJU's Global, or other records explaining the legitimacy of the Revere transactions. The Motion to Dismiss referred to the $479 million investment agreement between Revere Master and OCI and the loan agreement between Revere Master and BYJU's Investments, reflecting that Revere did not have dominion and control over the Alpha Funds and transferred them to BYJU's Investments and BYJU's Global at the direction of OCI and pursuant to an enforceable loan agreement, not as a paid, fraudulent co-conspirator as the Complaint misleadingly suggests.

In a stunning lack of candor, the Debtor asks the Court to ignore this information as extrinsic to the Complaint, but does not deny that it received these documents as part of its investigation, relied on them in drafting its pleadings and motion papers in this and other adversary proceedings and contested matters, and deliberately omitted these facts from the Complaint—facts which prove Revere's good faith and lack of control over the Alpha Funds—in a strategic attempt to avoid dismissal. This type of sharp litigation tactic should not be countenanced by the Court. The existence of these documents refutes any notion that the Complaint can be amended in good faith to cure its deficiencies. For these reasons, the Complaint should be dismissed with prejudice.

## ARGUMENT

### I. The Complaint Should Be Dismissed Because Its Allegations Are Conclusory and the Mere Conduit Defense Appears on the Face of the Complaint.

It is well established that while a court must accept well-pleaded factual allegations as true on a Rule 12(b)(6) motion, it need not accept legal conclusions untethered to factual support.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Further, the Third Circuit has consistently held that "[a] complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face." *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005).[4] To prevail on dismissal at the pleading stage, a defendant need only show that "the defense is 'apparent on the face of the complaint and documents relied on in the complaint.'" *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018).

The Debtor's assertion that the mere conduit defense cannot support dismissal despite its concession that Revere simply passed funds along to the Debtor's affiliates overreads its own authority. The Debtor attempts to use this Court's decision in *BYJU's Alpha, Inc. v. Camshaft Capital Fund, LP (In re BYJU's Alpha, Inc.)*, 2025 WL 659092 (Bankr. D. Del. Feb. 27, 2025) to support its position that the Defendants' invocation of the mere conduit defense is improper at this stage. However, *Camshaft* accepts the same rule that the Defendants invoke here: dismissal is appropriate where the complaint includes allegations "incompatible with the conclusion that a defendant had dominion and control—for example, that the defendant was obligated to use the funds received for a third party." *Id.* at *11. While "the availability of a potential affirmative defense is not generally cognizable on a motion to dismiss," the Court confirmed that there is an exception "for cases in which the availability of the affirmative defense is apparent based on the plaintiff's own factual allegations." *Id.* Thus, this Court did not rule that the mere conduit defense

[4] *See also Schmidt v. Skolas*, 770 F.3d 241, 252 (3d Cir. 2014) (holding that where a complaint's allegations establish an affirmative defense, the plaintiff effectively "plead[s] himself out of court," making dismissal at the pleading stage appropriate); *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (permitting an affirmative defense to be raised on a Rule 12(b)(6) motion where the defense's applicability is apparent on the face of the pleading); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (recognizing dismissal as appropriate where an unanswered affirmative defense appears on the face of the complaint)

may never be the basis for a 12(b)(6) dismissal. Rather, a complaint may be dismissed for failure to state a claim where the plaintiff's own allegations contradict the conclusion that the defendant had dominion and control over the transferred property.

The Debtor's reliance on the *DVI* and *Astropower* decisions is also misplaced; neither held that the mere-conduit defense can never be resolved at the pleading stage. *DVI* declined to dismiss on the ground that an affirmative defense generally cannot form the basis of a Rule 12(b)(6) motion. *See In re DVI, Inc.*, 2008 WL 4239120 (Bankr. D. Del. Sept. 16, 2008). However, the controlling rule in this District is not so absolute: as *Camshaft* confirms, the defense may be resolved on the pleadings where it is "apparent based on the plaintiff's own factual allegations." *Camshaft*, 2025 WL 659092, at *11. To the extent *DVI* suggests otherwise, *Camshaft* supplies the governing exception. *In re Astropower Liquidating Tr.*, 2006 WL 1173853 (Bankr. D. Del. Apr. 19, 2006) is distinguishable: the defendant argued it was a mere conduit, as it was obligated to pass the transferred stock to a third-party purchaser, but the court found that the obligation underpinning that defense was "not apparent from the face of the Amended Complaint" and so could not be resolved at the pleading stage. Here, by contrast, the conduit conclusion follows from the Debtor's own allegations that Revere received the funds and immediately passed all but a fee onward to defined recipients, on defined dates, and back to the Debtor's parent, T&L. The defense is apparent on the face of the Complaint—precisely the circumstance *Camshaft* holds is subject to dismissal.

