# EXHIBIT B

## Chadwick Declaration

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Pacifica of the Valley Corp.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11060 (TMH) |

**DECLARATION OF PETER C. CHADWICK IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO (A) OBTAIN POSTPETITION SECURED FINANCING AND (B) UTILIZE CASH COLLATERAL; (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (III) GRANTING ADEQUATE PROTECTION; (IV) MODIFYING THE AUTOMATIC STAY; (V) SCHEDULING A FINAL HEARING; AND (VI) GRANTING RELATED RELIEF**

I, Peter C. Chadwick, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I am the Chief Restructuring Officer of Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley, in the chapter 11 case (the "Chapter 11 Case") of the above-captioned debtor and debtor in possession (the "Debtor").

2. I have been a Managing Director with Berkeley Research Group, LLC ("BRG") since 2015. I specialize in corporate restructuring, interim management, financial advisory, and distressed business operations, with over three decades of experience advising hospitals and healthcare systems in financial distress, including serving as chief restructuring officer, interim executive, and financial advisor in complex operational and chapter 11 restructurings. My work has focused on stabilizing healthcare operations, implementing cash-management controls,

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley [7312]. The Debtor's mailing address is 9449 San Fernando Road, Sun Valley, CA 91352.

preserving continuity of patient care, and developing operational budgets that allow hospitals to continue serving their communities while pursuing restructuring alternatives.

3. I am authorized to execute this declaration (the "Declaration") on behalf of the Debtor. Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein or I have acquired such knowledge through officers of the Debtor or employees of BRG acting under my supervision in the ordinary course of business. If called upon to testify, I would testify competently to the facts set forth herein.

4. I submit this Declaration in support of the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Obtain Postpetition Secured Financing and (B) Utilize Cash Collateral; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* (the "Motion"), whereby the Debtor seeks authority to enter into a senior secured, superpriority debtor-in-possession financing facility in an aggregate principal amount of up to $52,000,000 (the "DIP Facility"), consisting of $21,000,000 of new-money financing and a roll-up of a portion of Axios's prepetition secured debt provided by Axios Capital Solutions, LLC ("Axios" or in its capacity as such, the "DIP Lender") pursuant to that certain Debtor-In-Possession Loan Term Sheet (the "DIP Term Sheet") and the documents related thereto (collectively, the "DIP Documents").[2]

5. For the reasons set forth below, the relief requested in the Motion is critical to avoid closure of the hospital, which would result in the cessation of operations, and serious disruption to patient care and the Debtor's workforce, all of which, among other things, would materially undermine the Debtor's ability to achieve its objectives in the Chapter 11 Case.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

## BACKGROUND

6. On the Petition Date, the Debtor commenced the Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor has continued in the possession of its property and continues to operate and manage its business as a debtor in possession pursuant to §§ 1107(a) and 1108. No trustee or examiner has been appointed in the Chapter 11 Case.

7. On December 10, 2020, the Debtor entered into the MSL with First Western and the Federal Reserve pursuant to which First Western extended a senior secured loan to the Debtor in the principal amount of $35,000,000. In connection with the MSL, the Debtor executed a Pledge and Security Agreement granting First Western a security interest in substantially all of its personal property.

8. In November 2025, Axios purchased the MSL from First Western. As of the Petition Date, the Prepetition Obligations are approximately $50,943,321.41, inclusive of all accrued and unpaid interest, fees, costs, and expenses. The prepetition obligations owed to Axios are secured by senior secured liens on substantially all of the Debtor's assets.

## NEED FOR POST-PETITION FINANCING

9. For nearly three months since the Petition Date, the Debtor has operated with extremely limited liquidity and without the benefit of incremental debtor-in-possession financing. As of the date of the Motion, the Debtor has approximately $1,600,000 cash on hand and requires DIP financing to continue to operate the Hospital.

10. Unlike commercial enterprises, hospitals cannot delay essential expenditures without creating risks to patient care. The Debtor must meet payroll to retain clinical staff, purchase necessary pharmaceuticals and medical supplies, maintain utilities and critical medical systems,

and ensure vendors continue supporting operations. Without immediate funding, the Hospital may be unable to continue caring safely for its patients and may need to begin an orderly cessation of operations, including the safe transfer or discharge of patients over an appropriate period of time.

11. Accordingly, the Debtor requires an immediate and dependable source of additional liquidity.

**THE DIP FACILITY PROVIDES NECESSARY LIQUIDITY**

12. To address its immediate liquidity crisis, the Debtor has negotiated the DIP Facility with the DIP Lender, the holder of the Debtor's prepetition senior secured debt. The DIP Facility provides for a senior secured, superpriority facility in an aggregate principal amount of up to $52.5 million, including $21 million of new-money financing and a roll-up of a portion of the Debtor's prepetition obligations in accordance with the DIP Documents. Based on the Debtor's current liquidity position and the financing efforts undertaken to date, I am not aware of any actionable alternative source of funding that is presently available on similar or superior terms.

13. Without immediate access to the DIP Facility, the Debtor does not have sufficient liquidity to continue operating the Hospital, maintain continuity of patient care, and pursue a plan confirmation process. Over the next two weeks, the Debtor forecasts expenses will exceed receipts by $5.6 million. Among other things, the Debtor must renew its medical malpractice insurance and pay certain monthly premiums, rent, physician compensation, and legally required scheduled capital expenditures (for which the Debtor is currently accruing $5,000 in penalties per day).

14. The DIP Facility includes a 13-week Budget that has been approved by the DIP Lender and is designed to, among other things, fund a chapter 11 plan process culminating in December 2026. Use of proceeds must comply with the Budget, subject to agreed variances. I have supervised the preparation and review of the Budget governing the Debtor's use of proceeds of the

DIP Facility and Cash Collateral. Based on my experience with the Debtor's operations and liquidity requirements, the Budget reflects reasonable estimates of the Debtor's anticipated receipts and expenditures and provides sufficient funding for continued patient care, the Debtor's employees, essential vendors, hospital operations, U.S. Trustee fees, administrative fees, and completion of the contemplated chapter 11 plan confirmation process.

**NEED FOR INTERIM RELIEF**

15. Immediate access to the DIP Facility and Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtor. Without interim approval of the DIP Facility, the Debtor will lack sufficient cash to meet payroll, purchase essential medical supplies, and maintain operations necessary to care for patients currently in the Hospital. Accordingly, immediate access to the DIP Facility and Cash Collateral is necessary and appropriate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: September 27, 2026

*/s/ Peter C. Chadwick*
Peter C. Chadwick
Chief Restructuring Officer
Pacifica of the Valley Corporation