From the Debtor's own allegations, after Revere received approximately $480 million from OCI, it retained a $4,626,765.00 fee and transferred all remaining funds onward—$270,000,035.00 to BYJU's Investments Pte Ltd. and $200,000,075.00 to BYJU's Global—on dates between June 28 and July 18, 2022. The Debtor alleges that BYJU's Global then transferred

$150,000,000 to another Singapore entity affiliated with Raveendran, and that the funds were ultimately routed back to T&L. *Id*. ¶¶ 49-51. The Complaint thus concedes that the funds were routed onward and returned to the Debtor's own corporate parent and Raveendran-affiliated entities. Compl. ¶¶ 50-51. As the Debtor acknowledges, "[t]he truth about what happened to the vast majority of the Alpha funds is that they were, in effect, roundtripped right back to Byju Raveendran and his affiliates." 9019 Mot. at ¶ 1. These specific allegations establish, on the face of the Complaint, that the funds were not held by Revere, and were instead transferred onward as part of what the Debtor itself describes as a scheme to return the funds to Raveendran and his affiliates. The Complaint therefore affirmatively alleges that, as to the vast majority of the funds, Revere did not exercise the dominion and control required to be a transferee under section 550(a)(2) of the Bankruptcy Code.[5] Thus, the Complaint should be dismissed because the mere conduit defense is apparent on its face.

## II. The Complaint Should Be Dismissed Because Section 550(b)(1) of the Bankruptcy Code Independently Bars Recovery from the Defendants.

### A. The Complaint Fails to Adequately Allege that the Defendants Took the Transferred Property in Bad Faith.

The Debtor does not dispute that it attempted to allege that the Defendants took the funds in bad faith but has no answer to the fact that its allegations are conclusory and inconsistent with its prior admissions. Instead, the Debtor mischaracterizes *Wasserman v. Bressman (In re Bressman)*, 327 F.3d 229 (3d Cir. 2003) as holding that section 550(b)(1) of the Bankruptcy Code creates an affirmative defense in which the transferee has the burden of persuasion when the Third Circuit was clear that it was assuming that principle *arguendo* and expressly "reserve[d] the issue

[5] *See In re Mervyn's Holdings, LLC*, 426 B.R. 96, 103 (Bankr. D. Del. 2010) (recognizing that a party must have "dominion and control" over the transferred funds or property to be considered a "transferee" under section 550 of the Bankruptcy Code).

for another day." *Id*. at 236-37, n. 2. The Third Circuit has not ruled on this issue, and this Court should follow the holdings that the plaintiff, as proponent of recovery, must prove that the subsequent transferee did not accept the transferred property in good faith and that therefore the section 550(b)(1) safe harbor does not apply (*see* Brief in Support of Mot. to Dismiss at 21, n. 11).

The Complaint impermissibly relies on conclusory allegations to support its contention that the Defendants did not take the transferred property in good faith and for value. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) (claims should be dismissed if they are "supported by mere conclusory statements"). The Complaint fails to allege any facts showing that Revere knew about the original transfers from the Debtor to Camshaft, knew of any alleged fraud by OCI, or had any reason to suspect that the OCI-to-Revere transaction was voidable. Br. in Supp. of Mot. to Dismiss at 23-27; Compl. at ¶¶ 60-61. Instead, the "red flags" on which the Debtor relies are not Revere's red flags; each is drawn from the Court's MSJ Opinion, which addressed whether Camshaft, the initial transferee, took the funds from the Debtor in good faith, based upon Camshaft-specific facts such as the size of the transaction relative to Camshaft's assets and Camshaft's fee. Compl. ¶ 60(b); Op. at 24-25. Those findings do not establish inquiry notice as to Revere, an arm's-length, downstream transferee, or speak to what Revere knew, or reasonably should have known, when it subsequently received funds from OCI and transferred them onward.

Nor does the size of Revere's fee support any inference of impropriety. The Complaint alleges that Revere retained $4,626,765.00 of the approximately $480 million it received and passed the remainder onward—a fee amounting to less than one percent (approximately 0.96%) of the funds that passed through Revere. By contrast, the Lenders and GLAS received approximately $30 million in the aggregate in arrangement and origination fees, or roughly 2.5% of the $1.2 billion Term Loan. *See* Declaration of J. Michael McNutt, *BYJU'S Alpha Inc. v. Byju Raveendran,*

*et al.*, Adv. Pro. No. 25-50526 (BLS) (Bankr. D. Del) [Adv. D.I. 205] (the "McNutt Declaration"), Ex. 1 at 1. The Debtor offers no explanation for why a sub-one-percent management fee retained by a downstream entity should signal bad faith when fees several multiples larger, charged elsewhere in the same enterprise, do not.

### B. Alternatively, the Complaint Should Be Dismissed Because the Good Faith Defense Is Apparent from the Face of the Complaint and the Documents on Which the Complaint Is Based.

Even assuming *arguendo* that section 550(b)(1) creates an affirmative defense, as with the mere conduit defense, the good faith affirmative defense is apparent from the face of the Complaint and the documents on which the Complaint is based, thus warranting dismissal under Rule 12(b)(6). *See Leveto*, 258 F.3d at 161. Here, the allegations contained in the Complaint and the exhibits attached thereto (specifically, the 9019 Motion and the Chapman 9019 Declaration, which the Complaint alleges is "now part of the evidentiary record in this case")[6] demonstrate that Revere acted in good faith when it received the transferred funds. Specifically, in the 9019 Motion, the Debtor represented to the Court that "a single former OCI representative, Rupin Banker, in conjunction with Raveendran, among others (not Chapman), abused OCI to facilitate a fraud," and that, after conducting its own investigation, the Debtor determined that it had "***no basis to pursue a claim against Chapman***." 9019 Mot. at ¶¶ 3, 5 (emphasis added).

The Debtor's Opposition argues that "[t]he Debtor's strategic decision to settle with OCI in exchange for valuable cooperation and information tracing the Alpha Funds does not constitute

[6] As discussed in the Defendants' opening brief and further below, when ruling on the Motion to Dismiss, the Court should consider the allegations contained in the Complaint, the exhibits attached to the Complaint, matters of public record, items subject to judicial notice, and matters incorporated by reference or integral to the claims. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); Br. in Supp. of Mot. to Dismiss at 3, n. 3. The Debtor's effort to recast the 9019 Motion and the Chapman 9019 Declaration—documents the Debtor itself attached to the Complaint—as "non-record evidence" (Debtor's Opp. at 14) is meritless and fails to address any of the decisions cited by the Defendants that expressly held that exhibits attached to a complaint should be considered at the 12(b)(6) dismissal stage (Debtor's Opp. at 14).

an admission that all downstream transferees acted in good faith." Debtor's Opp. at 18. However, the Defendants are not arguing that the Debtor cannot pursue the Defendants as downstream transferees because they settled with OCI. The Debtor's admission that it had no basis to pursue Chapman cannot be squared with its conclusory allegation that "no good-faith transferee would facilitate the movement of approximately $480 million through such a scheme." Compl. at ¶60(a). If Chapman, that much closer to the alleged fraud, is beyond reproach, the Debtor cannot sustain a claim against Revere on the demonstrably false and conclusory claim that it must have known it was facilitating a fraud. The good faith defense under section 550(b)(1) is therefore apparent from the face of the Complaint and the underlying documents, separately warranting dismissal under Rule 12(b)(6).

### III. The Debtor Cannot Avoid Dismissal by Omitting the Relevant Agreements and Known Facts Surrounding the Challenged Transfers.

The Debtor claims, based on information from Chapman, that it can trace the Alpha Funds once OCI received the money "down to the cent," (Compl. at ¶¶ 3, 46), that the information from Chapman "unravels the truth behind what happened to the Alpha Funds," (9019 Motion at ¶ 5), and that such information "demonstrates that the vast majority of the Alpha Funds were, in effect, roundtripped right back to Raveendran and his affiliates" through transfers to BYJU's Global. Compl. at ¶ 3. Yet, there is a gap between the information in the Chapman 9019 Declaration and the Complaint's allegations. The Chapman 9019 Declaration does not address any fee retained by Revere in connection with the transfers, yet the Complaint alleges that Revere retained $4,626,765.00 as a fee and sent the rest of the funds onwards without once identifying the source of this information. Compl. at ¶¶ 1, 4, 49, 55, 60(c). Further, while the Chapman 9019 Declaration is silent on the specifics of the downstream transfers, the Complaint alleges that, on specified dates, $270,000,035.00 went to BYJU's Investments and $200,000,075.00 to BYJU's Global, that

BYJU's Global then loaned $150,000,000 onward, and that the funds were routed back to T&L. *Id*. ¶¶ 50-51. Chapman also references "related documents" demonstrating that the OCI and Revere transfers were intended to funnel the funds to Raveendran's affiliates but does not specify those documents. Chapman 9019 Decl. at ¶ 7. Further, Chapman reports that the funds were transferred to Revere Master SPV LLC, "a special purpose vehicle of Revere Securities, a provider of investment banking and wealth management." *Id*. at ¶¶5-6.

The Complaint draws exact dates, parties, and figures, including an alleged fee Revere received for facilitating the transfers, from the underlying records and agreements in the Debtor's possession and yet the Debtor intentionally omits any reference to those records from the Complaint. In particular, the Debtor fails to attach or describe the agreements that would explain the nature and purpose of the transactions between OCI and Revere, or between Revere and BYJU's Investments and BYJU's Global—specifically, that OCI asked Revere to manage a loan from OCI to the BYJU's entities and the purpose of the OCI-to-Revere transfer was an investment and that the purpose of the Revere-to-BYJU's transfer was a loan.

The Debtor should have attached, and the Court can consider at this stage, the agreements that define the transfers the Complaint challenges, including those governing the onward loan of those funds to the BYJU's entities. There are two. The $400 Million Facility Agreement, dated June 27, 2022, between BYJU's Investments Pte Ltd., as borrower, and Revere Master SPV LLC, Series VII (Byju), as lender, as amended (the "$400M Facility Agreement"), governs Revere's loan to BYJU's Investments. The $250 Million Facility Agreement, dated July 18, 2022, between BYJU's Global Pte Ltd., as borrower, and Revere Master SPV LLC, Series VII-A (Byjus), as lender, (as amended, the "$250M Facility Agreement," and together with the $400M Facility Agreement, the "Facility Agreements"), governs Revere's loan to BYJU's Global. Each

establishes what the Complaint improperly tries to plead around: the transfer from Revere was a loan, with 9% interest per annum, repayable on a defined maturity date, and made for the express and sole purpose of funding the borrower's purchase of shares in T&L. *See* $400M Facility Agreement § 3.1 (proceeds to be applied "towards the purchase of the Shares"); *id*. § 1.1 (defining "Shares" as equity shares of Think and Learn India Pvt Ltd.); $250M Facility Agreement §§ 3.1, 1.1.[7]

The Chapman Declaration and subscription materials, in turn, confirm that Revere Master SPV is an investor-funded special-purpose vehicle that acquired the funds through arm's-length capital subscriptions. An agreement defining a specific commercial purpose for the funds cannot be reconciled with the Complaint's allegation that Revere served "no legitimate commercial purpose" other than to obscure the movement of the Alpha Funds. Compl. at ¶ 5. The Debtor should not be permitted to claim that it knows what happened to the funds "down to the cent" based on information and documents it received from Chapman but omit those from the Complaint and ask the Court to disregard them as impermissibly "extrinsic" because they were not attached to or referenced in the Complaint.

The Third Circuit permits courts to consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," preventing a deficient claim from surviving by omitting dispositive materials. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). As the Third Circuit explained: "[p]laintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them"; of consequence is "whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the

---

7 True and correct copies of the 400M Facility Agreement and the 250M Facility Agreement are attached to the Schub Declaration as Exhibit 1 and Exhibit 2, respectively.

extrinsic document was explicitly cited." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.[89] Courts apply this doctrine with particular force in fraudulent transfer cases, considering omitted governing agreements and dismissing claims that ignore the transaction's structure. *See In re Old CarCo LLC*, 435 B.R. 169, 187 (Bankr. S.D.N.Y. 2010) (treating an omitted contribution agreement as integral and dismissing where a complaint failed to plead the value received); *In re Conex Holdings, LLC*, 518 B.R. 792, 804 n.66 (Bankr. D. Del. 2014) (considering omitted operating agreements a trustee relied on and was "presumably on notice" of, and dismissing upon showing the conduct was permitted); *In re Mervyn's Holdings, LLC*, 426 B.R. at 496 (treating an omitted sale agreement and commitment letters as integral where a debtor relied on them in framing fraudulent transfer claims). Here, the Debtor specified the amounts, dates, and parties to each transfer—which could be drawn only from records in its possession—yet labels underlying agreements as "extrinsic" to avoid their effect.

The Debtor's omission was not inadvertent. The agreements establish that the OCI-to-Revere transfer was an investment and that the Revere-to-BYJU's transfer was a loan for the purchase of T&L's shares. The Complaint's allegation that Revere served "no legitimate commercial purpose" other than to obscure the movement of the funds cannot coexist with the facility agreements and the investment agreement establishing Revere as an investor-funded special-purpose vehicle. Compl. ¶ 5. Under *Old CarCo*, *Conex*, and *Mervyn's*, a plaintiff may not

---

[8] *See Burlington*, 114 F.3d at 1426 (doctrine exists to prevent a plaintiff from "maintain[ing] a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context…it would be clear that the statement was not fraudulent"); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint").

[9] The Second Circuit has similarly held that a document is integral where "the complaint 'relies heavily upon its terms and effect.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

gain a tactical advantage by withholding the very documents that would defeat the conclusions its complaint asserts.

The Debtor does not dispute that it received the documents referenced in the McNutt Declaration, including documents provided by HSBC Bank NA and the Scott Cramer witness statement, that would explain the investment and loan structures of the Revere transfers. Specifically, annexed as Exhibit 1 to the McNutt Declaration filed by Raveendran's attorney, in support of Raveendran's brief on the assessment of damages, is a spreadsheet detailing the transactions involving the funds (the "Spreadsheet"). The Spreadsheet references a $479 million investment from OCI to Revere and a $400 million Facility Agreement dated June 27, 2022, between Revere and BYJU's Investments. McNutt Decl. ¶¶ 46(iv), n.85. McNutt attests that the Spreadsheet "comes entirely from documents Plaintiffs have possessed since before—in some cases, long before—Debtor filed the Complaint," and draws on the Debtor's own bank and brokerage statements and documents produced by Camshaft. McNutt Decl. ¶ 10. Such records would yield the dates and figures pleaded in the Complaint. The Spreadsheet further reflects that the funds Revere received were loaned onward pursuant to the Facility Agreements, the "sole purpose" of which was to fund the purchase of T&L's shares. *See* Spreadsheet, at 8, McNutt Decl. at ¶ 10.[10]

The Debtor mischaracterizes the purpose for which Defendants cite to the McNutt Declaration and the Spreadsheet in the Motion to Dismiss. The Defendants do not offer those materials as independent proof of the transaction structure but to demonstrate that the Complaint's

---

[10] Furthermore, Revere Master SPV Series VII disclosed the $275M investment by OCI and its fee for its services in a Form D filed with the SEC on July 13, 2022 (Schub Decl., Ex. 3) and Revere Master SPV Series VII A disclosed the $200M investment by OCI and its fee for that transaction in a Form D filed with the SEC on August 1, 2022 (Schub Decl., Ex. 4). Both documents are publicly available, and it seems inconceivable that the Debtors do not know that Revere acted as the investment manager for OCI in connection with its loans to affiliates of Byju Raveendran and T&L.

allegations were necessarily derived from transactional records in the Debtor's possession that were omitted from the Complaint. Those records reflect that the Debtor knew that the OCI-to-Revere transfer was an investment and that the Revere-to-BYJU's transfer was a loan, yet chose not to disclose that information. This omission also contradicts the Complaint's claim that Revere served "no legitimate commercial purpose" with respect to the transfers at issue. Compl. at ¶ 5.

The Debtor's knowledge of the OCI-to-Revere transactions is further confirmed by the consideration it received in settling with OCI. At the November 26, 2025 hearing approving that settlement, OCI's counsel represented that the consideration for the settlement included the "transfer of a receivable." *See* Nov. 26, 2025 Hr'g Tr., *BYJU's Alpha Inc. v. OCI Limited and Rupin Banker*, Adv. Pro. No. 25-50822 (BLS) (Bankr. D. Del.) [Adv. D.I. 64] at 11:10-14. By accepting the receivable as settlement consideration, the Debtor necessarily understands the nature of the transactions OCI engaged in and the transfers to/from OCI and Revere—yet pleaded its claim against Revere without disclosing the agreements and records that define those transfers.

## IV. The Complaint Should Be Dismissed with Prejudice Because Amendment Would Be Futile and Inequitable.

The existence of publicly available documents showing the Defendants acted as a mere conduit and transferred the funds in good faith under the loan agreements should foreclose the Debtor's ability to amend. Leave to amend may be denied for undue delay, bad faith or dilatory motive, futility or prejudice. *See Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). More than one of those grounds applies here.

The Complaint's defects arise from the Debtor's own allegations and the transactional record on which it relies: the Debtor pleads that Revere passed all but a fixed fee onward to the BYJU's entities and back to T&L—allegations that foreclose dominion and control as a matter of law—and alleges no facts showing inquiry notice, which cannot be reconciled with its own

admission that it has no basis to pursue Chapman, a transferee one step closer to the alleged fraud. Rule 11 forecloses amendment for the same reason. A repleading must rest on factual contentions that have, or are likely to have, evidentiary support. The Debtor's own records establish that Revere acted as a conduit, without inquiry notice of the alleged scheme, and pursuant to documents that required it to transfer the funds. Counsel to the Debtor therefore cannot allege the contrary consistent with their Rule 11 obligations. Because no amendment could cure the Complaint's defects without contradicting the record the Debtor itself created, the Complaint should be dismissed with prejudice.

## CONCLUSION

The Complaint fails on its own allegations. The Debtor pleaded that Revere received the Alpha Funds from OCI and immediately passed all but a fixed fee to the BYJU's entities as part of Byju Raveendran's plan to roundtrip the funds to T&L. Those allegations establish that Revere lacked dominion and control and cannot be squared with the conclusion that Revere was a transferee rather than a conduit. The same pleading offers only labels to suggest that Revere knew or had reason to know it was facilitating a fraud, and the Debtor's own representations that Chapman bears no culpability foreclose any inference of inquiry notice as to Revere, a transferee further removed. The Debtor's omission of the investment and facility agreements defining OCI-Revere-BYJU's transactions is not a pleading gap that an amendment could cure; it is the strategy on which the Complaint depends. Because the Complaint fails as a matter of law and no amendment consistent with Rule 11 could revive it, the Court should dismiss the Complaint with prejudice.

**GELLERT SEITZ BUSENKELL & BROWN LLC**

*/s/ Michael Busenkell*

Michael Busenkell (DE 3933)
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Phone: (302) 425-5812
Mbusenkell@gsbblaw.com

-and-

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

Howard W. Schub
330 Madison Avenue, 27th Floor
New York, New York 10017
Phone: (212) 413-9060
Howard.Schub@nelsonmullins.com
Lee B. Hart
201 17th Street NW
Atlanta, GA 30363
Phone: (404) 322-6349
Lee.hart@nelsonmullins.com

*Attorneys for Defendants Revere Master SPV LLC Series VII, Revere Master SPV LLC, Revere Manager LLC, Revere Securities LLC, Kyle M. Wool, Jerome F. Niles, Joshua A. Shipley*